IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, *et. al*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| CARLOS H. CASCOS, IN HIS OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**NATURE OF THE ACTION**

1.     This action seeks declaratory and injunctive relief to redress Defendants' systemic and ongoing violations of the "Motor Voter" provisions of the National Voter Registration Act of 1993 ("NVRA"), enacted as Public Law 103-31 and codified at 52 U.S.C. §§ 20501-20511. Defendants' conduct also violates the U.S. Constitution's guarantee of equal protection, preserved by Section 1 of the Fourteenth Amendment. As a result, Plaintiffs, who are eligible Texas voters, have been disenfranchised — just like the thousands of similarly situated voters who complained to election officials about these same problems when their ballots were not counted. Texas voters will continue to be shut out of the democratic process unless and until Defendants reform their registration practices.

2.     After finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation," and that state governments have a "duty" to promote voting and voter registration, Congress enacted the NVRA to "establish

1

procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501. Through its Motor Voter provisions, the NVRA imposes voter registration obligations upon state motor vehicle bureaus. Specifically, every time an eligible voter obtains, renews, or updates his or her driver's license with the Texas Department of Public Safety ("DPS"), the State must simultaneously offer to register that person to vote or to update the voter's registration record.

3. The Motor Voter provisions require DPS to simultaneously treat: (a) "each . . . driver's license application (including any renewal application)" as an "application for voter registration," 52 U.S.C. § 20504(a)(1); and (d) "any change of address form" as a "notification of change of address for voter registration," 52 U.S.C. § 20504. Defendants have a legal duty to ensure that every eligible voter who submits a driver's license application or renewal, or updates his or her address with DPS, is duly registered to vote. 52 U.S.C. § 20507(a)(1)(A).

4. The Motor Voter provisions apply to "each" renewal application and "any" change-of-address form submitted to DPS, unless the voter "fails to sign the voter registration application" or "states on the form that the change of address is not for voter registration purposes." 52 U.S.C. § 20504. Accordingly, outside of those two narrow exceptions, *all* driver's license transactions are covered by the Motor Voter law, regardless of the method by which a voter applies, renews or updates his or her driver's license — the NVRA does not discriminate against voters who choose one transaction method over another. Online renewals and change-of-address transactions are thus expressly covered by the NVRA's plain text.

5. The State of Texas permits certain Texas driver's license holders to renew their license and/or update the address on their license online on DPS' website at www.txdps.state.tx.us. *See* Ex. A, at 1. During the online process, these individuals are asked to

2

check "yes" or "no" in response to the statement, "I want to register to vote." *See* Ex. A, at 2; Ex. C, at 19. It is undisputed that, even after an eligible voter checks "yes," Defendants fail to offer any means for simultaneous voter registration and fail to update the registration records of voters who change their address.

6. Even though the State does not use information from online change-of-address transactions to properly register a voter at his or her new address, these transmissions may be used to *cancel* a voter's prior registration record. *See* Tex. Elec. Code § 16.031.

7. In addition to violating the NVRA, Defendants' current practices treat similarly situated voters differently based solely on how those voters choose to transact with DPS. The NVRA, which makes no distinction between transaction methods, cannot be used to justify this arbitrary discrimination.

8. As a result of Defendants' failure to comply with the NVRA, each Plaintiff in this action was not able to cast a regular ballot in a recent election. Each Plaintiff was thus denied the right to voter registration that is guaranteed by the NVRA and denied an equal opportunity to participate in a federal election — for no reason other than the method through which they transacted with DPS.

9. Between September 2013 and May 26, 2015, the State recorded complaints from more than 1,800 voters who completed an online transaction with DPS and mistakenly believed that their registration records were updated too. *See* Ex. B. These voters certainly represent a mere fraction of the total number of Texas voters injured by Defendants' conduct.

10. Defendants must not be permitted to ignore constitutional and federal law. We respectfully request that this Court enjoin Defendants from further violations of applicable law and grant Plaintiffs the relief set forth below.

**JURISDICTION AND VENUE**

11. This case arises under the U.S. Constitution and the NVRA, a law of the United States. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

12. Defendants have received detailed notice of these violations of federal law and have failed to correct the violations alleged herein within 90 days. Plaintiffs therefore have a private right of action under 52 U.S.C. § 20510(b) to enforce the NVRA. Exhibit C contains the original notice provided to Defendants on May 27, 2015 and all correspondence between the parties thereafter.

13. This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

14. This Court has personal jurisdiction over Defendants because each is a citizen of the State of Texas.

15. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this district, and each Defendant conducts business in this district. 28 U.S.C. § 1391(b).

**PARTIES**

*Plaintiffs*

16. Plaintiffs —Benjamin Hernandez, Jarrod Stringer, Totysa Watkins, and John Woods — are eligible Texas voters who were directly and individually harmed by Defendants' conduct.

*Defendants*

17.     Defendants are the state officials charged with ensuring Texas' compliance with Sections 4 and 5 of the NVRA.

18.     Defendant Carlos H. Cascos ("Mr. Cascos") is the Texas Secretary of State, and is sued in his official capacity. As Secretary of State, Mr. Cascos serves as Texas' Chief Election Officer. Tex. Elec. Code § 31.001(a). Each state's chief election official is responsible for coordinating that state's compliance with the NVRA. 52 U.S.C. § 20509.

19.     Defendant Steven C. McCraw is the Director of DPS, and is sued in his official capacity. DPS is Texas' motor vehicle bureau. DPS operates offices around the state, issues driver's licenses and other state identification cards, and is responsible under state and federal law for providing voter registration services and transmitting voter registration information to the Texas Secretary of State. *See* 52 U.S.C. §§ 20503-20504; Tex. Elec. Code §§ 20.063, 20.066.

## APPLICABLE LAW

*The Fourteenth Amendment*

20.     The Fourteenth Amendment's Equal Protection Clause is implicated any time a state subjects voters to disparate treatment or places arbitrary restrictions upon the right to vote. U.S. Const. amend. XIV, § 1.

21.     There is no "litmus test for measuring the severity of a burden that a state law imposes on . . . an individual voter, or a discrete class of voters. However slight that burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion County Election Board*, 553 U.S. 181, 191 (2008) (Stevens, J., announcing judgment of Court); *accord Obama for America v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012) ("When a plaintiff alleges that a state has burdened voting rights

through the disparate treatment of voters, we review the claim using the flexible standard outlined in *Anderson v. Celebrezze* . . . courts must weigh the burden on voters against the state's asserted justifications and make the hard judgment that our adversary system demands." (internal quotation marks and citations omitted)).

### *National Voter Registration Act of 1993*

22. A "principal purpose" of the NVRA is to "increase the number of eligible citizens who register to vote." 52 U.S.C. § 20501(b)(1); *Ferrand v. Schedler*, No. 11-926, 2012 WL 1570094 at *10 (E.D. La. May 3, 2012) (citing H.R. Rep. No. 103–66, at 19 (1993) (Conf. Rep.), *reprinted in* 1993 U.S.C.C.A.N. 140, 144); *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 354 (5th Cir. 1999). A Senate Report on the law "makes clear that, in implementing the NVRA, the '[g]overnment should do all it can to make registration widely and easily available.'" *Ferrand v. Schedler*, No. 11-926, 2012 WL 1570094 at *11 (E.D. La. May 3, 2012) (citing S. Rep. No. 103–6, at 14 (1993)).

23. The NVRA's "Motor Voter" provisions were meant to streamline the federal voter registration process and increase voter registration accessibility:

> [I]ncorporating voter registration into the drivers licensing process provides a secure and convenient method for registering voters; an effective means of reaching groups of individuals generally considered hard-to-reach for voting purposes . . .; and a procedure for keeping rolls current through contact with licensees who change addresses.

S. Rep. 103-6, at 5 (1993).

24. Indeed, under the Motor Voter provisions, every time an eligible Texas voter obtains, renews, or updates his or her driver's license with DPS, the State must simultaneously register that person to vote or update that voter's registration records, unless the person fails to

sign the registration form or attests that the change-of-address information is not for voter registration purposes. 52 U.S.C. §§ 20503, 20504; 20507.

25. In relevant part, 52 U.S.C § 20504 provides that:

Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application . . . any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.

26. The State may not "require any information that duplicates information required in the driver's license portion of the form," other than extra information expressly enumerated by statute. *Id*. at § 20504(c)(2)(A). Instead, the NVRA demands that eligible voters shall be registered to vote "simultaneously" with the submission of any driver's license application, renewal or change-of-address form. *See id*. at § 20503(a)(1)(1).

27. DPS must promptly transmit completed voter registration applications and change-of-address information to election officials; generally, transmission must occur no later than 10 days after receipt. *See id*. at § 20504(e).

### *Texas Election Code*

28. Shortly after the NVRA was enacted in 1993, the State of Texas updated the Texas Election Code to reinforce the NVRA's Motor Voter mandates. *See generally* Tex. Elec. Code §§ 20.061-66.

29. For instance, state law specifies that DPS must use "a form and procedure that combines the department's application form for a license or card with an officially prescribed voter registration application form." *Id*. at § 20.062(a).

7

30. DPS must also provide a "change of address form and procedure that combines department and voter registration functions," so that when a voter submits a change of address, that "serves as a change of address for voter registration" as well, unless the individual indicates otherwise. *Id*. at § 20.063(c); *id*. at § 20.062(a).

31. In addition, if a "correct driver's license number or personal identification card number" or if "correct residence address or mailing address" information is missing from a registration application, DPS employees have a duty to correct the voter's application by "enter[ing] the information on the application." *Id*. at § 20.063(d).

32. Finally, voter registration applications and change-of-address forms must be promptly delivered to election officials. Specifically, "[n]ot later than the fifth day after the date a person completes a voter registration application and provides an electronic signature to the department, [DPS] shall electronically transfer the applicant's voter registration data, including the applicant's signature, to the [Texas Secretary of State]." *Id*. at § 20.066; *see also id*. at § 20.065.

## FACTUAL ALLEGATIONS

33. Exhibit C contains the original notice provided to Defendants on May 27, 2015 and all correspondence between the parties thereafter. The factual allegations set forth in those letters are incorporated by reference in this Complaint.

### *DPS Does Not Provide Simultaneous Voter Registration with Online Transactions*

34. DPS encourages Texans to use a number of online services through its website, www.txdps.state.tx.us, an official governmental website for the State of Texas.

35. DPS invites many Texas driver's license holders to renew their license and/or update the address information associated with their license online through a portion of its

8

website entitled "Driver License Renewal and Change of Address," available at https://txapps.texas.gov/tolapp/txdl/.

36. Defendants' Driver License Renewal and Change of Address website page provides a single online portal for qualified holders of a Texas driver's license to renew their driver's licenses, update the address listed on their driver's licenses, or both.

37. The online process involves eight "Steps to Complete," including the following steps: Welcome, Login, Select Services, Enter Address, Select Options, Review Order, Submit Payment, and Receipt. *See* Ex. A, at 1; Ex. C, at 19.

38. When users reach Step 5 of this online process, Defendants prompt the users to answer whether they want to register to vote. *See* Ex. A, at 2; Ex. C, at 19. If, however, an eligible voter checks "yes" under the statement "I want to register to vote," Defendants do not register that voter to vote and do not update that voter's registration records.

39. Unlike Defendants' simultaneous voter registration services for license renewal or address update applications submitted in-person at a DPS office, Defendants do not provide for simultaneous voter registration as required by the NVRA at any point during the online license renewal or address update process. Rather than providing any simultaneous opportunity for voter registration, the DPS website directs voters to an entirely different website, where voters must "download[] or request[]" a physical voter registration form.[1]

40. Specifically, Step 5 includes the following statement:

> Selecting "Yes" does not register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.

---

[1] "Simultaneous" means "existing or occurring at the same time: exactly coincident." *Definition of Simultaneous by Merriam-Webster*, Merriam-Webster, http://www.merriam-webster.com/dictionary/simultaneous (last visited March 8, 2016).

41.     Then, in order to register to vote, or to update address information, following an online transaction, an eligible voter must complete a number of additional steps. He or she must complete a separate voter registration form, print it out (if using a PDF version), and mail the form to the appropriate county registrar (after looking up that address) before the voter registration deadline.

42.     Defendant Secretary of State's publication, *32nd Annual Election Law Seminar Handbook*[2] confirms that "[i]f the [DPS] transaction was made online, then the person is not registered to vote." According to this handbook, "[b]y selecting 'yes' when updating information through DPS online renewal [the voter] is merely requesting a link to a voter registration application on the individual's receipt page."

43.     This process stands in stark contrast to DPS' procedures for registering eligible Texas residents who renew a driver's license and/or update address information in person at a DPS office. As DPS recently confirmed, for in-person customers who wish to register to vote, DPS "electronically transfer[s] to the Secretary of State (SOS) the name and relevant data regarding each applicant who is of voting age and a United States citizen who affirmatively answered the voter registration question" at the end of each business day. Ex. C, at 134. However, when the exact same information is submitted online by an eligible voter who is identically situated but chose to use DPS' online system rather than visit the office in person, that voter's "name and relevant data" is never transferred to election officials.

44.     Even though Defendants refuse to use information from online change-of-address transactions to properly register voters at their new addresses, they are certainly capable of using this information to do so. In fact, Defendants may use the same online information to *cancel* a

---

[2] On file with Counsel for Plaintiffs.

voter's prior registration record even though they fail to give voters any notice of this possibility. *See* Tex. Elec. Code § 16.031.

45. Defendants further confuse voters like Plaintiffs with the portion of DPS' webpage that provides answers to frequent inquiries about the online renewal and change-of-address processes. Defendants fail to indicate here that voter registration files are not simultaneously updated. *See* Ex. E. DPS also fails to explain on its website that completing DPS' online change-of-address form may jeopardize a voter's registration status at his or her former residence. *Id*.

### *Defendants' Conduct Injures Each Plaintiff*

46. **Benjamin Hernandez**: Mr. Hernandez moved to Dallas County from Ector County in February 2013. That month, he updated his driver's license address online, and believed that his voter registration records were updated as well. On Election Day 2014, Mr. Hernandez attempted to vote in Dallas County, but was told that his name was not on the rolls in Dallas County. Mr. Hernandez cast a provisional ballot, but later received notice that his vote was not counted.

47. **Jarrod Stringer**: Mr. Stringer moved from Tarrant County to Bexar County on August 1, 2014. Within the same week, Mr. Stringer updated his driver's license address online, and believed that his voter registration records were updated as well. Mr. Stringer attempted to vote early in the 2014 general election, but was told that his name was not on the rolls in Bexar County. Mr. Stringer then called Bexar County election officials, and was told that he was not registered in Bexar and could only vote a limited ballot with state-wide candidates, because he was still registered at his former address. When Mr. Stringer explained that he had changed his

address through DPS' website, the election officials with whom he spoke told Mr. Stringer that the county was aware of "problems at DPS."

48. **Totysa Watkins**: Ms. Watkins moved from Denton County to Dallas County in 2011. After moving, she changed her driver's license address online, and believed that her voter registration records were updated as well. In September 2013, Ms. Watkins moved within Irving, which is in Dallas County, and once again changed her driver's license address and attempted to update her voter registration online through DPS' website. Ms. Watkins attempted to vote on Election Day 2014, but was told by an election worker that she was not registered in Dallas County. She cast a provisional ballot. A few weeks later, Ms. Watkins received a notice indicating that her vote was not counted and then received two new voter registration cards.

49. **John Woods**: Dr. Woods moved from Travis County to Harris County in June 2015. In September 2015, Dr. Woods changed his driver's license address online, and believed that his voter registration records were updated as well. Shortly thereafter, Dr. Woods went to a local library, where he was offered an opportunity to register to vote. He declined that opportunity, however, because he believed that his voter registration records had already been updated. Dr. Woods called Harris County on Election Day 2015, trying to identify his polling location. Dr. Woods was informed that he was not registered in Harris County, but was still registered in Travis County, and that any provisional ballot cast in Harris County would likely not be counted. Nonetheless, Dr. Woods went to his local polling location and cast a provisional ballot.

50. Each Plaintiff believed that he or she was properly registered because he or she completed an online transaction with DPS, attempted to update his or her registration records, and later received an updated driver's license in the mail.

51. Plaintiffs only learned of DPS' registration failures when they arrived at the polls and were denied a regular ballot.

52. No Plaintiff was informed that completing DPS' online change-of-address form could jeopardize his or her registration status at his or her former residence pursuant to current law.

53. The conduct that harmed Plaintiffs is ongoing. Moreover, Defendants have repeatedly maintained that they are unwilling to change the policies and practices that caused the injuries described herein. *See* Ex. C.

### *Defendants' Voter Registration Failures Harm Countless Texas Voters*

54. As a result of Defendants' failure to comply with the NVRA, countless eligible Texas residents have been denied the right to voter registration, which is guaranteed by the NVRA.

55. Indeed, according to its own data, between September 2013 and May 26, 2015, the State recorded complaints from more than 1,800 voters who completed an online transaction with DPS and mistakenly believed that their registration records were updated as well.

56. For all of the reasons laid out in Plaintiffs' May 27, 2015 notice letter, Exhibit C, at 2-21, the voters who complained almost certainly represent just a fraction of the total affected during that time frame. Indeed, the State's records capture only those voters who contacted election workers, specifically complained about registration problems at DPS, and had their files investigated — surely, not all affected voters complained; others may have reported problems but had their complaints disregarded by election workers. Further, the data provided by the State comes from just 123 of Texas' 254 counties, strongly suggesting that the data set itself is incomplete. *See* Ex. B; Ex. C, at 9.

57. Notably, numerous emails, obtained through public records requests, establish that DPS officials and high-ranking employees in the Secretary of State's office have had actual knowledge of the significant and widespread confusion caused by the State's treatment of online DPS transactions since at least 2012. *See* Ex. C, at 15; Ex. D. But, to date, Defendants have taken no significant steps to remedy these problems.

## CLAIMS FOR RELIEF

### *Count I*
### *Subjecting Plaintiffs to Arbitrary Treatment in Violation of the Right to Equal Protection*

58. Plaintiffs incorporate by reference the allegations contained in Paragraphs 33 through 57 as if fully set forth herein.

59. By arbitrarily subjecting Plaintiffs to disparate voter registration standards, Defendants have denied Plaintiffs an equal opportunity to participate in federal and state elections in violation of Section 1 of the Fourteenth Amendment. As a result of this disparate treatment, Plaintiffs were denied their right to vote.

### *Count II*
### *Failure to Treat Driver's License Renewal Transactions as Voter Registration Applications*

60. Plaintiffs incorporate by reference the allegations contained in Paragraphs 33 through 57 as if fully set forth herein.

61. Plaintiffs have a private right of action pursuant to 52 U.S.C. § 20510(b). Plaintiffs must "provide written notice of… violation[s] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). Defendants received notice of these violations and failed to correct them within 90 days of receiving that notice. 52 U.S.C. § 20510; *see* Ex. C. Therefore, Plaintiffs may bring this suit.

62. Defendants have violated and continue to violate 52 U.S.C.§ 20503(a)(1) by failing to establish procedures "to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504."

63. Defendants have violated and continue to violate 52 U.S.C.§ 20504(a)(1) by failing to operate a system in which online applications to renew a Texas driver's license also serve as simultaneous applications for voter registration.

64. Defendants have violated and continue to violate 52 U.S.C. § 20504(a)(2) by failing to treat online driver's license renewal applications "as updating any previous voter registration by the applicant."

65. Defendants have violated and continue to violate 52 U.S.C.§ 20504(c) by requiring eligible voters who use the DPS website to renew a driver's license and who wish to register to vote to separately submit "information that duplicates information required in the driver's license portion of the form."

66. Defendants have violated and continue to violate 52 U.S.C. § 20504(e) by failing to transmit voter registration information submitted online to "the appropriate State election official" within the statutory period.

67. Defendants have violated and continue to violate 52 U.S.C. § 20507(a)(1)(A) by failing to "ensure that any eligible applicant is registered to vote" if the "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."

## Count III
### Failure to Treat Driver's License Change-of-Address Transactions as Updates for Voter Registration Purposes

68. Plaintiffs incorporate by reference the allegations contained in Paragraphs 33 through 57 as if fully set forth herein.

69. Plaintiffs have a private right of action pursuant to 52 U.S.C. § 20510(b). Plaintiffs must "provide written notice of… violation[s] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). Defendants received notice of these violations and failed to correct them within 90 days of receiving that notice. 52 U.S.C. § 20510; *see* Ex. C. Therefore, Plaintiffs may bring this suit.

70. Defendants have violated and continue to violate 52 U.S.C.§ 20503(a)(1) by failing to establish procedures "to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504."

71. Defendants have violated and continue to violate 52 U.S.C.§ 20504(c) by requiring eligible voters who use the DPS website to update a driver's license and who wish to register to vote to separately submit "information that duplicates information required in the driver's license portion of the form."

72. Defendants have violated and continue to violate 52 U.S.C.§ 20504(d) by failing to operate a system in which "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license" serves "as notification of change of address for voter registration."

73. Defendants have violated and continue to violate 52 U.S.C. § 20504(e) by failing to transmit voter registration information submitted online to "the appropriate State election official" within the statutory period.

74. Defendants have violated and continue to violate 52 U.S.C. § 20507(a)(1)(A) by failing to "ensure that any eligible applicant is registered to vote" if the "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."

## REQUEST FOR RELIEF

Plaintiffs respectfully request for the Court to enter an order:

i. Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA by failing to provide for simultaneous voter registration with online driver's license renewal;

ii. Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA by failing to provide for simultaneous voter registration with online change-of-address forms;

iii. Permanently enjoining Defendants, their agents and successors in office, and all persons working in concert with them, from implementing practices and procedures that likewise violate the NVRA;

iv. Directing Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their noncompliance, including, but not limited to providing for the electronic transfer of voter registration information collected through online transactions to the Secretary of State,

similar to the existing system to transfer voter registration information collected through in-person transactions;

    v.    Awarding Plaintiffs reasonable attorney fees, including litigation expenses, and costs, pursuant to 52 U.S.C. § 20510(c);

    vi.    Retaining jurisdiction over this action to ensure that Defendants continue to comply with their obligations under the NVRA; and

    vii.    Awarding such other equitable and further relief as the Court deems just and proper.

Dated: March 14, 2016

Respectfully submitted,

Peter A. Kraus*  
Texas State Bar No. 11712980  
kraus@waterskraus.com  
Charles S. Siegel  
Texas State Bar No. 18341875  
siegel@waterskraus.com  

By: /s/ Caitlyn E. Silhan  
Caitlyn E. Silhan  
Texas State Bar No. 24072879  
csilhan@waterskraus.com  

*Peter A. Kraus' Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

WATERS & KRAUS, LLP  
3219 McKinney Avenue  
Dallas, Texas 75204  
214-357-6244 (Telephone)  
214-871-2263 (Facsimile)  

Mimi Marziani**  
Texas Bar No. 24091906  
mimi@texascivilrightsproject.org

Wayne Krause Yang
Texas Bar No. 24032644
wayne@texascivilrightsproject.org
Hani Mirza**
Texas Bar No. 24083512
hani@texascivilrightsproject.org

*\** *Mimi Marziani's and Hani Mirza's admission into the U.S. District Court of the Western District of Texas is currently pending.*

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
Tel. (512) 474-5073
Fax (512) 474-0726

ATTORNEYS FOR PLAINTIFFS