IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, ET AL., | § | |
|     *Plaintiffs,* | § | |
| | § | |
| V. | § | NO. 5:16-CV-00257 |
| | § | |
| CARLOS H. CASCOS, IN HIS OFFICIAL CAPACITY | § | |
| AS THE TEXAS SECRETARY OF STATE AND | § | |
| STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, | § | |
|     *Defendants.* | § | |

## DEFENDANTS' MOTION TO DISMISS
### UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

Defendants, Carlos H. Cascos, in his official capacity as Texas Secretary of State, and Steven C. McCraw, in his official capacity as Director of the Texas Department of Public Safety, ("Defendants") move to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of jurisdiction, and failure to state a claim on which relief may be granted.

### INTRODUCTION

This case concerns the application of the National Voter Registration Act ("NVRA") to Texas's online service offerings for licensed drivers in the State. It presents a narrow question: when a State offers online driver license renewals and changes of address, does the NVRA also require that State to offer online voter registration? Because the NVRA contains no such requirement, this case should be dismissed for failure to state a claim upon which relief may be granted. In fact, the Court need not even address the merits of this case, because none of the Plaintiffs has standing to bring it—either under traditional standing principles, or under the NVRA's notice requirement. This case should therefore be dismissed for lack of jurisdiction.

1

LEGAL AND FACTUAL BACKGROUND

**I.     Voter Registration in Texas**

The Defendants—the Texas Secretary of State ("SOS") and Director of the Texas Department of Public Safety ("DPS")—each play a part in implementing the NVRA in Texas. TEX. ELEC. CODE §31.001(a) (SOS is chief election officer); *id.* §§20.061 *et seq.* (DPS is a voter registration agency).[1] Voter registration in Texas is, and has historically been, a county-based system. TEX. ELEC. CODE Chapter 12; *Id.* §12.001 ("The county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar."). DPS and SOS work within this county-based system to implement the NVRA's requirement that each State "establish procedures to register to vote in elections for Federal office by application made simultaneously with an application for a motor vehicle driver's license pursuant to [§]20504 of this title." 52 U.S.C. §20503(a)(1).

There are two types of motor vehicle driver license transactions at issue in this case: changes of address and renewals. Compl. ¶5. With respect to renewals, the NVRA provides that

> [e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority *under State law* shall serve as an application for voter registration with respect to elections for Federal office *unless the applicant fails to sign the voter registration application*.

52 U.S.C. §20504(a)(1) (emphasis supplied).

With respect to changes of address, the NVRA further provides that

> any change of address form *submitted in accordance with State law* for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved *unless the registrant states on the form that the change of address is not for voter registration purposes*.

---

[1] SOS also works with other designated voter registration agencies. *See* TEX. ELEC. CODE Ch. 20. Those agencies are not addressed here because they are not named in this case.

*Id.* §20504(d) (emphasis supplied).

The NVRA also specifies certain "forms and procedures" for voter registration applications under the Act. Such applications may require the "minimum amount of information necessary to prevent duplicate voter registrations and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.* §20504(c)(2)(B). Applications further "require[] the signature of the applicant, under penalty of perjury." *Id.* §20504(c)(2)(C)(iii). Completed applications "shall be made available (as submitted by the applicant, or in machine readable or other format) to the appropriate State election official as provided by State law." *Id.* §20504(c)(2)(E). Information collected in connection with both changes of address and online renewals "shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance." *Id.* §20504(e)(1).

The Texas Legislature has provided for NVRA implementation at DPS as follows:

The Department of Public Safety shall provide to each person who applies in person at the department's offices for an original or renewal of a driver's license, a personal identification card, or a duplicate or corrected license or card an opportunity to complete a voter registration application form.

When the department processes a license or card for renewal by mail, the department shall deliver to the applicant by mail a voter registration application form.

A change of address that relates to a license or card and that is submitted to the department in person or by mail serves as a change of address for voter registration unless the licensee or cardholder indicates that the change is not for voter registration purposes.

TEX. ELEC. CODE §20.063(a)-(c).

Texas law further provides:

At the end of each day a [DPS] office is regularly open for business, the manager of the office shall deliver by mail or in person to the voter registrar of the county in which the office is located each completed voter registration application and applicable change of address submitted to a department employee.

3

Each weekday the department is regularly open for business, the department shall electronically transfer to the secretary of state the name of each person who completes a voter registration application submitted to the department. The secretary shall prescribe procedures necessary to implement this subsection.

On the weekday the [SOS] is regularly open for business following the date the secretary receives information under Subsection (b), the secretary shall inform the appropriate voter registrar of the name of each person who completes a voter registration application submitted to the department. The registrar may verify that the registrar has received each application as indicated by the information provided by the secretary under this subsection.

*Id.* §20.065(a)-(c).

Some licensees may renew their license or change their address online. This is permitted if, among other things, the applicant is a U.S. Citizen with a Social Security number on file who most recently renewed in person.[2] Because DPS' online interface cannot capture an image of a voter's signature, those who utilize it receive a link to a voter registration application they must print, sign and mail in order to update their voter registration. *Compare* P's Ex. A at 2 ("Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page.") (emphasis original) *with* P's Ex. D. at 25 (voter registration application requiring signature). *See also, e.g.,* 52 U.S.C. §20504(c)(2)(C)(iii) (voter registration applications must be signed); *id.* §20504(a)(1) (renewal is not for voter registration purposes if applicant "fails to sign the voter registration application" or does not meet other State requirements).

## II.    Plaintiffs' Allegations

Plaintiffs Benjamin Hernandez, Jarrod Stringer, Totysa Watkins, and John Woods claim to be "eligible Texas voters who were directly and individually harmed by Defendants' conduct."

---

[2] *Renew Online or by Phone*, STATE OF TEXAS, https://www.txdps.state.tx.us/DriverLicense/dlfork.aspx?action=renew (last accessed 16 May 2016).

Compl. ¶16. Hernandez and Stringer claim that, after moving from one Texas county to another, each "updated his driver's license address online, and believed that his voter registration records were updated as well." Compl. ¶¶46, 47. Watkins and Woods claim that, after moving from one Texas county to another, each "changed his [or her] driver's license address online, and believed that his [or her] voter registration records were updated as well." Compl. ¶¶48, 49.

No Plaintiff claims to have submitted a signed voter registration application with updated information to DPS. Instead, Plaintiffs used the DPS website, which they describe as containing eight steps. Compl ¶37. Step 5 requires the licensee to select "yes" or "no" beneath the statement "I want to register to vote." Compl. ¶38, P's Ex. A at 2. "Step 5 includes the following statement: Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." Compl ¶40; P's Ex. A at 2 (emphasis original). Nevertheless, Plaintiffs claim they were unaware their voter registration information was not updated after these online transactions.

In particular, Mr. Hernandez complains of having to cast a provisional ballot on Election Day 2014. Compl. ¶46. Mr. Stringer complains that he was unable to vote early in Bexar County in the 2014 election, and was only able to vote a statewide ballot. Compl. ¶47. Ms. Watkins complains she was not registered to vote in Dallas County on Election Day 2015. Compl. ¶48. Mr. Woods claims he cast a provisional ballot in Harris County on Election Day 2015. Compl. ¶49. Based upon these allegations, Plaintiffs seek recovery under the NVRA. Plaintiffs assert NVRA standing based on their allegation that the Defendants "have failed to correct the violations alleged herein within 90 days." Compl. ¶12 (citing 52 U.S.C. §20510(b)). Plaintiffs further claim that the Defendants have violated the Equal Protection Clause of the United States Constitution "[b]y arbitrarily subjecting Plaintiffs to disparate voter registration standards[.]" Compl. ¶59.

**ARGUMENT AND AUTHORITIES**

**I.      Standards for Dismissal Under Rule 12(b)**

Federal Rule of Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. When a court lacks the statutory or constitutional power to adjudicate a case, the case must be dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The party asserting jurisdiction bears the burden of proving its existence. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014). A court can find a lack of subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 502 F. App'x 412, 414 (5th Cir. 2012).

Dismissal is proper under Federal Rule of Procedure 12(b)(6) when a complaint fails to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, the court accepts all well-pleaded facts as true and views them in the light most favorable to the non-movant. *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009), *aff'd* 631 F.3d 777 (5th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Instead, the factual allegations must be enough to "raise a right of relief above the speculative level," on the assumption that the factual allegations are true. *Twombly,* 550 U.S. at 555.

**II.      This case should be dismissed under Rule 12(b)(1) for lack of jurisdiction.**

Article III of the United States Constitution limits federal courts' jurisdiction to actual "cases" and "controversies." U.S. CONST. art. III, § 2; *see also Breaux v. U.S. Postal Serv.*, 202 F.3d 820, 820 (5th Cir. 2000). It is settled that, "[i]n our system of government, courts have no business deciding

legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quotation marks omitted). The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* (citing *Alvarez v. Smith,* 558 U.S. 87, 92 (2009); *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997). In addition to these traditional standing requirements, the NVRA imposes further standing requirements of its own.

### a. Plaintiffs lack Article III standing.

The purpose of the standing doctrine is to "give meaning to Article III's case-or-controversy requirement." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). Standing is an essential component of subject-matter jurisdiction. *Id.* To establish Article III standing, a plaintiff must show: (1) an injury-in-fact; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision in the district court (redressability). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585–86 (5th Cir. 2006). These elements are "an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements. *Id.* If a party lacks standing to bring a claim, the court lacks subject-matter jurisdiction over that claim. *See Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Here, the Plaintiffs lack standing because they have established neither causation nor redressability.

### 1. Plaintiffs' alleged injuries are not fairly traceable to conduct of the Defendants, and are instead the result of their own behavior.

Plaintiffs' alleged injuries do not satisfy the causation element necessary to establish Article III standing. For an injury-in-fact to be fairly traceable to the challenged action of the defendant, "there must be a causal connection between the injury and the conduct complained of."

*Lujan*, 504 U.S. at 560. Relevant here, the Fifth Circuit has held that injury stemming from a plaintiff's own inaction severs the causal link between that injury and any conduct of the defendant. *Westfall v. Miller*, 77 F.3d 868, 871-73 (5th Cir. 1996). So, too, here.

In *Westfall*, a prospective machine gun buyer challenged a federal requirement that machine gun transferees submit a form to the Bureau of Alcohol, Tobacco and Firearms ("ATF"). *Id.* at 869-70. The form required certification from a local law enforcement official that the official had no reason to believe the transferee would use the machine gun unlawfully. *Id.* Westfall requested this certification from all law enforcement officials within a five-mile radius of his home, but all refused. *See id.* at 869-70. ATF informed Westfall of other officials from whom he could seek the certification, but he "made no effort to obtain certifications from [those] officials[.]" *Id.* at 872. The Fifth Circuit concluded that Westfall lacked standing to challenge the constitutionality of the certification requirement. *Id.* at 871-72. The court reasoned that Westfall's *own inaction*—making no effort to obtain the certification from other officials, despite being told specifically from whom he could request it—caused any injury he claimed to have suffered. *Id.* at 872. The court noted that the certification process may have been "cumbersome, frustrating, and inconvenient for the plaintiff," but was nonetheless required by applicable law. *Id.*

Although the regulation challenged in *Westfall* involved different subject matter, a similar analysis is appropriate here. Plaintiffs' alleged injury occurred when each changed information on his or her driver license online. Compl. ¶¶46-49. Each believed that his or her voter registration records would be updated the moment they made these changes. *Id.* Each apparently maintained this belief despite the fact that the website they used required them to acknowledge that "[s]electing 'Yes' **does not** register you to vote." Compl. ¶40.

But Plaintiffs ignored the express indication that their voter registration information would not be updated the moment they changed their driver license information online.[3] They ignored the instruction to print and mail a signed voter registration application. Yet, they blame Defendants for the fact that this information was not updated. They do this despite their understanding that, "in order to register to vote, or to update address information, following an online transaction, an eligible voter must…complete a [] voter registration form, print it…and mail it to the appropriate county registrar." Compl. ¶41. Thus, the cause of Plaintiffs' alleged injuries—like the cause of the injuries alleged in *Westfall*—was their own inaction. Plaintiffs failed to follow the plain instructions on the website upon completion of their driver's license update: submit a signed application to update their voter registration information. Thus, Plaintiffs' subsequent allegations of inability to vote on Election Day are not fairly traceable to any conduct of Defendants.

### 2.   Because Plaintiffs allege only past injury, their claims are not redressable.

For an injury to be redressable, a plaintiff must show that a favorable decision would likely remedy it. *Dep't of Tex., Veterans of Foreign Wars v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (citation omitted). But the election in which each Plaintiff complains he or she was unregistered to vote has passed. Compl. ¶¶46-49. Defendants have made their best efforts to ensure the Plaintiffs have all the information and assistance they might need in registering to vote.[4] No

---

[3] Plaintiffs' assertion that "eligible voters shall be registered to vote 'simultaneously' with the submission of any driver's license application, renewal or change-of-address form," Compl. ¶26 (citing 52 U.S.C. § 20503(a)(1)(1)), misstates the law. Instead, the NVRA requires each state to "establish procedures to register to vote in elections for Federal office by application made simultaneously with an application for a motor vehicle driver's license." 52 U.S.C. §20503(a)(1). Requiring procedures for simultaneous *application* is not the same thing as requiring simultaneous updates to the rolls. *See also id.* §20504(e)(1) (applicant information "shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance.")

[4] In response to letters from Plaintiffs' counsel alleging NVRA violations, SOS offered to verify individuals' voter registration statuses, "consistent with applicable confidentiality provisions[,]"

Plaintiff has alleged that, today, he is not registered to vote in the county where he or she wishes to be registered. As a result, no relief from the Court could redress any harm alleged.

### b.  Plaintiffs' claims are moot.

Plaintiffs lack the personal interest in this suit required to establish a case or controversy. Mootness is "the doctrine of standing in a time frame." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). If the controversy between a plaintiff and defendant has been "resolved to the point that they no longer qualify as adverse parties with sufficient legal interests to maintain the litigation," a court lacks jurisdiction. *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014). That is, "[t]he requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."*United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980). Federal courts "have no power under Article III to decide the merits of a case that is moot when it comes before" them. *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999). A "controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation." *Perschall v. Louisiana*, 174 F.3d 197 (5th Cir. 1999) (citation omitted).

Plaintiffs have not pleaded that they remain unregistered to vote. They have only pleaded that they were not registered at a given address in the past (despite their mistaken belief to the contrary). Defendants have worked diligently to ensure that each Plaintiff is registered where he or she wishes, and has ample information about voter registration in Texas. *See generally* P's Ex.

---

and to otherwise assist with questions about registration. P's Ex. C at 27-28. Plaintiffs' counsel provided the information necessary to verify the registration status of some, but not all, of the individuals named in their letters, and SOS again offered to assist. P's Ex. C at 45. *See also, e.g.,* P's Ex. C at 47-48, Election Advisory No. 2015-07 (describing Defendants' online portal where counties may inquire about individual voters' registration statuses, and reminding county election officials about the portal's operation).

C. Thus, Plaintiffs lack concrete or continuing injury stemming from transactions which, improperly executed, Plaintiffs claim impacted their past ability to vote.[5] Their claims are moot.

In an attempt to overcome mootness, Plaintiffs might invoke the "capable-of-repetition" exception to mootness, which applies "only in exceptional situations." *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998) (citations omitted). The capable-of-repetition exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* This exception does not apply to this case, because it is not reasonable to expect that the Plaintiffs will, in the future, *again* misunderstand the statement "Selecting 'yes' **does not** register you to vote." Compl. ¶40. Thus, to the extent the alleged injuries are capable of repetition, such repetition will similarly stem from the Plaintiffs' future inaction, rather than any conduct of the Defendants.

### c.  Even if Plaintiffs otherwise had standing, the NVRA does not provide for jurisdiction over this case.

The States and their officials—including the Defendants here—generally enjoy Eleventh Amendment immunity to suit in federal court, absent congressional waiver thereof. *E.g., Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 97–98 (1984); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996). The NVRA waives immunity for a suit filed by the United States Attorney General. 52 U.S.C. §20510(a). It waives immunity for private litigants as follows:

> [a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved. If the violation is not corrected within 90 days after receipt of a notice…the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

---

[5] If Plaintiffs failed to avail themselves of the opportunity to properly register, their claims are not redressable. *See infra* Part II(a)(2).

*Id.* §20510(b)(1)-(2).[6]

Each individual plaintiff wishing to sue must give the requisite 90 day notice.[7] *Scott v. Schedler*, 771 F.3d 831, 835-36 (5th Cir. 2014) (where NAACP provided notice to Louisiana Secretary of State, but individual plaintiff did not, the individual lacked standing under NVRA); *ACORN v. Fowler*, 178 F.3d 350, 367 (5th Cir. 1999) (ACORN lacked standing to sue on behalf of its members where it had not shown any individual member had standing in his own right). "[T]he purpose of the notice requirement was to 'provide states...an opportunity to attempt compliance before facing litigation.'" *Scott v. Schedler*, 771 F.3d at 836 (*quoting ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir.1997)) (alterations in *Scott*).

No Plaintiff has NVRA standing here because, to the extent any Plaintiff remains aggrieved by the Defendants' actions, he or she has not provided the Defendants the opportunity to attempt compliance. That is, Defendants have done all that they can to identify the putative NVRA violations Plaintiffs allege in this lawsuit. Plaintiffs' Exhibit C demonstrates Defendants' repeated, consistent, and good faith efforts to ensure that, in every regard, they are not only compliant with the NVRA, but also that each individual voter who wished to register had every opportunity to do so. Some of the individuals on whose behalf Plaintiffs' counsel wrote the Defendants refused to

---

[6] Less notice is required if the violation occurs closer to an election. 52 U.S.C. §20510(b)(2)-(3).

[7] The only exception is when a state has "'clearly indicate[d] that [it] would continue to refuse to comply with the [NVRA] until forced to do so by judicial intervention[.]'" *Scott*, 771 F.3d at 836 (quoting *ACORN v. Miller*, 129 F.3d at 838) (alterations in *Scott*). In *ACORN v. Miller*, for example, notice was not required because a governor issued an executive order that state agencies would not provide voter registration until federal funds were made available. *Id.* Where, as here, the state "demonstrated desire to comply," each plaintiff must give notice. *Scott* at 836.

provide the information that would allow SOS to verify their voter registration status, and SOS duly confirmed the other individuals' registration status.[8]

Under the NVRA's limited waiver of immunity, Plaintiffs cannot merely refuse to allow the State to attempt compliance, and insist upon federal court jurisdiction. Instead, where a state has attempted to comply with the NVRA with respect to a particular plaintiff—so long as such attempt is not an "empty gesture"—that plaintiff does not have standing to invoke the Act's limited waiver of Eleventh Amendment immunity.

In this regard, *Georgia State Conference of NAACP. v. Kemp* is instructive. 841 F. Supp. 2d 1320, 1335-36 (N.D. Ga. 2012) (citing *Miller*, 129 F.3d at 838). There, a given plaintiff lacked NVRA standing because—upon receipt of notice—"Georgia ha[d] attempted to comply with" the relevant provisions of the NVRA "insofar as [the given plaintiff] was aggrieved[.]" *Id.* The court noted "the State's letter to [the plaintiff's] counsel, which included a voter registration application [and] offer[ed] the assistance of the Secretary of State's office." *Id.* The court concluded that "the letter and application appear to be more than an empty gesture," but instead were "Georgia's attempt to comply with the NVRA with regard to [that plaintiff]. The pre-litigation notice was meant to encourage exactly this sort of compliance attempt." *Id.*

So, too, here. Any Plaintiff who provided the information necessary to verify his or her voter registration status lacks standing, because he or she is either registered to vote, or has been given every opportunity to register. If a Plaintiff refused to provide information sufficient to verify his or her registration, that Plaintiff necessarily did not provide the notice the NVRA requires, and lack standing to assert a claim under the Act.

---

[8] *See supra* n.4. Defendants made these efforts despite Plaintiffs' counsel's attempt to abuse this conciliation process to obtain impermissible pre-suit discovery from the public servants who were attempting to assist their clients. P's Ex. C at 45-46.

**III.      Plaintiffs do not state a claim under the NVRA or the Equal Protection Clause.**

The allegations in the Complaint violate neither the NVRA nor the Equal Protection Clause. Thus, even if the Court had jurisdiction, dismissal is appropriate because Plaintiffs have failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

The Elections Clause of the United States Constitution provides, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators." U.S. CONST. art. I, §4 cl. 1. "The Elections Clause has two functions. Upon the States it imposes the duty ('shall be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2253 (2013) (citation omitted).

This yields States significant latitude, absent specific Congressional directive. Indeed, "[t]he Clause's substantive scope is broad. 'Times, Places, and Manner,' [the Supreme Court has] written, are 'comprehensive words,' which 'embrace authority to provide a complete code for congressional elections,' including[,]" as relevant here, "regulations relating to 'registration.'" *Id.* at 2253 (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)) (citing *Roudebush v. Hartke*, 405 U.S. 15, 24–25, (1972) (recounts); *United States v. Classic*, 313 U.S. 299, 320 (1941) (primaries)).

**a.   The conduct alleged in the Complaint does not violate the NVRA.**

"States employ different methods of identifying eligible voters at the polls." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008). Some states "require voters to present registration cards or other documentation before they can vote; some require voters to sign their names so their signatures can be compared with those on file; and in recent years an increasing

number of States have relied primarily on photo identification." *Id.* Texas, among other things, requires voters to sign a poll book. TEX. ELEC. CODE §63.002. In order to administer this provision of Texas law, an image of each voter's signature must be on file with the county registrar, "so the signature can be compared with those on file." *Crawford v. Marion County Election Bd.*, 553 U.S. at 197. *See also* TEX. ELEC. CODE §63.002; 1 TEX. ADMIN. CODE §81.58 ("a voter's signature may be captured by an electronic device for the signature roster. An 'Electronic Signature' is defined as a digitized image of a handwritten signature.") Plainly, an image of a voter's signature is necessary "to enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," 52 U.S.C. §20504(c)(2)(B). Defendants may therefore collect this image as they administer the NVRA.

Nevertheless, Plaintiffs claim that the NVRA required Texas to register them to vote "simultaneously" with their online driver license transactions. Compl. ¶26.[9] They make this claim despite the fact that none of them signed a voter registration application, and despite the fact that all of them indicated through the online interface that his or her change of address was not for voter registration purposes. Compl ¶¶37-40, P's Ex. A at 2. In other words, under Plaintiffs' reading of the law, Texas must treat *all* "driver's license renewal transactions as voter registration applications," even where the applicant "fails to sign the voter registration application." *Compare* Compl. Count II (capitalization altered) *with* 52 U.S.C. §20504(a)(1). Plaintiffs would further have states treat *all* "driver's license change-of-address transactions as updates for voter registration purposes," even where the applicant "states on the form that the change of address is not for voter

---

[9] No Plaintiff claims to have *renewed* a license online. *See* Compl. ¶¶46-49 (Hernandez and Stringer each claim to have "updated his driver's license address online," while Watkins and Woods each claim to have "changed his [or her] driver's license address online"). Nevertheless, Defendants demonstrate that Plaintiffs' arguments in this regard are without merit, should the Court choose to exercise jurisdiction over those arguments.

registration purposes." *Compare* Compl. Count III (capitalization altered) *with* 52 U.S.C. §20504(d). The NVRA does not provide for such a requirement.

The Fifth Circuit's recent ruling in *Scott v. Schedler* is instructive here. 771 F.3d 831. The court considered whether Louisiana's Secretary of State complied with NVRA's requirement that voter registration agencies administering public benefits "provide each applicant with voter registration forms 'unless the applicant, in writing, declines to register to vote.'" *Id.* at 840 (citing NVRA §7(a)(6)(A)) (codified at 52 U.S.C. §20506). The NVRA required the "voter registration agencies [administering public benefits] to provide all applicants with declination forms, which read: 'If you are not registered to vote…would you like to apply to register to vote here today?'" *Id.* On Louisiana's form, "[t]here are then two boxes to check: yes or no." *Id.* The form stated "'IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.'" *Id.* The voter registration agencies governed by §7(a)(6)(A) did not provide individuals who did not check either box with a voter registration application. *Id.* The *Scott* plaintiffs alleged that this violated the NVRA.

In rejecting this claim, the Fifth Circuit concluded, "[w]e hold that an applicant handing back a form with neither box checked has created documentation 'in writing' showing that he did not wish to register." *Id.* at 840 (citation omitted). The court "rel[ied] on the plain meaning of 'IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.' The capital letters mandated by the NVRA drive home the importance of the message: not checking either box equals a decision not to register to vote." *Id.* The court concluded, "[r]equiring that a declination be 'in writing,' rather than oral, creates evidence showing that the state complied with the NVRA despite not distributing a voter registration form." *Id.*

Although *Scott* arose under the NVRA provisions applicable to public benefits offices—rather than its "motor voter" provisions—the Fifth Circuit's analysis in that case is instructive. Under the "plain meaning" of 52 U.S.C. §20504(a)(1), without a signed voter registration application, driver license renewals do not amount to applications for voter registration. It is similarly plain that, where a licensee changes their address and indicates that the change is not for voter registration purposes, the change is not for voter registration purposes. *Id.* §20504(d). Texas applicants who acknowledge that "[s]electing 'yes' **does not** register you to vote[,]" like Louisiana applicants who are told "YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME," need not be registered. P's Ex. A at 2; *Scott*, 771 F.3d at 840. Plaintiffs, therefore, have failed to articulate a plausible claim under the NVRA.

Given the jurisdictional bars to this lawsuit Plaintiffs may be motivated by a desire for Texas to implement an online voter registration program. But the NVRA contains no such requirement. According to a recent survey, thirty-one states and the District of Columbia offered online voter registration as of May 9, 2016.[10] Legally, however, the NVRA does not require states to accept voter registrations over the internet.[11] In fact, the United States Congress has considered several bills which would make online voter registration a requirement under the NVRA, and yet none has become law.[12] Obviously, if the NVRA already required States to provide online voter

---

[10] *Online Voter Registration*, NATIONAL CONFERENCE OF STATE LEGISLATURES, http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-registration.aspx#table (last accessed 16 May 2016).
[11] *Compare* 52 U.S.C. §20501, *et seq.* (no provision for "remote" or online voter registration) *with id.* §20961 (establishing a "Technical Guidelines Development Committee" to assist in the development of "*voluntary* voting system guidelines" which include "remote access voting, including voting through the internet.") (emphasis supplied).
[12] *See, e.g.,* Voter Empowerment Act of 2015, H.R. 12, 114th Cong. (2015); Voter Empowerment Act of 2012, H.R. 5799/S. 3608, 112th Cong. (2012).

registration, such legislation would not continue to be proposed. Similarly, the Texas Legislature considered several online voter registration bills this past session (as well as their projected fiscal impacts) and none became law.[13]

Plainly, Congress is aware that online voter registration exists, and that an increasing number of states have chosen to offer it to their citizens. Congress has not, however, required states to implement online voter registration under the NVRA. Leaving this choice to the states is consistent with the broad election administration authority vested in them under the Constitution's Elections Clause, and a long line of Supreme Court precedent. *E.g., Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247. Like the multiple other states that do not have online voter registration, Texas is within its "time place and manner" prerogative in thus far declining to do so.

Thus, because Plaintiffs do not allege an NVRA violation, the Court should dismiss this case for failure to state a claim.

### b. The conduct alleged in the Complaint does not violate the Equal Protection Clause, either.

Plaintiffs seek relief under the Equal Protection Clause based upon the allegation that Defendants are "arbitrarily subjecting Plaintiffs to disparate voter registration standards[.]" Compl. ¶59. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 215 (1982)).

As an initial matter, Plaintiffs have not identified similarly situated individuals who have been treated differently from them. That is, Plaintiffs have not identified other individuals who (1)

---

[13] *See, e.g.,* H.B. 76, 84th Reg. Leg. Sess. (Tex. 2014); H.B. 953, 84th Reg. Leg. Sess. (Tex. 2014); S.B. 385, 84th Reg. Leg. Sess. (Tex. 2014).

failed to provide a signature, and (2) had their voter registration information updated after moving from one county to another. This is fatal to an equal protection claim. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Moreover, as a factual matter, there is nothing "disparate" about requiring individuals to provide a signature in order for the rolls to be updated. This requirement applies to all individuals, regardless of the artificial distinction Plaintiffs attempt to create here.

Indeed, Plaintiffs claim that "Defendants' current practices treat similarly situated voters differently based solely on how those voters choose to transact with DPS. The NVRA, which makes no distinction between transaction methods, cannot be used to justify this arbitrary discrimination." Compl. ¶7. Yet, the NVRA *does* require that voter registration applications be signed. 52 U.S.C. §20504(c)(2)(C); *id.* §20504(a)(1). The NVRA further provides that transactions under the Act also comport with State law. *Id.* §20504(d); TEX. ELEC. CODE §63.002; 1 TEX. ADMIN. CODE §81.58. And State law expressly may impose a signature requirement. 52 U.S.C. §20504(c)(2)(C); *Crawford v. Marion County Election Bd.*, 553 U.S. at 197. Because Texas law contains such a requirement, it may require a signature in connection with a change of address.

Thus, it is not the fact that Plaintiffs utilized the website that caused their voter registration information not to be updated, it is the fact that they did not sign a voter registration application—as required for online changes between counties. Requiring all citizens to comply with the very same requirement does not amount to a violation of the Equal Protection Clause. Thus, Plaintiffs have not stated a claim under that Clause.

## CONCLUSION & PRAYER

The Court should dismiss this case for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4080
(512) 320-0667 FAX
anna.mackin@texasattorneygeneral.gov

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of May, 2016, a true and correct copy of the

foregoing was filed electronically via the Court's CM/ECF, causing electronic service upon:

Peter A. Kraus
kraus@waterskraus.com

Charles S. Siegel
siegel@watersdraus.com

Caitlyn E. Silhan
csilhan@watersdraus.com

Mimi Marziani
mimi@texascivilrightsproject.org

Hani Mirza
hani@texascivilrightsproject.org

Wayne Krause Yang
wayne@texascivilrightsproject.org

ATTORNEYS FOR PLAINTIFFS

<u>/s/Anne Marie Mackin</u>
Assistant Attorney General