# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, *et. al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| CARLOS H. CASCOS, IN HIS OFFICIAL | § | Civil Action No. 5:16-cv-00257-OLG |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE and STEVEN C. McCRAW, IN HIS | § | |
| HIS OFFICIAL CAPACITY AS THE DIRECTOR | § | |
| OF THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

**WATERS & KRAUS, LLP**
Peter A. Kraus (*pro hac vice*)
Charles S. Siegel
Caitlyn E. Silhan
3219 McKinney Avenue
Dallas, Texas 75204
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

**TEXAS CIVIL RIGHTS PROJECT**
Mimi M.D. Marziani
Hani Mirza
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 1

A.     Legal Background ..................................................................................... 1

       1.      *The National Voter Registration Act* ............................................ 1

       2.      *Texas' Voter Registration Laws* .................................................. 2

       3.      *Provisional Voting Laws* ............................................................. 3

B.     Factual Background .................................................................................. 4

ARGUMENT ......................................................................................................... 5

A.     Standard of Review .................................................................................. 5

B.     Plaintiffs Have Standing under the NVRA ............................................. 6

       1.      *Plaintiffs' injuries were caused by Defendants' failure to comply with the NVRA* ............................................................... 7

       2.      *Requiring Defendants to comply with the NVRA will redress Plaintiffs' injury* ..... 8

C.     A Live Controversy Remains .................................................................. 10

D.     Plaintiffs Provided Proper Notice .......................................................... 12

E.     Plaintiffs State Cognizable Claims under the NVRA ............................ 14

        1.     *Texas misstates its own policies and procedures* ..................................................... 14

        2.     *Precedent Supports Plaintiffs' Reading of the NVRA* ........................................... 15

        3.     *This lawsuit is not about universal online voter registration* ............................... 18

F.      Plaintiffs State Cognizable Equal Protection Claims ........................................................ 19

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Adar v. Smith*, 597 F.3d 697 (5th Cir. 2010)..................................................................... 7

*Arcia v. Florida Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014).................................... 7, 9, 11, 12

*Ass'n. of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350 (5th Cir. 1999).......................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 6

*Bush v. Gore*, 531 U.S. 98 (2000)............................................................................... 20

*Chafin v. Chafin*, 133 S. Ct. 1017 (2013) .................................................................. 10

*Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005)................. 7, 9, 13

*Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259 (D. Colo. 2010) ....................... 7

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258 (5th Cir. 2015)......................... 16

*Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, (5th Cir. 2006) .......................... 11, 12

*Davis v. FEC*, 554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ...................................... 11

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ...................................................................... 20

*Ferrand v. Schedler*, No. CIV.A. 11-926, 2012 WL 1570094 (E.D. La. May 3, 2012).............. 18

*Georgia State Conference of NAACP. v. Kemp*, 841 F. Supp. 2d 1320
    (N.D. Ga. 2012) ....................................................................................... 13, 17, 18

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011) ................................ 6

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir.1998)....... 5

*Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012); ........................................... 7

*Morial v. Judiciary Comm'n*, 565 F.2d 295 (5th Cir.1977)........................................................ 11

*NE Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508
    U.S. 656 (1993)............................................................................................... 6

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012)........................................................ 20

*Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002) ............................................................ 16

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ....................................................... 5

*Salazar v. Maimon*, 750 F.3d 514 (5th Cir. 2014) ................................................................... 15

*Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014) ............................................................... 6, 17

*Smith v. Regional Transit Authority*, 756 F.3d 340 (5th Cir. 2014) .................................... 15

*Storer v. Brown*, 415 U.S. 724 (1974) .................................................................................... 12

*Westfall v. Miller*, 77 F.3d 868 (1996) ............................................................................... 7, 8

## Statutes

52 U.S.C. § 20504(a) ............................................................................................................ 16, 17

52 U.S.C. § 20507(a)(1)(A) .......................................................................................................... 2

52 U.S.C. § 20504(a)(2)(A) ........................................................................................................ 14

52 U.S.C. § 20501(a)(3) ................................................................................................................ 1

52 U.S.C. § 20501(b)(3) ............................................................................................................. 19

52 U.S.C. § 20504(a)(1) ...................................................................................................... 2, 3, 16

52 U.S.C. § 20504(b) .................................................................................................................. 17

52 U.S.C. § 20504(c) .................................................................................................................... 8

52 U.S.C. § 20504(c)(1) ...................................................................................................... 2, 3, 16

52 U.S.C. § 20504(c)(2) ................................................................................................................ 2

52 U.S.C. § 20504(d) ............................................................................................................... 2, 16

52 U.S.C. § 20504(e) ..................................................................................................................... 2

52 U.S.C. § 20504 ..................................................................................................................... 1, 8

52 U.S.C. § 20505 ......................................................................................................................... 2

52 U.S.C. § 20505(a)(1) ................................................................................................................ 9

52 U.S.C. § 20506 ................................................................................................................... 2, 13

52 U.S.C. § 20506(a)(6) .................................................................................... 17, 18

52 U.S.C. § 20510 ............................................................................................. 12, 13

52 U.S.C. § 20510(b) ............................................................................................... 4

52 U.S.C. § 21082 ............................................................................................... 3, 10

Tex. Elec. Code § 20.061–20.066 ....................................................................... 2, 14

Tex. Elec. Code § 20.062(a) ................................................................................... 3

Tex. Elec. Code § 20.062(b) ................................................................................... 3

Tex. Elec. Code § 20.063 ........................................................................................ 2

Tex. Elec. Code § 20.065(b) ................................................................................... 3

Tex. Elec. Code § 63.002 ...................................................................................... 17

Tex. Elec. Code. § 65.056(a) ......................................................................... 4, 10, 13

## Rules and Other Authorities

DPS, *DL-14-A Application for Texas Driver License or Identification Card* (Rev. 10/16) ......... 14

DPS, *DL-43 Application for Renewal/Replacement/Change of a Texas Driver License or Identification Card*  (Rev. 9/15)................................................................... 3

DPS, *DL-64L Application for Change of Address on Valid Texas Driver License (DL) & Identification Card (ID)* (Rev. 3/16) ....................................................... 3

Federal Rules of Civil Procedure 12(b)(1)....................................................... 1, 5, 9, 19

Federal Rules of Civil Procedure 12(b)(6)........................................................... 1, 5

H. Rep. No. 103-9, at 9 (1993) ............................................................................. 2

H.B. 76, 84th Leg., Reg. Sess. (Tex. 2015) ......................................................... 19

S. Rep. No. 103-6, at 6 (1993) .............................................................................. 2

Texas Secretary of State, *Qualifying Voters On Election Day: Handbook for Election Judges and Clerks*, 15-16 (2016) .......................................................................... 4

U.S. Dep't of Justice, The National Voter Registration Act of 1993: Questions and Answers ... 18

*Webster's New World College Dictionary*, 36, 64, 446, 493 (4th ed. 1999). ............................... 16

**INTRODUCTION**

The instant dispute concerns the State of Texas' adamant refusal to adhere to long-standing federal voter registration law and the U.S. Constitution. By refusing to offer simultaneous voter registration to those who renew or update their driver's licenses online, the State is intentionally excluding thousands of eligible Texas voters from the democratic process each election cycle. Unless and until Defendants reform their registration practices, large numbers of Texas voters will continue to be disenfranchised.

Without any persuasive legal precedents or policy reasons to justify their actions, Defendants do their best to distract the Court from this grave reality—making jurisprudential arguments that have no basis in case law, offering a disingenuous description of their own policies and exaggerating the remedy sought by the Plaintiffs. Thus, and for all of the reasons set forth below, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 7) (the "Motion" or "MTD"), and allow this matter to proceed to discovery.

**BACKGROUND**

**A. Legal Background**

**1. *The National Voter Registration Act***

After finding that unfair and discriminatory voter registration procedures "have a direct and damaging effect on voter participation," 52 U.S.C. § 20501(a)(3), Congress enacted the National Voter Registration Act ("NVRA") with the express purpose of "increas[ing] the number of eligible citizens who register to vote in elections for Federal Office," *id*. at (b)(1). Under the NVRA, states must provide three categories of voter registration procedures: (1) voter registration simultaneous with any driver's license application, renewal, or change-of-address transaction (the "Motor Voter" provisions, 52 U.S.C. § 20504); (2) voter registration by mail

using a standard, federal form, *id.* § 20505; and (3) voter registration at designated voter registration agencies, *id.* § 20506.

Plaintiffs allege that Defendants' current practices violate the Motor Voter provisions, which require the Texas Department of Public Safety ("DPS") to simultaneously offer voter registration with driver's license transactions, without requiring additional or duplicative information other than what is required by law.[1] Compl. ¶ 2. Specifically:

- Each state driver's license application—including any renewal application—must also serve as an application for voter registration, unless the applicant fails to sign the application, 52 U.S.C. § 20504(a)(1), (c)(1);
- The voter registration portion of the driver's license application may not require any duplicative information, other than what is required by law, 52 U.S.C. § 20504(c)(2);
- The voter registration portion must be promptly transmitted to the appropriate state election official, 52 U.S.C. § 20504(e), 20507(a)(1)(A); and
- Any driver's license change-of-address form must be used to update the voter registration rolls, unless the applicant states on the form that the change of address is *not* for voter registration purposes, 52 U.S.C. § 20504(d).

### 2. *Texas' Voter Registration Laws*

Texas' Election Code was amended shortly after the enactment of the NVRA to comport with federal law. *See generally* Tex. Elec. Code §§ 20.061–20.066.[2] In order to offer the simultaneous registration required by the NVRA, DPS must use "a form and procedure that

---

[1] Under Section 5 of the NVRA, Congress intended States to ideally create a system that "should be so designed as to include the voter registration application as a simultaneous, automatic part of the overall process with the duplication of information requested and forms to be completed held to an absolute minimum." S. Rep. No. 103-6, at 6 (1993). Although Congress believed Section 5 of the NVRA would allow some discretion to States "as to how to administer th[e] process and how to integrate it with [each State's] drivers license process," discretion would be limited by the requirement for simultaneous registration and the prohibition on duplicative information. *Id.* at 5-6. Congress specifically envisioned "a fully integrated, automated process, a single application form for use by both agencies requiring minimal duplication of information, or separate application forms to be completed as part of a single, simultaneous application process at the driver's license agency." *Id.*; *see also* H. Rep. No. 103-9, at 9 (1993).

[2] These provisions of the Election Code were enacted in the mid-1990s and set forth registration procedures for applicants who interact with DPS in person or by mail—they do not address online transactions. *See id.* § 20.063.

combines the department's application form for a license or card with an officially prescribed voter registration application form," *id*. § 20.062(a), and "a change of address form and procedure that combines department and voter registration functions," *id.* § 20.062(b). The change-of-address form "must allow a licensee or cardholder to indicate whether the change of address is also to be used for voter registration purposes." *Id.* Each business day, DPS must electronically transfer voter registration information to the Secretary of State ("SOS"). *Id.* § 20.065(b).

While DPS uses separate paper forms for in-person license renewals versus change-of-address transactions,[3] it chose to combine renewal and change-of-address applications into a single process online. Compl. ¶¶ 34-42; *see also* Compl. Ex. A at 1-2. Thus, while the NVRA treats driver's license renewal and change of address procedures differently, 52 U.S.C. § 20504(a)(1), (d), (c)(1), the State makes no such distinction with respect to online transactions; online applicants use the exact same process—and answer the same voter registration question— in renewing their license, changing their address, or completing both transactions. As Defendants note, applicants are only eligible to use DPS' online system if they have previously appeared in person at a DPS office and meet other enumerated criteria. MTD at 4.

### 3. *Provisional Voting Laws*

Under federal law, when a voter's eligibility cannot be determined at the polls, that voter has a right to cast a provisional ballot that election officials will examine after the election. 52 U.S.C. § 21082. In Texas, local election officials must offer a provisional ballot to any voter who is not listed on the registration rolls for that county or who appears to vote at the wrong precinct,

---

[3] DPS, *DL-64L Application for Change of Address on Valid Texas Driver License (DL) & Identification Card (ID)* (Rev. 3/16), https://www.txdps.state.tx.us/internetforms/Forms/DL-64.pdf; DPS, *DL-43 Application for Renewal/Replacement/Change of a Texas Driver License or Identification Card* (Rev. 9/15), https://www.txdps.state.tx.us/internetforms/Forms/DL-43.pdf.

even if properly registered within the county. Tex. Elec. Code §§ 63.006, 63.009.[4] Local election officials must use the information provided by a voter on the provisional ballot to register that voter to vote or to update her registration records. *See* Tex. Elec. Code. § 65.056(a).

**B. Factual Background**

The parties agree that Texas does not offer simultaneous voter registration or address updates when an applicant states "yes . . . I want to register to vote" during an online DPS transaction. MTD at 17; Compl. ¶¶ 3, 38, 42. It is also undisputed that each Plaintiff attempted to update his or her registration during an online change-of-address transaction with DPS, and that each Plaintiff believed that his or her voter registration was updated as a result. Compl. ¶¶ 46-50. While DPS received the information each Plaintiff submitted online—and used it to update each Plaintiff's driver's license—DPS failed to transmit their updated address information to the SOS. As a result, the registration rolls were incorrect when Plaintiffs appeared to vote, and each Plaintiff was unable to cast a regular ballot in a recent election. Compl. ¶¶ 11-13.

Defendants also do not deny that they received complaints from more than 1,800 voters between September 2013 and May 2015 who were unable to cast a regular ballot after attempting to update their voter registration through an online DPS transaction, Compl. ¶¶ 9, 55, or that Defendants have been aware of widespread confusion—and disenfranchisement—caused by their policies since at least 2012. Compl. ¶ 57, Compl. Ex. C at 7-12. Defendants do not claim to have taken any meaningful steps to address these issues. *See generally* MTD.

As required by the NVRA, Plaintiffs Benjamin Hernandez and Totysa Watkins provided Notice to Defendants of the State's NVRA violations on May 27, 2015.[5] 52 U.S.C. § 20510 (b);

---

[4] *See also* Texas Secretary of State, *Qualifying Voters On Election Day: Handbook for Election Judges and Clerks*, 15-16 (2016), http://www.sos.state.tx.us/elections/forms/election_judges_handbook.pdf.

Compl. ¶¶ 12, 33, Compl. Ex. C at 2-21. Plaintiffs Stringer and Wood gave notice of their claims in Supplemental Notice Letters later that year. Compl. Ex. C. at 171-72, 195-96.[6]

## ARGUMENT

### A. Standard of Review

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). MTD at 1. The Court should only grant a motion to dismiss for lack of subject matter jurisdiction "if it appears certain that the plaintiff cannot prove any set of facts in support of his [or her] claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998)). Where a defendant challenges a plaintiff's statutory standing, courts apply the Rule 12(b)(6) standard, which requires the defendant to show that the plaintiff failed to state a claim upon which relief can be granted. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634

[5] In addition to identifying the allegations in the instant lawsuit, the Notice described two other areas where the State was violating the NVRA—during in-person transactions at DPS offices and by failing to treat voter registration as the default choice. Compl. Ex. C at 5-12, 15-16. In response, the State agreed to implement "a policy of defaulting to registering an individual in certain ambiguous cases," and represented that it researched the names of 11 the voters listed in the notice letter and found that "each . . . currently appears on the rolls of the county in which [the] Letter alleges they tried to register." Compl. Ex. C at 22, 25. The parties subsequently met in person on July 20, 2015, Compl. Ex. C at 32, 40, and—after exchanging additional correspondence—ultimately reached agreement on several matters related to the State's compliance with the NVRA during in-person transactions at DPS. *See* Compl. Ex. C at 197-199. Accordingly, because Defendants agreed to reform policies and procedures related to in-person transactions and to treating voter registration as the default choice, the instant case only concerns online transactions.

[6] Defendants assert that Plaintiffs' counsel "refused" to provide information necessary for the State to verify Plaintiffs' registration status. MTD at n.4, 12-13. In reality, Defendants did verify that *each* individual in the original letter—including Plaintiffs Hernandez and Watkins—was registered, Compl. Ex. C at 25, and after meeting and reaching a partial agreement with respect to the *in-person* transaction violations, the parties subsequently conferred to again confirm that the six individuals who transacted *in-person* with DPS were registered. Compl. Ex. C at 32, 34, 41, 197-198. Undersigned counsel subsequently sent two Supplemental Notice Letters notifying the State of NVRA violations on behalf of Plaintiffs Stringer and Woods, Compl. Ex. C. at 171-72, 195-96, but never received a response from the State requesting additional information or in any way "attempting compliance" with respect to these Plaintiffs.

F.3d 787, 795 n.2 (5th Cir. 2011). Courts do not require a plaintiff to provide a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the violating conduct]." *Id* at 556.

## B. Plaintiffs Have Standing under the NVRA[7]

"Congress . . . intended to extend standing under the [National Voter Registration] Act to the maximum allowable under the constitution." *Ass'n. of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). As the Fifth Circuit recently affirmed, to establish Article III standing, each plaintiff must demonstrate "that he or she has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Scott v. Schedler*, 771 F.3d 831, 837 (5th Cir. 2014) (internal quotation marks and citation omitted).

Defendants do not—and cannot—argue that Plaintiffs fail to adequately allege an injury in fact. Here, each Plaintiff advances specific allegations that he or she was denied a statutory right under the Motor Voter law to update voter registration through a DPS transaction, and was disenfranchised as a result. As the Fifth Circuit has recognized, "[w]hen a person alleges a concrete, particularized, and individual injury by virtue of the operation of a statute . . . Article III standing to challenge that statute's execution usually obtains." *Adar v. Smith*, 597 F.3d 697,

---

[7] Defendants do not claim that Plaintiffs lack standing to bring their Equal Protection claims, so our standing discussion is limited to Plaintiffs' claims under the NVRA. It is clear, however, that by alleging DPS' policies make voter registration more difficult for prospective voters who engage in online transactions rather than in-person transactions, Plaintiffs sufficiently allege that they have been denied equal treatment. *NE Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666, 113 (1993) ("The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of [a governmental] barrier, not the ultimate inability to obtain the benefit.").

706 (5th Cir. 2010), *overruled on other grounds but aff'd as to standing*, 639 F.3d 146 (5th Cir. 2011) (finding standing when registrar refused to issue birth certificate to same-sex parents). Indeed, it is well established that a state's alleged failure to comply with the NVRA causes a cognizable injury to affected voters. *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012); *Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259, 1271-72 (D. Colo. 2010).

Rather than challenging allegations of injury, Defendants attempt to argue that Plaintiffs fail to meet Article III's causation and redressibility requirements. MTD at 7-10. But Plaintiffs' Complaint plausibly alleges that Defendants' unlawful policies, and not any inaction by Plaintiffs, caused their ongoing injuries. Policy reforms are necessary to redress their injuries.

### 1. *Plaintiffs' injuries were caused by Defendants' failure to comply with the NVRA*

Defendants cite just one case, *Westfall v. Miller*, to support their position that Plaintiffs' injuries are "the result of their own behavior" and not traceable to Defendants' NVRA violations. MTD at 7 (citing *Westfall v. Miller*, 77 F.3d 868 (1996)). But *Westfall*—a case about exhausting statutory procedures—is inapposite. There, the plaintiff wished to purchase a machinegun. Federal law required that the plaintiff first submit an application to the Bureau of Alcohol, Tobacco and Firearms (ATF), including a law enforcement agent's certification that the weapon would not be used for unlawful purposes. The plaintiff failed to obtain certification from local officials, but filed suit against ATF in an attempt to have his machine gun application processed anyway. The district court dismissed the case for lack of standing, finding that—under the express terms of the applicable federal law—the plaintiff could not establish a cognizable injury until he had exhausted the process for obtaining certification. *Westfall*, 77 F.3d at 871-72. As the

court pointed out, the plaintiff "will not have an injury of which to complain if [an official] provides the requested certification," because the ATF would presumably approve his application. *Id*. at 872.

Here, Defendants do not argue that the Plaintiffs failed to exhaust any procedures required by the NVRA. Instead, Defendants maintain that Plaintiffs failed to follow instructions provided by *DPS*—an argument that has nothing to do with the *Westfall* case or with Plaintiffs' ability to sue. MTD at 9. Plaintiffs need not comply with DPS procedures that violate the NVRA in order to establish standing to challenge the State's failure to comply with the NVRA. Instead, each Plaintiff did exactly what the NVRA requires to trigger the State's obligation to update their voter registration file: Each submitted a change-of-address form to DPS and each indicated on the form that "yes . . . I want to register to vote." Compl. ¶ 5. Defendants failed to treat these online transactions as "notification[s] of change of address for voter registration," 52 U.S.C. § 20504(d), and as a result of Defendants' unlawful policies, each Plaintiff was unable to cast a regular ballot in an election. Compl. ¶¶ 38, 46-53.

## 2. *Requiring Defendants to comply with the NVRA will redress Plaintiffs' injury*

Remarkably, Defendants assert that because they disenfranchised Plaintiffs in a past election and because Plaintiffs do not allege that their registration records remain outdated, their injuries are not redressable. MTD at 9-10. But this argument is based on a fundamental misunderstanding of the NVRA. Under the NVRA, Plaintiffs have a statutory right to have "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license . . . serve as notification of change of address for voter registration," 52 U.S.C. § 20504(d); Plaintiffs also have a statutory right to be offered simultaneous voter registration when they renew their drivers' license, *id*. § 20504(c). Each

Plaintiff is an eligible voter and Texas driver's license holder who must continue to interact with DPS to renew and update his or her license, and plans to continue transacting with DPS online. Compl. ¶¶ 46-53. Thus, the injunctive relief requested, forcing Defendants to comply with the NVRA, is the only way to redress the ongoing harm alleged.[8]

Indeed, in similar cases, federal courts have recognized that injunctive relief forcing compliance with the NVRA is the appropriate way to redress injuries caused by alleged NVRA violations, and have rejected the argument that "fixing" an individual's registration records can alone suffice. In *Charles H. Wesley Education Foundation v. Cox*, for example, one plaintiff attempted to update her address for voter registration purposes by using the standard voter registration form that the NVRA requires states to accept, 52 U.S.C. § 20505(a)(1), but the Georgia Secretary of State rejected it. 408 F.3d at 1351. Georgia argued that the plaintiff lacked standing because she was an "already registered voter" so "she suffered no injury that can be traced to the state." *Id.* Rejecting this position, the Eleventh Circuit found that her injury—the statutory right under the NVRA to use the federal form to change her address—would be redressed by the relief requested, an injunction to "permanently withdraw[] the additional registration requirements that Defendants seek to impose on her." *Id.* at 1352 n.3; *see also Arcia*, 772 F.3d at 1341 (finding that individual voters removed from rolls in violation of Section 8 of NVRA had standing to sue for prospective relief even after they were reinstated, because of "realistic probability" that ongoing violations could again affect their registration status).

---

[8] Plaintiffs request an order enjoining the Defendants from violating the NVRA and mandating compliance with the NVRA by, *inter alia*, "providing for the electronic transfer of voter registration information collected through online transactions [with DPS] to the Secretary of State, similar to the existing system to transfer voter registration information collected through in-person transactions." Compl. Request for Relief, ¶¶ iii, iv. The requested relief would not only redress the statutory injury suffered by Plaintiffs under the NVRA, but it would redress the injuries suffered under the Equal Protection Clause as well.

### C. A Live Controversy Remains

Defendants also argue that because the Plaintiffs were subsequently registered to vote, there is no live controversy and the case is thus moot. MTD at 10-11. They are incorrect for a number of reasons.

To start, as the Supreme Court recently reaffirmed:

> [A] suit becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citations and internal quotations omitted). Here, the unlawful policies that caused Plaintiffs' injuries are ongoing. Defendants have made clear that they will not change their voter registration procedures unless forced to by the Court.

By arguing that the case became moot when Plaintiffs' registration records were updated, Defendants "confuse[] mootness with the merits," *id*. at 1024—and try to render useless the NVRA's private right of action. Plaintiffs did not learn of the State's NVRA violations until they attempted to vote and learned that their registration records had not been updated. Compl. ¶¶ 46-53. At the polls, each Plaintiff, except for Mr. Stringer, was given a provisional ballot as mandated by state and federal law. *See* Tex. Elec. Code. § 65.056(a); 52 U.S.C. § 21082; Compl. ¶¶ 46-53. County election officials used those provisional ballots to update Plaintiffs' registration records after the election. Tex. Elec. Code. § 65.056(a). If Defendants are correct, almost no one would be able to sue after being disenfranchised on Election Day because, as a direct result of being disenfranchised, their registration records would have been updated by having to cast a provisional ballot.

Moreover, as the Fifth Circuit and other federal courts have found, an exception to mootness applies here.

> The "capable of repetition, yet evading review" exception to the mootness doctrine applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Davis v. FEC*, 554 U.S. 724, 735, 128 S.Ct. 2759, 2769–70, 171 L.Ed.2d 737 (2008) (quotation marks omitted) (rejecting mootness argument despite fact that election had passed).

*Arcia*, 772 F.3d at 1343 (rejecting that NVRA claim was moot post-election); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661-62 (5th Cir. 2006) (rejecting that election law claim was moot post-election). Due to the inherent time constraints involved with election-related litigation, the Fifth Circuit has found that such cases present "the paradigmatic circumstances in which the Supreme Court has found that full litigation can never be completed before the precise controversy (a particular election) has run its course." *Carmouche*, 449 F.3d at 661. Accordingly, "[s]uits challenging the validity of state election laws are classic examples of cases in which the issues are 'capable of repetition, yet evading review.'" *Id.* (quoting *Morial v. Judiciary Comm'n*, 565 F.2d 295, 297 n. 3 (5th Cir.1977)) (alterations in original).

The *Carmouche* case is particularly illustrative. There, after reaffirming that election law controversies satisfy the first "capable of repetition, yet evading review" prong, the Fifth Circuit went on to explain that "the Court does not always focus on whether a particular plaintiff is likely to incur the same injury," but asks whether other similarly situated voters could be affected. 449 F.3d at 662. The court concluded that "even if it were doubtful that the [plaintiff] would again attempt to engage in [the same conduct], precedent suggests that this case is not moot, because other individuals certainly will be affected by the continuing existence of the [allegedly unlawful law]." *Id.*

Plaintiffs' allegations clearly satisfy the relevant inquiry. First, each Plaintiff believed that he or she had properly updated voter registration information by submitting a change-of-address form online to DPS and indicating "Yes . . . I want to register to vote." Each Plaintiff only learned that the State failed to update his or her record at the polls, and thus had no ability to bring this litigation prior to the election. Compl. ¶¶ 46-52. Second, as noted *supra*, page 9, each Plaintiff must continue to interact with DPS to renew and update his or her license and plans to do so online; thus, each Plaintiff is likely to suffer ongoing and future injuries. Moreover, Defendants have admitted to receiving complaints from *thousands* of other voters who have been disenfranchised due to the policies challenged in this lawsuit. Compl. ¶¶ 9, 55, 57, Ex. C at 7-12. Thus, "the issues properly presented" here "will persist as [Defendants' policies] are applied in future elections," preventing mootness. *Storer v. Brown*, 415 U.S. 724, n. 8 (1974); *accord Arcia*, 772 F.3d at 1343.[9]

## D. Plaintiffs Provided Proper Notice

Plaintiffs provided extensive notice to Defendants of their failures to comply with the NVRA, and Defendants do not challenge the sufficiency of that notice under 52 U.S.C. § 20510. Instead, Defendants argue they are immune from suit because they allegedly made genuine, pre-suit attempts to comply with the Motor Voter mandates after receiving Plaintiffs' Notice. MTD at 11-13. In fact, Defendants only attempted to verify two of the four Plaintiffs' voter registration status after they were disenfranchised as a result of Defendants' NVRA violations. MTD at 13; *see also supra* note 6. This cannot constitute "attempting compliance" with the NVRA. If states

---

[9] Ignoring *Carmouche* and other relevant case law, Defendants try to argue that, because Plaintiffs can anticipate that Defendants will continue to violate the NVRA, any future injuries will be a result of Plaintiffs' failure to avail themselves of other means to register to vote "rather than any conduct of the Defendants." MTD at 11. That is absurd. Plaintiffs need not avoid engaging in NVRA-covered transactions because they now know that Defendants' treatment of those transactions violates their rights.

could immunize themselves from suit by simply checking a complainant's registration status or offering to register them after the fact, no individual voter could ever enforce compliance with the NVRA, frustrating Congress' intent to create a private right of action. 52 U.S.C. § 20510. Defendants have thus neither attempted nor achieved "compliance" with respect to Plaintiffs, and there is no evidence that they have done so with respect to the thousands of similarly-situated complainants that have come forward as of May 2015. Compl. ¶¶ 9, 55.[10]

To support their position, Defendants point to one distinguishable subsection of *Georgia State Conference of NAACP. v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012), a case that, in fact, *supports* Plaintiffs' NVRA allegations. The dispute in *Kemp* concerned Section 7 of the NVRA, which applies to social service agencies and, unlike the Motor Voter provisions, does not require simultaneous voter registration. 52 U.S.C. § 20506; *Kemp*, 841 F.Supp.2d at 1329. As noted *infra*, page 18, the *Kemp* court found that the NVRA's social service mandates reach online transactions, relying upon the plain meaning of the terms "each application" and "each recertification, renewal, or change of address form" in Section 7. 841 F. Supp. 2d at 1329.

The *Kemp* court also found, however, that Georgia "attempted to comply with" Section 7 of the NVRA by mailing one complainant a voter registration form and taking other steps that amounted to "more than an empty gesture" to comply with in-person registration requirements. *Id*. at 1336. Here, as described *supra*, note 5, Plaintiffs do not challenge the State's procedures for voter registration with in-person DPS transaction, because the State agreed to make meaningful changes to those policies. But the State has refused to reform its policies with regard to online transactions. Mere attempts "to verify the registration status" of two out of the four

---

[10] As explained above, each Plaintiff other than Mr. Stringer submitted a provisional ballot, which under Texas law was subsequently treated at the county level—not by Defendants—as a voter registration application. *See* Tex. Elec. Code. § 65.056(a)10; Compl. ¶ ¶ 46-53.

Plaintiffs are insufficient to "attempt compliance" under any section of the NVRA, let alone the

Motor Voter provisions, for the reasons set *supra*, note 6 and page 10.[11]

### E. Plaintiffs State Cognizable Claims under the NVRA

#### 1. *Texas misstates its own policies and procedures*

As the State has previously explained, to obtain a new Texas driver's license, one must

go to a DPS location in person and complete a form "that combines the department's application

form for a license . . . with an officially prescribed voter registration application form." Compl.

Ex. C at 133. This form, the "Application for Texas Driver License or Identification Card,"[12]

includes Question Number 2, which asks, "If you are a US citizen, would you like to register to

vote? If registered, would you like to update your voter information?" It also states that:

> By providing my electronic signature, I understand the personal
> information on my application form and my electronic signature will be
> used for submitting my voter's registration application to the Texas
> Secretary of State's office. Wanting to register to vote, I authorize the
> Department of Public Safety to transfer this information to the Texas
> Secretary of State.[13]

By law, the prospective voter's information—including his or her electronic signature—

must be inputted "into the department's electronic data system" and promptly transferred to the

Secretary of State. Tex. Elec. Code § 20.066. Ultimately, as the State notes, MTD at 15, this

electronic signature is filed with county officials and used for verifying the voter at the polls.

---

[11] Even if the State had sent each Plaintiff a separate voter registration form, as Georgia did in
*Kemp*, it would be insufficient to "attempt compliance" under Section 5, 52 U.S.C. § 20504.
Under the Motor Voter provisions of the NVRA, the State must use a *simultaneous* application
and cannot require duplicative information; a wholly separate application requiring duplicative
information is not sufficient. *Id.* § 20504(a)(2)(A).

[12] DPS, *DL-14-A Application for Texas Driver License or Identification Card* (Rev. 10/16),
http://www.dps.texas.gov/internetforms/Forms/DL-14A.pdf.

[13] DPS's paper driver's license renewal form, DL-43, contains identical language. DPS, *DL-43
Application for Renewal/Replacement/Change of a Texas Driver License or Identification Card*,
https://www.txdps.state.tx.us/internetforms/Forms/DL-43.pdf.

In order to be eligible to use DPS' online system in the first place, a driver's license holder must have previously visited DPS in person and signed the joint driver's license/voter registration application, MTD at 4, causing her electronic signature to go to election officials and to be placed in her DPS file. In addition to expressly using electronic signatures for voter registration purposes, DPS apparently uses them to satisfy the signature requirement for driver's license renewals. 37 Tex. Adm. Code § 15.21. Given that applicants, like Plaintiffs, who attempt to register to vote or update information online with DPS have electronic signatures already on file with DPS, and that these electronic signatures are deemed sufficient for other DPS transactions, it is disingenuous for Defendants to claim that Plaintiffs failed to provide a signature with their online transactions.[14]

Moreover, it cannot be, as the State argues, that by stating "Yes . . . I want to register to vote," a prospective voter is somehow conveying that "the change of address is not for voter registration purposes." MTD at 15-16. Not only does this interpretation defy common sense and turns the NVRA on its head, it ignores our Plaintiffs' credible allegations that, by selecting "Yes . . . I want to register to vote" they wished to have their registration records updated.

### 2. *Precedent Supports Plaintiffs' Reading of the NVRA*

As the Fifth Circuit has repeatedly explained, to ascertain the meaning of a law, "the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014) (internal quotation marks and citations omitted). Words must be afforded their "ordinary, contemporary, and common meaning." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 268 (5th

---

[14] At the very least, Defendants' fact-laden argument cannot be the basis for dismissal at this early juncture. *Smith v. Regional Transit Authority*, 756 F.3d 340, 347 (5th Cir. 2014) ("disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence, unless those disputed facts are immaterial to the outcome").

Cir. 2015). The law's plain language is controlling, and the court will not look beyond that language except in those "rare instances where using the plain meaning of the text creates an absurd result." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351 (5th Cir. 2002).

Here, the plain meaning of the relevant statutory language of 52 U.S.C. § 20504 is clear:

- "***Each*** State motor vehicle ***driver's license application (including any renewal application)*** submitted to the appropriate State motor vehicle authority under State law ***shall serve as an application for voter registration*** . . . unless the applicant fails to sign the voter registration application[.]"
- "***Any change of address form*** submitted in accordance with State law for purposes of a State motor vehicle driver's license ***shall serve as notification of change of address for voter registration*** . . . unless the registrant states on the form that the change of address is not for voter registration purposes[.]"

*Id*. § 20504(a), (d) (emphasis added). "Each" and "any" are commonly understood to be interchangeable with the terms "every" and "all." For instance, Webster's *New World College Dictionary* defines: "all" as "every one of" and "any whatsoever"; "any" as "every"; "each" as "every one of two or more considered separately"; and "every" as "each, and including all." *Webster's New World College Dictionary*, 36, 64, 446, 493 (4th ed. 1999). Thus, the NVRA's plain language includes no limitation on transaction type—every driver's license renewal and change-of-address transaction must be used for voter registration, including online transactions.

Defendants offer no real explanation for why they refuse to use ***every*** renewal and change-of-address transaction, including online transactions, for voter registration purposes as mandated by 52 U.S.C. § 20504(d). Instead, they contend that "[u]nder the 'plain meaning' of 52 U.S.C. § 20504(a)(1), (c)(1), without a signed voter registration application, driver license renewals do not amount to applications for voter registration." MTD at 17. But this argument misses the mark for at least three reasons.

*First*, as described *supra*, pages 14–15, Defendants ignore that each Plaintiff has an electronic signature on file, because each originally applied for a driver's license in person at a

DPS office. *Second*, Defendants misread the Motor Voter mandates. States must offer simultaneous voter registration to any applicant who submits a renewal application or change-of-address form "under State law"—meaning that *the driver's license transaction* is properly submitted under law and otherwise valid. *See* 52 U.S.C. § 20504(a)-(b). Texas allows electronic signatures that were created when applicants first applied for a driver's license to be seamlessly used for subsequent renewal applications and change-of-address submissions, Tex. Elec. Code § 63.002, and nothing in the NVRA or in the Texas Election Code impose any further requirements when those same signatures are used for voter registration.

*Third*, as Defendants concede, MTD at 17, *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014) concerns specific language in Section 7 of the NVRA and does not address the Motor Voter provisions at all.[15] Moreover, read fairly, the logic of *Scott* affirms the Plaintiffs' positions. The *Scott* court's emphasis on applying the plain meaning of the NVRA supports the argument that online transactions are covered by the Motor Voter mandates for the reasons described in Defendants' Motion at 16. Indeed, the Fifth Circuit in *Scott* did not disturb the lower court's interpretation of 52 U.S.C. § 20506(a)(6), which applied Section 7 of the NVRA to online transactions with Louisiana social service agencies.

In reaching that conclusion, the District Court found that the Congress' use of the word "each" in the NVRA was significant—unlike the word "at," which "clearly denotes a specific

---

[15] The *Scott* plaintiffs claimed that Louisiana failed to comply with Section 7 of the NVRA, which requires social service agencies register their customers to vote, "unless the applicant, in writing, declines to register to vote." 771 F.3d at 841. Section 7 expressly requires social service agencies use a form with the language, "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME." *Id*. Relying upon the plain text of this provision, codified at 52 U.S.C. ¶ 20506, the *Scott* court rejected the plaintiffs' challenge and upheld Louisiana's decision not to register applicants who failed to check either box. 771 F.3d at 841-42.

17

location," the word "each" has no "locational limitation." *Ferrand v. Schedler*, No. CIV.A. 11-926, 2012 WL 1570094, at *10 (E.D. La. May 3, 2012). It also explained that:

> . . . Congress's purpose in enacting the NVRA was to ensure that all Americans are affirmatively provided an opportunity to register to vote. Congress made this intent clear when it uses such language as 'in addition' and 'each.' Thus, the reading of [52 U.S.C. § 20506(a)(6)] as applying to every transaction, whether it be in person or remote, serves to accomplish the clear goal of Congress.

*Id*. at *11; *accord Kemp*, 841 F. Supp. 2d at 1329 (reaching same conclusion). Tellingly, the Department of Justice—an agency charged by statute with enforcing the NVRA—has reached the same conclusion. DOJ guidance confirms that when a state allows residents to apply for, renew or update address information via the Internet, those remote transaction must simultaneously allow for voter registration, just like in-person transactions.[16]

### 3. *This lawsuit is not about universal online voter registration*

The State erroneously conflates what the NVRA requires—simultaneous voter registration with all lawful driver's license transactions—with universal, online voter registration. MTD at 17-18.[17] In doing so, the State exaggerates the remedy sought by Plaintiffs.

The State is correct that the NVRA does not require states to offer driver's license transactions online. Plaintiffs agree that, pursuant to the NVRA, Texas could lawfully require all drivers' license holders to appear at DPS in person to renew their license or update their address. But, because the State permits certain driver's license transactions to occur online, Defendants must ensure that these online transactions comply with the NVRA.

---

[16] *See* U.S. Dep't of Justice, The National Voter Registration Act of 1993: Questions and Answers, http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php (last visited May 27, 2016).

[17] Defendants show even greater confusion by citing a law discussing research by the Election Assistance Commission on "*voting* through the Internet"—an issue that has no bearing on the NVRA's voter *registration* mandates. MTD at 17, n.11 (emphasis added).

The remedy Plaintiffs seek would permit just a subsection of Texas driver's license holders to register to vote or update their voter-registration address information online, as opposed to universal, online voter registration, which would apply to a far larger population of voters.[18] Texas law only permits online renewals for U.S. citizens with a Social Security number and electronic signature on file who most recently renewed in person, MTD at 4, thereby sharply limiting the number of individuals who can renew their license online and, by extension, register to vote in that manner. Online change-of-address transactions are permitted for a greater number of users, but transmitting this data would merely serve to update a voter's existing voter registration files—ensuring that the State's voter rolls are more accurate and thus more secure, consistent with the purposes of the NVRA. *See* 52 U.S.C. § 20501(b)(3), (4).

Far from asking the State to impose any radical new program, Plaintiffs seek to use existing DPS processes to comply with clear, longstanding federal law. Again, DPS already electronically captures the information necessary to register a voter or to update a voter's address information. DPS also already asks each driver's license holder if he or she would like to register to vote during each online renewal and change-of-address transaction. Contrary to the State's characterization, Plaintiffs' position is straightforward: In order to comply with the NVRA, DPS must transmit the registration information it already receives to election officials.

### F. Plaintiffs State Cognizable Equal Protection Claims

 "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." [*Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)]. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." [*Bush v. Gore*, 531 U.S. 98, 104-105 (2000)].

---

[18] For instance, under House Bill 76, which failed to pass in the 2015 legislative session, ***any*** person with a driver's license or personal ID card would have been able to register to vote online—a much larger population.  H.B. 76, 84th Leg., Reg. Sess. (Tex. 2015), *available at* http://www.legis.state.tx.us/tlodocs/84R/billtext/pdf/HB00076I.pdf#navpanes=0.

*Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). Accordingly, the Equal Protection Clause applies when the "state either classifies voters in disparate ways" or "places restrictions on the right to vote." *Id.* (citations omitted). Here, Plaintiffs have plausibly alleged that Defendants subjected them to disparate treatment, causing them to be disenfranchised, for no reason other than how they choose to complete a valid DPS transaction. Compl. ¶¶ 33-57.

Defendants wrongly assert that Plaintiff's Equal Protection claims are invalid because Plaintiffs fail to adequately allege that two similarly situated groups of citizens were treated differently by the State's voter registration policies at DPS. MTD at 18-19. But there is no dispute that Plaintiffs submitted a valid change-of-address form for purposes of updating their licenses, or that, had those Plaintiffs submitted their change-of-address forms in person, the State would have updated their registration records. Instead, Defendants repackage their flawed arguments about Plaintiffs' supposed failures to sign the registration applications, *see* MTD at 19, which fail for the reasons set forth above. Defendants have offered no non-arbitrary justification for unlawfully burdening Plaintiffs' right to vote.

## CONCLUSION

For all of these reasons, Plaintiffs request that this Court deny Defendants' Motion in full.

Dated: May 31, 2016                    Respectfully submitted,

Peter A. Kraus (*pro hac vice*)
Texas Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com

By: /s/ Caitlyn E. Silhan
Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com

WATERS & KRAUS, LLP
3219 McKinney Avenue
Dallas, Texas  75204
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May, 2016, a true and correct copy of the foregoing *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* was served upon counsel of record via the Court's ECF system.

*/s/ Caitlyn E. Silhan*
Caitlyn Silhan