IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, ET AL.,<br>    *Plaintiffs,*<br><br>v.<br><br>CARLOS H. CASCOS, IN HIS OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE AND STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY,<br>    *Defendants.* | § § § § § § § § § § § § | NO. 5:16-CV-00257 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

Carlos H. Cascos, in his official capacity as Texas Secretary of State, and Steven C. McCraw, in his official capacity as Director of the Texas Department of Public Safety, ("Defendants"), file this reply in support of their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF 7) ("MTD"). Defendants incorporate the arguments raised in that motion, and reply to Plaintiffs' response to that motion (ECF 9) ("Response") as follows:

### I. Plaintiffs' attempts to establish standing are unavailing.

As set forth in Defendants' motion to dismiss, Plaintiffs lack standing to bring this case alleging violations of the National Voter Registration Act ("NVRA").[1] This is because (1) they can establish neither causation nor redressability; (2) their claims are moot; and (3) they have not provided the notice the NVRA requires. MTD at 6-13. Plaintiffs' Response cannot cure these jurisdictional defects.

---

[1] Codified at 52 U.S.C. §§ 20501-20511.

### a. Defendants' causation argument would abrogate the requirement that individuals wishing to register to vote comply with valid State voter registration law—which the NVRA expressly incorporates.

It is Plaintiffs' failure to submit a signed change of address form, rather than any conduct by Defendants, that caused the alleged injury in this case. MTD at 7-9. Plaintiffs downplay their failure to show causation because "Defendants do not argue that Plaintiffs failed to exhaust any procedures required by the NVRA. Instead, Defendants maintain that Plaintiffs failed to follow instructions provided by *DPS*." Response at 8 (emphasis original). Plaintiffs claim that their failure to follow these "instructions provided by DPS…has nothing to do with the *Westfall* case [setting out the test for causation for purposes of standing to bring a constitutional claim] or with Plaintiffs' ability to sue." *Id.* (emphasis deleted). This is wrong.

The "instructions provided by DPS" at which Plaintiffs scoff are necessary to comply with State law—which is part and parcel of the NVRA—and with the NVRA itself. That is, the NVRA, by its terms, covers "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law," and "any change of address form submitted in accordance with State law[.]" 52 U.S.C. §20504(a)(1); (d) (emphasis supplied).[2] Texas law provides that "[a] change of address that relates to a license or card and that is submitted *in person or by mail* serves as a change of address for voter registration unless the licensee or cardholder indicates that the change is not for voter registration purposes." TEX. ELEC. CODE §20.063(c) (emphasis supplied). Texas law further requires a signature, affirming under penalty of perjury that the individual making a change to voter registration information (and later, the individual who shows up to vote) is eligible to vote. TEX. ELEC. CODE

---

[2] Plaintiffs do not challenge any provision of Texas law in this case. In fact, they acknowledge that the NVRA was intended to afford States discretion "'as to how to administer th[e] process and how to integrate it with [each State's] drivers license process.'" Response at 2 n.1 (quoting S. Rep. No. 103-6, at 5-6 (1993) (alteration original)).

§63.002; 1 Tex. Admin. Code §81.58. The NVRA requires this, too. 52 U.S.C. §20504(c)(2)(C)(iii). Thus, the "in person or by mail" requirement of Election Code §20.063(c) allows the State to verify the individual's identity for voter registration purposes, to later check that signature against the poll book, and to effectuate the NVRA's signature requirement.

As explained in Defendants' motion to dismiss, a requirement that individuals provide a physical signature when renewing or changing their voter registration information is wholly consistent with the NVRA. MTD at 14-18.[3] The in-person or by mail submission provided for in the Election Code is, at present, the only means to effectuate Texas's physical signature requirement. *See* P's Ex. C (ECF 1-4) at 25-27. Plaintiffs acknowledge that their alleged injury arises from their failure to follow the "instructions provided by DPS," which require this in-person or by mail physical signature submission. Response at 8. Because Defendants may require such submission, and because Plaintiffs did not satisfy this requirement, their inability to cast a regular ballot on Election Day is not fairly traceable to the Defendants. Instead, it is a result of their own failure to comply with "instructions provided by DPS," which are plainly incorporated into the NVRA. Indeed, to conclude otherwise would be to eviscerate all State requirements for voter registration, which would violate the states' time, place, and manner prerogative. *See, e.g., Crawford v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008).

### b. Plaintiffs do not satisfy the NVRA's notice requirement.

The NVRA specifically guarantees States an "'opportunity to attempt compliance' as to [each particular Plaintiff] 'before facing litigation.'" *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir.

---

[3] Plaintiffs do not dispute that the online process provides individuals with a conspicuous warning that, if they do not complete and submit the mail-in form, their voter registration information will not be updated. Compl ¶40; P's Ex. A at 2 ("Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page.") (emphasis original). This, too, is consistent with the NVRA. 52 U.S.C. §20504(d) (voter registration information need not be updated in change of address transaction where "the registrant states on the form that the change of address is not for voter registration purposes").

3

2014) (citation omitted). Plaintiffs did not provide that opportunity here. As noted in the motion to dismiss, the *Scott* panel concluded that "[p]roviding a potential plaintiff with a voter registration form is 'exactly [the] sort of compliance attempt' that [the NVRA's] 'pre-litigation notice was meant to encourage.'" *Id.* (quoting *Georgia State Conference of NAACP v. Kemp,* 841 F.Supp.2d 1320, 1336 (N.D.Ga. 2012)). Providing voter registration forms is *precisely what the Defendants have already done here*. *See, e.g.,* P's Ex. A (ECF 1-2) at 2; Compl. ¶41. Moreover, Defendants have made Plaintiffs' counsel aware that they "remain happy to provide [] confirmation [of voter registration status] should [Plaintiffs] choose to share address or other identifying information which would allow [SOS] to identify these individuals with particularity." P's Ex. C at 45, *see also Kemp*, 841 F.Supp.2d at 1336 (letter that "offers the assistance of the Secretary of State's office" also demonstrates attempt to comply with the NVRA). Yet such information has not been forthcoming. Instead, Plaintiffs have stridently *refused* to permit the attempt at conciliation that the NVRA contemplates. Thus, their attempts to establish notice are disingenuous. As in *Scott*, "[t]o the extent that [Plaintiffs] seek[] relief for [themselves] in this action, [they] ha[ve] no basis for relief because [they] did not file notice. And consequently, [they are] not entitled to seek relief for others, either." 771 F.3d at 836. Without providing Defendants the opportunity to cure the violations alleged, Plaintiffs have not provided the notice the NVRA requires.

Plaintiffs diminish Defendants' good-faith efforts to assist them in understanding the signature requirement and verifying registration status, arguing that "[i]f states could immunize themselves from suit by simply checking a complainant's registration status or offering to register them after the fact, no individual voter could ever enforce compliance with the NVRA, *frustrating Congress' intent to create a private right of action*." Response at 13 (citing 52 U.S.C. §20510) (emphasis supplied). Plaintiffs miss the point that Congress' "intent" in enacting the NVRA was

4

not to embolden the plaintiffs' bar or to encourage a litigious approach to policy reform. Rather, it was to provide a meaningful mechanism to ensure NVRA compliance where suit would frequently otherwise be barred by the states' sovereign and Eleventh Amendment immunity. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 97–98 (1984); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996); 52 U.S.C. §20510(b)(1)-(2) (delineating a narrow waiver of state immunity for private litigants who satisfy enumerated criteria). In the Fifth Circuit—from which Plaintiffs cite precious little authority—offering the assistance of the Secretary of State and "[p]roviding a potential plaintiff with a voter registration form is 'exactly [the] sort of compliance attempt' that 'pre-litigation notice was meant to encourage.'" *Scott*, 771 F.3d at 863 (citation omitted). This is precisely what Defendants have done here. *See, e.g.*, P's Ex. A at 2. Plaintiffs' refusal to permit Defendants this opportunity divests them of NVRA standing for lack of notice.

   c. **If Plaintiffs have any standing at all, it is limited to the context of online changes of address**.

If the Court is to exercise any jurisdiction over this case, that jurisdiction must be limited to the context in which the Plaintiffs themselves claim to have suffered particularized injury—online changes of address. That is, Plaintiffs have only alleged that they sought to change their addresses online, not that they sought to *renew* their driver licenses online. *See* Compl. ¶¶46-49 (Hernandez and Stringer each claim to have "updated his driver's license address online," while Watkins and Woods each claim to have "changed his [or her] driver's license address online"). Yet, they seek declaratory and injunctive relief in connection with online driver license renewals, in addition to online changes of address. It is a bedrock principle of standing that alleged injury must be particularized, and "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (collecting cases) (citations omitted). Online changes of address are the only

5

context in which Plaintiffs themselves claim to have been denied any right. Thus, they have standing only in that context, to the extent they have any standing at all.

II. **The Response does not save this case from dismissal for failure to state a claim.**

The key facts of this case are not disputed. By law, Defendants require individuals who wish to change their voter registration information to submit an image of their physical signature, either in person or by mail. TEX. ELEC. CODE §20.063(c). Based upon the Defendants' available resources and the requirements of State law, this signature can only be collected in person or by mail; Defendants have not received a legislative appropriation to provide for its collection electronically. P's Ex. C at 25-27. Nevertheless, Defendants allow individuals to update their driver license addresses online, which the Plaintiffs here claim to have done. During those transactions, Plaintiffs were provided with a link to a voter registration application, and instructed to sign and mail the application in order to update their addresses for voter registration purposes. Compl. ¶¶40-41; P's Ex. A at 2. Plaintiffs did not do this, thus, Defendants did not update their voter registration information. On this basis, Plaintiffs seek declaratory relief that "Defendants have violated the NVRA by failing to provide for simultaneous voter registration with online driver's license renewal [and] change-of-address forms." Compl. at 17, Requests for Relief i, ii. This relief cannot be granted on the facts alleged.[4]

a. **Neither the NVRA's text, legislative history, nor precedent imposes the "simultaneous registration" requirement Plaintiffs claim they were denied.**

In their Response, Plaintiffs doggedly insist that states must provide "voter registration simultaneous with any driver's license application, renewal, or change-of-address transactions."

---

[4] The remaining requests for relief set forth in the Complaint, likewise, depend upon an award of requests i and ii.

6

Response at 1.[5] They claim that Defendants are "refusing to offer simultaneous voter registration to those who renew or update their driver's licenses online." Reply at 1. This does not state a violation of the NVRA for two independent reasons. First, the NVRA does not require "simultaneous registration." 52 U.S.C. §20504(a)(1); (c)(1). Instead, the NVRA provides for each state to "establish *procedures to register to vote* in elections for Federal office *by application made simultaneously* with an application for a motor vehicle driver's license." *Id.* §20503(a)(1). In fact, the NVRA expressly contemplates that information collected in connection with changes of address and renewals "shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance." *Id.* §20504(e)(l). Congress would not have specifically provided state voter registration agencies with 10 days to transmit such information to State election officials—who are responsible for updating that voter registration information—had the Act required instantaneous updates to the voting rolls. It is unsurprising, then, that Plaintiffs

---

[5] *Compare, e.g.,* Response at 2 (mentioning "the simultaneous registration required by the NVRA") (no citation in Response), *with* Response at 2 n.1 ("Congress intended States to ideally create a system that 'should be so designed as to include the voter registration *application* as a simultaneous, automatic part of the overall process…'") (quoting S. Rep. No. 103-6 at 6 (1993)). *See also* Response at 1 (claiming NVRA requires "voter registration simultaneous with any driver's license application"), Response at 2 n. 1 (referring to "the requirement for simultaneous registration"), Response at 4 (explaining that Plaintiffs are suing because "Texas does not offer simultaneous voter registration or address updates…"), Response at 8 (mentioning a "statutory right to be offered simultaneous voter registration"), Response at 17 (claiming that "States must offer simultaneous voter registration to any applicant who submits a renewal application or change-of-address form…"), Response at 18 (asserting that "the NVRA requires [] simultaneous voter registration with all lawful driver's license transactions.") *See also* Compl. at 9 n.1 "'Simultaneous' means 'existing or occurring at the same time: exactly coincident.'" (citation omitted).

Similar imprecision is pervasive in Plaintiffs' response. For instance, they also claim that "the State must use a *simultaneous* application and cannot require duplicative information," Response at 14 n.11. But the NVRA makes plain that duplicative information is permissible, so long as that information is limited to the "minimum amount of information necessary to prevent duplicate voter registrations and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. §20504(c)(2)(B). The NVRA leaves this determination to the states, consistent with their time, place, and manner prerogative and discretion to implement the NVRA in the context of their voter registration framework. *See, e.g., Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2253 (2013), Response at 2 n.1 (quoting S. Rep. No. 103-6, at 5-6 (1993).

7

identify no authority to support their bold and unprecedented reading that the NVRA requires "simultaneous registration" the moment an NVRA-covered transaction takes place.

Plaintiffs emphasize a duty to construe statutes according to their plain meaning. Response at 16-17. Defendants agree that statutes should be applied based upon their plain meaning, but this approach undercuts Plaintiffs' argument. That is, when the NVRA was enacted in 1994, the idea that it would ever apply to online transactions would not have occurred to Congress. In 1994, the internet was in its infancy, and few government functions were computerized to the point where they took place in that medium. Plaintiff's argument that Congress specified particular requirements for online, NVRA-covered transactions defies the plain meaning of the text as written. This is particularly so when the Act is considered in the of its 1994 enactment.[6]

The NVRA's plain meaning requires a simultaneous *opportunity to apply* to register to vote (or renew or change voter information), not a right to have such registration, renewal, or change affected instantaneously. Even under this meaning, Plaintiffs still have not stated a claim. Plaintiffs' own allegations demonstrate that they *were* offered an opportunity to update their voter registration information when updating their driver license addresses online. Compl. ¶40; P's Ex. A at 2. That they did not complete the steps necessary to do so does not amount to any NVRA violation by the Defendants, who have done what the NVRA requires. Indeed, the NVRA does not specify a particular way that it must be applied in the context of online transactions—it did not even contemplate such transactions. And, in any event, Plaintiffs were not denied the *opportunity* to update their voter registration information when they interacted with DPS. They have therefore failed to state a claim upon which relief may be granted.

---

[6] The NVRA specifically provides that, in order to be covered, Motor Voter transactions must also comply with state law. Because Texas law must be ignored in order to grant the relief requested, Plaintiffs' "plain meaning" arguments further work against them. *See supra*, Part I(a).

### b. Plaintiffs' attempt to escape the signature requirement under Texas law and the NVRA is unpersuasive.

Plaintiffs attempt to avoid this inevitable result with a tepid suggestion that "applicants, like Plaintiffs, who attempt to register to vote or update information online with DPS have electronic signatures already on file with DPS, and that these electronic signatures are deemed sufficient for other DPS transactions." Response at 15. This misunderstands what it means to state a claim *under the NVRA*. That is, Plaintiffs did not submit an image of their signature, as Texas law requires for *voter registration* purposes. 1 TEX. ADMIN. CODE §81.58 ("a voter's signature may be captured by an electronic device for the signature roster. An 'Electronic Signature' is defined as a digitized image of a handwritten signature.")[7] Texas' requirements for driver licenses are irrelevant for purposes of *voter registration*, as NVRA-covered transactions still must comply with relevant state voter registration law. 52 U.S.C. §20504(a)(1); (d). Plaintiffs' arguments about what Texas considers sufficient for driver licensing, therefore, do not revive their lawsuit.

Nevertheless, Plaintiffs persist in their attempts to continue this case to discovery with the bizarre suggestion that Defendants plain statement of the applicable statutes—applied in the context of *Plaintiffs'* factual allegations—makes a "fact-laden argument" that "cannot be the basis for dismissal at this early juncture." Response at 15 (citing *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) ("disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence, unless those facts are immaterial to the outcome.") Plaintiffs do not, however, identify any question of fact that is disputed. Instead, they are displeased with the result the facts

---

[7] To the extent the Court chooses to exercise jurisdiction over Plaintiffs' claims related to voter registration renewals, *supra*, Part I(c), the NVRA requires a signature, too. 52 U.S.C. §§20504(c)(2)(C)(iii) (requiring, for voter registration purposes, "the signature of the applicant, under penalty of perjury"). *See also*, e.g., 139 Cong. Rec. S5642-01 (daily ed. May 6, 1993) (statement of Sen. Ford) ("This bill [the NVRA] requires that, on every application for registration, the requirements for eligibility must be clearly set forth, including citizenship. And every applicant signs a statement that they meet each and every requirement, and that statement is signed under penalty of perjury.")

9

compel—they have failed to state a claim upon which relief can be granted, and this case should be dismissed.

### c. Requiring that updates to voter information be accompanied by a physical signature—and therefore submitted in person or by mail—does not violate the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In the context of voting, the Supreme Court held in *Dunn v. Blumstein* that citizens enjoy "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." 405 U.S. 330, 336 (1972). The Court was quite clear—"[t]his 'equal right to vote,' is not absolute; the States have the power to impose voter qualifications, and to regulate access to the franchise in other ways." *Id.* (citations omitted).

Plaintiffs claim that Defendants have violated the Equal Protection Clause "[b]y arbitrarily subjecting Plaintiffs to disparate voter registration standards[.]" Compl. ¶59. But the requirement the State has imposed—a physical signature, which must be submitted by mail when individuals choose to update their driver licenses online—is required of all Texans who wish to update their driver license information for voter registration purposes, no matter how they choose to do so. Plaintiffs do not claim that other individuals who changed their addresses online and did not mail in the form had their information updated. They have therefore failed to state an Equal Protection claim. *See, e.g., Cordi–Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) ("[T]he proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-a-vis the government entity without such distinguishing or

mitigating circumstances as would render the comparison inutile."). Thus, as with the NVRA, Plaintiffs have failed to state a claim under the Equal Protection Clause.

## CONCLUSION

Plaintiffs claim that, if Defendants do not read an instantaneous registration requirement into the NVRA—while also reading *out* the signature requirement of Texas law and the NVRA itself—they are disenfranchising voters. This is preposterous. For the reasons set forth herein and in Defendants' motion to dismiss, the Plaintiffs' case should be dismissed in its entirety for lack of jurisdiction, and in the alternative, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4080
(512) 320-0667 FAX
anna.mackin@texasattorneygeneral.gov

ATTORNEYS DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on this the 21st day of June, 2016, a true and correct copy of the foregoing was filed electronically with the Court and delivered via the CM/ECF system to:

Peter A. Kraus
pkraus@waterskraus.com

Charles S. Siegel
siegel@watersdraus.com

Caitlyn E. Silhan
csilhan@watersdraus.com

Mimi Marziani
mmarziani@battlegroundtexas.com

Hani Mirza
hani@texascivilrightsproject.org

Wayne Krause Yang
wayne@texascivilrightsproject.org

ATTORNEYS FOR PLAINTIFFS

/s/Anne Marie Mackin
Anne Marie Mackin
Assistant Attorney General