UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE and STEVEN C. McCRAW, IN | § | |
| HIS OFFICIAL CAPACITY AS THE | § | |
| DIRECTOR OF THE TEXAS | § | |
| DEPARTMENT OF PUBLIC SAFETY, | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION FOR SANCTIONS FOR VIOLATING THE COURT'S ORDER MANDATING PRODUCTION OF DOCUMENTS BY JANUARY 13, 2017

Pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby move the Court for an order imposing sanctions against Defendants for violating the Court's December 14, 2016 Order (Dkt. # 37) mandating the production of documents no later than January 13, 2017.

Defendants have repeatedly and without justification ignored the Court's Order and refused to provide discovery in this case. They failed to even collect the bulk of responsive documents until days before they were to be produced, and produced a mere 1.7% of them on the Court's January 13, 2017 deadline. This conduct prejudices Plaintiffs' ability to prepare for and take scheduled depositions and jeopardizes Plaintiffs' ability to meet the scheduling order deadlines, including the expert designation and report deadline on April 3, 2017. Plaintiffs have exhausted all reasonable efforts to resolve the dispute with Defendants.

Accordingly, and as set out below, Plaintiffs request that the Court hold Defendants in contempt, order them to immediately produce documents responsive to Plaintiffs' requests for

1

production, and order that they pay any costs and fees resulting from their failure to comply with the Court's previous Order, including those associated with re-deposing witnesses, if necessary, and attorneys' fees and costs associated with bringing the instant motion.

## I.      Statement of Facts

Plaintiffs served their first set of requests for production nearly five months ago, but Defendants refused to produce a single responsive document without first obtaining a court order directing them to do so. *See* Dec. 14 Order Granting Plaintiffs' Motion to Compel (Dkt. # 37) at p. 2; *see also* **Exhibit A**, Defendants' Responses and Objections to Plaintiffs' First Requests for Production at p. 5. On October 28, 2016, Plaintiffs filed a motion to compel Defendants to produce the requested documents (Dkt. # 30), and this Court granted the motion on December 14, issuing an order that explicitly directed Defendants to produce the requested documents by January 13, 2017. Dec. 14 Order (Dkt. # 37). Defendants moved the Court to reconsider its Order (Dkt. # 38); the Court denied the motion (Dkt. # 43).

Defendants waited until *the day before the court-ordered deadline* to advise Plaintiffs that they would not be able to produce the majority of responsive documents by the deadline. *See* **Exhibit B**, email correspondence between A. Mackin and C. Silhan dated Jan. 12, 2017 (summarizing discussion regarding the production delay). Defendants stated that they would be producing about 2,000 pages of documents on the deadline, and should be able to produce the remaining 10,000 pages of the documents on Tuesday, January 17. **Ex. B.**  Based on this representation, Plaintiffs agreed to extend the production deadline until noon on January 17. **Ex. B.**  Defendants subsequently advised that the production would total more than 55,000 pages of documents, which Defendants' counsel received from Defendants the week of the deadline. **Exhibit C**, email from A. Mackin to C. Silhan dated Jan. 17, 2017.

2

On January 13, Defendants produced a mere 913 pages of documents—*less than two percent* of the 55,000 pages counsel for Defendants said she had received. *See* **Exhibit D**, email from P. Slager to C. Silhan dated Jan. 13, 2017; **Exhibit E**, email from P. T. Martinez to C. Silhan attaching production log; **Exhibit F**, Stringer Production Log.  Of these 913 pages, more than 20% of that production—close to 200 pages—duplicates what Defendant Department of Public Safety (DPS) produced to Plaintiffs' counsel Mimi Marziani *almost two years ago* in response to Public Information Act requests made in the winter and early spring of 2015.[1] Although Plaintiffs have requested documents concerning DPS' compliance with Section 5 of the NVRA—the central issue in this case—since their first request for production in August of 2016, not one of the documents produced in the first batch even explicitly references the National Voter Registration Act (NVRA).

Defendants failed to produce a single document on Tuesday, January 17, and declined to contact Plaintiffs with an update or explanation. **Exhibit G**, email from C. Silhan to A. Mackin dated Jan. 17, 2017.

In light of the foregoing, and because they must receive and review the production before upcoming depositions, Plaintiffs requested that the remaining documents be produced by January 18. **Ex. G**. In response, counsel for Defendants gave the following excuses for their violation of the Court's order and the parties' agreement:

(1) there are more than 55,000 pages worth of responsive documents;
(2) her clients did not collect, and her office did not receive and upload, these documents until the week of the Court's deadline;
(3) she is the only attorney assigned to the matter; and
(4) her office lacks sufficient manpower and resources to comply with the order.

---

[1] For instance, *see* Exhibit C to Plaintiffs' Original Complaint (Dkt. # 1-4), wherein Plaintiffs cite the document entitled "DPS Internal Communication – not voter specific." This document was sent to Plaintiffs in March 2015 in response to their Public Information Act request and then cited both in Plaintiffs' notice letter and attached to the complaint. Defendants waited until January 13, 2017 to produce the very same document, despite having possessed it for nearly two years.

3

**Ex. C**.

    Plaintiffs replied, noting that:

(1) the document requests were made months ago, and Defendants therefore had ample time to collect responsive documents long before the deadline to produce them;

(2) Defendants previously represented to Plaintiffs and this Court that they were prepared to respond on a rolling basis to Plaintiffs' requests for production on or before December 1, 2016 or within 21 days of the Court's ruling on their motion for protective order;[2] and

(3) Defendants' repeated delays have required the unnecessary expenditure of additional resources on both sides.

**Exhibit H**, email from C. Silhan to A. Mackin dated Jan. 17, 2017.

    Plaintiffs requested that Defendants propose a reasonable modified production timeline that would not prejudice Plaintiffs' ability to proceed under the parties' agreed-upon, amended scheduling order. **Ex. H**; Amended Scheduling Order (Dkt. # 30). Instead, Defendants proposed extending the deadline by another three weeks, through February 8, 2017—*26 days after the court-ordered deadline*. **Exhibit I**, email from A. Mackin to C. Silhan dated Jan. 18, 2017. Given that a critical deposition of one of only three individuals on Defendants' Rule 26 disclosures is scheduled on January 31, this schedule is unworkable. **Exhibit J**, Notice of Deposition of Sheri Gipson; **Exhibit K**, Defendants' Rule 26 Disclosures.

    Defendants failed to produce any additional documents on January 17 or 18. Instead, Defendants produced an additional 5,289 pages six days after the Court's deadline, on January 19. **Exs. E and F**. As of the date of this motion, they have failed to produce any of the other more than 55,000 pages of documents.

    Plaintiffs are obligated to complete discovery under the Amended Scheduling Order by May 15, 2017. (Dkt. # 30). Defendants' willful and unexcused refusal to provide documents

---

[2] *See* Attachment to Defendants' Motion for Leave to Respond out of Time (Dkt. # 35-1); *see also, e.g.,* Dec. 14 Order (Dkt. # 37) at n.3, and **Ex. A** (Defendants' responses to all but two requests for production).

4

jeopardizes Plaintiffs' ability to complete discovery, respond to dispositive motions, and be ready for trial.

## II.    Argument

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, if a party fails to obey a discovery order, the Court "may issue further just orders," including "treating as contempt of court the failure to obey an order[.]" Fed. R. Civ. P. 37(b)(2)(A). The court has broad discretion under Rule 37, *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985), but "must order the disobedient party" or attorney advising the party to pay expenses caused by the violation of the court order, including attorney's fees, unless the failure was "substantially justified" or other an award of expenses would be unjust. Fed. R. Civ. P. 37(b)(2)(C).

### A.  This Court Ordered Defendants to Produce All Responsive Documents by January 13, but Defendants Produced Fewer Than 2% of the Documents on That Date

The Court's December 14, 2016 Order was clear and unequivocal: "Defendants must produce the requested documents within 30 days from [December 14, 2016] unless the parties agree in writing to a different schedule for production." Order (Dkt. # 37) at p. 3. According to Defendants, there are more than 55,000 pages of responsive documents, yet they produced 913 pages—just 1.7% of these allegedly responsive documents—30 days after the Order on January 13, 2017. **Exs. C-F**.

Defendants waited until the day before the deadline to notify Plaintiffs that they would not produce all of the documents in compliance with the Court's Order. **Ex. B**. Plaintiffs in good faith agreed to extend the deadline for production to noon on the following Tuesday, January 17, **Ex. B**, but that deadline came and went without a word from Defendants. **Ex. G**. On January 19,

Defendants produced 5,289 pages. **Exs. E and F**. As of the filing of this motion, they have failed to produce any of the other more than 55,000 pages of documents.

### B. Defendants' Violation of the Court's Order Warrants Sanctions Under Rule 37(b)

Rule 37(b) authorizes the Court to impose a variety of sanctions against Defendants for failing to obey a court order, including deeming facts established, prohibiting evidence, and entering a judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). A court may impose sanctions under Rule 37(b) even where a party belatedly complies with the discovery order. *Heptinstall v. Blount*, 3 F.3d 436 (5th Cir. 1993) (collecting cases).

If Defendants continue to disregard their discovery obligations and defy court orders, harsher sanctions may be warranted. At this point, however, Plaintiffs' request is straightforward and reasonably cabined: Given the harm already inflicted and the ongoing prejudice Plaintiffs are suffering, Plaintiffs ask that the Court hold Defendants in contempt under Rule 37(b)(2)(A)(vii). Defendants should be order to pay the reasonable expenses, including Plaintiffs' attorney's fees, caused by their failure to comply with the December 14, 2016 Court's order, pursuant to Rule 37(b)(2)(C).

### 1. Defendants Should Be Held in Contempt

Rule 37 authorizes the Court to treat Defendants' failure to obey its order as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii). "Civil contempt is 'wholly remedial' . . . and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968). *United States v. United Mine Workers*, 330 U.S. 258 (1947) lists the factors considered in the imposition of a civil contempt sanction: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose;

and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (citing 330 U.S. 258 (1947)).

First, as set out above and in further detail *infra* at II.B.2, Defendants' noncompliance prejudices Plaintiffs' ability to meet their obligations under the Amended Scheduling Order (Dkt. #30), and will require that they re-take at least one deposition.

Second, as the record before the Court makes clear, Defendants will not honor their discovery obligations of their own volition. They require Court intervention to coerce their compliance with the Court's December 14 Order, and holding Defendants in contempt is the most effective remedy the Court can fashion to compel them to do so.

Third, the Defendants are large state agencies with experience litigating voting rights cases larger than this one. Ordering them to immediately produce documents requested almost five months ago and promised as early as December 1 will not unduly burden them.

Lastly, it is clear that Defendants' disregard of the Court's Order is willful. Despite the fact that Plaintiffs served their first set of requests for production *in August*—and despite assuring the Court and the Plaintiffs that they would be able to produce documents as early as December 1—Defendants only provided the bulk of the 55,000 pages of allegedly responsive documents to their counsel the week of January 9. This willful delay is unjustifiable—January 9 is *more than 130 days after Defendants received Plaintiffs' first requests for production*, more than 100 days after Defendants served responses and objections them, almost 40 days after Defendants' own arbitrary deadline of December 1, and more than 25 days after the Court's Order mandating the production by January 13. Defendants never objected to the Order, never asked the Court to modify it, and never informed the Court that it could not or would not obey it. Instead, their counsel waited until *the day before* the deadline to advise Plaintiffs that Defendants would not be complying with the Court's Order, and declined to take advantage of Plaintiffs' good faith

extension of the deadline. Based on the foregoing, it is apparent that Defendants never intended to comply with the Order and certainly never intended to produce any responsive documents by their own December 1 deadline.

For all of these reasons, the Court should hold them in contempt.

> ### 2. The Immediate Production of Responsive Documents Is Required to Avoid Further Prejudice to Plaintiffs and Texas Voters

Defendants have had *months* to collect and review documents responsive to Plaintiffs' requests for production, and have no justification for their failure to produce them by the deadline set by this Court in its December 14, 2016 Order. Defendants' refusal to cooperate in discovery has already prejudiced Plaintiffs, forcing them to postpone 30(b)(6) depositions originally noticed for September and requiring  that they postpone other depositions in anticipation of receiving and reviewing documents by the court-ordered deadline. *See* Order (Dkt. # 37) at p. 2; *see also* **Exhibit L**, email from C. Champion to A. Mackin dated Dec. 16, 2016 (discussing the need to schedule Sheri Gipson's deposition after Plaintiffs' receipt and review of the document production).[3]

Plaintiffs cannot afford to suffer any additional delays, and need to review the requested documents *now* in order to depose Defendants and conduct other necessary discovery in advance of the April 3, 2017 expert disclosure deadline, the May 15 discovery cut-off date, the June 3 dispositive motion deadline, and the October 2, 2017 trial. (Dkt. # 30.) If Plaintiffs are forced to wait until after Defendants' proposed extension through February 8—or likely one to two weeks after, depending on the time required for Plaintiffs to review the production—to resume deposing

---

[3] Plaintiffs were able to depose two individuals—Manuel Rodriguez, a current DPS employee, and Robert Myers, a former DPS employee—in December and January, respectively. After reviewing DPS' Public Information Act responses, Plaintiffs' determined that they would probably be able to cross examine these witnesses without the documents requested in Plaintiffs requests for production. However, without Defendants' documents, it is impossible to know if Plaintiffs' opportunity to cross examine these witnesses was full and fair.

witnesses in this case, they will be unable to meet these discovery obligations under the Amended Scheduling Order.

Further, because Defendants will need ample time in advance of the 2018 federal election to implement any reforms ordered as a result of this litigation, pushing back the discovery schedule —or the trial date—to accommodate Defendants' dilatory conduct would greatly prejudice Plaintiffs as well as countless similarly-situated Texas voters.

Defendants should be ordered to produce the responsive documents immediately.

### 3. Defendants Should Also Be Ordered to Pay Plaintiffs' Expenses and Attorneys' Fees Caused by Their Failure to Comply with the Court's Order

To avoid further prejudice and meet their obligations under the Amended Scheduling Order, Plaintiffs must proceed with further discovery in the case. Specifically, they must go forward with deposing Sheri Gipson—again, one of just three individuals listed on Defendants' Rule 26 disclosures—as scheduled on January 31, and proceed with the 30(b)(6) depositions in early to mid-February. Because Plaintiffs will need to hold these depositions open and continue them upon receipt and review of the documents that were ordered to be produced by January 13, Defendants should have to bear any reasonable expenses incurred as a result, including court reporter fees, travel expenses, and attorneys' fees. Fed. R. Civ. P. 37(b)(2)(C). Because Defendants' failure to comply with the Court's Order required Plaintiffs to file the instant motion for sanctions, Defendants should be required to pay Plaintiffs' reasonable expenses and attorneys fees associated with bringing this motion. *Carter v. Burlington Northern Santa, LLC*, 2016 WL 3388707 *4 (N.D. Tex. Feb. 4, 2016); *Jane Envy, LLC v. Infinite Classic Inc.*, 2016 WL 5373035 *7 (W.D. Tex. Sept. 26, 2016) (agreeing that attorneys' fees should be awarded in connection with bringing a motion for sanctions).

### 4. Defendants Have No Justification for Disobeying the Court's Order

Defendants claim that their failure to comply with the Court's order is justified for four reasons: (1) there are more than 55,000 pages of responsive documents; (2) Defendants did not collect, and the Attorney General's Office did not receive and upload, these documents until the week of the Court's deadline; (3) the Attorney General's Office has only assigned one attorney to the matter; and (4) the Attorney General's Office lacks sufficient manpower and resources to produce the documents as required by the Order. **Ex. C**. None of these excuses have merit.

First, a single attorney reasonably can be expected to review 55,000 pages over the course of the several months that passed between Plaintiffs' requests for production, Defendants' voluntary December 1 deadline to begin production, and the Court's mandatory deadline to complete production.

Second, that Defendants declined to make these pages available for their attorney's review until the very week they were due to Plaintiffs is no justification at all. Instead, it underscores the need for the Court's intervention, through a sanctions order, to ensure that preventable delays do not continue.

Third, Defendants' arguments concerning their lack of resources cannot justify their delay. This case involves issues of the utmost importance—the Plaintiffs' right to vote and to equal protection of the law. Surely, the State of Texas has a public duty to properly staff and resource litigation concerning its citizens' fundamental rights.

Moreover, the main questions presented are relatively straightforward factual and legal questions concerning Texas' compliance with federal laws mandating that it register voters during driver license transactions. The Defendants have been charged with carrying out the NVRA since the mid-1990s, and have been required to comply with the record-keeping provisions contained therein since that time. The Attorney General's office is charged with representing these agencies in litigation and, as Defendants have reminded the Court, has recent

10

experience with voting rights cases larger than this one. *See, e.g.,* Defendants' Motion for Partial Reconsideration (Dkt. # 38) at p. 2, Plaintiffs' Response in Opposition to Defendants' Motion (Dkt. # 41) at pp. 3-4. It is thus implausible for Defendants to claim that they lack the person-power and resources conduct discovery as contemplated by the Federal Rules of Civil Procedure and as ordered by this Court. In any event, even if Defendants' claim of inadequate resources were legitimate, Defendants have absolutely no excuse for failing to anticipate and address it sooner with the Plaintiffs and with the Court.

Because Defendants have no substantial justification for disobeying the Court's Order, they should be required to pay Plaintiffs reasonable expenses and attorneys fees caused by their failure.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court hold Defendants in contempt for disobeying the Court's December 14 Order, order them to immediately comply with the Order and produce documents responsive to Plaintiffs' requests for production, and order that they pay any costs and fees resulting from their failure to comply with the Court's previous Order, including those associated with re-deposing witnesses and attorneys fees and costs associated with bringing the instant motion.

Dated: January 23, 2017                          Respectfully submitted,

                                                 By: /s/ Caitlyn E. Silhan
                                                 Peter A. Kraus (*pro hac vice*)
                                                 Texas Bar No. 11712980
                                                 kraus@waterskraus.com
                                                 Charles S. Siegel
                                                 Texas Bar No. 18341875
                                                 siegel@waterskraus.com
                                                 Caitlyn E. Silhan
                                                 Texas Bar No. 24072879

csilhan@waterskraus.com
Rachel A. Gross *(pro hac vice)*
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Cassandra Champion
Texas Bar No. 24082799
champion@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

***ATTORNEYS FOR PLAINTIFFS***

## **CERTIFICATE OF CONFERENCE**

I certify that Plaintiffs' counsel made reasonable efforts to confer with Defendants' counsel Anna Mackin about the instant motion, but have not received a response. On January 23, 2017, Plaintiffs' Counsel Hani Mirza contacted Ms. Mackin my phone and left a detailed voice message about Plaintiffs' Motion for Sanctions. He has not received a response as of the time of this filing. Accordingly, Plaintiffs presume this motion is opposed.

/s/ Caitlyn E. Silhan
Caitlyn E. Silhan

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of January, 2017, a true and correct copy of the foregoing *Plaintiffs' Motion for Sanctions for Violating the Court's Order Mandating Production of Documents by January 13, 2017,* with supporting exhibits and proposed order, were served upon counsel of record via the Court's ECF system.

/s/ Caitlyn E. Silhan
Caitlyn E. Silhan