**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JARROD STRINGER, et al.                    )
                                           )
              *Plaintiffs*                 )
                                           )
v.                                         )        Civil No. 5:16-CV-257-OLG
                                           )
ROLANDO PABLOS, in his official capacity   )
as Texas Secretary of State, and          )
STEVEN C. McCRAW, in his official         )
capacity as Director of the                )
Texas Department of Public Safety          )
                                           )
              *Defendants*                 )

## O R D E R

Pending before the Court is Defendants' motion to dismiss for lack of jurisdiction and
failure to state a claim (docket no. 7). The Court has considered the motion, Plaintiffs' response
(docket no. 9) and Defendants' reply (docket no. 12).[1] Upon consideration of the arguments
submitted by the parties and the applicable law, the Court concludes that Defendants' motion
should be DENIED for the reasons set forth below.

### Background

Plaintiffs are four Texas voters who, after moving, completed change-of-address
transactions through the Texas Department of Public Safety's (DPS) online Texas Driver License
Renewal and Change of Address system (the DPS online system). Docket no. 1 at ¶¶ 16, 46-50.
During those transactions, they checked a box to indicate that "I want to register to vote." Docket
no. 1 at ¶¶ 36-38, 46-49. Thereafter, they believed that their voter registration had been updated.
Docket no. 1 at ¶ 50. However, as the DPS online system advises users, checking the box to

---

[1] Plaintiffs later filed a Notice of Supplemental Authority (docket no. 18), which the Court has
also considered.

indicate that "I want to register to vote" does not actually register users to vote or update their voter registration. Docket nos. 1 at ¶ 40; 1-2 at 2. Rather, the receipt page that appears when users complete their transaction provides a link that users can follow to a destination page where they can download a physical voter registration form, which they must then print, complete, and submit either in person or by mail. Docket no. 1 at ¶ 40-42. As a result of their outdated voter registration, Plaintiffs were unable to vote using regular ballots in elections held in 2014, and, in one Plaintiff's case, 2015. Docket no. 1 at ¶¶ 46-52. Three Plaintiffs were only able to cast provisional ballots, and two of them were later notified that their ballots had not been counted. Docket no. 1 at ¶¶ 46, 48, 49. The fourth Plaintiff was permitted to vote only for state-wide candidates. Docket no. 1 at ¶ 47.

Plaintiffs claim that Defendants' administration of voter registration through the DPS online system violates National Voter Registration Act (NVRA) "motor voter" provisions that require "[s]imultaneous application for voter registration and application for motor vehicle driver's license[.]" 52 U.S.C. § 20504 (2012); Docket no. 1 at ¶¶ 59, 62-67, 70-74. Plaintiffs also raise a claim under the Equal Protection Clause. Docket no. 1 at ¶¶ 58-59. In their motion seeking dismissal of Plaintiffs' claims, Defendants argue that Plaintiffs lack standing because their improper voter registration was caused by their own failure to complete and submit physical voter registration forms after completing their transactions through the DPS online system; because they have not pleaded that they remain unregistered to vote at their new addresses; and because Plaintiffs have not provided the required pre-suit notice of their claims. Docket no. 7 at 7-13. Defendants also argue that Plaintiffs have failed to state claims because they acknowledge not having submitted signed voter registration applications with their updated addresses; the

NVRA does not require states to provide online voter registration; and because Plaintiffs have not identified similarly situated individuals who were treated differently than them.

## Legal Standards and Analysis

### A. Standing

When a court lacks statutory or constitutional power to hear a case, including for reasons of mootness or lack of standing, a party may move for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). A plaintiff's failure to show their standing, the case's ripeness, and the court's subject matter jurisdiction may be established by the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To establish Article III standing, a plaintiff must show an "injury in fact" that is concrete, particularized, and actual or imminent; that the injury in fact is "fairly traceable" to the challenged conduct of the defendant; and that it is likely, not merely speculative, that the injury can be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Defendants argue that Plaintiffs have failed to establish the causation element necessary for Article III standing because Plaintiffs' injury stemmed from their own failure to print, complete, and submit physical voter registration forms as instructed during their online transactions. Defendants rely upon the holding of the Fifth Circuit in *Westfall v. Miller*. In that case, the court found a lack of standing where the plaintiff's "inaction has caused any injury he has suffered" because he sued over a requirement that he obtain law enforcement certification before being permitted to purchase a machine gun after unsuccessfully seeking the certification

from only some of the officials who could provide it. 77 F.3d 868, 871 (5th Cir. 1996). However, *Westfall* is distinguishable. In that case, the plaintiff failed to follow the statutory procedure for obtaining the law enforcement certification, and then sought a writ of mandamus, and brought a claim under the Administrative Procedures Act, seeking a court order that the Bureau of Alcohol, Tobacco and Firearms approve his application anyway. The court concluded that, as to his non-constitutional claims, plaintiff lacked standing because he sought a court order dictating the outcome of a statutory process that he had not completed. *Westfall*, 77 F.3d at 872. Westfall did also raise constitutional challenges to the validity of the law enforcement certification requirement, but the court found separately that those claims failed "because the law enforcement certification requirement did not violate the Constitution." *Westfall*, 77 F.3d at 870. In this case, Plaintiffs challenge the validity of the state's registration process, and the Court finds no basis to dismiss that challenge. Defendants' argument that Plaintiffs are responsible for their own injury because they failed to complete the state's registration process overlooks the two-fold nature of Plaintiffs' claimed injury. Plaintiffs contend that state's registration process is itself unlawful, and thus allege not only disenfranchisement, but also a violation of their statutory right to "[s]imultaneous application for voter registration and . . . driver's license[.]" 52 U.S.C. § 20504. This statutory injury remains cognizable regardless of whether Plaintiffs completed the voter registration process that they challenge.[2]

---

[2] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."); *Wendt v. 24 Hour Fitness USA, Inc.*, No. 15-10309, 2016 WL 1458989, at *2 (5th Cir. Apr. 13, 2016) ("[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing."); *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999) (the NVRA's private right of action "extend[s] standing under the Act to the maximum allowable under the Constitution"); *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) ("Even though they were ultimately not prevented from voting, an

Defendants also argue that Plaintiffs' injuries are not redressable and their claims are moot because they were disenfranchised only in past elections and their voter registration was corrected using the provisional ballots that they submitted. Defendants argue that the "capable-of-repetition" exception to mootness does not apply because there is not a reasonable expectation that Plaintiffs will be disenfranchised in this manner in the future. Docket no. 7 at 11 (citing *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998) (capable of repetition yet evading review exception to mootness applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.")).

However, voting-related lawsuits do not become moot merely because an election has passed. *Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) ("Controversy surrounding election laws . . . is one of the paradigmatic circumstances in which the Supreme Court has found that full litigation can never be completed before the precise controversy (a particular election) has run its course."). Furthermore, the likelihood of recurring injury is not strictly limited to whether these particular plaintiffs will likely suffer the same injury again, but may be assessed in terms of "other individuals [who] will be affected by the continuing existence" of the challenged practice. *Carmouche*, 449 F.3d at 662. Since Plaintiffs' injuries consist of both NVRA violations and the disenfranchisement that followed, their injuries are capable of redress by the injunctive relief they seek—regardless of whether they had actually been prevented from voting or whether, absent this relief, they would be disenfranchised in the future. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 n.3, 1354 (11th Cir. 2005) (injunctive relief to correct an

---

injury like theirs [being erroneously identified as a non-citizen and removed from the voter rolls] is sufficient to confer standing."); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) ("A plaintiff need not have the franchise wholly denied to suffer injury.").

unlawful practice is an appropriate remedy for injury caused by NVRA violation); *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). Other individuals will certainly be affected by the practices that Plaintiffs challenge in this case. *Storer v. Brown*, 415 U.S. 724, 737 (1974) (post-election challenge to state law regarding candidate eligibility was not moot because challenged law's "effects on independent candidacies[] will persist as [they] are applied in future elections."). Indeed, Plaintiffs have produced evidence that thousands of Texans submitted complaints to the state that related in some way to DPS's processing of voter registration information through its website. Docket nos. 1 at ¶¶ 9, 55; 1-3 at 1-108. For these reasons, the Court need not resort to speculation about the possibility that some of the named Plaintiffs might move and again seek to update their voter registration through the DPS online system. Rather, on the record presented, the Court can conclude that Plaintiffs have articulated an injury that is capable of redress by the Court. The passing of an election and subsequent update(s) of Plaintiffs' voter registration based on their provisional ballots does not change the nature of this controversy as one which "is capable of repetition, yet evading review." *United States v. Louisiana*, 196 F. Supp. 3d 612, 663 (M.D. La. 2016).

Defendants also argue that the Court should limit its jurisdiction in this case to reviewing online changes of address, rather than online driver's license renewal, because "Plaintiffs have only alleged that they sought to change their addresses online, not that they sought to *renew* their driver licenses online." Docket nos. 7 at 15 n.9; 12 at 5-6. The Court does not agree. Defendants acknowledge that each Plaintiff alleges that they sought to, respectively, "update[]" or "change[]" their driver license address online, and that following that transaction, they "received an updated driver's license in the mail." Docket no. 1 at ¶¶ 46-50. The record indicates that Plaintiffs did so through the single online system—"the Texas Driver License Renewal and

Change of Address system"—that Defendants use to process both driver license renewals and changes of address. Docket nos. 1-2 at 1; 9 at 3. Plaintiffs allege that that system fails to comply with the "[s]imultaneous application for voter registration and . . . driver's license" requirement of 52 U.S.C. § 20504. Defendants do not contend that Plaintiffs would have encountered a different result if their change of address transactions happened to coincide with the expiration of their driver's license. If they had coincided, Plaintiffs' injuries would be no less concrete, particularized, or traceable to that system's inadequacy. This confounds the distinction that Defendants now seek to draw between driver license renewal transactions and change of address transactions. Regardless of how the transaction is characterized, a user of Defendants' system who selected the "I want to register to vote" box but did not complete and submit a separate voter registration application could claim a violation of their right to "[s]imultaneous application for voter registration and . . . driver's license" under 52 U.S.C. § 20504. Assuming any previous registration not corrected by the next election, such an individual would also suffer disenfranchisement that would be fairly traceable to the alleged inadequacy of the DPS online system.

For these reasons, the Court rejects Defendants' standing arguments.

## B. The NVRA's notice requirement

Defendants argue Plaintiffs did not comply with the NVRA's pre-suit notice requirement. The private right of action that Congress established for enforcement of the NVRA provides that plaintiffs who claim NVRA violations may sue only if the violations were not corrected ninety days after they provided notice of those violations. 52 U.S.C. § 20510 (2012); *Scott v. Schedler*, 771 F.3d 831, 835-36 (5th Cir. 2014). On June 23, 2015, Defendants acknowledged receipt of a letter, dated May 27, 2015, that detailed claims of the state's NVRA violations. Docket no. 1-4 at

2-17, 22. That letter was sent on behalf of a group of eleven Texas voters that included two of the four Plaintiffs in this case, and described several claimed NVRA violations, including the claims at issue in this case. The parties thereafter exchanged substantial correspondence and resolved many of the NVRA deficiencies alleged in that letter, though not the claims raised here about the DPS online system. *See, e.g.*, docket no. 1-4 at 40-46, 49-50. In that correspondence, Defendants confirmed that six of the eleven voters named in the May 27 letter were registered at their correct address, but could not confirm the voter registrations of the remaining individuals because they did not provide their addresses. Docket no. 1-4 at 45. Thereafter, on October 23 and November 18, 2015, Plaintiffs' counsel sent supplemental letters providing notice of the claims raised by the two remaining named Plaintiffs. Docket no. 1-4 at 171-72, 195-96. Plaintiffs followed these letters with a "renewed request to negotiate" on November 30, 2015. Docket no. 1-4 at 197-201. Defendants do not dispute the sufficiency of the notice that Plaintiffs provided more than ninety days before bringing their claims. Rather, Defendants argue that they have done all they can do to resolve Plaintiffs claims because they verified the registration status of some potential plaintiffs, and because, to the extent that Plaintiffs suffer a continuing injury, they have not been provided an opportunity to attempt compliance. Docket no. 7 at 12. The record shows, however, that Plaintiffs notified Defendants of their belief that the DPS online system violated the NVRA, the parties discussed this matter extensively, and came to a disagreement about what the NVRA requires. By June 23, 2015, Defendants had reviewed Plaintiffs' contentions and flatly refused to take the steps that Plaintiffs contend are required by the NVRA. Docket no. 1-4 at 25-27, 45-46. Thus, with the passage of ninety days, this established a conflict about the meaning of the NVRA that is not barred by Section 20510(b)(2).

Defendants rely upon *Georgia State Conference of NAACP. v. Kemp* to argue that the NVRA's notice provision bars Plaintiffs from proceeding with their claims because Defendants "attempted to comply with" the relevant provisions of the NVRA. 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012). In that case, however, the plaintiff in question claimed that he had not been provided with a voter registration application as required by the NVRA, but the defendants in that case did not learn of this claim until service of the complaint. At that point, they provided that plaintiff's counsel with the voter registration application, a step that the court found to be "exactly th[e] sort of compliance attempt" that is required by the NVRA. *Kemp*, 841 F. Supp. 2d at 1324, 1336.[3] In this case, more than ninety days before the complaint was filed and after an extensive, prolonged, and fruitful compliance attempt, the parties identified a remaining "central issue still in dispute" as Defendants flatly refused to take steps that Plaintiffs insist are required by the NVRA. Docket no. 1-4 at 45-46. The notice requirements of the NVRA are intended to encourage parties to pursue pre-litigation resolution of their NVRA disputes, but they do not immunize a defendant from suit merely because the defendant claims to have attempted some compliance. Nor does Section 20510 or *Kemp* create a categorical rule that a defendant may extinguish any NVRA claim simply by sending a voter registration form.

For these reasons, the Court rejects Defendants' NVRA notice arguments.

## C. Failure to State a Claim: The NVRA

As an initial matter, Defendants argue that Plaintiffs' claims should be dismissed because "all of them indicated through the online interface that his or her change of address was not for

---

[3] The Fifth Circuit's opinion in *Scott v. Schedler*, which discusses *Kemp*, is also distinguishable. In that case, the appeals court rejected an individual plaintiff's argument that he did not need to individually comply with the NVRA notice requirement because an organizational plaintiff had already provided notice of the type of NVRA violations alleged. 771 F.3d 831, 836 (5th Cir. 2014) (individual plaintiff "cannot piggyback on the [organizational plaintiff's] notice for several reasons").

voter registration purposes." Docket no. 7 at 15. Defendants argue that "Plaintiffs would . . . have states treat *all* 'driver's license change-of-address transactions as updates for voter registration purposes,' even where the application 'states on the form that the change of address is not for voter registration purposes." Docket no. 7 at 15-16. It is true that, for reasons Plaintiffs have not explained, exhibit 2 of their Complaint, a screenshot of step 5 of the DPS online system, depicts a selection not to register to vote. Docket no. 1-2 at 2. Nonetheless, the complaint incorporates allegations contained within the notices provided to Defendants that each Plaintiff, in addition to "chang[ing] [their] address" through DPS's website, also "attempted to update [their] voter registration online through DPS' website." Docket nos. 1 at ¶ 33; 1-4 at 14, 171, 195; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (review of 12(b)(6) motion "must consider . . . documents incorporated into the complaint by reference"). Plaintiffs' subsequent arguments against Defendants' motion to dismiss further clarify that that they do contend that the online change-of-address forms that they submitted to DPS "indicat[ed] 'Yes . . . I want to register to vote.'" Docket no. 9 at 12. Therefore, the Court finds that Plaintiffs have sufficiently alleged that their online submissions to DPS indicated their desire to update their voter registration information.

Next, Defendants dispute Plaintiffs' claim that the NVRA requires that voter registration be "simultaneous" with submission of a driver license application, renewal application, or change of address form. Docket nos. 7 at 15; 12 at 7 & n.5. Defendants argue that the NVRA merely requires states to establish "procedures to register to vote . . . by application made simultaneously" with a driver license application, and expressly permits voter registration to be non-simultaneous with the driver license application by allowing the state motor vehicle authority up to 10 days to transmit the voter registration information to the appropriate state

election official. 52 U.S.C. §§ 20503(a)(1) and 20504(e)(1) (2012). Therefore, Defendants argue, the NVRA merely requires that states provide "a simultaneous *opportunity to apply* to register to vote" when a prospective voter submits an NVRA-covered driver's license transaction. Docket no. 12 at 8. This argument blurs a crucial distinction: the NVRA does not require that the voter's actual registration be effected simultaneously with their NVRA-covered driver's license transaction, but does require that their *application* for voter registration be made simultaneous with that transaction. Section 20504—captioned "[s]imultaneous application for voter registration and application for motor vehicle driver's license"—not only requires that the applications be simultaneous, but discusses them in terms of a single transaction. *See, e.g.*, 52 U.S.C. § 20504(a)(1) (each driver's license application "shall serve as an application for voter registration"), (c)(1) ("Each State shall include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license"), (d) (change of address form "shall serve as notification of change of address for voter registration"). A similar construction is used in the NVRA provision that specifically discusses change of address forms, requiring that a change of address form submitted "in accordance with State law for purposes of a State motor vehicle driver's license" also serve as a change of address for voter registration purposes. 52 U.S.C. § 20504(d). It is only after the simultaneous application is accepted that the state motor vehicle authority may take up to 10 days to transmit the voter registration portion of that application to the appropriate state election official. 52 U.S.C. § 20503(e)(1).

Defendants also argue that requiring submission of a mail or in-person application for voter registration in addition to an online DPS transaction does not violate the NVRA's limits on duplicative information requirements. Docket no. 12 at 7 n.5. Again, the language of the NVRA

indicates otherwise. The NVRA limits the voter registration portion of the application to "the minimum amount of information necessary" to prevent duplicative voter registrations and allow state election officials to assess voter eligibility and administer the voter's registration—and it specifically provides that the voter registration portion "may not require any information that duplicates information required in the driver's license portion of the form[.]" 52 U.S.C. § 20504(c)(2). The record in this case shows that nearly all of the information required by the voter registration application that Defendants direct users to complete after they have completed their online transaction is duplicative of information they provided during that online transaction. Docket nos. 1-5 at 25-26; 7 at 4. Indeed, it is the same form that prospective voters would use if they had not submitted an online change-of-address form at all, and merely applied to the Secretary of State for voter registration in person or by mail in the first instance. *But cf.* 52 U.S.C. § 20504 (a)(1) and (c)(1) (state shall include voter registration form "as part of an application for a State motor vehicle driver's license"; "driver's license application" "include[es] any renewal application").

Defendants' central argument, however, is that Plaintiffs have failed to state an NVRA claim because imposing a signature requirement, and declining to update voter information based on online submissions absent a separate, signed application, is within the discretion afforded by the Federal Constitution's Elections Clause[4] and NVRA language that Defendants argue incorporates requirements of state law into the NVRA's requirements for effective voter registration applications. Docket no. 12 at 2 (quoting 52 U.S.C. § 20504(a)(1) and (d) that the

---

[4] U.S. Const. art. I, § 4, cl. 1; *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2253 (2013) ("The Clause's substantive scope is broad. Times, Places, and Manner, . . . are comprehensive words, which embrace authority to provide a complete code for congressional elections, including . . . regulations relating to registration.") (internal quotation marks omitted).

NVRA applies to transactions completed "in accordance with State law"). Under Texas law, a prospective voter's signature is captured when the voter completes their voter registration application. Tex. Elec. Code Ann. § 20.066 (West 2010). That initial signature is entered into DPS's electronic data system and transmitted to the Secretary of State, and is used to verify the voter's identity when they appear to vote by comparing it to a signature that the voter provides at their polling place. *Id.*; Tex. Elec. Code Ann. § 63.002 (West 2010 & 2015 Supp.); 1 Tex. Admin. Code Ann. § 81.58 (West); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008); Docket nos. 7 at 14-15; 9 at 21-22. The state statute that sets forth the change of address procedure for voter registration does not include an explicit signature requirement, but only permits submissions to be made in person or by mail in most circumstances. Tex. Elec. Code Ann. § 20.063(c) (West 2010). However, "registered voters who move within a single county may change their addresses online and, in so doing, automatically update their voter registration address" but they "must re-register to vote if they move to a new county." Docket no. 1-4 at 25; *see also* Tex. Elec. Code Ann. § 15.021(d) (West 2010) ("A voter who continues to reside in the county in which the voter is registered may correct information under this section by digital transmission of the information").

In *Arizona v. Inter Tribal Council of Arizona, Inc.*, the Supreme Court considered the validity of a state voter registration scheme that sought to safeguard the integrity of the voting process by use of a mechanism that conflicted with the NVRA's registration requirements. *See* 133 S. Ct. 2247 (2013). In that case, the Court reviewed an Arizona statute that prohibited county recorders from accepting any voter registration application submitted by mail and not accompanied by documentation of the applicant's citizenship, where the NVRA requires states to accept and use a mail application registration form that requires only an attestation of citizenship.

*Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. at 2252, 2254 (comparing Ariz. Rev. Stat. Ann. § 16-166(F) with NVRA provision now codified at 52 U.S.C. § 20505(a)(1) (2012)). In that case, the Court engaged in a textual analysis and found that the limitations imposed by the Arizona statute were incompatible with, and thus preempted by, the NVRA requirements with respect to mail-in registration applications. *Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. at 2254-56.

Similarly, in this case, assuming the truth of Plaintiff's allegations, the Court finds that Defendants' procedures of refusing to update voter registration information based on online change-of-address submissions is inconsistent with the plain language of the NVRA. The NVRA requires that driver's license applications, renewal applications, and change of address forms that are submitted in accordance with state law "shall serve" as applications for voter registration or notifications of change of address for purposes of voter registration. 52 U.S.C. § 20504(a)(1) and (d). Defendants' policies have established one category of NVRA-covered driver's license transactions—online change of address and driver's license renewal submissions—that do not also serve as applications for or updates to voter registration. Defendants' policies require users who complete these online transactions and wish to update their voter registration to complete a second transaction that is almost completely duplicative of the first, just as if they had submitted no online change of address form at all. This violates the NVRA's requirements that voter registration applications be integrated into driver's license renewal applications, 52 U.S.C. § 20504(c)(1), that driver's license renewal and change of address forms have equal effect as voter registration change of address forms, *id.* at (a)(1) and (d), and that the voter registration portions of the form not require information that duplicates the driver's license portion, *id.* at (c)(2).

The Court is not persuaded by Defendants' argument that the NVRA conditions its application on a prospective voter's compliance with state law in completing voter registration

transactions. Docket no. 12 at 8 n.6. This circular and self-defeating reading of the NVRA is contrary to the statutory text, which imposes the "in accordance with state law" requirement not upon voter registration transactions, but upon the driver's license transactions with which they must be simultaneous. 52 U.S.C. § 20504(a)(1) (simultaneous application requirement applies to driver's license applications and renewal applications "submitted to the appropriate State motor vehicle authority under State law"); (d) ("[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license" must also be effective as to voter registration). The Court is also not persuaded by Defendants' argument that they are excused from processing online voter registration change of address submissions by language in the NVRA that creates an exception to the simultaneous application requirement for driver's license applications and renewal applications where "the applicant fails to sign the voter registration application." 52 U.S.C. § 20504(a)(1). As an initial matter, although Defendants process driver's license renewals and change of address submissions through a single combined online system, the NVRA separately addresses change of address transactions and establishes no explicit exemption from the simultaneous application requirement where they are unsigned. 52 U.S.C. § 20504(d). Second, it is not disputed that each Plaintiff completed a submission through the DPS online system, which required them to verify their identity at login and to execute an affirmation of citizenship before completing their submission. Defendants deemed these submissions sufficient to update driver's license information—transactions that state law also requires to be verified by an applicant's signature. 37 Tex. Admin. Code § 15.21 (West). Defendants' online system does not provide a manner in which users may provide an additional signature for the voter registration component of their submission, notwithstanding the NVRA's requirement that the voter registration portion of the application must "require[] the signature of

the applicant, under penalty of perjury[.]" 52 U.S.C. § 20504(c)(2)(C)(iii). Defendants can hardly now complain that Plaintiffs failed to sign the voter registration portion of the change of address submission—or argue that the NVRA does not apply to those submissions—when Defendants themselves, in violation of the NVRA, have made it impossible for Plaintiffs to do so.

Moreover, the record in this case undercuts Defendants' claim that their heightened signature requirement for voter registration renewal transactions is necessary to their system of signature-based voter identity verification. The parties do not dispute that, because an initial application for a driver's license cannot be submitted online, any prospective voter eligible to use the DPS online system will have already provided the state with their signature when they made their initial application for a driver's license. Tex. Elec. Code Ann. § 20.066. It is unclear why an additional signature provided with a change of address form is necessary to enable comparison between the signature provided at the time of initial registration and the signature provided at the polls. Indeed, as Defendants have acknowledged, they do not require physical signatures to update voter registration change-of-address submissions in some circumstances. Docket no. 1-4 at 25 ("registered voters who move within a single county may change their addresses online and, in so doing, automatically update their voter registration address"); Tex. Elec. Code Ann. § 15.021(d) (West 2010) ("A voter who continues to reside in the county in which the voter is registered may correct information under this section by digital transmission of the information"). This brings a crucial distinction into view. Defendants require that inter-county voter registration change-of-address forms be signed not because that signature is necessary for the state's signature-matching voter verification mechanism—the state is already in possession

of an electronic rendering of the voter's signature provided with their initial registration[5]—but in order to avoid the expense and logistical burden of transmitting the voter's signature to the county of the voter's updated registration. Defendants note that "[v]oter registration in Texas is, and has historically been, a county-based system" and "Defendants have not received a legislative appropriation to provide for [the signature's] collection electronically [i.e., through the DPS online system]." Docket nos. 1-4 at 25; 7 at 2; 12 at 6. However, Defendants overlook the fact that state law already requires the voter's signature to be collected electronically at the time of their initial registration, Tex. Elec. Code Ann. § 20.066, and that state law also already requires the Secretary of State to maintain a statewide database of voter registration information that must "be available to any election official in the state through immediate electronic access."[6]

---

[5] If an applicant does not complete the voter registration portion of their initial driver's license application—and thus seeks to submit an initial voter registration application with a renewal driver's license application—the state is nonetheless already in possession of the signature on the applicant's initial driver's license application, and can obtain the applicant's authorization to use that signature for voter registration purposes, just as they would for the signature provided on a mail-in voter registration renewal form. This is the approach taken by unsuccessful online voter registration proposals introduced in the Texas Legislature, *see, e.g.*, Tex. H.B. 953, 84th Leg., R.S. (2015), as well as by the majority of the 38 U.S. states (plus the District of Columbia) that currently permit online voter registration or have passed legislation to do so. *See, e.g.*, Cal. Elec. Code § 2196 (4)-(5); Colo. Rev. Stat. Ann. § 1-2-202.5(1)(a) and (3)(c) (West); Conn. Gen. Stat. Ann. § 9-19k(a) (West); 61 D.C. Reg. 10730 (Feb. 26, 2015); Fla. Stat. Ann. § 97.0525(4)(b) (West); Ga. Code Ann. § 21-2-221.2(b)(6) and (d) (West); Haw. Rev. Stat. Ann. § 11-15.3(c) and (d) (West); 2016 Idaho Laws Ch. 359 (S.B. 1297) (adding § 34-409(3) and (4)); 2016 Ill. Legis. Serv. P.A. 99-522 (S.B. 1529) (West); Ind. Code Ann. § 3-7-26.7-6 (West); La. Stat. Ann. § 18:115.1 (C.)(4)(b) and (c); Md. Code Ann., Elec. Law § 3-204.1(b)(4) (West); Mass. Gen. Laws Ann. ch. 51, § 33A (West); Neb. Rev. Stat. Ann. § 32-304(1) and (2)(b) (West); 2016 Ohio Laws File 89 (Sub. S.B. 63); Okla. Stat. Ann. tit. 26, § 4-109.4(C)(2) and (D)(2)-(3) (West); Or. Rev. Stat. Ann. § 247.019(3) and (4) (West); 17 R.I. Gen. Laws Ann. § 17-9.1-34(c) and (d) (West); S.C. Code Ann. § 7-5-185(B)(3) and (4); 2016 Tennessee Laws Pub. Ch. 936 (S.B. 1626); Utah Code Ann. § 20A-2-206(2)(d) (West); Va. Code Ann. § 24.2-416.7(C)(6) (West); Wash. Rev. Code Ann. § 29A.08.123(3) (West); W. Va. Code Ann. § 3-2-11(b) (West); 2015-2016 Wisc. Legis. Serv. Act 261 (2015 S.B. 295) (West).

[6] In their pre-litigation correspondence, Defendants referred to a fiscal impact estimate prepared by the Legislative Budget Board of a 2015 bill that would have established online voter registration in Texas. Docket no. 1-4 at 26 & n.3. That estimate commented that "the bill would

Tex. Elec. Code Ann. § 18.061 (West 2010 & 2015 Supp.). In any event, Defendants cannot escape compliance with the NVRA because of a lack of state appropriations to fund compliance. *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1415 (9th Cir. 1995) (Congress' Election Clause power is "intended to be borne by the states without compensation."). The Court is also not persuaded by Defendants' argument that its heightened signature requirement for voter registration transactions is necessary for the integrity of those transactions. As noted above, the DPS online system includes identity verification measures and requires a user's affirmation of their eligibility to use the system, which the state deems sufficient to meet the signature requirement for driver's license transactions. 37 Tex. Admin. Code § 15.21. And the signature requirement for voter registration changes is selectively applied to inter-county changes of address, but not intra-county changes.

The straightforward reading of the statutory text makes the simultaneous application requirement clear. That requirement applies to "any renewal application" as well as change of address forms—including the online submissions at issue in this case. 52 U.S.C. § 20504(a)(1) and (d). This understanding of the NVRA's simultaneous application requirement does not contradict the holding of the Fifth Circuit in *Scott v. Schedler*, which involved provisions of the NVRA that are not at issue here.[7] It is consistent with the understanding of the NVRA's

---

require [the Secretary of State] to obtain a digital copy of the applicant's signature from the Department of Public Safety (DPS) . . . [and] would require [the Secretary of State] to adopt . . . rules to provide for additional security measures[,]" which would require two contractors at $100 per hour for 1040 hours, a projected expense of $208,000. Fiscal Note on H.B. 953, 84th Legislative Regular Session, Texas Legislative Budget Board, *available at* http://www.capitol.state.tx.us/tlodocs/84R/fiscalnotes/pdf/HB00953I.pdf (last visited July 8, 2016).

[7] In that case, the Court construed provisions of the NVRA now codified at 52 U.S.C. § 20506 (2012), which require state voter registration agencies to provide voter registration assistance "unless the applicant, in writing, declines to register to vote[.]" 771 F.3d 831, 840 (5th

simultaneous application requirement that has been expressed by the agency charged by statute

with enforcing the NVRA, the U.S. Department of Justice. 52 U.S.C. § 20510(a).[8] It does not

"eviscerate[] all State requirements for voter registration" in violation of the states' time, place,

and manner prerogative, docket no. 12 at 3; rather, the NVRA—as contemplated by the Elections

Clause—preempts state time, place, and manner regulations that are contrary to its requirements.

*Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. at 2253-54, 2256-59 (Elections Clause

"functions as a default provision; it invests the States with responsibility for the mechanics of

congressional elections, but only so far as Congress declines to pre-empt state legislative

choices."). It does not invalidate Texas's signature-matching voter verification mechanism, or

Texas's signature requirement, but rather prohibits Texas from administering that requirement in

a manner that is inconsistent with its obligations under the NVRA. And as noted above, this

understanding of the NVRA's simultaneous application requirement does not mean that states

are required to establish online voter registration or online voting, docket no. 7 at 17-18; merely

that voter registration be offered equally with, and integrated into, driver's license applications,

---

Cir. 2014). The court held that, in light of a neighboring NVRA provision requiring that prospective voters be issued a check-box form to indicate whether they wished to register to vote and that advised that checking neither box would be "deemed to constitute a declination to register[,]" a prospective voter who checked neither box had thus declined, "in writing," to register. *Scott*, 771 F.3d at 841 (construing 52 U.S.C. § 20506(a)(6)(A) and (B)(iii)).

[8] *See, e.g.*, U.S. Dep't of Justice, The National Voter Registration Act of 1993 (NVRA) Questions and Answers, https://www.justice.gov/crt/national-voter-registration-act-1993-nvra at ¶ 4 ("to the extent that the State provides for remote applications for driver's licenses, driver's license renewals, or driver's license changes of address, via mail, telephone, or internet or other means, then provision must be made to include the required voter registration opportunity as well.") (last visited July 7, 2016); Memorandum of Understanding between United States and State of Alabama et al. (Nov. 12, 2015), *available at* https://www.justice.gov/opa/file/793121/download, at ¶¶ 27-30 ("The Secretary of State and ALEA shall develop and implement a mechanism to accept and transfer the voter registration component of an application to renew a driver's license or other personal identification document received through the Alabama Online Driver License Issuance system to appropriate State election officials").

renewal applications, and change of address submissions. Where, as here, Defendants have chosen to offer an online forum for NVRA-covered driver's license transactions, the NVRA thus requires them to accept voter registration applications through that forum simultaneously with the NVRA-covered driver's license submissions the forum supports.

In short, the Court is not persuaded by Defendants' argument that they should be excused from the NVRA's simultaneous application requirements with respect to certain transactions because the legislature has not provided them with the funding necessary to comply with a self-imposed heightened signature requirement that is only selectively applied to begin with. For these reasons, the Court rejects Defendants' arguments and finds that Plaintiffs have stated a claim under the NVRA.

### D. Failure to State a Claim: Equal Protection

Defendants also argue that Plaintiffs have failed to state an equal protection claim because they have not identified similarly situated individuals who have been treated differently from them. Docket nos. 7 at 18-19; 12 at 10-11. The Supreme Court has held that:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotation marks omitted).[9] In this case, the state asserts that the burden on voter registration imposed by its policy of disallowing online

---

[9] The Fifth Circuit has affirmed, without specifically ruling on, a district court's application of the *Burdick* balancing analysis to equal protection claims raised in the context of voting procedures. *Kucinich v. Texas Democratic Party*, 563 F.3d 161, 168 n.6 (5th Cir. 2009). The Sixth Circuit has explicitly held that this balancing test applies to equal protection claims that involve burdening of voting rights through disparate treatment of voters. *Obama for Am. v.*

voter registration changes of address is justified by its interest in verifying voter identity through signature-matching at the polls. This explanation is undercut by Defendants' failure, discussed above, to explain how the signature on change of address forms is necessary to that signature-matching verification, or to the integrity of the voter registration change-of-address process, given that existing state law requires that the state be in possession of the signature of each eligible user of the DPS online system. Indeed, Defendants' arguments in this case suggest that their asserted interest is not in obtaining a signature on change of address forms, but in avoiding the expense of transmitting the signature they already have to election officials in the county where the voter registers. This interest is insufficient to justify the burden imposed on voters, particularly since the policy it seeks to justify, for the reasons discussed above, is contrary to the NVRA's simultaneous application requirements.

## Conclusion

For these reasons, the Court finds that standing has been established and that Plaintiffs have stated claims upon which relief can be granted under both the NVRA and the Equal Protection Clause. Therefore, Defendants' motion to dismiss (docket no. 7) is DENIED.

IT IS SO ORDERED this 31st day of March, 2017.

ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE

---

*Husted*, 697 F.3d 423, 429 (6th Cir. 2012) (quoting *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring)).