UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, in his official | § | |
| capacity as the Texas Secretary of State, and | § | |
| STEVEN C. McCRAW, in his official | § | |
| capacity as the Director of the Texas | § | |
| Department of Public Safety, | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**THE TEXAS CIVIL RIGHTS PROJECT**
Mimi M.D. Marziani
Rebecca Harrison Stevens
Hani Mirza
Cassandra Champion
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WATERS & KRAUS, LLP**
Peter A. Kraus (*pro hac vice*)
Charles S. Siegel
Caitlyn E. Silhan
Rachel A. Gross (*pro hac vice*)
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 4

UNDISPUTED FACTS ........................................................................................................ 4

    A.    DPS seamlessly integrates voter registration into its mail-in change-of-address and in-person driver's license applications. ................................................................... 5

    B.    Defendants do not provide simultaneous voter registration applications with online transactions, but instead require additional steps and duplicative information before a customer can register or update their voter registration information. ............................................................................................................... 7

    C.    Plaintiffs moved from one Texas county to another, transacted with DPS online to update their driver's license information, and checked "yes" to the voter registration question, yet Defendants failed to update their voter registration information and Plaintiffs were denied the chance to cast a regular ballot in an election. ............................................................................................................... 10

        *1.*    *Benjamin Hernandez* ........................................................................... 10

        *2.*    *Jarrod Stringer* ................................................................................... 11

        *3.*    *John Woods* ......................................................................................... 11

    D.    DPS is technologically capable of providing voter-registration information from online transactions to SOS and doing so would not be cost prohibitive. ...................... 12

LEGAL STANDARD ......................................................................................................... 13

ARGUMENT ...................................................................................................................... 13

    A.    Texas' failure to treat online DPS transactions as voter registration applications violates the NVRA ...................................................................................................... 14

        *1.*    *The plain language of the NVRA controls* ........................................ 14

        *2.*    *Defendants fail to treat online driver's license renewal applications as "simultaneous" voter registration applications in violation of 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), and 20504(a)(2).* ............................................. 15

        *3.*    *Defendants fail to treat online driver's license change-of-address applications as notifications for voter registration in violation of 52 U.S.C. § 20504(d).* ......................................................................................... 17

        *4.*    *Defendants' requirement that applicants submit a separate voter registration application upon completion of online transactions violates the NVRA's prohibition against requiring duplicative information, 52 U.S.C. § 20504(c)(2).* ......................................................................... 17

        *5.*    *Defendants' failure to transmit voter registration information submitted during online driver's license transactions violates 52 U.S.C. § 20504(e).* .......... 18

      6.    *SOS's failure to ensure that eligible applicants are registered to vote upon completion of the voter registration portion of online driver's license change-of-address and renewal applications violates 52 U.S.C. § 20507(a)(1)(A).* ...............................................................................................18

  B.   Texas' failure to treat online DPS transactions as voter registration applications violates the Equal Protection Clause...........................................................................19

      1.    *The Equal Protection Clause protects against restrictions that place unreasonable burdens on the right to vote.* ........................................................19

      2.    *Defendants' refusal to treat online driver's license transactions as voter registration applications unduly burdens Plaintiffs' right to vote*........................20

      3.    *Defendants' asserted interest in requiring handwritten signatures is insufficient to justify the burdens created by their treatment of online DPS transactions.*.......................................................................................................21

      4.    *DPS's signature requirement as to online transactions is unreasonable*.............22

  C.   Defendants' Affirmative Defenses are Not Supported by Evidence..............................23

  D.   Defendants should be required to correct their violations of the NVRA within three months of the Court's ruling. ..............................................................................24

CONCLUSION...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action NC v. Strach*,
 216 F. Supp. 3d 597 (M.D. N.C. 2016) ............................................................. 14, 15

*Anderson v. Celebrezze*,
 460 U.S. 780 (1983)..................................................................................... 19, 22

*Anderson v. Liberty Lobby, Inc.*,
 447 U.S. 242 (1986) ........................................................................................ 13

*Arcia v. Florida Sec'y of State*,
 772 F.3d 1335 (11th Cir. 2014) ........................................................................ 13

*Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*,
 56 F.3d 791 (7th Cir. 1995) ................................................................................ 3

*Burdick v. Takushi*,
 504 U.S. 428, 434 (1992)........................................................................ 19, 20, 22

*Bush v. Gore*,
 531 U.S. 98, 104 (2000)................................................................................... 19

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
 408 F.3d 1349 (11th Cir. 2005) ........................................................................ 13

*Crawford v. Marion County Election Bd.*,
 553 U.S. 181 (2008)..................................................................................... 19, 20

*Crowe v. Henry*,
 115 F.3d 294 (5th Cir. 1997) ........................................................................... 13

*Ferrand v. Schedler*,
 2012 WL 1570094 (E.D. La. May 3, 2012)........................................................... 14

*Fish v. Kobach*,
 840 F.3d 710 (10th Cir. 2016) ......................................................................... 14

*Georgia State Conference of NAACP. v. Kemp*,
 841 F. Supp. 2d 1320 (N.D. Ga. 2012) ............................................................. 14, 15

*Harper v. Va. State Bd. of Elections*,
 383 U.S. 663 (1966)........................................................................................ 19

*In re Dale*,
 582 F.3d 568 (5th Cir. 2009) ........................................................................... 14

*Kusper v. Pontikes*,
 414 U.S. 51 (1973)......................................................................................... 22

*Norman v. Reed*,
 502 U.S. 279 (1992)........................................................................................ 20

*Northeast Ohio Coalition for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016), (cert. denied, 2017 WL 881266 (U.S. June 19, 2017) ............. 23

*Obama for America v. Husted*,
   697 F.3d 423 (6th Cir. 2012). ............................................................................................ 19

*Project Vote/Voting for Am., Inc. v. Long*,
   682 F.3d 331 (4th Cir. 2012) ............................................................................................. 15

*Reynolds v. Sims*,
   377 U.S. 533 (1964).............................................................................................................. 3

*Voting Rights Coal. v. Wilson*,
   60 F.3d 1411 (9th Cir. 1995) ............................................................................................... 3

## Statutes and Rules

28 U.S.C. § 2201 .................................................................................................................. 25

37 Tex. Admin. Code § 15.59(c) .......................................................................................... 5

52 U.S.C. § 20503(a)(1) ...................................................................................................... 15

52 U.S.C. § 20504 ............................................................................................................ 2, 5

52 U.S.C. § 20504(a)(1) ................................................................................................. 2, 15

52 U.S.C. § 20504(a)(2) ...................................................................................................... 15

52 U.S.C. § 20504(c)(1) ................................................................................................. 2, 15

52 U.S.C. § 20504(c)(2)....................................................................................................... 17

52 U.S.C. § 20504(d). ..................................................................................................... 2, 16

52 U.S.C. § 20504(e). .......................................................................................................... 18

52 U.S.C. § 20504(e)(1)-(2)................................................................................................. 18

52 U.S.C. § 20507(a)(1)(A). ................................................................................................ 18

52 U.S.C. § 20509................................................................................................................. 5

52 U.S.C. § 20510(b)(1) ...................................................................................................... 23

52 U.S.C. § 20510(b)(2) ................................................................................................. 23, 25

Fed. R. Civ. P. 56(a) ........................................................................................................... 13

Tex. Elec. Code § 31.001 ...................................................................................................... 5

Tex. Elec. Code § 20.001(b) ................................................................................................. 5

Tex. Elec. Code § 20.061-66 ................................................................................................ 5

Tex. Gov't Code § 2054.252.................................................................................................. 8

Tex. Gov't Code § 2054.271.................................................................................................. 8

Since before 2010, Texas has failed to comply with the National Voter Registration Act (NVRA) and violated the Equal Protection Clause of the Fourteenth Amendment, stripping from millions of Texans their right to register to vote during online driver's license renewal and change-of-address transactions. Plaintiffs are eligible Texas voters who were denied voter registration during NVRA-covered online driver's license transactions and, thereafter, disenfranchised. They respectfully ask the Court to render final summary judgment against Defendants and order the State of Texas to take immediate steps to adhere to the Constitution and federal law.

## PRELIMINARY STATEMENT

The central fact of this case has never been disputed: When eligible Texans update their driver's licenses online with the Department of Public Safety (DPS), they are not offered a simultaneous application to register to vote or update their voter registration information.[1] As this Court has already held, the NVRA requires that each driver's license application, including any renewal application, simultaneously serve as an application for voter registration, and that each change-of-address form be used to update the voter's registration records.

Texas's refusal to integrate voter registration into its online driver's license renewal and change-of-address process affects nearly 1.5 million Texans annually, including the Plaintiffs here. Each Plaintiff moved within Texas, changed his driver's license address using DPS's online driver license renewal and change-of-address website, indicated "Yes" in response to the prompt "I want to register to vote," but was not registered to vote. Each Plaintiff, although eligible to do so, was prevented from fully exercising his fundamental right to vote in a subsequent election due to his outdated registration record.

---

[1] As Defendants put it, "[t]he key facts of this case are not disputed." Defs.' Reply in Supp. of Mot. to Dismiss, Dkt. 12 at 6; *see also* Joint Report on Alternative Dispute Resolution, Dkt. 22 at 2 (stating that the parties agree "that their primary dispute is legal, rather than factual").

Texas has known for years that its online driver's license transaction practices disenfranchise large numbers of voters. Between September 2013 and February 2015, for instance, more than 1,800 Texans complained about Texas' failure to register individuals to vote through the DPS online driver's license application, according to the State's own records. Yet Texas took no meaningful steps to fix its process. Instead, adding insult to injury, DPS *encourages* the use of the online system over in-person transactions, resulting—predictably—in a dramatic uptick in online transactions and, by extension, injured prospective voters.

The State does not claim that NVRA compliance would be too expensive or burdensome. Instead, Texas seeks to contort the plain language of the law to justify its current processes. According to the Defendants, even though the NVRA provides "simultaneous application for voter registration" by requiring that "each . . . driver's license application . . . serve as an application for voter registration," 52 U.S.C. § 20504, what it means is something else entirely. The State asserts that it must offer nothing more than a simultaneous *opportunity* to register to vote during an online driver's license transaction, which can be satisfied by forcing online DPS customers to retrieve, print, complete, and mail an entirely separate and duplicative voter registration application after finishing their online transaction. This Court rightfully rejected that reading of the NVRA, holding that the law clearly prohibits Texas's procedure because the NVRA requires not only "that the applications be simultaneous, but discusses them in terms of a single transaction."[2] Accordingly, and as this Court found, Texas's refusal to treat online driver's license renewal and change-of-address forms as voter registration applications violates the NVRA.

No doubt recognizing the weakness of its "simultaneous opportunity" argument, the State makes another, even bolder argument—that the NVRA gives states the prerogative to legislate

---

[2] Order, Dkt. 52 at 11 (citing 52 U.S.C. §§ 20504(a)(1), 20504(c)(1), 20504(d)).

away the law's mandates if a state determines that the NVRA conflicts with state law. Since Texas law requires a voter's signature on a voter registration form, Defendants claim that the NVRA permits Texas to flout the statute's simultaneous-application requirement and require DPS customers to fill out and sign an *entirely separate* voter registration form after providing *identical* information to DPS during an NVRA-covered transaction. The NVRA, of course, permits no such thing. As a federal law, long upheld against constitutional challenge, it preempts any conflicting state requirements. *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1415–16 (9th Cir. 1995); *Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 794-795 (7th Cir. 1995).[3] Moreover, as this Court noted, this argument is a red herring: In fact, anyone using DPS's online driver license renewal and change-of-address system has *already provided* the state with his signature, which Texas *already uses* to update their voter registration files in some circumstances.[4]

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Too many Texas voters have been unlawfully denied voter registration, just like the Plaintiffs, because of the State's longstanding failure to comply with the NVRA. Another federal election cycle is fast approaching; the deadline to register to vote for the March primary election is a little more than seven months away.[5] Given that the fundamental right to vote is at stake for millions of Texas voters, the Court should order immediate compliance with the NVRA and the Constitution. The State should be

---

[3] *See also* Dkt. 52 at 14-16.
[4] *Id.* at 16-18.
[5] The deadline for the March 2018 primaries is February 5, 2018. *See* Important 2018 Election Dates, http://www.sos.state.tx.us/elections/voter/2018-important-election-dates.shtml (last visited June 28, 2017).

required to fully implement Plaintiffs' requested remedy within three months of the Court's order and no later than January 1, 2018.

## BACKGROUND

Between May and November 2015, Plaintiffs' counsel wrote to Defendants' counsel several times to notify Defendants about Plaintiffs' claims regarding violations of the NVRA.[6] Defendants did not make the changes Plaintiffs stated were necessary to correct the violations prior to Plaintiffs filing suit on March 14, 2016, nearly four months after the last notice letter. Plaintiffs thus brought this lawsuit to enforce the state's duties.

Defendants moved to dismiss, but the Court denied the motion, holding that "standing has been established and that Plaintiffs have stated claims upon which relief can be granted under both the NVRA and the Equal Protection Clause."[7]

Since August 3, 2016, when this Court entered its first Scheduling Order in this matter, Plaintiffs have conducted discovery in good faith and as expeditiously as possible. Defendants, on the other hand, purposely delayed responding to Plaintiffs' discovery requests for months after the documents were due, requiring Plaintiffs to obtain a Court Order compelling Defendants' responses—an Order Defendants were ultimately sanctioned for intentionally violating. Since their initial pre-litigation communications in May 2015, Plaintiffs have continued to emphasize the need to resolve this matter as soon as possible, well before the 2018 election, but Defendants have repeatedly, purposefully delayed.

## UNDISPUTED FACTS

DPS operates offices around the state and issues driver's licenses and other state identification cards. DPS's in-person application forms and mail-in change-of-address forms

---

[6] Dkt. 52 at 7-9; Appx. 2-21 (Ex. 1, May 27, 2015 Notice Letter, D_009849-64); Appx. 23-24 (Ex. 2, Oct. 23, 2015 Notice Letter); Appx. 26-27 (Ex. 3, Nov. 18, 2015 Notice Letter).
[7] Dkt. 52 at 21.

currently serve as simultaneous voter registration applications as required under the NVRA.[8] DPS's online renewal and change-of-address form does not, however, serve as a simultaneous voter registration application.[9]

Defendant Rolando Pablos is Secretary of State and serves as Texas's Chief Election Officer, responsible for coordinating Texas's compliance with the NVRA.[10] That office agrees that the NVRA applies to *all* driver's license application transactions, including online transactions.[11] DPS is responsible under state and federal law for providing voter registration services to customers and transmitting voter registration information to the SOS.[12]

## A. DPS seamlessly integrates voter registration into its mail-in change-of-address and in-person driver's license applications.

DPS's protocol for providing voter registration to customers who interact with DPS in person (for a new driver's license application, a renewal, or a change-of-address), and for customers who utilize DPS's mail-in change-of-address form, is in line with NVRA requirements. A DPS customer who decides to or is required to transact with DPS in person must fill out the relevant driver's license form with personal information in order to obtain, update, or renew his driver's license.[13] DPS uses different forms depending on the type of transaction: form DL-14A for an original (in-person) Application for Texas Driver License or Identification

---

[8] Appx. 31 (Ex. 4, Texas Department of Public Safety Implementation Plan, D_00021063 at D_00021065);

[9] Appx. 33 (Ex. 5, Excerpt, Texas Secretary of State Elections Division 34th Annual Election Law Seminar, "DPS Voter Inquiry Web Portal" 669, D_00014211 at slide 3).

[10] 52 U.S.C. § 20509, Tex. Elec. Code § 31.001

[11] Appx. 40 (Ex. 6, Excerpts of Mar. 22, 2017 30(b)(6) Deposition of Keith Ingram, SOS's designee ("Ingram 30(b)(6) Dep.") 62:04-17 ("whenever a person has a driver's license transaction . . . they should be simultaneously offered the right—the ability to update their voter registration or register to vote for the first time. That's why the NVRA is called the Motor Voter law.")).

[12] 52 U.S.C. § 20504, Tex. Elec. Code §§ 20.001(b), 20.061-66; Appx. 113 (Ex. 15, DPS's Suppl. Resps. to Jarrod Stringer's First Requests for Admission ("RFAs"), No. 4).

[13] DPS customers are required to renew their driver's license in-person every 12 years. 37 Tex. Admin. Code § 15.59(c).

Card,[14] form DL-43 for an in-person Application for Renewal/Replacement/Change of a Texas Driver License or Identification Card,[15] and form DL-64 for a mail-in Application for Change-of-address on Valid Texas Driver (DL) & Identification Card (ID).[16] For each, the driver's license and voter registration process has been combined into one seamless transaction so that—in order to register or update voter registration information—the customer need only take one additional step related to voter registration—check a single box *on these same forms*:

**DL-14A and DL-43, in-person driver's license forms**

REQUIRED INFORMATION FROM ALL APPLICANTS

YES   NO
1. ☐   ☐   Are you a citizen of the United States?
2. ☐   ☐   If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?
By providing my electronic signature, I understand the personal information on my application form and my electronic signature will be used for submitting my voter's registration application to the Texas Secretary of State's office. Wanting to register to vote, I authorize the Department of Public Safety to transfer this information to the Texas Secretary of State.

**DL-64, mail-in change-of-address form**

If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?

Yes ☐   No ☐

Except for this simple, integrated step of checking a box, the in-person and mail-in change-of-address customer does not have to take any further action to ensure he is registered to vote. The customer is not required to retrieve, complete, print, and mail a separate voter

---

[14] Appx. 50-51 (Ex. 7, DL-14A (Rev. 2-17)), *see also* Texas Department of Public Safety, Application for Texas Driver License or Identification Card, https://www.dps.texas.gov/internetforms/Forms/DL-14A.pdf (last visited June 18, 2017).
[15] Appx. 53-54 (Ex.8, DL-43 (Rev. 2-17)), Texas Department of Public Safety, Application for Renewal/Replacement/Change of Texas Driver License or Identification Card, http://www.dps.texas.gov/Internetforms/Forms/DL-43.pdf (last visited June 18, 2017).
[16] Appx. 56-57 (Ex.9, DL-64 (Rev. 2-17)) *see also* Texas Department of Public Safety, Application for Change-of-address on Valid Texas Driver License (DL) & Identification Card (ID), http://www.dps.texas.gov/Internetforms/Forms/DL-64.pdf (last visited June 18, 2017).

registration application; instead, DPS transmits the voter's file to SOS upon receipt of a completed mail-in change-of-address form or in-person driver's license applications.[17]

Upon receipt of DPS customers' voter registration information, SOS then transmits the data to local voter registrars who are responsible for completing the voter registration process.[18] Ultimately, within thirty days after checking "yes" on the relevant in-person or mail-in change-of-address form, the DPS customer should receive his new or updated voter registration card in the mail.[19] Notably, for all mail-in change-of-address transactions, it is the customer's previously-provided electronic signature—the one provided during the customer's last *in*-person transaction—that is used for voter registration purposes.[20] In fact, a customer's electronic signature is used for voter registration purposes for *all* voter registration applications originating at DPS.[21]

### B. Defendants do not provide simultaneous voter registration applications with online transactions, but instead require additional steps and duplicative information before a customer can register or update their voter registration information.

In stark contrast to the ease with which a customer may register to vote or update his voter registration information via in-person or mail-in change-of-address driver's license forms,

---

[17] Appx. 66-67 (Ex. 10, Excerpts of Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson, DPS's designee ("Gipson 30(b)(6) Dep.") 101:24-102:09).

[18] Appx. 98 (Ex. 13, SOS's Suppl. Resps. to Jarrod Stringer's First RFAs, No. 13); *See* Appx. 43 (Ex. 6, Ingram 30(b)(6) Dep. 173:9-10); Appx. 110 (Ex. 14, Excerpt from Secretary of State's 32nd Annual Election Law Seminar, Voter Registration 102 presentation, P003060, Voter Registration Presentation, slide 14, P003982 at P003995) (produced to Plaintiffs as bates D_00008318-8354 marked as "confidential" and so not attached here).

[19] *See* Appx. 43-44 (Ex. 6, Ingram 30(b)(6) Dep. 173:16-174:09).

[20] Appx. 89 (Ex. 12, Excerpts of Feb. 17, 2017 30(b)(6) Deposition of John Crawford ("Crawford 30(b)(6) Dep.") 139:10-21); *see also* Appx. 50-51 (Ex. 7, DL-14A); Appx. 53-54 (Ex.8, DL-43).

[21] Appx. 69 (Ex. 10, Gipson 30(b)(6) Dep. 203:19-204:-7.); Appx. 42 (Ex. 6, Ingram 30(b)(6) Dep. 97:04-14); Notably, although DPS obtains a handwritten signature on the in-person and mail change-of-address forms, those signatures are not transmitted to SOS for voter registration purposes, nor are they compared for identity-verification purposes except in the rare case of suspected fraud or theft. Appx. 79-80 (Ex. 11, Excerpts of Jan. 31, 2017 Deposition of Sheri Gipson ("Gipson Dep.") 234:11-237:15, 254:04-07); *see also* Appx. 87-88 (Ex. 12, Crawford 30(b)(6) Dep. 73:22-74:14), Appx. 39 (Ex. 6, Ingram 30(b)(6) Dep. 50:01-11).

a customer transacting with DPS online must retrieve, complete, print, and mail an entirely *separate* voter registration application—which requires that he again provide information already collected by DPS—in order to register or update his voter registration information.

DPS's Driver License Renewal and Change-of-address website page provides a single online portal for qualified holders of a Texas driver's license to renew their driver's license, update the address listed on their driver's license, or both.[22] For DPS purposes, updating or renewing a driver's license online comports with state law, and does not require a new signature.[23]

A customer wishing to renew or update his driver's license online must first provide his driver's license number, date of birth, driver license audit number, and the last four digits of his social security number, which DPS's vendor uses to check against DPS's system in real time to verify the customer's eligibility to transact online with DPS.[24] If eligible, the customer must then enter additional personal information.[25]

From 2010 to February 2016, when users reached Step 5 of the online process, DPS prompted the customer to choose "yes" or "no" in response to the statement, "I want to register to vote."[26] Checking "yes" to the voter registration question at Step 5 does one thing only—it

---

[22] Appx. 117 (Ex. 15, DPS's Suppl. Resps. to Benjamin Hernandez's First RFAs, No. 5).

[23] Appx. 70 (Ex. 10, Gipson 30(b)(6) Dep. 215:21-216:7).

[24] Appx. 70-72 (*Id.* at 217:21-219:16, 223:17-224:05). These four data points required for online transactions with DPS are also required by the Texas Online Authentication System (TOAS), which is used by various state agencies to authenticate customers' identity, and "may be used by the state agency or local government as an alternative to requiring a notarized document, a document signed by a third party, or an original signature on a document." Tex. Gov't Code § 2054.271; *see also* Tex. Gov't Code § 2054.252.

[25] Appx. 130 (Ex. 16, Texas Department of Public Safety Driver License Renewal and Change-of-address webpage, D_00021840). Only United States citizens are allowed to renew or update their driver's licenses online. *See* Texas Department of Public Safety, Online Services Eligibility, https://txapps.texas.gov/tolapp/txdl/eligibility.dl?locale=en_US (last visited June 26, 2017).

[26] Appx. 118 (Ex. 15, DPS's Suppl. Resps. to Benjamin Hernandez's First RFAs, Nos. 7-8); *see also* Appx. 124-125 (Ex. 15, DPS's Suppl. Resps. to Totysa Watkins' First RFAs, Nos. 26-28). Shockingly, until September 2016, the "yes"/"no" radio buttons from which a customer had to

prompts the system to provide a link on the customer's receipt to an entirely different website, where voters must "download[] or request[]" a physical voter registration form.[27] To complete the voter registration process following an online DPS transaction, the customer must download a voter registration form, print the form, fill out the form, and mail it in.[28]

Much of the information on the voter registration form is duplicative of information the customer already provided during the online transaction with DPS. In fact, just as voter registration forms do, DPS's online change-of-address or combined change-of-address and renewal forms require the following: date of birth, Texas driver's license number, residence address, residence city, residence zip code, residence county and, if it differs from residence, mailing address, mailing city, and mailing zip code.[29] Although the customer provides *this exact same information* to DPS during his online driver's license transaction, DPS fails to transfer this voter registration data to the Secretary of State.[30] What is more, DPS does not even record the answer to the online voter registration question.[31] This means, in order for a Texan who renews or changes his address online with DPS to become registered to vote, he must, in addition to

choose automatically defaulted to "no." SOS knew of this problem as early as 2012 but allowed four years to pass before it was corrected. Appx. 41 (Ex. 6, Ingram 30(b)(6) Dep. 84:24-85:3). The screenshot of Step 5 of the DPS driver license renewal and change-of-address system attached to Plaintiffs' Complaint depicts this default selection. Dkt. 1-2 at 2; Dkt. 52 at 10.

[27] Appx. 63-65 (Ex. 10, Gipson 30(b)(6) Dep. 77:23-78:9 and 94:1-4); Appx. 132-133 (Ex. 17, Screenshot of "Driver License Renewal Receipt and Temporary License," D_00015308-09).

[28] Appx. 135 (Ex. 18, Screenshot of Voter Registration Application from https://webservices.sos.state.tx.us/vrapp/index.asp (last visited June 28, 2017)); Appx. 137-138 (Ex. 19, Texas Voter Registration Application, Produced as Ex. 3-L to Gipson 30(b)(6) Dep.). The customer may also request to receive a blank application in the mail; *see also* Appx. 140-147 (Ex. 20, Feb. 2016 Driver License Renewal and Change of Address screen shots, Produced as Ex. 3-T to Gipson 30(b)(6) Dep.). For an online renewal application only, the customer must provide his date of birth and Texas driver's license number, two of the same data points required for the voter registration form.

[29] Compare *Id.* to Appx. 72 (Ex. 10, Gipson 30(b)(6) Dep. 223:17-224:05) and Appx. 130 (Ex. 16, Texas Department of Public Safety Driver License Renewal and Change-of-address webpage, D_00021840-41).

[30] Appx. 69 (Ex. 10, Gipson 30(b)(6) Dep. 204:17-21)

[31] Appx. 78 (Ex. 11, Gipson Dep. 136:10-19).

providing at least six data points to DPS during the online transaction, *also* fill out a voter registration form and provide six of those *same* data points.

It is undisputed, then, that under Texas's current online driver's license renewal and change-of-address system, Defendants do not treat online driver's license renewals and change-of-address submissions as simultaneous voter registration applications.[32] Instead, eligible applicants who indicate they wish to register to vote or update their voter registration during an online transaction must take additional steps after submitting their information online; otherwise, Texas does not register them to vote.

**C. Plaintiffs moved from one Texas county to another, transacted with DPS online to update their driver's license information, and checked "yes" to the voter registration question, yet Defendants failed to update their voter registration information and Plaintiffs were denied the chance to cast a regular ballot in an election.**

*1. Benjamin Hernandez*

Plaintiff Benjamin Hernandez is a lifelong Texas resident who moved to Dallas County from Ector County in February 2013.[33] Prior to his move, Mr. Hernandez was registered to vote in Ector County, where he voted regularly since turning 18.[34] After his move, he updated his driver's license address online.[35] Wanting to update his voter registration information, Mr. Hernandez checked "yes" to the voter registration question during that online transaction and thereafter believed he was registered to vote in Dallas County.[36] On Election Day 2014, Mr.

---

[32] Appx. 118, 123-124 (Ex. 15, DPS's Suppl. Resps. to Hernandez's First RFAs. Nos. 10-11); Appx. 123-124 (Ex. 15, DPS's Suppl. Resps. to Watkins' First RFAs. Nos. 20-25).

[33] Answer, Dkt. 57 at ¶¶ 16, 46.; Appx. 155 and 164 (Ex. 21, Excerpts of May 18, 2017 Deposition of Benjamin Hernandez ("Hernandez Dep.") 27:14-22, 43:07-09).

[34] Appx. 154 and 163 (Ex. 16, Hernandez Dep. at 19:2-8, 19:21-22; 42:17-43:06).

[35] Appx. 155-156 and 163 (*Id.* at 27:23-28:06; 43:07-13).

[36] Appx. 153 and 155-157 (*Id.* at 18:6-12; 27:23-29:07).

Hernandez attempted to vote in Dallas County, but was told that his name was not on the rolls.[37] Mr. Hernandez cast a provisional ballot, but later received notice that his vote was not counted.[38]

### 2. *Jarrod Stringer*

Plaintiff Jarrod Stringer moved from Tarrant County to Bexar County in August of 2014.[39] Prior to his move, Mr. Stringer was registered to vote in Tarrant County.[40] After moving, Mr. Stringer updated his driver's license address online, checking "yes" to the voter registration question and intending to update his voter registration.[41] Thereafter, he believed his voter registration records were updated.[42] Mr. Stringer attempted to vote early in the 2014 general election, but was told that he was not registered.[43] Mr. Stringer then called Bexar County election officials and was told that he was not registered in Bexar County and could only vote a limited ballot with statewide candidates.[44] When Mr. Stringer explained that he had changed his address through DPS's website, the election officials with whom he spoke told Mr. Stringer that the county was aware of "problems through DPS."[45]

### 3. *John Woods*

Plaintiff Dr. John O. Woods III changed his residence from Travis County to Harris County in June 2015.[46] Prior to this move, Dr. Woods was registered to vote in Travis County.[47]

---

[37] Appx. 161 and 158-159 (*Id.* at 37:8-13, 32:23-33:19).

[38] Appx. 159-160 (*Id.* at 33:20-34:11); Defs.' Dkt. 57 at ¶ 46. Mr. Hernandez was added to the voter registration rolls in Dallas County one month after he attempted to vote on Election Day 2014. *Id.*; Appx. 162 (Ex. 21, Hernandez Dep. at 39:04-09).

[39] Appx. 177 (Ex. 22, Excerpts of May 3, 2017 Deposition of Jarrod Stringer ("Stringer Dep.") at 31:01-08).

[40] Dkt. 57 at ¶ 47.

[41] Appx. 95 (Ex. 13, SOS's Suppl. Resps. to Jarrod Stringer's First RFAs, No. 3); Appx. 173 and 177-179 (Ex. 22, Stringer Dep.  15:08-24; 31:9-33-1).

[42] Appx. 173 and 178-179 (Ex. 22, Stringer Dep.15:08-24; 32:16-33:01).

[43] Appx. 180-181 (*Id.* 45:7-46:5).

[44] Appx. 174-175 and 181-182 (*Id.* 16:16-17:5, 46:15-47:17).

[45] Appx. 182 (*Id.* 47:8-11).

[46] Appx. 198 (Ex. 23, Excerpts from May 5, 2017 Deposition of John Woods ("Woods Dep.") 62:11-18).

In September 2015, Dr. Woods changed his driver's license address online and checked "yes" to the voter registration question.[48] He believed that his voter registration records were updated as a result.[49] Shortly thereafter, Dr. Woods went to a local library, where he was offered an opportunity to register to vote.[50] He declined that opportunity, however, because he believed that his voter registration records had already been updated.[51] Dr. Woods called Harris County on Election Day 2015 to confirm his polling location, and was informed that he was not registered in Harris County and that any provisional ballot he cast there would likely not be counted.[52] Nonetheless, Dr. Woods went to his local polling location and cast a provisional ballot.[53] He later received notice that his vote was not counted.[54] Defendants did not treat Dr. Woods's online driver's license application as a voter registration application.

### D. DPS is technologically capable of collecting and transmitting voter-registration information from online transactions to SOS and doing so would not be cost prohibitive.

The change Plaintiffs request—requiring DPS to record and transfer the registration information it already collects and confirms during online driver's license renewal or change-of-address to the SOS, along with the customer's previously-obtained electronic signature, and requiring SOS to transfer the voter registration information to local voter registrars—is possible and would not be overly burdensome.[55] Director of Elections Keith Ingram, SOS's 30(b)(6) designee, essentially drilling down to Defendants' core defense, testified, "This is a very possible

---

[47] Appx. 197 (Ex. 23, Woods Dep. 34:06-25).
[48] Appx. 195-196 (*Id.* 25:16-26:2).
[49] Appx. 194-196 (*Id.* 22:03-13; 25:22-26:5); Appx. 103 (Ex. 13, SOS's Suppl. Resps. to John Woods' First RFAs, No. 1).
[50] Appx. 199 (Ex. 23, Woods Dep. 63:10-25).
[51] Appx. 199 (*Id.* 63:10-25).
[52] Appx. 200-201 (*Id.* 64:1-65:9).
[53] Appx. 202-203 (*Id.* 66:25-67:18).
[54] Appx. 202 (*Id.* 66:6-11).
[55] Appx. 68 (Ex. 10, Gipson 30(b)(6) Dep. 175:24-176:8); Appx. 90 (Ex. 12, Crawford Dep. 143:25-144:21).

thing to do what you're saying if it was legal, and it's not legal."[56] In fact, DPS and SOS already do for in-person and mail-in change-of-address transactions exactly that which Plaintiffs request this Court order for online transactions. Moreover, implementing Plaintiffs' request would be even easier than the current process for in-person and mail-in change-of-address transactions because DPS *customers* would be entering their data into the system instead of DPS customer service representatives

Nor do Defendants claim that the cost of Plaintiffs' requested remedy would be prohibitive. Mr. Ingram opined that it would not cost a lot of money for DPS to send the previously obtained electronic signature to SOS, and further estimated that the cost of a fully online voter registration program, which goes beyond what Plaintiffs seek, would be $182,000.[57]

## LEGAL STANDARD

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[58] A dispute as to a material fact is genuine if the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). A fact is material if its resolution could affect the outcome of the action under governing law, and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). Summary judgment is proper, then, if under governing law there is only one reasonable conclusion as to the verdict. *Id.* at 249.

## ARGUMENT

The right to vote is fundamental, and Texas's violations injured and will continue to injure Plaintiffs and many more eligible Texas voters. *Arcia v. Florida Sec'y of State*, 772 F.3d

---

[56] Appx. 46 (Ex. 6, Ingram 30(b)(6) Dep. 186:5-13).
[57] Appx. 45-46 (*Id.* 184:12-185:5, 186:21-187:24).
[58] Fed. R. Civ. P. 56(a).

1335, 1341 (11th Cir. 2014) (finding that individual voters removed from rolls in violation of Section 8 of NVRA had standing to sue for prospective relief even after they were reinstated, because of "realistic probability" that ongoing violations could again affect their registration status); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury… [State resident's] alleged injuries flow directly from the denial of her registration form."); *Ferrand v. Schedler*, 2012 WL 1570094 *6 (E.D. La. May 3, 2012); *Georgia State Conference of NAACP. v. Kemp*, 841 F. Supp. 2d 1320, 1331 (N.D. Ga. 2012).

It is undisputed that (1) Plaintiffs are eligible Texas voters who changed their driver's license addresses online and checked "yes" in response to the question "I would like to register to vote," and (2) Defendants did not treat this transaction as a simultaneous voter registration application. The material facts are settled. Summary judgment is warranted here because these undisputed facts establish as a matter of law that Defendants violate the NVRA and the Equal Protection Clause by failing to treat online driver's license renewals or change-of-address applications as simultaneous applications to register to vote or update voter registration, in glaring contrast to the way that in-person and mail transactions are treated. For these reasons, Plaintiffs are entitled to summary judgment in their favor on all claims.

### A. Texas' failure to treat online DPS transactions as voter registration applications violates the NVRA

#### 1. *The plain language of the NVRA controls*

"Statutory construction, of course, begins with the plain language of statute." *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009). Where the plain language of the statute is clear, federal courts are compelled to apply the statute's mandate. Multiple courts have struck down state policies in violation of the plain language mandates of the NVRA. *Action NC v. Strach*, 216 F. Supp. 3d 597, 633-634 (M.D. N.C. 2016) (finding that a plain language interpretation of Section 5 of the

NVRA includes remote driver's license transactions); *Fish v. Kobach*, 840 F.3d 710, 732-740 (10th Cir. 2016) (upholding plain language interpretation of Section 5 of the NVRA to preempt state law requiring more than "minimum amount of information necessary" for voter registration); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012) (upholding plain language interpretation of Section 8 of the NVRA to allow for disclosure of voter registration applications); *Action NC v. Strach*, 216 F. Supp. 3d 597, 633-634 (M.D. N.C. 2016) (finding that a plain language interpretation of Section 5 of the NVRA includes remote driver's license transactions); *Ga. State Conference of N.A.A.C.P.*, 841 F. Supp. 2d at 1329, 1330, 1335 (finding, in part, that plain language interpretation of Section 7 of the NVRA requires an assistance office supplying an application for assistance to distribute voter registration and voter preference forms regardless of whether the application was made in person). In its Order denying Defendants' Motion to Dismiss, this Court found the state violates the plain language of the NVRA in failing to allow online DPS transactions to serve as voter registration applications.[59]

### 2. Defendants fail to treat online driver's license renewal applications as "simultaneous" voter registration applications in violation of 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), and 20504(a)(2).

The NVRA requires that "each" driver's license application, including "any" renewal application, simultaneously serve as an application for voter registration.[60] Moreover, the NVRA mandates that each voter registration application submitted to the state motor vehicle authority as part of a driver's license application, including any renewal application, update any previous registration by the applicant.[61]

---

[59] Dkt. 52 at 14.
[60] 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), 20504(c)(1); Dkt. 52 at 11, 18.
[61] 52 U.S.C. § 20504(a)(2).

As set out above, Defendants do not, and cannot, dispute that the NVRA applies to all driver's license application transactions, including online transactions. *Action NC v. Strach*, 216 F.Supp.3d at 622-23 (holding that "the words "each" and "any" in Section 5 require voter registration services to be provided with all covered transactions[,]" including remote application, renewal, and change-of-address transactions). Nor do they dispute that in Texas, driver's license renewal applications submitted to DPS online do not serve as simultaneous applications for voter registration, or that Defendants do not treat driver's license change-of-address applications submitted to DPS online as updating an applicant's previous voter registration. Instead, Defendants claim that the NVRA merely requires a "simultaneous *opportunity to apply* to register vote," contorting the plain language of the NVRA. Under Defendants' reading of the law, states are allowed to force voters to take additional steps to register to vote after completing their DPS transaction.

This Court considered and rejected Texas's argument, concluding that while a voter's registration need not be "effected simultaneously with their NVRA-covered driver's license transaction," the NVRA requires that the actual application for voter registration be simultaneous with the NVRA-covered driver's license application in "a single transaction."[62] Accordingly, "[w]here, as here, Defendants have chosen to offer an online forum for NVRA-covered driver's license transactions, the NVRA thus requires them to accept voter registration applications through that forum simultaneously with the NVRA-covered driver's license submissions that forum supports."[63]

---

[62] Dkt. 52 at 11.
[63] *Id.* at 20.

### 3. Defendants fail to treat online driver's license change-of-address applications as notifications for voter registration in violation of 52 U.S.C. § 20504(d).

Under the NVRA, all change-of-address forms submitted "in accordance with State law for purposes of a State motor vehicle driver's license" must also serve as a notification of change-of-address for voter registration purposes "unless the registrant states on the form that the change-of-address is not for voter registration purposes."[64] Driver's license "change-of-address forms must have equal effect as voter registration change-of-address forms[.]"[65] DPS concedes that a customer who has changed his driver's license address online—like each of the Plaintiffs here—has done so in accordance with state law, which does not impose a signature requirement on changes of address. It is undisputed that Defendants do not treat these online submissions to DPS as notifications of change-of-address for voter registration purposes. As this Court found, this "is inconsistent with the plain language of the NVRA."[66]

### 4. Defendants' requirement that applicants submit a separate voter registration application upon completion of online transactions violates the NVRA's prohibition against requiring duplicative information, 52 U.S.C. § 20504(c)(2).

The NVRA states that the voter-registration section of driver's license application forms "may not require any information that duplicates information required in the driver's license portion of the form[.]"[67] This Court held that Defendants' procedures violate the NVRA's limits on duplicative information requirements, as the separate voter registration form that DPS directs its customers to complete after an online transaction duplicates almost entirely the information required by DPS' online change-of-address form and combined change-of-address and renewal form.[68] "Indeed, it is the same form that prospective voters would use if they had not submitted an online change-of-address form at all, and merely applied to the Secretary of State for voter

---

[64] 52 U.S.C. § 20504(d); Dkt. 52 at 11.
[65] *Id.* at 14.
[66] *Id.*
[67] 52 U.S.C.§ 20504(c)(2); Dkt. 52 at 12.
[68] Dkt. 52 at 12.

registration in person or by mail in the first instance."[69] To comply with the NVRA, then, Defendants must allow customers who complete online change-of-address and license renewal forms to apply to register to vote as part of the *same application*.[70]

### 5. Defendants' failure to transmit voter registration information submitted during online driver's license transactions violates 52 U.S.C. § 20504(e).

The NVRA mandates that states transmit completed voter-registration portions of driver's license applications "to the appropriate State election official not later than 10 days after the date of acceptance[,]" or, if the application is completed within 5 days before the last day of a registration period, "not later than 5 days after the date of acceptance."[71] It is undisputed that DPS does not even *record*—and therefore cannot *transmit*—applicants' responses to the voter registration question on the online driver's license renewal and change-of-address application. Further, despite collecting from each online customer the personal information necessary for voter registration, DPS does not transmit this information to SOS for those customers who wish to register or update their voter registration. Defendants' failure to do so violates the clear mandate of the NVRA.

### 6. SOS's failure to ensure that eligible applicants are registered to vote upon completion of the voter registration portion of online driver's license change-of-address and renewal applications violates 52 U.S.C. § 20507(a)(1)(A).

Being responsible for Texas's compliance with the NVRA, SOS must ensure that eligible applicants are registered to vote in an election "if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."[72] As set out above and in this Court's previous ruling, under the NVRA, online driver license renewal and change-of-address forms are valid voter registration applications. Thus, individuals who indicate that

---

[69] *Id.*

[70] *Id.*

[71] 52 U.S.C. §§ 20504(e)(1)-(2).

[72] 52 U.S.C. § 20507(a)(1)(A).

they want to register to vote during an online driver's license transaction should be registered to vote.

It is undisputed that Texas does not, in fact, register eligible customers who indicate they wish to register to vote or update their voter registration during an online driver's license renewal or change-of-address transaction. SOS's failure to ensure that Texas does so constitutes a plain violation of the NVRA.

**B. Texas' failure to treat online DPS transactions as voter registration applications violates the Equal Protection Clause**

*1. The Equal Protection Clause protects against restrictions that place unreasonable burdens on the right to vote.*

The right to vote is a fundamental right protected under the Equal Protection Clause of the Fourteenth Amendment. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966). "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000). Specifically, the "Equal Protection Clause applies when a state either classifies voters in disparate ways… or places restrictions on the right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). When assessing an Equal Protection Clause challenge to a state restriction on the right to vote, courts use the standard laid out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under the *Anderson-Burdick* standard, a court

> must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the [s]tate as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

In *Crawford v. Marion County Election Bd.*, the Supreme Court, applying the *Anderson-Burdick* standard, noted that "rather than applying any 'litmus test' that would neatly separate

valid from invalid restrictions, …a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands." 553 U.S. 181, 190 (2008). The Court further explained that, however slight a burden a state restriction on an individual voter may appear, "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (citing *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). A sufficiently weighty justification is the difference between a reasonable and an unreasonable restriction. *Crawford* at 190 (citing *Burdick*, 504 U.S. at 434).

Defendants fail to provide any rational reason—much less a "sufficiently weighty" justification—for the burden they impose on the right to vote in Texas. Therefore, Defendants' treatment of online DPS transactions violates the Equal Protection Clause.

### 2. *Defendants' refusal to treat online driver's license transactions as voter registration applications unduly burdens Plaintiffs' right to vote.*

Plaintiffs are eligible Texas voters who changed their driver's license address online, and those online transactions were not used to register Plaintiffs to vote. There is no dispute that Texas treats some driver's license applications as applications to register to vote, and also *does not* treat other driver's license applications (online) as applications to register to vote. And there is no dispute that Texas refuses to provide a simultaneous voter registration application for people who are similarly situated to in-person or mail-in applicants in every way but one—they completed their transactions online.

Instead of using the information customers already provide to DPS to register them to vote or update their voter registration information, Texas burdens customers who transact with DPS online with a requirement that they retrieve, complete, print, and mail an entirely separate voter registration form in order to register or update their voter registration information. This burden is borne by online customers; DPS customers who apply for or change their license

information in person, or change their address by mail, are not required to complete a separate, additional voter registration application in order to register or update their voter registration information. This burden is a restriction on the fundamental right to vote that warrants "the demonstration of a corresponding interest sufficiently weighty to justify the limitation." Defendants have no such justification.

### 3. Defendants' asserted interest in requiring handwritten signatures is insufficient to justify the burdens created by their treatment of online DPS transactions.

Defendants' only justification for this burden is that DPS's online customers cannot sign the online driver's license form, and they claim that such a handwritten signature is necessary to "later check that signature against the poll book." [73] The record, however, demonstrates that the state *does not even use* handwritten signatures for voter registration or voter verification purposes. Instead, DPS collects and SOS and counties use *electronic signatures* of voters. Indeed, even though a DPS customer who indicates he wishes to register to vote on a mail-in change-of-address form provides DPS with a handwritten signature on that mail-in form, the signature DPS sends to SOS for voter registration purposes—and the signature SOS transmits to county election officials for voter registration—is the *previously-provided electronic signature* collected during the customer's most recent in-person transaction.

Although the state has an interest in verifying voter identity *at the polls*, this interest has nothing to do with the handwritten signatures collected by DPS during driver's license transactions, since the state only collects uses *electronic* signatures on DPS customers' voter registration applications. This interest is therefore irrelevant to and insufficient to justify Defendants restriction on Plaintiffs registering to vote during an online driver's license transaction.

---

[73] Defs. Reply in Supp. of Mot. to Dismiss, Dkt. 12 pp 2-3.

Defendants also claim that they treat everyone equally because the signature requirement applies to everyone, and that everyone who fails to sign a change-of-address or renewal application is not registered to vote. Defendants fundamentally misunderstand the Equal Protection Clause's application to state-imposed burdens on the right to vote. *Crawford*, 553 U.S. at 190, 191. The Equal Protection Clause requires states to justify the burden they impose on the right to vote. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Defendants' handwritten signature argument is insufficient to justify the burden that the state applies to online DPS customers.

### 4. *DPS's signature requirement as to online transactions is unreasonable.*

As pointed out by the Court, Defendants have not explained, and cannot explain, how the handwritten signature requirement is necessary.[74] As the Court observed, because DPS collects electronic signatures during every in-person driver's license transaction—including customers' first applications for a Texas driver's license—DPS already has a signature on file for every person who subsequently renews or changes their driver's license address.[75] Indeed, Defendants admitted that the handwritten signature on DPS forms is scanned and stored in a third-party vendor's system for identity-verification use only when fraud is suspected. For DPS purposes and voter registration purposes, Defendants simply use and store the signature that was electronically captured in the most recent previous in-person transaction. Defendants cannot show why handwritten signatures are necessary to confirm voter identity at the polls when collected, stored, and easily-accessible electronically-captured signatures do the same thing just as well, if not more efficiently, and when Texas already uses these electronic signature for this purpose for in-person and mail-in DPS applications. *Anderson*, 460 U.S. at 806 (quoting *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973) ("If the [s]tate has open to it a less drastic way of satisfying

---

[74] Dkt. 52 at 21.
[75] *Id.* at 17, 21.

its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties."); *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 633 (6th Cir. 2016), (cert. denied, 2017 WL 881266 (U.S. June 19, 2017) (restriction purportedly imposed to combat voter fraud was unjustified, in part, because the state already had a policy in place that sufficiently protected against voter fraud).

Moreover, as set out above, DPS's online system utilizes a four-point data verification process, which, as the Court points out, allows an online customer to verify his identity at login, instead of using a handwritten signature.[76] This verification process ensures that the individual transacting online is the person who previously provided an electronic signature during his last in-person transaction with DPS, and would likewise ensure that the electronic signature used for voter registration and voter verification belongs to the proper individual. With no sufficient justification for the state's restrictions on online transactions, the burden on Plaintiffs' right to vote is unreasonable.

**C.  Defendants' Affirmative Defenses are Not Supported by Evidence**

Defendants assert the following affirmative defenses: (1) failure to state a claim upon which relief can be granted, (2) Eleventh Amendment immunity and sovereign immunity, (3) statute of limitations, (4) all actions by Defendants relevant to the claims and causes of action by Plaintiffs were done in good faith and without malice, willfulness, or intent, (5) lack of standing and failure to demonstrate injury-in-fact, causation, or redressability necessary to establish standing, (6) Plaintiffs have not exhausted administrative requirements for filing suit, (7) failure to satisfy the conditions precedent required to invoke the Court's jurisdiction over their claims, including the pre-suit notice requirements of the NVRA, 52 U.S.C. § 20510(b)(1)-(2), (8)

---

[76] *Id.* at 18. Confusingly, the SOS allows voters to change their voter registration address online without a signature if they have moved within a county. The state only requires a signature when a voter moves from one county to another. Appx. 97 (Ex. 13, SOS's Suppl. Resps. to Stringer's First RFAs, No. 10).

misrepresentation, (9) Plaintiffs' claims are moot, (10) the Court lacks jurisdiction, and (11) Defendants' actions were reasonable and proper under the laws of the United States and the State of Texas. Defendants have put forth no evidence to support their affirmative defenses. In fact, some of the listed defenses bear no logical explanation for pleading (e.g., statute of limitations). Further, some of the claimed defenses were summarily rejected by this Court in its ruling on the Motion to Dismiss: the state's standing arguments,[77] the state's arguments regarding the NVRA's notice requirement,[78] and the state's "failure to state a claim" arguments.[79]

### D. Defendants should be required to correct their violations of the NVRA within three months of the Court's ruling.

The next federal voter registration deadline is February 5, 2018, in advance of the March primary elections—just over seven months from the date of this filing. For far too long, Defendants have defied the NVRA and denied millions of Texas the right to register or update their voter registration through an online transaction with DPS. Plaintiffs, and eligible Texas voters who are similarly situated, are entitled to immediate relief, before the start of another federal election cycle. Accordingly, the Court should require Defendants to update their systems to allow for compliance with the NVRA as to online driver's license transactions immediately, with full implementation within three months after the Court's ruling and no later than January 1, 2018.

Moreover, the public interest is served by requiring Defendants to immediately implement this plan. Namely, the almost 1.5 million customers who transact online with DPS each year will be irreparably injured if Defendants continue to defy federal law and the United States Constitution. The requested relief is the only way to correct Defendants' continued

---

[77] Dkt. 52 at 3-7.
[78] *Id.* at 7-9.
[79] *Id.* at 9-21.

violations of the NVRA and Equal Protection Clause with regard to these transactions. Monitoring to ensure compliance will be necessary.

## CONCLUSION

Plaintiffs respectfully request for the Court to enter an order:

1. Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA and the Equal Protection Clause by failing to provide for simultaneous voter registration application with online driver's license renewal;

2. Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA and the Equal Protection Clause by failing to provide for simultaneous voter registration application with online change-of-address forms;

3. Permanently enjoining Defendants, their agents and successors in office, and all customers working in concert with them, from implementing practices and procedures that likewise violate the NVRA;

4. Directing Defendants, under a plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their noncompliance, including, but not limited to providing for the electronic transfer of voter registration information collected and confirmed through online transactions to the Secretary of State within three months of the Court's order and no later than January 1, 2018.

Dated: June 30, 2017.                          Respectfully submitted,

                                               By: /s/ Rebecca Harrison Stevens

                                               Mimi M.D. Marziani
                                               Texas Bar No. 24091906
                                               mimi@texascivilrightsproject.org
                                               Rebecca Harrison Stevens
                                               Texas Bar No. 24065381
                                               beth@texascivilrightsproject.org
                                               Hani Mirza
                                               Texas Bar No. 24083512
                                               hani@texascivilrightsproject.org
                                               Cassandra Champion
                                               Texas Bar No. 24082799
                                               champion@texascivilrightsproject.org

                                               TEXAS CIVIL RIGHTS PROJECT
                                               1405 Montopolis Drive
                                               Austin, Texas 78741
                                               512-474-5073 (Telephone)
                                               512-474-0726 (Facsimile)


                                               Peter A. Kraus (*pro hac vice*)
                                               Texas Bar No. 11712980
                                               kraus@waterskraus.com
                                               Charles S. Siegel
                                               Texas Bar No. 18341875
                                               siegel@waterskraus.com
                                               Caitlyn E. Silhan
                                               Texas Bar No. 24072879
                                               csilhan@waterskraus.com
                                               Rachel A. Gross (*pro hac vice*)
                                               Texas Bar No. 24073608
                                               rgross@waterskraus.com

                                               WATERS & KRAUS, LLP
                                               3141 Hood Street, Suite 700
                                               Dallas, Texas 75219
                                               214-357-6244 (Telephone)
                                               214-871-2263 (Facsimile)


                                               ***ATTORNEYS FOR PLAINTIFFS***

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of June, 2017, a true and correct copy of the foregoing *Plaintiffs' Motion for Summary Judgment* was served upon counsel of record via the Court's ECF system.

<u>*/s/*</u> Rebecca Harrison Stevens