IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, ET AL., | § | |
|     *Plaintiffs,* | § | |
| | § | |
| V. | § | NO. 5:16-CV-00257 |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL   CAPACITY | § | |
| AS THE TEXAS SECRETARY OF STATE AND | § | |
| STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, | § | |
|     *Defendants.* | § | |

## APPENDIX

| | |
|---|---|
| Exhibit A | Hernandez's April 24, 2017, Objections & Response to Ds' Rogs, RFP and RFA |
| Exhibit B | Stringer's April 17, 2017, Objections & Response to Ds' Rogs, RFP and RFA |
| Exhibit C | Wood's April 17, 2017, Objections & Response to Ds' Rogs, RFP and RFA |
| Exhibit D | Excerpts from May 18, 2017, Deposition of Benjamin Hernandez |
| Exhibit E | Excerpts from May 3, 2017, Deposition of Jarrod Stringer |
| Exhibit F | Excerpts from May 5, 2017, Deposition of John Woods |
| Exhibit G | Excerpts from March 22, 2017, Deposition of Brian Keith Ingram |
| Exhibit H | Excerpts from May 30, 2017, Deposition of Betsy Schonhoff |
| Exhibit I | Plaintiffs' TEAM Records (filed under seal with separate motion) |

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE and STEVEN C. McCRAW, IN | § | |
| HIS OFFICIAL CAPACITY AS THE | § | |
| DIRECTOR OF THE TEXAS | § | |
| DEPARTMENT OF PUBLIC SAFETY, | § | |
| Defendants. | § | |

## PLAINTIFF BENJAMIN HERNANDEZ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

**TO:**   Defendants, by and through their attorneys of record, Anna Mackin and Esteban Soto, Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Benjamin Hernandez hereby serves the following Objections and Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission.

Dated: April 24, 2017

Respectfully submitted,

By: /s/ Rebecca Harrison Stevens

Peter A. Kraus (*pro hac vice*)
Texas Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com

Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross (*pro hac vice*)
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, #700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Cassandra Champion
Texas Bar No. 24082799
champion@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2017, a true and correct copy of the foregoing *Plaintiffs Benjamin Hernandez's Objections and Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission*, was served upon counsel of record via email.

/s/ Rebecca Harrison Stevens

## RESERVATION OF RIGHTS

Plaintiff has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to him. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these Responses. Plaintiff therefore reserves his right to supplement, amend, revise, correct, modify, or clarify these Responses as additional information becomes available.

Plaintiff makes his objections and responses in accordance with his interpretation and understanding of Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission and in accordance with his current knowledge, understanding, and belief as to the facts and information available to him at the time of serving these Responses. If Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiffs' understanding of the same, Plaintiff reserves his right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. He also reserves the right to amend, revise, correct, modify, or clarify his Responses to properly respond to any interpretation Defendants may give these Requests.

Plaintiff reserves his right to object on any grounds, at any time, to the admission or use of any Response on any ground.

## PLAINTIFF BENJAMIN HERNANDEZ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

1.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in paragraph 46 of your Original Complaint, you did not submit a change of address that relates to a Texas driver license *in person*.

RESPONSE: Admit.

3

2.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in paragraph 46 of your Original Complaint, you did not submit a change of address that relates to a Texas driver license *by mail*.

RESPONSE: Admit.

3.     Admit that, when you moved to Dallas County from Ector County in February 2013, as alleged in paragraph 46 of your Original Complaint, you checked "yes" in response to the following message "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)" (emphasis original).

RESPONSE: Mr. Hernandez admits checking "yes" in response to the statement "I want to register to vote." Mr. Hernandez does not recall seeing the message, "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)."

4.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in paragraph 46 of your Original Complaint, you were provided a link to the voter registration application proscribed by the Secretary of State.

RESPONSE: Mr. Hernandez has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Mr. Hernandez would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Mr. Hernandez does not recall being provided a link to a voter registration application when he visited DPS's website to update his address online after moving from Dallas County from Ector County in February 2013.

5.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in paragraph 46 of your Original Complaint, you did not complete the voter registration application proscribed by the Secretary of State.

RESPONSE: Mr. Hernandez admits that he did not complete a voter registration application on the Secretary of State's website. Mr. Hernandez would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Mr. Hernandez does not recall being provided with a separate voter registration application when he visited DPS's website to update his address after he moved to Dallas County from Ector County in February 2013.

6.     Admit that you did not submit a written, signed request to change your voter registration information when you moved to Dallas County from Ector County in February 2013 and changed your address online, as alleged in paragraph 46 of your Original Complaint.

RESPONSE: Mr. Hernandez denies not submitting a written request to change his voter registration information. Mr. Hernandez denies not submitting a signed request to change his voter registration information. Based upon receipt of an updated driver license containing his electronic signature, Mr. Hernandez believes his online change of address transaction after he moved to Dallas County from Ector County in February 2013 caused his electronic signature to be reused by DPS.

4

7.      Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in 46 of your Original Complaint, you did not submit a handwritten signature or digitized image thereof.

RESPONSE: Mr. Hernandez only to not submitting a handwritten signature. Based upon receipt of an updated driver license containing his electronic signature, Mr. Hernandez believes his online change of address transaction after he moved to Dallas County from Ector County in February 2013 caused his electronic signature to be reused by DPS.

8.      Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in 46 of your Original Complaint, you did not attest that you are a US citizen.

RESPONSE: Mr. Hernandez has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Mr. Hernandez is unable to admit or deny because he does not recall whether he attested that he was a United States citizen and does not currently have access to the application he submitted online after he moved from Ector County to Dallas County in February 2013.

9.      Admit that Defendants offered, through your attorneys, to confirm your voter registration status, and to assist you in updating your voter registration information, if you desired.

RESPONSE: Mr. Hernandez admits that he was offered, through his attorneys, to confirm his voter registration status and assistance in updating his voter registration information if he desired.

10.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in 46 of your Original Complaint, as alleged in paragraph 46 of your Original Complaint, you did not attempt to *renew* your Texas driver license online.

RESPONSE: Admit.

11.     Admit that, when you moved to Dallas County from Ector County in February 2013 and updated your address online, as alleged in 46 of your Original Complaint, as alleged in paragraph 46 of your Original Complaint, you did not do so by telephone.

RESPONSE: Admit

12.     Admit that you are currently registered to vote in the county where, when providing Defendants notice of the NVRA violations you allege, you indicated you wished to be registered.

RESPONSE: Admit.

5

13.     Admit that you were able to cast a ballot in the 2012 general election. If you deny that you were able to cast a ballot in the 2012 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Hernandez admits that he was able to cast a ballot.

14.     Admit that you were able to cast a ballot in the 2013 federal general election. If you deny that you were able to cast a ballot in the 2013 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Hernandez denies this request because there was no federal general election in Texas in 2013.

15.     Admit that you were able to cast a ballot in the 2014 federal general election. If you deny that you were able to cast a ballot in the 2014 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Hernandez denies that he was able to cast a ballot. Hernandez denies not attempting to cast a ballot.

16.     Admit that you were able to cast a ballot in the 2015 federal general election. If you deny that you were able to cast a ballot in the 2015 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Hernandez denies this request because there was no federal general election in Texas in 2015.

17.     Admit that you were able to cast a ballot in the 2016 federal general election. If you deny that you were able to cast a ballot in the 2016 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Hernandez admits casting a ballot.


### DEFENDANT ROLANDO PABLOS'S FIRST INTERROGATORIES TO BENJAMIN HERNANDEZ

1.     Identify each individual you intend to present as a witness in this case, including name, address, and phone number.

RESPONSE: Plaintiff objects to this interrogatory as premature, and as overbroad and unduly burdensome, as Plaintiff has already produced his Initial Disclosures and will produce his First Amended Disclosures concurrently with this Response. Subject to and without waiving the foregoing, Plaintiff responds that discovery is ongoing, and he has not yet—and cannot yet— identify his trial witnesses at this point in time. Plaintiff will file and serve his trial witness list when and as required by Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Plaintiffs' Initial and First Amended Disclosures contain lists of individuals who may have information that Plaintiffs may use to support their claims.

2.     Do you contend that before filing suit you provided Defendants notice of the NRVA violations you claim have injured you, and the necessary information that would allow Defendants to correct those alleged violations? If so, please describe in detail 1) the specific types of personal information you provided to Defendants; 2) the date you provided this information to Defendants; 3) the manner in which you provided this information to Defendants.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds that on May 27, 2015, Plaintiff notified Defendants, in writing and through counsel, as follows:

> **Benjamin Hernandez**: Mr. Hernandez moved to Dallas County from Ector County in February 2013. That month, he changed his address and attempted to update his voter registration online through DPS' website. Mr. Hernandez received a new driver's license in the mail, but did not receive a voter registration card. On Election Day 2014, Mr. Hernandez attempted to vote in Dallas County, but was told that his name was not on the rolls. He cast a provisional ballot, but later received notice that his vote was not counted.
>
> …
>
> Critically, none of these voters were informed that completing DPS' online change-of-address form could remove their names from the rolls in their former county of residence. Instead, each believed that he or she was properly registered because he or she completed an online transaction with DPS. These voters only learned of DPS' failure to register them to vote or to update their voter registration files when they arrived at the polls.
>
> The Elections Division has received more than 1,800 reports from individuals who completed an online transaction with DPS and mistakenly believed that the voter rolls were updated too. These voters complained to election officials when they attempted to vote but none of their votes were ultimately counted.[41] Plus, for the reasons outlined above, these 1,800 voters represent just a fraction of the total voters statewide who were disenfranchised on these grounds.
>
> Furthermore, although the Elections Division and DPS have been aware of "the confusion" caused by the online policies since at least 2012,[42] no significant reforms have been made. Emails between the Election Division and DPS acknowledge widespread confusion among voters in 2012, but — rather than credit online transactions as required by the NVRA or, at the very least, clarify the notice given on the DPS website — officials chose simply to link "directly to the voter application page instead of the general SOS page" when a voter completes an online renewal or change-of-address transaction.[43] Clearly, this "solution" has been woefully inadequate.

*See* Exhibit C to Plaintiffs Original Complaint (Dkt. 1-4) at pp. 14-15; *see also* Mar. 31, 2017 Order Denying Defendants' Motion to Dismiss (Dkt. 52) at pp. 7-9.


3.     Do you contend that you are still being harmed by Defendants' alleged conduct? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Defendants' continue to violate Plaintiff's rights under the NVRA by failing to provide to online customers a "[s]imultaneous application for voter registration and…driver's license[;]" a voter registration application portion of a driver's license application that does not require any information that duplicates the driver's license portion of the form; and a change of address form submitted in accordance with state law for purposes of state motor vehicle driver's license that serves as a notification of change of address for voter registration with respect to elections for Federal office, unless the registrant states on the form that the change of address is not for voter registration purposes.

4.    Do you contend that "countless eligible Texas residents have been denied the right to voter registration" as alleged in paragraph 54 of your Original Complaint? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Documents produced by Defendants and TEXAS NICUSA, LLC confirm that millions of Texans renew or change their driver license addresses online each year, and Defendants admit that they have and continue to fail to accept voter registration applications and updates to voter registration files during these NVRA-covered driver license transactions.  See Sheri Gipson's 30(b)(6) p 141, line 12; Exhibit 3Y to Sheri Gipson's 30(b)(6) deposition; NIC 00481; and Defendant Steve C. McCraw's First Supplemental Responses to Plaintiff's First Set of Requests for Admissions, #s 10, 11, 12, and 13.

5.    Do you contend that the NVRA requires "simultaneous voter registration" as alleged in paragraph 39 of your Original Complaint? If so, describe in detail the basis for this contention, including whether you contend that the NVRA requires an instantaneous update in county voter registration rolls when an individual completes an NVRA-covered transaction. If you do not contend that the NVRA requires an instantaneous update in county voter registration rolls, state the specific timeframe (in seconds, minutes, hours, and/or days) in which you contend the NVRA requires county voter registration rolls must be updated.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

6.    In paragraph 57 of your Original Complaint, you allege that state officials have been aware of "significant and widespread confusion caused by the State's treatment of online DPS transactions since at least 2012." Please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff responds that many voters complained about and were surprised to discover that they were not registered to vote in the county to which they moved and updated or renewed their address through DPS' online application. See Exhibit B to Complaint; Exhibit D pp. 7-8; Exhibit D at p. 17;  Exhibit D at pp. 22-23; Exhibit D at p. 27;  Exhibit D at p. 32.

7.    In paragraph 50 of your Original Complaint, you allege that you believed you were "properly registered [to vote] because [you] completed an online transaction with DPS, attempted to update [your] registration records, and later received an updated driver's license in the mail."

8

Do you contend that other potential Texas voters, who are not party to this lawsuit, are similarly confused by the same process? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff objects to the characterization that Plaintiff was "confused" by the online process.

8.      What do you believe the statement "Selecting 'yes' does not register you to vote" signifies?

RESPONSE: Mr. Hernandez believes this statement is confusing as it is counterintuitive, since the website asked "do you want to register to vote?" Also, he does not recall seeing this language when he updated his address online after he moved to Dallas County from Ector County in February 2013.

9.      Do you contend that you are entitled to recover attorney's fees, costs, and expenses for multiple attorneys' attendance and/or participate in depositions in this case? If so, please describe in detail the basis for this contention, including, but not limited to: 1) identifying any case law supporting this contention; 2) describing in detail each attorney's participation in the case thus far, including necessity of attendance at depositions; 3) identifying the hourly rate sought by each attorney.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion. Plaintiff further objects to this request on the ground that it requests information that is not relevant to Plaintiff's claims and is therefore outside the scope of discovery, and to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees, and will do so when and as required by Local Rule CV-7(j).

10.     Identify by URL or website address any Social Media Sites in your name.

RESPONSE: Mr. Hernandez has no social media accounts

11.     Do you contend that the State of Texas is similarly situated to the State of Alabama for purposes of the NVRA? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

12.     Please state the date and county of your first registration to vote in Texas, and list all of the subsequent changes you have made to your voter registration, including the substance of the change, approximate date, and how you made the change.

RESPONSE: Plaintiff objects to this interrogatory as Defendants have equal or greater access to this information because Defendants have access to Mr. Hernandez's voter registration records. Subject to that objection, Mr. Hernandez does not remember all the times he registered to vote. Based on information, belief, and recollection, Mr. Hernandez first registered to vote in Ector County in 1982. He recalls updating his address online with DPS in 2013 after he moved from Ector County to Dallas County and believed he was registered to vote. He then received a voter registration card in the mail in 2014, presumably as a result of the provisional ballot he filled out in November 2014.

DEFENDANTS' REQUESTS FOR PRODUCTION TO BENJAMIN HERNANDEZ

1.      All documents related to the categories of documents, electronically stored information, and tangible things that Plaintiffs' listed in Plaintiffs' Initial Disclosures and any subsequent amended disclosures.

RESPONSE: Plaintiff objects to this request as overly broad, unduly vague, and ambiguous, and to the extent it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Subject to and without waiver of the foregoing objections, Plaintiff will produce copies of the documents listed in Plaintiffs' Initial and Amended Disclosures, except to the extent they are already in Defendants' possession, custody, or control.

2.      All documents reflecting your assertion that you "updated [your] driver's license address online" in February 2013, as alleged in paragraph 46 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control

3.      All documents reflecting that you moved to Dallas County from Ector County in February 2013, as alleged in paragraph 46 of your Original Complaint.

RESPONSE: Plaintiff objects to this request as overbroad, vague, and ambiguous to the extent that, as worded, it seeks any documents tangentially related to Plaintiff's move from Ector County to Dallas County. Subject to and without waiver of the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control documenting his move from Ector County to Dallas County in June 2013. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control, or publicly available and outside of Plaintiff's own possession, custody, or control.

4.      All documents reflecting your assertion that, on Election Day 2014, you "attempted to vote in Dallas County, but w[ere] told that [your] name was not on the rolls in Dallas County," as alleged in paragraph 46 of your Original Complaint."

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

5.      All documents reflecting the "total number" of Texas voters you contend were injured by Defendants' conduct as alleged in paragraph 9 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

6.      All documents related to your allegation that you provided detailed notice of Defendant's

10

alleged violations as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it seeks from Plaintiffs documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

7.      All documents related to your allegation that Defendants failed to correct alleged NVRA violations within 90 days of receiving notice as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

8.      All documents containing your writing including notes, diary entries, emails, letters, or any other writing that includes comments regarding the issues in this suit.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff objects to the phrase "issues in this suit" as overly broad, unduly vague, and ambiguous. Subject to and without waiving the foregoing, Plaintiff responds that after a reasonable search of his records, Plaintiff has not found any non-privileged documents responsive to this request in his possession, custody, or control, nor are any currently available to him.

9.      All documents reflecting your allegation that "countless eligible Texas residents have been denied the fight to voter registration" as alleged in paragraph 54 of your Original Complaint.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control and that have not already been provided by or to Defendants in the course of this litigation. Any additional responsive documents are in Defendants' possession, custody, or control.

10.     All documents reflecting communications between any attorney for Plaintiffs and any person serving as a testifying expert witness for Plaintiffs that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that Plaintiffs' attorneys provided and that the expert considered in forming the opinions to be expressed; and/or (iii) identify assumptions that Plaintiffs' attorneys provided and that the expert relief on in forming the opinions to be expressed. This request explicitly does not seek attorney work product or attorney-client communications.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

11.     A copy of each expert report, declaration, affidavit, deposition transcript, and/or trial transcript reflecting or containing the testimony of each testifying expert witness for Plaintiffs during the previous five years.

RESPONSE: Plaintiff objects to the extent this request seeks confidential and sensitive information not subject to disclosure without a court order. Subject to and without waiver of the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

12.     All documents constituting, memorializing, reflecting or relating to fee agreements, billing statement, time records, and expenses related to your request for fees and expenses in this suit.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees and expenses, and will do so when and as required by Local Rule CV-7(j). Plaintiffs and defendants are working together informally to agree to the amount of attorneys' fees and costs owed to Plaintiffs pursuant to the Court's order of sanctions against Defendants.

13.     All documents reflecting the hourly rate of each of your attorneys.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine.

14.     All documents received in response to any subpoena served on any nonparty in connection with this case.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests that Plaintiff   produce documents already in Defendants' custody, possession, and control. Upon information and belief, and based on TexasNICUSA, LLC's March 21, 2017 email to counsel for both Plaintiffs and Defendants—as well as Defense counsel's statements to Plaintiffs' counsel during the March 31, 2017 deposition of TexasNICUSA, LLC—Defendants possess all documents produced in response to Plaintiffs' subpoena served on any nonparties in connection with this case.

15.     All documents or communications with non-parties, including but not limited to, Texas NICUSA, LLC, d/b/a Texas NIC, about this suit or the issues in this suit.

RESPONSE: Plaintiff objects to this request as overbroad and unduly vague as to "the issues in this suit." Plaintiff further objects that this request is unreasonably burdensome and not proportional to the needs of the case, and to the extent that it requests documents or communications protected by the work-product doctrine. Subject to and without waiving the foregoing, Plaintiff will produce copies of all communications with Texas NICUSA, LLC, d/b/a Texas NIC, responsive documents that are in his possession, custody, or control.

16.     All documents that you intend to use as evidence to support your claims in this case.

12

RESPONSE: Plaintiff objects to this request as duplicative of Request No. 1. Plaintiff further objects to this request as overbroad and unduly burdensome to the extent it demands Plaintiffs produce documents to Defendants that are already in Defendants' custody, possession, and control, including those that Defendants produced to Plaintiffs. Plaintiff further objects to this request to the extent that it requires the identification and production of Plaintiff's exhibits prior to the time specified in Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Subject to and without waiving the foregoing, Plaintiff responds that discovery is not complete, and that he therefore has not and cannot yet identify the documents he intends to use as evidence. Plaintiff will file and serve his list of all documents he intends to use as evidence to support his claims in this case when and as required by Rule CV-16(e).

VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF _Dallas_      §

BEFORE ME, the undersigned authority, on this day personally appeared Benjamin Hernandez, known to me to be the person whose name is subscribed to the foregoing PLAINTIFF BENJAMIN HERNANDEZ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, and after having been duly sworn state on her oath:

"I read PLAINTIFF BENJAMIN HERNANDEZ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES and the facts stated in it are within my personal knowledge and are true and correct."

_Benjamin Hernandez_ (signature)
Benjamin Hernandez

Sworn to and subscribed before me by Benjamin Hernandez on _APRIL 24_, 2017.

FATIMA MOHAMED
Notary Public, State of Texas
Commission # 129683430
My Commission Expires
January 21, 2018

_(signature)_
Notary Public in and for the State of _TEXAS_

My Commission Expires: _01/21/2018_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE and STEVEN C. McCRAW, IN | § | |
| HIS OFFICIAL CAPACITY AS THE | § | |
| DIRECTOR OF THE TEXAS | § | |
| DEPARTMENT OF PUBLIC SAFETY, | § | |
| Defendants. | § | |

**PLAINTIFF JARROD STRINGER'S OBJECTIONS AND RESPONSES TO
DEFENDANTS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION,
AND REQUESTS FOR ADMISSION**

**TO:**   Defendants, by and through their attorneys of record, Anna Mackin and Esteban
Soto, Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Jarrod Stringer hereby

serves the following Objections and Responses to Defendants' First Set of Interrogatories, Requests

for Production, and Requests for Admission.

Dated: April 17, 2017                    Respectfully submitted,

                                         By: /s/ Rebecca Harrison Stevens

                                         Peter A. Kraus (*pro hac vice*)
                                         Texas Bar No. 11712980
                                         kraus@waterskraus.com
                                         Charles S. Siegel
                                         Texas Bar No. 18341875
                                         siegel@waterskraus.com

Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross *(pro hac vice)*
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, #700
Dallas, Texas  75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Cassandra Champion
Texas Bar No. 24082799
champion@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2017, a true and correct copy of the foregoing *Plaintiffs Jarrod Stringer's Objections and Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission*, was served upon counsel of record via email.

/s/ Rebecca Harrison Stevens

## RESERVATION OF RIGHTS

Plaintiff has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to him. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these Responses. Plaintiff therefore reserves his right to supplement, amend, revise, correct, modify, or clarify these Responses as additional information becomes available.

Plaintiff makes his objections and responses in accordance with his interpretation and understanding of Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission and in accordance with his current knowledge, understanding, and belief as to the facts and information available to him at the time of serving these Responses. If Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiffs' understanding of the same, Plaintiff reserves his right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. He also reserves the right to amend, revise, correct, modify, or clarify his Responses to properly respond to any interpretation Defendants may give these Requests.

Plaintiff reserves his right to object on any grounds, at any time, to the admission or use of any Response on any ground.

## PLAINTIFF JARROD STRINGER'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

1. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not submit a change of address that relates to a Texas driver license *in person*.

RESPONSE: Admit

2. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, you did not submit a change of address that relates to a Texas driver license *by mail*.

RESPONSE: Admit

3. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you checked "yes" in response to the following message "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)" (emphasis original).

RESPONSE: Mr. Stringer admits checking "yes" in response to the statement "I want to register to vote." Mr. Stringer denies checking "yes" in response to the message, "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)."

4. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you were provided a link to the voter registration application proscribed by the Secretary of State.

RESPONSE: Mr. Stringer has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Mr. Stringer would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Mr. Stringer does not recall being provided a link to a voter registration application when he visited DPS's website to update his address during the week of August 1, 2014.

5. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not complete the voter registration application proscribed by the Secretary of State.

RESPONSE: Mr. Stringer admits that he did not complete a voter registration application on the Secretary of State's website. Mr. Stringer would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Mr. Stringer does not recall being provided with a separate voter registration application when he visited DPS's website to update his address during the week of August 1, 2014.

6. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not submit a written, signed request to change your voter registration information.

RESPONSE: Mr. Stringer denies not submitting a written request to change his voter registration information. Mr. Stringer denies not submitting a signed request to change his voter registration information. Based upon receipt of an updated driver license containing his electronic signature, Mr. Stringer believes his online change of address transaction during the week of August 1, 2014 caused his electronic signature to be reused by DPS.

7. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not submit a handwritten signature or a digitized image thereof.

RESPONSE: Mr. Stringer admits only to not submitting a handwritten signature. Based upon receipt of an updated driver license containing his electronic signature, Mr. Stringer believes his online change of address transaction during the week of August 1, 2014 caused his electronic signature to be reused by DPS.

8. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not attest that you are a United States citizen.

RESPONSE: Mr. Stringer has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Mr. Stringer is unable to admit or deny because he does not recall whether he attested that he was a United States citizen and does not currently have access to the application he submitted on August 1, 2014.

9. Admit that Defendants offered, through your attorneys, to confirm your voter registration status, and to assist you in updating your voter registration information, if you desired.

RESPONSE: Mr. Stringer admits that he was offered, through his attorneys, to confirm his voter registration status and assistance in updating his voter registration information if he desired. Mr. Stringer denies he was offered services personally and directly from Defendants.

10. Admit that you did not attempt to *renew* your Texas driver license online when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint.

RESPONSE: Admit.

11. Admit that, when you visited DPS' website to update your address the week of August 1, 2014 after moving from Arlington, Texas to San Antonio, Texas, as alleged in paragraph 47 of your Original Complaint, you did not do so by telephone.

RESPONSE: Admit.

12. Admit that you are currently registered to vote in the county where, when providing Defendants notice of the NVRA violations you allege, you indicated you wished to be registered.

RESPONSE: Admit.

13. Admit that you were able to cast a ballot in the 2012 general election. If you deny that you were able to cast a ballot in the 2012 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Stringer admits that he did not attempt to cast a ballot in the 2012 general election.

14. Admit that you were able to cast a ballot in the 2013 federal general election. If you deny that you were able to cast a ballot in the 2013 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Stringer denies this request because there was no federal general election in Texas in 2013.

15. Admit that you were able to cast a ballot in the 2014 federal general election. If you deny that you were able to cast a ballot in the 2014 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Stringer denies that he was able to cast a ballot. Mr. Stringer admits that he attempted to vote. Mr. Stringer attempted to vote during early voting, but was told he could only vote in the statewide elections and could only vote on Election Day at the courthouse.

16. Admit that you were able to cast a ballot in the 2015 federal general election. If you deny that you were able to cast a ballot in the 2015 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Stringer denies this request because there was no federal general election in Texas in 2015.

17. Admit that you were able to cast a ballot in the 2016 federal general election. If you deny that you were able to cast a ballot in the 2016 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Mr. Stringer admits casting a ballot.

### PLAINTIFF JARROD STRINGER'S OBJECTIONS AND RESPONSES TO ROLANDO PABLOS'S FIRST SET OF INTERROGATORIES

1. Identify each individual you intend to present as a witness in this case, including name, address, and phone number.

RESPONSE:  Plaintiff objects to this interrogatory as premature, and as overbroad and unduly burdensome, as Plaintiff has already produced his Initial Disclosures and will produce his First Amended Disclosures concurrently with this Response. Subject to and without waiving the foregoing, Plaintiff responds that discovery is ongoing, and he has not yet—and cannot yet— identify his trial witnesses at this point in time. Plaintiff will file and serve his trial witness list when and as required by Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Plaintiffs' Initial and First Amended Disclosures contain lists of individuals who may have information that Plaintiffs may use to support their claims.

2. Do you contend that before filing suit you provided Defendants notice of the NRVA violations you claim have injured you, and the necessary information that would allow Defendants to correct those alleged violations? If so, please describe in detail 1) the specific types of personal information you

provided to Defendants; 2) the date you provided this information to Defendants; 3) the manner in which you provided this information to Defendants.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds that on October 23, 2015, Plaintiff notified Defendants, in writing and through counsel, as follows:

> I write to supplement our May 27th Notice Letter (attached and incorporated herein by reference) with the name of another Texas voter who attempted to update his voter registration information when changing his address online at www.txdps.state.tx.us. This letter provides formal notice to the State of NVRA violations under 52 U.S.C. § 20510(b) on behalf of Jarrod Stringer and others similarly situated.

> Mr. Stringer moved from Arlington, Texas to San Antonio, Texas on August 1, 2014. Mr. Stringer visited DPS' website to update his address within the same week, and recalls checking "yes" when asked whether he wished to update his voter registration. Mr. Stringer attempted to vote early in the November 2014 election, but was told by poll workers at the University of Texas at San Antonio that his name was not on the rolls. Mr. Stringer then called Bexar County, and was told that he was not registered in Bexar, and that as a result, he could only vote in the state-wide election there. When he explained that he had changed his address for voter registration purposes online through DPS' website, the county employee with whom he was speaking told him that the county was aware of "problems at DPS."

> As set out in our original Notice Letter, every time an eligible resident renews or updates his or her driver's license with DPS, the NVRA requires that DPS simultaneously register that person to vote or update that person's voter registration file, unless the applicant fails to sign the form or indicates that he or she does not wish to update his or her information for voter registration purposes. Unfortunately, the State is not complying with the NVRA's mandates.

> We are willing to meet or speak with you to discuss this Supplemental Notice. In any event, please advise as to whether the State maintains the positions articulated in your June 23rd and September 10th letters.

*See* Exhibit C to Plaintiffs Original Complaint (Dkt. 1-4) at pp. 195-196; *see also* Mar. 31, 2017 Order Denying Defendants' Motion to Dismiss (Dkt. 52) at pp. 7-9.

3. Do you contend that you are still being harmed by Defendants' alleged conduct? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Defendants' continue to violate Plaintiff's rights under the NVRA by failing to provide to online customers a "[s]imultaneous application for voter registration and…driver's license[;]" a voter registration application portion of a driver's license application that does not require any information that duplicates the driver's license portion of the form; and a change of address form submitted in accordance with state law for purposes of state motor vehicle driver's license that serves as a notification of change of address for voter registration with respect to elections for Federal office, unless the registrant states on the form that the change of address is not for voter registration purposes.

4. Do you contend that "countless eligible Texas residents have been denied the right to voter registration" as alleged in paragraph 54 of your Original Complaint? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Documents produced by Defendants and TEXAS NICUSA, LLC confirm that millions of Texans renew or change their driver license addresses online each year, and Defendants admit that they have and continue to fail to accept voter registration applications and updates to voter registration files during these NVRA-covered driver license transactions.  *See* Sheri Gipson's 30(b)(6) p 141, line 12; Exhibit 3Y to Sheri Gipson's 30(b)(6) deposition; NIC 00481; and Defendant Steve C. McCraw's First Supplemental Responses to Plaintiff's First Set of Requests for Admissions, #s 10, 11, 12, and 13.


5. Do you contend that the NVRA requires "simultaneous voter registration" as alleged in paragraph 39 of your Original Complaint? If so, describe in detail the basis for this contention, including whether you contend that the NVRA requires an instantaneous update in county voter registration rolls when an individual completes an NVRA-covered transaction. If you do not contend that the NVRA requires an instantaneous update in county voter registration rolls, state the specific timeframe (in seconds, minutes, hours, and/or days) in which you contend the NVRA requires county voter registration rolls must be updated.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

6. In paragraph 57 of your Original Complaint, you allege that state officials have been aware of "significant and widespread confusion caused by the State's treatment of online DPS transactions since at least 2012." Please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff responds that many voters complained about and were surprised to discover that they were not registered to vote in the county to which they moved and updated or renewed their address through DPS' online application. *See* Exhibit B to Complaint; Exhibit D pp. 7-8; Exhibit D at p. 17;  Exhibit D at pp. 22-23; Exhibit D at p. 27;  Exhibit D at p. 32.

7. In paragraph 50 of your Original Complaint, you allege that you believed you were "properly registered [to vote] because [you] completed an online transaction with DPS, attempted to update [your] registration records, and later received an updated driver's license in the mail." Do you contend that other potential Texas voters, who are not party to this lawsuit, are similarly confused by the same process? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff objects to the characterization that Plaintiff was "confused" by the online process.

8. What do you believe the statement "Selecting 'yes' does not register you to vote" signifies?

RESPONSE: Mr. Stringer does not recall whether the language "Selecting 'yes' does not register you to vote" was included in his application.

9. Do you contend that you are entitled to recover attorney's fees, costs, and expenses for multiple attorneys' attendance and/or participate in depositions in this case? If so, please describe in detail the basis for this contention, including, but not limited to: 1) identifying any case law supporting this contention; 2) describing in detail each attorney's participation in the case thus far, including necessity of attendance at depositions; 3) identifying the hourly rate sought by each attorney.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion. Plaintiff further objects to this request on the ground that it requests information that is not relevant to Plaintiff's claims and is therefore outside the scope of discovery, and to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees, and will do so when and as required by Local Rule CV-7(j).

10. Identify by URL or website address any Social Media Sites in your name.

RESPONSE: Mr. Stringer has the following social media sites:

> Facebook: www.facebook.com/stringerjarrod
> Twitter: https://www.twitter.com/stringerjarrod.
> Instagram: www.instagram.com/stringerjarrod/
> Snapchat: Mr. Stringer had a snapchat account at one point, but cannot find it anymore.

11. Do you contend that the State of Texas is similarly situated to the State of Alabama for purposes of the NVRA? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

12. Please state the date and county of your first registration to vote in Texas, and list all of the subsequent changes you have made to your voter registration, including the substance of the change, approximate date, and how you made the change.

RESPONSE: Plaintiff objects to this interrogatory as Defendants have equal or greater access to this information because Defendants have access to Mr. Stringer's voter registration records. Subject to that objection, Mr. Stringer does not remember all the times he registered to vote. Mr. Stringer believes he voted for the first time in 1992 in Grayson County, although he does not recall when or where he first registered to vote. Mr. Stringer voted in 2000, but has no recollection of when he registered to vote before voting in the 2000 election. Mr. Stringer registered to vote in Spring of 2015 in Bexar County at a college. He registered to vote because he found out in 2014 that he was not registered to vote.

## PLAINTIFF JARROD STRINGER'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

1. All documents related to the categories of documents, electronically stored information, and tangible things that Plaintiffs' listed in Plaintiffs' Initial Disclosures and any subsequent amended disclosures.

RESPONSE: Plaintiff objects to this request as overly broad, unduly vague, and ambiguous, and to the extent it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Subject to and without waiver of the foregoing objections,

Plaintiff will produce copies of the documents listed in Plaintiffs' Initial and Amended Disclosures, except to the extent they are already in Defendants' possession, custody, or control.

2. All documents reflecting your assertion that you "updated your driver's license address online" in 2014 as alleged in paragraph 47 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

3. All documents reflecting that you moved from Tarrant County to Bexar County in 2014.

RESPONSE: Plaintiff objects to this request as overbroad, vague, and ambiguous to the extent that, as worded, it seeks any documents tangentially related to Plaintiff's move from Tarrant County to Bexar County. Subject to and without waiver of the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control documenting his move from Tarrant County to Bexar County in 2014. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control, or publicly available and outside of Plaintiff's own possession, custody, or control.

4. All documents reflecting the "total number" of Texas voters you contend were injured by Defendants' conduct as alleged in paragraph 9 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

5. All documents related to your allegation that you provided detailed notice of Defendant's alleged violations as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it seeks from Plaintiffs documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

6. All documents related to your allegation that Defendants failed to correct alleged NVRA violations within 90 days of receiving notice as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

7. All documents containing your writing including notes, diary entries, emails, letters, or any other writing that includes comments regarding the issues in this suit.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff objects to the phrase "issues in this suit" as overly broad, unduly vague, and ambiguous. Subject to and without waiving the foregoing, Plaintiff responds that after a reasonable search of his records, Plaintiff has not found any non-privileged documents responsive to this request in his possession, custody, or control, nor are any currently available to him.

8. All documents reflecting your allegation that you "attempted to vote early in the 2014 general election, but was told that [your] name was not on the rolls in Bexar County" as alleged in paragraph 47 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

9. All documents reflecting your allegation that an election official in Bexar County was "aware of 'problems at DPS'" as alleged in paragraph 47 of your Original Complaint.

RESPONSE:  Plaintiff responds that after a reasonable search of his records, Plaintiff has not found any non-privileged documents responsive to this request in his possession, custody, or control, nor are any currently available to him. Any responsive documents—should they exist—are, upon information and belief, in Defendants' and/or Bexar County's possession, custody, or control.

10. All documents reflecting your allegation that "countless eligible Texas residents have been denied the fight [sic] to voter registration" as alleged in paragraph 54 of your Original Complaint.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control and that have not already been provided by or to Defendants in the course of this litigation. Any additional responsive documents are in Defendants' possession, custody, or control.

11. All documents reflecting communications between any attorney for Plaintiffs and any person serving as a testifying expert witness for Plaintiffs that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that Plaintiffs' attorneys provided and that the expert considered in forming the opinions to be expressed; and/or (iii) identify assumptions that Plaintiffs' attorneys provided and that the expert relief on in forming the opinions to be expressed. This request explicitly does not seek attorney work product or attorney-client communications.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

12. A copy of each expert report, declaration, affidavit, deposition transcript, and/or trial transcript reflecting or containing the testimony of each testifying expert witness for Plaintiffs during the previous five years.

RESPONSE: Plaintiff objects to the extent this request seeks confidential and sensitive information not subject to disclosure without a court order. Subject to and without waiver of the foregoing, Plaintiff will

produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

13. All documents constituting, memorializing, reflecting or relating to all fee agreements, billing statement, time records, and expenses related to your request for fees and expenses in this suit.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees and expenses, and will do so when and as required by Local Rule CV-7(j). Plaintiffs and defendants are working together informally to agree to the amount of attorneys' fees and costs owed to Plaintiffs pursuant to the Court's order of sanctions against Defendants.

14. All documents reflecting the hourly rate of each of your attorneys.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine.

15. All documents received in response to any subpoena served on any nonparty in connection with this case.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests that Plaintiff produce documents already in Defendants' custody, possession, and control. Upon information and belief, and based on TexasNICUSA, LLC's March 21, 2017 email to counsel for both Plaintiffs and Defendants—as well as Defense counsel's statements to Plaintiffs' counsel during the March 31, 2017 deposition of TexasNICUSA, LLC—Defendants possess all documents produced in response to Plaintiffs' subpoena served on any nonparties in connection with this case.

16. All documents or communications with non-parties, including but not limited to, Texas NICUSA, LLC, d/b/a Texas NIC, about this suit or the issues in this suit.

RESPONSE: Plaintiff objects to this request as overbroad and unduly vague as to "the issues in this suit." Plaintiff further objects that this request is unreasonably burdensome and not proportional to the needs of the case, and to the extent that it requests documents or communications protected by the work-product doctrine. Subject to and without waiving the foregoing, Plaintiff will produce copies of all communications with Texas NICUSA, LLC, d/b/a Texas NIC that are in his possession, custody, or control.

17. All documents that you intend to use as evidence to support your claims in this case.

RESPONSE: Plaintiff objects to this request as duplicative of Request No. 1. Plaintiff further objects to this request as overbroad and unduly burdensome to the extent it demands Plaintiffs produce documents to Defendants that are already in Defendants' custody, possession, and control, including those that Defendants produced to Plaintiffs. Plaintiff further objects to this request to the extent that it requires the identification and production of Plaintiff's exhibits prior to the time specified in Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Subject to

and without waiving the foregoing, Plaintiff responds that discovery is not complete, and that he therefore has not and cannot yet identify the documents he intends to use as evidence. Plaintiff will file and serve his list of all documents he intends to use as evidence to support his claims in this case when and as required by Rule CV-16(e).

EXHIBIT

**C**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE and STEVEN C. McCRAW, IN | § | |
| HIS OFFICIAL CAPACITY AS THE | § | |
| DIRECTOR OF THE TEXAS | § | |
| DEPARTMENT OF PUBLIC SAFETY, | § | |
| Defendants. | § | |

## PLAINTIFF JOHN WOODS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

**TO:**   Defendants, by and through their attorneys of record, Anna Mackin and Esteban Soto, Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff John Woods hereby serves the following Objections and Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission.

Dated: April 17, 2017                    Respectfully submitted,

By: /s/ Rebecca Harrison Stevens

Peter A. Kraus (*pro hac vice*)
Texas Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com

Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross (*pro hac vice*)
Texas Bar No. 24073608
rgross@waterskraus.com

  
WATERS & KRAUS, LLP
3141 Hood Street, #700
Dallas, Texas  75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Cassandra Champion
Texas Bar No. 24082799
champion@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2017, a true and correct copy of the foregoing *Plaintiffs John Woods' Objections and Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission*, was served upon counsel of record via email.

/s/ Rebecca Harrison Stevens

2

## RESERVATION OF RIGHTS

Plaintiff has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to him. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these Responses. Plaintiff therefore reserves his right to supplement, amend, revise, correct, modify, or clarify these Responses as additional information becomes available.

Plaintiff makes his objections and responses in accordance with his interpretation and understanding of Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission and in accordance with his current knowledge, understanding, and belief as to the facts and information available to him at the time of serving these Responses. If Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiffs' understanding of the same, Plaintiff reserves his right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. He also reserves the right to amend, revise, correct, modify, or clarify his Responses to properly respond to any interpretation Defendants may give these Requests.

Plaintiff reserves his right to object on any grounds, at any time, to the admission or use of any Response on any ground.

## PLAINTIFF JOHN WOODS' OBJECTIONS AND RESPONSES
## TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

1.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not submit a change of address that relates to a Texas driver license *in person*.

RESPONSE: Admit.

2.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not submit a change of address that relates to a Texas driver license *by mail*.

RESPONSE: Admit.

3.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you checked "yes" in response to the following message "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)" (emphasis original).

RESPONSE: Dr. Woods admits checking "yes" in response to the statement "I want to register to vote." Dr. Woods does not recall seeing the message, "[s]electing 'yes' **does not** register you to vote. A link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page.)."

4.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you were provided a link to the voter registration application proscribed by the Secretary of State.

RESPONSE: Dr. Woods has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Dr. Woods would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Dr. Woods does not recall being provided a link to a voter registration application when he visited DPS's website to update his address in September, 2015.

5.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not complete the voter registration application proscribed by the Secretary of State.

RESPONSE: Dr. Woods admits that he did not complete a voter registration application on the Secretary of State's website. Dr. Woods would have no knowledge about whether a voter registration application was proscribed by the Secretary of State. Dr. Woods does not recall being provided with a separate voter registration application when he visited DPS's website to update his address in September, 2015.

6.      Admit that you did not submit a written, signed request to change your voter registration information when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint.

RESPONSE: Dr. Woods denies not submitting a written request to change his voter registration information. Dr. Woods denies not submitting a signed request to change his voter registration information. Based upon receipt of an updated driver license containing his electronic signature, Dr. Woods believes his online change of address transaction in September, 2015 caused his electronic signature to be reused by DPS.

7.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not submit a handwritten signature or a digitized image thereof.

RESPONSE: Dr. Woods admits only to not submitting a handwritten signature. Based upon receipt of an updated driver license containing his electronic signature, Dr. Woods believes his online change of address transaction in September, 2015 caused his electronic signature to be reused by DPS.

8.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not attest that you are a US citizen.

RESPONSE: Dr. Woods has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny. Dr. Woods is unable to admit or deny because he does not recall whether he attested that he was a United States citizen and does not currently have access to the application he submitted in September, 2015.

9.      Admit that Defendants offered, through your attorneys, to confirm your voter registration status, and to assist you in updating your voter registration information, if you desired.

RESPONSE: Dr. Woods admits that he was offered, through his attorneys, to confirm his voter registration status and assistance in updating his voter registration information if he desired.

10.      Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not attempt to *renew* your Texas driver license online.

RESPONSE: Admit.

11.      Admit that you are currently registered to vote in the county where, when providing Defendants notice of the NVRA violations you allege, you indicated you wished to be registered.

RESPONSE: Admit.

12.     Admit that you were able to cast a ballot in the 2012 general election. If you deny that you were able to cast a ballot in the 2012 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Dr. Woods admits that he was able to cast a ballot.

13.     Admit that you were able to cast a ballot in the 2013 federal general election. If you deny that you were able to cast a ballot in the 2013 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Dr. Woods denies this request because there was no federal general election in Texas in 2013.

14.     Admit that you were able to cast a ballot in the 2014 federal general election. If you deny that you were able to cast a ballot in the 2014 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Dr. Woods denies that he was able to cast a ballot. Dr. Wood denies not attempting to cast a ballot.

15.     Admit that you were able to cast a ballot in the 2015 federal general election. If you deny that you were able to cast a ballot in the 2015 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Dr. Woods denies this request because there was no federal general election in Texas in 2015.

16.     Admit that you were able to cast a ballot in the 2016 federal general election. If you deny that you were able to cast a ballot in the 2016 general election, admit that you did not attempt to cast a ballot in the same.

RESPONSE: Dr. Woods admits casting a ballot.

17.     Admit that, when you changed your driver license address online in September 2015, after moving from Travis County to Harris County in June 2015, as alleged in paragraph 49 of your Original Complaint, you did not do so by telephone.

RESPONSE: Admit.

### DEFENDANT ROLANDO PABLOS'S FIRST INTERROGATORIES TO JOHN WOODS

1.     Identify each individual you intend to present as a witness in this case, including name, address, and phone number.

RESPONSE: Plaintiff objects to this interrogatory as premature, and as overbroad and unduly burdensome, as Plaintiff has already produced his Initial Disclosures and will produce his First Amended Disclosures concurrently with this Response. Subject to and without waiving the foregoing,

Plaintiff responds that discovery is ongoing, and he has not yet—and cannot yet— identify his trial witnesses at this point in time. Plaintiff will file and serve his trial witness list when and as required by Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Plaintiffs' Initial and First Amended Disclosures contain lists of individuals who may have information that Plaintiffs may use to support their claims.

2.      Do you contend that before filing suit you provided Defendants notice of the NRVA violations you claim have injured you, and the necessary information that would allow Defendants to correct those alleged violations? If so, please describe in detail 1) the specific types of personal information you provided to Defendants; 2) the date you provided this information to Defendants; 3) the manner in which you provided this information to Defendants.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds that on November 18, 2015, Plaintiff notified Defendants, in writing and through counsel, as follows:

> I write to again supplement our May 27th Notice Letter (attached and incorporated herein by reference) with the name of another Texas voter who attempted to update his voter registration information when changing his address online at www.txdps.state.tx.us. This letter provides formal notice to the State of NVRA violations under 52 U.S.C. § 20510(b) on behalf of John Woods and others similarly situated.

> Mr. Woods moved from Travis County to Harris County in June 2015. In September 2015, Mr. Woods changed his driver's license address online, and believed that his voter registration records were updated as well. Shortly thereafter, Mr. Woods went to a local library, where he was offered an opportunity to register to vote. He declined that opportunity, however, because he believed that his voter registration records had already been updated. Mr. Woods called Harris County on Election Day 2015, trying to identify his polling location. Mr. Woods was informed that he was not registered in Harris County, but was still registered in Travis County, and that any provisional ballot cast in Harris County would likely not be counted. Nonetheless, Mr. Woods went to his local polling location and cast a provisional ballot. On November 17, Mr. Woods was informed by the county clerk that his provision ballot was not counted.

> As set out in our Original and First Supplemental Notice Letter, every time an eligible resident renews or updates his or her driver's license with DPS, the NVRA requires that DPS simultaneously register that person to vote or update that person's voter registration file, unless the applicant fails to sign the form or indicates that he or she does not wish to update his or her information for voter registration purposes. Unfortunately, the State is not complying with the NVRA's mandates.

> We remain willing to meet or speak with you to discuss our First Supplemental Notice Letter, as well as this Second Supplemental Notice Letter and the state of Alabama's recent agreement to address NVRA violations, including online-transaction violations. In any event, please advise as to whether the State maintains the positions articulated in your June 23rd and September 10th letters.

*See* Exhibit C to Plaintiffs Original Complaint (Dkt. 1-4) at pp. 171-72; *see also* Mar. 31, 2017 Order Denying Defendants' Motion to Dismiss (Dkt. 52) at pp. 7-9.

3.     Do you contend that you are still being harmed by Defendants' alleged conduct? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Defendants' continue to violate Plaintiff's rights under the NVRA by failing to provide to online customers a "[s]imultaneous application for voter registration and…driver's license[;]" a voter registration application portion of a driver's license application that does not require any information that duplicates the driver's license portion of the form; and a change of address form submitted in accordance with state law for purposes of state motor vehicle driver's license that serves as a notification of change of address for voter registration with respect to elections for Federal office, unless the registrant states on the form that the change of address is not for voter registration purposes.

4.     Do you contend that "countless eligible Texas residents have been denied the right to voter registration" as alleged in paragraph 54 of your Original Complaint? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion, and on the ground that "in detail" is vague and undefined. Subject to and without waiving this objection, Plaintiff responds as follows: Yes. Documents produced by Defendants and TEXAS NICUSA, LLC confirm that millions of Texans renew or change their driver license addresses online each year, and Defendants admit that they have and continue to fail to accept voter registration applications and updates to voter registration files during these NVRA-covered driver license transactions.  *See* Sheri Gipson's 30(b)(6) p 141, line 12; Exhibit 3Y to Sheri Gipson's 30(b)(6) deposition; NIC 00481; and Defendant Steve C. McCraw's First Supplemental Responses to Plaintiff's First Set of Requests for Admissions, #s 10, 11, 12, and 13.

5.     Do you contend that the NVRA requires "simultaneous voter registration" as alleged in paragraph 39 of your Original Complaint? If so, describe in detail the basis for this contention, including whether you contend that the NVRA requires an instantaneous update in county voter registration rolls when an individual completes an NVRA-covered transaction. If you do not contend that the NVRA requires an instantaneous update in county voter registration rolls, state the specific timeframe (in seconds, minutes, hours, and/or days) in which you contend the NVRA requires county voter registration rolls must be updated.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

6.     In paragraph 57 of your Original Complaint, you allege that state officials have been aware of "significant and widespread confusion caused by the State's treatment of online DPS transactions since at least 2012." Please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff responds

that many voters complained about and were surprised to discover that they were not registered to vote in the county to which they moved and updated or renewed their address through DPS' online application. *See* Exhibit B to Complaint; Exhibit D pp. 7-8; Exhibit D at p. 17;  Exhibit D at pp. 22-23; Exhibit D at p. 27;  Exhibit D at p. 32.

7.      In paragraph 50 of your Original Complaint, you allege that you believed you were "properly registered [to vote] because [you] completed an online transaction with DPS, attempted to update [your] registration records, and later received an updated driver's license in the mail." Do you contend that other potential Texas voters, who are not party to this lawsuit, are similarly confused by the same process? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects on the ground that "in detail" is vague and undefined. Plaintiff objects to the characterization that Plaintiff was "confused" by the online process.

8.      What do you believe the statement "Selecting 'yes' does not register you to vote" signifies?

RESPONSE: Because he was previously registered to vote and going online to update his voter registration, Dr. Woods thought that language did not apply to him. He believes the language only applies to those who are registering to vote, not updating their voter registration.

9.      Do you contend that you are entitled to recover attorney's fees, costs, and expenses for multiple attorneys' attendance and/or participate in depositions in this case? If so, please describe in detail the basis for this contention, including, but not limited to: 1) identifying any case law supporting this contention; 2) describing in detail each attorney's participation in the case thus far, including necessity of attendance at depositions; 3) identifying the hourly rate sought by each attorney.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion. Plaintiff further objects to this request on the ground that it requests information that is not relevant to Plaintiff's claims and is therefore outside the scope of discovery, and to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees, and will do so when and as required by Local Rule CV-7(j).

10.      Identify by URL or website address any Social Media Sites in your name.

RESPONSE:

facebook.com/mohawkjohn
twitter.com/mohawkjohn
instagram.com/mohawkjohn
github.com/mohawkjohn
plus.google.com/+JohnWoodsDances
mohawk-john.tumblr.com
reddit.com/u/mohawkjohn
www.pof.com/member35176171.htm
aciel.livejournal.com/
www.linkedin.com/in/johnowoods/
www.huffingtonpost.com/author/john-woods

www.pinterest.com/mohawkjohn/
stackoverflow.com/users/170300/dr-johnny-mohawk

11.     Do you contend that the State of Texas is similarly situated to the State of Alabama for purposes of the NVRA? If so, please describe in detail the basis for this contention.

RESPONSE: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion.

12.     Please state the date and county of your first registration to vote in Texas, and list all of the subsequent changes you have made to your voter registration, including the substance of the change, approximate date, and how you made the change.

RESPONSE: Plaintiff objects to this interrogatory as Defendants have equal or greater access to this information because Defendants have access to Dr. Woods' voter registration records. Subject to that objection, Dr. Woods does not remember all the times he registered to vote. Based on information, belief, and recollection, Dr. Woods attempted the following changes: A change of address in Travis County after May 31, 2007; and a change of address in Travis County after July 31, 2012.

### DEFENDANTS' REQUESTS FOR PRODUCTION TO JOHN WOODS

1.     All documents related to the categories of documents, electronically stored information, and tangible things that Plaintiffs' listed in Plaintiffs' Initial Disclosures and any subsequent amended disclosures.

RESPONSE: Plaintiff objects to this request as overly broad, unduly vague, and ambiguous, and to the extent it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Subject to and without waiver of the foregoing objections, Plaintiff will produce copies of the documents listed in Plaintiffs' Initial and Amended Disclosures, except to the extent they are already in Defendants' possession, custody, or control.

2.     All documents reflecting your assertion that you "moved from Travis County to Harris County in June 2015", as alleged in paragraph 49 of your Original Complaint.

RESPONSE: Plaintiff objects to this request as overbroad, vague, and ambiguous to the extent that, as worded, it seeks any documents tangentially related to Plaintiff's move from Travis County to Harris County. Subject to and without waiver of the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control documenting his move from Travis County to Harris County in June 2015. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control, or publicly available and outside of Plaintiff's own possession, custody, or control.

3.     All documents reflecting that, in September 2015, you "changed [your] driver's license address online," as alleged in paragraph 49 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

4.      All documents reflecting your assertion that, "shortly" after you changed the address on your driver license online, you "when to a local library, where [you] w[ere] offered an opportunity to register to vote" and you "declined that opportunity [] because [you] believed that [your] voter registration records had already been updated," as alleged in paragraph 49 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control.

5.      All documents reflecting your assertion that you "called Harris County on Election Day 2015, trying to identify [your] polling location" and were "informed that [you] w[ere] not registered in Harris County, but w[ere] still registered in Travis County, and that any provisional ballot cast in Harris County would likely not be counted", as alleged in paragraph 49 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

6.      All documents reflecting the "total number" of Texas voters you contend were injured by Defendants' conduct as alleged in paragraph 9 of your Original Complaint.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control. Any additional responsive documents are, upon information and belief, in Defendants' possession, custody, or control.

7.      All documents related to your allegation that you provided detailed notice of Defendant's alleged violations as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it seeks from Plaintiffs documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

8.      All documents related to your allegation that Defendants failed to correct alleged NVRA violations within 90 days of receiving notice as alleged in paragraph 12 of your Original Complaint.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff further objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff responds that Defendants are in possession of all non-privileged documents responsive to this request.

9.      All documents containing your writing including notes, diary entries, emails, letters, or any

11

other writing that includes comments regarding the issues in this suit.

RESPONSE: Plaintiff objects to this request to the extent that it requests documents that are protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff objects to the phrase "issues in this suit" as overly broad, unduly vague, and ambiguous. Subject to and without waiving the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents in his possession, custody, or control.

10.     All documents reflecting your allegation that "countless eligible Texas residents have been denied the fight to voter registration" as alleged in paragraph 54 of your Original Complaint.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests Plaintiff to produce documents already in Defendants' custody, possession, and control. Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control and that have not already been provided by or to Defendants in the course of this litigation. Any additional responsive documents are in Defendants' possession, custody, or control.

11.     All documents reflecting communications between any attorney for Plaintiffs and any person serving as a testifying expert witness for Plaintiffs that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that Plaintiffs' attorneys provided and that the expert considered in forming the opinions to be expressed; and/or (iii) identify assumptions that Plaintiffs' attorneys provided and that the expert relief on in forming the opinions to be expressed. This request explicitly does not seek attorney work product or attorney-client communications.

RESPONSE: Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

12.     A copy of each expert report, declaration, affidavit, deposition transcript, and/or trial transcript reflecting or containing the testimony of each testifying expert witness for Plaintiffs during the previous five years.

RESPONSE: Plaintiff objects to the extent this request seeks confidential and sensitive information not subject to disclosure without a court order. Subject to and without waiver of the foregoing, Plaintiff will produce copies of all non-privileged, responsive documents that are in his possession, custody, or control.

13.     All documents constituting, memorializing, reflecting or relating to fee agreements, billing statement, time records, and expenses related to your request for fees and expenses in this suit.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine. Plaintiff has not yet filed a claim for attorney's fees and expenses, and will do so when and as required by Local Rule CV-7(j). Plaintiffs and defendants are working together informally to agree to the amount of attorneys' fees and costs owed to Plaintiffs pursuant to the Court's order of sanctions against Defendants.

14.     All documents reflecting the hourly rate of each of your attorneys.

RESPONSE: Plaintiff objects to this request on the ground that it requests documents that are not relevant to Plaintiff's claims and are therefore outside the scope of discovery. Plaintiff further objects to the extent that it requests information protected by the attorney-client privilege or exempt from discovery under the work-product doctrine.

15.     All documents received in response to any subpoena served on any nonparty in connection with this case.

RESPONSE: Plaintiff objects that this request is unduly burdensome to the extent it requests that Plaintiff  produce documents already in Defendants' custody, possession, and control. Upon information and belief, and based on TexasNICUSA, LLC's March 21, 2017 email to counsel for both Plaintiffs and Defendants—as well as Defense counsel's statements to Plaintiffs' counsel during the March 31, 2017 deposition of TexasNICUSA, LLC—Defendants possess all documents produced in response to Plaintiffs' subpoena served on any nonparties in connection with this case.

16.     All documents or communications with non-parties, including but not limited to, Texas NICUSA, LLC, d/b/a Texas NIC, about this suit or the issues in this suit.

RESPONSE: Plaintiff objects to this request as overbroad and unduly vague as to "the issues in this suit." Plaintiff further objects that this request is unreasonably burdensome and not proportional to the needs of the case, and to the extent that it requests documents or communications protected by the work-product doctrine. Subject to and without waiving the foregoing, Plaintiff will produce copies of all communications with Texas NICUSA, LLC, d/b/a Texas NIC, responsive documents that are in his possession, custody, or control.

17.     All documents that you intend to use as evidence to support your claims in this case.

RESPONSE: Plaintiff objects to this request as duplicative of Request No. 1. Plaintiff further  objects to this request as overbroad and unduly burdensome to the extent it demands Plaintiffs produce documents to Defendants that are already in Defendants' custody, possession, and control, including those that  Defendants produced to Plaintiffs. Plaintiff further objects to this request to the extent that it requires the identification and production of Plaintiff's exhibits prior to the time specified in Rule CV-16(e) of the Local Rules of the United States District Court for the Western District of Texas. Subject to and without waiving the foregoing, Plaintiff responds that discovery is not complete, and that he therefore has not and cannot yet identify the documents he intends to use as evidence. Plaintiff will file and serve his list of all documents he intends to use as evidence to support his claims in this case when and as required by Rule CV-16(e).

EXHIBIT
**D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

```
JARROD STRINGER, ET AL.,        )
                                )
          Plaintiffs,           )
                                )
VS.                             )
                                )
ROLANDO PABLOS, IN HIS          )   Civil No. 5:16-CV-00257
OFFICIAL CAPACITY AS THE        )
TEXAS SECRETARY OF STATE AND    )
STEVEN C. MCCRAW, IN HIS        )
OFFICIAL CAPACITY AS THE        )
DIRECTOR OF THE Texas           )
Department of Public Safety,    )
                                )
          Defendants.           )
```

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

BENJAMIN HERNANDEZ

MAY 18, 2017

VOLUME 1

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF BENJAMIN HERNANDEZ,

produced as a witness at the instance of the DEFENDANT, and

duly sworn, was taken in the above-styled and numbered cause on

May 18, 2017, from 10:28 a.m. to 11:54 a.m., before Arden

Bolak, CSR in and for the State of Texas, reported by machine

shorthand, at the law offices of Waters & Kraus, LLP, 3141 Hood

Street, Suite 700, Dallas, Texas 75219, pursuant to the Texas

Rules of Civil Procedure and the provisions stated on the

record or attached hereto.

1      Q.    (BY MS. MACKIN)   In 2013, after you moved.

2      A.    I just got online and decided change my address

3  online, because I knew I had to.

4      Q.    Why did you choose to do it online rather than going

5  into a DPS office?

6      A.    Convenience.

7      Q.    Yeah.  And so we touched on this briefly a little

8  while ago, but you mentioned seeing some mention of voter

9  registration when you were online; is that right?

10     A.    Yes.

11     Q.    What do you recall seeing?

12     A.    There was a portion where I remember seeing if I --

13 or asking the question if I wanted to register to vote.  And I

14 knew I need to register to vote in Dallas County, because of my

15 move.

16     Q.    When you went online in 2013 and changed your address

17 from Ector County to Dallas County, did you sign anything?

18     A.    I typed my name into the computer, basically.  If

19 that counts as a signature.

20     Q.    So you didn't write anything down, it was all -- so

21 it was all on the computer; is that right?

22     A.    Yes.

23     Q.    Okay.  You've stated in your responses to some

24 written discovery in this lawsuit that you believed that this

25 online change of address updated your voter registration info,

1    don't -- there's no way I can point to numbers.  But if it can

2    happen to me it could happen to somebody else.  Of course,

3    that's reasonable thinking.

4        Q.    (BY MS. MACKIN)  Mr. Hernandez, are you currently

5    registered to vote at the address where you reside?

6        A.    Yes.

7        Q.    How do you know?

8        A.    I have my voter registration card now.  And I was

9    able to vote last November.

10       Q.    If you move in the future, how do you think you would

11   update your voter registration information?

12       A.    Manually.

13       Q.    What do you mean by manually?

14       A.    I can go to the post office, the courthouse, or

15   wherever you go, write it down.

16       Q.    All right.  Just a couple more questions to wrap up.

17   How did you meet your lawyers in this case?  I'm not asking for

18   any legal advice or anything like that.  Any legal strategy.

19   Just, how you met them?

20       A.    What I recall, I received a letter in the mail -- I'm

21   not sure how they got my name, and they -- the letter stated

22   something they were aware of the situation.  And I just called

23   somebody.

24       Q.    Do you remember who you called?

25       A.    I can't remember exactly who it was that I talked to

EXHIBIT

**E**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JARROD STRINGER, et al.,      )
                              )
    Plaintiffs,               )
                              )
vs.                           )CIVIL NO. 5:16-cv-00257
                              )
ROLANDO PABLOS, IN HIS        )
OFFICIAL CAPACITY AS THE      )
TEXAS SECRETARY OF STATE,     )
AND STEVEN C. McCRAW, IN      )
HIS OFFICIAL CAPACITY AS      )
THE DIRECTOR OF THE TEXAS     )
DEPARTMENT OF PUBLIC          )
SAFETY,                       )
                              )
    Defendants.               )


*******************************

ORAL VIDEOTAPED DEPOSITION

JARROD STRINGER

May 3, 2017

*******************************

    ORAL VIDEOTAPED DEPOSITION OF JARROD STRINGER,

produced as a witness at the instance of the Defendants

and duly sworn, was taken in the above-styled and

numbered cause on the 3rd day of May, 2017, from

10:33 a.m. to 11:48 a.m., before April Balcombe,

Certified Shorthand Reporter and Certified Realtime

Reporter, in and for the State of Texas, reported by

computerized stenotype machine at the offices of the

Office of the Attorney General Consumer Protection

Jarrod Stringer - 5/3/2017

31

1    Q.    Okay.  Now I want to talk about the voter

2    registration issue that you sued my clients about when

3    you moved from Arlington to San Antonio.

4                 Why did you move?

5    A.    My wife got into law school at St. Mary's.

6    Q.    And do you remember the approximate date that

7    you moved?

8    A.    We moved on August the 1st.

9    Q.    And at that point you decided to update the

10   address on your driver license?

11   A.    Yes.

12   Q.    Okay.  Tell me about that.

13   A.    Well, we moved here in Austin, and shortly

14   thereafter, I -- as you can see from my history, I've

15   moved several times.  I am getting more accustomed to

16   trying to do that more quickly.  So I -- we had to get

17   wi-fi first.  But I forgot wi-fi now, so I went online

18   in my office and filled out the form.

19   Q.    Is there a reason you chose to do it online?

20   A.    Convenience.

21   Q.    Do you recall anything about voter

22   registration?

23   A.    I remember there being a box I could check if I

24   wanted to get registered.

25   Q.    Do you recall anything else?

Jarrod Stringer - 5/3/2017

32

1      A.    No.

2      **Q.    That day that you went online to change your**

3  **address, did you sign anything?**

4      A.    No.

5      **Q.    Did you write anything down?**

6      A.    Can you --

7      **Q.    Sure.**

8            **In connection with the change that you**

9  **made to your address --**

10     A.    Uh-huh.

11     **Q.    -- did you write anything down?**

12     A.    Write anything down where?

13     **Q.    Anywhere.**

14     A.    I am not sure I understand.

15     **Q.    When you asked -- well, you didn't ask.**

16            **When you told DPS that you had moved using**

17  **the online interface, did you write anything down, or**

18  **was it all done by computer?**

19     A.    It was all online.

20     Q.    And then you said that you believed this

21  updated your voter registration information as well?

22     A.    Correct.

23     Q.    And you believed that because -- well, I don't

24  want to testify for you.  Why did you believe that?

25     A.    It asked me if I would like to register to

Jarrod Stringer - 5/3/2017

48

```
 1      A.    No.

 2      Q.    Mr. Stringer, what is your current address?

 3      A.    623 Donaldson Avenue, Apartment 8, San Antonio,

 4   Texas 78201.

 5      Q.    And is that where you are currently registered

 6   to vote?

 7      A.    Yes.

 8      Q.    Next time you move, how will you change your

 9   address?

10            MS. STEVENS:  Objection.  Form.

11      A.    How will I change my address?

12      Q.    (BY MS. MACKIN) Uh-huh, with DPS.

13      A.    Oh.

14      Q.    Sorry.

15      A.    By moving.

16            [Laughter].

17      Q.    By not living there anymore.

18            [Laughter].

19      A.    Become a hobo, and then I won't have to worry

20   about it.

21      Q.    Actually, you don't need to -- you just need a

22   street corner to register to vote.

23      A.    Oh, really?

24      Q.    I am serious.

25      A.    The -- well, I would -- I would do it online.
```

Jarrod Stringer - 5/3/2017

CONFIDENTIAL 49:24-50:03 49

1    Q.    Okay.  If you saw the screen that we just

2    looked at in Exhibit 5 --

3    A.    Uh-huh.

4    Q.    -- on page 2 --

5    A.    Uh-huh.

6    Q.    -- would you download, complete, and mail in

7    the form?

8              MS. STEVENS:  Objection.  Form.

9    A.    Yes.

10    Q.    (BY MS. MACKIN) Okay.  Just a couple of more

11    things.

12              Why did you decide to join this lawsuit?

13    A.    When I was not able to vote that day, I was

14    upset.  The mere idea that I would not be able to vote

15    kind of violated my sense of being an American citizen,

16    honestly.  I was upset.

17    Q.    It's understandable.

18              Have you spoken to any reporters about

19    events related to this lawsuit?

20    A.    No.

21    Q.    Have you made any postings on the Internet

22    about this lawsuit?

23    A.    No.

24    Q.    ███████████████████████████████████████

25    ██████████████

EXHIBIT

**F**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JARROD STRINGER, ET AL.,      )
     Plaintiffs,            )
                             )
vs.                           ) CIVIL NO. 5:16-cv-00257
                             )
ROLANDO PABLOS, IN HIS        )
OFFICIAL CAPACITY AS THE      )
TEXAS SECRETARY OF STATE      )
AND STEVEN C. MCCRAW, IN      )
HIS OFFICIAL CAPACITY AS      )
THE DIRECTOR OF THE TEXAS     )
DEPARTMENT OF PUBLIC          )
SAFETY,                       )
     Defendants.            )

"CONFIDENTIAL"
ORAL VIDEOTAPED DEPOSITION
JOHN WOODS
MAY 5, 2017

    ORAL VIDEOTAPED DEPOSITION OF JOHN WOODS, produced

as a witness at the instance of the Defendants and duly

sworn, was taken in the above-styled and numbered cause

on the 5th day of May, 2017, from 10:26 a.m. to

12:54 p.m., before Dana Richardson, Certified Shorthand

Reporter in and for the State of Texas, reported by

computerized stenotype machine at the Office of Attorney

General Consumer Protection Division Houston Regional

Office, 808 Travis, Suite 1520, Houston, Texas

77002-1702, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.

1  when I signed the pad at DPS or when I had signed on

2  paper.

3      Q.   Did you sign a paper that day?

4             MS. STEVENS:  Objection, form.

5      A.   For this application?

6      Q.   (BY MS. MACKIN)  The day that you went

7  online --

8      A.   Yes.

9      Q.   -- to update the address from Austin to

10 Houston, did you sign a piece of paper?

11     A.   The question is -- confuses me --

12     Q.   Or was it all on the computer?

13     A.   Yes.

14     Q.   Okay.  So you didn't do anything in

15 handwriting?

16     A.   No.

17     Q.   Okay.  And you mentioned a moment ago that you

18 believed -- you said something about you thought you

19 were providing a signature?

20     A.   Uh-huh.

21     Q.   Okay.  Tell me about that.

22     A.   Well, it seems like if you're filling out an

23 official form for the State, you probably have to sign

24 it.  And if the state allows you to fill out forms

25 electronically on your own computer where you don't have

John Woods - 5/5/2017

62

1  when changing his address online at

2  www.txdps.state.tx.us.

3            That attempt to update voter registration

4  information, what is that referring to?

5     A.   To update my voter address from Travis County

6  to Harris County.

7     Q.   Okay.  And the next paragraph, I just want to

8  go through this bit by bit to get a little bit more

9  information about the -- the facts in here.

10    A.   Okay.

11    Q.   So the first sentence:  "Mr. Woods moved from

12 Travis County to Harris County in June 2015."

13            That's actually, though, referring to --

14 you physically moved from Morgantown, but you -- your

15 address registered on your driver license was from

16 Travis to Harris, even though your person was from West

17 Virginia to Harris; is that right?

18    A.   Yes.

19    Q.   Okay.

20    A.   I mean, I spent a lot of time in Austin --

21    Q.   Yeah.  And I'm not --

22    A.   -- even when I was in Morgantown.

23    Q.   I'm not saying that you were, like, lying or

24 trying to trick anybody.  I just want it to be clear in

25 the record because I was a little bit confused when I

John Woods - 5/5/2017

63

1    saw the letter to you in West Virginia and about just

2    where everything was.  So not a problem.

3             The second sentence:  "In September 2015,

4    Mr. Woods changed his driver's license address online,

5    and believed that his voter registration records were

6    updated as well."

7             Is that referring to the transaction that

8    we've spent a lot of today talking about?

9        A.   Yes.

10       Q.   Okay.  And then it says:  "Shortly thereafter,

11   Mr. Woods went to a local library, where he was offered

12   an opportunity to register to vote.  He declined that

13   opportunity, however, because he believed that his voter

14   registration records had already been updated."

15            Can you tell me a little bit more about

16   your visit to the library that's referenced in this

17   sentence?

18       A.   Sure.  I went with my friend Deb.  She was, I

19   think, dropping some -- she's also my roommate.  She was

20   dropping some stuff off, picking some stuff up.  I think

21   I checked out a book.  In the process of checking out a

22   book, the librarian said, "Would you like to register to

23   vote?"

24            And I said, "No, I did it when I changed

25   my driver's license address."

John Woods - 5/5/2017

72

1  this letter is addressed to you at 1005 Charles Avenue,

2  Morgantown, West Virginia --

3      A.   Yes.

4      Q.   -- 26505.

5      A.   Uh-huh.

6      Q.   And beneath that is an e-mail address, which I

7  presume is your e-mail address as well?

8      A.   Yes.

9      Q.   So did you receive this offer letter in the

10 mail or via e-mail?

11     A.   Via e-mail.

12     Q.   Okay.  And this -- why was this offer letter

13 addressed to you in West Virginia?

14     A.   Because I was doing my postdoc there.

15     Q.   So you were living in West Virginia when you

16 received this letter?

17     A.   Yes.

18     Q.   But you -- you still had your Texas driver

19 license?

20     A.   Yes.

21     Q.   Okay.  Thank you.  That's all on that.

22          I'd like to go -- what is your current

23 address?

24     A.   2716 Arbor Street, A-r-b-o-r, Apartment 2,

25 Houston, Texas 77004.

John Woods - 5/5/2017

73

1    Q.    And is that where you are currently registered
2  to vote?
3    A.    I am no longer sure.
4    Q.    Okay.
5    A.    I think so because I would have voted with the
6  driver's license with that address on it, and that
7  probably would have caused my address to be updated to
8  my current one.
9    Q.    Do you recall whether you've ever received a
10  voter registration card with your current address on it?
11   A.    No.
12   Q.    No, you haven't; or, no, you don't recall?
13   A.    I don't recall.
14   Q.    Do you currently have roommates?
15   A.    Yes.
16   Q.    How many?
17   A.    On the lease, two, but there's only one.
18   Q.    Okay.  Not 19?
19   A.    Not currently.
20   Q.    That's all I wanted.
21   A.    Yeah.
22   Q.    And you just mentioned that you are no longer
23  sure that you're registered at your current address?
24   A.    Yes.
25   Q.    Why not?

John Woods - 5/5/2017

74

1      A.   Because every time I've voted, I've done early

2  voting and you can go to any polling place in Harris

3  County and so it might not have come up that my voter

4  registration address is incorrect.  I think in one case,

5  I went to my actual polling place.  So I might be

6  misrecollecting that.  And that polling place would be

7  the same because my two addresses, past and current, are

8  pretty close together, like, eight, ten blocks.

9      Q.   **This is Arbor Street, and the previous one was**

10 **Ruth Street?**

11     A.   Yes.

12     Q.   **Okay.  Next time you move, how will you update**

13 **your voter registration information?**

14          MS. STEVENS:  Objection, form.

15     A.   I will use the form prescribed by the Secretary

16 of State.

17     Q.   **(BY MS. MACKIN)  What do you mean by "the form**

18 **prescribed by the Secretary of State"?**

19     A.   I have learned in the process of -- of this

20 process that it is not certain that changing my driver's

21 license address will update my voter registration and

22 that there is a form that the Secretary of State

23 prescribes for doing so.  And I think I will be extra

24 certain and I will take every opportunity I can to

25 reregister myself to vote, even if I believe that I'm

John Woods - 5/5/2017

75

1  already registered at my current address.  So I'll fill

2  out the form.  I'll do it at the library.  I'll do it

3  there.  If I know somebody's a deputy voter registrar, I

4  will get them to do it.  I will take as many possible

5  opportunities that I can to avoid missing an election

6  because it's really important to me that I vote in every

7  election.

8      Q.   Okay.  You said earlier that you received a new

9  driver license after you moved -- at your address on

10  Ruth street after you moved to Houston; is that right?

11      A.   Uh-huh.

12      Q.   And that it had an image of your signature on

13  it?

14      A.   Uh-huh.

15      Q.   Do you know how DPS got that signature?

16      A.   If it was the same way that they got it in

17  January, it was from the electronic keypad that you

18  sign.  And I was looking at my driver's license

19  yesterday, and I noticed that it looks like the type of

20  handwriting that you get from signing one of those so --

21      Q.   In the office?

22      A.   Yeah.

23      Q.   I know it's so frustrating.  My signature

24  always looks so ugly on those pads.  My handwriting is

25  ugly enough as it is.

Case 5:16-cv-00257-OLG Document 95-1 Filed 06/20/17 Page 58 of 77
Case 5:16-cv-00257-OLG Document 89-1 Filed 04/20/17 Page 1 of 7
STRINGER: BRIAN KEITH INGRAM

EXHIBIT
G

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,          §
                                       §
 4              Plaintiffs,            §
                                       §
 5   v.                                §    Civil Action
                                       §    No. 5:16-cv-00257-OLG
 6   ROLANDO B. PABLOS, IN HIS         §
     OFFICIAL CAPACITY AS THE          §
 7   SECRETARY OF STATE and STEVEN     §
     C. McCRAW, IN HIS OFFICIAL        §
 8   CAPACITY AS THE DIRECTOR OF       §
     THE TEXAS DEPARTMENT OF PUBLIC    §
 9   SAFETY,                           §
                                       §
10              Defendants.            §
```

**ORIGINAL**

READ & SIGN

```
11   **************************************************
                ORAL AND VIDEOTAPED DEPOSITION OF
12                      BRIAN KEITH INGRAM
                        MARCH 22, 2017
13                         VOLUME 1
     **************************************************
14

15       ORAL AND VIDEOTAPED DEPOSITION OF BRIAN KEITH

16   INGRAM, produced as a witness at the instance of the

17   Plaintiffs, and duly sworn, was taken in the

18   above-styled and numbered cause on the 22nd day of

19   March, 2017, from 9:33 a.m. to 5:19 p.m., before STEVEN

20   STOGEL, CSR in and for the State of Texas, reported by

21   machine shorthand, at the office of the Attorney

22   General, 300 West 15th Street, Suite 1100, Austin,

23   Texas, pursuant to the Federal Rules of Civil Procedure

24   and the provisions stated on the record or attached

25   hereto.
```

Page 97

1          MS. MACKIN:  Objection; form.

2      A.   No.  There's a physical signature on the -- on

3  the address change application.

4      Q.   (By Ms. Stevens)  Right.  But the information

5  that gets sent on to the voter registrars through the

6  Secretary of State's Office is the data that's pulled

7  from that form and then the electronic signature that

8  was previously provided by the customer in person at a

9  DPS office?

10     A.   That's my understanding, yes.

11     Q.   Well, is that the Secretary of State's

12  understanding?

13     A.   That is the Secretary of State's

14  understanding.  You bet.

15     Q.   So in that same way, the online transaction

16  could utilize the previously provided electronic

17  signature that was provided in person by the customer

18  for the voter registration application form that gets to

19  the voter registrar in the same way that the change of

20  address mail-in occurs?

21     A.   It could if the law allowed it, but the law

22  doesn't allow it, so it can't.

23     Q.   What portion of the law doesn't allow it?

24     A.   13.002(b).

25          THE REPORTER:  As in boy?

STRINGER: BRIAN KEITH INGRAM

Page 98

1    THE WITNESS:  As in boy.

2    THE REPORTER:  Thank you.

3    Q.   (By Ms. Stevens)  Which says what?

4    A.   "A registration application must be in writing

5    and signed by the applicant."

6    Q.   But to your point earlier that the voter

7    registration form that is in writing and signed by the

8    applicant is the form that is generated by the voter

9    registrars and that they get either in a printout form

10   or a PDF, that same procedure could occur for the online

11   transactions.  Correct?

12   A.   No.

13   Q.   Why not?

14   A.   Because they're not signing anything.

15   Q.   Well, the -- the signature that you're

16   confirming complies with Texas Election Code for

17   in-person DPS transactions is the electronic signature

18   as referenced in those in-person forms.  Correct?

19   A.   A physical signature that the voter made on a

20   signature capture device when they wanted to register to

21   vote.

22   Q.   Okay.  For the change of address forms that

23   are mailed in --

24   A.   I --

25   Q.   Let me get the question out.  For the change

1    of address forms when they're mailed in, there's the

2    electronic signature that accompanies those voter

3    registration -- the voter registration data that goes to

4    voter registrars, that signature was not provided at the

5    same time as the change of address mail-in form.

6    Correct?

7         A.   The voter signed the change of address form.

8         Q.   Well, but hold on.  Answer my question, and

9    you can --

10        A.   And so if --

11        Q.   You can qualify it, but --

12        A.   If --

13        Q.   -- answer my question, please.

14        A.   I'm answering your question.  The voter signed

15   the change of address form.  There was a physical

16   signature made.

17             If, for some reason, when DPS transmits

18   that data to us, the electronic signature from the

19   previous DPS transaction doesn't come through, then we

20   can go back to a physical signature on the change of

21   address application, just like we can go back to a

22   physical signature on the DL application.  There was a

23   physical signature made, which complies with the Texas

24   Election Code.

25             In an online transaction, there is no

Page 100

1  physical signature made, electronically captured or

2  otherwise.  There is no physical signature.  It does not

3  comply with 13.002(b).

4       Q.   Okay.  But to your point --

5       A.   It's not my point.

6       Q.   Just -- just by --

7       A.   It's your point.  And I wish you wouldn't say

8  that it is my point, because it is not my point.

9       Q.   I'll try to rephrase, then.

10            The question was:  For the mail-in

11 transactions -- excuse me -- the mail-in change of

12 address transactions with DPS, and the customer checks

13 they want to register to vote, the electronic signature

14 that is used on the voter registration application form

15 that eventually gets to the voter registrar is not

16 provided at the time that they check that box saying

17 they want to register to vote?  Yes or no.

18       A.   No.  It was before.

19       Q.   Okay.  It was provided at the last in-person

20 transaction.  Is that correct?

21       A.   That's right.

22       Q.   Okay.  The -- under the scenario we're talking

23 about on the change of address forms, the prior

24 in-person transaction, the individual customer could

25 have checked the no box on the voter registration

Page 101

1    question, but they're still required to provide their
2    electronic signature to DPS for the driver's license.
3    Correct?

4        A.    Right.

5        Q.    And then that same person could provide a
6    change of address form to the Department of Public
7    Safety and mail it in and check the yes box on the voter
8    registration question, and their prior provided
9    electronic signature is what will be used on the voter
10   registration form that goes to the voter registrar.
11   Correct?

12       A.    Yeah, I'll get to you in a minute.

13               20.065(b) provides for electronic --
14   electronic transfer of voter registration information.
15   So the law already allows for this particular
16   transaction to occur.  And whether or not the voter,
17   when they originally had their signature captured by the
18   electronic capture device -- whether or not they wanted
19   to register to vote at that time doesn't matter.
20   Because whenever they signed the change of address form,
21   they're physically signing it, so they're providing a
22   signature.

23               And this says that the Secretary shall
24   prescribe procedures necessary to implement the
25   subsection.  So this procedure that's in place for going



1    and getting the electronic version makes it to where

2    this can happen.  Right?  Otherwise, we would end up

3    with voter registrars having a change of address form

4    from the driver's license division in their file along

5    with the rest of the information, and that's not very --

6    that's not very efficient.

7              So we could do it that way, but that's

8    not the procedure that we've prescribed.  The procedure

9    that we've prescribed is DPS can go get the other

10   signature.  And it doesn't matter if that signature was

11   made in connection with voter registration or not

12   because they signed the change of address form.

13   That's -- this is specifically allowed for in the

14   Election Code.

15             And so what you're suggesting, taking an

16   online transaction and -- with no signature whatsoever

17   associated with it and applying a signature from before

18   does not comply with 13.002 and it does not comply with

19   20.065(b).  It's a completely new thing that's not

20   allowed.

21             So it could happen conceivably,

22   technically, if there was enough money, but it's not

23   allowed by law.  There would have to be a law change for

24   us to do that.

25        Q.   Okay.  I'm trying to be patient --



Page 1

```
 1              UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,   )
           Plaintiffs,          )
 4                              )
     VS.                        ) C.A. No.
 5                              ) 5:16-cv-00257-OLG
     ROLANDO PABLOS, IN HIS     )
 6   OFFICIAL CAPACITY AS THE   )
     TEXAS SECRETARY OF STATE   )
 7   and STEVEN MCCRAW, IN HIS  )
     OFFICIAL CAPACITY AS THE   )
 8   DIRECTOR OF THE TEXAS      )
     DEPARTMENT OF PUBLIC       )
 9   SAFETY,                    )
           Defendants.          )
10

11

12   ***************************************************
               ORAL AND VIDEOTAPED DEPOSITION OF
13
                      BETSY SCHONHOFF
14
                       MAY 30, 2017
15   ***************************************************

16       ORAL AND VIDEOTAPED DEPOSITION OF BETSY SCHONHOFF,

17   produced as a witness at the instance of the

18   Plaintiffs, and duly sworn, was taken in the

19   above-styled and numbered cause on May 30, 2017, from

20   12:06 p.m. to 3:54 p.m., before Donna Wright, CSR in

21   and for the State of Texas, reported by machine

22   shorthand, at the OFFICE OF THE ATTORNEY GENERAL,

23   300 West 15th Street , Austin, Texas, pursuant to the

24   Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.
```

CERTIFIED TRANSCRIPT



STRINGER: BETSY SCHONHOFF

Page 49

1   they've treated.

2                   And so that's, I think, the

3   fundamental disagreement with the document as written,

4   is, he focuses a lot on the technology, the exchange of

5   data, which some of that is not entirely correct.  But

6   his -- his premise is, "Well, it should be this way

7   because Texas is able to do it from a technological

8   standpoint and from a cost standpoint."  But that's not

9   really what the discrepancy is.

10                  It has to do with 13.002, which the NVRA

11  grants states the right to come up with procedures for

12  implementing the NVRA in its totality.  And that 13.002

13  is the signature component that he disregards in its

14  entirety.

15                  So my -- the problem with this paragraph

16  is he seems to indicate that authentication can replace

17  the signature.  And unless either a court of law

18  dictates that or the Legislature dictates that, there's

19  no policy that's being made.  There's no interpretation

20  that we can make that's different from what the law

21  says.

22      Q.   (BY MS. STEVENS)  And you summed that up very,

23  very well.  I think that, you know, what you're saying

24  is the -- the -- a crux of the issue here.  But you'll

25  agree with me -- I mean, the plaintiffs have



STRINGER: BETSY SCHONHOFF

Page 51

1   done the way that we've talked about for this whole

2   case and that it's currently not in compliance.

3   That's -- that's the argument, right?

4              MS. MACKIN:  Objection, form.

5      Q.   (BY MS. STEVENS)  You understand that?

6              MS. MACKIN:  Objection, form.

7              THE WITNESS:  I understand that's the

8   plaintiffs' view, yes.

9      Q.   (BY MS. STEVENS)  Okay.  Okay.  So

10  Paragraph 11, is it fair to characterize your opinion

11  here is, you think it's unfair for Dr. Hersh to have

12  equated the Truth in Mileage Act to -- to use as a

13  reference point in making the argument that Texas

14  should be doing online -- the updated voter

15  registration when folks change their address or renew

16  on -- on DPS' website?

17             MS. MACKIN:  Objection, form.

18             THE WITNESS:  My problem with the use of

19  the Truth in Mileage Act is in lieu of the signature

20  because there's another law that is very specific.

21     Q.   (BY MS. STEVENS)  And that's Texas law, right?

22     A.   That's correct.  And I'm not an attorney by

23  any stretch of the imagination, so you can correct me

24  if I'm wrong.  But the way I understand the law is if

25  there is nothing on a subject, you can use other



STRINGER: BETSY SCHONHOFF

Page 52

```
1   portions of the law to help drive or direct answers to
2   specifics, like the signature, is it required or not.
3   But where there is something on the subject that is
4   very specific, that would supersede any other broadly
5   used portion of code because it's specific to that
6   issue.  And so that's where I'm coming from on my
7   interpretation of how the law works.
8        Q.   And from where or from whom did you obtain
9   that understanding?
10       A.   After multiple conversations with our
11  attorneys over the years.  If there's -- you know, for
12  instance, we were trying to find on certifying official
13  lists of registered voters, does it have to have a
14  signature, what does certification mean?  The election
15  code is not specific.  So we went and looked at the
16  rest of law in its totality to try to figure out what
17  is actually required and what could be used as more of
18  a guideline for them instead of saying, "This is how it
19  needs to be."
20       Q.   That Texas law you were referring to about
21  requiring a signature, it doesn't -- it doesn't say ink
22  signature or physical -- there's no -- there's no
23  qualifying word in front of "signature"; is that right?
24               MS. MACKIN:  Objection, form.
25               THE WITNESS:  So, again, I'm not an
```



STRINGER: BETSY SCHONHOFF

Page 53

1   attorney, but 13.002 says the application has to be

2   written and signed.  It also indicates that the only

3   methods for transmittal of the application to the voter

4   registrar are by mail and in person.  There's a fax

5   option, but the original has to come by mail, which

6   leads to an original signature.

7                   20.066 of the election code is what

8   authorizes DPS to transfer the physical signature

9   electronically captured in lieu of the original

10  signature, but only if DPS has received a completed

11  voter registration application combined form under

12  20.063, election code.  The way that the combined form

13  is presented in that portion of the code as well is by

14  mail and in person.

15                  Where there is another option, like

16  e-mail or something like that or delivery does not

17  matter, then election code defaults to Chapter 1 -- I

18  think it's 1.007 that talks about methods of

19  transmission for things like an absentee ballot by mail

20  can be transmitted electronically, a/k/a e-mail.

21                  Otherwise, it's -- if there's a specific

22  method of transmission, that's -- that's the default.

23  So I'm going back to the general version down to the

24  specific, right?  The Chapter 13 -- I mean,

25  applications are mentioned all throughout election code



STRINGER: BETSY SCHONHOFF

Page 54

1  that are not in Chapter 13.  Provisional ballots,

2  limited ballots, agency applications all are under

3  Chapter 20.  DPS applications have their own subchapter

4  under Chapter 20.  Notices of address confirmation.  It

5  doesn't really matter where they're referenced.  They

6  all end up under the 13.002 category, which is by mail

7  and in person, which seems to indicate there's a

8  physical signature included on the application

9  somewhere.  And DPS is the only one authorized to

10  transmit something other than the physical signature.

11      Q.   (BY MS. STEVENS)  And for those specific

12  transactions you've identified the DPS -- excuse me.

13  It's the -- I think you said physically --

14  electronically captured physical signature, something

15  like that.  It's that signature that goes for the voter

16  registration purposes out to the voter registrars; is

17  that correct?

18      A.   That -- the physical signature electronically

19  captured --

20      Q.   However you phrased it.

21      A.   -- yes.  It's that signature that goes upon

22  DPS receiving a completed application by mail or in

23  person.

24      Q.   And -- and that's a separate document, the

25  application?



Page 100

1   in than just -- just a blanket this sentence, this

2   sentence, this sentence.  So I'll just read the whole

3   thing and explain the nuance discrepancy, I guess.

4        **Q.   Well, let's go sentence by sentence.  Read the**

5   **sentence and then explain the nuance discrepancy for**

6   **that sentence, and then we'll go through there.  I want**

7   **it to be really clear on the record --**

8        A.   Okay.

9        **Q.   -- your rebuttal opinion as to something**

10  **specific he has said.**

11       A.   Okay.  "The county can use the signature, if

12  it is deemed necessary, to compare with the voter's

13  signature obtained at the polls."

14            So --

15       **Q.   Wait, wait, wait.  Where are you starting?**

16       A.   Sorry.  This is the third sentence in, I

17  believe.

18       **Q.   Oh, okay.  Thank you.  Go ahead.**

19       A.   So the -- the comparison for use at the polls

20  wouldn't be done by the county.  That would be done if

21  there's some sort of litigation surrounding a specific

22  individual.  When he's talking about polls, I believe

23  he's talking about the ballot board verification

24  committee, which can -- is used for processing absentee

25  ballots by mail.  And, yes, they process provisional



hglitigation.com

STRINGER: BETSY SCHONHOFF

Page 101

1  ballots as well, but not to the extent, I believe, of

2  signature verification.

3          The signature verification is for

4  absentee ballots, and voter registration applications

5  can be used to help determine if there's -- if the

6  signature is of the same person from the application to

7  the ballot that's returned, if needed, to help the

8  voter -- not to harm the voter, but to help, and they

9  can go back to any signature on file at the registrar's

10  office, including voter registration applications, for

11  a specified period of time, whatever that is.

12          So I think there's some confusion

13  surrounding the use of the signature.  It's really not

14  primarily used for the polls.  It's used to register

15  the voter.

16  **Q.   And so here the -- the entity that would be**

17  **comparing the signatures for absentee ballots that you**

18  **identified, is that on the county level, though?**

19      A.   Yes, but it's not county election officials.

20  **Q.   Okay.**

21      A.   The signature verification committee is

22  comprised of judges that are appointed to that

23  position, like during the primaries and things like

24  that.  Then the parties appoint them.  So different

25  rules to apply to who determines those individuals that



STRINGER: BETSY SCHONHOFF

Page 102

1   compare the signatures.  And their job is to say, "Was

2   this absentee ballot application and the ballot

3   returned in the jacket envelope?  Are those signatures

4   the same?"

5                   And if there seems to be some sort of

6   great discrepancy between the jacket envelope and the

7   application, then they can go back and look at

8   previously obtained signatures to see if, you know, the

9   ballot can be counted at that point.

10      Q.   And that includes a voter registration

11   signature?

12      A.   That's correct.

13      Q.   Okay.  So that's for Sentence 3, I think you

14   said; is that right?

15      A.   Yes.  And I think that also brings a little

16   bit more clarity to Judge Garcia's note, you know.  He

17   basically says it's unclear why an additional signature

18   is needed, and it's really because it's not about the

19   voter -- it's not about use at the polls.  That's not

20   its primary purpose.  The primary purpose of the

21   signature is registration.

22      Q.   Okay.  And then there's one final sentence.

23   Do you have a rebuttal opinion with respect to that

24   send sentence?

25      A.   Other -- no, other than the same thing, is



STRINGER: BETSY SCHONHOFF

Page 119

1    specifically Texas.

2        Q.   Okay.   Let's jump to Paragraph 17, please,

3    which is -- begins on Page 7 and concludes on Page 8.

4    So there were a couple of points that you discussed

5    when Ms. Stevens was asking you questions about some

6    rebuttal that you had to Paragraph 17.

7                What I would like to focus on -- I know

8    that you mentioned DPS requiring an individual to

9    complete and sign a form in the DPS field office.   Do

10   you recall testifying about that?

11       A.   Yes.

12       Q.   Okay.   And then you also mentioned taking

13   issue with the last sentence which says, "No further

14   action is required by registrant"?

15       A.   Yes.

16       Q.   Okay.   And you indicated that this paragraph

17   leaves out the signature?

18       A.   Correct.   The signature is -- is required.

19       Q.   So I just want to be very clear on the record

20   about what happens in a DPS office in the context of

21   how Mr. Hersh is characterizing it in Paragraph 17

22   here.   When an individual is in the DPS office and they

23   respond affirmatively to the voter registration

24   question, how many signatures do they provide and how

25   do they provide those signatures?



STRINGER: BETSY SCHONHOFF

Page 120

1    A.   Okay.  So it's my understanding that they will

2    provide one signature on the DPS application that also

3    serves as a voter registration application.  That is

4    under 13.002.  20.063 allows for that application to be

5    completed in person with the form -- combined form for

6    DPS.  The requirements are 13.002, which means written

7    and signed at the time that they're trying to register

8    to vote.  When they turn that form over, then the DPS

9    agent will enter the information on the form provided

10   and have the person sign the keypad or the signature

11   capture pad to provide the physical signature, which is

12   electronically captured.

13   **Q.   So there are two signatures provided in the**

14   **DPS office under such circumstances?**

15   A.   That's correct.

16   **Q.   Okay.  Let's back up a little bit because I**

17   **want to be really clear.  That first signature that's**

18   **on the DPS application form, why is that signature**

19   **required?**

20   A.   Because it is the requirement for any voter

21   application for any agency, entity, coming from any

22   source to be complete and signed at the time that they

23   are registering to vote.

24   **Q.   And, in your understanding, what's the basis**

25   **for that requirement in Texas law?**



STRINGER: BETSY SCHONHOFF

Page 123

1  You -- you mentioned a moment ago that a request to

2  register or update registration information has to be

3  in writing and signed by the applicant under Texas law,

4  right?

5      A.   Correct.

6      Q.   Is it possible through Texas.gov, the DPS

7  portion of it, to make a written signed request to

8  change voter registration information?

9              MS. STEVENS:   Objection, form.

10             THE WITNESS:   Under the current process

11 it will take you to the Secretary of State's website.

12 If they implement some sort of electronic submission,

13 then no, it would not -- you would not be signing it at

14 the time that you are submitting it.

15     Q.   (BY MS. MACKIN)  Okay.  How about --

16 Paragraph 27 on Page 12 talks about when an individual

17 changes their address by mail.  And Dr. Hersh says that

18 DPS transmits the old electronic signature on file.

19 He's presumably referring to DPS sending the Secretary

20 of State's office the physical signature electronically

21 captured.  Was that your understanding of this sentence

22 when you reviewed this report?

23     A.   Yes.

24     Q.   When an individual changes their address by

25 mail at DPS, does the form that they mail in to request

STRINGER: BETSY SCHONHOFF

Page 124

1  that change have to be signed?

2       A.   Yes.   Under 20.063, if it's not signed it's

3  not eligible for registration.   Under 20.066, if it's

4  not signed, then it doesn't get -- then they are not

5  eligible to have the signature transmitted.

6       Q.   And does DPS maintain that mail-in form on

7  file?

8       A.   It's my understanding, yes, they maintain it

9  as part of their permanent records, just like voter

10  registrars maintain all applications as part of their

11  permanent records.

12       Q.   So a voter registrar would be able to contact

13  DPS if they were trying to verify the signature for one

14  of the purposes that has already been discussed and

15  DPS, presumably, would be able to pull up that form

16  and -- and verify that the signature was provided?

17       A.   So the only time they would go back and get

18  the original form is if something in the transmission

19  of the electronic went wrong.

20       Q.   Okay.

21       A.   And then they need to go get the physical

22  version to transmit.   They can -- there's one of

23  two ways.   Either they can get the -- DPS can resend

24  the electronic version or they can get the physical

25  version.   But the signature that's -- that's used for

