IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, ET AL., | § | |
|     *Plaintiffs,* | § | |
| | § | |
| V. | § | No. 5:16-CV-00257 |
| | § | |
| ROLANDO PABLOS,[1] IN HIS OFFICIAL CAPACITY | § | |
| AS THE TEXAS SECRETARY OF STATE AND | § | |
| STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, | § | |
|     *Defendants.* | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Rolando Pablos, in his official capacity as Texas Secretary of State ("SOS"), and Steven C. McCraw, in his official capacity as Director of the Texas Department of Public Safety ("DPS"), ("Defendants"), hereby move the Court for summary judgment in their favor on all of Plaintiffs' claims.

### INTRODUCTION

This case concerns the application of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§20501-20511, to Texas's online service offerings for licensed drivers in the State. Plaintiffs are three Texas residents who allege that Defendants did not "simultaneously" update their voter registration information in connection with an online change of address each Plaintiff made to his Texas driver license. Plaintiffs allege that Defendants have violated the NVRA and

---

[1] When this lawsuit was filed, Carlos H. Cascos was Texas's Secretary of State. On January 5, 2017, Rolando Pablos took over this position. Secretary Pablos is therefore now listed as the Defendant in this cause. *See* FED. R. CIV. P. 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name[.]"

the Equal Protection Clause of the United States Constitution. They make this claim despite the fact that no Plaintiff provided a written, signed request to update his voter registration information—as Texas law requires—in connection with his online changes of address.

Notably, this is not a case of first impression. NVRA claims related to alleged voter registration delays occurring in the context of online driver license change of address applications have previously been considered and dismissed by Judge Lee Rosenthal and the Fifth Circuit for incurably failing to state a claim on which relief could be granted. *Broyles v. Texas*, 618 F. Supp. 2d 661, 690 (S.D. Tex. 2009) (dismissing plaintiffs' claim against the State because they did not provide notice and the alleged voter registration delays did not affect votes in a federal election) *aff'd* 381 F. App'x 370 (5th Cir. 2010). The same analysis compels the dismissal of the Plaintiffs' claims here because they have not complied with the NVRA's mandatory notice provision. Moreover, and any conceivable, non-mooted injury is insufficient to support an actionable NVRA claim because it is undisputed that each Plaintiff is currently registered to vote in upcoming federal elections at his current residence.

As discussed below, Plaintiffs' claims fail as a matter of law for a variety of independent reasons. First, Plaintiffs lack statutory standing because it is undisputed that—following their purported "notice" letters[2] to the State—Defendants offered their assistance in confirming each Plaintiffs' voter registration and assisting any Plaintiff that wanted to update his information. Second, Plaintiffs also lack Article III standing because they cannot establish that their claims are traceable to Defendants' conduct or redressable. In particular, it is undisputed that all of the Plaintiffs have had their voter registration information updated, and each testified that they intend

---

[2] Mr. Hernandez was individually identified in a May 27, 2015 letter purporting to provide notice. *See* Doc. 1, Ex. C at pp. 2-17 Mr. Stringer and Dr. Woods were not individually identified until Plaintiffs sent additional letters on October 23, 2015, and November 18, 2015, respectively. *Id.* at pp. 171-72; 195-96 . The Original Complaint was filed on March 14, 2016.

to submit the written, signed request required by State law, should he wish to update his voter registration information in the future. Accordingly, Plaintiffs' claims are moot, and are not subject to the capable-of-repetition, but evading review exception to mootness. Third, Plaintiffs claims also fail on their merits as the NVRA expressly incorporates state law into the provisions under which Plaintiffs assert their claims. And relevant Texas law—which Plaintiffs do not challenge—requires individuals who wish to update their voter registration information to submit a written, signed request to do so. The only exception to this requirement exists in the context of online changes of address for voter registration purposes *within a single county*, and this exception is expressly provided for by State law. TEX. ELEC. CODE §15.021(d). Plaintiffs' claims also fail to the extent any non-mooted injury is not related to voting in a federal election. Finally, the equal protection claims fail because Plaintiffs have not—and cannot—identify any similarly-situated comparator who was treated differently when completing the same online change of address transaction. For these reasons, judgment as a matter of law in favor of Defendants is warranted on all of Plaintiffs' claims.

STATEMENT OF RELEVANT UNDISPUTED FACTS

I.     **The Elections Clause of the Constitution Provides the State Authority to Prescribe the Time, Places, and Manner in Conducting Federal Elections.**

The Elections Clause of the United States Constitution provides, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators." U.S. CONST. art. I, §4 cl. 1. "The Elections Clause has two functions. Upon the States it imposes the duty ('shall be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it

3

confers the power to alter those regulations or supplant them altogether." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2253 (2013) (citation omitted).

This yields States significant latitude, absent specific Congressional directive. Indeed, "[t]he Clause's substantive scope is broad. 'Times, Places, and Manner,' [the Supreme Court has] written, are 'comprehensive words,' which 'embrace authority to provide a complete code for congressional elections,' including[,]" as relevant here, "regulations relating to 'registration.'" *Id.* at 2253 (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)) (citing *Roudebush v. Hartke*, 405 U.S. 15, 24–25, (1972) (recounts); *United States v. Classic*, 313 U.S. 299, 320 (1941) (primaries)).

## II.     Voter Registration in Texas

The Defendants each play a part in implementing the NVRA in Texas. TEX. ELEC. CODE §31.001(a) (SOS is chief election officer); *id.* §§20.061 *et seq.* (DPS is a voter registration agency).[3] Voter registration in Texas is, and has historically been, a county-based system. TEX. ELEC. CODE §12.001 ("The county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar."). DPS and SOS work within this county-based system to implement the NVRA's requirement that each State "establish procedures to register to vote in elections for Federal office by application made simultaneously with an application for a motor vehicle driver's license pursuant to [§]20504 of this title." 52 U.S.C. §20503(a)(1).

Plaintiffs contend that there are two types of motor vehicle driver license transactions at issue in this case: changes of address and renewals; however, it is undisputed that no Plaintiff is

---

[3] SOS also works with other designated voter registration agencies. *See* TEX. ELEC. CODE Ch. 20. Those agencies are not addressed here because they are not named in this case.

asserting they were injured due to a renewal transaction. Doc. 1, ¶¶ 5, 46, 47, 49. With respect to renewals, the NVRA provides that

> [e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority *under State law* shall serve as an application for voter registration with respect to elections for Federal office *unless the applicant fails to sign the voter registration application*.

52 U.S.C. §20504(a)(1) (emphasis supplied).

> With respect to changes of address, the NVRA further provides that

> any change of address form *submitted in accordance with State law* for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved *unless the registrant states on the form that the change of address is not for voter registration purposes*.

*Id.* §20504(d) (emphasis supplied).  It is undisputed that under the NVRA in order to be registered to vote or submit a change of address, the person must "sign the registration form or attest[] that the change-of-address information is not for voter registration purposes."  *See* Doc. 1, ¶ 24.

The NVRA also specifies certain "forms and procedures" for voter registration applications subject to the Act. Such applications in connection with DPS transactions may require the "minimum amount of information necessary to prevent duplicate voter registrations and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.* §20504(c)(2)(B). These applications further "shall include a statement that—(i) states each eligibility requirement (including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." *Id.* §20504(c)(2)(C)(iii). They may also require a "second signature."  *Id.* §20504(c)(2)(A).

Completed applications "shall be made available (as submitted by the applicant, or in machine readable or other format) to the appropriate State election official as provided by State

law." *Id.* §20504(c)(2)(E). Information collected in connection with both changes of address and online renewals "shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance." *Id.* §20504(e)(1).

The Texas Legislature has provided for NVRA implementation at DPS through in person or by mail transactions as follows:

> The Department of Public Safety shall provide to each person who applies in person at the department's offices for an original or renewal of a driver's license, a personal identification card, or a duplicate or corrected license or card an opportunity to complete a voter registration application form.
>
> When the department processes a license or card for renewal by mail, the department shall deliver to the applicant by mail a voter registration application form.
>
> A change of address that relates to a license or card and that is submitted to the department in person or by mail serves as a change of address for voter registration unless the licensee or cardholder indicates that the change is not for voter registration purposes.

TEX. ELEC. CODE §20.063(a)-(c).

Texas law further provides, as to in person and by mail transactions only:

> At the end of each day a [DPS] office is regularly open for business, the manager of the office shall deliver by mail or in person to the voter registrar of the county in which the office is located each completed voter registration application and applicable change of address submitted to a department employee.
>
> Each weekday the department is regularly open for business, the department shall electronically transfer to the secretary of state the name of each person who completes a voter registration application submitted to the department. The secretary shall prescribe procedures necessary to implement this subsection.
>
> On the weekday the [SOS] is regularly open for business following the date the secretary receives information under Subsection (b), the secretary shall inform the appropriate voter registrar of the name of each person who completes a voter registration application submitted to the department. The registrar may verify that the registrar has received each application as indicated by the information provided by the secretary under this subsection.

*Id.* §20.065(a)-(c). Finally, Texas law further provides, as to by mail and in person DPS transactions only

> If a person completes a voter registration application as provided by Section 20.063, the Department of Public Safety shall: (1)  input the information provided on the application into the department's electronic data system; and (2)  *inform the applicant that the applicant's electronic signature provided to the department will be used for submitting the applicant's voter registration application.*

*Id.* §20.066(a) (emphasis supplied).

Thus, in the context of by person and by mail  types of applications through DPS, and these types of applications only, Texas law provides for the applicant to consent to use of an electronic signature in submitting a voter registration application. *See* Tᴇx. Eʟᴇc. Cᴏᴅᴇ § 20.066.  Section 13.002 of the Texas Election Code, however, still applies to these applications.  It provides, among other things, in (b), that "[a] registration application must be in writing and signed by the applicant."  S*ee also* Ingram Depo. 97:4-98:5; Schonhoff II Depo. 49:10-14 ("It has to do with 13.002, which the NVRA grants states the right to come up with procedures for implementing the NVRA in its totality.  And that 13.002 is the signature component that [Dr. Hersh] disregards in its entirety.").  For in-person or mail driver license's applications, an applicant physically signs a document. Ingram Depo. 99:7-99:24; Schonhoff Depo. 123:24-124:5 ("Q. When an individual changes their address by mail at DPS, does the form they mail in to request that change have to be signed? A. Yes. Under 20.063, if it's not signed it's not eligible for registration.  Under 20.066, if it's not signed, then it doesn't get – then they are not eligible to have the signature transmitted."'); Schonhoff Depo. 119:19-120:15 ("Q.  So I just want to be very clear on the record about what happens in a DPS office in the context of how Mr. Herse is characterizing it in Paragraph 17 here. When an individual is in the DPS office and they respond affirmatively to the voter registration question, how many signatures do they provide and how do they provide those signatures?  A.

Okay.  So it's my understanding that they will provide one signature on the DPS application that also serves as a voter registration application.  That is under 13.002.  20.063 allows for that application to be completed in person with the form – combined form for DPS.  The requirements are 13.002, which means written and signed at the time that they're trying to register to vote.  When they turn that form over, then the DPS agent will enter the information on the form provided and have the person sign the keypad or the signature capture pad to provide the physical signature, which is electronically captured.  Q.  So there are two signatures provided in the DPS office under such circumstances?  A.  That's correct.")

While some licensees may renew their license or change their address online, there is no specific statutory provision which directly addresses online transactions at DPS and voter registration, but like all voter registrations in Texas (including those in person and by mail at DPS), Section 13.002 of the Texas Election Code also applies, and thus in writing, signature requirements apply.[4]  Similarly, for change of address forms, the Texas Election Code is very specific that a signature must be provided, with one exception not relevant to any of the Plaintiffs here.  Section 15.021 of the Texas Election Code provides, in relevant part:

(a)  If a voter discovers incorrect information on the voter's registration certificate or if any of the information becomes incorrect because of a change in circumstances, the voter shall promptly submit to the registrar *a written, signed notice* of the incorrect information and the corresponding correction.
…
(d)  A voter *who continues to reside in the county in which the voter is registered* may correct information under this section by digital transmission of the information under a program administered by the secretary of state and the Department of Information Resources.
(e)  The secretary of state shall adopt rules to: (1) approve technologies for submitting changes of registration information by digital transmission under this section; and (2)

---

[4] As an example, an applicant for voter registration may fax his or her application for registration under 13.002 and 13.143 (d-2) of the Texas Election Code, but the original must follow by mail, thereby maintaining the requirement that there be a physical signature.  *See* TEX. ELEC. CODE §§ 13.002; 13.143(d-2); Schonhoff Depo. 53:4-6 ("There's a fax option, but the original has to come by mail, which leads to an original signature.")

prescribe additional procedures as necessary to implement a system for the digital transmission of changes in registration information.

(emphasis supplied). Therefore, Texas law only permits in county changes of address, which do not relate to any allegation by the Plaintiffs, to be transmitted without a signature; out of county changes of address like those alleged by the Plaintiffs must be in writing and signed.

Online renewal and changes of address with DPS are permitted if, among other things, the applicant is a U.S. Citizen with a Social Security number on file who most recently renewed in person. Importantly, it is undisputed that there is no physical signature provided by the individual at the time the voter completes an online change of address or renewal transaction with DPS, unlike as there is for in person or by mail transactions with DPS.  Moreover, there is no such language in the Texas Election Code relating to consent to use of an electronic signature for transactions conducted online with DPS, unlike as there is for in person or by mail transactions with DPS. Ingram Depo. 99:25-100:3 ("In an online transaction, there is no physical signature made, electronically captured or otherwise."). Because Texas.gov's online interface does not capture an image of a voter's signature, those who utilize it receive a link to a voter registration application they must print, sign and mail in order to update their voter registration. *Compare* Doc. 1, Ex. A at p. 2 ("Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page.") (emphasis original) *with id.,* Ex. D. at p. 25 (voter registration application requiring signature). *See also, e.g.,* Tex. Elec. Code §§ 13.002; 15.021; 52 U.S.C. §20504(c)(2)(C)(iii) (voter registration applications must be signed); *id.* §20504(c)(2)(A) (applications may require second signature); *id.* §20504(a)(1) (renewal is not for voter registration purposes if applicant "fails to sign the voter registration application" or does not meet other State requirements).  The primary purpose of these signatures is to comply with requirements for registration, although physical signatures may be

used in the context of verifying signatures on absentee ballots.  *See* Schonhoff Depo. 101:3 – 15; 102:20-21 ("The primary purpose of the signature is registration.")

### III.    Plaintiffs' Allegations

#### A.   Plaintiffs can present no evidence that they completed the steps that Texas law requires of any individual who wishes to update voter registration information.

Plaintiffs are three Texas residents who allege that they completed online transactions in 2014 or 2015 on Texas.gov to change the address on their driver licenses. Doc. 1, ¶¶ 46-47, 49. At that time, the Texas.gov interface contained a box asking the driver license holder whether they wanted to register to vote or update their voter registration information. Doc. 1, Ex. A at p. 2. The Texas.gov interface further made clear that "[s]electing 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." *Id.* No Plaintiff has alleged or provided evidence that he completed the SOS voter application. *See, e.g.,* Doc. 1, ¶¶ 46-49; Hernandez Depo. 28:16-28:19; Stringer Depo. 32:2-32:19; Woods Depo. 55:14-55:16.

#### B.   Plaintiff Woods has not been denied the ability to cast a vote in a federal election, each Plaintiff is registered to vote at his desired address, and no Plaintiff was denied the opportunity to cast ballot in the 2016 federal general election.

Plaintiffs bring this action based on particular driver license changes of address made through Texas.gov, each in connection with a particular move.  Hernandez moved in 2013 from Ector to Dallas County. Hernandez Depo. 28:16-22. Stringer moved from Tarrant to Bexar County in August 2014. Stringer Depo. 31:1-31:8. In 2015, Woods moved from West Virginia to Houston, Texas and changed his driver's license address from an old address in Austin to his new address in Houston.  Woods Depo. 62:11-63:9. None of the Plaintiffs renewed his driver license in connection with these moves. *See* Hernandez Depo. 28:16-28:19; Stringer Depo. 32:2-32:19; Woods Depo. 55:14-55:16.

Hernandez alleges that he was forced to cast a provisional ballot in a 2014 election. Doc. 1, ¶46. Likewise, Stringer alleges that he could only vote for state and local ballot questions in a 2014 election. *Id.* On the other hand, Woods only brings this cause of action based upon a non-federal 2015 election. *Id.* at ¶ 49; *see also* Ex. C (Answer to Request for Admission # 15).

Plaintiffs purported to provide the State with pre-suit "notice" of their alleged claims. Defendants offered assistance to each Plaintiff (and any other individual with voter registration questions of whom Plaintiffs or their counsel was aware)—including to confirming voter registration status, assisting with updating voter registration information, and answering any other questions about the voter registration process. *See* Exs. A, B, C (Answers to Requests for Admission #9). *See also, e.g.*, Doc. 1 Ex. C at 27-28; 45. Today,  as was the case prior to the end of the "notice period, each Plaintiff is registered to vote at the address where he wishes to be registered, and each was able to cast a ballot in the 2016 federal general election. *See* Stringer Depo. 48:2-7; Woods depo. 72:22-74:11; Hernandez depo. 39:4-9; Ex. I (Hernandez TEAM Record, showing an Effective Date of Registration of December 14, 2014 and voting history for March and November 2016; Stringer TEAM Record, showing an Effective Date of Registration of May 23, 2015 and voting history for March and November 2016, and Woods TEAM Record, showing an Effective Date of Registration of December 3, 2015 and voting history for March and November 2016).

Further, no Plaintiff alleges that, should he move in the future, he will fail to submit a written, signed request to update his voter registration information, should he wish to update it. *See* Hernandez Depo. 39:10-15; Stringer Depo. 49:1-49:9; Woods Depo. 74:12-75:7.

### EXHIBITS

In support of this motion, Defendants rely on the evidence identified and contained in the attached appendix, all of which is incorporated herein by reference as if set forth in full.

| Exhibit | Description |
|---|---|
| A | Plaintiff Hernandez's Responses to Defendants' First Set of Discovery |
| B | Plaintiff Stringer's Responses to Defendants' First Set of Discovery |
| C | Plaintiff Woods's Responses to Defendants' First Set of Discovery |
| D | Plaintiff Hernandez's Deposition Excerpts ("Hernandez Depo.") |
| E | Plaintiff Stringer's Deposition Excerpts ("Stringer Depo.") |
| F | Plaintiff Woods's Deposition Excerpts ("Woods Depo.") |
| G | Keith Ingram's Rule 30(b)(6) Deposition Excerpts ("Ingram Depo.") |
| H | Betsy Schonhoff Expert Deposition Excerpts ("Schonhoff Depo.") |
| I | Plaintiffs' TEAM Records (filed separately under seal) |

## ARGUMENT

### I. Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). For this analysis, the evidence is examined in the light most favorable to the nonmovant. *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999). But "[w]here critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Texas A&M Univ.,* 168 F.3d 196, 199 (5th Cir. 1999). "If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted." *Wheeler v. Miller,* 168 F.3d 241, 247 (5th Cir. 1999).

### II. Plaintiffs Have Not Established Standing for Any of Their Claims.

**A. Plaintiffs lack statutory standing, because Defendants addressed all of their voter registration concerns once aware of them.**

As an initial matter, Plaintiffs lack standing because it is undisputed that, during the notice period, Defendants took action to correct any alleged voter registration issue each Plaintiff had.

Congress's abrogation of Defendants' immunity is conditioned on a plaintiff's compliance with the NVRA's notice provision. 52 U.S.C. §20510(b)(1)-(2). The statute provides, in relevant part, that before a plaintiff can file suit, he or she must "provide written notice of the violation to the chief election official of the State involved." *Id.* "[T]he purpose of the notice requirement was to 'provide states...an opportunity to attempt compliance before facing litigation.'" *Scott v. Schedler*, 771 F.3d 831, 835-36 (5th Cir. 2014) (*quoting ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir.1997)) (alterations in *Scott*). A state then has 90 days to attempt to correct the violation. 52 U.S.C. §20510(b)(1)-(2).[5] Critically, a plaintiff does not have standing to sue if the alleged violation is corrected during the notice period. *Id.*; *Scott*, 771 F.3d at 836.

In determining what action a state can take to correct an alleged violation, the Fifth Circuit's decision in *Scott* is instructive. There, the NCAAP and an individual plaintiff (Scott) alleged that Louisiana public assistance offices were committing systemic and continuing violations of NVRA in handling responses to the voter registration question on applications for public benefits. *Scott*, 771 F.3d at 833. Prior to suit, the NCAAP provided notice of the alleged violations, but Scott's name was not included in the notice. *Id.* at 835. As a result, the Fifth Circuit ruled that Scott could not piggyback on the NCAAP's notice and establish standing in his own right. *Id.* at 836. Critically, in finding that Scott lacked standing, the Court noted that when Louisiana was provided notice of Scott's allegation, it "attempted to provide Scott with voter registration forms" and that this attempt was "'exactly'" what the "'pre-litigation notice was meant to encourage.'" *Id.* (quoting *Ga. State Conf. of NAACP v. Kemp,* 841 F.Supp.2d 1320, 1336 (N.D.

---

[5] A shorter notice period of 20 days applies where a plaintiff alleges that a violation that took place within 120 days of a federal election. 52 U.S.C. § 20510(b)(2).

Ga. 2012)).  Ultimately, the Fifth Circuit held that due to his failure to comply with the NVRA's notice provision  he lacked standing to seek relief for himself or "for others, either." *Id.*

The same rationale defeats Plaintiffs' standing here.  They lack standing for the simple fact that each Plaintiffs' alleged voter registration issues[6] were corrected prior to the end of the notice period. *See* Ex. I (Hernandez TEAM Record, showing an Effective Date of Registration of December 14, 2014; Stringer TEAM Record, showing an Effective Date of Registration of May 23, 2015, and Woods TEAM Record, showing an Effective Date of Registration of December 3, 2015).  Indeed, this fact is undisputed—each Plaintiff admits that Defendants offered to confirm his voter registration status, and assist in updating his voter registration information. *See* Exs. A, B, C (at Requests for Admission #9); *see also* Doc. 1, Ex. C. Further, each Plaintiff is currently registered to vote at his desired location and was able to vote in the 2016 federal general election. *See* Exs. A (Request for Admission #17), B Request for Admission #17), C (Request for Admission #16); Stringer Depo. 48:2-7; Woods Depo. 72:22-74:11; Hernandez Depo. 39:4-9; Ex. I. As multiple courts have held, this type of voter registration assistance is "exactly" what the NVRA "pre-litigation notice was meant to encourage." *Scott,* 771 F.3d at 836 (citation omitted).

Plaintiffs concede that Defendants attempted to verify the voter registration status and update the voter registration information of each Plaintiff. *See* Exs. A, B, C (Requests for Admission #9). Yet, Plaintiffs continue to claim standing based on the allegation that the parties have a larger disagreement about what the NVRA requires, which Plaintiffs claim affects thousands of non-parties. Doc. 9, p. 20. But this argument conflicts with Fifth Circuit's analysis in *Scott*, where the state's issuance of a voter registration form in response to an individual's purported claim was exactly the type of action that would correct a violation under the notice

---

[6] Although for the reasons explained herein, those issues were not the result of violations of the NVRA in any event.

14

provision, despite the fact that it arose in the context of a larger dispute about the NVRA's requirements. 771 F.3d at 836. And Plaintiffs have not brought this suit through an organization that has standing to assert claims on behalf of others. As a result, under *Scott*, Plaintiffs' contention that other voters will be affected by the State's interpretation of the NVRA under State law is insufficient to confer statutory standing. If an individual plaintiff does not have standing under the notice provision to seek relief for himself, "he is not entitled to seek relief for others, either." *Id*.

Accordingly, Plaintiffs' claims lack standing under the NVRA's notice provision.

### B.  Plaintiffs lack Article III standing.

Plaintiffs also cannot establish the Court's subject-matter jurisdiction because they cannot establish standing under Article III of the United States Constitution. To establish Article III standing, a plaintiff must show: (1) an injury-in-fact; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision in the district court (redressability). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585–86 (5th Cir. 2006). These elements are "an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements. *Id*. If a party lacks standing to bring a claim, the court lacks subject-matter jurisdiction over that claim. *See Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Here, the Plaintiffs lack standing because they have established neither causation nor redressability.

### 1.  Plaintiffs' injuries are not fairly traceable to any Defendant's conduct, but are instead the result of their own behavior.

Here it is undisputed that no Plaintiff submitted a written, signed request to update his voter registration information when changing the address on his Texas driver license using Texas.gov, as asserted in the Complaint. As a result, the alleged injuries related to their voter registration status

or their rights under the NVRA—which requires covered voter registration applications to conform to applicable state law—is traceable not to Defendants' conduct, but rather to their own inaction. As a result, Plaintiffs' alleged injuries do not satisfy the causation element necessary to establish Article III standing. *See Lujan*, 504 U.S. at 560 (for an injury-in-fact to be fairly traceable to the challenged action of the defendant, "there must be a causal connection between the injury and the conduct complained of."); *Westfall v. Miller*, 77 F.3d 868, 871-73 (5th Cir. 1996) (injury stemming from plaintiff's own inaction severs causal link between that injury and any conduct of defendant).

### 2. Plaintiffs' claims are moot.

Further, Plaintiffs claims are moot. Mootness is "the doctrine of standing in a time frame." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). If the controversy between a plaintiff and defendant has been "resolved to the point that they no longer qualify as adverse parties with sufficient legal interests to maintain the litigation," a court lacks jurisdiction. *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014). That is, "[t]he requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980). Federal courts "have no power under Article III to decide the merits of a case that is moot when it comes before" them. *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999). A "controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation." *Perschall v. Louisiana*, 174 F.3d 197 (5th Cir. 1999) (citation omitted).

Here, it is undisputed that Plaintiffs are currently registered to vote at their desired addresses, and intend to make future updates to their voter registration in accordance with Texas law. As a result, their claims are moot and not capable of repetition.

i.   **There is no current controversy with any Plaintiff, because it is undisputed that each is currently registered to vote at his desired address.**

Plaintiffs' deposition testimony establishes that each is currently registered to vote at his desired address. Further, while Plaintiffs contend that their voter registration status has affected their ability to vote in previous elections, those elections have passed. *Dep't of Tex., Veterans of Foreign Wars v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (For an injury to be redressable, a plaintiff must show that a favorable decision would likely remedy it). In addition, in response to Plaintiffs' pre-suit notice, Defendants offered assistance to Plaintiffs and worked to provide information to allow for the correction the alleged violations as to the specific parties and Plaintiffs were able to, and in fact did, cast a ballot in the 2016 federal election. *See* Exs. A, B, C, I. In fact, each Plaintiff was registered at his desired address during or prior to the notice period. Stringer Depo. 48:2-7; Woods Depo. 72:22-74:11; Hernandez Depo. 39:4-9; Ex. I. As a result, Plaintiffs lack the personal interest in this suit required to establish a case or controversy.

ii.   **Because there is no competent evidence these Plaintiffs' alleged injury will recur, the capable-of-repetition exception to mootness is inapplicable.**

A moot case may still be justiciable, if the underlying dispute is "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998) (citations omitted). This exception applies "only in exceptional situations." *Id.* In the absence of a class action, a controversy is capable of repetition, yet evading review where both of the following two requirements are met: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975) (per curiam).

Here, there is no reasonable expectation that any Plaintiff will suffer any injury alleged here in the future. Indeed, each Plaintiff testified that in the future, if he had to change addresses,

he planned to update his voter registration by submitting a signed, written request to do so. Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7. And this is precisely what Texas law requires. *See, e.g.,* Tex. Elec. Code § 13.002(b); Tex. Elec. Code § 20.066; Tex. Elec. Code §15.021.

Accordingly, whether Plaintiffs' claims fall under the capable-of-repetition exception to mootness depends upon how the Court applies the "same complaining party" requirement. Defendants note that this issue presents the Court with a cluttered canvas.[7] In election cases, the Fifth Circuit has required that the same complaining party have a reasonable expectation that they will face the same injury again. *See Smith v. Winter*, 782 F.2d 508, 510 (5th Cir. 1986) (election law challenge held moot because elected officials prevailed in recall election at ballot box). In certain circumstances it has expanded the complaining party requirement to encompass likely injuries to non-parties. *See Ctr. For Individual Freedom v. Carmouche,* 449 F.3d 655, 662 (5th Cir. 2006); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009). That said, *Winter*, as the earliest of the cited Fifth Circuit decisions, controls and requires the dismissal of Plaintiffs' suit on standing grounds. *See, e.g., Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) (stating rule of orderliness).

---

[7] Like the Fifth Circuit, other courts have also struggled to reconcile the Supreme Court's capable-of-repetition instructions in election cases. For example, the Second Circuit in *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001), noted the "tension" in Supreme Court election cases applying the second prong of the capable-of-repetition exception. 267 F.3d 109, 114 (2d Cir. 2001) (comparing *Norman v. Reed*, 502 U.S. 279, 288 (1992) (examining whether the "same parties" would face similar, future injury); *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 187-88 (1979); with *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (finding that the case was not moot post-election challenge to state law regarding candidate eligibility was not moot because challenged law's "effects on independent candidacies[] will persist as [they] are applied in future elections."); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972)).

Ultimately, the Second Circuit "adopted" approach of the Supreme Court's election cases that hold "that, in the absence of a class action, there must be a reasonable expectation that the *same* complaining party would encounter the challenged action in the future." *Van Wie*, 267 F.3d at 114 (emphasis in original). In light of the same cases, and the Fifth Circuit's decision in *Smith v. Winter*, 782 F.2d 508, 510 (5th Cir. 1986), Defendants would urge the Court to adopt the same approach here and focus the second prong solely the likelihood of the same injury on the *same* complaining parties.

In *Winter*, the plaintiffs were elected officials who were subjected to recall elections under Mississippi law. 782 F.2d at 509. They alleged the defendants' actions and a state statute violated the Voting Rights Act and their constitutional rights. *Id.* The plaintiffs ultimately prevailed in their elections before the case was decided. *Id.* at 510. As a result, the court found that their claims were properly dismissed as moot. *Id.* In examining whether plaintiffs met the second prong of the capable-of-repetition exception to mootness, the Fifth Circuit focused solely on whether the *same plaintiffs* established whether they would be subjected to the same action again, and held that the "second prong does not apply because there is no allegation or showing otherwise that [the plaintiffs] will be subjected to another recall petition." *Id.* To the extent *Winter* conflicts with any subsequent panel's decision, *Winter's* analysis should control under Fifth Circuit precedent, and requires dismissal of Plaintiffs' claims in this case for lack of Article III standing.

### III.    Plaintiffs' Claims Fail on the Merits.

Plaintiffs' NVRA and equal protection claims also fail on their merits, as they ignore or misunderstand key provisions of both federal and state law. First, the NVRA provisions at issue incorporate Texas law by requiring that driver license applications and changes of address covered under the Act must also comply with applicable state law. 52 U.S.C. §§20504(a)(1), 20504(d) the NVRA further requires that such applications be signed. *Id.* §20504(c)(2)(C)(iii). Texas law also requires a voter registration application to be signed. TEX. ELEC. CODE §13.002(b), and only provides for the transmission of an electronic signature when there is also an accompanying physical signature, and in the case of DPS, only for in-person or by mail applications.  *See* TEX. ELEC. CODE §§ 20.063; 20.066.  Texas law also requires out-of-county changes of address to be in writing and signed.  TEX. ELEC. CODE § 15.021.  But, driver license's renewal or change of address transactions done online are not physically signed. As a result, in an online transaction, Texas law

that requires a driver license applicant who also wishes to register to vote sign and submit a voter registration application.

Since the relevant section of the NVRA requires the application to be completed in accordance with state law, compliance with Texas law is part and parcel of the NVRA. Further, to the extent that any Plaintiff's NVRA claim is based on an injury in a non-federal election, it fails a matter of law because the NVRA is limited to challenges by voters harmed in the context of a federal election. Finally, Plaintiffs' equal protection claim also fails because they have not—and cannot—identify any Texas residents who filled out a driver's license change of address application online, and were treated differently by the State.

### A. Plaintiffs' NVRA claims fail as a matter of law.

#### 1. Plaintiffs' cannot establish a violation of the NVRA because the signature requirement at issue is within the State's prerogative under the Election Clause and do not violate the NVRA.

As explained above, Texas law requires that voter registration applications "must be in writing and signed by the applicant." TEX. ELEC. CODE § 13.002(b); Schonhoff Depo. 102:20-21. The same is true of out of county address changes. TEX. ELEC. CODE §15.021. In compliance with the NVRA, Texas provides a voter registration application as part of an application for a motor vehicle driver's license when a voter indicates that he or she wishes to register to vote. For in-person or mail driver license applications, an applicant physically signs the application. Ingram Depo. 99:7-99:24; Schonhoff Depo. 123:24-124:5; 119:19-120:15.

In the context of these types of applications, and these types of applications only, Texas law provides that the applicant may consent to the use of his electronic signature for purposes of submitting a voter registration application. *See* TEX. ELEC. CODE §§ 20.063, 20.066. But, unlike an in-person or by mail driver license application, an online applicant does not physically—or

electronically—sign a renewal or change of address driver license application. Ingram Depo. 99:25-100:3; *see also* TEX. ELEC. CODE §§ 20.063; 20.066 (applying only to in person and by mail transactions, and referring to consent that an electronic signature be transmitted); Ingram Depo. 97:4-98:5; Schonhoff  Depo. 49:10-14.

As a result, to comply with §§13.002 and 15.021 of the Texas Election Code, online driver license transactions in which an applicant wants to register to vote are linked to a voter registration application that the applicant has the opportunity to sign and submit. These procedures are consistent both with the relevant State statutes, and the NVRA. *See* 52 U.S.C. §§20504(c)(2)(B) (State's voter registration application may include information needed to "enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.); 20504(c)(2)(C)(iii) (application must require the signature of the applicant, under penalty of perjury); 20504(c)(2)(A) (applications may require a "second signature"); TEX. ELEC. CODE §§13.002, 15.021, 20.063, 20.066.

Nevertheless, Plaintiffs claim that the NVRA required Texas to update their voter registration information "simultaneously" with their online requests to change the addresses on their driver licenses, and further claim that Texas violated the law by requiring them to submit a physical signature when requesting a change to their voter registration information. Doc. 1, ¶¶2, 26, 39.[8]  Plaintiffs erroneously claim that "the exact same information is submitted online" as is submitted by an individual updating or renewing their driver license in person, notwithstanding the clear difference that an individual updating or renewing in person (or for that matter, by mail)

---

[8] Notably, no Plaintiff has claimed he attempted to *renew* a a Texas driver license online in connection with the allegations in this case. *See* Doc. 1, ¶¶46-49. Thus, Defendants re-urge and incorporate by reference the arguments raised in their Motion to Dismiss, that the Court lacks jurisdiction to consider online driver license renewals under the NVRA. Doc. 7.

is providing a physical signature at that time. *See* Doc. 1 ¶ 43. And they make this claim despite the fact that §20504 explicitly does *not* apply if the "applicant fails to sign the voter registration application" as is undisputedly the case here. 52 U.S.C. §20504(a)(1).

Plaintiffs would further have states treat *all* "driver's license change-of-address transactions as updates for voter registration purposes," even where the applicant "states on the form that the change of address is not for voter registration purposes." *Compare* Doc. 1, Count III (capitalization altered) *with* 52 U.S.C. §20504(d). The NVRA imposes no such requirement. *Scott,* 771 F.3d at 831-40 (Louisiana did not violate the NVRA by informing applicant in NVRA-covered transaction that, if they answered "no" to voter registration question, they would not be registered to vote, even where Louisiana did not provide voter registration application to applicants who answered "no").

Accordingly, judgment as a matter of law is warranted on Plaintiffs' NVRA claim.

### 2. Plaintiffs' claims fail to the extent they do not establish an injury connected to a federal election.

Plaintiffs' NVRA claims should also be dismissed to the extent they are not premised on violations made in the context of a federal election. In particular, Woods should be dismissed from the suit because he has not suffered the type of injury that can maintain a claim under the NVRA. Rather, the NVRA by its own "terms applies to voters registrations for 'elections for *Federal* office.'" 52 U.S.C. §20504(a)(1)(emphasis added). Conversely, the federal statute does not apply to state or local elections as the authority to regulate federal elections "does not give Congress the power to directly regulate state voter registration procedures in state elections or state ballot issues." *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1028 (D. Neb. 2000). Here, Woods's claims fail as a matter of law because he cannot show that the alleged violation impacted his participation in a federal election.

Notably, this is not the first time a court has dismissed allegations that online driver license transactions in Texas violate 52 U.S.C. §20504. Both Judge Rosenthal and the Fifth Circuit considered this issue in *Broyles*. There, the plaintiffs alleged the State violated the NVRA when one of the plaintiffs "changed his driver's license and updated his voter registration on the DPS website" in 2007 but did not receive an updated voter registration card and therefore was not eligible to vote in a 2008 local election. *Broyles*, 618 F. Supp. 2d at 678. Judge Rosenthal noted that the NVRA claim failed because plaintiffs did not timely provide pre-suit notice, divesting them of standing to maintain a private right of action. *Id*. at 691 ("If notice was optional, the 90-day cure period would be superfluous."). The court also held that the NVRA is limited to the context of a federal election. *Id.* And, because the alleged delay and failure to update the *Broyles* voter's registration information was only alleged to have affected a local election, there was no viable "cause of action under the NVRA." *Id.* This was so despite the allegation that the voter registration information was not updated at the same time the voter completed changed his driver license information online. *Id.* The Fifth Circuit affirmed, and specifically held the district court was correct to conclude that the plaintiffs did not state a claim under the NVRA. *Broyles,* 381 Fed. App'x at 373.

At minimum, *Broyles* compels dismissal of Woods's claims. Woods' entire case rests on an alleged attempt to vote on "Election Day 2015," after he moved from West Virginia to Houston a few months earlier. Doc. 1, ¶ 49. But Woods admits that he did not attempt to cast a ballot in a 2015 federal election. Ex. C (Request for Admission # 15). Thus, the NVRA is not implicated.

To the extent Hernandez or Stringer alleges a non-mooted NVRA claim based—not on their voting registration status—but an alleged statutory right to "simultaneous" voter registration, *Broyles* makes clear that this is insufficient to maintain a claim under the NVRA, absent connection

to a federal election. Here, it is undisputed that each Plaintiff was able to cast a ballot in the 2016 federal general election, and is currently registered at his current address.

As a result, judgment as a matter of law is warranted on all of Plaintiffs' NVRA claims.

**B. Plaintiffs' equal protection claim fails as a matter of law.**

Plaintiffs' equal protection claims have no more merit than those under the NVRA. Critically, to establish an equal protection claim, a plaintiff must establish that a similarly-situated comparator was treated differently. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In this circuit, the term "similarly-situated" is a "stringent standard" that is defined narrowly and requires the comparator to be treated more favorably in "nearly identical" circumstances. *Hockman v. Westward Comm., LLC*, 282 F.Supp.2d 512, 527–28 (E.D. Tex. 2003); *Wheeler v. BL Dev. Corp.,* 415 F.3d 399, 405 (5th Cir. 2005).

Plaintiffs are Texas voters who changed the addresses on their Texas driver licenses online, but did not complete the portion of the application that would update their voter registration information. Plaintiffs' constitutional claims fail as a matter of law because there is no allegation—much less admissible evidence—that other voters who completed the same online transaction were treated differently by Defendants. *See Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007) (As a prerequisite to an equal protection claim, "the plaintiff must prove that similarly situated individuals were treated differently."). Instead, the law at issue is facially neutral to all similarly-situated applicants. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1977) (holding that an equal protection claim premised on an outwardly neutral law requires proof of both a discriminatory effect and a discriminatory purpose). These undisputed facts defeat Plaintiffs' equal protection claims as a matter of law.

## Conclusion

The Court should dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/*Esteban S.M. Soto*
ANNE MARIE MACKIN
Texas Bar No. 24078898
ESTEBAN S.M. SOTO
Texas Bar. No. 24052284
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4074
(512) 320-0667 FAX
anna.mackin@oag.texas.gov
esteban.soto@oag.texas.gov
ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I certify that on this the 30th day of June, 2017 a true and correct copy of the foregoing was filed electronically with the Court and delivered via the CM/ECF system to all counsel of record.

/s/Esteban San Miguel Soto
Assistant Attorney General

25