Confidential DRAFT: Attorney Work Product

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, in his official | § | |
| capacity as the Texas Secretary of State, and | § | |
| STEVEN C. McCRAW, in his official | § | |
| capacity as the Director of the Texas | § | |
| Department of Public Safety, | § | |
| | § | |
| *Defendants* | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THE TEXAS CIVIL RIGHTS PROJECT**
Mimi M.D. Marziani
Rebecca Harrison Stevens
Hani Mirza
Cassandra Champion
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WATERS & KRAUS, LLP**
Peter A. Kraus (*pro hac vice*)
Charles S. Siegel
Caitlyn E. Silhan
Rachel A. Gross (*pro hac vice*)
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

Confidential DRAFT: Attorney Work Product

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

   I.  Plaintiffs have statutory and Article III standing. ................................................... 1

   A.  Plaintiffs have standing under the NVRA because Defendants failed to correct the NVRA violations after Plaintiffs provided proper notice. ........................................ 2

       1.  Plaintiffs have standing under the NVRA because each was aggrieved by Texas's failure to register them to vote in elections for federal office. ..................................... 2

       2.  Defendants did not correct their NVRA violations by offering to update Plaintiffs' voter registration. ........................................................................... 4

   B.  Plaintiffs have Article III standing.................................................................. 7

       1.  Plaintiffs' injuries were caused by Defendants' failure to comply with the NVRA .... 7

       2.  Plaintiffs' claims present a live, redressable controversy ........................................... 8

          a.  Plaintiffs' claims are not moot ................................................................ 8

          b.  The capable-of repetition exception to mootness applies .................................... 8

             i.  Plaintiffs meet the "same complaining party" standard ................................. 9

             ii.  The court should construe the "same complaining party" requirement liberally ............................................................................................ 11

   C.  There is no state-law loophole in the NVRA.................................................... 13

   D.  Defendants violate the Equal Protection Clause as a matter of law ................................ 16

       1.  The Anderson-Burdick test controls ................................................................ 16

       2.  The Anderson-Burdick test mandates judgment in Plaintiffs' favor on their Equal Protection claims................................................................................ 17

CONCLUSION................................................................................................................. 17

CERTIFICATE OF SERVICE .......................................................................................... 19

Confidential DRAFT: Attorney Work Product

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) .................................................................................................. 17

*Arcia v. Florida Sec'y of State*,
  772 F.3D 1335, 1341 (11th Cir. 2014) .................................................................. 4, 6

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
  133 S.Ct. 2247 (2013) ........................................................................................... 6, 14

*Ass'n of Cmty. Orgs. for Reform Now v. Miller*,
  129 F.3d 833 (6th Cir. 1997) ...................................................................................... 2

*Broyles v. Texas*,
  381 Fed. Appx. 370 (5th Cir. 2010) ........................................................................... 3

*Broyles v. Texas*,
  618 F. Supp. 2d, 661 (S.D. Tex. 2009) ...................................................................... 3

*Burdick v. Takushi*,
  504 U.S. 428 (1992) .................................................................................................. 17

*Crawford v. Marion Cty. Election*,
  553 U.S. 181 (2008) .................................................................................................. 17

*Davis v. FEC*,
  554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ............................................ 9

*Dobrovolny v. Nebraska*,
  100 F. Supp. 2d 1012 (D. Neb. 2000) ........................................................................ 3

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) .................................................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .................................................................................................... 7

*Hockman v. Westward Comm., LLC*,
  282 F. Supp. 2d 512 (E.D. Tex. 2003) ..................................................................... 16

*Kucinich v. Tex. Democratic Party*,
  563 F.3d 161 (5th Cir. 2009) ................................................................................. 9, 12

*Mayberry v. Vought Aircraft Co.*,
  55 F.3d 1086 (5th Cir.1995) .................................................................................... 16

*Northeast Ohio Coal. for the Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016) ................................................................................... 17

*Obama for Am. v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ................................................................................... 17

*Rios v. City of Del Rio, Tex.*,
  444 F.3d 417 (5th Cir. 2006) ................................................................................... 11

*Rosario v. Rockefeller*,
　410 U.S. 752 (1973)..................................................................................... 9

*Scott v. Schedler*,
　771 F.3d 831 (5th Cir. 2014) ................................................................... 5, 6

*Smith v. Winter*,
　782 F.2d 508 (5th Cir. 1986) ...................................................................... 11

*Storer v. Brown*,
　415 U.S. 724 (1974)................................................................................ 9, 12

*Wheeler v. BL Dev. Corp.*,
　415 F.3d 399 (5th Cir. 2005) ...................................................................... 16

*Wilson v. Birnberg*
　667 F.3d 591 (2012)................................................................................... 12

**Statutes and Rules**

42 U.S.C. § 1981 ............................................................................................ 16

52 U.S.C. § 20504.............................................................................. 7, 11, 14

52 U.S.C. § 20504(a) ....................................................................................... 5

52 U.S.C. § 20504(a)(1)................................................................................. 13

52 U.S.C. § 20504(d) ............................................................................... 13, 15

52 U.S.C. § 20506(a)(6)(A)(i) ........................................................................ 5

52 U.S.C. § 20510.............................................................................................. 5

52 U.S.C. § 20510(b)......................................................................................... 4

52 U.S.C. § 20510(b)(1) ............................................................................... 3, 4

52 U.S.C. § 20510(b)(2) ............................................................................ 4, 5, 6

37 Tex. Admin. Code 15.59(e)(7)................................................................. 15

Tex. Transp. Code § 521.054......................................................................... 14

Tex. Transp. Code § 521.146(c) ................................................................... 14

Tex. Transp. Code § 521.274(a) ................................................................... 14

Texas Election Code § 13.002 ....................................................................... 15

Texas Election Code § 15.021 ....................................................................... 15

Confidential DRAFT: Attorney Work Product

## INTRODUCTION

Wholly ignoring the clear and unequivocal findings by this Court in its Order denying Defendants' Motion to Dismiss ("MTD"), Defendants' Motion for Summary Judgment ("MSJ") regurgitates and repackages the same arguments they made a year ago in their MTD.[1] In the interest of avoiding duplicative briefing, Plaintiffs fully incorporate their response to Defendants' MTD here.[2]

As this Court has already found, Plaintiffs have standing under both the NVRA and Article III of the Constitution. Further, this case has always involved the same legal question: does the NVRA require Defendants to provide a simultaneous and seamless voter registration application during online driver's license transactions? As this Court held in its Order, the answer is clearly "yes."[3] For these reasons and as set out below, Defendants' MSJ should be denied.

## ARGUMENT

### I.     Plaintiffs have statutory and Article III standing.

Defendants once again claim that Plaintiffs lack standing, asserting, at times verbatim, many of the same arguments they put before the Court in their MTD. The parties fully briefed this issue at that time, and the Court denied Defendants' motion, rejecting the same standing arguments raised again in Defendants' MSJ. The Court should reject Defendants' arguments once more.

---

[1] *Compare generally* MTD, Dkt. 7, and Defendants' MSJ, Dkt. 82. Incredibly, there is not a single mention of the Court's Order on the MTD in the State's MSJ.
[2] Dkt. 9.
[3] By their conduct, Defendants have also violated Plaintiffs' Fourteenth Amendment right to equal protection.

### A. Plaintiffs have standing under the NVRA because Defendants failed to correct the NVRA violations after Plaintiffs provided proper notice.

#### 1. Plaintiffs have standing under the NVRA because each was aggrieved by Texas's failure to register them to vote in elections for federal office.

Defendants claim that because Dr. Woods' first opportunity to cast a ballot following his online driver's license transaction was in a state election, not a federal one, he has no claim under the NVRA.[4] Disenfranchisement in a federal election is not, however, the only cognizable injury under the NVRA. Instead, each Plaintiff—including Dr. Woods—was injured at the moment the State failed to provide a simultaneous voter registration application with an online driver's license transaction with the Department of Public Safety ("DPS").[5]

Moreover, the State's argument relies on a false dichotomy that does not exist in Texas. Although the NVRA governs voter registration for elections "for federal office"—as opposed to elections for state office—where, as here, a state *combines* voter registration procedures for federal and state elections, the combined procedure is necessarily governed by the NVRA.[6] In this case, because the State failed to update Plaintiffs' voter registration for elections for federal

---

[4] Defendants mischaracterize Dr. Woods' address history. Dr. Woods lived in Austin from 2007 until 2014, when he moved to West Virginia to live temporarily while working at West Virginia University as a postdoctoral fellow, with the intent of maintaining Austin as his home and residence. In 2015, after accepting a job offer, Dr. Woods moved to Harris County, and thereafter transacted with DPS online to update his driver's license address. Appx. 8-13 (Ex. 1, Excerpts from May 5, 2017 Deposition of John Woods ("Woods Dep.")) 18:4-7; 19:14-20; 32:3-33:1; 62:11-22; 77:4-17).

[5] Dkt. 25 at 4.

[6] *See* Dkt. 77-1, Appx. 137-138 (Ex. 19, Texas Voter Registration Application) (Texas's general form for voter registration—for both federal and state elections); *see also Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 837 (6th Cir. 1997) (noting that, although the NVRA does not prohibit states from adopting separate registration requirements for the election of state officials, the NVRA will affect registration procedures for state and local elections to the extent states combine these registration procedures with federal registration procedures as a matter of convenience).

office after each indicated they wished to register to vote during an online driver's license transaction, they have been "aggrieved by a violation" of the NVRA.[7]

The cases cited by Defendants do not support a contrary result. In *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012 (D. Neb. 2000), plaintiffs sought to place an initiative on Nebraska's general election ballot. When they could not obtain a sufficient percentage of signatures from voters registered in the state to qualify the initiative for placement on the ballot, they challenged the state's voter-registration-list maintenance procedures under the NVRA. *Id.* at 1018-1020. It is in this context that the court observed that the Elections Clause "does not give Congress the power to directly regulate state voter registration procedures in state elections or state ballot issues." *Id.* at 1028 (citation omitted). Here, Plaintiffs are not challenging voter list maintenance or anything to do with "state elections or state ballot issues." Rather, they are challenging Texas's refusal to register eligible voters for elections for federal office during online driver's license transactions in violation of the NVRA. Each has standing under the NVRA to do so.

In *Broyles v. Texas,* 618 F. Supp. 2d, 661, 677 (S.D. Tex. 2009), the plaintiffs alleged, *inter alia*, that they were unable to vote on a "municipal incorporation issue" after attempting to update their voter registration during driver's license transactions online. The court held that, because the Plaintiffs did not allege or present "evidence of registration problems that affected their right to vote in a federal election or on any issue beyond the incorporation issue[,]" they did not have a cause of action under the NVRA. *Id.* at 691. The Fifth Circuit affirmed, holding that the district court applied the correct standard in ruling on Defendants' Rule 12(b)(6) motion, and finding that the dismissal of the NVRA claims was not in error. *Broyles v. Texas*, 381 Fed. Appx. 370, 372, 373 n.1 (5th Cir. 2010).

---

[7] 52 U.S.C. § 20510(b)(1).

In this case, Plaintiffs allege, and the record proves, that Texas violates the NVRA in several ways, including by "failing to establish procedures 'to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504" of the NVRA.[8] Therefore, each Plaintiff suffered an injury under the NVRA when the State failed to offer a simultaneous voter registration application during an online driver's license transaction. That Dr. Woods was subsequently registered to vote for federal elections following his attempt to cast a ballot in a state election does not negate his original injury under the NVRA. *See Arcia v. Florida Sec'y of State*, 772 F.3D 1335, 1341 (11th Cir. 2014) (finding that individual voters removed from the rolls in violation of Section 8 of the NVRA had standing to sue for prospective relief even after they were reinstated). Similarly, that Mr. Stringer and Mr. Hernandez were subsequently registered to vote for future federal elections following their inability to cast a full ballot in the 2014 federal election does not support Defendants' claim that they were not aggrieved by Defendants' violation of the NVRA.

> ### 2. *Defendants did not correct their NVRA violations by offering to update Plaintiffs' voter registration.*

The NVRA provides a private cause of action to address state violations of its mandates.[9] In order to sue a state for violating the NVRA, Plaintiffs are first required to send "written notice [of violations of the NVRA] to the chief election official of the state."[10] "If a violation is not corrected within 90 days after receipt of a notice . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."[11]

---

[8] Complaint, Dkt. 1 at ¶ 62; *see generally* Plaintiffs' MSJ, Dkt. 77.
[9] 52 U.S.C. § 20510(b).
[10] *Id.* at § 20510(b)(1).
[11] *Id.* at § 20510(b)(2).

Here, Defendants do not argue that Plaintiffs failed to notify the Secretary of State ("SOS") that Texas violates the NVRA. Instead, Defendants insist that Plaintiffs lack standing because Defendants "took action to correct any alleged voter registration issue each Plaintiff had."[12] Just as they did in the MTD, Defendants rely on *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014), to support this proposition.[13] *Scott*, however, centered on noncompliance with Section 7 of the NVRA, which requires certain state agencies to provide mail voter registration application forms along with applications for public benefits unless the applicant declines, in writing, to register to vote.[14] Here, the State's violations are of the "Motor Voter" requirements of Section 5 of the NVRA, a portion of the statute wholly distinct from that which was addressed in *Scott*.

In this case, Texas cannot correct its NVRA violations by merely providing a mail-in voter registration form or offering to correct voter registration as to each Plaintiff.[15] In order to correct the violations Plaintiffs complained of in their notice letters, Defendants must allow for online driver's license applications to also serve as voter registration applications.[16] Indeed, if states could immunize themselves from suit in the way Defendants urge, no individual voter could ever enforce compliance with Section 5 of the NVRA, frustrating Congress' intent to create a private right of action.[17]  Instead, as this Court stated in denying Defendants' MTD, "[t]he notice requirements of the NVRA are intended to encourage parties to pursue pre-litigation resolution of their NVRA suits, but they do not immunize a defendant from suit merely because the defendant claims to have attempted some compliance."[18] Because Defendants have

---

[12] Dkt. 82 at 13.
[13] Dkt. 82 at 13-14.
[14] 52 U.S.C. § 20506(a)(6)(A)(i).
[15] *See id.* at § 20510(b)(2).
[16] *Id.* at § 20504(a).
[17] *Id.* at § 20510.
[18] Order, Dkt. 52 at 9.

yet to correct the NVRA violations Plaintiffs complain of, Plaintiffs have statutory standing pursuant to the plain terms of the NVRA.

Defendants also claim that Plaintiffs do not have standing to assert claims on behalf of others under the NVRA because they are not organizational plaintiffs.[19] The NVRA, however, does not specifically address organizational standing whatsoever, and instead gives explicit authority for an individual to bring suit for state violations of the NVRA so long as that person has been aggrieved by the violation and has given the state the requisite pre-suit notice.[20] Accordingly, numerous individual plaintiffs have brought suit successfully under the NVRA since its enactment in 1993, achieving injunctive relief that has led to policy change. *See generally Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. 2247, 2252 (2013).

Moreover, nothing in *Scott* (or any other case) supports Defendants' wild claim that only organizational plaintiffs may seek relief that benefits others; instead, *Scott* merely affirmed the well-known principle that an organization has standing to sue on its own behalf where it satisfies statutory and Constitutional criteria. 771 F.3d 837-840. Additionally, Defendants attempt to confuse the issue at hand by alleging Plaintiffs do not have standing to bring suit on behalf of others because they lack standing themselves. This is wrong—as demonstrated above, Plaintiffs have standing to assert their own claims under the NVRA and nothing in the NVRA or *Scott* prevents Plaintiffs from requesting injunctive relief that would benefit millions of other Texans. As noted previously, because Plaintiffs were each aggrieved by Defendants' continued violations of Section 5 of the NVRA and provided the proper pre-suit notice, Plaintiffs have standing.

---

[19] Dkt. 80 at 14-15.
[20] 52 U.S.C. 20510(b)(2).

### B. Plaintiffs have Article III standing.

Both parties and this Court agree that Article III standing requires three elements: (1) an injury-in-fact; (2) causation; and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Defendants challenge only causation and redressability in both their MTD and their MSJ.[21] And this Court previously rejected Defendants' MTD arguments on these issues.[22]

### 1. Plaintiffs' injuries were caused by Defendants' failure to comply with the NVRA.

As they did in their MTD, Defendants again argue that Plaintiffs caused their own injuries, and that they lack Article III standing as a result. This Court has already found that "Defendants' argument that Plaintiffs are responsible for their own injury because they failed to complete the state's registration process overlooks the two-fold nature of Plaintiffs' claimed injury."[23] As the Court noted, Plaintiffs allege that the state's registration process is itself unlawful, and thus allege not only disenfranchisement, but also a violation of their statutory right to "[s]imultaneous application for voter registration and…driver's license[.]"[24]

The Court thus held that Plaintiffs' "statutory injury remains cognizable regardless of whether Plaintiffs completed the voter registration process that they challenge."[25] That is, Plaintiffs were not required to retrieve, print, complete, and mail a separate voter registration application in order to challenge the legality of Texas's failure to register them during their online driver's license transactions. It is this failure by Defendants, and not the Plaintiffs, that

---

[21] *See* Dkt. 7 at 7; Dkt. 82 at 15.
[22] Dkt. 52 at 3-7.
[23] Dkt. 52 at 4.
[24] *Id.* (citing 52 U.S.C. § 20504).
[25] Dkt. 52 at 4. Just as in their MTD, Defendants again rely only on *Westfall v. Miller* for the proposition that "injury stemming from plaintiff's own inaction severs causal link between injury and any conduct by the defendant." 77 F.3d 868, 871 (5th Cir. 1996). This is a misleading summary of this case and even so, *Westfall v. Miller* is distinguishable from the case at hand, as this Court noted in its Order Denying Defendants' MTD. Dkt. 52 at 4.

caused Plaintiffs' injuries. Defendants raise no new arguments justifying a different result. Accordingly, in the interest of brevity, Plaintiffs refer the Court back to their briefing in response to Defendants' MTD, specifically discussing why Defendants arguments once again fail.[26]

### 2. Plaintiffs' claims present a live, redressable controversy.

#### a. Plaintiffs' claims are not moot.

Plaintiffs' claims were live when they filed their Complaint,[27] and they remain so today, as the central facts have not changed. Defendants claim that this case is moot because Plaintiffs are currently registered to vote at their desired addresses, and do not intend to try to update their voter registration via online transaction with DPS.[28] Defendants' position is, frankly, completely wrong—unsupported by the NVRA, case law or common sense. In fact, the unlawful policies that caused Plaintiffs injuries are ongoing, and Defendants have indicated, in no uncertain terms, that they will not change their processes unless the Court intervenes. Because Defendants made this exact argument in their MTD, Plaintiffs incorporate fully their arguments from their Response to Defendants' MTD.[29]

#### b. The capable-of repetition exception to mootness applies.

Even if, *arguendo*, Plaintiffs' claims were somehow now moot under a standard mootness analysis, this Court has already held that the capable-of-repetition exception to mootness applies to this case.[30]  The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."

---

[26] Dkt. 9 at 6-9.
[27] Dkt. 52 at 5.
[28] Dkt. 82 at 16. Plaintiffs do intend to transact online with DPS in the future and, if the State were compelled to comply with the NVRA, would update their voter registration through future online transactions with DPS. *See* Appx. 16-17 (Ex. 2, Aff. of Jarrod Stringer); Appx. 19-20 (Ex. 3, Aff. of Benjamin Hernandez); Appx. 22-23 (Ex. 4, Aff. of John Woods).
[29] Dkt. 9 at 11-12.
[30] Dkt. 52 at 6.

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008) (rejecting mootness argument despite the fact that an election had passed).

The Supreme Court and the Fifth Circuit have held that the capable-of-repetition exception to the mootness doctrine is particularly applicable to election law cases, and have thus repeatedly allowed lawsuits to proceed even where the election has passed and petitioners were registered to vote. *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (noting that although the election at issue was completed and petitioners would be eligible to vote in the next election, the case was not moot since the capable-of-repetition exception applied); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972) (agreeing with the district court's finding that a voter's issue was not moot despite the fact that he could vote at the time of the decision because the problem to voters posed by the state's voting requirements was capable-of-repetition, but evading review); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009) (deciding not to dismiss the case as moot because "the issues properly presented, and their effects [ ], will persist as the [restrictions] are applied in future elections." (citing *Storer v. Brown,* 415 U.S. 724, 737 n.8 (1974)).

Plaintiffs satisfy both prongs of the capable-of-repetition exception. Defendants do not dispute that Plaintiffs meet the first prong; rather they claim that Plaintiffs do not satisfy the "same complaining party" standard of the second prong.[31] This argument fails for the reasons that follow.

### i. *Plaintiffs meet the "same complaining party" standard.*

With regard to Article III standing, Defendants add a single new argument: they urge this Court to strictly apply the "same complaining party" requirement of the second prong for

---

[31] Dkt. 82 at 17-19.

capable-of-repetition exception to mootness.[32] For the reasons set out below, Defendants' argument here is misplaced, and in any event, Plaintiffs satisfy even a narrow view of "same complaining party" standard as they will continue to suffer the same injury at issue in this case.

Defendants argue that Plaintiffs will not be subject to the same injuries again because they each testified that in the future, they will not attempt to update their voter registration information during an online transaction with DPS.[33] But standing does not depend on whether Plaintiffs will attempt to do the impossible—update their voter registration through the DPS's online driver's license update and renewal process—when they know it will not work. The real question is whether Plaintiffs will continue to suffer the same injury at issue in this case. As explained below, they most assuredly will.

Defendants' assertions on this point are misleading—intentionally so. It is due to lack of opportunity, of course, rather than lack of desire, that Plaintiffs will not attempt to update their voter registration in this way. Knowing now that the State failed to update their voter registration information in connection with their NVRA-covered online driver's license transactions, Plaintiffs will not fruitlessly attempt to update their voter registration through DPS's online driver's license change-of-address and renewal system in the future, *unless and until* that system is brought into compliance with the NVRA.[34] Importantly, Plaintiffs *do* intend to continue using Texas's online system for driver's license change-of-address and renewals[35] and therefore will suffer future violations of their statutory right to a "[s]imultaneous application for voter

---

[32] Dkt. 82 at 18.

[33] Dkt. 82 at 17-18.

[34] *See* Appx. 16-17 (Ex. 2, Aff. of Jarrod Stringer); Appx. 19-20 (Ex. 3, Aff. of Benjamin Hernandez); Appx. 22-23 (Ex. 4, Aff. of John Woods).

[35] *See* Appx. 16-17 (Ex. 2, Aff. of Jarrod Stringer); Appx. 19-20 (Ex. 3, Aff. of Benjamin Hernandez); Appx. 22-23 (Ex. 4, Aff. of John Woods).

registration and. . . driver's license."[36] Thus, Texas's enduring failure to comply with Section 5 of the NVRA, by refusing to allow online DPS transactions to serve as voter registration applications, will continue to harm each Plaintiff until the State is forced to comply.

> ii. **The Court should construe the "same complaining party" requirement liberally.**

If there were any question—and there is not—that Plaintiffs themselves might not be injured by Defendants' violations of the NVRA, Plaintiffs still meet the "same complaining party" prong of the capable-of-repetition exception to mootness because other Texans will suffer from Defendants' continued violations. As discussed more fully below, the Supreme Court has relaxed the "same complaining party" requirement in election law cases, many times finding the prong is satisfied even where the plaintiffs do not assert that they will suffer future injury.

Defendants point to *Smith v. Winter*, 782 F.2d 508, 510 (5th Cir. 1986), to argue that the Fifth Circuit has construed the "same complaining party" requirement narrowly, and to insist that this Court should do the same by reviewing only whether the individual Plaintiffs will continue to suffer the injury complained of here.[37] *Winter* is, however, both distinguishable from the present case and outdated—subsequent case law construes the "same complaining party" requirement more liberally.

*Winter* was brought by elected officials subjected to a recall election, which they won before the court came to a decision. The Fifth Circuit held that the case was moot because the Plaintiffs did not satisfy either prong of the capable-of-repetition exception, finding "there is no

---

[36] 52 U.S.C. § 20504, Dkt. 52 at 4.

[37] Dkt. 52 at 18. Defendants assert that the Court should rely on *Winter* because, as the earliest cited Fifth Circuit case, it controls. The Fifth Circuit's "earliest opinion" rule directs that "where two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent in this Circuit, absent an intervening holding to the contrary by the Supreme Court or this court en banc." *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425, 425 n.8 (5th Cir. 2006) (emphasis added). As is evident from the discussion herein, Defendants' reliance on this rule is misplaced.

allegation or showing otherwise that appellants will be subjected to another recall petition." 782 F.2d at 510. The specific and rare occurrence of a recall election cannot be compared with the voter registration processes at DPS, which are ongoing and affect up to 1.4 million Texans annually.[38] Plaintiffs, along with millions of other Texans, will certainly need to renew their driver's licenses or change their addresses (and therefore their voter registration) at some future time, and millions of those same individuals, including Plaintiffs, will transact with DPS online.[39]

As Defendants acknowledge, the Fifth Circuit has in fact *declined* to find a claim moot where a Plaintiff "would be governed by the same flawed law in the next election." *Kucinich* , 563 F.3d at 164. In *Kucinich*, a former candidate for President challenged the Democratic Party's requirement that prospective candidates commit to supporting the Democratic Party's eventual nominee. *Id.* at 163. Although the election had already passed, and the Plaintiff did not state any plan to run again, the Fifth Circuit applied Supreme Court precedent and declined to hold the case moot when "the issues properly presented, and their effects [ ], will persist as the [restrictions] are applied in future elections." *Id.* at 164-65 (quoting *Storer* 415 U.S. at 737 n.8). The Fifth Circuit recently affirmed this approach in *Wilson v. Birnberg*, noting:

> We concluded in *Kucinich* that in election-law cases, the Supreme Court has not always required that there be a likelihood that the same complaining party will be subject to the challenged action later. On some occasions, the Court has dispensed with the same-party requirement and focused instead upon the great likelihood that the issue will recur between the defendant and other members of the public at large. We agree with a Sixth Circuit judge that the Supreme Court, this Court, and several of this Court's sister circuits have relaxed the same party requirement in the election law context.

---

[38] *See* Appx. 25 (Ex. 5, DPS Transactions Summary Chart, Produced as Ex. 3-Y to Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson showing 1,448,941 customers transacted with DPS online in 2016); Appx. 31 (Ex. 6, Excerpts from Gipson 30(b)(6) Dep., 140:12-14, 141:8-12).
[39] *Id.*; Appx. 16-17 (Ex. 2, Aff. of Jarrod Stringer); Appx. 19-20 (Ex. 3, Aff. of Benjamin Hernandez); Appx. 22-23 (Ex. 4, Aff. of John Woods).

667 F.3d 591, 596 (2012) (internal quotations and citations omitted).

The injury at issue here will certainly recur, not only between Plaintiffs and Defendants, but also between Defendants and millions of similarly situated Texans—a point this Court has already recognized.[40] Just between September 2013 and February 2015, more than 1,800 Texans formally complained about the issues addressed in this case,[41] and the State admits that almost 1.5 million people are affected annually.[42] Ultimately, this Court has already found Plaintiffs' controversy to be one "which is capable of repetition, yet evading review,"[43] and it should reassert that finding.

### C.  There is no state-law loophole in the NVRA.

In their MSJ, Defendants claim that the NVRA incorporates conflicting Texas law by requiring that NVRA-covered transactions "also comply with applicable state law[,]" including Texas's requirement that voter registration applications be signed.[44] This Court has already rejected this precise argument, holding that Defendants' "circular and self-defeating reading of the NVRA is contrary to the statutory text, which imposes the 'in accordance with state law' requirement not upon *voter registration transactions*, but upon the *driver's license transactions* with which they must be simultaneous."[45]  Here, because it is undisputed that a customer who renews his driver's license or changes his address during an online transaction with DPS has done so "in accordance with state law"—which does not require that the customer provide a new signature during that transaction—the NVRA requires that Defendants accept voter registration

---

[40] Dkt. 52 at 6.

[41] Answer, Dkt. 57 at ¶ 9.

[42] Appx. 25 (Ex. 5, DPS Transactions Summary Chart, Produced as Ex. 3-Y to Gipson 30(b)(6) Dep.)

[43] Dkt. 52 at 6.

[44] Dkt. 82 at 19-20. In their MSJ, Defendants cite Betsy Schonhoff's testimony to support their legal arguments regarding the NVRA's operation when applied alongside conflicting state law. See Dkt. 82. However, these legal conclusions are squarely and more appropriately within the purview of this Court to decide.

[45] Dkt. 52 at 15 (citing 52 U.S.C. §§ 20504(a)(1), (d)) (emphasis added).

applications and updates to voter registration files simultaneously with these online transactions.[46]

Defendants' claim that the Elections Clause gives Texas the prerogative to impose voter registration requirements for NVRA-covered transactions that conflict with those set out in the NVRA itself is, likewise, simply wrong. Instead, "the power the Elections Clause confers is none other than the power to pre-empt[,]"*Inter Tribal Council*, 133 S.Ct. at 2257, and the NVRA does just that, pre-empting any state voter registration laws that are inconstant with its mandates. *Id.* ("When Congress legislates with respect to the 'Times, Places and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States.") (emphasis in original).[47] Since the NVRA requires states to provide voter registration applications simultaneous with and as part of driver's license applications, any Texas law or rule requiring that customers transacting with DPS online complete a second, separate transaction with SOS in order to register to vote or update their voter registration information is inconsistent with—and therefore pre-empted by—the NVRA.[48]

In fact, anticipating this exact argument from states, Congress considered procedures like Texas's and deemed them inadequate:

> It would not be sufficient under the terms of this legislation for a State motor vehicles office merely to make a voter registration application available upon request to a license applicant . . . Likewise, it would not be sufficient to provide a voter registration application separate from the license application.[49]

---

[46] Tex. Transp. Code §§ 521.054 (requiring that license holders notify DPS of a new address and apply for a duplicate license within 30 days), 521.146(c) (allowing applicants for duplicate licenses to apply "over the Internet"), 521.274(a) (allowing license holders to renew their driver's licenses "over the Internet"); Appx. 32 (Ex. 6, Gipson 30(b)(6) Dep. 203:17-18 ("for the online process, we are not collecting a new signature as part of that process.")); *see also* Dkt. 52 at 20.

[47] S*ee also* Dkt. 52 at 14; Dkt. 77 at 2-3.

[48] 52 U.S.C. § 20504, Dkt. 52 at 11, 14.

[49] S. Rep. 103-6 at 6 (1993).

Because this is precisely what Defendants claim they must do in order to comply with their reading of §§ 13.002 and 15.021 of the Texas Election Code for online driver's license transactions,[50] those laws must be deemed preempted by the NVRA.

Defendants' attempt to reconcile their signature requirement with the NVRA is likewise unavailing. As set out in Plaintiffs' MSJ and in this Court's Order, the NVRA mandates that any change-of-address transaction sufficient under state law to notify the state of a change of address for driver's license purposes should also notify the state of the change for voter registration purposes, unless the customer says otherwise.[51] Since neither the NVRA nor Texas law requires that these online driver's license change-of-address notifications include a signature, Defendants' insistence upon one is a plain violation of the NVRA.

Furthermore, every customer renewing his driver's license online (or changing his address online, for that matter) has already provided his electronic signature—the signature used by Defendants and county registrars for voter registration purposes—to DPS.[52] To the extent

---

[50] Dkt. 82 at 21.

[51] Contrary to Defendants' claims, Plaintiffs would not have states treat all driver's license change-of-address transactions as updates for voter registration purposes. Instead, where a customer "states on the form that the change of address is not for voter registration purposes," his voter registration should not be updated with his new address. 52 U.S.C. § 20504(d); Dkt. 77 at 17. Previously, the response to the prompt "I want to register to vote" on DPS's online driver's license forms defaulted to "no." Dkt. 77 at n. 26. Now, however, DPS does not even allow customers to indicate that they do or do not wish to register to vote during an online driver's license transaction. *See* Dkt. 77-1 at Appx. 143 (Ex. 20, Driver's License Renewal and Change-of-Address screen shots).

[52] Indeed, a customer "who does not have a digital image (e.g. photograph or signature) on file with the department" is not even eligible to renew his driver's license online. 37 Tex. Admin. Code 15.59(e)(7). To support their claim that online DPS customers must fill out and sign a physical voter registration form, Defendants point out that, under state law, a voter registration application must be in writing and signed by the applicant. Dkt. 82 at 8-10. This argument, however, ignores the fact that DPS customers do not, in fact, actually sign a voter registration form. Rather, as the process currently works, relevant data points (including the customer's electronic signature) are pulled from the DPS database, sent to the SOS's database, and used to populate a voter registration form the DPS customer never even sees, fills out, or signs. *See* Dkt. 77-1, Appx. 98 (Ex. 13, SOS's Suppl. Resps. to Jarrod Stringer's First RFAs, No. 13); Dkt. 77-1,

Defendants contend the NVRA would require them to collect a second signature during an online driver's license renewal transaction, they can hardly claim that because they make it impossible for customers to provide such a second signature, the transactions escape the NVRA's clear mandate.[53]  Instead, because they offer NVRA-covered renewal and change-of-address transactions online, Defendants must conform them to the NVRA's requirement that they simultaneously serve as applications for or updates to voter registration.

### D.  Defendants violate the Equal Protection Clause as a matter of law.

#### 1.  *The* Anderson-Burdick *test controls.*

In their MSJ, Defendants continue to misunderstand how the Equal Protection Clause applies in cases involving the right to vote. As they did in their MTD, Defendants argue that "to establish an equal protection claim, a plaintiff must establish that a similarly-situated comparator was treated differently."[54] Defendants fail to cite any Equal Protection Clause cases that involve state burdens on the right to vote to support their argument.[55]

As set out in Plaintiffs' MSJ, courts use the standard established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992) when assessing an

---

Appx. 43 (Ex. 6, Ingram 30(b)(6) Dep. 173:9-10); Dkt. 77-1, Appx. 110 (Ex. 14, Excerpt from Secretary of State's 32nd Annual Election Law Seminar, Voter Registration 102 presentation, P003060, Voter Registration Presentation, slide 14, P003982 at P003995) (produced to Plaintiffs as Bates number D_00008318-8354, which Defendants marked as "confidential" and so Plaintiffs' did not attach to their MSJ).

[53] Dkt. 52 at 15-16.

[54] Dkt. 82 at 24. Defendants also claim that "the term 'similarly-situated' is a 'stringent standard' that is defined narrowly and requires the comparator to be treated more favorably in 'nearly identical' circumstances." *Id.* The cases Defendants rely on to define the term "similarly-situated" are not Equal Protection cases, but employment discrimination cases involving Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1981. Dkt. 82 at 24 (citing *Hockman v. Westward Comm., LLC*, 282 F. Supp. 2d 512, 527–28 (E.D. Tex. 2003); *Wheeler v. BL Dev. Corp.,* 415 F.3d 399, 405 (5th Cir. 2005)). Additionally, "nearly identical" is not used to define the term "similarly-situated." Dkt. 82 at 24; *Wheeler v. BL Dev. Corp.,* 415 F.3d 399, 405 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) ("To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently.")).

[55] Dkt. 82 at 24.

Equal Protection Clause challenge to a state burden on the right to vote. *Crawford v. Marion Cty. Election*, 553 U.S. 181, 190-191 (2008). Under the *Anderson-Burdick* standard, when a state restriction burdens the right to vote, the state must identify relevant and legitimate state interests sufficiently weighty to justify the burden. *Crawford*, 553 U.S. at 190; *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). Courts apply the *Anderson-Burdick* standard even to nondiscriminatory restrictions by which a state burdens not only a plaintiff's right to vote, but also the right to vote of all other voters. *Burdick*, 504 U.S. at 434 (applying *Anderson*'s balancing approach to nondiscriminatory state restriction); *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 633 (6th Cir. 2016) (applying the *Anderson-Burdick* standard to nondiscriminatory state restriction, and holding that the state restriction violated the Equal Protection Clause) (*cert. denied*, 2017 WL 881266 (U.S. June 19, 2017)).

### 2. The **Anderson-Burdick** *test mandates judgment in Plaintiffs' favor on their Equal Protection claims.*

As explained in Plaintiffs' MSJ, there is no dispute that Texas treats some driver's license applications as applications to register to vote, and also does not treat other driver's license applications (online) as applications to register to vote.[56] Texas burdens customers who transact with DPS online with a requirement that they retrieve, complete, print, and mail an entirely separate voter registration form in order to register or update their voter registration information.[57] As explained in detail in Plaintiffs' MSJ, Texas's burden on those who transact with DPS online and wish to register to vote lacks a rational reason—much less a sufficiently weighty justification. It thus violates the Equal Protection Clause because the burden is arbitrary and unreasonable.[58]

### CONCLUSION

---

[56] Dkt. 77 at 20.
[57] *Id*.
[58] Dkt. 77 at 19-23.

Contrary to Defendants' arguments, there is no state-law exception to the NVRA's clear and unambiguous mandates, and Equal Protection Clause claims involving the right to vote require *Anderson-Burdick* analysis. Because Plaintiffs have statutory and Article III standing, because it is undisputed that online driver's license transactions do not simultaneously serve as applications for or updates to voter registration in Texas, and because in their own MSJ, Plaintiffs demonstrate Defendants' violations of the NVRA and the Equal Protection clause, this Court should deny Defendants' MSJ and grant Plaintiffs' MSJ.

Dated: July 28, 2017.                              Respectfully submitted,

                                                   By: /s/ Cassandra Champion

                                                   Mimi M.D. Marziani
                                                   Texas Bar No. 24091906
                                                   mimi@texascivilrightsproject.org
                                                   Rebecca Harrison Stevens
                                                   Texas Bar No. 24065381
                                                   beth@texascivilrightsproject.org
                                                   Hani Mirza
                                                   Texas Bar No. 24083512
                                                   hani@texascivilrightsproject.org
                                                   Cassandra Champion
                                                   Texas Bar No. 24082799
                                                   champion@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

Peter A. Kraus (*pro hac vice*)
Texas Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross *(pro hac vice)*
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of July, 2017, a true and correct copy of the foregoing *Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment* was served upon counsel of record via the Court's ECF system.

/s/ Cassandra Champion