UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, in his official capacity as the Texas Secretary of State, and STEVEN C. McCRAW, in his official capacity as the Director of the Texas Department of Public Safety, | § § § § § | |
| | § | |
| *Defendants* | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In their Response to Plaintiffs' Motion for Summary Judgment ("Response") Defendants assert, remarkably, that this case concerns their violation of *Texas election laws*—which they confusingly also claim "Plaintiffs do not challenge"—during Defendants' administration of the NVRA.[1] In the pages that follow, it's unclear whether Defendants are genuinely confused about the nature of this case or actively trying to mislead the Court. In any event, as this Court has already recognized, this case concerns Texas's *violations of the NVRA*, not the state's election laws, and to the extent that Texas's election laws conflict with the NVRA, state law must yield to controlling federal authority.[2] For the reasons included in Plaintiffs' Motion for Summary Judgment ("MSJ"), in Plaintiffs' Response in Opposition to Defendants' MSJ, and herein, the Court should grant Plaintiffs' MSJ and require Defendants to comply with the NVRA without

---

[1] Dkt. 86 at 1-2.
[2] Dkt. 85 at 14.

1

further delay.[3]

## ARGUMENT

I.    **All three Plaintiffs have validly invoked the NVRA's abrogation of states' sovereign immunity.**

Following an extraneous discussion of *Ex parte Young*, Defendants acknowledge that it does not apply here because the plain language of the NVRA contains a private cause of action.[4] Based on that plain language of the NVRA, the Fifth Circuit and other federal courts have confirmed that Congress intended for individuals be able to sue under the NVRA. *ACORN v. Fowler*, 178 F.3d 350, 364 (5th Cir. 1999). Here, Plaintiffs satisfied the pre-suit notice requirements of the NVRA and Defendants subsquently failed to cure the violation,[5] thereby abrogating immunity under the statutory scheme prescribed by Congress.[6]

Defendants (once again) also argue that they are immune from suit by virtue of belatedly attempting to assist Plaintiffs in registering to vote after originally failing to do so with their NVRA-covered online driver's license transactions. But, Defendants (once again) overlook the continuing violation of Plaintiffs' statutory right to "[s]imultaneous application for voter

---

[3] Plaintiffs fully incorporate herein their Response in Opposition to Defendants' MSJ, Dkt. 85.

[4] Dkt. 86 at 5-6. (1). At 52 U.S.C. § 20510(b), the NVRA states: A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved. . . If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

[5] Dkt. 77 at 4. Defendants again argue that Dr. Woods does not have standing because the first election to occur after Defendants failed to update his voter registration information after an NVRA-covered transaction, was a state, rather than federal, election. Plaintiffs fully briefed this argument, explaining in detail why it is incorrect, in their Response. Dkt. 85 at 2-4.

[6] Plaintiffs also satisfy the *Ex parte Young* doctrine, as they have alleged "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1125 (D. Kan.) (quoting *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)), <u>aff'd</u>, No. 16-3147, 2016 WL 5791539 (10th Cir. Sept. 30, 2016), and <u>aff'd</u>, 840 F.3d 710 (10th Cir. 2016).

registration and … driver's license" that this Court identified in its Order Denying Defendants' Motion to Dismiss.[7] Because Defendants have still not corrected this violation of the NVRA, Plaintiffs have statutory standing to pursue declaratory and injunctive relief under the plain terms of the statute.

**II.**     **Plaintiffs have Article III standing to challenge Defendants' failures to provide simultaneous voter registration application for online change-of-address *and* renewals.**

As they did in their Motion to Dismiss ("MTD"), Defendants argue this Court should only grant relief with respect to online driver's license change-of-address transactions, not renewals. But, as the Court has recognized, Defendants provide one online system for both changes of address and renewals, and Plaintiffs would not have received a different result had they renewed their driver's license at the same time or instead of changing their address.[8] Accordingly, this Court can and should grant Plaintiffs' MSJ with respect to both online driver's license change-of-address and renewal transactions.

With respect to Defendants' other standing arguments, to avoid duplicative briefing, Plaintiffs fully incorporate their Response in Opposition to Defendants' MSJ wherein Plaintiffs demonstrate that they each possess Article III standing.[9]

**III.**     **As the record demonstrates, Defendants' failure to treat online driver's license transactions as voter registration applications violates the NVRA.[10]**

**A. Plaintiffs' online driver's license change-of-address forms were submitted to DPS in accordance with the relevant state laws, and they did not state that their driver's license change-of-address forms were not for voter registration purposes.**

---

[7] Dkt. 52 at 12.
[8] Dkt. 52 at 7.
[9] Dkt. 85 at 7-13.
[10] Defendants' remaining NVRA arguments are wrong for the reasons provided in Plaintiffs' prior briefing in response to the State's MTD, in Plaintiffs' MSJ, and in Plaintiffs' Response in Opposition to Defendants' MSJ. Dkts. 9, 77, and 85, and in the interest of brevity, Plaintiffs do not further address them here.

In their Response, Defendants persist in their "circular and self-defeating reading of the NVRA[,]"[11] once more claiming that the NVRA's change-of-address provision applies only where the driver's license change-of-address form is submitted in accordance with their reading of Texas's *voter registration* laws, as opposed to the laws governing *driver's license* change-of-address transactions.[12] For the reasons articulated by the Court in its Order denying Defendants' MTD[13] and argued by Plaintiffs in their Response in Opposition to Defendants' MSJ,[14] Defendants are wrong.

The Fifth Circuit's holding in *Scott v. Schedler* does not compel a different result. In *Scott*, the court construed 52 U.S.C. § 20506(a)(6)(A)—which requires that public assistance agencies provide voter registration forms to applicants for public assistance unless they decline to register to vote in writing—with § 20506(a)(6)(B)(iii)—which explicitly mandates that applicants be advised that failure to check "yes" or "no" in response to the application's voter registration question constitutes a declination to register to vote. 771 F.3d 831, 840 (5th Cir. 2014). In this context, the court held that Louisiana did not violate the NVRA in failing to provide voter registration forms to public assistance applicants who failed to check "yes" or "no" as provided by § 20506(a)(6)(B)(iii), because failing to check either box constitutes a declination to register to vote under § 20506(a)(6)(A). *Id.*

In the *Scott* case, Louisiana's form tracked with the NVRA-required language for public assistance forms and gave applicants a clear choice between registering to vote and declining to do so. Here, however, Defendants refuse to treat online changes of address as notifications of change of address for voter registration no matter whether the applicant selects "yes"—as each

---

[11] Dkt. 52 at 15.
[12] Dkt. 86 at 14.
[13] Dkt. 52 at 15.
[14] Dkt. 85 at 13-16.

Plaintiff here did—or "no" to the prompt "I want to register to vote." That is, in contrast to the choice provided to applicants in *Scott,* here under *no* circumstance does a change-of-address form submitted online to DPS serve as a notification of an address change for voter registration. This is a plain violation of the NVRA, and Plaintiffs are therefore entitled to judgment as a matter of law on Count III of their Complaint.

   **B.  In order to register to vote, Texas requires DPS customers to provide SOS with information duplicative of the information they provided to DPS during their online driver's license transactions.**

   As set out fully in Plaintiffs' MSJ, SOS requires that voter registration applicants provide at least six (and sometimes nine) of the same data points driver's license customers provide to DPS during their online change-of-address and combined change-of-address and renewal applications, and require two duplicative data points for online renewals.[15] Defendants claim, however, that the state may require this duplicative information if it is the minimum amount necessary under 52 U.S.C. § 20504(c)(2)(B).[16] This argument conflates the NVRA's prohibition on requiring duplicative information with its mandate that states only collect the minimum amount of information necessary. Indeed, the plain language of the pertinent section of the NVRA states that "[t]he voter registration application portion of the application for a State motor vehicle driver's license (A) may not require any information that duplicates information required in the driver's license portion of the form (other than a second signature or other information necessary under subparagraph (C))."[17] The subparagraph referenced by Defendants is *subparagraph B,* which is not an exception to the prohibition against requiring duplicative information.[18] Texas's requirement that online DPS customers provide duplicative information

---

[15] Dkt. 77 at 9-10.
[16] Dkt. 86 at 16-17.
[17] 52 U.S.C. 20504(c)(2)(A).
[18] 52 U.S.C. § 20504(c)(2)(B).

for voter registration after submitting the exact same information during an online transaction is a clear violation of section 20504(c)(2)(A) of the NVRA.

**C. Defendants already import customer data points and electronic signatures for voter registration applications originating from in-person and mail-in change-of-address driver's license transactions and should do the same for online transactions.**

Defendants again attempt to confuse the issue by stating that they are not required to transmit voter registration information submitted during online driver's license transactions because Texas law requires that voter registration forms be in writing and signed by the applicant.[19] This argument blatantly and misleadingly ignores the fact that in-person and mail-in change-of-address DPS customers do not actually fill out or sign what the State uses as their voter registration form. Rather, as the process currently works, relevant data points (including the customer's electronic signature) are pulled from the DPS database, sent to the SOS's database, and used to populate a voter registration form the DPS customer never sees, fills out, or signs.[20] This is exactly the system that, pursuant to the NVRA, Defendants could and should utilize for online driver's license transactions.

**VI.    Defendants violate the Equal Protection Clause as to DPS customers who choose to engage in driver's license transactions online.**

In their Response to Plaintiffs' MSJ, Defendants fail again to consider, analyze, or even acknowledge the *Anderson-Burdick* test, despite the Supreme Court, the Fifth Circuit, and this Court recognizing its applicability to Equal Protection claims involving the right to vote.[21]

---

[19] Dkt. 86 at 17-18.
[20] *See* Dkt. 77-1, Appx. 98 (Ex. 13, SOS's Suppl. Resps. to Jarrod Stringer's First RFAs, No. 13); Dkt. 77-1, Appx. 43 (Ex. 6, Ingram 30(b)(6) Dep. 173:9-10); Dkt. 77-1, Appx. 110 (Ex. 14, Excerpt from Secretary of State's 32nd Annual Election Law Seminar, Voter Registration 102 presentation, P003060, Voter Registration Presentation, slide 14, P003982 at P003995) (produced to Plaintiffs as Bates number D_00008318-8354, which Defendants marked as "confidential" and so Plaintiffs did not attach to their MSJ).
[21] Dkt. 86, at 19-20; Dkt. 52, at 20-21.

*Crawford v. Marion Cty. Election*, 553 U.S. 181, 190-191 (2008); *Kucinich v. Texas Democratic Party,* 563 F.3d 161, 168 n.6 (5th Cir. 2009). Ignoring the proper test, Defendants rely instead upon inapposite Equal Protection cases to claim that "[u]nless a plaintiff identifies a comparator who is similarly situated in all relevant respects, but was treated differently, he cannot recover under the Equal Protection Clause."[22] As explained in detail in Plaintiff's Response to Defendants' MSJ, however, because the *Anderson-Burdick* test controls, Plaintiffs are not required to identify a "comparator who is similarly situated . . . but was treated differently."[23] Instead, *Defendants* must identify a legitimate interest sufficiently weighty to justify the burden they impose on Texans' right to vote. *See Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 633 (6th Cir. 2016) (applying the *Anderson-Burdick* standard to nondiscriminatory restriction, and holding that the restriction violated the Equal Protection Clause, in part, because Ohio failed to explain "why its interest in preventing voter fraud by mail makes it 'necessary to burden' the plaintiffs' voting rights"), *cert. denied*, 2017 WL 881266 (U.S. June 19, 2017). Because they have repeatedly failed to do so,[24] Plaintiffs are entitled to judgment as a matter of law on their Equal Protection claims.

**V.     The Court should impose the remedies requested in Plaintiffs' MSJ.**

Defendants argue that Plaintiffs request an overly-broad "catch-all" injunction. Defendants, again, are wrong. In their MSJ, as in their Complaint, Plaintiffs ask the Court to declare that Defendants violate the NVRA "by failing to provide for simultaneous voter

---

[22] Dkt. 86, at 19.

[23] Dkt. 85, at 16-17; Dkt. 86, at 19.

[24] Defendants imply that the handwritten signature requirement is necessary because it is required by Texas law and allows "counties to fulfill their obligation to maintain copies of voter registration applications of all active voters." Dkt. 86, at 3, 20. Defendants' argument that Texas law requires a handwritten signature is fundamentally flawed, since they do not even use a handwritten signature for other DPS based voter registration applicants. *See supra* Part III. Thus, this basis is insufficiently weighty to justify the burden imposed.

registration with online driver's license renewal. . . [and] online change-of-address forms" and to enjoin them from "implementing practices and procedures that *likewise* violate the NVRA[.]"[25] In other words, Plaintiffs request that the Court enter an injunction that would specifically prohibit Defendants from violating the sections of the NVRA *at issue in this case*. Defendants' argument—that a yet-to-be-ordered injunction would be overbroad and vague—makes little sense. Of course, Plaintiffs request the Court order an injunction that is sufficiently specific to comply with Fed. R. Civ. Pro 65.

Defendants also claim that because they will comply with any injunction ordered by this Court, reporting and monitoring is unwarranted until such time that they demonstrate refusal to comply. This is a bold statement, given the State's refusal to comply with the NVRA for years, despite actual knowledge of thousands of voters' complaints, and its bad faith conduct in this litigation, resulting in sanctions from this Court. Moreover, monitoring is a common mechanism to ensure NVRA compliance. Indeed, as discussed in *United States v. Louisiana*, a case cited favorably by Defendants,

> Where a state or its subordinate agencies openly and plainly refuse to comply with the NVRA, such monitoring may be proper. Indeed, other plaintiffs have requested it, and other courts have recognized this particular's remedy special value to securing the NVRA's aims. Historically, when NVRA violations have been suitably proven, as they have been here, courts have not hesitated to compel states to submit plans for full and prompt compliance.[26]

So too here, Defendants have openly and stubbornly refused to treat *any* online driver's license transactions as voter registration applications. Thus, if the Court determines, as it has before and

---

[25] Complaint, Dkt. 1 at 17-18 and Dkt. 77 at 25 (emphasis added).

[26] 196 F. Supp. 3d 612, 676 (M.D. La. July 26, 2016) (internal quotations and citations omitted). The court in *Louisiana* declined to order monitoring not, as Defendants contend, because it was inappropriate, but because the extent of the NVRA violations was not ascertainable without a trial. *Id.* at 676-677. Here, for the reasons articulated in Plaintiffs' MSJ and their briefing in response to Defendants' MSJ, the extent of Defendants' NVRA violations is clear on the record before the Court, and trial is not necessary.

as it should again, that Texas's policies violate the NVRA, an injunction combined with monitoring and reporting requirements are warranted and necessary.

## CONCLUSION

Plaintiffs have demonstrated in their MSJ, in their Response in Opposition to Defendants' MSJ, and herein that Defendants violated the NVRA and continue to do so with respect to online driver's license transactions in Texas. The Court should grant Plaintiffs' MSJ and deny Defendants' MSJ, declaring Defendants in violation of the NVRA's mandates with respect to these transactions, enjoin them from continued violations of the relevant NVRA provisions at issue here, and require them to report to the Court under an appropriate monitoring plan to ensure compliance with the injunction.

Dated: August 4, 2017.                                        Respectfully submitted,

                                                             By: /s/ Rebecca Harrison Stevens

                                                             Mimi M.D. Marziani
                                                             Texas Bar No. 24091906
                                                             mimi@texascivilrightsproject.org
                                                             Rebecca Harrison Stevens
                                                             Texas Bar No. 24065381
                                                             beth@texascivilrightsproject.org
                                                             Hani Mirza
                                                             Texas Bar No. 24083512
                                                             hani@texascivilrightsproject.org
                                                             Cassandra Champion
                                                             Texas Bar No. 24082799
                                                             champion@texascivilrightsproject.org

                                                             TEXAS CIVIL RIGHTS PROJECT
                                                             1405 Montopolis Drive
                                                             Austin, Texas 78741
                                                             512-474-5073 (Telephone)
                                                             512-474-0726 (Facsimile)

                                                             Peter A. Kraus (*pro hac vice*)
                                                             Texas Bar No. 11712980
                                                             kraus@waterskraus.com

Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross *(pro hac vice)*
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2017, a true and correct copy of the foregoing *Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment* was served upon counsel of record via the Court's ECF system.

*/s/* Rebecca Harrison Stevens

10