IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, *et al.*, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | No. 5:16-CV-00257 |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL CAPACITY | § | |
| AS THE TEXAS SECRETARY OF STATE AND | § | |
| STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, | § | |
|     *Defendants.* | § | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT[1]

---

Plaintiffs cannot meet their summary judgment burden under either the NVRA or the Equal Protection Clause. Rather, as set forth in Defendants' Motion for Summary Judgment, Doc. 82, all of Plaintiffs' claims fail as a matter of law. The Court should deny Plaintiffs' Motion for Summary Judgment, Doc. 77, and enter summary judgment in Defendants' favor on all claims.

### RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS[2]

This case arises from Plaintiffs' insistence that Defendants violate Texas election laws (which Plaintiffs do not challenge) in their administration of the federal National Voter Registration Act (which can be applied harmoniously therewith). Understanding these provisions of Texas law is essential to properly assessing this case, yet they are absent from the statement of facts in Plaintiffs' summary judgment motion. Defendants, therefore, begin by explaining those provisions.

---

[1] Defendants file this 22 page Response subject to Doc. 83, their July 21, 2017 Motion for Leave to Exceed Page Limit.
[2] Defendants note that the "Preliminary Statement" and "Background" sections of Plaintiffs' summary judgment motion are rife with unsupported assertions. Doc. 77 at 1-4. To the extent they cite authority or evidence, these sections are frequently incomplete and misleading. For these reasons, the "Preliminary Statement" and "Background" portions of Plaintiffs' summary judgment motion should not be relied upon in disposing of the same. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence.").

It provides helpful context to consider that, in Texas, voter rolls are maintained by counties. *E.g.,* Tex. Elec. Code §12.001 *et seq.*. Each county voter registrar must "maintain a file containing the approved registration applications of the registered voters of the county," and "[e]ach application shall be retained on file during the time the registration is effective." *Id.* §13.101(a), (c). "A person desiring to register to vote must submit an application to the registrar of the county in which the person resides," and such "registration application must be in writing and signed by the applicant." *Id.* §13.002(a), (b). Changes to voter registration information, too, typically must be in writing and signed by the voter when he requests the change. In particular, "[i]f a voter discovers incorrect information on the voter's registration certificate or if any of the information becomes incorrect because of a change in circumstances, the voter shall *promptly submit to the registrar a written, signed notice* of the incorrect information and the corresponding correction." Tex. Elec. Code §15.021(a). The sole exception applies to a voter changing his address within a county: "[a] voter who continues to reside in the county in which the voter is registered may correct information under this section by digital transmission of the information under a program administered by the secretary of state and the Department of Information Resources." *Id.* §15.021(d).

Thus, in framing this case, it is helpful to think about *inter*-county changes to voter registration information as new applications for voter registration, in the sense that voter rolls are maintained at the county level, and each county must maintain an approved voter registration application on file for each registered voter. *E.g., id.* §13.101. And, as set forth above, Texas law requires that original applications for voter registration—as well as any requests to change that information that are not subject to a statutory exception—be made in writing and signed by the applicant in order to be valid. *Id.* §§13.002(a), (b). Plaintiffs have not argued or put on evidence that anything about these statutory requirements—or their exception—violates the Equal Protection Clause or the NVRA.

Moreover, though Defendants need not justify Texas's "in writing and signed" requirement,

2

these provisions, among other things, allow counties to fulfill their obligation to maintain copies of voter registration applications of all active voters. TEX. ELEC. CODE §13.101(a), (c); §15.021(a). The exception for changes of address within a *single* county in Election Code §15.021(d), makes sense, given this backdrop—the county in question already has received an original, signed application from the individual changing his address. *See id.* §13.002(1); *cf. id.* §15.021.[3]

To implement the NVRA, Texas law requires that DPS field offices "shall provide to each person who applies in person at the department's offices for an original or renewal of a driver's license, a personal identification card, or a duplicate or corrected license or card an opportunity to complete a voter registration application form." TEX. ELEC. CODE §20.063(a). "When the department processes a license or card for renewal by mail, the department shall deliver to the applicant by mail a voter registration application form." *Id.* §20.063(b). "A change of address that relates to a license or card and that is submitted to the department in person or by mail serves as a change of address for voter registration unless the licensee or cardholder indicates that the change is not for voter registration purposes." *Id.* §20.063(c).

In person and mail applications are completed in writing and signed, then submitted to the CSR, or by post, respectively, by the individual who wants to register or update his registration information. Ingram Depo. 99:7-99:24; Schonhoff Depo. 101:3 – 15; 102:20-21; 119:19-120:15; 123:24-124:5.[4] For applications governed by §20.063 in particular, "[i]f a person completes a voter registration application as provided by [§]20.063, the [DPS] shall input the information provided on the application into the department's electronic data system; and inform the applicant that the

---

[3] The NVRA acknowledges (in the context of list maintenance) that there is a difference between changes to voter registration information within a single jurisdiction, and changes made from one jurisdiction to another. 52 U.S.C. §20507(f) ("Change of voting address within a jurisdiction. In the case of a change of address, for voting purposes, of a registrant to another address within the same registrar's jurisdiction, the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such a change of address except as provided in subsection (d).")

[4] Deposition citations herein refer to the proof filed with Defendants' summary judgment motion, Doc. 82-1.

applicant's electronic signature provided to the department will be used for submitting the applicant's voter registration application." TEX. ELEC. CODE §20.066(a). The legislature granted SOS authority to "prescribe additional procedures as necessary to implement this section." *Id.* §20.066(c). *See also* Ingram Depo. 99:25-100:3; 97:4-98:5; Schonhoff Depo. 49:10-14.

But unlike an in person or mail driver license applicant, an online customer does not provide a physical signature—either in ink, or for electronic capture using a stylus—over the internet. Ingram Depo. 99:25-100:3; Ingram Depo. 97:4-98:5; Schonhoff Depo. 49:10-14. And Texas law does not authorize DPS to use a physical signature electronically captured on a *previous* occasion for submitting an applicant's voter registration application when an individual changes his address or renews online. *Cf.* TEX. ELEC. CODE §§20.066(a); 20.066. As a result, to comply with Texas Election Code §§13.002 and 15.021, online driver license transactions in which an applicant wants to register to vote or change voter registration information provide a voter registration application for the applicant to sign and submit. In this way, these transactions can be effected "in accordance with State law," as the NVRA requires. 52 U.S.C. §20504(d).

Plaintiffs do not contest that these are the requirements of Texas law. Rather, they contend that, in their view, it would be more expedient if Defendants ignored them. This does not provide a basis to enter summary judgment in their favor on any claim here.

## ARGUMENT AND AUTHORITY

**I.  The record shows that the Court lacks jurisdiction, and should therefore enter judgment as a matter of law in Defendants' favor.**

As a threshold matter, Plaintiffs have not demonstrated standing to assert any of their claims, as required for the Court to exercise jurisdiction. To establish standing, Plaintiffs must prove that they have validly invoked the limited waiver of immunity that Congress provided for under the NVRA, and also must satisfy the remaining elements of Article III standing. They fail in both respects.

**A.      The Court lacks jurisdiction because Plaintiffs have failed to validly invoke the NVRA's limited waiver of immunity, and they lack statutory standing.**

The Eleventh Amendment bars official capacity suits against state officials in federal court absent a valid waiver of immunity. U.S. CONST. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974). Under the narrow *Ex parte Young* exception to immunity a federal court may, consistent with the Eleventh Amendment, enjoin state officials to conform their future conduct to requirements of federal law.[5] *Pennhurst*, 465 U.S. at 102-103; *Quern v. Jordan*, 440 U.S. 332, 337 (1979). The relief that may be awarded under *Young* is limited to prospective injunctive relief from an ongoing violation of federal law. *Edelman*, 415 U.S. at 666–69, 677 (retroactive relief barred by Eleventh Amendment).[6]

"Where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe v. Fla.*, 517 U.S. 44, 74 (1996). Where Congress has created such remedial scheme, courts lack jurisdiction under *Ex parte Young* unless the statute contains an "explicit reference to the Eleventh Amendment," and "clearly indicates that Congress specifically intended to permit suits against states within the bounds of the Amendment." *Cox v. City of Dallas*, 256 F.3d 281, 309 (5th Cir. 2001) (citations omitted). The Fifth Circuit has recognized the NVRA as a statute which, "'itself, provides an exclusive remedy for violations of its own terms,'" and is therefore not subject to an exercise of jurisdiction under *Young*. *ACORN v. Fowler*, 178 F.3d 350, 367 n.11 (5th Cir. 1999) (citations omitted).

The substance of the NVRA's remedial scheme confirms this. Congress waived immunity for

---

[5] Moreover, for the reasons in Defendants' summary judgment motion, and those here, the record demonstrates that no ongoing violation of Federal law exists here. Doc. 82 at 20-24.

[6] And, although Plaintiffs do not challenge any provision of Texas law, it is worth noting that the *Ex parte Young* exception to immunity does not apply to claims against a state on the basis of state law. *Pennhurst*, 465 U.S. at 103-06

NVRA suits against state officials filed by the United States Attorney General. 52 U.S.C. §20510(a).

But it provided for private causes of action only under the following circumstances:

> [a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved. If the violation is not corrected within 90 days after receipt of a notice…the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief *with respect to the violation*.

*Id.* §20510(b)(1)-(2) (emphasis supplied).[7] Unless the requirements of notice and an opportunity to cure are satisfied, the NVRA does not waive state official immunity to lawsuits by private plaintiffs. The summary judgment record proves that Plaintiffs do not meet this standard here, because any NVRA violation by which they claim to have been aggrieved was cured within the notice period.

The Fifth Circuit's ruling in *Scott v. Schedler*, a challenge to Louisiana's implementation of an NVRA requirement applicable to public assistance agencies, is instructive in this standing context. 771 F.3d 831, 840 (5th Cir. 2014). There, the Court held that, to confer standing to bring a private cause of action, putative notice had to "provide Scheduler with 'an opportunity to attempt compliance' as to Scott 'before facing litigation." 771 F.3d at 836 (quoting *ACORN v. Miller*, 129 F.3d 833 (6th Cir. 1997)). The Court found Scott's attempted notice insufficient to allow the State the required opportunity to cure, which was "fatal to his suit." *Id.* at 836. The Court went on to note that, even if Scott had provided proper notice, the State had "attempted to provide Scott with voter registration forms," which was "'exactly'" what the "'pre-litigation notice was meant to encourage.'" *Id.* at 836 (quoting *Ga. State Conf. of NAACP v. Kemp*, 841 F.Supp.2d 1320, 1336 (N.D. Ga. 2012)).

This two-pronged test was also applied in *Georgia State Conference of NAACP v. Kemp*, where the court found that a plaintiff lacked standing because—upon receipt of notice—"Georgia ha[d] attempted to comply with" the relevant NVRA provisions "insofar as [the given plaintiff] was

---

[7] Less notice is required if the violation occurs closer to an election. 52 U.S.C. §20510(b)(2)-(3).

aggrieved[.]" 841 F. Supp. 2d 1320, 1335-36 (N.D. Ga. 2012) (citing *ACORN v. Miller*, 129 F.3d at 838). The court noted "the State's letter to [plaintiff's] counsel, which included a voter registration application [and] offer[ed] the assistance of the Secretary of State's office," and observed that "the letter and application appear to be more than an empty gesture." *Id.* Instead, these were "Georgia's attempt to comply with the NVRA with regard to [plaintiff]. The pre-litigation notice was meant to encourage exactly this sort of compliance attempt." *Id.*

The Plaintiffs here lack standing because the record shows that Defendants have cured all alleged NVRA violations insofar as Stringer, Hernandez and Woods claim to have been aggrieved. Plaintiffs contend that the Court "rejected" this argument in ruling on Defendants' Motion to Dismiss. *See* Doc. 77, at 29. But that ruling made under Rule 12(b), construing Plaintiffs' allegations as true without the benefit of a factual record. *See, e.g.,* Doc. 82 at 12 (summary judgment standard). The (sizable) record developed in discovery makes is clear that, even if Plaintiffs were injured, such injury was cured—and was cured well before the end of the notice period. Registration information for Hernandez and Stringer was already current at the time they provided their purported notice, and information for Woods was updated within 15-days of the letter sent to Defendants' counsel on his behalf.[8] Moreover, Defendants have repeatedly and in good faith offered to assist Plaintiffs in registering to vote or verifying their voter registration status, conferred with Plaintiffs' counsel about potential common-sense reforms, and even implemented some of Plaintiffs' suggestions. *E.g.,* Doc. 88 at 14 and citations to summary judgment proof therein.

This is, indeed, "exactly: what the "pre-litigation notice was meant to encourage." *Scott*, 771 U.S. at 836 (citation omitted). As explained in Defendants' summary judgment motion, "the purpose

---

[8] Hernandez's voter registration was updated on December 14, 2014. *See* Doc. 82-1, Ex. I. Stringer's voter registration was updated on May 23, 2015. *Id.* Woods' was updated December 3, 2015. *Id.* Hernandez was individually identified in a May 27, 2015 letter purporting to provide notice. *See* Doc. 1, Ex. C at pp. 2-17. Stringer and Woods were identified in later putative notice letters sent on October 23, 2015, and November 18, 2015, respectively. *Id.* at pp. 171-72; 195-96.

of the notice requirement was to 'provide states...an opportunity to attempt compliance before facing litigation.'" *Id.* at 835-36 (quoting *ACORN v. Miller*, 129 F.3d at 838) (alterations in *Scott*). Elsewise, immunity is not waived. *E.g., Cox v. City of Dallas*, 256 F.3d at 309; *ACORN v. Fowler*, 178 F.3d at 367 n.11. Here, by providing notice of registration "violations" that had already been corrected, Plaintiffs are attempting a thinly veiled end-run around Congress's notice requirement—a prerequisite to invoking the NVRA's limited waiver of immunity. Because the record establishes that any NVRA violation alleged by Hernandez, Stringer and Woods was cured within the notice period, the Plaintiffs do not have standing to seek relief, and the Court lacks jurisdiction under the NVRA's specific remedial scheme.

It is also worth emphasizing, as the Fifth Circuit did in *Scott*, that NVRA standing must be satisfied as to each plaintiff. Since Scott had not provided the required notice and opportunity to cure, he had no basis to seek relief on his own behalf. 771 F.3d at 836. "[C]onsequently, he [wa]s not entitled to seek relief for others, either." *Id.* Because a plaintiff who does not have statutory standing in his own right cannot assert a private right of action on behalf of others—and because Hernandez, Stringer and Woods all lack standing—this case should be dismissed for want of jurisdiction.

**B.     Woods also lacks standing because he failed to provide notice of an NVRA violation.**

To assert a cause of action under the NVRA, a plaintiff must prove that the alleged violation occurred in the context of a *federal* election. *Broyles v. Texas*, 618 F. Supp. 2d 661, 690 (S.D. Tex. 2009); *see also, e.g.*, 52 U.S.C. §20503(a). Woods has not even alleged—much less provided evidence—that any NVRA violation impacted his participation in a federal election. Rather, Woods only provided putative notice of alleged violations in the context of a 2015 non-federal election. *See* Doc. 1, Ex. C at pp. 171-72; Doc. 80, Ex. C. This is an independent reason that he lacks standing,[9]

---

[9] Woods' claims also must fail on the merits, as a matter of law, given the undisputed fact that his rights were not impacted in the context of any federal election. *Id.*; 52 U.S.C. §20503.

and his claims must be dismissed. *E.g.*, *Broyles*, 618 F. Supp. 2d at 690.

### C.     Plaintiffs cannot establish Article III standing.

The purpose of the standing doctrine is to "give meaning to Article III's case-or-controversy requirement." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). Standing is an essential component of subject-matter jurisdiction. *Id.* To establish Article III standing, a plaintiff must show: (1) an injury-in-fact; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision in the district court (redressability). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585–86 (5th Cir. 2006). These elements are "an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements. *Id*. If a party lacks standing to bring a claim, the court lacks subject-matter jurisdiction over that claim. *See Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Plaintiffs' case should be dismissed on summary judgment because they have established neither causation nor redressability.

### 1.     Plaintiffs' claims are not traceable to any conduct by Defendants, but are instead the result of their own behavior.

The record demonstrates that there is no causal link between the Defendants and the Plaintiffs alleged injuries, as required to establish Article III standing. That is, even assuming an injury in fact, such injury must be fairly traceable to a defendant's challenged action. *Lujan*, 504 U.S. at 560. The Fifth Circuit has held that claimed constitutional injury stemming from a plaintiff's own inaction severs the causal link between the alleged injury and any conduct of the defendant. *Westfall v. Miller*, 77 F.3d 868, 871-73 (5th Cir. 1996). So, too, here.

In *Westfall*, a prospective machine gun buyer challenged a federal requirement that machine gun transferees submit a form to the Bureau of Alcohol, Tobacco and Firearms ("ATF"). *Id.* at 869-

70. The form required a certification from a local law enforcement official, which Westfall requested from all such officials within a five-mile radius of his home, but all refused. *See id.* at 869-70. ATF informed Westfall of other officials from whom he could seek the certification, but Westfall "made no effort to obtain certifications from [those] officials[.]" *Id.* at 872. The Court concluded that Westfall lacked standing to challenge the constitutionality of the certification requirement, since Westfall's *own inaction*—making no effort to obtain the certification from other officials, despite being told specifically from whom he could request it—caused any injury he claimed to have suffered. *Id.* at 871-72. The Court also noted that the certification process may have been "cumbersome, frustrating, and inconvenient for the plaintiff," but was nonetheless required by applicable law. *Id.*

A similar analysis is appropriate here. Plaintiffs' alleged injury occurred when each changed information on his driver license online, and believed that his voter registration information would be updated. But the website each Plaintiff used required him to acknowledge "[s]electing 'Yes' **does not** register you to vote" and indicated that his voter registration information would not be updated until he submitted a written, signed request form. *E.g.*, Doc. 1-2, Ex. A at 2. No Plaintiff claims to have submitted a request to update voter registration information in writing, and signed, as Texas law requires. Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7. *See supra*, "Response to Plaintiffs' Statement of Facts" and citations therein. Thus, the cause of Plaintiffs' alleged injuries—like the cause of the injuries alleged in *Westfall*—was Plaintiffs' inaction. Their complaints about inability to vote at a location where they never took the necessary steps to register are not fairly traceable to any conduct of Defendants.

### 2. Plaintiffs' claims are moot.

In their summary judgment motion, Defendants explain why Plaintiffs' claims are moot. Doc. 82 at 16-19. Nothing in Plaintiffs' summary judgment motion changes this result. That is, Plaintiffs offer no evidence to refute Defendants' summary judgment proof, which establishes that each

Plaintiff is currently registered at his desired address, and will submit a written, signed request next time he wishes to make a change to his voter registration information. *See id.* and summary judgment proof cited therein. Thus, each Plaintiff lacks the personal interest in this suit required to establish a justiciable case or controversy. *E.g., Dep't of Tex., Veterans of Foreign Wars v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (For an injury to be redressable, a plaintiff must show that a favorable decision would likely remedy it). Since no order from the Court would remedy any injury Plaintiffs claim to have suffered, the Court should enter summary judgment dismissing this case.

### D. If Plaintiffs have standing, it extends only to claims related to online changes of address.

Plaintiffs have only presented evidence that they sought to change their addresses online, not that they sought to *renew* their driver licenses online. Doc. 77 at 10-12. Yet, they seek declaratory and injunctive relief in connection with online driver license renewals, in addition to online changes of address. Doc. 77 at 25 (request for relief). It is a bedrock principle of standing that alleged injury must be particularized, and "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (collecting cases) (citations omitted).

The NVRA context is no different. Indeed, the statutory authorization for private rights of action under 52 U.S.C. §20510(b)(1) limits relief to "[a] person *who is aggrieved* by a violation of this chapter[.]" And such persons—assuming they provide notice and the violation is not corrected— "may bring a civil action in an appropriate district court for declaratory or injunctive relief," but only "with respect to the violation" by which that individual claims to have been aggrieved. 52 U.S.C. §20510(b)(2), (1). *See also, e.g., Scott*, 771 F.3d at 835 n.8 ("Scott's counsel conceded at oral argument that Scott lacks Article III standing on the remote transactions issue. Because all his transactions were in person, he suffered no injury relating to remote transactions."); *cf. id.* at 837 (Though NAACP had *organizational* standing, it only had such standing as to those transactions on

11

which it had "expended [resources] to counteract Schedler's allegedly illegal conduct."). The only transactions by the Plaintiffs that the record reflects are online changes of address. Doc. 77-1. Thus, if Plaintiffs have standing at all, it is limited to those transactions, because it is only those transactions by which Plaintiffs claim to have been aggrieved. *E.g.*, *id.* at 835, 837; 52 U.S.C. §20510(b)(1)-(2).

## II.   The record shows that Defendants process online DPS transactions in a manner that complies with the NVRA.

In their summary judgment motion, Plaintiffs allege that Defendants have violated the NVRA in five ways, each of which Defendants address in turn. Doc. 77 at 14-19.

First, Plaintiffs allege that "Defendants fail to treat online driver's license renewal applications as 'simultaneous' voter registration applications in violation of 52 U.S.C. §§20503(a)(1), 20504(a)(1), and 20504(a)(2)." Doc. 77 at 15. To begin, the word "simultaneous" appears in the specific context of driver license applications. In that context, the NVRA requires states to "establish *procedures to register to vote* in elections for Federal office *by application made simultaneously* with an application for a motor vehicle driver's license pursuant to [§]20504 of this title." *Id.* §20503(a)(1) (emphasis supplied). That is, states are tasked with establishing procedures that give individuals an opportunity to "make application" to register to vote at the same time they apply for a driver license.[10]

The NVRA continues, "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office *unless the applicant fails to sign the voter registration application*." *Id.* §20504(a)(1) (emphasis supplied). And under §20504(a)(2), "[a]n application for voter registration submitted under paragraph (1) shall be considered as updating any previous voter registration by the applicant."

---

[10] This portion of the NVRA does not say anything about renewals—and certainly says nothing of changes of address—but speaks generally of applications. Notably, Defendants do not permit first-time applicants for driver licenses to submit such applications online, and first-time driver license applications are not at issue here. *See generally*, Docs. 1, 77.

Plaintiffs do not dispute that they did not *sign the voter registration application* when they changed their addresses online. Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7. And, in any event, Defendants do not run afoul of the NVRA by failing to register individuals who *fail to sign the voter registration application*. Rather, they are not empowered to register individuals to vote who do *not* sign the voter registration application, under either the NVRA or Texas law.[11] TEX. ELEC. CODE §§13.002(a), (b); 15.021(a); *cf. id.* §15.021(d). *See also id.* §§20.063(a)-(c); 20.066(a)-(c); 52 U.S.C. §20504(c)(2)(C). Moreover—though they exaggerate its onerousness—Plaintiffs do not dispute that, in transacting with DPS online, customers have an opportunity to complete a voter registration application. *See* Doc. 77 at 7-10. Texas has—as required by the NVRA—established a "procedure to register to vote…by application made simultaneous with an application" for a driver license. *See supra* "Response to Plaintiffs' Statement of Facts"; 52 U.S.C. §20503(a)(1).[12]

Plaintiffs present no evidence that they applied for or renewed a driver license, no evidence that they signed a voter registration form and were not registered to vote, and no evidence that they were not provided with a voter registration form when they changed the address on their Texas driver licenses online. *See* Doc. 77-1. They also present no evidence that Defendants fail to offer applicants for driver licenses an opportunity—*during* an online transaction with DPS—to complete a voter registration application. Plaintiffs claim only that they failed to sign the voter registration application. Their claims under 52 U.S.C. §§20503(a)(1), 20504(a)(1), and 20504(a)(2) fail as a matter of law.

---

[11] Plaintiffs attempt to analogize online transactions to in person and mail transactions falls flat, because—in those circumstances—the customer provides a signed request to register or update registration information when they are requesting that registration or change, as Texas law requires. *E.g.,* Ingram Depo. 53:1-14.

[12] To the extent Plaintiffs assert that requiring procedures for simultaneous *application* requires simultaneous *registration,* this is wrong. *See, e.g.,* 52 U.S.C. §20504(e)(1) (applicant information "shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance"); *Ferrand v. Schedler*, 2012 U.S. Dist. LEXIS 61862 (E.D. La. May 3, 2012) (in enacting predecessor to 52 U.S.C. §20506, NVRA provision applicable to other state voter registration agencies, "it is evident to this Court that Congress was concerned with making sure that every person was given *the opportunity* to register to vote.") (emphasis supplied).

<u>Second</u>, Plaintiffs allege that "Defendants fail to treat online driver's license change-of-address applications as notifications for voter registration in violation of 52 U.S.C. §20504(d)." Doc. 77 at 17. Under that statute:

> [a]ny change of address form *submitted in accordance with State law* for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved *unless the registrant states on the form that the change of address is not for voter registration purposes*.

52 U.S.C. §20504(d) (emphasis supplied). Texas law provides that "[a] change of address that relates to a license or card and that is submitted *in person or by mail* serves as a change of address for voter registration unless the licensee or cardholder indicates that the change is not for voter registration purposes." TEX. ELEC. CODE §20.063(c) (emphasis supplied). Texas law further requires a signature, affirming under penalty of perjury that the individual making a change to voter registration information is eligible to vote. *Id.* §63.002. So, too, does the NVRA. 52 U.S.C. §20504(c)(2)(C)(iii).

The record reflects two independent reasons why Plaintiffs' claims under §20504(d) fail as a matter of law. First, Plaintiffs did not submit a change of address in person or by mail;[13] did not submit a written, signed request to update voter registration information;[14] and did not submit a change to voter registration information under any statutory exception to the written, signed request requirement.[15] *Cf.* TEX. ELEC. CODE §§13.002(a), (b); 15.021(a), (d); 20.063(a)-(c); 20.066(a)-(c); 52 U.S.C. §20504(c)(2)(C). Thus, the transactions upon which Plaintiffs seek to recover are not properly regarded as "notification[s] of change of address for voter registration," because they were not submitted "in accordance with State law." 52 U.S.C. §20504(d).

Moreover, even if such changes of address could properly be regarded as being submitted "in

---

[13] Doc. 82-1 at Exs. A, Hernandez Resp. to Rog. 2; B, Stringer Resp. to Rog. 2; C, Woods Resp. to Rog. 2.

[14] Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7.

[15] *E.g.,* Doc.1 (All of Plaintiffs' allegations arising out of inter-county, rather than intra-county, moves).

accordance with State law"—or, if State law were of no import—[16]the record shows that Plaintiffs did, indeed, "state on the form that the change of address" they made online was "not for voter registration purposes." In particular, the change-of-address website Plaintiffs used states that "[s]electing 'Yes' **does not** register you to vote." Doc. 1-2, Ex. A at 2. *Scott v. Schedler*, the most analogous controlling authority in this context, demonstrates that the inclusion of this language on the online interface functions, for purposes of the NVRA, as a "state[ment] on the form that the change of address is not for voter registration purposes." 771 F.3d at 840; 52 U.S.C. §20504(d).

*Scott* challenged Louisiana's implementation of an NVRA requirement that public assistance agencies "provide each applicant with voter registration forms 'unless the applicant, in writing, declines to register to vote.'" 771 F.3d at 840 (citation omitted). The NVRA required these "voter registration agencies to provide all applicants with declination forms, which read: 'If you are not registered to vote…would you like to apply to register to vote here today?'" *Id.* Louisiana's form contained "two boxes to check: yes or no," and stated "'IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.'" *Id.* Individuals who checked neither box did not receive a voter registration application. The *Scott* plaintiffs alleged that this violated the NVRA's requirement to provide a form "'unless the applicant, in writing, declines to register to vote.'" *Id.* (citation omitted).

But the Fifth Circuit disagreed, holding "that an applicant handing back a form with neither box checked has created documentation 'in writing' showing that he did not wish to register." *Id.* at 840 (citation omitted). The Court

> rel[ied] on the plain meaning of 'IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.' The capital letters mandated by the NVRA drive home the importance of the message: not checking either box equals a decision not to register to vote.

---

[16] *See infra* pp.18-19.

*Id.* (citation omitted). It concluded, "[r]equiring that a declination be 'in writing,' rather than oral, creates evidence showing that the state complied with the NVRA despite not distributing a voter registration form." *Id.* (citation omitted).

Although *Scott* arose under NVRA provisions applicable to public benefits offices—rather than 52 U.S.C. §20504(d) —the Fifth Circuit's analysis informs Plaintiffs' allegations. Just as "an applicant handing back a form with neither box checked has created documentation 'in writing' showing that he did not wish to register," a customer checking "yes" or "no" under a prompt that states "[s]electing 'yes' **does not** register you to vote[,]" states that the change of address is not for voter registration purposes. *Scott*, 771 F.3d at 840 (citation omitted); 52 U.S.C. §20504(d). This is emphasized by the fact that, as online Texas DPS customers, Plaintiffs were presented with the bolded text: "[s]electing 'yes' **does not** register you to vote[,]" just as Louisiana public assistance applicants who are told "YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME," in all caps. P's Ex. A at 2; *Scott*, 771 F.3d at 840. Under *Scott*, Plaintiffs stated that their changes of address were not for voter registration purposes.

Plaintiffs failed to submit their desired changes to voter registration information in accordance with state law. Plaintiffs also stated that their changes of address were not for voter registration purposes. Each of these undisputed facts provides an independent reason why Plaintiffs' claims under 52 U.S.C. §20504(d) fail as a matter of law.

Third, Plaintiffs contend that requiring submission of a written, signed request for voter registration "upon completion of online transactions violates the NVRA's prohibition against requiring duplicative information, 52 U.S.C. §20504(c)(2)." Doc. 77 at 17. But the NVRA makes plain that duplicative information is permissible, so long as that information is limited to the "minimum amount of information necessary to prevent duplicate voter registrations and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other

parts of the election process." 52 U.S.C. §20504(c)(2)(B). And the summary judgment record reflects that the written, signed request for voter registration, and changes to voter registration information, is necessary "to prevent duplicate voter registrations and enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process" when Texans move from one county to another. *Id.*; *see also supra*, "Response to Plaintiffs' Statement of Facts" and citations therein; *see generally*

What's more, the NVRA requires that voter registration applications "*shall* include a statement that requires the signature of the applicant, under penalty of perjury." 52 U.S.C. §20504(c)(2)(C). Such applications specifically may require a "second signature." *Id.* §20504(c)(2)(A). The NVRA leaves these determinations to the states, consistent with their time, place, and manner prerogative and discretion to implement the NVRA in the context of their voter registration framework. *See, e.g., Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2253 (2013). Plaintiffs, in fact, acknowledge that the NVRA was intended to afford states discretion "'as to how to administer th[e] process and how to integrate it with [each State's] drivers license process.'" Doc. 9 at 2 n.1 (quoting S. Rep. No. 103-6, at 5-6 (1993) (alteration original)). Thus, Plaintiffs' claims under 52 U.S.C. §20504(c)(2) fail as a matter of law.

<u>Fourth</u>, Plaintiffs contend that Defendants "fail[] to transmit voter registration information submitted during online driver's license transactions," in violation of 52 U.S.C. §20504(e). Doc. 77 at 18. Under that statute:

> (1) Subject to paragraph (2), a completed voter registration portion of an application for a State motor vehicle driver's license accepted at a State motor vehicle authority shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance.

> (2) If a registration application is accepted within 5 days before the last day for registration to vote in an election, the application shall be transmitted to the appropriate State election official not later than 5 days after the date of acceptance.

52 U.S.C. §20504(e). But here again, pursuant to Texas law, a voter registration application is not "complete" unless it is submitted in writing, and signed by the applicant (or subject to the intra-county exception inapplicable here). *E.g.,* TEX. ELEC. CODE §13.002; *also supra*, "Response to Plaintiffs' Statement of Facts" and citations therein. And, in any event, Plaintiffs have presented no summary judgment evidence to support a claim valid Texas voter registration applications submitted to DPS are not transmitted to SOS, and then on to the counties, as required by Texas and federal law. This claim fails as a matter of law.

Fifth, Plaintiffs assert that SOS "fail[s] to ensure that eligible applicants are registered to vote upon completion of the voter registration portion of online driver's license change-of-address and renewal," and that this "violates 52 U.S.C. §20507(a)(1)(A)." Doc. 77 at 18. That provision states:

> In the administration of voter registration for elections for Federal office, each State shall ensure that any eligible applicant is registered to vote in an election in the case of registration with a motor vehicle application under section 20504 of this title, if the *valid voter registration form* of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election[.]

52 U.S.C. §20507(a)(1)(A) (emphasis supplied). Thus, this statute presupposes submission of a *valid* voter registration form. In Texas, voter registration forms are valid when they are "in writing and signed by the applicant," unless an exception applies. TEX. ELEC. CODE §13.002; *see also supra*, "Response to Plaintiffs' Statement of Facts" and citations therein. Moreover, Plaintiffs have provided no evidence of SOS's alleged "fail[ure] to ensure that eligible applicants are registered to vote" upon submission of a valid voter registration form to DPS.

Finally, in response to all of Plaintiffs' allegations of NVRA violations, it is worth noting that the provisions of Texas law requiring the procedures about which Plaintiffs complain are not preempted by the NVRA, because they do not directly conflict with it. Under the Election Clause, Congress may enact laws that preempt state election laws concerning federal elections. *Foster v. Love*,

522 U.S. 67, 69 (1977). "When it does, the federal legislation renders any conflicting state laws inoperative. To this end, state election laws cannot directly conflict with federal election laws on the subject." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013) (citations and quotation marks omitted). As the Court recognized in *Steen*, a state law may conflict with the NVRA where it "impos[es] additional conditions…on its acceptance of voter registrations." 732 F.3d at 400 (citing *Arizona v. Inter Tribal Council of Arizona*, 133 S. Ct. 2247). As set forth above, all of the NVRA provisions under which Plaintiffs seek relief can be read consistent with the NVRA. With respect to the signature issue in particular, the NVRA *itself* requires a signature, and does not directly conflict with Texas law that governs how and when that signature is provided.[17]

### III.    Plaintiffs' Equal Protection claim fails as a matter of law.

 "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Unless a plaintiff identifies a comparator who is similarly situated in all relevant respects, but was treated differently, he cannot recover under the Equal Protection Clause. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Plaintiffs have not even attempted to offer evidence of any individual who was similarly situated to them in all relevant respects, but treated differently under the law. That is, Plaintiffs have not identified other individuals who (1) failed to make a written, signed request to update their voter registration, and (2) had their voter registration information updated after moving from one county to

---

[17] Moreover, to the extent the NVRA itself is inconsistent, "[the Court] must interpret [the NVRA] in a way that avoids introducing an inconsistency into the statute." *Scott*, 771 F.3d at 840 (citation omitted).

another. At this summary judgment stage, this is fatal to their Equal Protection claim. *Nordlinger v. Hahn*, 505 U.S. at 10.[18]

And as a factual matter, there is nothing "disparate" about requiring all individuals to provide a signature at the time they request changes to their voter registration information between counties. And despite Plaintiffs' breathless protestations that "Defendants have not explained, and cannot explain, how the handwritten signature requirement is necessary," Doc. 77 at 22, Texas law requires individuals who wish to change their voter registration information from one county to another to make that request in writing, and sign it. It is not Defendants' burden, in defeating an Equal Protection claim, to "explain how the [challenged] requirement is necessary." *Id.* Rather, Plaintiffs must identify a similarly situated comparator who was treated differently under the law. They cannot do so here.

Moreover, although the Equal Protection Clause imposes no "necessity" requirement on challenged legislation, as Plaintiffs suggest, Defendants refer Plaintiffs to the response to Plaintiffs' Statement of Facts. This sets forth why Texas law operates the way it does, and how those laws bind Defendants' actions. In short, the legislature requires all changes of address *between* counties to be submitted in writing, and signed by the applicant.[19] And this requirement applies to all individuals, consistent with Texas law, regardless of the artificial distinction Plaintiffs attempt to create here. Their Equal Protection claim fails as a matter of law.[20]

**IV.    If the Court finds that the Plaintiffs have carried their burden of proof, its remedy should be limited.**

If the Court decides that the Plaintiffs have carried their burden of proof, in whole or in part, there are two important limits on the Court's remedial authority.

---

[18] Defendants reiterate the argument, urged *supra*, that the NVRA's own remedial scheme provides the exclusive list of remedies for alleged violations thereof.

[19] Moreover, it is wholly consistent with the NVRA for States to require signatures contemporaneous with requests to update voter registration information.

[20] Plaintiffs attempt to characterize Texas voter registration law as a "burden" on the right to vote, but cite no authority for this proposition, and fail to explain how it is relevant to their Equal Protection claim.

First, any injunctive relief extended to the named parties "must be narrowly tailor[ed]…to remedy the specific action which gives rise to the order." *John Doe 1 v. Veneman*, 280 F.3d 807, 818 (5th Cir. 2004). As the pleadings indicate, the sole matter in issue is whether Defendants' handling of online driver license transactions violates 52 U.S.C. §§20503, 20504, and/or 20507. *See* Doc. 77. Accordingly, to be proper under Federal Rule of Civil Procedure 65, any injunction must be narrowly tailored to address conduct related to those laws. *Veneman*, 280 F.3d at 818 (injunction that is vague or overbroad violates Rule 65). Plaintiffs' proposed "catch-all" injunction would violate Rule 65 on its face as it is untethered to any conduct at issue. Doc. 77 at 30 (seeking to enjoin "Defendants, their agents and successors in office, and all customers working in concert with them, from implementing practices and procedures that likewise violate the NVRA."). It would also be impermissibly vague, as it would not adequately inform an ordinary person exactly what conduct is proscribed. *U.S. Steel Corp. v. United Mine Workers of Am.*, 519, F.2d 1236, 1246 n. 20 (5th Cir. 1975).

Second, Plaintiffs' request for monitoring is not an appropriate remedy and is unwarranted here. Rather, such relief is the "most intrusive of remedies," which should be considered within Rule 65's requirement that a remedy must be narrowly tailored to "achieve the federal law's ends in the least obtrusive possible manner." *United States v. Louisiana*, 196 F. Supp. 3d 612, 677 (M.D. La. July 26, 2016) (granting United States' motion for summary judgment on whether Louisiana violated the NVRA but denying the federal government's request to order monitoring and reporting to ensure compliance). This is particularly true in the context of functions—such as the conduct of elections—that the Constitution assigns to state and local governments. Indeed, remedies like monitoring "are to be reserved for extreme cases of demonstrated noncompliance with milder measure." *ACORN v. Edgar,* 56 F.3d 791, 798 (7th Cir. 1995). "They are last resorts, not first." *Id.*

Should the Court find for the Plaintiffs, an injunction delineating with particularity the steps required of the Defendants is the proper remedy. *Id.* "But until it appears that the state will not comply

with such an injunction, there is no occasion for the entry of a complicated decree that treats the state as an outlaw and requires it to do even more than the 'motor voter' law requires." *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully move the Court to deny Plaintiffs' Motion for Summary Judgment and, for the reasons stated in Defendants' Motion for Summary Judgment, render judgment for Defendants on all claims and dismiss this case entirely.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
ESTEBAN S.M. SOTO
Texas Bar. No. 24052284
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4074
(512) 320-0667 FAX
anna.mackin@oag.texas.gov
esteban.soto@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of July, 2017, a true and correct copy of the foregoing was

filed electronically with the Court and delivered via the CM/ECF system to all counsel of record.

/s/Anne Marie Mackin
Assistant Attorney General