IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER, *et al.*, §<br>　　　*Plaintiffs,* §<br>§<br>v. § No. 5:16-CV-00257<br>§<br>ROLANDO PABLOS, IN HIS OFFICIAL CAPACITY §<br>AS THE TEXAS SECRETARY OF STATE AND §<br>STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY §<br>AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF §<br>PUBLIC SAFETY, §<br>　　　*Defendants.* § | |

### DEFENDANTS' CORRECTED[1] REPLY
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submit this reply in support of their Motion for Summary Judgment, Doc. 82. Because no genuine issue of fact remains in dispute, it is appropriate for the Court to enter judgment as a matter of law, and to do so in Defendants' favor.

**ARGUMENT & AUTHORITY**

**I.  Plaintiffs' response to Defendants' Summary Judgment Motion does not establish standing.**

    **A. There is no evidence that Woods' rights were impacted in any federal election, providing an independent basis that he lacks standing under the NVRA.**

Remarkably, Plaintiffs claim "[t]hat Dr. Woods was subsequently registered to vote for federal elections following his attempt to cast a ballot in a state election does not negate his original injury under the NVRA." Doc. 85 (citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014)). But this is *precisely* the consequence of Woods' failure to present "evidence of [] problems

---

[1] On Friday, August 4, 2017, counsel mistakenly filed an incorrect document as Defendants' Reply in Support of Motion for Summary Judgment. After conferring with the Court and opposing counsel, counsel files this corrected version, which has not been changed since August 4, other than the addition of this footnote, and the date on the Certificate of Service.

that affected [his] right to vote in a federal election." *Broyles v. Texas*, 618 F. Supp. 2d 661, 691 (S.D. Tex. 2009). It is not enough, as Plaintiffs assert, for Woods to assert "injury under the NVRA." Doc. 85 at 4. He must specifically claim interference with his rights in a federal election, and that claim must be supported by evidence. *E.g.*, *Young v. Fordice*, 520 U.S. 273, 275-76 (1997). Woods has made no such claim, and presented no such evidence, here. Doc. 1 ¶49; Doc. 82-1 Ex. C, Woods' Resp. to RFA 15 ("there was no federal general election in Texas in 2015.").

### B. Plaintiffs have not satisfied the notice and opportunity to cure requirement of the NVRA's remedial scheme.

Plaintiffs' standing arguments demonstrate confusion about the nature of Article III jurisdiction. Plaintiffs assert standing as follows: "because the State failed to update Plaintiffs' voter registration for elections for federal office after each indicated they wished to register to vote during an online driver's license transaction, they have been 'aggrieved by a violation' of the NVRA." Doc. 85.[2] They argue that "each Plaintiff…was injured at the moment the State failed to provide a simultaneous voter registration application with an online driver's license transaction." *Id*. (citing Dkt. 25 at 4). But as Defendants have briefed and as the record proves, Plaintiffs do not meet the notice and opportunity to cure requirements of the NVRA's remedial scheme, because any alleged violations of that statute were cured within the applicable notice period.[3] The additional arguments

---

[2] Even if this assertion were sufficient to establish NVRA standing, it finds no support in the factual record. No Plaintiff claims to have submitted a written, signed request to update his voter registration information between counties, which Texas law requires in order to update voter registration information. *See* Doc. 86, Response to Plaintiffs' Statement of Facts and citations therein. Even if Texas law did not impose such a requirement, or were preempted, no Plaintiff has presented actual evidence that he did, in fact, "indicate [he] wished to register to vote during an online driver's license transaction." Doc. 85. By contrast, the record contains evidence that each Plaintiffs indicated, in changing his address online, that said change "was not for voter registration purposes." *See, e.g.*, Doc. 1-2, Ex. A at 2 (each Plaintiff acknowledged that "[s]electing 'Yes' **does not** register you to vote.") *Cf.* 52 U.S.C. §20504(d) ("[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved *unless the registrant states on the form that the change of address is not for voter registration purposes*.") (emphasis supplied). It further contains evidence that no Plaintiff signed a request to register, or update registration information, when moving between counties. Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7. *Cf.* Doc. 86, Response to Plaintiffs' Statement of Facts and citations therein.

[3] *See, e.g.*, Docs. 82 at 12-15; 86 at 4-8.

Plaintiffs raise in response to Defendants' summary judgment motion also fail.

Plaintiffs disregard *Scott*, commenting that their allegations involve "Section 5 of the NVRA, a provision of the statute wholly distinct from that which was addressed in *Scott*." Doc. 85 at 5. This ignores the fact that the NVRA's presuit notice requirement—upon which Congress conditioned the private right of action—is the same regardless of the section of the NVRA under which a private plaintiff wishes to sue. This limited waiver of the immunity that Defendants otherwise enjoy[4] plainly governs private claims under the entire NVRA: "[a] person who is aggrieved by a violation of *this chapter* may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. §20510(b)(1) (emphasis supplied). If, and *only* "[i]f the violation is not corrected within 90 days after receipt of a notice" may "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief." *Id.* §20510(b)(2). And such suit is expressly limited—the private plaintiff may *only* file suit "*with respect to the violation*" in the notice. *Id.*

Plaintiffs also assert that requiring them to satisfy the presuit requirements of the NVRA's remedial scheme "frustrates Congress's intent to create a private right of action." Doc 85 at 5 (citation omitted). The opposite is true. It is Plaintiffs, not Defendants, who would eliminate Congress' explicit requirement that states have notice and an opportunity to cure before facing litigation under the NVRA. *Contra Scott v. Schedler,* 771 F.3d 831, 836 (5th Cir. 2014) (emphasizing that Plaintiff Scott lacked standing because putative notice did not "provide Schedler with 'an opportunity to attempt compliance' as to Scott 'before facing litigation.'") (citation omitted) (emphasis supplied).[5]

---

[4] *See, e.g.,* Docs. 82 at 13; 86 at 5-8.
[5] *See also Ga. State Conf. of NAACP v. Kemp,* 841 F. Supp. 2d 1320, 1335-36 (N.D. Ga. 2012) (citing *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997)). Defendants are mindful that the Court distinguished *Kemp* insofar as "defendants in that case did not learn of [plaintiff Murphy's] claim until service of the complaint." Doc. 52 at 9. Defendants cite *Kemp* here to the extent that it emphasizes the individualized, plaintiff-specific nature of NVRA standing. The Northern District of Georgia that "Georgia ha[d] attempted to comply with" the NVRA "*insofar as Murphy was aggrieved*," and emphasized "the State of Georgia's attempt to comply with the NVRA *with regard to Murphy*" in assessing his standing. 841 F. Supp. 2d at 1335, 1336 (emphasis supplied).

3

Plaintiffs' discussion of cases involving organizational standing further emphasizes their misunderstanding of standing doctrine. Defendants do not—as Plaintiffs imagine—dispute Plaintiffs' standing "because they are not organizational plaintiffs." Doc. 85 at 6. And Plaintiffs do not claim that "only organizational plaintiffs may seek relief that benefits others." Doc. 85 at 6. Rather, organizational standing is a type of standing that exists separate and apart from individual standing. For example, "'an organization has standing to sue on its own behalf where it devotes resources to counteract a defendant's allegedly unlawful practices.'" *Scott*, 771 F.3d at 837 (quoting *ACORN v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999)). Similarly, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000).

Plaintiffs here are individuals, not organizations, and do not claim to have organizational standing. As the record shows, no Plaintiff has established individual standing in his own right. *See* Docs. 82 at 12-19; 86 at 5-12. As such, these Plaintiffs are "not entitled to seek relief for others." *Scott*, 771 F.3d at 836. The issue is not who Plaintiffs believe will benefit from the relief requested. *Contra* Doc. 85 at 6 ("nothing in the NVRA or *Scott* prevents Plaintiffs from requesting injunctive relief that would benefit millions of other Texans.") Rather, the issue is Plaintiffs' failure to meet their burden to establish the Court's jurisdiction.

Plaintiffs read the NVRA's opportunity to cure requirement out of the statute—and read the fact that the any NVRA violation alleged here was cured out of the record—based upon *Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). Plaintiffs describe *Arcia* as "finding that individual voters removed from the rolls in violation of Section 8 of the NVRA had standing to sue for prospective relief even after they were reinstated." Doc. 85 at 4. But *Arcia* neither binds this

4

Court nor supports Plaintiffs' standing, because the *Arcia* defendants did not contest that the plaintiffs had satisfied the NVRA's notice and opportunity to cure requirements. *See generally*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335; *Arcia v. Detzner*, 2012 WL 12845178 (S.D. Fla. October 12, 2012).

### C. Plaintiffs have not established Article III standing.

Plaintiffs assert that "Defendants challenge only causation and rederessability," and do not contest that Plaintiffs have an injury in fact. Doc. 85 at 7. This ignores dozens of pages of briefing in this cause, which explain why Plaintiffs have not suffered an injury in fact because (1) the NVRA is not being violated, and because even if it were, (2) Plaintiffs have not been aggrieved by those violations within the meaning of the NVRA. *E.g.,* Docs. 82 at 19-24; 86 at 12-20; 7. Defendants reiterate their arguments that Plaintiffs have not suffered an injury in fact sufficient to confer standing.

Plaintiffs also cannot establish causation. The only authority Plaintiffs offer to support causation is the Court's ruling on Defendants' motion to dismiss. Doc. 85 at 7.[6] Now, on summary judgment, the evidence defeats causation, because no Plaintiff has presented evidence to separate alleged lack of updated registration from his own failure to heed the requirement to submit a written signed request for such update, made plain during the online process. Hernandez Depo. 39:10-15; Stringer Depo. 49:1-9; Woods Depo. 74:12-75:7;[7] *see also, e.g.,* Doc. 52 at 1.

Plaintiffs' own authority demonstrates that their inaction severs the required causal link. The individual plaintiffs in *Arcia*, for example, were improperly removed from Florida voter rolls because Florida erroneously identified them as non-citizens due to a faulty data-matching process. 772 F.3d at 1341. These individuals had standing because, through no action or inaction on their part, they were removed from the rolls, and without changes to Florida's flawed data-matiching process, might

---

[6] Throughout their response to Defendants' summary judgment motion, Plaintiffs' improperly treat the Court's ruling on Defendants' Motion to Dismiss as dispositive at this summary judgment stage.

[7] Deposition citations herein refer to the proof filed with Defendants' summary judgment motion, Doc. 82-1.

be removed again. 772 F.3d at 1341. This is distinct from the failure of Plaintiffs here to submit a request to change their voter registration in writing, and signed.

As Plaintiffs' failure to marshal any on point caselaw suggests, Plaintiffs are—in effect—seeking an impermissible advisory opinion. They at least implicitly concede as much in arguing that "numerous individual plaintiffs have brought suit successfully under the NVRA since its enactment in 1993, achieving injunctive relief that has led to policy change." Doc. 85 at 6 (citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. 2247, 2252 (2013)). As set forth above, *Arcia* is distinguishable on multiple grounds. And in *Arizona v. Inter Tribal Council*, there was a direct conflict between State and federal law, which—as set forth in the next section—does not exist here.

**II.     The NVRA does not preempt any provision of Texas law that is relevant here, because there is no direct conflict.**

Plaintiffs have not, until their summary judgment motion, argued preemption (and have not meaningfully briefed the issue to date), so Defendants address it here. *See* Doc. 85 at 13-15. The Elections Clause "'functions as a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices.'" *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. at 2253 (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)). Congress may enact laws that preempt state election laws concerning federal elections, but such preemption occurs only to the extent that state laws "directly conflict with federal election laws on the subject." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013) (citations and quotation marks omitted). Plaintiffs fail to establish that there is any direct conflict between the NVRA and Texas law sufficient to preempt any State law relevant here.[8]

Plaintiffs assert that (1) the NVRA's "in accordance with State law" requirement applies only

---

[8] Defendants also note that Plaintiffs have not pleaded any challenge to any provision of Texas law. *See* Doc. 1.

to driver license transactions, and not to voter registration transactions, and (2) a customer who renews his driver license or changes his address online has done so in accordance with State law. Thus, Plaintiffs reason, online transactions must result in new registrations or updates to voter registration information, otherwise they violate the NVRA. Doc. 85 at 13. Based upon this reasoning, Plaintiffs argue that Texas' requirement that a customer submit a signature when requesting a new voter registration or update to his voter registration, absent statutory exception, "is inconsistent with—and therefore pre-empted by—the NVRA." Doc. 85 at 14 (citing 52 U.S.C. §20504, Dkt. 52 at 11, 14). Plaintiffs insist that "neither the NVRA nor Texas law requires that these online driver's license change-of-address notifications include a signature," and therefore claim that "Defendants' insistence upon one is a plain violation of the NVRA." Doc. 85 at 15.

This does not establish the "direct conflict" necessary to find preemption. Rather, "the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Arizona Inter Tribal Council*, 133 S. Ct. at 2257. Here, it is undisputed that the NVRA itself requires a signature for each voter registrant and is silent on the procedure for obtaining such signatures. 52 U.S.C. §20504(a)(1); (c)(2)(C)(iii). Texas law provides the procedure for such signatures. Texas Election Code §§13.002(b) and 15.021(a) make clear that voter registration applications and changes of address must be "in writing and signed by the applicant" unless a specific enumerated statutory exception applies. These include (1) in county changes of address through Texas.gov, as provided for under §15.021(d), and (2) the transmission of an electronic signature when a physical signature is also provided when the applicant makes an in person or mail with DPS, as provided for under §20.066(a).[9] None of these provisions directly conflicts with the NVRA.

---

[9] "If a person completes a voter registration application as provided by Section 20.063, the Department of Public Safety shall: (1) input the information provided on the application into the department's electronic data system; and (2) inform the applicant that the applicant's electronic signature provided to the department will be used for submitting the applicant's voter registration application"

Plaintiffs acknowledge that, "under state law, a voter registration application must be in writing and signed by the applicant." Doc. 85 at 15 n.52 (citing Dkt. 82 at 8-10). Plaintiffs complain that this "ignores the fact that DPS customers do not, in fact, actually sign a voter registration form." *Id.* But this is precisely the point—unless a customer makes a written, signed request or an exception applies—State law does not authorize changes to the voter rolls in the context of these transactions. Plaintiffs cannot show that this is in direct conflict with the NVRA.[10]

### III. Plaintiffs' Equal Protection challenge fails under *Anderson-Burdick* or any other standard.

Plaintiffs claim that *Anderson-Burdick* governs their Equal Protection claim, and that under *Anderson-Burdick*, they need not identify a similarly situated comparator to prevail. Doc. 85 at 16 But the Equal Protection clause requires a Plaintiff to plead and prove State interference with a fundamental right—under *Anderson-Burdick*, in the context of an election. Plaintiffs have not done so here, nor have they challenged any Texas law under the Equal Protection Clause. *See* Doc. 1.

That is, Plaintiffs have identified no authority for the proposition that a process which treats all similarly situated voters the same way violates Equal Protection—under *Anderson-Burdick* or any other standard. Doc. 85 at 16-17 *Anderson v. Celebrezze*, for example, was a First Amendment ballot access challenge to an Ohio law setting an early filing deadline for independent candidates based on the *associational* rights of their supporters. 460 U.S. 780 (1983). In finding an Equal Protection violation through the First Amendment, the Court explicitly did not engage in a separate Equal Protection analysis. 460 U.S. at 786 n.7 (1983). *Burdick v. Takushi* found that Hawaii's statutory prohibition on write-in voting did not violate a voter's First Amendment right to remain free from espousing positions he did not support, and did not raise any Equal Protection claim at all. 504 U.S.

---

[10] Even if there were a direct conflict between Texas law and the NVRA, the NVRA sets out the exclusive remedial scheme for violations thereof, so this case must be dismissed for want for jurisdiction. *See infra* part I(B); Doc. 86 at 5-8.

428, 438 (1992).[11] And in *Obama for America v. Husted*, the Sixth Circuit concluded that plaintiffs were likely to succeed on the merits of their Equal Protection challenge to an Ohio law setting a different early voting deadline for military and non-military voters. 697 F.3d at 432. Applying a "clearly erroneous" standard, the court noted that "[b]ecause the district court found that Plaintiffs' right to vote was burdened, it properly applied the *Anderson-Burdick* standard." *Id.* at 431.[12]

*Crawford v. Marion County Election Board* is particularly instructive. 553 U.S. 181 (2008). There, the Court rejected an Equal Protection challenge to Indiana's photo ID requirement, noting that "the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." 553 U.S. at 198. The Court reached this result despite the fact that "a somewhat heavier burden may be placed on a limited number of persons," including "elderly persons born out of State, who may have difficulty obtaining a birth certificate; persons who because of economic or other personal limitations may find it difficult either to secure a copy of their birth certificate or to assemble the other required documentation to obtain a state-issued identification; homeless persons; and persons with a religious objection to being photographed." *Id.*[13]

Plaintiffs' final citation in support of their Equal Protection claim—*Northeast Ohio Coalition for the Homeless v. Husted*—is also instructive here, insofar as the Court determines that *Anderson-Burdick* is the appropriate standard. 696 F.3d 580 (6th Cir. 2012). Applying *Anderson-Burdick*, the

---

[11] The Court did note in *Burdick* that it had "previously ejected an equal protection challenge to a system that provided alternative means of ballot access for members of established political parties and other candidates, concluding that the system was constitutional because it did not operate to freeze the political status quo." 504 U.S. at 437 n.4 (citing *Jenness v. Fortson*, 403 U.S. 431, 438 (1971).

[12] The court went on to note that rational basis is appropriate for generally applicable, nondiscriminatory election regulations. *Id.* at n.4 (citations omitted).

[13] Even if *Anderson* did apply, a plaintiff must demonstrate the propriety of the remedy requested. *Crawford*, 553 U.S. at 203 (where "petitioners have not demonstrated that the proper remedy—even assuming an unjustified burden on some voters—would be to invalidate the entire statute. When evaluating a neutral, nondiscriminatory regulation of voting procedure, [w]e must keep in mind that [a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (citations and quotation marks omitted) (alterations original).

Sixth Circuit found that an organizational plaintiff was likely to prevail on the merits of its Equal Protection challenge for voters who cast their ballots in the right polling location but wrong precinct due to poll worker error. 696 F.3d at 597. By contrast, it found that the same plaintiff was *not* likely to succeed on its Equal Protection challenge to Ohio's statutory ballot affirmation requirement where "all of the identified deficiencies arise from voters' failure to follow the form's rather simple instructions: (1) print name, (2) provide identification, and (3) sign the affirmation appearing at the bottom." 696 F.3d at 599-600 (citations omitted).

Finally, the Equal Protection Clause involves interference with fundamental rights. Plaintiffs do not allege that Texans have a fundamental right to submit inter-county changes to their voter registration information over the internet. And as the Court has noted, nothing in the NVRA requires Defendants to accept renewals and changes of address over the internet. Doc. 52 at 20. Thus, the appropriate standard is rational basis review, where the "question before [the Court] is whether there is any conceivable rational basis justifying this distinction." Plaintiffs have not put forward any evidence that this contemporaneous signature requirement is arbitrary or unreasonable.

Finally, regardless of the standard, the State's interests in requiring a voter to submit a written, signed request to update voter registration between counties is justified, in light of its minimal burden. The burden is slight—signing and mailing in a form is, in some ways, even less burdensome than making an in-person visit to a DPS office, and in any event can hardly be said to be more onerous than the regular burdens of voting. *See Crawford,* 553 U.S. at 198. Moreover, As briefed in this case and as shown on the record, the process Plaintiffs challenge here serves Defendants' interest in complying with State law and the NVRA, maintaining county-based voter rolls, and allowing signatures to be compared when there is a potential problem. It also allows Defendants to serve the maximum number of driver license customers as efficiently and effectively as possible, by reducing wait times in DPS field offices.

## CONCLUSION

Defendants respectfully move the to enter summary judgment in their favor.

        Respectfully submitted,

        KEN PAXTON
        Attorney General of Texas

        JEFFREY C. MATEER
        First Assistant Attorney General

        BRANTLEY STARR
        Deputy First Assistant Attorney General

        JAMES E. DAVIS
        Deputy Attorney General for Civil Litigation

        ANGELA V. COLMENERO
        Chief, General Litigation Division

        /s/Anne Marie Mackin
        ANNE MARIE MACKIN
        Texas Bar No. 24078898
        ESTEBAN S.M. SOTO
        Texas Bar. No. 24052284
        Assistant Attorney General
        General Litigation Division
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
        (512) 475-4074
        (512) 320-0667 FAX
        anna.mackin@oag.texas.gov
        esteban.soto@oag.texas.gov

        ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on this 7th day of August, 2017, a true and correct copy of the foregoing was filed electronically with the Court and delivered via the CM/ECF system to all counsel of record.

                                              /s/Anne Marie Mackin
                                              Assistant Attorney General