**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, *et. al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ROLANDO PABLOS, IN HIS OFFICIAL | § | Civil Action No. 5:16-cv-00257-OLG |
| CAPACITY AS THE TEXAS | § | |
| SECRETARY OF STATE and STEVEN C. | § | |
| McCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS | § | |
| DEPARTMENT OF PUBLIC SAFETY | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY**
**JUDGMENT PENDING APPEAL AND MOTION TO STRIKE "DECLARATIONS"**

On May 18, the Court issued a detailed and carefully crafted Judgment. Most importantly, the Court ordered Defendants to correct their violation of federal law within 45 days to protect Plaintiffs and similarly situated Texas voters from being denied their right to vote.[1] Indeed, the record shows that more than 1.5 million Texans who interact with DPS online annually, including the Plaintiffs, are irreparably injured by DPS's ongoing failure to comply with the NVRA and the mandates of the Equal Protection Clause. With an upcoming registration deadline for the November 2018 election, the Court recognized that quick action is necessary to ensure that hundreds of thousands of Texans have their rightful simultaneous opportunity to register to vote with online drivers' license transactions between July 2 and the October 9 deadline.[2]

After two years of litigation and a decade of noncompliance, Defendants now seek further

---

[1] Plaintiffs incorporate the definitions and abbreviations used in the Court's May 10 Order (Dkt 105).
[2] Plaintiffs estimate that 350,000 Texans will utilize DPS' online drivers' license services during this time period.

delay, grimly determined to allow yet another election cycle to pass. But Texas voters have waited too long already. The Court should reject this attempt to further disenfranchise Texas citizens.

For the reasons outlined in this Response and Motion, Plaintiffs respectfully ask the Court to deny the Motion for a Stay Pending Appeal ("Motion") (Dkt. 111) and strike the affidavits attached thereto.

## I.
## MOTION TO STRIKE DECLARATIONS

With their Motion, Defendants submit three declarations with new facts that have not been previously disclosed, including an affidavit from a witness who was not previously disclosed.[3] In these affidavits, Defendants tell the Court and the Plaintiffs for the very first time that, as a result of the State changing its web vendor for Texas.gov, a "production coding freeze" is planned to begin on July 1 to aid with the transition. Buaas Decl. ¶¶ 4-5. According to Defendants, the coding freeze prevents the State from complying with the Court's Judgment.

The affidavits are untimely and should be struck from the record. "As with a motion for reconsideration, a motion to stay should not be used to relitigate matters, submit new evidence, or 'raise arguments which could, and should, have been made before the judgment issued.'" *ODonnell v. Harris County*, 260 F.Supp.3d 810, 815 (S.D. Tex. 2017) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)). Since at least June 30, 2017—when Plaintiffs filed their Motion for Summary Judgment requesting that Defendants be directed to collect and transfer voter registration information submitted during online driver's license transactions—the

---

[3] Defendants did not previously disclose Jennifer Buass as a person with discoverable information in this case. The other affiants, Sheri Gipson and Brian Keith Ingram, were disclosed to Plaintiffs, but their new affidavits include evidence that should have been disclosed at the Summary Judgment phase, and at times, contradict their prior testimony and the record in this case. *E.g.* Dkt. 94-12 at 175:24-176:28("Q: If DPS were directed to do so, does it have the ability to send the Secretary of State the electronic signatures of customers who renew or change their address online? A: … yes, it could be accomplished. But it would take conversation between Secretary of State and Department of Public Safety and Texas NIC.").

State has known that the reprogramming of Texas.gov was a key fact issue in this case. [4]  Then, Defendants knew by March 30—when the Court announced that it was granting Plaintiffs' Motion for Summary Judgment—that it would almost certainly be ordered to promptly reprogram its online system at DPS in the precise manner set forth in the Judgment.[5]  Yet, for months and despite the Court's explicit direction to propose a judgment, the State failed to notify the Court or the Plaintiffs of the information it now improperly seeks to introduce.  Because this evidence is new, it was produced well outside of the discovery period and thereby could not be contested through cross-examination or other means, and because it relates to already-adjudicated issues of feasibility and irreparable injury, the Court should strike these affidavits[6] and consider only the facts properly in the record.  *See ODonnell*, 260 F.Supp.3d at 815.[7]

## II.
## STANDARD FOR STAY PENDING APPEAL

"A stay is an 'intrusion into the ordinary processes of administration and judicial review' . . . .  The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders . . . ."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal citations omitted).  The factors the Court weighs while considering a stay are well established: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

---

[4] Dkt. 77 at 25; s*ee also* Dkt. 1 at 17.

[5] Dkt 103.

[6] It is well established that the affidavits would not be considered if this motion for stay was filed in the Fifth Circuit on appeal. *Greenberg*, 364 F.3d at 669 ("Arguments not raised in the district court cannot be asserted for the first time on appeal. . . .This is especially true where the assertion first raised on appeal is factual.")

[7] In the alternative, the Court should allow Plaintiffs the opportunity to (1) take limited depositions of no longer than three hours of each of the three affiants by June 8th, and (2) respond substantively to the new information provided by June 12th.  If the Court decides to reopen discovery in this manner, however, Defendants should be ordered to move forward with compliance during the interim period.

proceeding; and (4) where the public interest lies." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken*, 556 U.S. at 425–26) (denying Mississippi's motion for stay of preliminary injunction pending appeal in case involving enforcement of state statute); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013)); *see also In re Ramu Corp.*, 903 F.2d 312, 319 (5th Cir. 1990) (courts have "wide discretion" to determine whether or not a stay is appropriate). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433–34 (internal quotations and citations omitted). The party requesting the stay bears the burden of proving that the fact justify such discretion. *Id.* at 434.

## III.
## ARGUMENT

Defendants fail to show sufficient cause to stay this case pending appeal, and such a stay would irreparably harm the Plaintiffs, those similarly situated, and the public.

### A.  Defendants fail to show a "strong likelihood" of success on the merits.

For the reasons stated in the Court's May 10 Order granting Plaintiffs' Motion for Summary Judgement (Dkt 105), Defendants are not likely to succeed on the merits in this case, much less have they demonstrated a "strong" likelihood of this fact.[8] The Court meticulously reviewed and struck down Defendants' arguments regarding statutory and Article III standing, Dkt. 105 at 27-39. Defendants contend that they are likely to succeed on the merits on appeal based on: (1) the jurisdictional standing argument rejected by this Court, (2) the alleged overbreadth of the injunction, and (3) the alleged vagueness of the injunction. But, as described

---

[8] *See* Dkt 105 at 60 ("Defendants are violating § 20503(a)(l); 20504(a),(c),(d), and (e); 20506(4)(A)(iii), and (d); and 20507(a)(1)(A) of the NVRA and their excuse for noncompliance is not supported by the facts or the law.").

below, Defendants are not likely to succeed on the merits of any of these claims.

### 1.   The proper threshold here is *not* a "substantial case on the merits."

As noted above, to successfully request a stay pending appeal, a party must typically show that it has a "strong likelihood of success on the merits."  Defendants claim, however, that they are entitled to a less stringent threshold—that they need only show a "substantial case on the merits." Dkt. 111 at 2.  But a relaxed standard is only appropriate when a "serious legal question" is at stake and the balance of the equities weigh heavily in favor of a stay—two criteria that are not established here. *Baylor Univ. Med. Ctr*, 711 F.2d 38, 39 (5th Cir. 1983) (per curium).

*First*, Defendants contend that their standing argument constitutes a "serious legal question."  Dkt. 111 at 2.  Defendants provide nothing more than a conclusory statement to support this proposition—and presumably cannot provide anything more convincing.  As is indicated in this Court's previous Orders and Opinions in this case, the standing arguments raised by Defendants were not novel and have been rejected by federal courts across the country.  *See* Dkt 52 at 3-9; Dkt 105 at 27-37.  To be clear, the *impact* of a case on the parties and the public is not the same thing as the seriousness of the *legal question* involved—while this may be a case with "serious" impacts on the parties and the public, that does not mean that Defendants' legal argument (an oft-rejected jurisdictional defense) is a "serious legal question" in the context of a stay. Accordingly, Defendants cannot meet the applicable threshold for success on the merits.

*Second*, Defendants also fail to satisfy the requirement that the balance of the equities weigh *heavily* in their favor. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)) (noting that the Court must include "consideration of the other three [stay] factors" in its analysis).  Indeed, the balance of the equities, when considering the likely injuries to the Plaintiffs and to Texas voters, weighs against granting a stay, *see infra*, Parts B, C & D.

Accordingly, Defendants' motion for stay must be reviewed under the typical—and more stringent—standard requiring Defendants to make "a *strong showing* that [they are] likely to succeed on the merits." *Nken*, 556 U.S. at 425 (emphasis added).  Defendants fail to make such a showing and, in fact, do not even seriously attempt to do so in relation to the merits of the Court's decision. *See generally* Dkt. 111.

> **2.  Defendants waived their Rule 65(d) challenges to the Court's Judgment when they failed to comply with the Court's Order to provide a draft of specific language that would properly give effect to the Court's opinion on summary judgment.**

On March 30, 2018, the Court notified the parties that it intended to grant Plaintiffs' Motion for Summary Judgment (Dkt. 77) and deny Defendants' competing Motion (Dkt. 82).  On May 10, the Court issued its detailed Order with the basis for that ruling, explaining why Plaintiffs' legal claims are meritorious, making factual findings concerning the remedy the Plaintiffs requested in their summary judgment briefing and ordering both parties to prepare a proposed judgment to give effect to the Order.  Despite Plaintiffs' attempts to file a joint proposed judgment, Defendants declined to cooperate;[9] ultimately, Defendants did not file any proposed judgment.

Now, despite their failure to propose any specific language to the Court, Defendants contend that the Court erred by issuing an injunction that was overbroad and vague in violation of FED. R. CIV. P. 65(d), and that this purported error is the primary basis upon which they are "likely to succeed on the merits" for purposes of considering the stay pending appeal.  The law of this circuit is clear: a motion to stay cannot be used to raise new arguments which should have been raised earlier in the proceedings, and such arguments are waived. *ODonnell*, 260 F.Supp.3d at 815; *see Chicago & North Western Transp. Co. v. Railway Labor Executives' Ass'n*, 908 F.2d 144, 169 (7th Cir. 1990) ("Rule 65(d) is [not] jurisdictional in the sense that its requirements are

---

[9] Dkt. 106; Dkt 106-1; Dkt 106-2; Dkt 106-3; Dkt 106-4.

nonwaivable . . . ."). Here, as in *ODonnell*, Defendants had the obligation by order of the Court to propose a specific remedy that could have cured their purported concerns of vagueness and overreach, but failed to do so—therefore, these arguments should be deemed to be waived. *ODonnell*, 260 F.Supp.3d at 815.   Defendants should not now be heard to complain about the Judgment this Court ultimately entered after refusing to comply with the Court's order requiring their participation in drafting that very Judgment.   Further, because Defendants should be deemed to have waived their Rule 65 objections by not complying with the Court's order to propose specific language for the Judgment, and because "[a]rguments not raised [or waived] in the district court cannot be asserted for the first time on appeal," Defendants are highly unlikely to be able to succeed on these arguments before the Fifth Circuit.   *See id*. (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004)). Finally, as set out below, all of the facts presented in the Declarations attached to Defendants' motion could—and should—have been raised months ago, or at least prior to the entry of judgment. Whatever claims or defenses arise from them should also be deemed waived.

### 3.   The injunction is not overbroad and is narrowly tailored.

In an attempt to establish another basis upon which they might be successful on the merits, Defendants cite paragraphs 4, 6, and 7 of the judgment, alleging that the Court's injunction is overbroad because it "exceeds the violations that the Court found" and is not limited to the least intrusive means of remedying those violations. Dkt 111 at 3-5. Defendants are wrong on both counts.

Defendants state broadly that the Court has failed to take proper account to the principals of federalism and, by its injunction, has waded into a territory (*i.e.*, voter registration) completely controlled by the state. This is incorrect.   Congress has, through passing the NVRA in 1993,

expressly provided a structure for voter registration through drivers' license entities (in addition to regulating several other aspects of the voter registration process). This structure cannot legally be altered by the State and trumps any State practice to the contrary.  Further, the Court instructed Defendants to choose their own proposed form of judgment setting out the necessary steps to comply with the NVRA, but the Defendants refused.  Thus, rather than an inappropriate overstep of its authority, the Court exercised its well-established authority to require compliance with the NVRA through an injunction.

  **a. The changes to the State's process required by the injunction are narrowly tailed to the NVRA violation.**

  Importantly, the Declarations attached to Defendants' Motion (which should be struck) do not dispute that Defendants are *already capable* of implementing sections (a)-(d) of paragraph 4 in the Judgment, which directs them to take steps to comply with the NVRA. Instead, Ingram claims that Defendant SOS would "need its current vendor to tell the office" whether it could comply with paragraph 4(e) of the Judgment, which requires Defendants to "track, record, and retain" driver license customers' responses to the voter registration questions. Dkt 111-2, Ingram Dec. at ¶ 7. Gipson claims only that the directives at sections 4(e) and (f) of the Judgment— requiring that DPS transmit voter registration information to SOS as well as tracking, recording, and maintaining it—are "not currently part of the existing functionality" of the driver license system. Dkt. 111-3, Gipson Dec. at ¶ 4.

  Nevertheless, in their motion Defendants attack as overbroad three portions of the injunction requiring the State to change the process for online DPS transactions, including the instruction to change the voter registration question contained in DPS online transactions, the instruction to "track, record, and retain" responses to voter registration questions, and to transmit individual responses to voter registration questions and a previously captured signature to SOS.

Dkt. 111 at 4. All three of these mandates are supported by the Court's detailed legal and factual findings that the State has violated and continues to violate the NVRA by failing to provide for simultaneous voter registration application with online drivers' license renewal and change of address transactions. Dkt 109 at 1; Dkt 105. Further, authority for each of the three requirements addressed by Defendants can be found in the NVRA itself. 52 U.S.C. §§ 20504(c)(1); 20503(a)(1); 20504(a), (c), (d), and (e).

> **b. The monitoring requirements are supported by the State's consistent failure to operate in accordance with the NVRA.**

Defendants wrongfully contend this Court lacks the authority to order a public education campaign, monitoring and reporting to ensure their compliance with the NVRA. Defendants cite to *Ass'n of Cmty. Orgs. For Reform Now (ACORN) v. Edgar*, 56 F.3d 791 (7th Cir. 1995) and a similar 9th Circuit Opinion for the proposition that the Court failed to "display the 'adequate sensitivity to the principles of federalism' required in the Elections Clause Context." *See* Dkt 111 at 4. That case, however, is distinguishable. In *Edgar*, the Court explained that there was no reason to believe that Illinois would not comply with the NVRA after the Seventh Circuit held that the NVRA was, in fact, constitutional; therefore, the Court felt that it did not need to impose a detailed injunction with specific measures for implementation but could enter a simple order for the state to comply with the NVRA. *Id.* The *Edgar* court noted that "until it appears that the state will not comply with such an injunction, there is no occasion for the entry of a complicated decree that treats the state as an outlaw and requires it to do even more than the 'motor voter' law requires." *Id.* Accordingly, despite the State's contention, *Edgar* confirms that a state *can and should* be required to take additional measures when it had willfully failed to comply with the NVRA, as Texas has, and indeed, can be required "to do even more" to prove its ongoing compliance.

Another case cited by Defendants underscores that monitoring is appropriate when a state

refuses to comply with the NVRA.  In *United States v. Louisiana*, the District Court for the Middle District of Louisiana explained that,

> **[w]here a state or its subordinate agencies openly and plainly refuses to comply with the NVRA, such monitoring may be proper.**  Indeed, other plaintiffs have requested it, and other courts have recognized this particular[] remedy['s] special value to securing the NVRA's aims.  Historically, when NVRA violations have been suitably proven, as they have been here, courts have not hesitated to compel states to submit plans for full and prompt compliance.

*United States v. Louisiana*, 196 F. Supp. 3d 612, 676 (M.D. La. 2016) (vacated by settlement) (internal citations omitted) (emphasis added).

In this case, as is evident from the record and as stated in this Court's May 10 Order, Defendants, while accepting that the NVRA in constitutional and therefore imposes duties on them, have nevertheless refused to fully comply with its mandates.  Accordingly, a simple injunction like that contemplated by the *Edgar* court under wholly different circumstances would not be sufficient here to ensure compliance.  Instead, given the State's track record, lack of monitoring would likely lead to inadequate implementation, ultimately causing more litigation on this issue, the further expenditure of the Court's resources, and the continued loss of voting rights for millions of eligible Texans.  The Court ordered monitoring and reporting requirements will prevent these undesirable possibilities and will not overburden Defendants who have invited such requirements through their illegal actions.

### c.  The media campaign is justified in this case.

Similarly, the Court has broad authority to order remedial measures to cure damage caused by Defendants' NVRA violations.  In general, when granting injunctive relief, "courts of equity have broad discretion in shaping remedies."  *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir.1986). In this case, the State's willful violation of the NVRA has caused actual confusion among eligible voters, as is evidenced in the record and the Court's May 10 Order, Dkt 105 at 7-8, and the State's

failure to inform Texans about its compliance with the NVRA after this Court's Order will continue to mislead them.[10]  Voter education campaigns been fashioned in other voting rights cases where actual confusion was likely.   *See Veasey v. Abbott*, No. 2:13-CV-00193, at Dkt No. 895 (S.D. Tex. Aug. 10, 2016) (order) (ordering the State of Texas to "develop a detailed voter education plan" at a cost of some $2.5 million in relation to interim orders on Texas' Voter ID law); *id.* at Dkt. No. 898 (party filing) (outlining the State of Texas' voter education plan including television, print, and digital media).[11]

### 4.  The injunction is not impermissibly vague.

Defendants claim the Court's injunction is impermissibly vague, specifically calling the Court's attention to paragraph 2 and 3 of the judgment and claiming that the Judgment fails for want of explaining how the facts established in the record violate the NVRA.  Dkt 111 at 6–7. Defendants are mistaken. Final judgments need not recite all of the salient facts in the record; instead, they should be self-contained, separate documents setting out who has won and what relief has been rewarded, but omitting the reasons, which appear in the court's opinion. *See Otis v. City*

---

[10] Dkt 94-7 at 253:18-25; *see infra* at n.17.

[11] Paragraph Six of the Final Judgment requires Defendants to submit a proposed public education plan within 14 days detailing the use of at least three media venues to promote the new service and incorporating promotion of the new service into existing marketing programs and campaigns related to online driver's license applications. Dkt. 109 at 5. The Judgment gives the state broad discretion in how and when to put the plan in to action.  Defendants claim that creating this public education plan within 14 days is not feasible. Defendants' claim contradicts the record.

Defendant DPS already implements media and publicity campaigns promoting online driver's license services through their vendor, NIC, Inc. Dkt. 94-9 at 37-39. NIC, Inc., based on their self-funded business model and pursuant to their contract with Defendants, drives the advertising of Defendants' online driver's license services. Id. NIC, Inc. also already promotes intra-county online voter registration through Defendant SOS. *Id.*

Defendants can comply with Paragraph Six, for example, by simply creating a public education plan that adds promotion of the new service to NIC, Inc.'s existing online driver's license internet advertising, promote the new service on each Defendants' website, and incorporate promotion of the new service to all existing campaigns related to online driver's license applications. Since NIC, Inc. mainly promotes online driver license services and Defendant DPS meets with them regularly to discuss DPS related applications on Texas.gov, Defendants should find creating a plan simple to do. Id. at 37-39, 84. If Defendants refuse to use NIC, Inc., Defendants can, alternatively, sponsor radio and television messages using the Texas Association of Broadcasters' (TAB's) Public Education Program, promote the new service on Texas.gov, and incorporate promotion of the new service to all existing campaigns related to online driver's license applications. TAB's Public Education Partnership Program, https://www.tab.org/member-services/ncsa (last visited May 24, 2018). Multiple State of Texas agencies already use TAB for multi-media public education messaging. *Id.*

*of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994) (citation omitted).  Here, after explicitly referencing the Court's summary judgment findings, the Judgment does just that. Dkt. 109. Further, unlike the injunction in *Schedler,* 826 F.3d at 211, Paragraph 2 of the Judgment here does not refer to vague policies, procedures, or directives; instead, it prohibits Defendants from engaging in specific behaviors that violate the NVRA.  To the extent that Paragraph 3 is considered by the Court to be an impermissible general instruction to obey the law, that paragraph may be stayed by the Court without staying the rest of the Judgment or implicating the Court's remaining orders whatsoever.

**B.  Defendants will not be irreparably harmed by compliance with the Judgment.**

Defendants seem to take the position that any injunction of a state law, and particularly one that necessitates the expenditure of state funds, creates a threat of irreparable injury to the State that is dispositive of the Court's consideration of the equities. This is a gross exaggeration of law and an inaccurate portrayal of the facts before the Court.

To be sure, courts have held that a stay can be justified because enjoining a state's duly enacted laws can cause irreparable injury to the state because of its interest in enforcing its own laws. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers); );[12] *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers).  Such injury, however, is not dispositive, and must be weighed against the other equities involved: "If it were [dispositive], then the rule requiring 'balance' of 'competing claims

---

[12] *Maryland v. King* is not applicable to voting rights cases seeking to enforce federal law. *Ga. State Conference of the NAACP v. Fayette County Bd. of Com'rs*, 118 F.Supp.3d 1338, 1348 (N.D. Ga. 2015) ("the situation in [*Maryland v.*]*King* was distinguishable from the present situation in several respects. It did not involve voting rights; instead, it concerned the stay of a judgment that would have enjoined a state law regarding collection of defendants' DNA prior to being convicted. In that case, Chief Justice Roberts noted that in addition to the general harm of enjoining a duly enacted state law, there was "ongoing and concrete harm to Maryland's law enforcement and public safety interests." Here, there are no attendant public safety concerns, and further, Defendants' interest in using the at-large method of voting is diminished to the extent that it violates § 2.").

of injury' would be eviscerated. Federal courts instead have the power to enjoin state actions, in part, because those actions sometimes offend *federal* law provisions, which, like state statutes, are themselves 'enactments of its people or their representatives.'" *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 658 (9th Cir. 2009) (vacated on other grounds); *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (lifting stay; noting that a state's inherent injury in being enjoined is not dispositive and must be weighed against the other factors outlined by the Supreme Court in *Nken*).

Regardless, in this case no *law* of the State of Texas is being enjoined.  Instead, the State is being compelled to comply with controlling federal law that it has previously ignored.  That is, the State has been enjoined from engaging in actions that offend federal law—the NVRA—and the Equal Protection Clause of the United States Constitution.  Recognizing as much, the State contends *not* that it is being prevented from enforcing its own laws, but rather that it is being forced to act where no state law requires it to act.  This is a fundamentally different concept, and finding that this is irreparable harm would mean that a state could essentially never be enjoined without a stay pending appeal—an outcome that is contrary to Supreme Court case law. *Nken*, 556 U.S. at 433; *see also N.M. Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1254-1255 (10th Cir. 2017) (New Mexico suffered no irreparable harm because it was "not enjoined from establishing, enforcing, or effectuating any of its statutes," even though it was enjoined "from effectuating [its] interpretation of the Act and [its own] internal regulations.").

DPS will also not be irreparably harmed merely because of the cost of implementation.  As the Court recognized, the undisputed Summary Judgment evidence showed that it would cost Defendants about $182,000 to implement the changes necessary to comply with the NVRA, and a

plan for this implementation has already been contemplated.[13]  This is not a significant burden to Defendants and is likely less than they will spend to appeal this case.  *Contra, Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016) (holding that the State's financial cost of compliance would be an irreparable injury without a stay when the record showed *$2 billion in costs* and that these costs were not recoverable if overturned on appeal—a much different circumstance from the present case).  Moreover, Defendants are already under contract with vendors who can implement the changes, and Defendants have not shown the Court why it would add any additional cost whatsoever as they are assumedly *already paying* those vendors who will implement the changes as described in the Court's Judgment.  The uncontroverted evidence in the record shows that the implementation is both technologically feasible and cheap.[14]  The evidence in the record also shows that the state is likely to actually save money by implementation because it would simplify the registration and update process for many people, reducing the burden on the Defendants to process paper applications, and would also reduce data entry errors that cause problems at the polls.[15]

---

[13] Dkt. 77-1 Appx. at 46 (excerpting deposition testimony indicating that the SOS has previously estimated $182,000 for programming hours that would implement a fully online voter registration system that is similar, but perhaps more encompassing, than what is required by Section 5 of the NVRA).  Dkt. 94-11 at 186:5-187:24.

[14] *See* Dkt 105 at 55 ("docket no. 94-13, deposition of Eitan Hersh at 34:20-23 ("my opinion is that there are no obvious substantial technical reasons why Texas does not do that or financial situations why Texas does not do that"); 110:6-111:13 (… "it [could] transmit, just as it does now for mail and in-person transactions, the previously recorded digital signature of the voter because everyone who is renewing or changing their address online has a digital signature stored at the DPS"); 115:15-25 (38 other states have an online process for voter registration)."); *id.* at 59 ("Not only have Defendants failed to justify their actions, but they also acknowledge that permitting simultaneous voter applications for motor voters that renew or change their driver's license online would be technologically very feasible and the cost would be minimal."); "See docket no. 77, appx. 45-46, deposition of K. Ingram at 184:19-185:2 (it's "technically possible" and "I don't think it would cost a lot of money"), 186:15-16 ("I'm not contesting the logistics of it").

[15] *See* Dkt 105 at 59 & n.55 ("docket no. 94-13, deposition of E. Hersh at 110:6-10 (it would be a "massive cost savings")); 111:10-13 (the savings would be statewide); *id.* at 59–60 ("In fact, the undisputed testimony reflects that changing the online process to include simultaneous voter registration applications would very likely lead to greater efficiency for the State and increased voter registration for Texans."); *id.* at 60 n.56 ("See docket no. 94-13, deposition of E. Hersh at 114:8-10; 114:24-115:14 (having people filling out information by hand and then having state employees key that information in electronically leads to more errors)").

**C.  Plaintiffs and other Texans would be substantially injured by a stay.**

As described throughout this case, more than 1.5 million Texans every year are currently being deprived of their right to register to vote simultaneously with their DPS transactions.  Dkt. 85-1 Appx. at 25.  For every month this case is stayed, Plaintiffs estimate that some 120,000 Texans will continue to be denied this right, despite the Court's ruling that DPS must comply with the NVRA and provide this simultaneous voter registration.  While the individual Plaintiffs in this case are currently registered to vote, they, like all Texans, have a right under the NVRA to update their registrations or register in a different county at the same time that they renew or update their driver's license information. Dkt. 105 at 31-32, 44 (holding that Plaintiffs have been deprived of their statutory right to simultaneous voter registration under the NVRA); *see Charles H. Wesley Educ. Found., Inc.*, 324 F.Supp.2d 1358, 1368 (N.D.Ga.2004) (noting that no monetary remedy could correct the fact that people intending to register to vote were not added to the rolls).  A stay of the judgment would further injure the ability to exercise this right.

**D.  A stay would not be in the public interest.**

The public interest lies in greater voter participation and access to the polls.  "[V]oting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U. S. 173, 184 (1979).  The NVRA was established by Congress to make sure that states provided adequate opportunity to participate in the democratic process. Failure to comply with the NVRA is thus an explicit rejection of Congress's legislative determination of policy in the public interest, and failing to register voters in accordance with the NVRA undermines it.  *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1351 (N.D. Ga. 2016) ("The public has an interest in seeing that the [state] complies with federal law, especially in the important area of voter registration. Ordering the state to comply with a valid federal statute is

most assuredly in the public interest.").

Moreover, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U. S. 724, 730 (1974).  The NVRA was developed as just such a regulation, to provide fair and equal access to voter registration for federal elections across the country and has been repeatedly upheld as a lawful exercise of Congressional power. *See, e.g.*, *Arizona v. Inter Tribal Council of Arizona, Inc*., 570 U.S. 1, 9 (2013).  When Texas fails to comply with the NVRA's provisions, Texans are not treated fairly compared to their out-of-state counterparts, and Texas has denied its residents equal access to the democratic process. Permitting a continued violation of the NVRA is contrary to the public interest for these fundamental reasons.

Not surprisingly, Defendants fail to identify any public interest that is protected by continuing to deny DPS customers the ability to register to vote in compliance with the NVRA. To the extent Defendants contend that a stay would prevent voter confusion, this claim is without merit, as DPS's current policies and procedures are already confusing to its customers.[16]   In *DeLeon v. Perry*, a case in which this Court stayed a case pending appeal for "the avoidance of confusion," the likely confusion was clear—if the Court of Appeals reversed, then the legality and status of same-sex couples married in that interim period would be in question and likely require extensive additional litigation.  *See De Leon v. Perry*, No.SA-13-CA-0982-OLG, 2014 WL 12691798 at *3 (W.D. Tex. Dec. 12, 2014) (order) (citing *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 58 (5th Cir.)).   Here, there is no such ambiguity or confusion that would be created because of the implementation of NVRA-compliant procedures in the time before the case is

---

[16] Dkt. 94-7 at 253:18-25; *infra* at n.17.

resolved on appeal—persons who have a right to register to vote would simply be registered in accordance with this Court's ruling.  If the ruling was reversed by the Fifth Circuit, those registrations would not be affected, as they would have already been accepted by the SOS, just as if they had been completed in person at any DPS office—presumably, the State would simply stop offering voter registration with new online DPS transactions. More confusion exists in the *status quo* than would exist under the Court's injunction, even if it eventually was reversed and the *status quo* restored.[17]  And even if DPS eventually prevailed on appeal, the only thing that would have happened is that some number of additional Texans would be registered to vote.  Defendants should not be heard to complain that this negatively implicates the public interest.

### E.   In the alternative, the Judgment should only be stayed in part.

To the extent that the Court is inclined to stay its judgment pending appeal, the Court should make every effort to stay only those portions of the judgment that comply with the Supreme Court's test for granting a stay on appeal.  For example, the Court could stay the voter education campaign without staying the entire Judgment. *See, e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 577–78 (5th Cir. 1981) (carving out just those provisions of the Judgment that met the likely success and injury balancing standard).  In doing so, even if Defendants were granted a stay pending appeal as to certain aspects of the Judgment, the primary command of the Judgment—that Defendants come into compliance with the NVRA within 45 days—should be allowed to continue in force.  *See generally* Dkt 111 at 4 (complaining of supposed overbreadth of paragraphs 4, 6–7 of the Judgment); *id*. at 6–7 (complaining of supposed vagueness of paragraphs 2–3 of the Judgment).

---

[17] *See* Dkt 77 Appx at 15 ("The Elections Division has received more than 1,800 reports from individuals who completed an online transaction with DPS and mistakenly believed that the voter rolls were updated too. These votes complain to election officials when they attempted to vote but none of their votes were ultimately counted."); Dkt 105 at 7-8 (recognizing that the Plaintiffs in this case were actually confused by the status quo DPS system.).

**IV.**
**CONCLUSION**

For the reasons stated herein, Defendants have failed to meet their burden in showing that a stay pending appeal is justified in this case.  Plaintiffs respectfully PRAY that the Court strike the Declarations attached to Defendants Motion (Dkt 111), find that Defendants waived their Rule 65 Objections for failure to comply with the Court's May 10th Order, and Deny their Motion to Stay the Judgment in this case pending appeal.


Dated: May 24, 2018.                     Respectfully submitted,

                                        By: */s/   Ryan V. Cox*

                                        Peter A. Kraus (*pro hac vice*)
                                        Texas Bar No. 11712980
                                        kraus@waterskraus.com
                                        Charles S. Siegel
                                        Texas Bar No. 18341875
                                        siegel@waterskraus.com
                                        Caitlyn E. Silhan
                                        Texas Bar No. 24072879
                                        csilhan@waterskraus.com
                                        Rachel A. Gross *(pro hac vice)*
                                        Texas Bar No. 24073608
                                        rgross@waterskraus.com

                                        WATERS & KRAUS, LLP
                                        3141 Hood Street, Suite 700
                                        Dallas, Texas 75219
                                        214-357-6244 (Telephone)
                                        214-871-2263 (Facsimile)

                                        Mimi M.D. Marziani
                                        Texas Bar No. 24091906
                                        mimi@texascivilrightsproject.org
                                        Rebecca Harrison Stevens
                                        Texas Bar No. 24065381
                                        beth@texascivilrightsproject.org
                                        Hani Mirza
                                        Texas Bar No. 24083512
                                        hani@texascivilrightsproject.org

18

Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2018, a true and correct copy of the foregoing *Response and Motion* was served upon counsel of record via the Court's ECF system in compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

/s/     Ryan V. Cox