UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS,<br><br>        Plaintiffs,<br>  v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State;[1] STEVEN C. MCCRAW, in his official capacity as the Director of the Texas Department of Public Safety;<br><br>        Defendants. | Civil Action<br><br>Case No. 5:16-cv-00257-OLG |

**TEXAS DEMOCRATIC PARTY, DSCC, AND DCCC'S OPPOSED MOTION TO INTERVENE**

---

[1] Intervenors have substituted the name of the current Texas Secretary of State (the "Secretary") in the caption pursuant to Fed. R. Civ. P. 25(d).

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND.......................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

   A. Intervenors have independent grounds of jurisdiction to support this lawsuit ................... 3

   B. Intervenors are entitled to intervene as of right ................................................................. 5

      1. Intervenors' motion to intervene is timely ....................................................................... 5

      2. Intervenors have a strong interest in this action .............................................................. 8

      3. Disposition of this matter would impair Intervenors' ability to protect their interest as a practical matter ................................................................................................................ 8

      4. Intervenors' interests are inadequately represented by the existing parties .................... 9

   C. Intervenors are also entitled to permissive intervention ..................................................... 9

IV. CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Alabama Legislative Black Caucus v. Alabama*,
　575 U.S. 254 (2015) .................................................................................................................. 4

*Bay Cty. Democratic Party v. Land*,
　347 F. Supp. 2d 404 (E.D. Mich. 2004) .................................................................................... 4

*Ceres Gulf v. Cooper*,
　957 F.2d 1199 (5th Cir. 1992) ................................................................................................... 8

*Crawford v. Marion Cty. Election Bd.*,
　553 U.S. 181 (2008) .................................................................................................................. 4

*Diamond v. Charles*,
　476 U.S. 54 (1986) .................................................................................................................... 8

*Edwards v. City of Houston*,
　78 F.3d 983 (5th Cir. 1996) .................................................................................................. 6, 8

*Fla. Democratic Party v. Scott*,
　215 F. Supp. 3d 1250 (N.D. Fla. 2016) ..................................................................................... 4

*Fuller v. Volk*,
　351 F.2d 323 (3d Cir. 1965) ...................................................................................................... 5

*Gaines v. Dixie Carriers, Inc.*,
　434 F.2d 52 (5th Cir. 1970) ................................................................................................... 8, 9

*Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs. of The Orleans*
　*Levee Dist. & State Of Louisiana*,
　493 F.3d 570 (5th Cir. 2007) ................................................................................................. 5, 9

*Hunt Tool Co. v. Moore, Inc.*,
　212 F.2d 685 (5th Cir. 1954) ................................................................................................. 2, 4

*In re Lease Oil Antitrust Litig.*,
　570 F.3d 244 (5th Cir. 2009) ..................................................................................................... 5

*In re Lease Oil Antitrust Litig.*,
　570 F.3d at 247–48 .................................................................................................................... 6

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
　806 F.2d 1285 (5th Cir. 1987) ................................................................................................. 10

*Martinez v. United States*,
　No. DR-05-CA-055, 2005 WL 8155760 (W.D. Tex. Dec. 12, 2005) ...................................... 10

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir.), *cert. denied*, 449 U.S. 1011 (1980)...................................................8

*Sandusky Cty. Democratic Party v. Blackwell*,
    387 F.3d 565 (6th Cir. 2004) ........................................................................................4

*Simmons v. I.C.C.*,
    716 F.2d 40 (D.C. Cir. 1983)........................................................................................5

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ...............................................................................6, 7, 10

*Stringer v. Pablos*,
    320 F. Supp. 3d 862 (W.D. Tex. 2018)...................................................................2, 3, 7, 10

*Stringer v. Whitley*,
    942 F.3d 715,726 (5th Cir. 2019) (J. Ho, concurring) .............................................................10

*Summit Office Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) ......................................................................................5

*Tex. Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ........................................................................................4

*United States v. City of Jackson, Miss.*,
    519 F.2d 1147 (5th Cir. 1975) ......................................................................................8

**OTHER AUTHORITIES**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1917 (3d ed.) ..............................................................................................................2

Fed. R. Civ. P. 24(a)(2).................................................................................................1, 5, 8

Fed. R. Civ. P. 24(b)(1)(B), (3).............................................................................................10

Fed. R. Civ. P. R. 24 (a)(2) ...............................................................................................6

## I.     INTRODUCTION

TEXAS DEMOCRATIC PARTY ("TDP"), DSCC, and DCCC ("Intervenors") seek to enter this case pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B) to ensure that Defendants may not avoid their obligation to follow constitutional law to the detriment of eligible voters throughout Texas, simply because the original Plaintiffs to this action were deemed to not have standing. Defendants encourage Texas driver's license holders to renew and/or update their addresses online at the website of the Department of Public Safety ("DPS") while disenfranchising these same Texans through an unlawful online process which does not permit users to simultaneously register to vote while deceiving them into believing they are doing so. This is in stark contrast to the process for mail or in-person transactions, where Defendants permit simultaneous voter registration.

This Court previously determined that these practices violate both the National Voter Registration Act and equal protection. Defendants appealed and the Fifth Circuit reversed, holding that the original Plaintiffs to this action lacked standing. However, as Judge Ho noted in his concurrence, it did not pass on the merits of this Court's previous determination, saying nothing about the legitimacy of Plaintiffs' claims, or the legality of Texas's current procedure.

Intervenors, a state-wide organization and national committees invested in the success of Democratic candidates, share Plaintiffs' equal protection claims but not their standing infirmities, and seek intervention to permit the merits of this claim to be fully adjudicated. If granted, intervention would not be ancillary to the action of the original Plaintiffs. Rather, Intervenors have *independent* grounds to prosecute this matter and to invoke the Court's jurisdiction over the merits. Intervenors thus have a right to intervene under Fed. R. Civ. P. 24(a)(2). But they also fulfill the requirements of permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), and principles of judicial economy should compel the court to exercise its considerable discretion to permit

intervention on that basis as well. If the motion to intervene is denied, Intervenors would have every right to bring this action instead as a new, independent complaint and pursue relief on the merits against Defendants on the same equal protection grounds here. Denying intervention would cause unnecessary delay and waste the resources of the Court and the parties.

The Fifth Circuit has previously held that intervenors with independent grounds to maintain an action may cure jurisdictional defects even after the action is dismissed. *See Hunt Tool Co. v. Moore, Inc.*, 212 F.2d 685, 688-89 (5th Cir. 1954). This is because when there is an independent basis for jurisdiction with regard to the intervenor's claim, the court has discretion to treat its pleadings as a separate action to adjudicate the claims efficiently and to avoid unnecessary delay. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1917 (3d ed.).

Here, Intervenors possess an independent basis to invoke the Court's jurisdiction and seek to bring a claim the Court already decided on the merits. Granting intervention would streamline the procedure through which this case ultimately gets resolved. Denying intervention would slow resolution, but not alter the result. The equities also strongly favor permitting Intervenors to pursue this action by intervention, because of the important fundamental rights at stake, and every day that Defendants are permitted to continue with their unconstitutional action is a day in which eligible Texans have their right to access the franchise unconstitutionally burdened.

## II.   FACTUAL BACKGROUND

On May 10, 2018, this Court issued an opinion granting summary judgment for Plaintiffs on their claims that Defendants' administration of voter registration through Texas's DPS online system violated the NVRA and the equal protection clause. *Stringer v. Pablos*, 320 F. Supp. 3d 862, 900-901 (W.D. Tex. 2018). Plaintiffs alleged that Defendants "deprive[] Texans of their federal right to register to vote or update their voter registration simultaneously with their

online driver's license renewal and change of address transactions," and Defendants "admit that the key facts of this case are undisputed." *Id.* at 868. Defendants did not allow for simultaneous voter registration or registration updates online despite permitting simultaneous voter registration for mail and in-person transactions. *Id.* at 872-73. Defendants continue to engage in these practices today. *See* Ex. A, Paxton Press Release (Nov. 14, 2019), at 1-2 ("Currently, Texans who use the DPS driver license renewal and change-of-address website are sent to a separate page – administered by the Texas Secretary of State – where they can complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.").

The Fifth Circuit reversed this Court's ruling on November 13, 2019, finding Plaintiffs did not have standing because they became registered prior to filing and because they failed to demonstrate a substantial likelihood of future injury from Defendants' conduct. *Stringer*, 942 F.3d at 721-22, 724-25. The Fifth Circuit's mandate, returning the case to this Court, issued on December 5. ECF No. 122-1. The Fifth Circuit did not reach the merits of Plaintiffs' claims or pass on the Court's judgment.

### III. ARGUMENT

#### A. Intervenors have independent grounds of jurisdiction to support this lawsuit

The Court may properly grant the motion for intervention because Intervenors have independent grounds of jurisdiction to support an equal protection claim. Intervenors are a state-wide organization and national committees that are invested in the success of Democratic candidates, including in Texas. Intervenors' Compl. at ¶¶ 11-13. Defendants' continuing equal protection violations frustrate these efforts, forcing Intervenors to devote additional resources to combat Defendants' ongoing violations that could otherwise be allocated to different portions of

Intervenors' mission. *Id.* The Supreme Court and the Fifth Circuit have held similar injuries sufficient to grant organizational standing, including in a case brought by TDP itself. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with Seventh Circuit that state Democratic party had standing to challenge law requiring government-issued photo identification to vote); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585-86 (5th Cir. 2006) (holding TDP had standing to challenge unconstitutional state action based on diversion of resources and harmed electoral prospects).

Intervenors, as political organizations, also have standing to assert the rights of their members, some number of whom will inevitably be injured by Defendants' continuing arbitrary policies. This provides these organizations with representational standing to bring their members' claims. *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268-271 (2015) (reversing holding that Alabama Democratic Conference lacked standing to bring the claims of its members in racial gerrymandering case); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (holding political party had associational standing to assert the rights of its supporters even though plaintiffs did not identify a specific voter that would be prospectively harmed; that some voters would be harmed was "inevitable"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) ("[P]olitical parties have standing to assert, at least, the rights of its members who will vote in an upcoming election. That [i]s so even [when] the political party c[an] not identify specific voters that would be affected; it is sufficient that some inevitably would."); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 422 (E.D. Mich. 2004) ("[P]olitical parties and candidates have standing to represent the rights of voters.").

Intervenors' independent bases for standing to assert the equal protection claims brought by Plaintiffs provide the Court jurisdiction to continue this action. *Hunt*, 212 F.2d at 688 (reversing

district court's judgment dismissing intervention because intervenors had independent grounds of jurisdiction to support the action); *cf. Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) (holding that "where a plaintiff never had standing to assert a claim against the defendants, [that *plaintiff*] does not have standing to amend the complaint and control the litigation by substituting new plaintiffs" (emphasis added)); *Simmons v. I.C.C.*, 716 F.2d 40, 46 (D.C. Cir. 1983) ("An intervener lacking an *independent* jurisdictional basis cannot maintain suit where the court lacked original subject matter jurisdiction.") (emphasis added); Wright, *supra* ("[I]f there is an independent basis for jurisdiction with regard to the intervenor's claim, the court has discretion to treat those pleadings as a separate action [] to adjudicate the claims raised by the intervenor.").

By allowing the lawsuit to continue with Intervenors, "the [C]ourt can avoid the senseless delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." *Fuller v. Volk*, 351 F.2d 323, 329 (3d Cir. 1965) (quotations and citations omitted).

### B. Intervenors are entitled to intervene as of right

Intervenors meet the Fifth Circuit's liberal test for intervention as of right. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) (holding that intervention is liberally construed, and any doubts are resolved in favor of intervenors). Intervenors' application is timely, they have a direct interest in the subject matter of this lawsuit, disposing of this action will practically impair their ability to protect their interests, and Plaintiffs can no longer adequately represent Intervenors' interests. *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs. of The Orleans Levee Dist. & State Of Louisiana*, 493 F.3d 570, 578 (5th Cir. 2007); *see also* Fed. R. Civ. P. 24(a)(2).

#### 1. Intervenors' motion to intervene is timely

Intervenors' motion is timely under the Fifth Circuit's four-part test. The Court has broad

discretion in considering: "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247–48. These factors are not dispositive but merely provide a framework for the analysis. *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).

Intervenors' motion is timely because they filed slightly more than two weeks after this case returned to the district court following the Fifth Circuit's ruling, which rendered Plaintiffs unable to continue protecting Intervenors' interest. *Edwards*, 78 F.3d at 1000 ("The timeliness clock runs . . . from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit."); *see also* ECF 122. Until the Fifth Circuit's ruling, Plaintiffs had been adequately representing and protecting Intervenors' interests, so Intervenors had neither the necessity nor the right to intervene. *See* Fed. R. Civ. P. R. 24 (a)(2). Indeed, this Court's favorable decision is particularly salient evidence that Plaintiffs adequately represented Intervenors' interests. When the Fifth Circuit dismissed Plaintiffs' suit based on standing, Intervenors were suddenly faced with inadequate representation, and quickly pursued this motion. *See Stallworth*, 558 F.2d at 267 ("By filing their petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly.").

The existing parties will not be prejudiced if Intervenors' motion is granted. The Court only considers the potential prejudice to the parties caused by the delay in intervening, not the prejudice that may result from the intervention itself. *Edwards*, 78 F.3d at 1002; *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). The delay between the matter returning to this Court and the intervention sought here—a day over two weeks—has not harmed the parties;

the docket shows that the parties have not pursued any action in this case since the Fifth Circuit's mandate issued on December 5, 2019. This factor, too, weighs in favor of intervention.

By contrast, Intervenors will be significantly prejudiced if the Court denies this motion. The Court addressed the very same equal protection claim Intervenors seek to raise in its order on the parties' motions for summary judgment, finding that Defendants' conduct violated equal protection. *See Stringer*, 320 F. Supp. 3d at 901. Although it did not reach the merits of those claims on appeal, the Fifth Circuit's conclusion that Plaintiffs lacked standing resulted in reversal of that judgment. To protect their equal protection interests here, Intervenors are left with only two options: they can intervene in this lawsuit and pursue the merits of the Court's judgment, or they can bring a new action raising the same claim against the same Defendants. If Intervenors are forced to bring a new suit, they will necessarily duplicate the efforts of the existing parties, and will be significantly prejudiced as any potential remedy will encounter further, unnecessary delays. *See Stallworth*, 558 F.2d at 267 (finding intervention appropriate when it "concern(ed) the same evidence, memories, and witnesses as the subject matter of the original class suit." (citation and quotation marks omitted)). This factor, too, weighs in favor of intervention.

Intervenors' motion is further supported by the unusual circumstances in this case. Intervenors seek to raise the exact same equal protection argument Plaintiffs successfully raised. The Court is familiar with the facts and record and would not expend many judicial resources if it granted this motion. Similarly, Defendants have already defended their position and would not need to expend many resources if the Court permitted Intervenors to enter the lawsuit as plaintiffs. Intervenors are not seeking to reopen discovery but instead merely wish to file a dispositive motion. Should this case proceed again on appeal, the Fifth Circuit will have the opportunity to decide it on its merits, addressing questions Defendants have already briefed and argued.

### 2. Intervenors have a strong interest in this action

Intervenors meet the second requirement for intervention as of right because they have both organizational and associational standing to bring the equal protection claims at issue here. To meet this prong, Intervenors need only demonstrate an interest that substantive law recognizes as belonging to them, *Edwards*, 78 F.3d at 1004, which is "direct, substantial, [and] legally protectable." *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir.) (citations omitted), *cert. denied*, 449 U.S. 1011 (1980). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992). As noted above, *supra* at 3-5, Intervenors have separate Article III standing to proceed with this matter, clearing this low bar. *See Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (noting that interest required for intervention under Rule 24(a)(2) is less burdensome than the requirements of Article III standing).

### 3. Disposition of this matter would impair Intervenors' ability to protect their interest as a practical matter

Intervenors' equal protection interest would practically be impaired by disposition of this matter because Intervenors would have to pursue additional litigation to protect their interests. The "practical impairment" standard does not require that an intervenor demonstrate that they will be bound by disposition of the action, but rather permits intervention more liberally, *Edwards*, 78 F.3d at 1005, and the decision on whether an interest might be practically impaired "can only be made with reference to the facts and procedural posture of the case." *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1151 (5th Cir. 1975). The Fifth Circuit has, for example, permitted intervention when the practical impairment raised by the intervenor was the burden of pursuing additional litigation. *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970).

Intervenors face a practical impairment similar to that of the intervenors in *Gaines*, where

intervention as of right was permitted because of the practical impairment of pursuing additional litigation. There, a firm which had previously been part of a lawsuit filed a motion to intervene to protect a claimed interest in the attorney's fees at issue in the lawsuit, which it could have pursued in a separate litigation. *Id.* at 54. The Fifth Circuit reversed the district court's denial of intervention, holding that despite the ability to bring a separate lawsuit disposition of the current action would practically impair or impede the ability to protect that interest. *Id*.

The procedural posture of this case and the facts unique to political parties and the harm here enhance this practical impairment. Each day that passes without a resolution results in more of Intervenors' members being unknowingly disenfranchised and causes Intervenors to have to devote greater resources to combat that harm. Requiring Intervenors to pursue needless additional litigation over many months merely to arrive at the same merits determination this Court already made would be a significant practical impairment to Intervenors' interest in this litigation.

    **4. Intervenors' interests are inadequately represented by the existing parties**

Intervenors also meet the last requirement because the Fifth Circuit's decision renders existing Plaintiffs unable to adequately represent Intervenors' interests. Establishing inadequate representation is a "minimal" burden which can be surmounted by "show[ing] that representation of [a putative intervenor's] interest 'may be' inadequate." *Haspel*, 493 F.3d at 578. If intervention is prohibited here, representation of Intervenors' interests in this matter will be nonexistent.

  **C. Intervenors are also entitled to permissive intervention**

In addition to intervention as of right, Intervenors are entitled to permissive intervention because their equal protection claim shares the exact same questions of law and fact as current plaintiffs' equal protection claim, and the only undue delay and prejudice here will occur if Intervenors are forced to file a new lawsuit to advance this claim. To permissively intervene,

9

Intervenors' claims and defenses must have questions of law and fact in common and intervention cannot unduly delay or prejudice the original parties. *Stallworth*, 558 F.2d at 269; Fed. R. Civ. P. 24(b)(1)(B), (3). Intervenors' equal protection claim, like Plaintiffs', turns on Texas' disparate treatment of eligible voters who utilize DPS's online portal for driver's license transactions.

Intervenors meet the requirements of Rule 24(b), and the Court should exercise its broad discretion in allowing intervention. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) ("Permissive intervention 'is wholly discretionary with the [district] court[.]'" (citation omitted)). In exercising that discretion, courts may consider if "the intervenors' interests are adequately represented by other parties and whether intervention will unduly delay the proceedings or prejudice existing parties." *Id.* (citation omitted). Plaintiffs can no longer adequately represent Intervenors' interests. And, undue delay and prejudice will only arise if this motion is denied because Intervenors will file a separate lawsuit advancing the same equal protection claim already decided here. *See, e.g., Martinez v. United States*, No. DR-05-CA-055, 2005 WL 8155760, at *6 (W.D. Tex. Dec. 12, 2005) ("[I]f Plaintiffs' and Applicants' claims are all litigated in one action, the [Defendant] will not be subject to offensive use of non-mutual collateral estoppel with respect to issues determined in this action.").

## IV.    CONCLUSION

The Court already found that Texas' online registration system violates equal protection. *Stringer*, 320 F. Supp. 3d at 901. Judge Ho signaled that the Fifth Circuit may be inclined to agree. *See Stringer v. Whitley*, 942 F.3d 715,726 (5th Cir. 2019) ("If it's good enough for motorist licensing, then it ought to be good enough for voter registration.") (J. Ho, concurring). It defies common sense to force the parties and the Court to restart this lawsuit when the issues are primed for decision. Intervenors respectfully request that the Court grant their motion to intervene.

Dated: Dec. 20, 2019.　　　　　　　　　　Respectfully submitted,

/s/ *John R. Hardin*
John R. Hardin
Texas State Bar No. 24012784
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7743
Facsimile: (214) 965-7793
JohnHardin@perkinscoie.com

Marc E. Elias*
John M. Geise*
Emily Brailey*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
jgeise@perkinscoie.com
ebrailey@perkinscoie.com

*Counsel for the Intervenor-Plaintiffs*

Chad W. Dunn
Texas State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Intervenor- Plaintiff Texas Democratic Party*

*Motions for Admission Pro Hac Vice Forthcoming*

11

**CERTIFICATE OF CONFERENCE**

Counsel for Intervenor-Plaintiffs have conferred with counsel for Plaintiffs and they do not oppose Intervenor-Plaintiffs' motion. Counsel for Intervenor-Plaintiffs have conferred with counsel for Defendants and they indicated their opposition to Intervenor-Plaintiffs' motion.

/s/ *John R. Hardin*
Counsel for the Intervenor-Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, I filed a copy of the foregoing Texas Democratic Party, DSCC, and DCCC'S Motion to Intervene with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *John R. Hardin*
Counsel for the Intervenor-Plaintiffs