IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER; BENJAMIN HERNANDEZ; and JOHN WOODS, <br>   *Plaintiffs*, <br><br> v. <br><br> RUTH R. HUGHS, in Her Official Capacity as Texas Secretary of State; STEVEN C. MCCRAW, in His Official Capacity as Director of the Texas Department of Public Safety, <br>   *Defendants*. | No. 5:16-CV-00257-OLG |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE**

The Texas Democratic Party ("TDP"), DSCC, and DCCC (collectively, "Putative Intervenors") move to intervene in this lawsuit to assert a claim under the Equal Protection Clause. *See* Dkts. 124; 124-2. Putative Intervenors allege[1] that they are "a statewide organization and national committees that are invested in the success of Democratic candidates, including in Texas," and that Defendants' handling of online driver license transactions violates equal protection and "frustrate[s] these efforts, forcing Intervenors to devote additional resources to combat Defendants' ongoing violations that could otherwise be allocated to different portions of Intervenors' mission." Dkt. 124 at 3-4. Putative Intervenors seek to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively under 24(b)(1)(B). Dkt. 124.

---

[1] Courts accept a movant's non-conclusory factual allegations as true for purposes of an intervention request. *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977) (citation omitted).

1

The motion to intervene should be denied for lack of subject-matter jurisdiction because there is no longer a live case or controversy in which to intervene. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506 (1868)). Thus, once the Court of Appeals issued its mandate remanding the case with "instructions to dismiss Plaintiffs' claims for lack of standing," *Stringer v. Whitley*, 942 F. 3d 715, 725 (5th Cir. 2019), any action otherwise would exceed this Court's jurisdiction and violate the Court of Appeals' mandate.

But even if—despite the appellate finding of no jurisdiction—the Court could entertain the intervention motion, such relief would be improper because Putative Intervenors failed to timely pursue intervention. Timeliness is a requirement of both mandatory and permissive intervention. But Putative Intervenors failed to pursue intervention until nearly four years after suit was filed. The decision, year after year, not to intervene was certainly the Putative Intervenors' to make. They cannot, however, undo that decision at this late hour, with no live Article III case or controversy before the Court.

ARGUMENT AND AUTHORITY

I. **The Court lacks jurisdiction to permit or allow intervention.**

    A. **Once the Court of Appeals declared Plaintiffs' case jurisdictionally defective, there ceased to be an existing suit within this Court's jurisdiction in which to intervene.**

It has been settled law for nearly a century that "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention." *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926), *cert. denied*, 273 U.S. 758 (1927) (denying intervention where court did not have jurisdiction over original lawsuit because of lack of indispensable parties). Thus, "a person may not intervene if the original, underlying case was jurisdictionally defective." *Odle v. Flores*, 899 F.3d 344, 348 (5th Cir. 2017) (citing *Non Commissioned Officers Ass'n v. Army Times Publ'g Co.*, 637 F.2d 372, 373 (5th Cir. 1981)); *see also id.* ("'[t]here is no right . . . to intervene in a [jurisdictionally] defective suit.'") (quoting *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980)) (alteration in *Odle*).

The question of whether there is an existing suit within the court's jurisdiction is based upon "when the motion to intervene was filed." *Krim v. PCOrder.com*, 402 F.3d 489, 502 (5th Cir. 2005); *see also id.* at 502 ("The 'prerequisite of an intervention' that there be 'an existing suit within the Court's jurisdiction' depends here on the individual claims. That none of the individual claims remained viable . . . when the motion to intervene was filed, disposes of the attempt at intervention.") (quoting *Army Times Publ'g Co.*, 637 F.2d at 373).

When the Court of Appeals issued its mandate on December 5, 2019, there ceased to be "an existing suit within the Court's jurisdiction" because—at that point—"none of the individual claims" upon which Plaintiffs invoked the Court's jurisdiction "remained viable." *E.g., Krim v. PCOrder.com*, 402 F.3d at 502. *See also, e.g., Ericsson Inc. v. InterDigital Communs. Corp.*, 418 F.3d 1217, 1222 (Fed. Cir. 2005) (rejecting the argument that—because the district court retained jurisdiction to entertain a motion for relief from final judgment under Federal Rule of Civil Procedure 60(b), there was "an existing suit within the court's jurisdiction" for purposes of intervention) (citing *Kendrick*, 16 F.2d at 745).

### B. Putative Intervenors' authorities do not support a different result.

Putative Intervenors assert that they have "independent bases for standing to assert the equal protection claims brought by Plaintiffs" which "provide the Court jurisdiction to continue this action." Dkt. 124 at 1. But they cite only one case as direct support for the proposition that "intervenors with independent grounds to maintain an action may cure jurisdictional defects even after the action is dismissed." Dkt. 124 at 6 (citing *Hunt Tool Co. v. Moore, Inc.*, 212 F.2d 685, 688-89 (5th Cir. 1954)). And *Hunt* does not support the proposition that a post-judgment, post-appeal motion to intervene can cure a jurisdictionally defective case.

The intervenor in *Hunt*, a dispute over oil leasehold rights, intervened well before the district court entered final judgment (and certainly before any post-judgment appeal). 212 F. 2d at 686. After the intervention, the trial court dismissed the lawsuit between the original parties on their request after they settled it in a

4

parallel state court action. *Id.* at 686. The remaining defendant then sought to dismiss the intervention for lack of diversity jurisdiction. *Id.* at 687.

The Fifth Circuit found that "[w]hen the intervention was filed the requisite diversity of citizenship was not present," but concluded that the intervenor's voluntary dismissal of "all defendants from the intervention save Moore, Inc., a Georgia corporation, cured the jurisdictional defects . . . since the defendants whom intervener dismissed were not indispensable parties." *Id.* at 688. Thus, it found that the district court erred in granting the defendant's motion to dismiss for lack of diversity jurisdiction. *Id.*

Unlike Putative Intervenors here, the *Hunt* intervenor "cured the jurisdictional defects" in the case. *Id.* And it did so not just prior to appeal, but before the district court passed on the jurisdictional arguments. *Id.* at 686. Because *Hunt* did not contemplate a situation like this one—where jurisdiction is already defeated before intervention is sought—it does not support Putative Intervenors' position.

Putative Intervenors also cite cases about political party standing generally. Dkt. 124 at 3-4. These, too, are inapposite. The cases about political party standing all involved political party litigants who had initiated the action as an original party. *See Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 186-187 (2008); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585 (5th Cir. 2006)); *Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015), *accord Ala. Legislative Black Caucus v. Alabama*, 989 F. Supp. 2d 1227, 1234 (M.D. Ala. 2013) (party and party-affiliated plaintiffs initiated lawsuit); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 570 at n.2 (6th

Cir. 2004) (intervenors were individuals, not party or party affiliate); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016) (intervenors were Mi Familia Vota Education Fund, New Florid Majority, and Andra del Castillo); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 418 (E.D. Mich. 2004) (denying motion to intervene by voter and county and municipal clerks in their official capacities).

None of these cases involved intervention in a case after remand to the district court for dismissal for lack of jurisdiction. And Putative Intervenors did not file this lawsuit as original plaintiffs or seek to intervene while it ran its course. These authorities are therefore unhelpful.

The remaining two cases Putative Intervenors cite in support of their jurisdictional argument similarly miss the mark. Dkt. 124 at 5. *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981), discussed the propriety of pre-judgment leave to amend a complaint in class action, and therefore has nothing to do with this case. *Simmons v. I.C.C.*, 716 F.2d 40, 46 (D.C. Cir. 1983), which considered who could properly intervene in action for judicial review of administrative order subject to the Hobbs Act, is similarly unrelated to the facts here.

The motion to intervene should be denied for lack of jurisdiction.[2]

## II.   Intervention would defy the Court of Appeals' mandate.

The last sentence of the court of appeals' opinion remanded the case to this Court "with instructions to dismiss Plaintiffs' claims for lack of standing." *Stringer v. Whitley*, 942 F. 3d at 725. The judgment of the court of appeals, issued as its mandate,

---

[2] It is worth noting that, as stated in the discussion of discovery below, Defendants do not concede that Putative Intervenors have standing.

instructed this Court to act "in accordance with the opinion" of the Fifth Circuit. Dkt. 122-1. When the mandate requires dismissal for lack of jurisdiction, "[c]ompliance with an order to relinquish jurisdiction necessarily precludes the lower court from taking any further action other than dismissal, for to do so would involve retaining jurisdiction." *Stamper v. Baskerville*, 724 F.2d 1106, 1108 (4th Cir. 1984).

The Court may not reconsider the court of appeals' jurisdictional ruling or avoid its mandate. Under law-of-the-case doctrine, "the district court on remand, or the appellate court on a subsequent appeal, abstains from reexamining an issue of fact or law that has already been decided on appeal." *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012). A corollary of the law-of-the-case doctrine is the mandate rule, which "requires a district court on remand to effect [the court's] mandate and to do nothing else." *Gen Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2004) (citation and quotation marks omitted).

The only exceptions to the mandate rule are "(1) [t]he evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184-85 (5th Cir. 2012). Only if one of these three circumstances is present may an appellate court revisit previously-decided matters, or a district court can exceed a mandate on remand. *Id.* at 185 (citing *United States v. Lee,* 358 F.3d 315, 320 (5th Cir. 2004)); *see also United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (describing same three scenarios under which departure from mandate is permissible). But none of

these exceptions applies where, as here, a case has ceased to exist due to jurisdictional defect.

Intervention should be denied to comply with the mandate rule.

### III. Even if this Court had jurisdiction to consider the motion to intervene, it would fail on the merits.

As set forth above, Putative Intervenors cite no authority for the proposition that—on remand from the Court of Appeals with instructions to dismiss all live claims in the case for lack of jurisdiction—a district court has authority to consider a motion to intervene. But even if there were support for this proposition, the Putative Intervenors have not established that they are entitled to intervene as a matter of right under Rule 24 (a)(2) or that permissive intervention under Rule 24 (b)(1)(B) is proper.

#### A. Putative Intervenors have not shown entitlement to intervene as a matter of right.

Federal Rule of Civil Procedure 24(a)(2) governs mandatory intervention. A party seeking to intervene as of right must satisfy four requirements: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (citation omitted); *see* FED. R. CIV. P. 24(a)(2). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling*

*& Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007). The Putative Intervenors fail to satisfy at least two of these requirements.

First, their allegation that they will be impaired or impeded in protecting any equal protection interest they assert fails of its face, given their admission that they "can bring a new action" against Defendants. Dkt. 124 at 7. Indeed, less than three weeks after filing their motion to intervene, the Putative Intervenors filed a new lawsuit against the Texas Secretary of State, bringing an equal-protection claim regarding Texas's requirement of "wet" signatures on voter registration applications. *See Tex. Dem. Party v. Hughs*, No. 5:20-CV-0008 (filed Jan. 6, 2020, and arguing it is related to this suit).

Second, the motion to intervene is not timely. In this Circuit, the timeliness of a motion to intervene turns on four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene;
>
> (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case;
>
> (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and
>
> (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

With respect to the first factor, Plaintiffs sent their statutorily required NVRA presuit notice letter alleging noncompliance with the NVRA in 2015, and Putative Intervenors acknowledge awareness of this lawsuit—if not upon its filing, then soon after. *E.g.,* Dkt. 124 ("Until the Fifth Circuit's ruling, Plaintiffs had been adequately representing and protecting Intervenors' interests, so Intervenors had neither the necessity nor the right to intervene.") For purposes of timeliness, "[w]hat matters is not when [a putative intervenor] knew or should have known that his interests would be adversely affected but, instead, when he knew that he had an interest in the case." *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016). Given the delay in seeking intervention, the first factor favors denial of the motion.

To the extent it is even proper to consider prejudice to "existing parties" after claims are dismissed for lack of jurisdiction, this factor also favors denial. Throughout the life of this litigation, the only Plaintiffs have been individuals who did not claim any harm to Putative Intervenor's "mission to elect Democratic representatives." Dkt. 124-2 at ¶33. But rather than intervene at any point during the past four years to vindicate this asserted injury (or allow Defendants to argue against it), Putative Intervenors stood by as the parties conducted discovery and filed multiple dispositive motions, and as the Court considered and ruled upon these arguments and fashioned an injunction. Throughout, Defendants made no secret of their belief that Plaintiffs lacked standing. *See, e.g.,* Dkts. 7 at 6-13; 12 at 1-5; 57 at 17; 82 at 12-19; 86 at 4-11; 88 at 4-11. Still, Defendants did not seek to intervene, even as the parties briefed and argued an appeal.

10

Yet, Putative Intervenors appear to wish to deny Defendants the opportunity to conduct discovery on *their* claims. *See* Dkt. 124 at 7 ("Intervenors are not seeking to reopen discovery but instead merely wish to file a dispositive motion."). But Defendants have the right to conduct discovery, as a suit claiming harm to three individuals is vastly different from a suit claiming harm across the State. This lawsuit is over; reopening the discovery process (as will be required to allow Defendants to adequately defend their laws) will require additional time and expense, prejudicing Defendants. The second factor favors denial of the motion.

By contrast, with respect to the third factor, putative intervenors concede that they will not be prejudiced in the ability to urge their claims if they cannot intervene. Dkt. 124 at 7 (stating that Putative Intervenors "can bring a new action" against Defendants). And, as noted above, they have already filed a lawsuit that Putative Intervenors contend is related to this case. The third factor also favors denial of the motion.

Finally, in considering any "unusual circumstances" of the case, it is worth noting that Putative Intervenors have only sought to involve themselves now that the Court is without jurisdiction. As the inapposite authorities Putative Intervenors cite in their motion make clear, an attempt to intervene at this stage is unusual indeed. And it bears repeating that "[a] person may not intervene as of right in a 'jurisdictionally or procedurally defective' suit." *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016) (quoting *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980)).

### B. Permissive Intervention is also inappropriate here.

Rule 24 also authorizes permissive intervention. The portion of the Rule upon which Putative Intervenors rely provides, in relevant part: "On timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). But a finding that a motion for intervention as of right is untimely applies equally to a motion for permissive intervention. *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996). Thus, for the same reasons intervention of right is untimely, permissive intervention is also untimely. *See supra*, Part A.

### CONCLUSION AND PRAYER

The Court should dismiss the motion to intervene for lack of subject-matter jurisdiction. In the alternative, the motion should be denied as untimely.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/Anne Maire Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
ESTEBAN S.M. SOTO
Texas Bar. No. 24052284
Assistant Attorneys General

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov
esteban.soto@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

# CERTIFICATE OF SERVICE

I certify that on January 10, 2020, the foregoing instrument was filed electronically via the Court's CM/ECF system causing electronic service upon all counsel of record.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General