**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL NO. SA-16-CV-257-OG |
| | § | |
| ROLANDO PABLOS, et al., | § | |
| | § | |
| *Defendants.* | § | |
| ―――――――――――――――――― | § | |
| | § | |
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL NO. SA-20-CV-46-OG |
| | § | |
| RUTH HUGHS, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
EMERGENCY APPLICATION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR HEARING**

Any eligible Texan who wishes to vote in the upcoming election still has ample time to register, and this Court's refusal to enter an unmerited preliminary injunction will not disenfranchise any voter. Contrary to what Plaintiffs would have the Court believe, the right to vote in Texas does not depend on this Court's entry of an extraordinarily onerous and unnecessary preliminary injunction against Defendants. The sole question before this Court is whether Plaintiffs have carried their heavy burden of proving their entitlement to "emergency" relief. The answer is that they have not.

This litigation is not a continuation of the 2016 claims by Plaintiff Stringer. Those claims

were dismissed due to a lack of subject matter jurisdiction, and the parties' positions on the merits were never adjudicated by the appellate court. As this Court has already recognized, the litigation must "begin anew" because there are *new* claims, brought by *new* parties, and due process requires that Defendants are given a full and fair opportunity to defend themselves against this *new* lawsuit. Instead, Plaintiffs would prefer to shortcut the judicial process. They would have this Court grant them an unwarranted victory at the outset rather than test the merits of their claims in the normal course of litigation.

To invoke such an exceptional use of this Court's authority, Plaintiffs must meet an exceptionally high burden, and they have failed to do so. First, Plaintiffs cannot demonstrate that they will suffer irreparable harm absent an "emergency" intervention by this Court. They have unjustifiably delayed in bringing their claims, and every eligible individual is readily capable of protecting their own right to vote without intervention by the Court. Second, Plaintiffs cannot show that the entry of a preliminary injunction would serve the public interest or outweigh the harm done to the State of Texas by a sweeping injunction on the eve of an election. Third, Plaintiffs' success on the merits cannot be assumed. And fourth, Plaintiffs' proposed injunction is improper and insufficient, as this Court has already recognized.

For these reasons, the Court should deny Plaintiffs' emergency application for a preliminary injunction and allow the parties to litigate this case in the normal course.[1]

---

[1] Defendants respectfully submit this opposition as ordered by the Court, but they do so with a full reservation of rights, without waiving and subject to their objections to the Court's jurisdiction and to the improper consolidation of *Stringer v. Pablos* (*Stringer I*), CIVIL NO. SA-16-CV-257-OG, and *Stringer v. Hughs* (*Stringer II*), CIVIL NO. SA-20-CV-46-OG, as explained in their motion to sever. Likewise, Defendants have waived service of the complaint and summons in *Stringer II* and will timely file their responsive pleading. Defendants reserve all arguments and all grounds for dismissal under Rule 12(b) for their responsive pleading, including but not limited to lack of jurisdiction (due to a lack of standing, failure to comply with NVRA notice provisions, or any other reason) and failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.    The National Voter Registration Act

The U.S. Constitution guarantees to the States the right to choose the time, place, and manner of elections, absent federal law to the contrary. U.S. Const. art. I, § 4, cl. 1. Acting pursuant to this authority, Congress passed the National Voter Registration Act (NVRA) in 1993. 52 U.S.C. §§ 20501-11. The NVRA was intended to increase the number of citizens eligible to vote while protecting the integrity of the electoral process. *Id.* § 20501(b).

The NVRA provides that "each State shall establish procedures to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504 of this title." *Id.* § 20503(a). Section 20504 describes, in detail, when States are required to treat driver's-license transactions as voter-registration transactions. Under § 20504(a)(1), "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office ***unless the applicant fails to sign the voter registration application***." (emphasis added). Relatedly, § 20504(c) generally prohibits States from requiring duplicate information on the voter-registration portion of a driver's-license application. Subsection (c)(2)(C)(iii) does, however, provide that "[t]he voter-registration application portion of an application for a State motor vehicle driver's license . . . ***shall include a statement that*** . . . ***requires the signature of the applicant***, under penalty of perjury." (emphasis added). When a driver changes the address on his driver's license, § 20504(d) provides that the change-of-address form "shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of

address is not for voter registration purposes."

The NVRA is enforceable by the U.S. Attorney General, *id.* § 20510(a), but it also creates a private right of action for individuals "aggrieved" by violations of the NVRA. An aggrieved person must first provide written notice of the violation to the chief election official of the State. *Id.* § 20510(b)(1). The State then has 90 days to correct the violation, or 20 days if the violation occurs within 120 days of an upcoming federal election. *Id.* § 20510(b)(2). If the violation is not corrected, the aggrieved person may bring a civil action for declaratory or injunctive relief "with respect to the violation." *Id.*

## II.    Texas Law

The Texas Legislature has adopted detailed statutes governing voter registration. Crucially, "[a] registration application must be in writing and signed by the applicant." Tex. Elec. Code § 13.002(b); *see also id.* § 65.056(a) (allowing the affidavit on a provisional ballot to serve as a voter-registration application if it contains the necessary information). Likewise, any change to voter-registration information must also be in writing and signed. *Id.* § 15.021(a).

The only exception to the signature requirement is when a voter moves within a single county. In that case, Texas law permits the voter to change his voter-registration address online. *See* Tex. Elec. Code § 15.021(d). If, however, the voter moves between counties, he must fill out a voter-registration form, sign it, and submit it to the voter registrar of his new county of registration. *See id.* § 15.021(a). This is because Texas uses a county-based voter-registration system, where the sole and exclusive authority to accept or reject voter registrations rests with each county's voter registrar. *See* Tex. Elec. Code §§ 12.001, 13.071.

In accordance with the NVRA, Texas has integrated its driver's-license transactions with its voter-registration transactions with respect to paper applications. Paper applications for driver's

4

licenses, renewal of driver's licenses, and changes of address on driver licenses all allow individuals to choose whether they want to register to vote or change their address, and all paper applications require a signature. *See* Tex. Elec Code § 20.062. DPS also electronically captures the handwritten signature of each applicant, and that image is sent to the Secretary of State for voter-registration purposes pursuant to specific statutory authorization. *See id.* § 20.066(a). However, with respect to online renewal of driver licenses and online changes of addresses with DPS, individuals log in to the DPS website from their homes, and no signature is collected at the time of that transaction. Voters who wish to register to vote or change their voting address are provided a link to a voter registration form.

## II.    *Stringer v. Pablos* (*Stringer I*), Civil No. SA-16-CV-257-OG

On March 14, 2016, Plaintiff Stringer and other individuals brought claims under the NVRA and the Equal Protection clause challenging the State's system of managing voter registration information in the context of these online DPS transactions. *See Stringer I*, Compl. [ECF No 1]. No plaintiff sought a preliminary injunction or temporary restraining order, and after the normal course of litigation, including extensive discovery, this Court ruled in favor of plaintiffs on cross-motions for summary judgment. *See, e.g.*, *id.*, March 30, 2018 Order [ECF No. 103]. The Court entered a final judgment on May 18, 2018. *See id.*, Final Judgment [ECF No. 109].

Defendants sought an emergency stay of the final judgment in *Stringer I* from both this Court and the Fifth Circuit, and on May 31, 2018, the Fifth Circuit granted the motion, preventing the injunction from taking effect. *See Stringer I*, May 31, 2018 Order [ECF No. 118]. On November 13, 2019, the Fifth Circuit ruled that none of the plaintiffs had proven the essential prerequisites of standing, and therefore concluded that the Court had been without jurisdiction to enter its order. *Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) [ECF No. 122]. The Fifth Circuit

5

did not reach the merits of the plaintiffs' claims, and it remanded the case to this Court "with instructions to dismiss Plaintiffs' claims for lack of standing." *Id.* at 725.

After remand, the Texas Democratic Party, DCCC, and DSCC filed a motion to intervene into *Stringer I*, which Defendants opposed. *See Stringer I*, ECF Nos. 124, 133, 134.

### III.     *Stringer v. Hughs* (*Stringer II*), Civil Action No. SA-20-CV-46-OG

On December 19, 2019, Plaintiffs sent what purports to be an NVRA notice letter to Defendant Hughs regarding the same DPS online voter registration procedure that was at issue in *Stringer I. See Stringer II*, Compl. Ex. B [ECF Nos. 1-3]. On January 14, 2020, Plaintiffs filed their complaint alleging NVRA and Equal Protection violations. *See Stringer II*, Compl. [ECF No. 1]. Plaintiff Stringer was a party to the *Stringer I* litigation. Accompanying him in *Stringer II* are two new Individual Plaintiffs and two Organizational Plaintiffs, MOVE Texas Civic Fund (MOVE Texas) and the League of Women Voters of Texas (LWVTX). *See id.* ¶¶ 18-22. Defendants have waived service of summons and of the complaint and will timely file a responsive pleading on or before March 16, 2020.

On January 17, 2020, after business hours on the eve of a holiday weekend, Plaintiffs filed their motion for preliminary injunction. *See Stringer II*, Mot. [ECF No. 5]. Plaintiffs' request envisions systemic changes to Defendants' voter-registration practices, via a federal injunction overriding Texas state law, prior to the February 3, 2020 deadline for voters to register in time to participate in the upcoming primary election on March 3, 2020. *See, e.g.*, *id.* at 6.

On January 21, 2020, the Court took the following actions: (1) *sua sponte* consolidated *Stringer II* into *Stringer I* and directed the parties to file all pleadings into the consolidated case [ECF No. 135]; (2) granted the Intervenor-Plaintiffs' motion to intervene into *Stringer I*, and entered the complaint in intervention onto the docket [ECF Nos. 136, 137]; (3) set a preliminary

injunction hearing for January 28, 2020, at 1:30 PM [ECF No. 138]; (4) dismissed all of the original plaintiffs' claims in *Stringer I* [ECF No. 139]; and (5) ordered Defendants to file a written response to Plaintiffs' motion on or before January 27, 2020, at 1:30 P.M. [ECF No. 140].

On the afternoon of January 24, 2020, the Court entered a three-page order directing the parties to prepare responses to at least sixteen (16) factual and legal questions (including subparts) for presentation to the Court at the preliminary injunction hearing. *See* ECF No. 141.

## STANDARD OF LAW

"A preliminary injunction is an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985). This is particularly true when a party seeks an order directing state officials to perform or discontinue certain conduct. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as "the exception rather than the rule."[2] *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975); *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

A party seeking a preliminary injunction must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). An injunction should not be granted unless the movant "has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).

"In considering whether to grant or deny preliminary injunctive relief, the district court

---

[2] Legal determinations made at the preliminary injunction stage are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990).

'must remember that a preliminary injunction is an extraordinary and drastic remedy,' and that '[t]he movant has a heavy burden of persuading the district court that all four elements are satisfied.'" *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (alteration in original) (footnotes omitted) (quoting *Callaway*, 489 F.2d at 573, and *Hardin v. Hous. Chronicle Publ'g Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978)). "Thus, if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Id.* (citing *Clements Wire & Mfg. Co. v. NLRB*, 589 F.2d 894, 897 (5th Cir. 1979)).

Additionally, considerations of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state agencies. *Parrott v. Livingston*, No. 15-866, 2016 WL 4487918, at *1 (E.D. Tex. June 29, 2016); *accord Gibson v. Leblanc*, No. 16-354, 2016 WL 5796897, at *2 (M.D. La. Sept. 30, 2016). "'[E]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).

Moreover, while a typical preliminary injunction seeks simply to maintain the status quo pending a resolution on the merits of the case, here Plaintiffs seek to force Defendants to act. *See, e.g.*, *Stringer II*, Pls.' Proposed Order at 1 [ECF No. 5-2] (asking the Court to direct "Defendants to take all appropriate measures"). Mandatory injunctions are "particularly disfavored," and Plaintiffs must sustain an even higher burden. *Roark v. Individuals of the Fed. Bureau of Prisons, Former and Current*, 558 F. App'x 471, 472 (5th Cir. 2014) (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976)); *accord Exhibitors Poster Exchange, Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561-62 (5th Cir. 1971); *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*,

256 F.2d 410, 415 (5th Cir. 1958). A mandatory preliminary injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Miami Beach Fed. Sav. & Loan*, 256 F.2d at 415; *accord Tate v. Am. Tugs, Inc.*, 634 F.2d 869, 870 (5th Cir. 1981) ("'Only in rare instances is the issuance of a mandatory preliminary injunction proper.'") (quoting *Harris*, 596 F.2d at 679); *Travelers Cas. v. Padron*, No. 15-200, 2016 WL 1064650, at \*7 (W.D. Tex. Mar. 14, 2016); *Serna v. Tex. Dep't of State Health Servs.*, No. 15-446, 2015 WL 10818655, at \*11 (W.D. Tex. Oct. 16, 2015); *Saucedo v. Enders*, No. 03-433, 2004 WL 911309, at \*2 (W.D. Tex. Apr. 16, 2004).

## ARGUMENT

Plaintiffs cannot sustain the "heavy burden" that they face under typical preliminary injunction standards, much less the heightened "rare instances" showing required for the mandatory relief that they seek. Accordingly, the Court should deny the requested mandatory preliminary injunction.

### I.   Plaintiffs Have Failed to Demonstrate Irreparable Harm.

Plaintiffs simultaneously assert that they are seeking to change a State process that has been in place for years and that they need "emergency" relief. But their substantial delay in bringing their motion for a preliminary injunction undermines the urgency of their request. Moreover, any eligible voter who wants to vote in the upcoming March election may do so by registering with their local election officials via any of the methods available to them. Accordingly, it is simply untrue that Plaintiffs' alleged harm is entirely unavoidable absent extraordinary relief from this Court, and Plaintiffs' motion should therefore be denied.

### A.   Plaintiffs' Delay in Bringing Their "Emergency" Motion is Fatal to Their Allegation of Irreparable Injury.

Plaintiffs repeatedly assert and admit that the alleged problems of which they complain

have been in place for years, claiming that the State has been on notice of these alleged violations since at least 2013, and certainly by 2015. *See, e.g.*, Mot. at 8, 11; *Stringer I*, Compl. Ex. C (May 27, 2015 notice letter from Plaintiffs' counsel). Throughout their motion, Plaintiffs contend that Defendants have been out of compliance with the NVRA "[f]or far too long." *Id.* at 6; *see also id.* at 11 ("Texas has known for years that its online driver's license practices disenfranchise large numbers of voters."). Despite the allegedly long-standing nature of the Defendants' conduct, Plaintiffs have brought to this Court an "emergency" motion. But the "emergency" is of Plaintiffs' own making, not a result of Defendants' actions.

Plaintiffs' substantial delay of many years in bringing their "emergency" motion precludes a finding of irreparable injury. *Kensington Partners v. Cordillera Ranch, Ltd.*, No. 98-121, 1998 WL 1782540, at *11 (W.D. Tex. June 16, 1998) ("Delay in bringing suit may preclude a finding of irreparable injury, which would then preclude the granting of preliminary injunctive relief."). "The law is well-established that . . . [d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *GoNannies, Inc. v. GoAuPair, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction."). Unjustified delay on its own is sufficient to "preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Rimkus Consulting Grp., Inc. v.*

10

*Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008). Here, Plaintiffs' years of delay establish that there is no urgency for the Court to enter the vague and systemic relief that they seek, and therefore, there is no irreparable injury.

Courts have found that substantially shorter periods of delay have undone the urgency that is required to justify granting preliminary injunctive relief. *See, e.g.*, *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming denial of temporary mandatory relief where the movant "waited three months before petitioning the district court for temporary relief"); *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) ("The Second Circuit has found delays of 'as little as ten weeks' sufficient to defeat the presumption of irreparable harm.") (quoting *Weight Watchers Int'l v. Lugino's, Inc.*, 423 F.3d 137, 145 (2d Cir. 2005)); *GoNannies*, 464 F. Supp. 2d at 609 (holding that an undue delay of six months between discovery of the injury and the filing of the motion was "sufficient to rebut any possible presumption of irreparable harm").

The Organizational Plaintiffs in particular have no excuse for their failure to seek "emergency" relief before now. MOVE Texas has been in existence since 2013,[3] and it claims to engage in voter registration and get-out-the-vote activities throughout the State. *See Stringer II*, Compl. ¶ 21; Pls.' Ex. 21, Decl. of Hilliard Drew Galloway ¶ 4. As part of its activities, MOVE Texas alleges that it trains and educates voters and staff regarding the process afforded by the DPS online driver license system. *See* Pls.' Ex. 21, Galloway Decl. ¶¶ 10-12. Accordingly, MOVE Texas cannot seriously contend that it has acted with the urgency consistent with a claim of irreparable harm. *See also, e.g.*, Pls.' Ex. 22, Decl. of Erica Elliott ¶ 7 (describing an incident

---

[3] *See* About, MOVE Texas, https://movetexas.org/about/ (last visited Jan. 24, 2020).

during the 2018 General Election regarding the DPS website).

Similarly, LWVTX has existed since 1919,[4] long before the NVRA was enacted, and LWVTX alleges that it too "conducts voter education and get-out-the-vote efforts." *Stringer II*, Compl. ¶ 22; *see also* Pls.' Ex. 23, Decl. of Grace Chimene ¶¶ 6-9. LWVTX claims to "provide[] public trainings which include cautioning voters about the fact that the DPS online driver's license system does not register customers to vote." Pls.' Ex. 23, Chimene Decl. ¶ 12; *see also* Pls.' Ex. 28, Decl. of Sharon E. Walther (explaining interactions with voters who have used the DPS online system). Accordingly, as with MOVE Texas, LWVTX cannot contend that it acted urgently to bring its claims to this Court, because it has known about the operation of the Texas Election Code for years without pursuing such claims.

Plaintiffs can offer no "good explanation" for failing to bring their claims earlier, *see GoNannies*, 464 F. Supp. 2d at 609, and the "emergency" they allege has nothing to do with any recent action by the State. Rather, Plaintiffs—and the Organizational Plaintiffs in particular—have elected to do nothing about the alleged harm for years. Plaintiffs' failure to act urgently is fatal to their assertion of irreparable harm.

### B. Any Harm that the Individual Plaintiffs Will Suffer Related to the March Election Will Be the Result of Their Own Inaction.

Plaintiffs claim that a preliminary injunction is the only means by which they will be able to vindicate their rights and avoid disenfranchisement. *See, e.g.*, Mot. at 35-36, 44. This is false. Any of the individual plaintiffs can register to vote with their local voter registrar in time to vote in the March election via several different methods. *See, e.g.*, Where to Get an Application, VoteTexas.gov,    https://www.votetexas.gov/register-to-vote/where-to-get-an-application-2.html

---

[4] History, LWV, https://my.lwv.org/texas/history (last visited Jan. 24, 2020).

(last visited Jan. 25, 2020). For example, voters can register in person at the county voter registrar's office; by mail, with either an application printed at home or picked up from "libraries, government offices, or high schools"; or by requesting a postage-paid application from the local voter registrar. *See id.*; *see also, e.g.*, "Secretary Hughs Reminds Texans To Register And Prepare To Vote," Texas Secretary of State, https://www.sos.state.tx.us/about/newsreleases/2020/012320.shtml (January 23, 2020); Register to Vote, Bexar County TX Elections Department, https://www.bexar.org/1702/Register-to-Vote (last visited Jan. 25, 2020) (noting that applications can be printed from the SOS website, that voters may "[c]all the Voter Registration office at 210-335-VOTE (8683) and request a voter registration application to be sent to you," and that "[y]ou can also find voter registration applications at libraries, government offices, or high schools to be filled out, signed, and mailed"). Accordingly, there is ample opportunity for any eligible Texan to register to vote in time to participate in the March election.[5]

Plaintiffs' alleged harm is not irreparable because it is entirely within their control whether they will be registered to vote for the March election. Each of the alleged roadblocks to registration—such as Plaintiff Gomez's alleged lack of a home printer, *see* Mot. at 36—can be surmounted by means other than the extraordinary relief of a federal mandatory injunction against agencies of the sovereign State of Texas. Indeed, SOS regularly aids voters seeking to register to vote, and those resources are available to the Plaintiffs. *See, e.g.*, Register to Vote, VoteTexas.gov, https://www.votetexas.gov/register-to-vote/index.html (last visited Jan. 25, 2020). Accordingly, with many other avenues available to ensure that Plaintiffs may register to vote in time for the

---

[5] Whether the Individual Plaintiffs should have to use one of these methods to register themselves to vote is a question for the merits of the dispute. Defendants contend that the State process is lawful, but that question has no bearing on the narrow issue of whether Plaintiffs have demonstrated an irreparable injury sufficient to justify the entry of a mandatory preliminary injunction by this Court.

March election, it cannot be said that Plaintiffs face a substantial threat of irreparable harm "if the injunction is not granted." *Sanchez*, 403 F.3d at 329. Without such a showing, Plaintiffs' motion must fail.

## II.    The Damage Done by Plaintiffs' Requested Injunction Outweighs Any Alleged Harm, and Granting Plaintiffs' Motion Will Disserve the Public Interest.

Plaintiffs have failed to engage in an adequate analysis of the potential negative ramifications of their requested injunction, arguing instead that there can be no harm to Defendants because Plaintiffs will prevail on the merits, *see* Mot. at 42-44, and that the public interest will be served by a preliminary injunction because it is Plaintiffs' preferred policy outcome, *see id.* at 44-45.[6] But the sweeping technological and procedural changes envisioned by Plaintiffs cannot be accomplished before the March election, and any attempt to do so would be fraught with the potential for technical errors, inconsistency, and uncertainty among the county voter registrars who maintain the voter rolls throughout the State.

It is not possible for Defendants to implement the technical changes contemplated by Plaintiffs before the March election. As an initial matter, any changes to the DPS driver license renewal website cannot be accomplished by either of the Defendants. The Texas Department of Information Resources (DIR) is responsible for maintaining Texas.gov and working with the State's vendors, and it would take DIR a minimum of 90 days to complete its work with respect to any changes. *See* Decl. of Jennifer Buass, attached hereto as Exhibit A. Likewise, DPS estimates that its work in this regard could take at least 7-11 weeks and would require close coordination with DIR. *See* Decl. of Sheri Gipson, attached hereto as Exhibit B. Furthermore, modifications to

---

[6] The two factors of "assessing the harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Accordingly, it is appropriate for the Court to consider these factors together, as Defendants are officials acting in their official capacities as agents of the State.

DPS's systems may also necessitate changes to SOS's processes, which may take at least 60 days to prepare depending on the scope and complexity of the changes implemented by DIR and DPS. *See* Decl. of Brian Keith Ingram, attached hereto as Exhibit C. Additionally, SOS could have to provide additional training to county voter registrars, who have the sole authority to approve or reject voter registration applications. *See id.* Accordingly, Defendants cannot implement the kinds of changes Plaintiffs envision before the March election.

Plaintiffs cite snippets of deposition testimony from *Stringer I* for the proposition that making changes to these processes is as simple and straightforward as flipping a few switches. *See, e.g.*, Mot. at 24-25; *see also* Mot. at 42 (dismissing the hardship to Defendants as "at most[] administrative inconvenience"). But as Defendants successfully argued to the Fifth Circuit in seeking a stay of the Court's final judgment in *Stringer I*, and as attested to here, the process of implementing any changes to DPS's online driver license system is one that requires care, planning, forethought, and most importantly, time. Attempting to rush these processes in order to meet Plaintiffs' timeline, even if it were possible, would invite errors due to inadequate time to properly code, review, and test any technical changes. The harm that may be done to the State's voter registration system could be substantial.

Plaintiffs also fail to account for the uncertainty that would likely result from last-minute sweeping changes to the State's voter registration system on the eve of an election. Plaintiffs assume that the public interest would be served by a preliminary injunction because it would be their preferred policy outcome. *See* Mot. at 45. But a systemic change in a process of registering voters less than a week before the voter registration deadline for the March election could cause uncertainty among voters, who may not know whether their information from prior online driver license transactions had been successfully transmitted to their county voter registrar, as well as

uncertainty among county voter registrars, who might be inundated with voluminous data during the final week of voter registration. Furthermore, although Plaintiffs assert that complaints to DPS "about this issue will [] end," *id.*, they make no effort to explain how an eleventh-hour change in long-standing voter registration procedures would do anything but raise more questions and uncertainty for the public. Simply put, Plaintiffs have failed to consider the full range of consequences that could flow from their requested injunction, and therefore Plaintiffs have failed to demonstrate that the public interest would not be disserved by their proposed injunction.

In essence, Plaintiffs' arguments regarding the factors of harm to Defendants and the public interest are based on little more than their allegation that Defendants are violating the law, effectively collapsing these factors into the consideration of likelihood of success on the merits. *See id.* at 42 (contending that any harm to Defendants is outweighed because "Defendants are actively engaging in the violation of federal law"); *id.* at 44 (asserting that the public interest factor is met because the requested injunction "requir[es] Defendant to follow Federal law"). But Plaintiffs cannot unilaterally absolve themselves of their burden as to any of the four factors that this Court must consider. *See Enterprise Int'l*, 762 F.2d at 472 (stating that a preliminary injunction should not issue if the applicant fails to carry its burden on "any one of the four prerequisites"); *see also Miss. Power & Light*, 760 F.2d at 633 ("The public interest standard is a hurdle which must be overcome before employing the drastic remedy of interim injunctive relief, not a clarion call for action before reaching final judgment.").

Moreover, the Court must keep in mind that Plaintiffs are requesting that the Court enjoin the operation of duly enacted laws of the State of Texas. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419

16

(5th Cir. 2013). "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). This harm cannot be entirely discounted simply because Plaintiffs allege a constitutional violation, particularly because the parties and the Court have not had the benefit of the Fifth Circuit's opinion as to the voter registration practices at issue.

Plaintiffs have failed to sufficiently analyze the potential harm to Defendants from being ordered to comply with an impossible injunction, and they have failed to account for the harm to the public interest that could come from this Court's imposition of systemic change on the eve of an election. Accordingly, Plaintiffs have failed to satisfy their burden with respect to each of these factors, and their motion should be denied.

### III. Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits.

Defendants have not yet responded to Plaintiffs' claims—they will do so in due course with a motion to dismiss. As the Court has rightly recognized, this case "will *begin anew* with Jarrod Stringer's 2020 claims, as well as the *new* claims" of the other, new Plaintiffs. Order of Dismissal at 1-2 [ECF No. 139] (emphasis added). Although the Court is familiar with some of the facts and law relevant to this set of claims, they are *new* claims. For example, nothing is yet known about any of the new Plaintiffs beyond what is alleged in their pleadings. Particularly in light of the failure to prove standing in *Stringer I*, it should not be assumed that these Plaintiffs will necessarily fare any better. Likewise, the Court should consider anew Defendants' arguments that the Texas Election Code is compliant with the NVRA, and that Plaintiffs have failed to state a claim under the NVRA or the Equal Protection clause. The Fifth Circuit did not address the merits of the lawsuit in *Stringer I*, and Defendants have a right to be heard on their substantive

arguments by this Court and, if necessary, on appeal. The Court's views on the merits of the *previous* litigation are not dispositive of the merits of *this* litigation, and Defendants do not concede anything that was decided against them by this Court in *Stringer I*.

In any event, even if the Court finds that Plaintiffs have met their heavy burden with respect to this factor, a substantial likelihood of success on the merits is only one of the showings that Plaintiffs must make in order to demonstrate their entitlement to the mandatory preliminary injunction that they seek. Because Plaintiffs fail to meet their burden as to each of the other required showings, the Court should deny Plaintiffs' motion.

## IV. Plaintiffs' Requested Injunction Is Improper and Insufficient.

As the Court has correctly recognized, Plaintiffs have utterly failed to specify the relief that they are seeking. *See* Jan. 24, 2020 Order ¶ 6 [ECF No. 141] ("Plaintiffs must explain the scope of preliminary injunctive relief they are seeking and submit a proposed order setting out that relief."). Defendants are unduly prejudiced by Plaintiffs' deficient proposed order and therefore have not been afforded an opportunity to respond fully to Plaintiffs' extraordinary request for emergency relief. Whatever explanation Plaintiffs offer to the Court at the January 28 hearing, Defendants will be hearing it for the first time, deprived of their right to know in advance what is being asked of them, and deprived of the process to which they are entitled in responding to Plaintiffs' motion. Plaintiffs' attempt to ambush Defendants should not be countenanced by the Court.

Plaintiffs' failure to provide an adequate proposed order also constitutes independent grounds for rejection of their motion, because even if Plaintiffs had carried their heavy burden to show their entitlement to relief—which they have not—the injunction that they have requested from this Court is improper and insufficient. Rule 65(d)(1) of the Federal Rules of Civil Procedure

18

requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." These "specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74-76 (1967))[7]; *accord Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016). "A general inunction which in essence orders a defendant to obey the law is not permitted." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981); *see also In re Rodriguez*, 695 F.3d 360, 369 (5th Cir. 2012) ("Injunctions are problematic when they order a defendant to obey the law but do not simultaneously indicate what law the defendant needs to obey.").

Courts have denied other plaintiffs' requests for injunctive relief because their proposed injunctions failed to meet Rule 65(d)'s requirements. *See, e.g.*, *Randolph v. E. Baton Rouge Parish Sch. Bd.*, No. 15-654, 2016 WL 3579224, at *3 (M.D. La. June 28, 2016) (rejecting a plaintiff's request for injunctive relief in part because "[t]he request to enjoin Defendants from bullying, harassing, intimidating, or depriving administrators of due process is essentially an 'obey the law' injunction" that "is improper" because "[t]hese words are too general and vague"); *Epicor Software Corp. v. Alternative Tech. Solutions, Inc.*, No. 13-448, 2013 WL 12130254, at *3 (C.D. Cal. May 20, 2013) (rejecting a plaintiff's request for a TRO in part because the requested relief

---

[7] "The requirement of specificity in injunction orders performs a second important function. Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing." *Schmidt*, 414 U.S. at 477.

"cannot be crafted with sufficient specificity to fairly notify the subjects of the order of what conduct it prohibits"); *Versata Software, Inc. v. Internet Brands, Inc.*, No. 08-313, 2012 WL 3075712, at *3 (E.D. Tex. July 30, 2012) (refusing to enter proposed injunctive relief because the plaintiff's "entreaty amounts to little more than a request for the Court to enter an injunction directing the offending party to 'obey the law'"); *United States v. Gaylor*, No. 09-2026, 2009 WL 10675981, at *2 (C.D. Cal. Apr. 3, 2009) (refusing to enter a TRO in part because the "proposed temporary restraining order is vague and overbroad and does not satisfy the specificity provisions of Rule 65"); *Licata & Co. v. Goldberg*, 812 F. Supp. 403, 411 (S.D.N.Y. 1993) (denying a preliminary injunction in part because "[i]njunctions with the degree of vagueness and ambiguity of that requested by [the plaintiff] do not meet this [Rule 65(d)] standard and are inappropriate"); *see also In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 221 (D. Conn. 2007) (dismissing a portion of the complaint's prayer for relief because it failed to satisfy the requirements of Rule 65(d)); *Reinholdson v. Minnesota*, No. Civ.011650(RHK/JMM), 2002 WL 32658480, at *4-5 (D. Minn. Nov. 21, 2002) (same).

In the absence of an adequate proposed order from Plaintiffs, Defendants can only respond to what they have been given: a wholly inadequate and unacceptably vague proposed injunction with which Defendants could not possibly comply. First, Plaintiffs ask that the Court order Defendants "to take all appropriate measures necessary to remedy the harm caused by their noncompliance with the [NVRA] and the U.S. Constitution"—without specifying what measures are appropriate or necessary, and without explaining which alleged harms are meant to be remedied by this injunction. *See* Pls.' Prop. Order at 1 [ECF No. 5-2]. Though Plaintiffs also request that the Court order Defendants to "provid[e] and accept[] simultaneous voter registration applications in elections for Federal office" from those who engage in specified online transactions with DPS, *id.*,

this request is both nonsensical—voter registration applications are not tied to particular elections—and impossible to comply with in the immediate timeframe suggested by Plaintiffs' motion (i.e., before the March election), as explained above.

Second, Plaintiffs ask this Court to enjoin "Defendants, and all those associated with them, from discriminating against, harassing, or interfering with" the alleged rights of "each Individual Plaintiff, affected members of Associational Plaintiff,[8] and other eligible Texans." *Id.* at 1-2. This is a vague and impermissible injunction which at most amounts to a directive to "follow the law," failing to meet the requirements of Rule 65(d). *See Schmidt*, 414 U.S. at 476. At least one court has rejected substantially similar language for this reason. *See, e.g.*, *Randolph*, 2016 WL 3579224, at *3 (rejecting a plaintiff's request for injunctive relief in part because "[t]he request to enjoin Defendants from bullying, harassing, intimidating, or depriving administrators of due process is essentially an 'obey the law' injunction" that "is improper" because "[t]hese words are too general and vague"). This requested injunction simply does not adequately specify what it is that Plaintiffs seek, or what law Defendants are to refrain from violating, and therefore it fails to satisfy the specificity requirements of Rule 65.

Finally, Plaintiffs ask this Court to order Defendants "to register to vote or update voter registration information for each Individual Plaintiff using their most recent online driver's license transaction." Pls.' Prop. Order at 2. Compliance with this request is impossible. Plaintiffs fail to acknowledge that neither DPS nor SOS has the ability to register any voter at all—Texas law gives that authority solely to county voter registrars. *See* Tex. Elec. Code. §§ 12.001, 13.071; Ingram Decl. ¶ 8. Similarly, even if Defendants could determine the full extent of the changes that Plaintiffs are seeking, Plaintiffs ignore that the changes to state systems required by this injunction

---

[8] It is unclear from the proposed order which Plaintiff is referenced here.

cannot be completed in the timeframe they suggest, as discussed above. Moreover, this proposed injunction is not necessary to avoid an impact to the Individual Plaintiffs' ability to vote in the March election, as there are several other means available to them if they wish to register vote.

Plaintiffs' proposed injunction is improper and insufficient as a matter of law and compliance would be impossible. This Court has already recognized that Plaintiffs' submission with their motion is inadequate. *See* Jan. 24, 2020 Order ¶ 6. Accordingly, even if Plaintiffs had proven that they are entitled to a mandatory preliminary injunction—which they have not—their requested relief should still be denied.

## CONCLUSION

Plaintiffs have failed to satisfy the "heavy burden" that they must meet in order to obtain a preliminary injunction, and they have fallen well short of the heightened "rare instances" showing required for the mandatory relief that they seek. Moreover, to the extent that Plaintiffs' proposed injunction has any content at all, Defendants could not possibly implement the systemic changes Plaintiffs envision before the March election. Accordingly, for the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief of the General Litigation Division

*/s/ Christopher D. Hilton*
ANNE MARIE MACKIN
Texas Bar No. 24078898
CHRISTOPHER D. HILTON
Texas Bar No. 24087727
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
FAX: (512) 320-0667
anna.mackin@oag.texas.gov
christopher.hilton@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via

the Court's CM/ECF system on January 27, 2020, to all counsel of record.

*/s/ Christopher D. Hilton*
Christopher D. Hilton