**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| JARROD STRINGER, NAYELI GOMEZ, §<br>JOHN HARMS, MOVE TEXAS CIVIC FUND, §<br>and LEAGUE OF WOMEN VOTERS OF TEXAS §<br> §<br>     Plaintiffs, §<br> §<br>v. §<br> §<br>RUTH HUGHS, IN HER OFFICIAL §<br>CAPACITY AS THE TEXAS SECRETARY OF §<br>STATE and STEVEN C. McCRAW, IN HIS §<br>OFFICIAL CAPACITY AS THE DIRECTOR OF §<br>THE TEXAS DEPARTMENT OF PUBLIC §<br>SAFETY §<br> §<br>     Defendants. § | Civil Action No. 5:16-cv-00257-OLG |

**EXHIBITS TO PLAINTIFFS REPLY TO DEFENDANTS' RESPONSE TO
EMERGENCY APPLICATION FOR PRELIMINARY INJUNCTION**

**VOLUME 2**

| | |
|---|---|
| 1 | Stipulation of Undisputed Facts from Plaintiffs' Pre-Trial Disclosures from *Stringer I* |
| 2 | Exhibit C-5 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of Jan. 31, 2017 Deposition of Sheri Gipson* |
| 3 | Exhibit C-6 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of Mar. 31, 2017 Deposition of Emily Hutchins* |
| 4 | Exhibit C-7 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of Feb. 17, 2017 Deposition of John Crawford* |
| 5 | Exhibit C-8 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of Mar. 22, 2017 Deposition of Brian Keith Ingram* |
| 6 | Exhibit C-9 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson* |
| 7 | Exhibit C-10 to Plaintiffs' Pre-Trial Disclosures from *Stringer I*<br>*Excerpts of May 23, 2017 Deposition of Eitan Hersh* |

| 8 | Additional Excerpt of Mar. 22, 2017 Deposition of Brian Keith Ingram |
| 9 | Supplemental Declaration of Grace Chimene |
| 10 | Declaration of Joaquin Gonzalez |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, et al., | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | C.A. 5:16-cv-00257-OLG |
| | § | |
| ROLANDO PABLOS, in his official | § | |
| capacity as the Texas Secretary of State, and | § | |
| STEVEN C. McCRAW, in his official | § | |
| capacity as the Director of the Texas | § | |
| Department of Public Safety, | § | |
| | § | |
| *Defendants* | § | |

## STIPULATION OF UNDISPUTED FACTS

For purposes of the trial on the above-captioned cause, the parties stipulate to the following undisputed facts:

1.     Defendant Rolando Pablos is the Texas Secretary of State ("SOS") and under Texas Election Code §31.001(a), serves as the State's Chief Election Officer.

2.     Defendant Steven C. McCraw is the Director of the Texas Department of Public Safety ("DPS"). DPS operates offices around the State and issues Texas driver licenses. All references to "driver licenses" herein refer to Texas driver licenses issued by DPS.

3.     DPS is responsible for transmitting information to SOS about eligible driver license applicants who—during covered driver license transactions with DPS—indicate they wish to (1) register to vote, or (2) update their voter registration information. This information is transmitted by DPS to SOS in the voter registration extract file.

4.     Plaintiffs Jarrod Stringer, Benjamin Hernandez, and John O. Woods, III (collectively, "Plaintiffs") changed their addresses on their DPS-issued driver licenses through

1

online transactions on Texas.gov.

5.     Plaintiffs' counsel sent the Secretary of State letters dated May 27, 2015, October 23, 2015, and November 18, 2015, describing the change of address transactions in paragraph 4, and stating their allegation that DPS's and SOS's handling of these transactions violated the National Voter Registration Act.

6.     Among other requirements, an applicant must be a U.S. citizen to be eligible to renew his driver license or change the address on his driver license online.

7.     An applicant completing an online transaction to renew his driver license must enter his driver license number, date of birth, the last four digits of his social security number, and the audit number on his driver license.

8.     An applicant completing an online transaction to change the address on his driver license—or an applicant who changes the address on his driver license when renewing it online—must enter his driver license number, date of birth, the last four digits of his social security number, the audit number on his driver license, his home address (street, city, state, zip code, and county) and, if different than his home address, his mailing address (street, city, state, zip code, county, and country).

9.     The voter registration application on the SOS voter website is found here: https://webservices.sos.state.tx.us/vrapp/index.asp.

10.     Between April 2013 and February 26, 2016, Step 5 of the online renewal and change of address interface prompted the applicant to select "yes" or "no" beneath the statement "I want to register to vote. Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." (emphasis original)

11.     The signature that appears on the license generated as a result of a customer's online driver license renewal or change of address transaction is an image of the applicant's physical signature, electronically captured during the applicant's most recent in-person transaction in a DPS field office. (On the DL-14A and DL-43 forms this is referred to as the applicant's "electronic signature").

12.     Plaintiffs did not submit a change of address that relates to a Texas driver license in person during the change of address transactions that form the basis of Plaintiffs' claims in this lawsuit.

13.     Plaintiffs did not submit a change of address that relates to a Texas driver license by mail during the change of address transactions that form the basis of Plaintiffs' claims in this lawsuit.

14.     Plaintiffs did not complete a voter registration application on the Secretary of State's website through the link provided on the receipt page at the end of the change of address transactions that form the basis of Plaintiffs' claims in this lawsuit.

15.     After receiving the letters described in Stipulation 5, Defendants offered, through Plaintiffs' attorneys, to confirm Plaintiffs' voter registration status and provide assistance in updating their voter registration if they desired.

16.     Plaintiffs did not attempt to renew their Texas driver license online during the change of address transactions that form the basis of Plaintiffs' claims in this lawsuit.

17.     Plaintiffs are currently registered to vote in the counties where in the letters referenced in Stipulation 5 each Plaintiff indicated they wished to be registered.

18.     Plaintiff Jarrod Stringer did not attempt to cast a ballot in the federal general election in 2012.

19. Plaintiff Jarrod Stringer was able to cast a ballot in the 2016 federal general election.

20. Plaintiff John Woods was able to cast a ballot in the 2012 and 2016 federal general elections.

21. Plaintiff Benjamin Hernandez was able to cast a ballot in the 2012 and 2016 federal general elections.

22. There were no special federal elections in Texas in 2013 and 2015.

Dated: November 22, 2017                              Respectfully submitted,

By: /s/ Rebecca Harrison Stevens

Peter A. Kraus (pro hac vice)
Texas Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com
Rachel A. Gross (pro hac vice)
Texas Bar No. 24073608
rgross@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Cassandra Champion

Texas Bar No. 24082799
champion@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

ATTORNEYS FOR PLAINTIFFS


KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Director of Defense Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ Esteban S.M. Soto
ANNE MARIE MACKIN
Lead Attorney/Attorney-in-Charge
State Bar No. 24078898
ESTEBAN S.M. SOTO
State Bar No. 24052284
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4074
Facsimile: (512) 320-0667
anna.mackin@oag.texas.gov
esteban.soto@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

Plaintiffs' Designations

Page 1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3
    JARROD STRINGER, et al.,          )
 4                                    )
                      Plaintiffs,     )
 5  vs.                               ) C.A. 5:16-cv-00257-OLG
                                      )
 6  ROLANDO B. PABLOS, IN HIS         )
    OFFICIAL CAPACITY AS THE TEXAS    )
 7  SECRETARY OF STATE; AND STEVEN    )
    C. MCCRAW, IN HIS OFFICIAL        )
 8  CAPACITY AS THE DIRECTOR OF THE   )
    TEXAS DEPARTMENT OF PUBLIC        )
 9  SAFETY,                           )
                                      )
10                    Defendants.     )
                                      )
11
```

**CERTIFIED TRANSCRIPT**

```
12

13       ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON

14             TUESDAY, JANUARY 31, 2017

15

16           ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON,

17  produced as a witness at the instance of the Plaintiffs,

18  and duly sworn, was taken in the above-styled and

19  -numbered cause on the 31st day of January, 2017, from

20  9:44 a.m. to 5:59 p.m., before RABIN´ MONROE, Certified

21  Shorthand Reporter in and for the State of Texas,

22  reported by computerized stenotype machine, at the TEXAS

23  ATTORNEY GENERAL'S OFFICE, 300 West 15th Street, 10th

24  Floor, Austin, Texas 78701, pursuant to any provisions

25  stated on the record or attached hereto.
```

Page 2

1                              APPEARANCES

2

3    FOR PLAINTIFFS

4            MS. CAITLYN ELIZABETH SILHAN
             SBOT No. 24072879
5            csilhan@waterskraus.com
             WATERS & KRAUS, LLP
6            3141 Hood Street
             Suite 700
7            Dallas, Texas  75219
             Phone:  (214) 357-6244
8            Fax:    (214) 357-7252

9

10           MS. MIMI MURRAY DIGBY MARZIANI
             SBOT No. 24091906
             mimi@texascivilrightsproject.org
11           MS. CASSANDRA LANG "CASSIE" CHAMPION
             SBOT No. 24082799
12           champion@texascivilrightsproject.org
             TEXAS CIVIL RIGHTS PROJECT
13           1405 Montopolis Drive
             Austin, Texas  78741-3438
14           Phone:  (512) 474-5073

15

16
     FOR DEFENDANTS
17
             MS. ANNE MARIE "ANNA" MACKIN
18           SBOT No. 24078898
             anna.mackin@oag.texas.gov
19           OFFICE OF THE ATTORNEY GENERAL
             300 West 15th Street,
20           14th Floor
             Austin, Texas  78701
21           Phone:  (512) 463-2004

22

23

24                          continued

25



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 10 of 191
Case 5:16-cv-00257-OLG Document 94-3 Filed 11/22/17 Page 10 of 15
STRINGER: SHERI GIPSON

Page 3

```
 1                    A P P E A R A N C E S
                           continued
 2


 3


 4   FOR DEFENDANT TEXAS DEPARTMENT OF PUBLIC SAFETY

 5            MS. KATHLEEN THERESA MURPHY
              SBOT No. 00789507
 6            kathleen.murphy@dps.texas.gov
              TEXAS DEPARTMENT OF PUBLIC SAFETY
 7            5805 North Lamar Boulevard,
              Suite 4087
 8            Austin, Texas  78752
              Phone:  (512) 424-2420
 9            Fax:    (512) 424-2251

10


11


12   ALSO PRESENT:

13            JUSTIN TALBOT, Videographer

14


15


16


17


18


19


20


21


22


23


24


25
```



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 11 of 191
Case 5:16-cv-00257-OLG Document 94-3 Filed 11/22/17 Page 11 of 15
STRINGER: SHERI GIPSON

Page 4

1                       I N D E X

2

3    WITNESS                                              PAGE

4    Title Page                                              1

5    Appearances                                             2

6    Index                                                   4

7    Proceedings Begun                                       6

8    SHERI GIPSON

9         EXAMINATION BY MS. SILHAN                          7
          EXAMINATION BY MS. MARZIANI                      287
10         EXAMINATION BY MS. MACKIN                        294
          FURTHER EXAMINATION BY MS. SILHAN                306
11
     Deposition Suspended                                 310
12
     Changes and Signature                                311
13
     Court Reporter's Certificate                         313
14

15            *       *       *       *       *

16

17                      EXHIBITS

18   NO.   DESCRIPTION                                     PAGE

19    1    Notice of Deposition                               9

20    2    Screenshot -- Driver License Renewal and         65
           Change of Address
21
22    3    DLS Use Case Specification: Create Daily        152
           Update Log for SOS -- December 22, 2014
22
23    4    Letter from Joe Peters to Keith Ingram Re:      174
           NVRA Implementation Plan -- July 22, 2016
24

25                      continued



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 12 of 191
Case 5:16-cv-00257-OLG Document 94-3 Filed 11/22/17 Page 12 of 15
STRINGER: SHERI GIPSON

Page 5

1                           EXHIBITS
                            continued
2

3    NO.    DESCRIPTION                                    PAGE

4     5     Letter from Joe Peters to Keith Ingram Re:      176
            NVRA Implementation Plan -- August 3, 2016
5

6     6     Texas DPS NVRA Implementation Plan              179

7     7     Email from Susan Stempelmann Re: Customer       192
            Operations Conference Call Notes -- October
8           19, 2012

9     8     Email Chain Re: Elections Follow-up             201

10    9     Email Chain Re: Voters registration             205

11    10    Email from Marguerite Buster Re: Voter          209
            registration verification - 2-4-13.doc --
12          2/4/2013

13    11    Metadata                                        211

14    12    D_00011099                                      211

15    13    Email Chain Re: Other DL                        219

16    14    DPS Government Relations Action Sheet           224

17    15    DPS Overview                                    246

18    16    Application for Change of Address on Valid      259
            Texas Driver License (DL) & Identification
19          Card (ID)

20    17    The National Voter Registration Act and         269
            Voter Registration Applications . . . an
21          Overview -- 6/12/13

22    18    Letter from Peter A. Kraus and Mimi M. D.       285
            Marziani to Secretary of State Cascos Re:
23          Failure to Comply with Voter Registration
            Obligations at Texas Department of Public
24          Safety -- May 27, 2015

25              *       *       *       *       *



Case 5:16-cv-00257-OLG Document 154-3 Filed 01/28/20 Page 13 of 191
Case 5:16-cv-00257-OLG Document 94-3 Filed 11/22/17 Page 13 of 15
STRINGER: SHERI GIPSON

Page 136

```
 1    change-of-address and driver-license renewals on

 2    Texas.gov?

 3         A.    That would have been prior to DLS.

 4         Q.    Once DLS became operational, how did

 5    information collected on the online change-of-address

 6    and renewal form . . . get transmitted to DLS?

 7         A.    So there is a nightly file that they transmit

 8    the data from those application- -- completed

 9    applications to DLS.

10         Q.    For those completed applications, we've already

11    discussed that the answer to the voter-registration

12    question, that is not included in that nightly file;

13    correct?

14         A.    That's correct.

15         Q.    Are there any other questions that applicants

16    are required to answer on the online change-of-address

17    or renewal form that is not transferred in the nightly

18    file to DPS?  I'm sorry.  To -- to the DLS?

19         A.    No.

20         Q.    Why does DPS require customers to answer that

21    question if they don't even retain the answer?

22         A.    The -- because we need to offer them the

23    availability of the application.  And so if they f- --

24    in order for us -- for Texas.gov, the way that's

25    programmed, is if they enter "yes," it presents the
```



Page 179

1  go back and look and see.

2           MS. SILHAN:  We'll mark this as Exhibit 6.

3           (Exhibit 6 marked for identification.)

4      Q.  (BY MS. SILHAN)  Have you seen this document

5  before?

6      A.  Yes.  This is the plan that was attached to the

7  letter I received.

8      Q.  Okay.  And this document, Exhibit 6, it is the

9  Texas Department of Public Safety National Voter

10 Registration Act Implementation Plan; correct?

11     A.  Correct.

12     Q.  And prior to receiving this in July 2016, you

13 hadn't received a previous version; is that correct?

14     A.  Correct.

15     Q.  Did you receive any -- any instructions related

16 to this document?

17     A.  If you're talking about instruction or training

18 as to what my duties would be?  No, I did not.

19     Q.  Okay.  So you re- -- but you received the

20 letter and you received a copy of this --

21     A.  The plan, right.

22     Q.  'Kay.  Did you have any role in putting the

23 plan together?

24     A.  No, ma'am.  It was established prior to

25 my . . . appointment.



Page 234

1    certify that the information is true and correct?

2         A.    They're . . . well, the only thing that they're

3    changing is their address.  But they're -- they're

4    verifying who they are through the authentication

5    process that occurs up front by providing key pieces of

6    data, which is their f- -- their name, the

7    driver-license number, date of birth, the audit number

8    that's on the card they currently hold, and the last

9    four of their Social.

10             (Brief pause.)

11        Q.    Aside from the physical ink signatures and the

12   electronic keypad signatures, are there any other types

13   of signatures DPS collects from customers?

14        A.    No, ma'am.

15        Q.    Does anyone compare the signatures collected by

16   DPS?

17        A.    Compare. . . .

18        Q.    So a customer is going to be submitting to DPS,

19   no matter what, two signatures; correct?

20        A.    Correct.

21        Q.    Even in the first application, they're

22   submitting an ink signature physically on a piece of

23   paper, as well as an electronic signature on a keypad.

24        A.    Correct.

25        Q.    Does anyone go through and compare those two?



STRINGER: SHERI GIPSON

Page 235

1    A.    Not typically, no.

2    **Q.    Under what circumstance would they compare**

3  **them?**

4    A.    If there was somethin' that identified that

5  there was potential fraud, or an issue that arose that

6  was, you know, for potential fraud or identity theft,

7  then we would have somebody pull and -- and analyze

8  those signatures.

9    **Q.    How are those issues flagged?**

10   A.    What do you mean --

11   **Q.    How --**

12   A.    -- "how are they flagged"?

13   **Q.    How does the system identify potential identity**

14 **fraud or theft?**

15   A.    So the system itself does not identif- -- or

16 done -- identify fraud, per se.  We do have an IVS

17 system which does facial recognition on the original

18 applicants.  And so each morning we have individuals

19 that review those files that come up as potential

20 matches, and then they determine -- if there's potential

21 fraud, if there is, then they refer it to our Criminal

22 Investigations Division.

23        The other way that it would be noted is if

24 the Criminal Investigation Division or Highway Patrol,

25 or another law enforcement agency, determined that there



Page 236

1   was potential fraud, then they would -- they would

2   request that information.

3        Q.   For signatures -- ink signatures on mail-in

4   changes of address, for example, are those ever compared

5   with either the f- -- previous physical signature or the

6   electronic signature on file?

7        A.   Not on a routine basis, no.

8        Q.   Under what circumstance would they be compared?

9        A.   Again, only if somebody came in and said

10  "Fraud."  They wouldn't be as part of the application

11  process.

12       Q.   Okay.  But there wouldn't be another picture to

13  do another facial recognition; right?

14       A.   No.  Not at that point.

15       Q.   'Kay.  So when else -- what other circumstance

16  for a mail-in form would -- would flag that form for

17  signature comparison?

18       A.   There's not any.

19       Q.   Okay.  So then the mail-in signatures are never

20  compared.

21       A.   Typically no.

22       Q.   Okay.  So I'm just . . . I'm just trying to

23  understand.  When you say --

24       A.   Yeah.

25       Q.   -- "typically no" --



STRINGER: SHERI GIPSON

Page 237

1    A.    Well --

2    Q.    -- why -- why can't you say "no"?

3    A.    So no.  During the routine process, it would

4  never be compared.

5    Q.    But. . . .

6    A.    When I say "routine process," what I'm talking

7  about is the individual that's processing that mail

8  renewal application, they would never compare that

9  signature.  If after the fact we received a contact from

10 Criminal Investigations Division or another low en- --

11 law-enforcement co- -- office contact CID, they may pull

12 those signatures and look at 'em.  But as a routine part

13 of the function of updating mail and -- 'scuse

14 me [coughed] -- mail-in address changes, we do not

15 review the signatures.

16   Q.    How does DPS go about verifying the information

17 submitted online for the online change of address or

18 renewal form?

19   A.    Again, the only verification that's done there

20 is their log-in credentials.

21   Q.    But those log-in credentials, is that

22 information different than what would be entered on a

23 physical mail-in change-of-address form?

24   A.    The difference is the Social Security Number.

25 The last four digits of the Social Security.  And



Page 254

1    actually refer to the -- electronic signature captured

2    on the keypad?

3         A.   Yes, it does.

4         Q.   So DPS was never actually scanning physical ink

5    signatures from paper and then transmitting them to

6    SOS . . . during this time.

7         A.   No, we were not.

8              (Brief pause.)

9         Q.   Looking at the next page.  Page three of nine.

10   Under the heading "May 15th, 2009," it says, "A report

11   to categorize the following."

12             Do you see that?

13        A.   Yes.

14             MS. MACKIN:  May 15th, 2009?

15             MS. SILHAN:  Yes.

16        Q.   (BY MS. SILHAN)  And this report would

17   categorize a number of things, including the number of

18   DPS applications received?  Correct?

19        A.   Mm-hmm.

20        Q.   The number of DPS applications approved as new

21   voter.  Number of DPS applications approved as change to

22   existing voter.

23             Are you familiar with whether these

24   reports were created?

25        A.   No, I'm not.

Page 312

1  THE STATE OF _____)

2  COUNTY OF _____)

3

4      Before me, _____, on this day

5  personally appeared SHERI GIPSON, known to me or proved

6  to me on the oath of _____ or through

7  _____ [description of identity

8  card or other document] to be the person whose name is

9  subscribed to the foregoing instrument and acknowledged

10  to me that he/she executed the same for the purpose and

11  consideration therein expressed.

12      Given under my hand and seal of office this

13  _____ day of_____, _____.

14

15

16                    _____

17                    NOTARY PUBLIC IN AND FOR
                      THE STATE OF _____

18                    My Commission Expires:_____

19

20

21

22

23

24

25



Page 313

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,         )
                                      )
 4                   Plaintiffs,      )
     vs.                              ) C.A. 5:16-cv-00257-OLG
 5                                    )
     ROLANDO B. PABLOS, IN HIS        )
 6   OFFICIAL CAPACITY AS THE TEXAS   )
     SECRETARY OF STATE; AND STEVEN   )
 7   C. MCCRAW, IN HIS OFFICIAL       )
     CAPACITY AS THE DIRECTOR OF THE  )
 8   TEXAS DEPARTMENT OF PUBLIC       )
     SAFETY,                          )
 9                                    )
                     Defendants.      )
10                                    )
```

11          ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON

12                 TUESDAY, JANUARY 31, 2017

13          I, RABIN´ MONROE, Certified Shorthand Reporter

14   in and for the State of Texas, hereby certify to the

15   following:

16          That the witness, SHERI GIPSON, was duly sworn

17   by the officer and that the transcript of the deposition

18   is a true record of the testimony given by the witness;

19          That the deposition transcript was submitted

20   on _____ _____, 2017, to the witness, or

21   to the attorney for the witness, for examination,

22   signature, and return to _____;

23          That $_____ is the deposition

24   officer's charges to the Plaintiffs for preparing the

25   original deposition and any copies of exhibits;



**hglitigation.com**

Page 314

1      That pursuant to information given to the

2  deposition officer at the time said testimony was taken,

3  the following includes all parties of record, along with

4  the amount of time used by each party at the time of the

5  deposition:

6        MS. CAITLYN ELIZABETH SILHAN
         Counsel for Plaintiffs
7        TIME USED:  6 Hours, 15 Minutes

8        MS. MIMI MURRAY DIGBY MARZIANI
         Counsel for Plaintiffs
9        TIME USED:  6 Minutes

10       MS. ANNE MARIE "ANNA" MACKIN
         Counsel for Defendants
11       TIME USED:  17 Minutes

12       MS. KATHLEEN THERESA MURPHY
         Counsel for Defendants
13       TIME USED:  (No time used.)

14       I further certify that I am neither counsel

15  for, related to, nor employed by any of the parties in

16  the action in which this proceeding was taken, and

17  further, that I am not financially or otherwise

18  interested in the outcome of this action.

19       Certified to by me on FEBRUARY 12, 2017.

20

21  _____
    RABIN´ MONROE, RDR, CRR, CRC
22  Texas CSR# 9049
    Expiration:  December 31, 2018
23  HG LITIGATION
    Firm Registration No. 69
24  2501 Oak Lawn Avenue, Suite 600
    Dallas, Texas  75219
25  1-888-656-DEPO
    1-888-656-3275 TOLL FREE FAX
    1-888-656-3275 TOLL FREE FAX



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 23 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/28/17 Page 1 of 27
STRINGER: EMILY ERIN HUTCHINS

Plaintiffs' Designations

Page 1

```
 1                UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,        §
                                     §
 4           Plaintiffs,             §
                                     §
 5   V.                              §
                                     §
 6   ROLANDO PABLOS, IN HIS          §
     OFFICIAL CAPACITY AS THE        §
 7   TEXAS SECRETARY OF STATE        §  C.A. 5:16-cv-00257-OLG
     and STEVEN C. McCRAW, IN        §
 8   HIS OFFICIAL CAPACITY AS        §
     THE DIRECTOR OF THE TEXAS       §
 9   DEPARTMENT OF PUBLIC SAFETY,    §
                                     §
10           Defendants.            §
```

**CERTIFIED TRANSCRIPT**

```
11

12                  ORAL DEPOSITION OF
                   EMILY ERIN HUTCHINS
                     MARCH 31, 2017
13

14           ORAL DEPOSITION OF EMILY ERIN

15   HUTCHINS, produced as a witness at the instance of

16   the Plaintiffs and duly sworn, was taken in the

17   above styled and numbered cause on Friday,

18   March 31, 2017, from 9:06 a.m. to 2:46 p.m., before

19   Tamara Chapman, CSR, RPR, CCR (LA) in and for the

20   State of Texas, reported by computerized stenotype

21   machine, at the offices of Jackson Walker, 100

22   Congress, Suite 1100, Austin, Texas 78701, pursuant

23   to the Federal Rules of Civil Procedure and the

24   provisions stated on the record herein.

25     Job No. 247029
```



STRINGER: EMILY ERIN HUTCHINS

Page 2

```
 1                    A P P E A R A N C E S

 2

      REPRESENTING PLAINTIFFS:
 3         Caitlyn Silhan
           WATERS & KRAUS, LLP
 4         3141 Hood Street, Suite 700
           Dallas, Texas 75219
 5         214-357-6244
           csilhan@waterskraus.com
 6
           - and -
 7
           Cassandra Champion
 8         TEXAS CIVIL RIGHTS PROJECT
           1405 Montopolis Drive
 9         Austin, Texas 78741-3438
           512-474-5073
10         champion@texascivilrightsproject.org

11

12     REPRESENTING DEFENDANTS:
           James Matthew Dow
13         Faith E. Johnson
           JACKSON WALKER, LLP
14         100 Congress Avenue, Suite 1100
           Austin, Texas 78701
15         512-236-2230
           512-236-2027
16         mdow@jw.com
           fjohnson@jw.com
17

18

       REPRESENTING NIC:
19         Esteban Soto
           OFFICE OF THE ATTORNEY GENERAL OF TEXAS
20         P.O. Box 12548
           Austin, Texas 78711-2548
21         512-463-2120
           esteban.soto@oag.texas.gov
22

23     ALSO PRESENT:
           Tina Mize, Associate General Counsel, NIC
24

25
```



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 25 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 3 of 2
STRINGER: EMILY ERIN HUTCHINS

Page 3

1                           I N D E X

2
                                                        PAGE
3

4    APPEARANCES.................................    2

5

6        EMILY ERIN HUTCHINS

7    EXAMINATION
          By Ms. Silhan...........................    7
8

9
                          E X H I B I T S
10
                                              PAGE  LINE
11   Exhibit 1                                 10    11
     Subpoena to Testify at a Deposition In
12   a Civil Action
     (No Bates - 10 pages)
13
     Exhibit 2                                 10    19
14   Responses and Objections to Subpoena
     to Testify at a Deposition in a Civil
15   Action and Produce Documents
     (No Bates - 11 pages)
16
     Exhibit 3                                 20    16
17   TexasOnline 2.0 Customer Agreement
     (No Bates - 15 pages)
18
     Exhibit 4                                 31    17
19   List of Services spreadsheet
     (NIC 004438)
20
     Exhibit 5                                 35    15
21   Monthly Transaction Counts spreadsheet
     (NIC 004481 - NIC 004482)
22
     Exhibit 6                                 40    15
23   NIC Release Plan
     (NIC 004370 - NIC 004374)
24

25

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 26 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 6 of 21
STRINGER: EMILY ERIN HUTCHINS

Page 4

1                    E X H I B I T S
                      (Continued)
2

                                                  PAGE  LINE
3    Exhibit 7                                    40    15
     11/15/12 e-mail and attachment from
4    Betsy Schonhoff to Beva Kellison,
     Subject "Standard Response - DPS -
5    Attempted to Register Online"
     (D_00011475 - D_00011476)
6
     Exhibit 8                                    44    2
7    3/8/17 chain of e-mails Lynne Cardenas
     and various others, Subject "FW: DLR
8    Remove 'Are you a citizen?'"
     (D_00021767 - D_00021768)
9
     Exhibit 9                                    45    6
10   DLR List of Changes
     (D_00021769 - D_00021774)
11
     Exhibit 10                                   51    11
12   Project Management Tool
     (NIC 006015 - NIC 006023)
13
     Exhibit 11                                   56    15
14   Request for Change Form
     (NIC 000619 - NIC 000620)
15
     Exhibit 12                                   60    17
16   Series of e-mails between Rebekah
     Hibbs and various recipients, Subject
17   "FW: DL/ID Renewal - Voter
     Registration INC 2397"
18   (NIC 000739 - NIC 000747)

19   Exhibit 13                                   69    23
     Texas Department of Public Safety
20   Driver License Renewal and Change of
     Address web page
21   (No Bates - 8 pages)

22   Exhibit 14                                   80    18
     Request for Change Form
23   (NIC 001036 - NIC 001038)

24

25

---

**hglitigation.com**



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 27 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 27 of 191
STRINGER: EMILY ERIN HUTCHINS

Page 5

```
 1                E X H I B I T S

 2                                              PAGE LINE
     Exhibit 15                                  86   16
 3   Texas Department of Public Safety
     Driver License Renewal and Change of
 4   Address web page
     (No Bates - 6 pages)
 5
     Exhibit 16                                  90   10
 6   10/3/16 e-mail from Elvin Carrero to
     Paul Graeber, Subject "FW: Updated
 7   Vignettes"
     (NIC 000839 - NIC 000840)
 8
     Exhibit 17                                  94    9
 9   Driver License Renewal Receipt and
     Temporary License
10   (No Bates - 1 page)

11   Exhibit 18                                  97   11
     Collection of Tickets
12   (NIC 005926 - NIC 005932)

13   Exhibit 19                                 101   16
     2/14/05 Texas Department of Public
14   Safety DL Authentication Application
     (NIC 005878 - NIC 005891)
15
     Exhibit 20                                 106   15
16   11/4/16 series of e-mails between
     Ayyappa Veerapaneni and Faithe
17   Hernandez, Subject "RE: SOS info.;
     Updated"
18   (NIC 000916 - NIC 000918)

19   Exhibit 21                                 110   14
     4/30/14 DL Applications (DLR and
20   DLRST) Generate Two Output Flat Files
     Version 8.2
21   (NIC 004545 - NIC 004607)

22   Exhibit 22                                 116    5
     9/6/06 DL Renewal Data Dictionary
23   Version 2.5
     (NIC 004706 - NIC 004750)
24

25
```



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 28 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 28 of 191
STRINGER: EMILY ERIN HUTCHINS

Page 6

1              E X H I B I T S
                  (Continued)

2

                                        PAGE  LINE
3    Exhibit 23                          121     6
     8/29/07 Use Case Specification Select
4    Options Version 2.4
     (NIC 004943 - NIC 004951)
5
     Exhibit 24,                         123    12
6    Ecaptran Copybook Application
     Transaction File Description
7    (NIC 005413 - NIC 005414)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 29 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 29 of 191
STRINGER: EMILY ERIN HUTCHINS

Page 13

```
1              MR. DOW:  Be sure you wait until
2    she finishes her question so the court reporter
3    can --
4              THE WITNESS:  Yes.
5              MR. DOW:  Thanks.
6              THE WITNESS:  Yes.
7         Q.  It's tricky, I know, especially sitting
8    across the table having a conversation.
9              So in your capacity as general manager and
10   director of portal operations, what are your
11   responsibilities?
12        A.  I oversee the development teams, including
13   project managers, software developers, quality
14   assurance analysts.  I also oversee the sales team,
15   marketing team, service desk teams.
16        Q.  Do you have contact with the client state
17   entities at all?
18        A.  Yes.
19        Q.  So jumping back, Texas NIC, tell me about
20   what Texas NIC does here in the State of Texas?
21        A.  Texas NIC is a software development
22   company.  We provide self-funded government solutions
23   in partnership with state agencies under a master
24   agreement supervised by the Department of Information
25   Resources.
```

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 30 of 191
Case 5:16-cv-00257-OLG Document 94-1 Filed 11/22/17 Page 30 of 191
STRINGER: EMILY ERIN HUTCHINS

Page 14

1      Q.   What does that mean, to provide

2   self-funded government solutions?

3      A.   So we work with the state agencies to

4   implement online services, online versions of paper

5   forms and back-end systems, and they are provided in

6   such a way that the transaction -- or the transaction

7   fees for those services recoup the cost for

8   development of those services.

9      Q.   So then Texas.gov is -- is that one such

10  government solution that Texas NIC created?

11     A.   The Texas.gov, the website is one of those

12  such solutions.  Texas.gov is also referred to as the

13  program under which we operate the master agreement.

14     Q.   And did NIC help develop Texas.gov or was

15  Texas.gov something that NIC inherited, I guess?

16     A.   Prior to NIC, there was TexasOnline.com

17  that was provided by another provider.  Texas.gov is

18  the work of Texas NIC.

19     Q.   When did Texas.gov come online?

20     A.   May of 2010.

21     Q.   And different state agencies -- is it

22  correct that different state agencies have or offer

23  services on Texas.gov?

24     A.   Yes.

25     Q.   And it's not necessarily all state



Page 24

1   numbered, but it's Exhibit B.  Are you familiar
2   with...
3           A.  Yes.
4           Q.  Now, this lists "Application and Services
5   Description, Customer Name."  Again, this is a
6   template.  But is this -- would this be the same for
7   the agreement with the Department of Public Safety?
8           A.  This Exhibit B is essentially a menu of
9   things that go into Exhibit A.  So as we add a
10  specific service to Exhibit A for an agency, it would
11  reference items from Exhibit B.
12          Q.  Okay.  Flipping to the next page.  At the
13  bottom it lists "Texas.gov Authentication Service" --
14          A.  Yes.
15          Q.  -- "TOAS"?  Do you say it that way or do
16  you call it TOAS (pronouncing)?
17          A.  We call it TOAS (pronouncing).
18          Q.  Is this something that -- well, why don't
19  you tell me what this is.  What is the Texas.gov
20  Authentication Service?
21          A.  TOAS offers a way for agencies to have a
22  common authentication of users.  It uses elements of
23  the driver's license.
24          Q.  And so Texas.gov offers agencies a way to
25  authenticate users that are interacting with the

Page 25

1   agency via Texas.gov.  Is that correct?

2        A.   Yes.

3        Q.   Does DPS authenticate users via this TOAS

4   system?

5             MR. DOW:  Are you asking her

6   whether DPS --

7        Q.   Yes.  Whether DPS customers are

8   authenticated using the Texas.gov Authentication

9   Service?

10       A.   No.

11       Q.   So users who -- for example, someone who

12  uses Texas.gov to renew their driver's license, they

13  would not be authenticated using this service?

14       A.   They are authenticated using a similar

15  service.

16       Q.   Okay.  What is that service called?

17       A.   It's actually not called -- it's specific

18  to driver's license renewal and it is a function of

19  that application that has additional data elements.

20       Q.   What are the additional data elements?

21       A.   The audit number of the driver's license,

22  and date of birth.

23       Q.   What about the Secretary of State?  We've

24  mentioned there's one application that Texas.gov

25  hosts for the Secretary of State's office.  Is that

Page 26

1  correct?

2      A.  Yes.

3      Q.  Does Secretary of State use TOAS to

4  authenticate --

5      A.  I don't know.

6      Q.  -- users?  Okay.

7          Can you give me an example of an agency

8  that does use TOAS to authenticate users?

9      A.  Yes.  The online vital records application

10 for the Department of -- or of State Health Services.

11     Q.  Okay.  I'd like you to walk me through

12 that example.  But before we do, just looking at what

13 this says I want to make sure that this is still

14 current.  So here it says "Vendor provides Texas.gov

15 Authentication Service (TOAS)" -- T-O-A-S --

16 "Section 2054.271 of the Texas Government Code allows

17 for Texas.gov to authenticate Customers against

18 Customer databases in lieu" -- I think it's missing

19 an "of" -- "in lieu a signed agreement" -- I'm sorry,

20 "a signed or notarized document."

21         So you mentioned that the way that

22 Texas.gov does that is, is information from driver

23 licenses.  Is that correct?

24     A.  Yes.

25     Q.  Is there any other way or any other data

Page 27

1    source that Texas.gov pulls from to authenticate?

2            A.   Yes.   But for out-of-state persons.

3            Q.   Okay.   So in the example of the online

4    vital records application for the Department of State

5    Health Services, how does the TOAS system work to

6    authenticate an applicant?

7            A.   The TOAS system is -- uses an extract of

8    driver license data, drivers' license number, last

9    four of social security.   And there's another data

10   element that I can't think of at the moment.   I'm

11   sorry.

12           So the online vital records system, the

13   end user logs in with -- enters, keys in those data

14   elements, we check it against our database that

15   features data from that extract file provided by DPS.

16   And depending on whether or not all of those data

17   elements match, the user is able to log in and

18   request their vital record.

19           Q.   That happens in real-time?

20           A.   The extract is not -- is an extract file.

21   So DPS actually sends us a batch file on a regular

22   basis.   We use that -- I believe it's nightly.   We

23   use that to update our database for the purposes of

24   the TOAS system.

25           So with respect to online vital records,

Page 28

1  online vital records communicates with our database

2  that uses that extract, but it is not a real-time

3  call to DPS.

4      **Q.  How does that differ for authentication of**

5  **users of DPS's online driver license renewal and**

6  **change of address?**

7      A.  That authentication occurs in real-time,

8  again, using those additional data elements that I've

9  identified.  There's a web service called it.

10      **Q.  And so if a user is attempting to change**

11  **their address or renew their driver license online**

12  **through Texas.gov, if they log in, does Texas.gov**

13  **also refer to the DPS extract file to authenticate**

14  **even -- you know, using the data points required or**

15  **does it -- does it go to a different source to**

16  **authenticate the user?**

17      A.  It authenticates against the driver's

18  license system at DPS.  It doesn't have another

19  source.  So it's a real-time call to DPS.

20      **Q.  Okay.  So in that case instead of using**

21  **the extract file that DPS sends to Texas.gov**

22  **specifically for the TexasOnline authentication**

23  **service, it's a whole nother thing, in real-time**

24  **goes -- the request goes to DPS?**

25      A.  Yes.



Page 29

1      Q.   Why is it set up that way?

2      A.   TOAS didn't need the requirements for

3  audit number, and you wouldn't necessarily want to

4  include a data element for authentication into a

5  nondriver license system that would require the end

6  user to have their driver's license in front of them.

7           But for the purposes of logging in to a

8  driver license system, you would want to have them

9  authenticate with as much data from that driver

10  license system as possible.

11           Can I amend that to also say that it's for

12  the purposes of eligibility, that that's why it's

13  real-time for a driver's license.

14      Q.   I see.  Okay.

15           So can you break that down for me?

16      A.   In other words, constituents aren't able

17  to renew their driver's license or -- all the time.

18  There are business rules with respect to driver's

19  license renewal that only allow them to renew every

20  other time because they would have to get a picture

21  or because they've reached an age threshold that

22  requires other eligibility --

23      Q.   Okay.  So --

24      A.   -- that would allow them to be online.

25      Q.   Okay.  So let me make sure I understand



Page 30

```
 1   that.
 2          An individual who wants to update or
 3   change their address online -- well, scratch that.
 4          An individual who wants to renew or change
 5   their driver's license address online may only be
 6   eligible to do so if certain criteria are met.  Is
 7   that correct?
 8          A.  Correct.
 9          Q.  And because -- that -- that distinguishes
10   an online change of address or driver's license
11   renewal from -- from the services that would use
12   TOAS, which wouldn't have an eligibility threshold.
13   Is that correct?
14          A.  Correct.
15          Q.  And so because of this eligibility
16   criteria, Texas.gov goes straight to DPS to inquire
17   about whether that criteria has been met.  Is that
18   correct?
19          A.  Correct.
20          Q.  And they do that at the same time that
21   they also are authenticating?
22          A.  Yes.
23          Q.  In terms of determining whether the user
24   is eligible, is that -- how does that work?  Does --
25   does Texas.gov in real-time send a request, and then
```

Page 31

1   DPS -- you tell me.  How does it work?

2               MR. DOW:  With respect to?

3       Q.  So you've mentioned for TOAS, DPS every

4   night sends a batch file, correct?

5       A.  Yes.

6       Q.  Okay.  And so when a user is being

7   authenticated that way, Texas.gov has the data in the

8   batch file, is able to check what the user entered

9   against what DPS has provided.  Is that correct?

10      A.  Yes.

11      Q.  When it comes to a DPS user where there is

12  also an eligibility question, how does DPS tell

13  Texas.gov the user is eligible?

14      A.  Texas.gov sends a real-time authentication

15  and eligibility request to DPS and DPS, essentially,

16  sends back a real-time yes or no.

17               (Exhibit 4 was marked.)

18      Q.  Hand you what I've marked as Exhibit 4.

19  This is a printout of a document produced to us as

20  NIC 004438.  You've already told me a little bit

21  about the services that Texas.gov provides to DPS and

22  the Secretary of State's office, but I wanted to look

23  at this list.  This is from a tab labeled "2017," so

24  I'd like to know if this is still current and see if

25  you can describe for me a little bit about what this

1    says.

Page 32

2         So the first -- the first line says

3    "Application BDR," and it says that's for the agency

4    Texas Department of Public Safety.  And the

5    application description is "Batch Driver Record."

6    What is that?

7         A.  That is drive record accesses for

8    insurance companies and pre-employment providers.

9         Q.  And it says that's not URL-based?

10        A.  Correct.

11        Q.  What does that mean?

12        A.  That means that the end user customer

13   essentially provides us with a batch file requesting

14   driver records.  We have a tool that allows us to

15   request that record from the DPS and then build a new

16   batch file and send it back to the requesting

17   customer.

18        Q.  Okay.  So that's not -- that's not done in

19   connection with any services offered to customers on

20   Texas.gov?

21        A.  It is -- It is not available on the

22   Texas.gov website.  It is a service of the Texas.gov

23   program.

24        Q.  Okay.  Okay.  Right.  Okay.  So we'll

25   distinguish the website again from the actual --

Page 33

1          A.   Yes.  Sorry.  Yes.

2          Q.   -- it's fine.  That's my mistake.

3               Okay.  And we discussed -- looking down

4     the list it says "DLE" under "Application."  That's

5     for driver's license eligibility or reinstatement.

6     We've discussed that.  Correct?

7          A.   Yes.

8          Q.   And "DLR."  That says "Driver License

9     Renewal."  I just want to be clear.  That is -- is

10    referring to driver's license renewal offered online

11    via Texas.gov only.  Is that correct?

12         A.   Yes.

13         Q.   Does that also encompass the change of

14    address option offered on Texas.gov?

15         A.   Yes.

16         Q.   Okay.  So when we see in documents "DLR,"

17    that would be referring to the combination of online

18    Texas driver's license renewal or change of address?

19         A.   Yes.

20         Q.   And it would also refer to a change of

21    address offered through DPS but for an ID card as

22    opposed to a driver's license?

23         A.   Yes.

24         Q.   For those ID card transactions, is there

25    also the eligibility check in real-time to DPS?

Page 34

1            A.  Yes.

2            Q.  Going down the list.  We also discussed --

3      well, it lists here "OTC."  And it says, "Over the

4      Counter."  That's the kind of financial end of the

5      in-person transactions that we discussed.  Correct?

6            A.  Yes.

7            Q.  The cash drawer?

8            A.  Yes.

9            Q.  Going back just above that I see "IVR,

10     Texas Department of Public Safety" it says "IVR

11     Address Change."  What is that?

12           A.  The IVR is the interactive voice response,

13     or telephone version of the driver's license renewal

14     and address change service.

15           Q.  Okay.  And so although it says "IVR

16     Address Change," that would refer to both the renewal

17     and address change for a driver's license or ID card,

18     correct?

19           A.  Yes.

20           Q.  And then here looking -- looking down

21     below that, it says, "SOS Texas office of the

22     Secretary of State, SOS voter registration, Address

23     Change."  So when we see SOS listed as an

24     application, it's referring to that single voter

25     registration and address change service.  Is that

Page 37

1    the payments only transactions?

2         A.   Yes.

3         Q.   So it says 1,293,502.  That would be the

4    total for payments only online renewal or change of

5    address?

6         A.   Yes.

7         Q.   The next one, $1,294,665, that would be

8    for all driver's license renewal or change of address

9    transactions in 2012?

10        A.   Yes.

11        Q.   So looking through this it looks like

12   there is a -- you know, a steady increase.  Is that

13   fair?

14        A.   Yes.

15        Q.   And it looks like between 2012 and 2013

16   there's -- you know -- a difference of less than

17   100,000.  Same in the next year.  Then it looks like

18   there might -- there's a -- more of an increase in

19   2016.  Is that correct?  Between 2016 and 2015?

20        A.   Yes.

21        Q.   Do you attribute that to -- is there any

22   explanation for that?

23        A.   Texas.gov has a substantial marketing

24   program as part of the master agreement that promotes

25   driver's license services.  DPS also promotes the



Page 38

1  service.

2      Q.  What does that promotion entail for online

3  driver's license renewal and change of address?

4      A.  We have online ads and -- oh.  I guess you

5  would call them interactive media, like Hulu

6  commercials that run that were really added in 2015.

7  We've always had the online advertising.

8      Q.  And is that to promote the online driver's

9  license renewal and change of address as opposed to

10 in office or mail change of address or renewal?

11     A.  It's actually not specific essentially to

12 driver's license renewal, it is actually an

13 advertisement for Texas.gov/driver.  In the

14 commercials.  Use case is related to vehicle

15 registration -- online vehicle registration and

16 online driver's license renewal are presented in

17 those ads.

18     Q.  Okay.  But -- and so with respect to the

19 driver's license renewal aspect, if any kind of

20 marketing, what does the marketing convey about

21 driver's license renewal?

22     A.  It's the convenience and ease of using any

23 online service.

24     Q.  Is that something that Texas NIC developed

25 along with or with input from DPS?



Page 39

1    A.   Yes.

2    Q.   And did DPS convey to Texas NIC anything

3 about -- about why they were hoping to promote online

4 renewal and change of address services?

5    A.   The advertising is really driven from

6 Texas NIC's perspective.  Again, as I explained we

7 have a self-funded business model in which case we

8 recuperate our program's operating expenses and the

9 development of the software on a transactional basis.

10 So when we drive transactions, we drive additional

11 revenues.

12    Q.   I see.  So does that mean, though, that

13 DPS hasn't conveyed one way or another any kind of

14 marketing intention or traffic-flow intention for the

15 online driver's license renewal and change of

16 address?

17    A.   They have indicated that they do want more

18 online renewal.  It eases the burden in their offices

19 and on paper processes.

20    Q.   How about the service offered with

21 Secretary of State for online address change for

22 voter registration, is that promoted at all by Texas

23 NIC?

24    A.   Yes.

25    Q.   How so?



Page 84

1   says it's a political risk.  Is that correct?

2         A.  Yes.

3         Q.  What's Texas NIC's understanding of why

4   there would be a political risk associated with this

5   issue?

6         A.  I don't know.  I don't know what was

7   represented to the person that took the request.

8         Q.  Okay.  Well, did -- were you personally

9   involved at all in addressing this request or issue?

10        A.  No.

11        Q.  Texas NIC and its client agencies, do they

12  have regular meetings to discuss the applications

13  that are hosted on Texas.gov?

14        A.  Some do.

15        Q.  And Texas NIC and the Department of Public

16  Safety have regular meetings to discuss the

17  DPS-related applications on Texas.gov.  Is that

18  correct?

19        A.  Yes.

20        Q.  Were you -- was Texas NIC meeting with DPS

21  regularly in September of 2016?

22        A.  Yes.

23        Q.  And how about earlier in the year in

24  February of 2016?

25        A.  Yes.

Page 99

1       A.   No.

2       Q.   Okay.   Other than the few kind of

3   documented voter registration verbiage or radio

4   button-related issues, are there any other driver

5   license renewal or change of address, voter

6   registration-related tickets or concerns that have

7   been brought to NIC's attention or that NIC has

8   brought up in the last few years?

9       A.   There may be tickets or e-mails exchanged,

10  particularly with DIR and possibly DPS, related to

11  pending legislation related to online voter

12  registration in each of the last several sessions.

13      Q.   And as far as that goes, how would that

14  relate to the DPS driver license renewal or change of

15  address application?

16      A.   It doesn't.

17      Q.   If the -- if legislation were to pass to

18  require online or automatic voter registration, how

19  would that impact the driver license renewal or

20  change of address application?

21      A.   I wouldn't expect it to.

22      Q.   Well, if DPS indicated that -- that there

23  needed to be an actual voter registration component

24  of the driver license renewal or change of address

25  application, is that something NIC could implement?



STRINGER: EMILY ERIN HUTCHINS

Page 100

1       A.   Technically I think there's -- almost
2  anything can be accomplished, yes.
3       Q.   What about just in terms of the response
4  to that question with the radio button, the "I want
5  to register to vote," if DPS requested that NIC
6  provide DPS with the user's response to that
7  question, could NIC do that?
8       A.   Yes, if DPS asked us to do that as part of
9  a requirement or change request, we could do that.
10      Q.   What about -- well, let's look -- maybe we
11 don't need to.
12           But we looked at the link that the receipt
13 page directs the user to if they indicate "Yes" in
14 response to the voter registration question.  Do you
15 remember?
16      A.   Yes.
17      Q.   Would it be possible for -- for Texas NIC
18 or Texas.gov to take a user's information entered in
19 the driver license renewal or change of address
20 application and populate a voter registration form
21 with those responses?
22      A.   I'm sorry.  Say that again.
23      Q.   So in the driver license renewal and
24 change of address application, a user enters various
25 identifying information, like name, date of birth,



Page 128

```
 1              UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,      §
                                   §
 4            Plaintiffs,          §
                                   §
 5   V.                            §
                                   §
 6   ROLANDO PABLOS, IN HIS        §
     OFFICIAL CAPACITY AS THE      §
 7   TEXAS SECRETARY OF STATE      §  C.A. 5:16-cv-00257-OLG
     and STEVEN C. McCRAW, IN      §
 8   HIS OFFICIAL CAPACITY AS      §
     THE DIRECTOR OF THE TEXAS     §
 9   DEPARTMENT OF PUBLIC          §
     SAFETY,                       §
10                                 §
              Defendants.          §
11

12              REPORTER'S CERTIFICATION
              DEPOSITION OF EMILY ERIN HUTCHINS
13                TAKEN MARCH 31, 2017

14

15       I, Tamara Chapman, Certified Shorthand Reporter

16   in and for the State of Texas, hereby certify to the

17   following:

18       That the witness, EMILY ERIN HUTCHINS, was duly

19   sworn by the officer and that the transcript of the

20   oral deposition is a true record of the testimony

21   given by the witness;

22       That the original deposition was delivered to

23   Caitlyn Silhan;

24       That a copy of this certificate was served on

25   all parties and/or the witness shown herein on
```

1   _____.

2        I further certify that pursuant to FRCP No.

3   30(f)(i) that the signature of the deponent:

4        __X__ was requested by the deponent or a party

5   before the completion of the deposition and that the

6   signature is to be returned within 30 days from date

7   of receipt of the transcript.  If returned, the

8   attached Changes and Signature Page contains any

9   changes and the reasons therefor;

10       _____ was not requested by the deponent or a

11  party before the completion of the deposition.

12       I further certify that I am neither counsel

13  for, related to, nor employed by any of the parties

14  in the action in which this proceeding was taken,

15  and further that I am not financially or otherwise

16  interested in the outcome of the action.

17       Certified to by me this 13th of April, 2017.

18

19                  

20       _____

21       Tamara Chapman, CSR, CRR, RPR
         Texas CSR No. 7248 (Exp. 12/31/19)
22       HG Litigation Services
         Firm No. 69
23       2777 N. Stemmons Freeway, Suite 1025
         Dallas, Texas 75207
24       1-888-656-DEPO

25

STRINGER: JOHN CRAWFORD                    Plaintiffs' Designations

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
 2                  SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,          §
                                       §
 4          Plaintiffs,                §
                                       §
 5   v.                                §   Civil Action
                                       §   No. 5:16-cv-00257-OLG
 6   ROLANDO B. PABLOS, IN HIS         §
     OFFICIAL CAPACITY AS THE          §
 7   SECRETARY OF STATE and STEVEN     §
     C. McCRAW, IN HIS OFFICIAL        §
 8   CAPACITY AS THE DIRECTOR OF       §
     THE TEXAS DEPARTMENT OF PUBLIC    §
 9   SAFETY,                           §
                                       §
10          Defendants.                §

11

12       ************************************************
                 ORAL AND VIDEOTAPED DEPOSITION OF
13                      JOHN CRAWFORD
                      FEBRUARY 17, 2017
14                        VOLUME 1
         ************************************************

15

16      ORAL AND VIDEOTAPED DEPOSITION OF JOHN CRAWFORD,

17   produced as a witness at the instance of the Plaintiffs,

18   and duly sworn, was taken in the above-styled and

19   numbered cause on the 17th day of February, 2017, from

20   10:06 a.m. to 4:35 p.m., before STEVEN STOGEL, CSR in

21   and for the State of Texas, reported by machine

22   shorthand, at the office of the Attorney General, 300

23   West 15th Street, Suite 1100, Austin, Texas, pursuant to

24   the Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.
```

**CERTIFIED
TRANSCRIPT**

C-7

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 51 of 191
Case 5:16-cv-00257-OLG Document 154-10 Filed 11/22/17 Page 2 of 181
STRINGER: JOHN CRAWFORD

Page 2

```
 1              A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFFS:

 4         MS. CASSANDRA CHAMPION
           MS. BETH STEVENS
 5         TEXAS CIVIL RIGHTS PROJECT
           1405 Montopolis Drive
 6         Austin, Texas 78741
           Phone:  512.474.5073
 7

 8    FOR THE DEFENDANTS:

 9         MS. ANNE MARIE MACKIN
           OFFICE OF THE ATTORNEY GENERAL
10         General Litigation Division
           P.O. Box 12548, Capitol Station
11         Austin, Texas 78711-2548
           Phone:  512.463.2120
12
      FOR THE TEXAS DEPARTMENT OF PUBLIC SAFETY:
13
           MS. KATHLEEN T. MURPHY-DARVEAU
14         TEXAS DEPARTMENT OF PUBLIC SAFETY
           Senior Assistant General Counsel
15         Office of General Counsel
           5805 N. Lamar Boulevard
16         P.O. Box 4087
           Austin, Texas 78752
17         Phone:  512.424.2420

18

19    ALSO PRESENT:

20         MR. ALEX STAMM
           MR. AARON HAGEL, Videographer

21

22

23

24

25
```



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/29/20 Page 52 of 191
Case 5:16-cv-00257-OLG Document 154-10 Filed 11/22/17 Page 3 of 181
STRINGER: JOHN CRAWFORD

Page 3

1                    I N D E X

2                                                    PAGE

3     Appearances.....................................    2

4     WITNESS: JOHN CRAWFORD

5     Examination by Ms. Champion.....................    6

6     Examination by Ms. Stevens.....................  126

7     Reporter's Certificate.........................  152

8


9                         EXHIBITS

10    EXHIBIT NAME    DESCRIPTION                        PAGE

11    Exhibit 1.      Notice of Deposition               24

12    Exhibit 2.      12/22/14 Texas DPS DLS - Use Case   54
                      Specification:  Create Daily Update
13                    File for SOS - Version 1.9

14    Exhibit 3.      12/29/14 Texas DPS DLS - Use Case   54
                      Specification:  Create Voter
15                    Registration Extract File -
                      Version 6.9
16
      Exhibit 4.      DPS Overview                        65
17
      Exhibit 5.      Form DL-14A (Rev. 6/14)             70
18                    Application for Texas Driver
                      License or Identification Card
19
      Exhibit 6.      Form DL-64 (Rev. 3/16)              77
20                    Application for Change of Address
                      on Valid Texas Driver License (DL)
21                    & Identification Card (ID)

22    Exhibit 7.      Form DL-64 (Rev. 9/13)              77
                      Application for Change of Address
23                    on Valid Texas Driver License (DL)
                      & Identification Card (ID)

24

25



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 53 of 191
Case 5:16-cv-00257-OLG Document 54-10 Filed 11/22/17 Page 4 of 181
STRINGER: JOHN CRAWFORD

Page 4

| | EXHIBITS | |
|---|---|---|
| EXHIBIT NAME | DESCRIPTION | PAGE |
| Exhibit 8. | Screenshot - Texas DPS - Driver License Renewal and Change of Address Page | 85 |
| Exhibit 9. | PowerPoint Entitled "The National Voter Registration Act and Voter Registration Applications ... an Overview" | 100 |
| Exhibit 10. | 12/4/15 Email from Lauren Petty | 107 |
| Exhibit 11. | 6/8/16 Email String | 13 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



Page 70

1    Exhibit 5?

2              (Exhibit No. 5 marked)

3         Q.   (By Ms. Champion)  This form, Exhibit 5, at

4    the top says "Application for Texas Driver License or

5    Identification Card."  Is that correct?

6         A.   Yes.

7         Q.   And it has many fields on the front page of

8    the form.  Would you agree?

9         A.   Yes.

10        Q.   Do each of these fields reflect a

11   corresponding field within the DLS?

12        A.   Yes.

13        Q.   For Question 2, which reads, "If you are a

14   U.S. citizen, would you like to register to vote?  If

15   registered, would you like to update your voter

16   information?"

17                  Is there a field for that in DLS?

18        A.   Yes.

19        Q.   And what does it look like on your end?  Does

20   it have that exact language?  Can you explain the field?

21        A.   It would have -- on the screen in the driver

22   license application, it would have a tag that says

23   "voter registration," and an entry would be "yes" or

24   "no."

25                  So I don't believe that it has the entire



Page 73

```
 1   on their prioritizations.  Ultimately it's my
 2   responsibility for work assignment.
 3        Q.   Do you know who at the driver's license
 4   division would have made the request?
 5        A.   I don't know who made that request, no.
 6        Q.   Do you look how we can find out?
 7        A.   It would be in the JIRA ticket.
 8        Q.   We talked about all of the information from
 9   Exhibit 5 being input into DLS.  Do you know if every
10   form that a customer fills out in person at a DPS office
11   is the same in that it would have multiple fields that
12   would all go into -- into the DLS?
13        A.   I'm not familiar with every form that would be
14   available in a driver license office, and I can't -- I
15   couldn't confirm for certain that every one would be
16   included.
17        Q.   Does the DLS only store electronic signatures?
18        A.   Yes.
19        Q.   But there --
20        A.   Well, I'm not sure what -- could you -- could
21   you clarify that a little bit, please?
22        Q.   Sure.  Does the DLS only store signatures
23   which are input using the keypad?
24        A.   The DLS database itself, yes, it only stores
25   signatures that are collected on those electronic pads.
```



Page 74

1    Q.   Would there ever be a situation where there's

2    a file within DLS that is an image of a scanned

3    signature?

4    A.   Customer service representatives do scan

5    documents that have physical signatures.  Those are

6    stored by a vendor.  They're not stored in the driver

7    license database.

8    Q.   What vendor is that?

9    A.   It's a company called CBM Archive.

10   Q.   So images of scanned documents, including

11   signatures, are they kept within DLS?  Are they stored

12   within DLS?

13   A.   No.  They're stored by CBM Archive in their

14   environment.

15   Q.   I think you've used the phrase "in their

16   environment" to refer to not only CBM but also DPS.  Can

17   you explain what that means?

18   A.   CBM Archive has their own computer equipment,

19   and that's where this information is stored, on their

20   computer equipment.

21   Q.   Is that what you mean by "the environment"?

22   A.   Yes.

23   Q.   Can a DPS employee look up a scanned document

24   in DLS?

25   A.   They can look up a scanned document through



Case 5:16-cv-00257-OLG Document 154-10 Filed 01/28/17 Page 57 of 191
Case 5:16-cv-00257-OLG Document 154-1 Filed 11/22/17 Page 58 of 181
STRINGER: JOHN CRAWFORD

Page 85

```
 1    service.  So anything that DPS does with Texas.gov --
 2    Texas.gov -- DPS is the customer, so DPS would dictate
 3    what they do and what appears on their website that
 4    represents DPS.
 5         Q.   When a DPS customer wants to renew a license
 6    online, can you walk us through the fields that are
 7    completed that DPS receives, what fields they can --
 8    what fields DPS receives from that online transaction?
 9         A.   I don't know that I'm prepared to do that.  I
10    don't know that I could cover them all.  You would need
11    the driver license number, and there's a -- an
12    identification number on the license that is required,
13    but I don't use that service -- I mean, I haven't, so I
14    can't tell you all the pieces of information that are --
15    that are entered on that screen.
16              MS. CHAMPION:  I would like to mark this
17    document -- I forgot where we left off -- as Exhibit 8,
18    I believe.
19              (Exhibit No. 8 marked)
20         Q.   (By Ms. Champion)  Does this appear to you to
21    be a website from Texas.gov?
22         A.   Yes.
23         Q.   Would this be where a customer would renew or
24    change the address on a driver's license?
25         A.   Yes.
```



Page 139

1  What -- what is purge status?

2      A.   I'm sorry.  I don't know.  I would have to --

3  I'd have to research that.  I don't know what that

4  designator is.

5      Q.   Is it fair to say that somebody on your team,

6  the people that you manage, would be able to answer that

7  question?

8      A.   Either someone from my team or someone from

9  the business would be able to answer that question, yes.

10     Q.   I'm going to turn your attention back to the

11 mail-in change of address, the current one -- so I think

12 that's Exhibit 6.

13          With regard to the batch that's sent to

14 the Secretary of State at night for the voter

15 registration, if the person answers "yes" on their

16 change of address that's mailed in and that's input into

17 DLS, it's the electronic signature that was previously

18 provided the last time that person went in person.

19 That's the signature that goes to the Secretary of

20 State.  Is that right?

21     A.   Yes, that's correct.

22     Q.   There's not -- I've not a scan of the

23 signature that is required on Exhibit 6?

24     A.   It is not.  That's correct.

25     Q.   Okay.  The information -- when someone calls



Case 5:16-cv-00257-OLG   Document 154-1   Filed 01/28/20   Page 59 of 191
Case 5:16-cv-00257-OLG   Document 154-1   Filed 01/22/20   Page 50 of 181
STRINGER: JOHN CRAWFORD

Page 142

1    Q.   To DLS?

2    A.   Yes.

3    Q.   And the answer to the question "Do you want to

4    be an organ donor?" that question gets sent to DLS?

5    A.   Yes, that's correct.

6    Q.   Okay.  And DLS is fully capable of receiving

7    the answer to the question do you want to register to

8    vote -- capable of receiving it from Texas.gov.  Is that

9    correct?

10   A.   Not currently.

11   Q.   It's programmable such that DLS could receive

12   the answer to the question do you want to register to

13   vote from Texas.gov?

14   A.   Yes.

15   Q.   And like you pointed out with Ms. Champion,

16   that data field already exists, do you want to register

17   to vote.  Is that correct?

18   A.   There is a data field that exists, yes.

19   Q.   So the program would need to be rewritten such

20   that the information from Texas.gov changes the answer

21   to that question within DLS.  Is that right?

22   A.   I can't tell you exactly how the process would

23   work without analysis.

24   Q.   Okay.

25   A.   That would require analysis in a use case to



Page 143

1   determine if that was the right process.

2       Q.    Have you ever done that analysis?

3       A.    No.

4       Q.    Would you have to get that request from

5   someone with DLD to do that analysis?

6       A.    Yes.

7       Q.    And DLD is the driver's license department.

8   Correct?

9       A.    Driver license division.

10      Q.    Division.

11      A.    Yes.

12      Q.    Excuse me.  Thank you.  Just to clarify, the

13  system, DLS itself, is capable of having the

14  information -- of obtaining the information should

15  Texas.gov send it to you.  Is that fair?

16      A.    Yes.

17      Q.    Do I have it right that if someone goes online

18  to either change their address or, within a renewal,

19  they do something to change -- change their address,

20  change their name, something like that -- that

21  information all is going from DLS, once they receive

22  it -- once it receives it -- to the Secretary of State

23  in that second batch we've been talking about?

24      A.    Yes.

25      Q.    Okay.  So, hypothetically, if DLS did what you



Page 144

1  said -- you needed to do the analysis and see how

2  exactly it would need to communicate with Texas.gov to

3  start tracking the answer "yes" or "no," "Do you want to

4  register to vote?" -- hypothetically, they've done that

5  and the answer is "yes."  Okay?

6       A.   Okay.

7       Q.   Okay?  Are you with me so far?

8       A.   Okay.

9       Q.   Okay.  DLS is also capable of sending that

10 information on to the Secretary of State's Office.

11 Correct?

12               MS. MACKIN:  Objection; form.  You can

13 answer.

14       A.   Technically, yes.

15       Q.   (By Ms. Stevens)  It's capable of doing it?

16       A.   From an IT perspective, yes.

17       Q.   Okay.  And if it were to do that, it could

18 also send the previously provided electronic signature

19 from that customer, just like it does with a mail-in

20 change of address.

21       A.   Yes.

22       Q.   Okay.  And I just want to go back to -- you

23 said technically it can do what I just asked you two

24 questions ago.  Are you hesitating because someone needs

25 to actually have you put that in place in the system?



Case 5:16-cv-00257-OLG   Document 154-1   Filed 01/28/20   Page 62 of 191
Case 5:16-cv-00257-OLG   Document 94-10   Filed 11/22/17   Page 23 of 46
STRINGER: JOHN CRAWFORD

Page 151

1        I, JOHN CRAWFORD, have read the foregoing

2    deposition and hereby affix my signature that same is

3    true and correct, except as noted above.

4

5                                    _____

5                                    JOHN CRAWFORD

6

7    THE STATE OF _____)

8    COUNTY OF _____)

9

10       Before me, _____, on this day

11   personally appeared JOHN CRAWFORD, known to me (or

12   proved to me under oath or through _____)

13   (description of identity card or other document) to be

14   the person whose name is subscribed to the foregoing

15   instrument and acknowledged to me that they executed the

16   same for the purposes and consideration therein

17   expressed.

18       Given under my hand and seal of office this the

19   _____ day of _____, 2017.

20

21

22                                    _____
                                     NOTARY PUBLIC IN AND FOR
23                                   THE STATE OF _____

24

25



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 63 of 191
Case 5:16-cv-00257-OLG Document 154-10 Filed 11/22/17 Page 64 of 191
STRINGER: JOHN CRAWFORD

Page 152

```
 1            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                  SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,        §
                                     §
 4            Plaintiffs,            §
                                     §
 5   v.                              §   Civil Action
                                     §   No. 5:16-cv-00257-OLG
 6   ROLANDO B. PABLOS, IN HIS       §
     OFFICIAL CAPACITY AS THE        §
 7   SECRETARY OF STATE and STEVEN   §
     C. McCRAW, IN HIS OFFICIAL      §
 8   CAPACITY AS THE DIRECTOR OF     §
     THE TEXAS DEPARTMENT OF PUBLIC  §
 9   SAFETY,                         §
                                     §
10            Defendants.            §

11

12            REPORTER'S CERTIFICATION
           DEPOSITION OF JOHN CRAWFORD
                February 17, 2017

13

14       I, Steven Stogel, Certified Shorthand Reporter in

15   and for the State of Texas, hereby certify to the

16   following:

17       That the witness, JOHN CRAWFORD, was duly sworn by

18   the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21       That the original deposition was delivered to

22   MR. PETER A. KRAUS.

23       That a copy of this certificate was served on all

24   parties and/or the witness shown herein on

25   _____, 2017.
```



Case 5:16-cv-00257-OLG   Document 154-1   Filed 01/28/20   Page 64 of 191
Case 5:16-cv-00257-OLG   Document 154-1   Filed 01/22/17   Page 65 of 191
STRINGER: JOHN CRAWFORD

Page 153

1      I further certify pursuant to FRCP Rule 30(f)(1)

2   that the signature of the deponent:

3          _X_ was requested by the deponent or a party

4   before the completion of the deposition and that the

5   signature is to be before any notary public and returned

6   within 30 days (or ____ days per agreement of counsel)

7   from date of receipt of the transcript.  If returned,

8   the attached Changes and Signature Page contains any

9   changes and the reasons therefore:

10          ___ was not requested by the deponent or a

11   party before the completion of the deposition.

12      That the amount of time used by each party at the

13   deposition is as follows:

14          MS. CASSANDRA CHAMPION...............4:09

15          MS. BETH STEVENS.....................0:31

16      That pursuant to information given to the

17   deposition officer at the time said testimony was taken,

18   the following includes counsel for all parties of

19   record:

20      FOR THE PLAINTIFFS:  MS. CASSANDRA CHAMPION

21      FOR THE DEFENDANTS:  MS. ANNE MARIE MACKIN

22      FOR TEXAS DPS:  MS. KATHLEEN T. MURPHY-DARVEAU

23      That $_____ is the deposition officer's charges

24   to the Plaintiffs for preparing the original deposition

25   transcript and any copies of exhibits;



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 65 of 191
Case 5:16-cv-00257-OLG Document 154-10 Filed 11/22/17 Page 16 of 16
STRINGER: JOHN CRAWFORD

Page 154

1    I further certify that I am neither counsel for,

2   related to, nor employed by any of the parties or

3   attorneys to the action in which this testimony was

4   taken, and further that I am not financially or

5   otherwise interested in the outcome of this action.

6        Certified to by me this the ___23rd___ day of

7   ___February_____, 2017.

8

9

10  _____

11  Steven Stogel
    CSR 6174

12  Expiration Date:  December 31, 2018
    HG Litigation Services

13  Firm No. 69
    2777 N. Stemmons Freeway, Suite 1025

14  Dallas, Texas 75207
    1-888-656-DEPO

15

16

17

18

19

20

21

22

23

24

25



STRINGER: BRIAN KEITH INGRAM

Plaintiffs' Designations

Page 1

```
  1              IN THE UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
  2                     SAN ANTONIO DIVISION

  3   JARROD STRINGER, et al.,        §
                                      §
  4             Plaintiffs,           §
                                      §
  5   v.                              §   Civil Action
                                      §   No. 5:16-cv-00257-OLG
  6   ROLANDO B. PABLOS, IN HIS       §
      OFFICIAL CAPACITY AS THE        §
  7   SECRETARY OF STATE and STEVEN   §
      C. McCRAW, IN HIS OFFICIAL      §
  8   CAPACITY AS THE DIRECTOR OF     §
      THE TEXAS DEPARTMENT OF PUBLIC  §
  9   SAFETY,                         §
                                      §
 10             Defendants.           §

 11       ************************************************
 12             ORAL AND VIDEOTAPED DEPOSITION OF
                      BRIAN KEITH INGRAM
 13                    MARCH 22, 2017
                         VOLUME 1
          ************************************************

 14

 15        ORAL AND VIDEOTAPED DEPOSITION OF BRIAN KEITH

 16   INGRAM, produced as a witness at the instance of the

 17   Plaintiffs, and duly sworn, was taken in the

 18   above-styled and numbered cause on the 22nd day of

 19   March, 2017, from 9:33 a.m. to 5:19 p.m., before STEVEN

 20   STOGEL, CSR in and for the State of Texas, reported by

 21   machine shorthand, at the office of the Attorney

 22   General, 300 West 15th Street, Suite 1100, Austin,

 23   Texas, pursuant to the Federal Rules of Civil Procedure

 24   and the provisions stated on the record or attached

 25   hereto.
```

C-8

Case 5:16-cv-00257-OLG Document 154-11 Filed 01/28/20 Page 67 of 191
Case 5:16-cv-00257-OLG Document 154-11 Filed 11/22/17 Page 2 of 201
STRINGER: BRIAN KEITH INGRAM

Page 2

1                    A P P E A R A N C E S

2

3   FOR THE PLAINTIFFS:

4          MS. BETH STEVENS
           MR. HANI MIRZA
5          TEXAS CIVIL RIGHTS PROJECT
           1405 Montopolis Drive
6          Austin, Texas 78741
           Phone:  512.474.5073
7               - and -
           MS. CAITLYN SILHAN
8          WATERS & KRAUS, LLP
           3141 Hood Street, Suite 700
9          Dallas, Texas 75219
           Phone:  214.357.6244

10

11  FOR THE DEFENDANTS:

12         MS. ANNE MARIE MACKIN
           OFFICE OF THE ATTORNEY GENERAL
13         General Litigation Division
           P.O. Box 12548, Capitol Station
14         Austin, Texas 78711-2548
           Phone:  512.463.2120

15

16  ALSO PRESENT:

17         MS. LINDSEY ASTON:  General Counsel, Texas
                               Secretary of State
18         MR. JUSTIN TALBOT:  Videographer

19

20

21

22

23

24

25



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/29/20 Page 68 of 191
Case 5:16-cv-00257-OLG Document 154-1 Filed 11/22/17 Page 3 of 291
STRINGER: BRIAN KEITH INGRAM

Page 3

1                          I N D E X

2                                                      PAGE

3  Appearances....................................   2

4  WITNESS: BRIAN KEITH INGRAM

5  Examination by Ms. Stevens.....................   6

6  Examination by Ms. Mackin......................  211

7  Reporter's Certificate.........................  216

8

9                          EXHIBITS

10  EXHIBIT NAME    DESCRIPTION                      PAGE

11  Exhibit 1.      Notice of Deposition             14

12  Exhibit 2.      7/22/16 Letter from Joe Peters   33
                    to Keith Ingram with Attachment
13
    Exhibit 3.      Form DL-64 (Rev. 9/13)           40
14
    Exhibit 4.      Form DL-64 (Rev. 3/16)           40
15
    Exhibit 5.      Form DL-14A (Rev. 6/14)          43
16
    Exhibit 6.      Form DL-43 (Rev. 6/14)           43
17
    Exhibit 7.      Texas Voter Registration         48
18                  Application

19  Exhibit 8.      2/8/17 Email String with Attachment  80

20  Exhibit 9.      11/5/12 Email String             83

21  Exhibit 10.     11/15/12 Email from Betsy Schonhoff  86
                    to Beva Kellison with Attachment
22
    Exhibit 11.     DLS Use Case Specification:  Create  115
23                  Voter Registration Extract File
                    Texas DPS - 12/19/14 - Version 6.9
24

25

STRINGER: BRIAN KEITH INGRAM

Page 4

1                              EXHIBITS

2     EXHIBIT NAME      DESCRIPTION                              PAGE

3     Exhibit 12.       PowerPoint Presentation Entitled          163
                        "34th Annual Election Law Seminar
4                       Offline County Presentation"

5     Exhibit 13.       PowerPoint Presentation Entitled          167
                        "TEAM For Online Counties"
6
      Exhibit 14.       DL Applications - Generate Two            181
7                       Output Flat Files - Version 8.2
                        Prepared for DPS
8                       Submission Date:  8/29/07
                        Revision Date:  4/30/14
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STRINGER: BRIAN KEITH INGRAM

Page 50

1      Q.   So you identified for me or explained to me
2   why -- what the electronic signature or the keypad
3   signature at DPS is used for.  It's used for the
4   signature that's required in the Texas Election Code.
5   You read me the section.  Is that right?
6      A.   That's right.
7      Q.   What's the ink signature on the DPS's physical
8   forms used for as far as voter registration?
9      A.   I don't know.  I don't know if it's used for
10  anything.  Once they've applied in person at the office,
11  they've signed it electronically.  I guess if there ever
12  was a question, that we'd have to go through the web
13  portal or the 701 email address about whether or not the
14  voter signed it.  If for some reason the electronic
15  version didn't have the signature, they would have to go
16  back and look at the physical application form from DPS
17  to get the signature.
18     Q.   Would the -- in the scenario you just
19  described, would the voter have to provide their
20  signature again so it would be on the actual voter
21  registration form?
22     A.   No.  No.  They've already signed.  They signed
23  the physical form and they signed electronically, and
24  for some reason if we don't get that signature with the
25  application, we'll go back to DPS and get the physical

Page 62

```
 1    of the question on the online DPS application?
 2                   MS. MACKIN:  Objection; form.
 3         A.    I don't know what you mean.
 4         Q.    (By Ms. Stevens)  Why is there a voter
 5    registration question on the online DPS transaction --
 6    application?  Excuse me.
 7         A.    Well, I imagine it's because of Section 5 of
 8    the National Voter Registration Act of 1993.
 9         Q.    Could you elaborate on that a little bit?
10         A.    Sure.  The National Voter Registration Act of
11    1993 required that motor vehicle agencies, in our case
12    the DPS, whenever a person has a driver's license
13    transaction -- driver license transaction, that they
14    should be simultaneously offered the right -- the
15    ability to update their voter registration or register
16    to vote for the first time.  That's why the NVRA is
17    called the Motor Voter law.
18         Q.    And DPS's compliance with that law for
19    in-person transactions is the question that we've looked
20    at on the -- on the DPS forms, "Do you want to register
21    to vote?  I've agreed to provide my electronic
22    signature, and it can be sent to the Secretary of
23    State's Office."
24                   Is that right?
25                   MS. MACKIN:  Objection; form.
```



Page 84

1   address with the Elections Division?

2       A.   It is.

3       Q.   Okay.  The -- well, let's -- the initial email

4   says, "I just renewed my driver's license online and was

5   dismayed that the 'do you want to register to vote'

6   defaults to 'no.'  In my opinion, it should default to

7   'yes' if you want to encourage people to register to

8   vote - which should be a goal of the State and the

9   Elections Division.  I hope that this changes in the

10  future.  After all, it's not automatic - one does have

11  to take additional steps to actually register.  Thanks."

12           And then up above that is the response

13  email from Brenda Hester -- is she in the Elections

14  Division?

15      A.   She is.

16      Q.   Okay -- to the individual customer, and said,

17  "That is something we can discuss with DPS in the

18  future.  Thank you for your input."

19           Did I read that correctly?

20      A.   Sure.

21      Q.   And Betsy Schonhoff in your office is also

22  copied on that email.  Correct?

23      A.   She is.

24      Q.   Okay.  So in -- back in 2012, the Secretary of

25  State's Office was aware that the answer to the "do you

Page 85

1  want to register to vote" question online was defaulting

2  to no.  Is that correct?

3      A.   Right.

4                  MS. MACKIN:  Objection; form.

5      Q.   (By Ms. Stevens)  Was there any -- any

6  discussion at that point with the Department of Public

7  Safety to -- to make that change?

8      A.   Not that I recall.

9      Q.   Well, what about that the Secretary of State's

10  Office recalls, since we're here for a 30(b)(6)?

11      A.   That's what I -- I don't -- I don't think that

12  we had that discussion.  Betsy might have.  You know,

13  you saw her testimony on this topic, and we can read

14  that if you want to.

15      Q.   Well, I think, since you're here on behalf of

16  the entity, that you're required to provide the entity's

17  response.  So did the entity -- did the Secretary of

18  State have any discussions with the DPS back in 2012

19  about changing that default from no to what it is now?

20      A.   I don't know.

21      Q.   Are you able to find out?

22      A.   Betsy would be the one that would know, and

23  you read her testimony on this topic.  So I can ask

24  Betsy, but she'll probably give me the same answers.  I

25  do not believe that we had such discussions.  But again,

Page 96

1    Texas Election Code?

2        A.    The physical signature that's electronically

3    captured, yes.

4        Q.    Okay.  Back to your point about the online

5    transactions not containing a signature, the DPS does

6    use the prior provided electronic signature that -- for

7    the driver's license that they -- the customer used --

8    provided the last time they were in person.  Correct?

9        A.    Presumably, yes.

10       Q.    The same goes for the mail-in change of

11   address transaction -- are you looking at your driver's

12   license there?

13       A.    Yeah.  Because this one was renewed online,

14   and so I guess that I wrote that signature at their

15   signature capture device quite a while ago.

16       Q.    Okay.  And you're aware that you have to

17   transact in person with DPS every other transaction?

18       A.    Yes.

19       Q.    For the mail-in change of address form that --

20   I think that's an exhibit in front of you -- that DPS

21   receives that has the voter registration question, there

22   is not an electronic signature or a -- use your

23   phrase -- the physical signature provided on a keypad

24   provided for that change of address interaction.

25   Correct?



STRINGER: BRIAN KEITH INGRAM

Page 97

```
 1                 MS. MACKIN:  Objection; form.
 2       A.    No.  There's a physical signature on the -- on
 3  the address change application.
 4       Q.    (By Ms. Stevens)  Right.  But the information
 5  that gets sent on to the voter registrars through the
 6  Secretary of State's Office is the data that's pulled
 7  from that form and then the electronic signature that
 8  was previously provided by the customer in person at a
 9  DPS office?
10       A.    That's my understanding, yes.
11       Q.    Well, is that the Secretary of State's
12  understanding?
13       A.    That is the Secretary of State's
14  understanding.  You bet.
15       Q.    So in that same way, the online transaction
16  could utilize the previously provided electronic
17  signature that was provided in person by the customer
18  for the voter registration application form that gets to
19  the voter registrar in the same way that the change of
20  address mail-in occurs?
21       A.    It could if the law allowed it, but the law
22  doesn't allow it, so it can't.
23       Q.    What portion of the law doesn't allow it?
24       A.    13.002(b).
25                 THE REPORTER:  As in boy?
```

Page 173

```
 1   registrations to work.
 2        Q.   So it says that "voters who would otherwise be
 3   eligible may have to cast a provisional ballot."  Why is
 4   that?  What --
 5        A.   Because they didn't get registered.  If you
 6   don't work your DPS tasks, you're not registering the
 7   voter.
 8        Q.   Okay.
 9        A.   The voter is not registered until the voter
10   registrar registers them.
11        Q.   What's the --
12             THE REPORTER:  I'm sorry.  Until the
13   voter registrar?
14             THE WITNESS:  Registers them.
15             THE REPORTER:  Thank you.
16        Q.   (By Ms. Stevens)  What's the timeframe that
17   the voter registrar has between receipt of the voter
18   registration form and when the voter has to be
19   registered?
20        A.   There's not a specific timeframe for that.
21   The voter needs to have a voter registration certificate
22   within 30 days.
23        Q.   And that's generated by the voter registrar?
24        A.   That's right.  Whenever the voter registration
25   is successfully completed, the system kicks out a VR
```



Page 174

```
1    certificate.
2         Q.   And the 30 days starts running from the time
3    that the voter submits the voter registration
4    application.  Is that correct?
5         A.   That's correct.
6         Q.   Does the Secretary of State's Office --
7         A.   That's for all applications, paper or DPS.
8         Q.   That 30-day timeframe?
9         A.   Yes.
10        Q.   Does the Secretary of State ensure that
11   counties finish their DPS pending tasks before elections
12   so that all eligible -- all eligible voters can cast a
13   regular ballot?
14        A.   We don't -- I don't know what you mean by
15   "ensure."  We don't tell counties what to do.  We
16   strongly encourage them to get their work done.
17        Q.   Okay.
18        A.   There's no ensuring anything by a county.  We
19   have on our TEAM system information about how many are
20   unworked, and we will call the counties that have a
21   substantial number of unworked ones and ask them what
22   the deal is and why aren't they finishing.
23        Q.   And what if they said, "We're just not going
24   to do it"?
25        A.   That never happens, but if it did, we would
```



STRINGER: BRIAN KEITH INGRAM

Page 184

1    A.   The --

2    Q.   -- the signature issue might --

3    A.   Since there's --

4    Q.   -- take some working out?

5    A.   -- not a signature captured contemporaneously

6    with the transaction, retrieving the proper signature

7    from the proper file is a technical thing that Texas.gov

8    or DPS or somebody would have to overcome.

9    Q.   But that signature file is housed within DLS.

10   Right?

11   A.   Presumably.

12   Q.   Well, for the -- going back to the mail-in

13   change of address with DPS, that information goes on to

14   the Secretary of State.  If someone chooses to register

15   to vote, that signature is retrieved from DLS and sent

16   on to the Secretary of State.  Right?

17   A.   It's retrieved from wherever they keep it,

18   yes.

19   Q.   Okay.  And, presumably, that same signature

20   could be sent on if the person answered yes to the voter

21   registration question online?

22   A.   If it was legal to do so.  I've already told

23   you I think that's technically possible.  You bet.

24   Q.   Okay.  And --

25   A.   And I don't think it would cost a lot of

hg

STRINGER: BRIAN KEITH INGRAM

Page 185

1   money.  It would cost something to make that change.

2       Q.   Okay.

3       A.   And I've been told that the technical

4   procedure -- the technical hurdle to overcome is making

5   sure you pull the right signature.

6       Q.   And who told you that?

7       A.   DPS.

8       Q.   Who at DPS?

9       A.   It was in a conversation about online voter

10  registration with many stakeholders in the room.

11      Q.   And when you say it would be an issue to

12  determine which signature to pull, how many signatures

13  are attached to an individual record?

14      A.   Well, that's the issue.  Which individual

15  record are you pulling from, and then which signature?

16  So if somebody has been a driver in Texas, they could

17  have a lot of signatures on file with the DPS.  I don't

18  know how many they keep, and I don't know what form they

19  keep them.

20           But I don't -- I don't know.  This is not

21  our process that I'm talking about.  This is DPS's

22  process.  DPS has expressed that the technical hurdle to

23  doing something like this in a similar situation is

24  retrieving the correct signature.  I don't know why

25  that's difficult.  I don't know anything about the

Page 186

1  details of the difficulty.  That is not my issue.  It is

2  not the Secretary of State's issue.  I just know what

3  they've expressed in an open meeting about online voter

4  registration.

5      Q.   But the Secretary of State does know that DPS

6  is able to pull the proper signature to send on for

7  voter registration purposes to the Secretary of State

8  for mail-in change of address forms?

9      A.   I'm not arguing with you that this is not

10  possible.  That is not my argument at all.  My argument

11  is exactly to the contrary.  This is a very possible

12  thing to do what you're saying if it was legal, and it's

13  not legal.

14      Q.   Okay.  And --

15      A.   So I'm not contesting the logistics of it.  We

16  can agree that it's a possible thing to do.

17      Q.   Okay.  And I'm -- I'm trying to understand,

18  from the Secretary of State's perspective, how possible.

19  Is it --

20      A.   That I don't know.  That's a DPS question.

21      Q.   Okay.  The -- so you've told me about the

22  signature potential issue with DPS.  Tell me about the

23  costs that you are referencing.

24      A.   That's a DPS question.

25      Q.   So the costs are only on the DPS side of this?

STRINGER: BRIAN KEITH INGRAM

Page 187

1      A.    We have put a fiscal note on online voter

2   registration of about $182,000 --

3      **Q.    What does that --**

4      A.    -- for Secretary of State.

5      **Q.    What does that mean?**

6      A.    For changes that we would have to make to TEAM

7   if there was an online voter registration option in

8   Texas.

9      **Q.    And -- and let's make the distinction very**

10  **clear.  You're talking about a process that is not the**

11  **DPS online application that we're talking about.  That**

12  **is a -- a voter registration application that would run**

13  **through the Secretary of State's Office.**

14     A.    The versions of --

15     **Q.    Is that --**

16     A.    -- online voter registration that have been

17  proposed in the legislature would be a very similar

18  process to what you're describing from Texas Online,

19  where you would be able to go online, request to

20  register to vote, and DPS would supply the signature

21  from their file.  And those are the only people who

22  would be eligible to register online, are people who

23  have a signature on file with the DPS.  It is a very

24  similar process.

25                    This -- this what you're discussing might

Case 5:16-cv-00257-OLG   Document 154-11   Filed 01/28/20   Page 82 of 191
Case 5:16-cv-00257-OLG   Document 154-11   Filed 11/22/17   Page 27 of 191
STRINGER: BRIAN KEITH INGRAM

Page 215

1        I, BRIAN KEITH INGRAM, have read the foregoing

2   deposition and hereby affix my signature that same is

3   true and correct, except as noted above.

4

5                              _____
                               BRIAN KEITH INGRAM

6

7   THE STATE OF _____)

8   COUNTY OF _____)

9

10       Before me, _____, on this day

11  personally appeared BRIAN KEITH INGRAM, known to me (or

12  proved to me under oath or through _____)

13  (description of identity card or other document) to be

14  the person whose name is subscribed to the foregoing

15  instrument and acknowledged to me that they executed the

16  same for the purposes and consideration therein

17  expressed.

18       Given under my hand and seal of office this the

19  _____ day of _____, 2017.

20

21

22                              _____
                                NOTARY PUBLIC IN AND FOR

23                              THE STATE OF _____

24

25



Case 5:16-cv-00257-OLG   Document 154-11   Filed 01/28/20   Page 83 of 191
Case 5:16-cv-00257-OLG   Document 154-11   Filed 11/22/17   Page 18 of 20

STRINGER: BRIAN KEITH INGRAM

Page 216

```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                  SAN ANTONIO DIVISION

 3   JARROD STRINGER, et al.,          §
                                       §
 4          Plaintiffs,                §
                                       §
 5   v.                                §   Civil Action
                                       §   No. 5:16-cv-00257-OLG
 6   ROLANDO B. PABLOS, IN HIS         §
     OFFICIAL CAPACITY AS THE          §
 7   SECRETARY OF STATE and STEVEN     §
     C. McCRAW, IN HIS OFFICIAL        §
 8   CAPACITY AS THE DIRECTOR OF       §
     THE TEXAS DEPARTMENT OF PUBLIC    §
 9   SAFETY,                           §
                                       §
10          Defendants.                §

11
                    REPORTER'S CERTIFICATION
12              DEPOSITION OF BRIAN KEITH INGRAM
                       March 22, 2017
13

14       I, Steven Stogel, Certified Shorthand Reporter in

15   and for the State of Texas, hereby certify to the

16   following:

17       That the witness, BRIAN KEITH INGRAM, was duly

18   sworn by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21       That the original deposition was delivered to MS.

22   BETH STEVENS.

23       That a copy of this certificate was served on all

24   parties and/or the witness shown herein on

25   _____, 2017.
```



STRINGER: BRIAN KEITH INGRAM

Page 217

1      I further certify pursuant to FRCP Rule 30(f)(1)

2    that the signature of the deponent:

3          _X_ was requested by the deponent or a party

4    before the completion of the deposition and that the

5    signature is to be before any notary public and returned

6    within 30 days (or ____ days per agreement of counsel)

7    from date of receipt of the transcript.  If returned,

8    the attached Changes and Signature Page contains any

9    changes and the reasons therefore:

10         ___ was not requested by the deponent or a

11   party before the completion of the deposition.

12       That the amount of time used by each party at the

13   deposition is as follows:

14           MS. BETH STEVENS......................4:48

15           MS. ANNE MARIE MACKIN.................0:02

16       That pursuant to information given to the

17   deposition officer at the time said testimony was taken,

18   the following includes counsel for all parties of

19   record:

20       FOR THE PLAINTIFFS:  MS. BETH STEVENS

21       FOR THE DEFENDANTS:  MS. ANNE MARIE MACKIN

22       That $_____ is the deposition officer's charges

23   to the Plaintiffs for preparing the original deposition

24   transcript and any copies of exhibits;

25       I further certify that I am neither counsel for,

STRINGER: BRIAN KEITH INGRAM

Page 218

1  related to, nor employed by any of the parties or

2  attorneys to the action in which this testimony was

3  taken, and further that I am not financially or

4  otherwise interested in the outcome of this action.

5       Certified to by me this the ___5th___ day of

6  _____April_____, 2017.

7

8

9  _____
   Steven Stogel
10 CSR 6174
   Expiration Date:  December 31, 2018
11 HG Litigation Services
   Firm No. 69
12 2777 N. Stemmons Freeway, Suite 1025
   Dallas, Texas 75207
13 1-888-656-DEPO

14

15

16

17

18

19

20

21

22

23

24

25

STRINGER: SHERI GIPSON

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3    JARROD STRINGER, ET AL.,    *
                                  *
 4       Plaintiffs,              *
                                  *
 5    VS.                         * CIVIL ACTION
                                  *
 6    ROLANDO PABLOS, IN HIS      * NO.: 5:16-cv-00257-OLG
      OFFICIAL CAPACITY AS THE    *
 7    TEXAS SECRETARY OF STATE    *
      and STEVEN C. MCCRAW, IN    *
 8    HIS OFFICIAL CAPACITY AS    *
      THE DIRECTOR OF THE TEXAS   *
 9    DEPARTMENT OF PUBLIC        *
      SAFETY,                     *
10                                *
         Defendants.              *
11
12    ********************************************************
13             ORAL AND VIDEOTAPED DEPOSITION OF
14                      SHERI GIPSON
15         DEPARTMENT OF PUBLIC SAFETY'S 30(b)(6)
16                    MARCH 7TH, 2017
17    ********************************************************
18             ORAL AND VIDEOTAPED DEPOSITION OF SHERI
19    GIPSON, produced as a witness at the instance of the
20    PLAINTIFFS, and duly sworn, was taken in the
21    above-styled and numbered cause on the 7th of March,
22    2017, from 9:36 a.m. to 6:15 p.m., before Tammy Staggs,
23    CSR in and for the State of Texas, reported by machine
24    shorthand, at the offices of Texas Attorney General's
25    Office, 300 West 15th Street, 11th Floor, Austin, Texas,
```

**CERTIFIED TRANSCRIPT**

**Plaintiffs' Designations**



C-9

Case 5:16-cv-00257-OLG Document 154-12 Filed 01/28/20 Page 87 of 191
Case 5:16-cv-00257-OLG Document 154-12 Filed 01/22/17 Page 2 of 91
STRINGER: SHERI GIPSON

Page 2

```
 1   pursuant to the Federal Rules of Civil Procedure and the
 2   provisions stated on the record or attached hereto.
 3   That the deposition shall be read and signed under
 4   penalties of perjury.  That the deposition shall be read
 5   and signed before any notary public.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Case 5:16-cv-00257-OLG Document 154-12 Filed 01/29/20 Page 88 of 191
Case 5:16-cv-00257-OLG Document 154-12 Filed 11/22/17 Page 3 of 91

STRINGER: SHERI GIPSON

Page 3

```
 1                A P P E A R A N C E S

 2   FOR THE PLAINTIFF, JARROD STRINGER:
          Cassandra Champion, Esq.
 3        TEXAS CIVIL RIGHTS PROJECT
          1405 Montopolis Drive
 4        Austin, Texas  78741
          512.474.5073
 5        champion@texascivilrighsproject.org

 6

 7   FOR THE PLAINTIFF, JOHN FRITZ:
          Beth Stevens, Esq.
 8        TEXAS CIVIL RIGHTS PROJECT
          1405 Montopolis Drive
 9        Austin, Texas  78741
          512.474.5073
10        stevens@texascivilrighsproject.org

11

12   FOR THE PLAINTIFF, BENJAMIN HERNANDEZ:
          Caitlyn Elizabeth Silhan, Esq.
13        WATERS & KRAUS, L.L.P.
          3141 Hood Street
14        Suite 700
          Dallas, Texas  75219
15        214.357.6244
          csilhan@waterskraus.com
16

17

18   FOR THE DEFENDANTS:
          Anna M. Mackin, Esq.
          Esteban Soto, Esq.
19        ATTORNEY GENERAL'S OFFICE
          300 West 15th Street
20        Floor 11
          Austin, Texas  78711
21        512.463.2120
          anna.mackin@oag.texas.gov
22        esteban.soto@oag.texas.gov

23        Kathleen T. Murphy, Esq.
          TEXAS DEPARTMENT OF PUBLIC SAFETY
24        5805 North Lamar
          Austin, Texas  78752
25        512.424.2890
              Kathleen.murphy@dps.texas.gov
```



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 82 of 91
Case 5:16-cv-00257-OLG Document 154-12 Filed 11/22/17 Page 2 of 91
STRINGER: SHERI GIPSON

Page 4

1            A P P E A R A N C E S

2    ALSO PRESENT:

3         Justin Talbot - Videographer

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 90 of 191
Case 5:16-cv-00257-OLG Document 54-12 Filed 11/22/17 Page 9 of 57
STRINGER: SHERI GIPSON

Page 5

1                              INDEX

2   Appearances..................................... 3

3   Exhibit List.................................... 6

4   Stipulations.................................... --

5   SHERI GIPSON:

6        EXAMINATION BY MS. CHAMPION................ 11

7        EXAMINATION BY MS. STEVENS................ 199

8        EXAMINATION BY MS. SILHAN................. 215

9        EXAMINATION BY MS. MACKIN................. 216

10       FURTHER EXAMINATION BY MS. SILHAN......... 222

11

12  Signature and Changes........................... 234

13

14  Reporter's Certificate.......................... 237

15

16

17              REQUESTED DOCUMENTS/INFORMATION

18                        (None)

19

20                  CERTIFIED QUESTIONS

21                        (None)

22

23

24

25



STRINGER: SHERI GIPSON

Page 6

| 1 | | EXHIBITS | |
|---|---|---|---|
| 2 | NO. | DESCRIPTION | PAGE |
| 3 | 1 | Plaintiffs' Fourth Amended Notice of | |
| 4 | | Deposition of Defendant Stephen C. | |
| 5 | | McCraw, in his official capacity as the | |
| 6 | | Director of Texas Department of Public | |
| 7 | | Safety, pursuant to Federal Rule of Civil | |
| 8 | | Procedure 30(b)(6)....................... | 14 |
| 9 | 2 | Defendants' Deposition Topic Designations | |
| 10 | | and Objection to Corporate Representative | |
| 11 | | Topics Under Federal Rule of Civil | |
| 12 | | Procedure 3il(b)(6)..................... | 15 |
| 13 | 3A | List of projects scheduled to occur | |
| 14 | | through 2019............................ | 16 |
| 15 | 3B | List of the changes that have been made | |
| 16 | | to the driver license system since 2012.. | 19 |
| 17 | 3C | Use Case Specification:  Process | |
| 18 | | Authentication Request................... | 34 |
| 19 | 3D | Use Case Specification: Process DL | |
| 20 | | Duplicates/Renewals Application File..... | 40 |
| 21 | 3E | Use Case Specification: Create Daily | |
| 22 | | Update File For SOS...................... | 41 |
| 23 | 3F | Use Case Specification: Create Voter | |
| 24 | | Registration Extract File............... | 43 |
| 25 | | | |



|  |  |  | Page 7 |
|---|---|---|---|
| 1 | 3G | Module 10A: Class C and M Renewal Age 18 | |
| 2 | | and Above, Customer Operations Handbook.. | 44 |
| 3 | 3H | Screenshots................................ | 45 |
| 4 | 3I | Module 6: Driver License Forms, | |
| 5 | | Introduction to Common Non-CDL Forms, | |
| 6 | | Customer Operations Handbook............. | 45 |
| 7 | 3J | DL-64 Manual Address Change Processing... | 46 |
| 8 | 3K | Texas Secretary of State Voter Inquiry | |
| 9 | | Portal.................................... | 48 |
| 10 | 3L | Voter registration paper application | |
| 11 | | postcard.................................. | 49 |
| 12 | 3M | Texas Driver License and ID Card Renewal | |
| 13 | | Notice.................................... | 53 |
| 14 | 3N | Texas Commercial Driver License | |
| 15 | | Application............................... | 56 |
| 16 | 3O | Application for Renewal/Replacement of a | |
| 17 | | Texas Driver License or Identification | |
| 18 | | Card...................................... | 58 |
| 19 | 3P | Application for Texas Driver License or | |
| 20 | | Identification Card as Exhibit.......... | 59 |
| 21 | 3Q | Application for Change of Address on | |
| 22 | | Valid Texas Driver License and | |
| 23 | | Identification Card...................... | 59 |
| 24 | | | |
| 25 | | | |



Page 8

| 1  | 3R | Application for Change of Address on |    |
| 2  |    | Valid Texas Driver License and |    |
| 3  |    | Identification Card...................... | 59 |
| 4  | 3S | Screenshots.............................. | 60 |
| 5  | 3T | Screenshots.............................. | 61 |
| 6  | 3U | Texas Department of Public Safety |    |
| 7  |    | Driver's License/ID Card Renewal IVR |    |
| 8  |    | Script, confidential.................... | 61 |
| 9  | 3V | Driver's License Renewal Receipt and |    |
| 10 |    | Temporary License....................... | 62 |
| 11 | 3W | Document titled: Texas Department of |    |
| 12 |    | Public Safety Temporary Identification |    |
| 13 |    | Card.................................... | 62 |
| 14 | 3X | Letter dated July 22nd, 2016............ | 62 |
| 15 | 3Y | 2016 Original, Renewal, Duplicate and |    |
| 16 |    | Modification Issuances for Driver License |    |
| 17 |    | and IDs................................. | 63 |
| 18 | 4  | Organizational chart.................... | 65 |
| 19 | 5  | Application Requirements................ | 82 |
| 20 | 6  | Letter dated September 9th, 2015........ | 113 |
| 21 | 7  | E-mails between Brenda Hester and Kelly |    |
| 22 |    | Walton, dated 11/5/12.  Subject: Voting.. | 129 |
| 23 | 8  | Voter inquiry checklist................. | 134 |
| 24 | 9  | DR-64 forms processed in fiscal year 2014 |    |
| 25 |    | and 2015................................ | 148 |



Page 15

1    Q.   (BY MS. CHAMPION)  And -- oh, I should have
2  done this at the same time.  This is also -- I'll have
3  this marked as Exhibit No. 2, Defendants' Deposition
4  Topic Designations for this deposition.
5              (Exhibit 2 marked.)
6    Q.   (BY MS. CHAMPION)  Ms. Gipson, have you seen
7  Exhibit 1 before, the Notice?
8    A.   I do not believe I have.  I think the Notice I
9  have is the third.
10    Q.   Okay.  This was just filed -- for the record,
11  this was filed yesterday evening after we rescheduled
12  the deposition from yesterday to today.
13    A.   Okay.
14    Q.   So it will be similar to the Third Amended
15  Notice.
16    A.   Okay.  So all of the topics are the same?
17    Q.   Correct.
18    A.   Okay.
19    Q.   Did you review Plaintiffs' Third Amended
20  Notice for today's deposition?
21    A.   Yes.
22    Q.   And this Notice requests that you produce
23  documents; is that right?
24    A.   Yes.
25    Q.   The first category, if we look at page 10,



Page 16

1    Schedule B, the first category is, (as read):  All

2    documents reviewed in preparation for your deposition.

3                    Have you brought any documents today that

4    you reviewed in preparation for this deposition?

5        A.    Yes.

6        Q.    Thank you.

7                    I'm going to take just one moment and

8    look at these briefly.  We'll go through them more

9    carefully shortly.  I would like to mark this entire

10   bundle of documents as Exhibit 3, and then we'll go

11   through each one.

12                    (Exhibit 3 marked.)

13       Q.    (BY MS. CHAMPION)  Okay.  The second category

14   is, (as read):  All documents relevant to any deposition

15   topic set out in Schedule A of the Notice.

16                    Do the documents you just gave me, that

17   we marked as Exhibit 3, include both categories one and

18   two, documents reviewed and documents relevant, to this

19   deposition?

20       A.    Yes.

21       Q.    Do you have the same documents in front of

22   you?

23       A.    I do.

24       Q.    Okay.  Can you tell me what the first page is?

25       A.    The first page is the list of the projects



Page 19

```
 1   to renew or change your driver's license information
 2   online?
 3       A.   No, ma'am.
 4       Q.   So now that we're going through this exhibit
 5   page by page, I wonder if we can mark each page as a
 6   different attachment.  So this would be 3A.
 7                (Exhibit 3A marked.)
 8            MS. CHAMPION:  Thank you.
 9       Q.   (BY MS. CHAMPION)  Each document will be
10   marked as a different exhibit.  This happens to be one
11   page, which is 3A.  Thank you.
12            MS. CHAMPION:  Moving on, may we mark
13   this second document as 3B?
14                (Exhibit 3B marked.)
15       Q.   (BY MS. CHAMPION)  Can you tell me what this
16   document is?
17       A.   This document is a list of the changes that
18   have been made to the driver license system since 2012.
19       Q.   I guess I want to know two things: one, which
20   of these changes, if any, relate to online driver
21   license transactions; and then secondly, if any of them
22   relate to voter registration.  So can you go through the
23   list and --
24       A.   Yes.
25       Q.   -- look for both of those?
```



Page 35

1          MS. MACKIN:  Okay.  Thanks.  Yeah, and I
2  -- I -- I mentioned this in passing to Beth yesterday.
3  I'll put it down in writing.  I appreciate that.
4          **Q.   (BY MS. CHAMPION)  Okay.  So looking at**
5  **Exhibit 3C, I'm somewhat familiar with a couple of**
6  **different Use Cases.  What is this particular one for?**
7          A.   This process authentication request is the
8  request that comes from us from Texas.gov when an
9  individual is logging in to obtain either a DL or ID
10  renewal or address change.  This is the information that
11  they pass to us so that the driver license system can
12  make the determination of what transactions that
13  individual is eligible for.
14          MS. MACKIN:  And so I'll just note that
15  this has not been previously produced because it was
16  not -- this transfer of information between Texas.gov
17  and the Department of Public Safety was not responsive
18  to any of the requests to date.
19          MS. CHAMPION:  Okay.
20      **Q.   (BY MS. CHAMPION)  So just to recap, let me**
21  **see if I've got it correct.  That this Use Case tells**
22  **DLS what information Texas.gov -- sorry.  No, I don't**
23  **think I have it.  Explain it one more time.**
24          A.   So this is the Use Case that describes the
25  information that comes to DLS from Texas.gov when the



Page 36

```
 1   individual is logging in to either do a DL or ID renewal
 2   or change of address.  So the information is transmitted
 3   to -- to DLS, and then this prepares the response that
 4   goes through the rules and sends the eligibility flag
 5   back to Texas.gov telling them that yes, they're
 6   eligible to renew or no, they're not.
 7       Q.   And this Use Case was published on May 10th,
 8   2016; is that right?
 9       A.   That was the most recent, yes.
10       Q.   Has it been updated since then?
11       A.   This is the most recent that was as of last
12   Friday.  No changes have been made since then, to my
13   knowledge.
14       Q.   Is this process described in the Use Case
15   something that happens in realtime when a customer is on
16   the Texas.gov website?
17       A.   Yes, ma'am.
18       Q.   Okay.  So information is in realtime sent to
19   DLS.  DLS runs -- processes the information, and then
20   lets Texas.gov know if that customer is eligible for
21   either the renewal or the change of address that they're
22   trying to complete?
23       A.   That is correct.
24       Q.   And it then is only relevant to online
25   transactions?
```



STRINGER: SHERI GIPSON

Page 37

```
 1      A.   Correct.
 2      Q.   I would like to go through this a little bit.
 3   There's a chart on the first page that shows revision
 4   history.
 5      A.   Correct.
 6      Q.   And you confirmed that the May 10th, 2016 was
 7   the most recent.  Why was it most recently updated?
 8      A.   Let me refer back.  I will have to confirm
 9   that with our team.
10      Q.   Does this Use Case pertain to both driver
11   license renewals and change of address?
12      A.   Yes.
13      Q.   Is that because that process is combined
14   online?
15      A.   Well, it's -- it's one system interface, so
16   yes.
17      Q.   Does this Use Case specify that anything
18   related to voter registration is sent to DLS from
19   Texas.gov?
20            MS. MACKIN:  Objection, form.
21            You can answer.
22      Q.   (BY MS. CHAMPION)  Should I rephrase?
23      A.   Yes, please.
24      Q.   Okay.  Does this Use Case relate in any way to
25   voter registration?
```



Page 40

1    the Secretary of State?

2        A.    From the data that's going back and forth

3    between the two of us?

4        Q.    Yes.

5        A.    No.

6        Q.    All right.  Let's go to the next document,

7    which will be 3D.

8        A.    Just so that I'm sure, are you looking at the

9    process DL duplicates renewal?

10        Q.    Yes.  The title of Exhibit 3D is Use Case

11    Specification: Process DL Duplicates/Renewals

12    Application File.

13                (Exhibit 3D marked.)

14        Q.    (BY MS. CHAMPION)  What is this Use Case for?

15        A.    This is the Use Case that shows the

16    information that's coming from Texas.gov in the batch

17    file that we use to actually update the driver license

18    and identification card records.

19        Q.    Okay.  And when was it most recently updated?

20        A.    April of 2016.

21        Q.    And why was it most recently updated?

22        A.    Again, I will have to contact someone on break

23    and find out what that ticket number is in reference to.

24        Q.    Does this Use Case relate to voter

25    registration in any way?



Page 41

1    A.   No, ma'am.

2    **Q.   I'm just looking...**

3    A.   The application data that's transferred back

4  to us in this file, starts on page 6.

5    **Q.   Thank you.**

6         **And does this also occur in realtime?**

7    A.   No, ma'am.  This is a batch process that

8  occurs nightly.

9    **Q.   And why does it occur nightly rather than in**

10  **realtime?**

11   A.   Again, that's a systemic decision that was

12  made because of processing time and resource to the

13  database.

14   **Q.   I'm going to move to the next document, which**

15  **I would like to mark 3E.**

16        MS. MACKIN:  For the record, what's the

17  title on that document?

18        MS. CHAMPION:  It's Use Case

19  Specification: Create Daily Update File For SOS.  I

20  think I got some of them out of order.  I'm sorry.

21        MS. MACKIN:  That's okay.  I just want to

22  make sure we're all looking at the same thing.

23        MS. CHAMPION:  Yes.

24        (Exhibit 3E marked.)

25   **Q.   (BY MS. CHAMPION)  This document has been**



Page 42

1    produced to us previously; is that right?

2          A.    I believe so, yes.

3          Q.    And this document I believe is for whenever --

4    tell me if I'm correct -- whenever a customer completes

5    a transaction through DPS and any of their

6    information -- such as name, address -- changes,

7    then nightly that information is batched and sent to the

8    Secretary of State; is that correct?

9          A.    That is correct.

10         Q.    And does -- I think we have gone over this one

11   previously.  Does it include any voter registration

12   information?

13         A.    It does.

14         Q.    What does it include regarding voter

15   registration?

16         A.    It in- -- it includes the field that is in

17   driver license that says voter registration.  It will be

18   a "yes" or "no."  And it will be the data that is

19   current- -- that is in the system at the time it's

20   created.

21         Q.    Where can I look?

22         A.    On page 6, it's actually the very last box.

23         Q.    And so you said this will be the information

24   that's in the system when it was first created.

25         A.    When this file is created.  So each night it



Page 43

```
 1   pulls from the database what's -- what information is in
 2   there.
 3        Q.    But this will never be voter registration
 4   status that is collected from an online transaction; is
 5   that -- is that right?
 6        A.    If they created a -- or if they changed their
 7   address, it wouldn't be included in this file.  But it
 8   would not include information to the voter question
 9   that -- from the online renewal.  It would be whatever
10   was in the database at the time, which that means it
11   could be a "yes," "no," or blank.
12        Q.    Okay.  And I would like to mark as 3F a
13   document titled: Use Case Specification: Create Voter
14   Registration Extract File.
15              (Exhibit 3F marked.)
16        Q.    (BY MS. CHAMPION)  Has this document been
17   produced to us before?
18        A.    I believe so, yes.
19              MS. MACKIN:  Yes.
20        Q.    (BY MS. CHAMPION)  I think we're going to get
21   into specifics about this later.  Let's look at --
22   goodness, you have almost as many documents as I do.
23   Document 3F [sic] is titled Class C and M Renewal Age 18
24   and Above.  Okay.  The previous document was 3F.  This
25   one will be 3G.
```



Page 45

1     A.   Correct.

2     Q.   Signature captures.  What are DPS employees --

3 you know what -- I'm sorry, I keep starting and

4 stopping.  I'm going to ask you a bunch of things about

5 signatures later, so --

6     A.   Okay.

7     Q.   -- I'll just move on to -- I'm marking this

8 document 3H.

9              (Exhibit 3H marked.)

10    Q.  (BY MS. CHAMPION)  What is this document?

11    A.   So in the training modules, it didn't give

12 clear screenshots of the additional question.  So when

13 you answer "yes" to the voter registration, the voter

14 status -- if you look at the second picture, it just is

15 demonstrating that it comes up and they select whether

16 it's a change, a new, or a replacement.  And then the

17 bottom is just what it shows if it's "no."  Nothing else

18 pops up.

19    Q.   Has DLS always reflected whether a voter

20 registration information category is a new, a

21 replacement, or a change?

22    A.   I believe so.  Those are for in-office

23 transactions screens.

24    Q.   Can we mark this document titled: Driver

25 License Forms, Introduction to Common Non-CDL Forms as



Page 46

```
1    3I?
2              (Exhibit 3I marked.)
3       Q.   (BY MS. CHAMPION)  What is this document used
4    for?
5       A.   It's just another one of the training modules.
6    On page 5 it reflects that -- who is eligible to answer
7    "yes" to the voter registration question, as far as age.
8       Q.   I would like to mark the document called DL-64
9    Manual Address Change Processing as 3J.
10             (Exhibit 3J marked.)
11      Q.   (BY MS. CHAMPION)  What is this document used
12   for?
13      A.   This is a training document that is used for
14   our customer support specialists at the headquarters
15   operations that process the DL-64 change of address
16   forms.
17      Q.   Has this document been produced to us
18   previously?
19      A.   I do not believe.
20      Q.   I might like some time to look over this
21   during a break and come back to it.
22             But it's dated February 22nd, 2017; is
23   that correct?
24      A.   That's correct.
25      Q.   That's fairly recently.  Why was it -- or was
```



Page 49

1    Q.   Is it the 18 -- same 18 individuals that you

2  mentioned who use Exhibit 3J?  Are those the people who

3  make up the Manual Services unit?

4    A.   Yes.

5    Q.   Sorry.  Who created this voter inquiry portal

6  summary?

7    A.   I would have to double check, but I believe it

8  was Steve Spinac as well.

9    Q.   And why did he create this?

10   A.   To assist in the training of individuals who

11  would be working portal inquiries.

12   Q.   Do you know when it was created?

13   A.   I do not have the original date.  The last

14  time it was updated was in October of 2016, prior to the

15  beginning of the election process.  And it was to --

16  they added information regarding the change in the DL-64

17  process that they would need to look at that document.

18   Q.   I would like to mark this document 3L.  I

19  believe it is a voter registration paper application

20  postcard.

21          (Exhibit 3L marked.)

22   Q.   (BY MS. CHAMPION)  What is this document?

23   A.   This document is the application that is sent

24  out with our mail renewal notice applications.

25   Q.   And when was it last updated?



Page 53

```
 1   process, and this was established then.
 2        Q.   (BY MS. CHAMPION)  Why does DPS offer
 3   customers the opportunity to register with a separate
 4   voter registration when they're sent renewal notices by
 5   mail?  Why does DPS send this with the notice?
 6                  MS. MACKIN:  Objection, form.
 7                  You can answer.
 8        A.   Again, it's because we are -- we are giving
 9   them the opportunity under election -- I believe it's
10   Election Code Chapter 20 that identifies us as an agency
11   to offer voter registration application.
12        Q.   (BY MS. CHAMPION)  So it's because you're
13   required to send the form?
14                  MS. MACKIN:  Objection, form.
15                  You can answer.
16        A.   We are required to offer that opportunity,
17   yes.
18        Q.   (BY MS. CHAMPION)  Okay.  I would like to mark
19   this form titled: Texas Driver License and ID Card
20   Renewal Notice as 3M.
21                  (Exhibit 3M marked.)
22        Q.   (BY MS. CHAMPION)  What is this form?
23        A.   This form is the -- is a blank form of the
24   application that is mailed to individuals when they are
25   eligible to renew by mail.
```



Page 54

1      Q.    So is this renewal notice something that would

2  be accompanied by the voter registration application

3  that we looked at in Exhibit 3L?

4      A.    Correct.

5      Q.    When a customer receives a driver's license

6  renewal notice, such as -- such as this, is it ever

7  prefilled -- pre- -- are the fields ever pre-populated?

8      A.    The -- the fields are pre-populated in a sense

9  that there is name and address information in the

10 upper -- in the blank portion in the upper left.

11 There's also a scan line that's printed across the top

12 that provides the customer's driver license information

13 and name and expiration date.  And then the information

14 in the top right-hand corner where it says renewal fee

15 type, et cetera, that's all pre-populated.

16     Q.    So even though it's blank, as I look at this

17 form now, when DPS sends it to customers, the fields

18 you've just identified would actually have information

19 in them already?

20     A.    Correct.

21     Q.    Let's see, does this form have a voter

22 registration question on it?

23     A.    No, ma'am, it does not because it has the --

24 the voter registration application form in the packet.

25     Q.    Does DPS refer to this form as DR-32?



Page 58

1    A.   Yes.

2    Q.   And is it the same language that is on

3  in-person driver license change of address forms?

4    A.   The in-person address and change of address

5  and renewal are the same form.

6    Q.   Okay.  Okay.  Thank you.

7         For the sake of time, I'm just going to

8  go through the rest of these sort of quickly.  Can I

9  please mark the document titled: Application for

10 Renewal/Replacement of a Texas Driver License or

11 Identification Card as 3O?

12         (Exhibit 3O marked.)

13   Q.   (BY MS. CHAMPION)  Is there a revision date on

14 this document?

15   A.   There is.  Lower right -- or lower left,

16 sorry.

17   Q.   And what is that revision date?

18   A.   February 2017.

19   Q.   So this was recently revised?

20   A.   Yes.

21   Q.   Okay.

22   A.   Do you need to know what the change is or...

23   Q.   Yes.

24   A.   Okay.  The change -- most of these documents

25 have the 2/17.  And this was because the Glenda Dawson



Page 59
1  Donate Life went from a dollar to a variable amount.
2      Q.    Thank you.
3            I would like to mark the document titled:
4  Application for Texas Driver License or Identification
5  Card as Exhibit 3P.
6            (Exhibit 3P marked.)
7      Q.    (BY MS. CHAMPION)  Was this also revised
8  February 2017?
9      A.    Yes.
10     Q.    And is the Glenda Dawson Life field the only
11 field that was revised?
12     A.    Yes.
13     Q.    I would like to mark the document titled:
14 Application for Change of Address on Valid Texas Driver
15 License and Identification Card, Exhibit 3Q.
16            (Exhibit 3Q marked.)
17     Q.    (BY MS. CHAMPION)  Was this document also
18 revised February 2017?
19     A.    Yes.
20     Q.    And was the Glenda Dawson Donate Life Texas
21 field the only one that was changed?
22     A.    Yes.
23     Q.    May I mark a document titled: Application for
24 Change of Address on Valid Texas Driver License and
25 Identification Card 3R?

hglitigation.com



Page 60

```
 1                (Exhibit 3R marked.)
 2      Q.   (BY MS. CHAMPION)  When was this document last
 3  revised?
 4      A.   This is the prior version of -- it was updated
 5  in 3/16.  And that's when the question of, if you're a
 6  U.S. citizen, do you want to register to vote was added
 7  to the change of address form -- the mail change of
 8  address form.
 9      Q.   So 3R is the previous version of 3Q?
10      A.   Correct.
11      Q.   I would like to mark -- well, it looks like a
12  series of PowerPoints for driver license renewal and
13  change -- no, not PowerPoints, I'm sorry.  I would like
14  to mark this document 3S.  I'll ask you what it is.
15                (Exhibit 3S marked.)
16      A.   Okay.  So 3S, this is -- just to make sure
17  we're on the same one, does it have the Glenda Dawson
18  changes deployed 2016 here?
19      Q.   Yes.
20      A.   Okay.  So this is the screenshots showing the
21  change, again, in the Glenda Dawson from the one dollar
22  to the variable amount.
23      Q.   Is that the only change reflected in these
24  screenshots?
25      A.   Yes.
```



Page 61

```
 1      Q.   I would like to mark these series of -- of
 2  pages about the -- let's see, it looks like renewal
 3  driver license test is one of the topics.
 4                  MS. CHAMPION:  Can I mark that as 3T,
 5  please?
 6                  (Exhibit 3T marked.)
 7      A.   These are the screenshots that were a result
 8  of the test when the change was made in early 2016 to
 9  the voter registration question, the language, and the
10  required field.  So this is the prior version.  Glenda
11  Dawson's most current and this was the screenshots prior
12  to (indicating).
13      Q.   (BY MS. CHAMPION)  When you say "the test,"
14  what do you mean?
15      A.   This was their test document that they did
16  after the deployment of the new code.
17      Q.   When you say test, was it ever live?  Was this
18  ever the actual screenshots that customers could
19  interact with online?
20      A.   This is the screenshots that appeared after
21  the deployment of the code in January.
22                  MS. CHAMPION:  I would like to mark this
23  document titled:  Texas Department of Public Safety
24  Driver's License/ID Card Renewal IVR Script as 3U.
25                  MS. MACKIN:  Excuse me.  I'll also note
```



Page 62

1  that this document was marked confidential in the

2  ordinary course of business, and I would also like to

3  mark it confidential for purposes of this litigation or

4  designate it as confidential, excuse me.

5            (Exhibit 3U marked.)

6       Q.   (BY MS. CHAMPION)  What is this document?

7       A.   This is the script language for -- that is in

8  place for the IVR, telephone renewals.

9       Q.   We'll come back to that.  I would like to mark

10 this document titled: Driver's License Renewal Receipt

11 and Temporary License as 3V.

12           (Exhibit 3V marked.)

13      Q.   (BY MS. CHAMPION)  What is this document?

14      A.   This is a printed receipt from when you do an

15 online address change or renewal transaction.

16      Q.   Thank you.

17           I would like to mark this document

18 titled: Texas Department of Public Safety Temporary

19 Identification Card as 3W.

20           (Exhibit 3W marked.)

21      Q.   (BY MS. CHAMPION)  What is this?

22      A.   This is a transaction receipt from an

23 in-office transaction.

24      Q.   I would like to mark this document, which is a

25 letter dated July 22nd, 2016 as 3X.



Page 63

```
 1                    (Exhibit 3X marked.)
 2        Q.   (BY MS. CHAMPION)   What is this document?
 3        A.   This is a copy of the letter and plan that was
 4   given to me when I was named coordinator.
 5        Q.   And finally I would like to titl- -- mark this
 6   document titled: 2016 Original, Renewal, Duplicate and
 7   Modification Issuances for Driver License and IDs as
 8   Exhibit 3Y.
 9                    (Exhibit 3Y marked.)
10        Q.   (BY MS. CHAMPION)   What is this document?
11        A.   This is just some statistics that I thought I
12   might need.
13        Q.   Statistics regarding what?
14        A.   Regarding the number of issuances that are
15   processed each year and how they are processed, the
16   manner of process; the voter portal information from the
17   2016 presidential election; and then the bottom numbers
18   are just average file sizes of the daily updates, the
19   weekly update, and the voter extract file.
20        Q.   Okay.   That -- is that all the documents you
21   brought with you today?
22        A.   Yes.
23        Q.   Okay.
24                    MS. CHAMPION:   Do you want to take a
25   break?
```



Page 77

```
1    customer sends in a change of address form via the mail?
2         A.   So as of March 16th, the form was revised to
3    allow the customer to indicate that they want to do a
4    change -- a voter registration application.  And when
5    that form is processed, that information is input into
6    the driver license system.  And the voter registration
7    information is updated if they say yes.
8         Q.   I think I skipped an item, via telephone.  We
9    were speaking about renewals.  Is the process any
10   different when a change of address is requested via
11   telephone?
12        A.   You cannot do a change of address application.
13   And just to clarify, so when you do a renewal, you can
14   change your address, but there's a separate transaction
15   that you're not renewing.  You're just changing your
16   address, and that's not allowed on the IVR.  It's not
17   provided for.
18        Q.   Why not?
19        A.   It's just the volume of those is extremely
20   low, and they have -- we've just never increased that
21   opportunity.  They can do it online, through the mail,
22   or in the office.
23        Q.   How does DPS carry out its voter registration
24   duties when a customer goes online to renew a driver
25   license?
```



STRINGER: SHERI GIPSON

Page 78

1    A.   So as they go through the process, the

2  screens, they're given the opportunity to say -- state

3  that they would like to register or submit a voter

4  registration application.  And then on the receipt page,

5  they're provided a link to the Secretary of State where

6  the packet is downloaded, completed, and mailed.

7    Q.   Is this process the same when a customer goes

8  online to change their driver license address?

9    A.   Yes, it is.

10    Q.   What steps has DPS taken to ensure that

11  customers are aware of voter registration opportunities

12  through DPS?

13    A.   So -- I mean, the information is on the form.

14  The question is on each form.  As far as the online, it

15  -- it provides the question and then also on the receipt

16  page, calls attention to the fact that they need to

17  download that application.

18    Q.   Other than having the questions about voter

19  registration on the form or online, has DPS done

20  anything else to increase customer awareness that they

21  can register to vote while completing driver license

22  transactions?

23          MS. MACKIN:  Objection, form.

24          You can answer.

25    A.   As far as like designated information that's



Page 94

1          Both the online renewal and change of

2    address processes have the question related to voter

3    registration, and then that process provides a link

4    which takes them to Texas Secretary of State.

5          Q.   Why does DPS include a voter registration

6    question during the online renewal and change of address

7    portion?

8          A.   So it is part of the plan between the

9    Secretary of State and Department of Public Safety in

10   compliance with the voter registration question being

11   combined as part of the application process for a driver

12   license or ID.

13         Q.   You said it's part -- part of a plan.  We

14   touched on this earlier also, but who developed that

15   plan?

16         A.   That plan was developed between the Department

17   of Public Safety and Secretary of State.

18         Q.   And who at DPS and the Secretary of State was

19   involved in deciding the way that the online question

20   would -- would function?

21         A.   I would have to go back and see who the --

22   because the -- the original plan was developed in '94

23   for the office transactions and then modified when the

24   mail renewal and online portions were added.  I do not

25   have the exact names of who was in that process.  It



Page 96

1    Q.   Is there a voter registration question on the

2    DR-32?

3    A.   No.

4    Q.   Has there ever been a voter registration

5    question on any version of the DR-32?

6              MS. MACKIN:   I'm going to just object to

7    the extent that this is prior to January 1st, 2012, the

8    topics that she's designated on here.

9              But besides that, you can answer.

10   A.   To my knowledge, no, it's always -- we have

11   always included a voter registration application form

12   provided by the Secretary of State within the mail

13   renewal packet.

14   Q.   (BY MS. CHAMPION)  If you look at the back of

15   the form, at the top it says Registration Renewal Guide,

16   Read Carefully.  And there's a box that says, (as read):

17   No waiting in line.  Three easy ways to renew.

18              The first of those is Internet renewal.

19   A.   Uh-huh.

20   Q.   Does DPS want people to renew online rather

21   than by mail?

22   A.   If they're eligible, yes.

23   Q.   Why?

24   A.   It reduces the traffic within the office and

25   reduces overall wait times.



hglitigation.com

STRINGER: SHERI GIPSON

Page 101

1      Q.    So you, as a representative of DPS, cannot --
2    cannot answer why DPS now transmits all daily file
3    updates to the Secretary of State; is that correct?

4      A.    I can't tell you what Secretary of State does
5    with the information, no.  The -- I can't -- I -- I
6    cannot tell you the exact reasons behind the
7    establishment because there was no one available that
8    could provide me that information.

9      Q.    Does DPS send the Secretary of State these
10   update files because the Secretary of State instructed
11   DPS to do so?

12              MS. MACKIN:  Objection, form.

13              And I'll also note that to the extent
14   that this process was developed before 2012, it's
15   outside the scope of the topics the witness is
16   designated on under 30(b)(6).

17     A.    So I mean it's an assumption that there was a
18   discussion and that they wanted the data.  We -- we
19   wouldn't have just randomly decided to start sending
20   them the data.  There would have been discussions, and
21   Secretary of State would have had a reason for wanting
22   that data.  I can't tell you what that reason is.  That
23   would be Secretary of State.

24     Q.    (BY MS. CHAMPION)  So -- okay.  That was the
25   daily update file.  Does DPS then transmit all valid



Page 102

1  change of address information it obtains from customers

2  to the Secretary of State in the voter registration

3  extract file?

4      A.   The voter registration extract file is only --

5  or the only records obtained in that file are customers

6  who applied in person for any type of transaction or

7  through the mail change of address DL-64 process that

8  indicated that they would like that to serve as a voter

9  registration application.

10     Q.   So you've identified in-person and mail

11 transactions.  So is it true that DPS does not transmit

12 change of address information it obtains from customers

13 to the Secretary of State in the voter -- I'm sorry --

14 in the secr- -- to the Secretary of State that it

15 collects from online transactions?

16     A.   So in the voter registration extract file --

17     Q.   Yeah.

18     A.   -- the online transactions are not included in

19 that process.

20     Q.   And why aren't they included?

21     A.   Again, that was determined by discussions

22 through -- between the Department and Secretary of State

23 when the -- the processes were being established.

24     Q.   You said the process was established when?

25     A.   Online was established in two -- either --



Page 113

1 the coordinator.

2          MS. CHAMPION: I'm going to ask that this

3 document be marked Exhibit 6.

4         (Exhibit 6 marked.)

5     Q. (BY MS. CHAMPION) This is a letter dated

6 September 9th, 2015. Are you familiar with this letter?

7     A. Yes.

8     Q. What is it?

9     A. It is a letter that was sent -- excuse me --

10 to the Director of Elections in September naming Tony

11 Rodriguez and Bob Myers as the persons responsible for

12 coordination of voter registration program.

13     Q. And was it sent to Keith Ingram from Joe

14 Peters?

15     A. Yes.

16     Q. Why did Joe Peters send this to Keith Ingram?

17     A. I believe it was as a result of discussions

18 with general counsel.

19     Q. Did DPS send the Secretary of State any

20 letters similar to this before September 2015?

21     A. Not that I was provided with, no.

22     Q. Can you look at the second paragraph?

23     A. Okay.

24     Q. And read the first sentence, please?

25     A. (As read): For the past several years, the



Page 134

1    Q.   Is that answer the same then for any

2  complaints related to the online change of address or

3  renewal process through DPS?

4    A.   Yes.

5            MS. CHAMPION:  Can I please mark this as

6  -- document as Exhibit 8?

7            (Exhibit 8 marked.)

8    Q.   (BY MS. CHAMPION)  Do you recognize this

9  document?  Are you familiar with it?

10    A.   Yes, I believe this is from the instructions

11  for the voter portal.

12    Q.   And that's what we were calling the Secretary

13  of State Web portal?

14    A.   Yes.

15    Q.   Are you referencing something to help you?

16    A.   Well, yeah, I was looking to see if this was

17  from the current document or not.  I believe it may be a

18  different version than what I have.

19    Q.   Is there a more current version that you're

20  familiar with?

21    A.   It is the Texas Secretary of State voter

22  portal inquiry --

23    Q.   Okay.

24    A.   -- that was presented in the documents.

25    Q.   When did all DPS offices begin using the Web



Page 141

1   A.   This is just for that time period that's noted
2   above the 10/20/2016 through 11/21/2016.
3   **Q.   Can you just walk me through some of these**
4   **fields?  What is -- what is the field with over 5**
5   **million?  What does that mean?**
6   A.   Okay.  Up at the very top?
7   **Q.   Uh-huh.**
8   A.   So this is based off the 2016 original renewal
9   duplicate modification issuances for DL and ID.  So in
10  2016 we issued -- there were five hun- -- 5,448,223
11  transactions completed in the driver license offices.
12  In the -- on TOL Web there was 1,448,941.  TOL/IVR,
13  there was 64,130.  Through the mail, there was 85,231.
14  For a total of 7,046,525 transactions for the -- 2016.
15  **Q.   In the chart underneath that, does that**
16  **reflect how many inquiries were researched through the**
17  **Web portal?**
18  A.   Correct.  The middle portion where it says
19  voter porter election -- voter portal election 2016
20  cumulative details, that is the portal inquiries that
21  they processed during that time period of October 20th
22  through November 21st of 2016.
23  **Q.   Okay.  So that's about a month's time,**
24  **correct?**
25  A.   Correct.



Page 175

1      MS. MACKIN:  Objection, form.

2      A.   Telephone transactions are handled in the same

3  manner as an online transaction.  There is an

4  authentication process they go through.  So you're

5  assuming that you're dealing with the customer

6  themselves.  And the statute requires a signature on an

7  original application, and that's -- the alternative

8  methods of renewal and change of address are only

9  available to established customers who have already

10 provided identity, residency, lawful presence

11 information, as well as a signature on their

12 application.

13     **Q.   (BY MS. CHAMPION)  When a customer changes**

14 **their address over the telephone, does the signature**

15 **that DPS already have on file stay on the physical face**

16 **of the driver license?**

17     A.   Again, the only transaction type that can be

18 done through IVR is a renewal.

19     **Q.   Sorry.  So when a customer renews a driver's**

20 **license on -- over the telephone, does DPS use the**

21 **signature that was previously on file to -- to put on**

22 **the customer's renewed driver's license?**

23     A.   Yes.

24     **Q.   If DPS were directed to do so, does it have**

25 **the ability to send the Secretary of State the**



Page 176

1   electronic signatures of customers who renew or change
2   their address online?
3       A.   So if the Secretary of State determined that
4   that was acceptable under the statutes and everything
5   that they process under and they directed us, yes, it
6   could be accomplished.  But it would take conversation
7   between Secretary of State and Department of Public
8   Safety and Texas NIC.
9       Q.   Has DPS ever considered taking that action?
10      A.   At this point we have not been -- we have not
11  considered that action because those -- we have never
12  been directed by Secretary of State or advised that
13  that's acceptable.
14      Q.   Has DPS ever consulted the Secretary of State
15  about whether it should send the electronic signatures
16  of customers who complete renewals or change of
17  addresses online --
18              MS. MACKIN:  Objection, form.
19      Q.   (BY MS. CHAMPION)  -- to the Secretary of
20  State?
21              MS. MACKIN:  Objection, form.
22      A.   Again, the only time I'm aware that that
23  became -- or was a small topic of conversation was
24  during the DL reengineering project when the decision
25  was made to electronically transfer the voter



STRINGER: SHERI GIPSON

Page 180

```
 1       Q.   Does DPS encourage customer service
 2   representatives to tell customers they could have
 3   completed transactions online?
 4       A.   Well, that is -- I mean, that's a process that
 5   is encouraged across the board, again, because of the
 6   lines and the wait times.  So it is encouraged across
 7   the board.  It's not a primary function that they're
 8   trained on.
 9       Q.   Do DPS communications promote online renewal
10   and change of address as opposed to promoting in-person
11   or mail transactions?
12            MS. MACKIN:  Objection, form.
13       A.   Yes.
14       Q.   (BY MS. CHAMPION)  How so?
15       A.   Any -- on our Web page it encourages people to
16   go online to see if they're eligible before going into a
17   driver license.  It gives them the basic requirements
18   for online, and then encourages them to use that process
19   instead of going in if they're eligible.
20       Q.   And on driver's license forms themselves, is
21   there also a promotion for online renewals and change of
22   address being an option?
23       A.   DR-32 has that information.  Because if
24   they're eligible to renew by mail, then they're eligible
25   to renew online.
```



Page 203

1  was made not to modify the -- the online voter

2  registration part?

3      A.   It is -- it is my understanding that the

4  decision was made based on requirements for voter

5  registration, and the requirements required -- it makes

6  it sound funny -- the requirements of having a signature

7  at the time of application.

8      Q.   So -- so drilling down from that, you said

9  based on the requirements for voter registration.  And

10  particularly, you're saying based on the requirement for

11  a signature for the voter --

12      A.   Right.

13      Q.   -- registration; is that --

14      A.   Right.  The -- the information provided is

15  that Texas statute does not allow for online voter --

16  voter registration.  It requires a signature with the

17  application.  And for the online process, we are not

18  collecting a new signature as part of that process.

19      Q.   I want to see if I can under- -- understand

20  this fully.  So the -- the signature that is sent for an

21  in-person transaction where someone answers "yes" to the

22  voter registration question and -- and similarly when

23  someone changes their address -- excuse me -- address

24  via the mail, the signature that's sent for both of

25  those voter registration applications, that's the



Page 204

1  electronic signature; is that right?

2      A.    That is correct.

3      Q.    And that's sent to the Secretary of State?

4      A.    That is correct.

5      Q.    Okay.  The ink signature is never sent to the

6  Secretary of State, correct?

7      A.    That is correct.

8      Q.    Okay.  If you'll look over the Use Case there

9  you have in front of you, staying on the same exhibit,

10  would you confirm for me that the information regarding

11  the -- well, let me rephrase that.  The information

12  that's provided by a customer in an online transaction

13  with DPS -- you'll agree with me that there's

14  information provided by the customer in those

15  transactions?

16      A.    Correct.

17      Q.    Okay.  The -- looking through the use space,

18  is the only information that's provided by the customer

19  that's not transferred from Texas.gov to DLS the answer

20  to the voter registration question?

21      A.    That's correct.

22      Q.    Turn to me -- turn with me -- excuse me -- to

23  page 9 where it talks about business rules.

24      A.    Okay.

25      Q.    Do you see that?



Page 215

```
 1              MS. STEVENS:  We're going to take a
 2   three-minute break.
 3              THE VIDEOGRAPHER:  Going off the record
 4   at 5:45 p.m.
 5              (Recess held, 5:45 p.m. to 5:52 p.m.)
 6              THE VIDEOGRAPHER:  We are back on the
 7   record at 5:52 p.m.
 8                   EXAMINATION
 9   BY MS. SILHAN:
10      Q.   Hi, Ms. Gipson.
11      A.   Hello.
12      Q.   I'm Caitlyn Silhan on behalf of Benjamin
13   Hernandez.  We've met before.  I have just three
14   questions for you now.  So you just testified that DPS
15   decided not to modify the voter registration file with
16   respect to online transactions at one point, at least in
17   part, because Texas law requires a signature at the time
18   of a voter registration application; is that correct?
19              MS. MACKIN:  Objection, form.
20      A.   Correct.
21      Q.   (BY MS. SILHAN)  Does Texas law require that
22   DPS collect a signature for a change of address
23   transaction?
24              MS. MACKIN:  Objection, form.
25      A.   So Texas law does not require it on a change
```



Page 216

1   of address application processed online because the

2   signature had been previously captured.

3       Q.   (BY MS. SILHAN)  Okay.  So if a customer

4   completes a change of address form online, that is valid

5   for driver license purposes?  It changes their address

6   for driver license purposes; is that correct?

7       A.   Correct.

8                   MS. SILHAN:  That is all I have, believe

9   it or not.  So I'll pass the witness.

10                  MS. MACKIN:  Thank you.  Before we get

11  started, just on the record, I would like to request a

12  read and sign of this deposition transcript.

13                  And I just have one exhibit.

14                  (Exhibit D1 marked.)

15                  EXAMINATION

16  BY MS. MACKIN:

17      Q.   Ms. Gipson, I'm handing you what's been marked

18  Defendant's Exhibit 1.  Do you recognize this document?

19      A.   Yes.

20      Q.   What is it?

21      A.   This is the Amended Notice No. 3 requesting

22  the 30(b)(6) deposition.

23      Q.   And that's the deposition that's taking place

24  today, correct?

25      A.   Correct.



Page 217

```
 1      Q.    And what date is on this notice?

 2      A.    As far as the date of the deposition?

 3      Q.    Yes.

 4      A.    Sorry.  March 6th at 9:30 a.m.

 5      Q.    Did you appear here at the Attorney General's

 6   Office yesterday at 9:30 a.m. to sit for this

 7   deposition?

 8      A.    Yes, ma'am.

 9      Q.    And what time did you arrive?

10      A.    Shortly after 9 a.m.

11      Q.    And how long were you here?

12      A.    Until around 11:00 a.m.

13      Q.    And did the deposition take place?

14      A.    No, it did not.

15      Q.    And was that because no court reporter or

16   videographer was scheduled?

17      A.    That's correct.

18      Q.    Okay.  Thank you.

19            Now, I'm going to just go back to a

20   couple of questions that you were asked earlier today.

21   You were asked in several ways about how individuals who

22   transact with the Department of Public Safety online are

23   given the opportunity to register to vote.  Do you

24   remember those questions?

25      A.    Yes.
```



hglitigation.com

Page 218

1  Q.  Can you clarify how that works?

2  A.  So when the customer logs into the online

3  system, they're authorized based on four pieces of

4  identity information.  They then go through several

5  screens where they identify if they want to -- if they

6  need to update their address, organ donor, VAF and

7  veteran assistance fund donations, and voter

8  registration.  That's in the services options.  And if

9  they -- as they progress on, if they select "yes" to the

10  voter registration, it appears again on the review page

11  along with the options that they selected for organ

12  donor, Glenda Dawson donation, VAF donation, and

13  veteran's assistance fund donation.

14  And once they get past that screen, they

15  accept all of those -- the changes or the information

16  that was inputted, they're put to a receipt page.  If

17  they selected "yes" to the register to vote, there is a

18  link that's provided that takes them to the Secretary of

19  State website where they can download -- they have the

20  opportunity to download and sign and send in a

21  registration application.  And then they're also given

22  the option to print the receipt page.

23  Q.  And that registration application, is it your

24  understanding that that's the -- that is the application

25  approved by the Secretary of State's office?



Page 219

1     A.    Yes, it is the -- the one from their website.

2     Q.    Okay.  And the information, just to clarify,

3  that is verified before the customer may begin the

4  transaction -- those four pieces of information that you

5  just talked about -- do those -- does DPS do anything

6  with those pieces of information to verify whether an

7  individual is eligible to register to vote or update

8  voter registration information?

9     A.    No.  Those pieces are not used for that

10  purpose.

11     Q.    The pieces of information are simply used to

12  verify that the individual is eligible to transact with

13  DPS online?

14     A.    Correct.

15     Q.    And to verify their identity?

16     A.    Correct.

17     Q.    Okay.  Thank you.

18           You were asked a couple of questions

19  about how DPS publicizes the availability of certain

20  transactions online, and you testified that DPS wants to

21  reduce wait times and in-office traffic.  Do you recall

22  that testimony?

23     A.    Yes.

24     Q.    Why does DPS want to reduce wait times and

25  in-office traffic in its field offices?



Page 223

1   of the Web page.

2       Q.   Okay.

3       A.   So they are in the process of adding that

4   language.

5       Q.   Okay.  Ms. Mackin also asked you about the

6   receipt page for online transactions; is that correct?

7   Do you recall discussing the receipt page here today?

8       A.   Right.

9       Q.   Okay.  So I understand there is some

10  information about voter registration with a link to the

11  Secretary of State's website on the receipt page,

12  correct?

13      A.   Correct.

14      Q.   Now, does the receipt page say anything about

15  changing addresses for voter registration purposes?

16      A.   No, it does not.

17      Q.   Okay.  You mentioned there were four pieces of

18  information that DPS verifies online to determine that

19  maybe the person filling out the form is who they say

20  they are; is that right?

21      A.   Correct.

22      Q.   Can you just remind me what those four pieces

23  of information are?

24      A.   Okay.  They're in the process authentication

25  request.



STRINGER: SHERI GIPSON

Page 224

1    Q.    Okay.

2    A.    And it is listed on page 1.

3    Q.    Okay.

4    A.    It's the DL/ID number, the audit number, the

5    last four digits of the social, and the date of birth.

6    Q.    Now, in terms of -- of information that's only

7    requested online and maybe not by other forms -- I'm

8    going to go through this.  So for a driver license

9    identification number, that would be requested on a

10   paper form as well; is that correct?

11   A.    Correct.

12   Q.    Okay.  What about an audit number, is that

13   requested on paper forms?

14   A.    No, it's not.

15   Q.    Okay.  What about the last four numbers of a

16   social security number, is that requested by DPS on

17   paper forms?

18   A.    The social security number is requested.

19   Q.    What about the date of birth, is that

20   requested?

21   A.    It is.

22   Q.    So the only bit of information that a customer

23   provides, in addition to information the customer

24   provides on paper forms, for purposes of online

25   transactions, is the audit number on the face of a



Page 228

```
 1   voter registration extract file, but it would be
 2   included in the daily update file.
 3       Q.   Okay.  So then the updated address information
 4   would make its way to the Secretary of State in the
 5   updated address file?
 6       A.   Correct.
 7       Q.   I'm sorry, in the daily update file?
 8       A.   Correct.
 9       Q.   And there's not a way to opt out aside from --
10   from checking "no" in that box; is that correct?  Well,
11   no, let me reask that question.  Actually, let me not
12   ask that question.  I'll just withdraw it.
13                   MS. SILHAN:  That's all I have for you.
14                   THE WITNESS:  Okay.
15                   MS. MACKIN:  We'll reserve our questions
16   for the time of trial.
17                   THE VIDEOGRAPHER:  This will conclude the
18   deposition --
19                   THE WITNESS:  Can I say one thing really
20   quick?
21                   THE VIDEOGRAPHER:  Oh, I'm sorry.
22                   THE WITNESS:  So I did locate information
23   regarding this form.  Do y'all --
24       Q.   (BY MS. SILHAN)  Okay.  This is Exhibit 9?
25       A.   Do y'all want that update?
```



Page 229

1   Q.   Yes.

2   A.   Okay.  So this was created by an assistant

3   manager for -- in preparation for legislation, and it is

4   similar to what I created with just numbers.  These were

5   numbers that had been requested in previous sessions,

6   and they just gathered data in order to be ready in case

7   they got a spur-of-the-moment request so they could

8   provide numbers.  The reason that -- that they provided

9   it was because it had voter registration numbers on it.

10  Q.   Okay.  You said created by an assistant

11  manager, do you know who that was?

12  A.   I do.  Abed Nader, A-B-E-D, N-A-D-E-R.

13  Q.   Do you know when that was created?

14  A.   They did not give me the date.  Based on this,

15  I would say it was probably -- since it gives FY15 -- I

16  would say they probably created it sometime in '16 in

17  preparation for the FY17 session.

18  Q.   Okay.  But as far as -- as you, the

19  department, know, this is not any kind of regularly kept

20  report?

21  A.   No, it is not a regular report.  Many of the

22  areas, in anticipation of a session, try and gather the

23  number because it requires IT runs and things like that.

24  So many of the sections create these types of

25  informational sheets that they can use on a moment's



Case 5:16-cv-00257-OLG Document 154-12 Filed 01/28/20 Page 138 of 191
Case 5:16-cv-00257-OLG Document 154-12 Filed 11/22/17 Page 138 of 191
STRINGER: SHERI GIPSON

Page 236

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
2                      SAN ANTONIO DIVISION

3    JARROD STRINGER, ET AL.,   *
                                *
4        Plaintiffs,            *
                                *
5    VS.                        * CIVIL ACTION
                                *
6    ROLANDO PABLOS, IN HIS     * NO.: 5:16-cv-00257-OLG
     OFFICIAL CAPACITY AS THE   *
7    TEXAS SECRETARY OF STATE   *
     and STEVEN C. MCCRAW, IN   *
8    HIS OFFICIAL CAPACITY AS   *
     THE DIRECTOR OF THE TEXAS  *
9    DEPARTMENT OF PUBLIC       *
     SAFETY,                    *
10                              *
         Defendants.            *
11

12

13               REPORTER'S CERTIFICATION

14            DEPOSITION OF SHERI GIPSON

15                  MARCH 7TH, 2017

16

17        I, Tammy Staggs, Certified Shorthand Reporter

18   in and for the State of Texas, hereby certify to the

19   following:

20        That the witness, SHERI GIPSON, was duly sworn

21   by the officer and that the transcript of the oral

22   deposition is a true record of the testimony given by

23   the witness;

24        That the original deposition was delivered to

25   Ms. Caitlyn Silhan.
```



Page 237

1      That a copy of this certificate was served on

2  all parties and/or the witness shown herein on

3  _____, 20____.

4      I further certify pursuant to FRCP Rule

5  30(f)(1) that the signature of the deponent:

6          _X_ was requested by the deponent or a

7  party before the completion of the deposition and that

8  the signature is to be before any notary public and

9  returned within 30 days (or ____ days per agreement of

10  counsel) from date of receipt of the transcript.  If

11  returned, the attached Changes and Signature Page

12  contains any changes and the reasons therefore:

13          __ was not requested by the deponent or a

14  party before the completion of the deposition.

15      That the amount of time used by each party at

16  the deposition is as follows:

17          Ms. Cassandra Champion - (5:37)

18          Ms. Beth Stevens - (0:23)

19          Ms. Caitlyn Elizabeth Silhan - (0:15)

20          Ms. Anna M. Mackin - (0:08)

21          Mr. Esteban Soto - (0:00)

22          Ms. Kathleen T. Murphy - (0:00)

23

24

25



Page 238

1      That pursuant to information given to the

2  deposition officer at the time said testimony was taken,

3  the following includes counsel for all parties of

4  record:

5          FOR THE PLAINTIFF, JARROD STRINGER:

6          Cassandra Champion, Esq.

7

8          FOR THE PLAINTIFF, JOHN FRITZ:

9          Beth Stevens, Esq.

10

11         FOR THE PLAINTIFF, BENJAMIN

12         HERNANDEZ:

13         Caitlyn Elizabeth Silhan, Esq.

14

15         FOR THE DEFENDANTS:

16         Anna M. Mackin, Esq.

17         Esteban Soto, Esq.

18         Kathleen T. Murphy, Esq.

19

20

21

22

23      That $_____ is the deposition officer's

24  charges to the Plaintiffs for preparing the original

25  deposition transcript and any copies of exhibits;



Case 5:16-cv-00257-OLG Document 154-12 Filed 01/28/20 Page 141 of 191
Case 5:16-cv-00257-OLG Document 54-12 Filed 11/22/17 Page 56 of 57
STRINGER: SHERI GIPSON

Page 239

1            I further certify that I am neither counsel

2     for, related to, nor employed by any of the parties or

3     attorneys in the action in which this proceeding was

4     taken, and further that I am not financially or

5     otherwise interested in the outcome of the action.

6            Certified to by me this _____ day of

7     _____, 20_____.

8

9                    

10    _____

11    Tammy Lea Staggs
      CSR 7496

12    Expiration Date: 12/31/2017
      Firm No. Dallas: 69

13    1.888.656.DEPO

14

15

16

17

18

19

20

21

22

23

24

25

Case 5:16-cv-00857-OLG Document 154-12 Filed 01/28/20 Page 142 of 191
Case 5:16-cv-00257-OLG Document 54-12 Filed 12/22/17 Page 57 of 59
STRINGER: SHERI GIPSON

Page 240

```
 1   COUNTY OF _____)

 2   STATE OF TEXAS)

 3              I hereby certify that the witness was notified

 4   on _____ that the witness has 30 days

 5   or (_____ days per agreement of counsel) after being

 6   notified by the officer that the transcript is available

 7   for review by the witness and if there are changes in

 8   the form or substance to be made, then the witness shall

 9   sign a statement reciting such changes and the reasons

10   given by the witness for making them;

11              That the witness' signature was/was not

12   returned as of _____, 20_____.

13              Subscribed and sworn to on this, the _____ day

14   of _____, 20_____.

15

16

17              _____

18              Tammy Lea Staggs
                CSR   7496
19              Expiration Date:  12/31/2017
                Firm No. Dallas: 69
20              1.888.656.DEPO

21

22

23

24

25
```



Plaintiffs' Designations

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JARROD STRINGER, et al.,        )
                                )
      Plaintiffs,               )
                                )
vs.                             )CIVIL NO. 5:16-cv-00257
                                )
ROLANDO PABLOS, IN HIS          )
OFFICIAL CAPACITY AS THE        )
TEXAS SECRETARY OF STATE,       )
AND STEVEN C. McCRAW, IN        )
HIS OFFICIAL CAPACITY AS        )
THE DIRECTOR OF THE TEXAS       )
DEPARTMENT OF PUBLIC            )
SAFETY,                         )
                                )
      Defendants.               )


ORAL/VIDEOTAPED DEPOSITION OF

EITAN HERSH

Tuesday, May 23, 2017


        DEPOSITION OF EITAN HERSH, produced as a

witness at the instance of the Defendants, and duly

sworn, was taken in the above-styled and numbered cause

on Tuesday, May 23, 2017, from 9:00 a.m. to 1:49 p.m.,

before Debbie D. Cunningham, CSR, in and for the State

of Texas, reported via Machine Shorthand at of Office of

the Attorney General of Texas, 300 West 15th Street, 9th

Floor, Austin, Texas 78701, pursuant to the Federal

Rules of Civil Procedure.

--oOo--

C-10

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 144 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/22/17 Page 2 of 16
Eitan Hersh - 5/23/2017

2

```
 1                        APPEARANCES

 2

 3   FOR PLAINTIFFS:

 4        WATERS & KRAUS, LLP
          3141 Hood Street, Suite 700
 5        Dallas, Texas  75219
          (T) 214.357.6244
 6        (F) 214.357.7252

 7        By:  Peter A. Kraus, Esq.
               kraus@waterskraus.com
 8
                    AND
 9
          TEXAS CIVIL RIGHTS PROJECT
10        1405 Montopolis Drive
          Austin, Texas  78741
11        (T) 512.474.5073
          (F) 512.853.0374
12
          By:  Cassandra Champion, Esq.
13             champion@texascivilrightsproject.org

14
     FOR DEFENDANTS:
15
          OFFICE OF THE ATTORNEY GENERAL OF TEXAS
16        General Litigation Division
          P.O. Box 12548
17        Austin, Texas  78711-2548
          (T) 512.475.4054
18        (F) 512.320.0667

19        By:  Esteban Soto, Esq.
               esteban.soto@oag.texas.gov
20                    AND
               Rola Daaboul, Esq.
21

22   VIDEOGRAPHER:  Bill Burns

23

24   ALSO PRESENT:  Beth Stevens
                    Lindsey Aston
25                  Jill Bliss
```

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 145 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/22/17 Page 5 of 16
Eitan Hersh - 5/23/2017

3

1                            INDEX

2    APPEARANCES                                     2

3

4    EXAMINATION OF EITAN HERSH:

5     BY MR. SOTO                                    4

6

7

8     REPORTER'S CERTIFICATION                      138

9

10

11                       EXHIBIT INDEX

12    Exhibit Number        Description              Page

13     Exhibit 1     Deposition Notice               4

14     Exhibit 2     LexisNexis document            14

15     Exhibit 3     Curriculum Vitae               19

16     Exhibit 4     4/15/17 Professor Eitan D. Hersh    36
                     expert report entitled Report on
17                   Updating Voter Registration
                     Records with Data from Online
18                   Motor Vehicle Transactions

19     Exhibit 5     4/28/17 Dr. Eitan D. Hersh          38
                     invoice addressed to
20                   Attorney Peter Kraus

21     Exhibit 6     Texas Election Code, Chapter 20    58

22     Exhibit 7     NVRA excerpt                       53

23     Exhibit 8     Plaintiffs' Original Complaint     96

24     Exhibit 9     Texas Election Code, Chapter 15   106

25

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 146 of 191
Case 5:16-cv-00025-OLG Document 94-13 Filed 11/22/17 Page 140 of 191
Eitan Hersh - 5/23/2017

34

1   their voter registration information when they change

2   address or renew a license online; and there is a

3   disagreement between the State of Texas and the

4   Plaintiffs about whether Texas ought to do that, as

5   other states do, around Federal law.

6        Q.   **And how did you become involved in this case?**

7        A.   Someone who knew me and my work on voter

8   registration connected me with the Plaintiffs.

9        Q.   **When did you first learn about this case?**

10       A.   I don't remember.  Months ago definitely.

11       Q.   **Months ago.  Okay.**

12            **And can you summarize the opinions you've**

13   **reached in this case?**

14       A.   Sure.  My goal is to try to help solve a

15   mystery, which is:  Why does Texas do what it does in

16   this particular context?  And there could be a number of

17   reasons why Texas doesn't update or allow individuals to

18   update their voter registration data when they perform a

19   transaction online.

20            And my opinion is that there are no

21   obvious substantial technical reasons why Texas does not

22   do that or financial situations why Texas does not do

23   that, but the -- what the decision boils down to, the

24   mystery is solved, because it's not a technical or a

25   financial barrier but an interpretation of the law.  In

Case 5:16-cv-00257-OLG Document 154-3 Filed 01/28/20 Page 147 of 191
Case 5:16-cv-00257-OLG Document 94-3 Filed 11/22/17 Page 7 of 16
Eitan Hersh - 5/23/2017

35

1    some ways I think my goal here or what I accomplished is

2    helped to set aside what is a plausible but not relevant

3    consideration from the more relevant considerations.

4         Q.   Do you know if the Defendants in this case

5    have ever argued that there's a technological barrier to

6    doing what the Plaintiffs asked us to do?

7         A.   Yes.

8         Q.   What's your basis for understanding that?

9         A.   So my understanding in an early report from, I

10   believe, the Texas Election Director, there was a claim

11   that Texas didn't have the capacity to do this, that it

12   would cost a lot of money to do it; and, to me, that

13   sounded like, oh, there's a technical problem.  There's

14   a technical reason.

15        Q.   I understand that may be a financial reason,

16   but you inferred from that -- who's the Texas Election

17   Director?

18        A.   I believe Mr. Ingram.

19        Q.   Mr. Ingram.  And he works for DPS; is that

20   right?

21        A.   I believe he works for the Secretary of State.

22        Q.   I'm sorry.  The Secretary of State.

23             And Mr. Ingram has testified or stated,

24   you're asserting, that there's financial reasons or

25   financial costs associated with this, correct?

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 148 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/22/17 Page 48 of 161
Eitan Hersh - 5/23/2017

109

1  looking for information, data, depositions that could

2  help solve this puzzle of what the justification for

3  Texas' unusual behavior here is; and so it was an

4  over-time development, learning, to reach this

5  conclusion.

6      Q.  So you authored this report on April 15th;

7  that's correct, right.

8      A.  I think I filed it with the court, yeah, over

9  the previous few weeks.

10     Q.  And it was finalized on April 15th.

11     A.  Right.

12     Q.  I'm just trying to get a sense of how long

13  before that you actually reached your conclusions.  Was

14  it in March, February, January?  Do you have an

15  estimate, or do you recall what month it was that you

16  reached the conclusions?

17     A.  No.  I would guess it was, you know, a

18  slow-and-steady process of research; and that research

19  in this case was mostly reviewing the depositions.  So

20  the picture became clearer over time.

21     Q.  So I think most of the depositions in this

22  case happened this year.  So would it be fair to say

23  sometime this year?

24     A.  Yes, that makes sense.

25     Q.  So you said earlier -- and correct me if I'm

Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/20 Page 149 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/22/17 Page 40 of 16
Eitan Hersh - 5/23/2017

110

1    **wrong -- that one of your opinions in this case is that**

2    **there are no -- you might have said "significant" --**

3    **barrier, financial barriers, to implementing the system**

4    **that Plaintiffs are asking the Court to enjoin through a**

5    **permanent injunction.  Is that fair?**

6         A.    Yeah.  In fact, you know, I think a common-

7    sense interpretation of what Texas is doing now versus

8    what this would look like would lead anyone to conclude

9    it would be a massive cost savings.

10         **Q.    So what would this exactly look like?**

11         A.    This alternative procedure?

12         **Q.    Yes.**

13         A.    To briefly summarize it, Texas NIC, through

14    its operation of Texas.gov, has the ability and in some

15    ways does already track information about a voter who

16    wants to update their registration information.  They

17    can share that information straightforwardly with DPS;

18    and, in fact, their representative, who provided a

19    deposition, said that is something that they could do.

20              DPS could then transfer that information

21    to the Secretary of State's office, just as it transmits

22    information from in-person transactions or mail

23    transactions.  And, again, DPS has confirmed that if

24    they had discussions, if that was the conclusion that

25    they reached, they could easily do that; and then the

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 150 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/17/2017 Page 90 of 16
Eitan Hersh - 5/23/2017

111

 1    Secretary of State's Office would do what it does with

 2    the in-person transactions as well, providing them to

 3    Counties and updating individuals' voter registration

 4    records.  In the process of doing that, of course, it

 5    would transmit, just as it does now for mail and in-

 6    person transactions, the previously-recorded digital

 7    signature of the voter because everyone who is renewing

 8    or changing their address online has a digital signature

 9    stored at the DPS.

10        Q.    So your opinion is if this system was

11    implemented, Texas would -- I think you said it would

12    achieve financial savings?

13        A.    Sure, statewide.

14        Q.    What's your estimate of the amount of

15    financial savings Texas would achieve in the first five

16    years of this implementation?

17        A.    Again, this actually brings back our initial

18    conversation about why it would be important to get all

19    the information about exactly how people are using

20    online or not; but, you know, the analogy that I think

21    of is:  If I had a class that I was teaching at a

22    university with a hundred thousand students -- hopefully

23    I'll never have to face such a class -- and the students

24    were filling out some kind of Scantron tests, what would

25    be the cost savings of me, one by one, entering

Case 5:16-cv-00257-OLG Document 154-1 Filed 01/28/20 Page 151 of 191
Case 5:16-cv-00257-OLG Document 94-13 Filed 11/22/17 Page 9 of 16
Eitan Hersh - 5/23/2017

112

1    information from that test versus running it through a

2    Scantron machine.  And suppose I already had a Scantron

3    machine, which in this parallel example, Texas already

4    has a Scantron machine, right?

5                So you would have to estimate the costs

6    of what does it cost for Texas or the Counties to key in

7    individually voter registration applications and the

8    errors associated with that, dealing with those, and

9    having the paper routine that they do now for people who

10   transmit it online, do an online DPS transaction; and it

11   then goes through this external, non-simultaneous

12   process versus flow the information through the current

13   daily export that DPS already does.

14        Q.   So you don't have that kind of detailed data

15   to make an estimate over what the estimated financial

16   savings would be over a certain period of time; is that

17   correct?

18        A.   Right.  With a few pieces of information, I

19   think we could make that estimate.  I don't have it

20   right now.

21        Q.   At least with any degree of scientific

22   certainty, right?

23        A.   That's right.  I would want to know how many

24   people are doing this, how long it takes a Texas

25   elections clerk to key in information, how much they get

Case 5:16-cv-00857-OLG  Document 154-13  Filed 01/28/20  Page 152 of 181
Case 5:16-cv-00857-OLG  Document 54-13  Filed 11/29/17  Page 18 of 181
Eitan Hersh - 5/23/2017

114

1    much I'd spend on each of those estimates; but I don't

2    have to retrieve more information than common sense to

3    know that it is cheaper for me to run those 100,000

4    tests through a Scantron machine than for me to grade

5    each one individually.

6         **Q.   We're not talking about a Scantron machine**

7    **here, correct?**

8         A.   It's just an equivalent efficiency gain.  It

9    just seems like an obvious efficiency gain is what I'm

10   trying to say.

11        **Q.   Did anyone help you in coming to this**

12   **conclusion in your report, any of your colleagues at**

13   **Yale?**

14        A.   No, I didn't talk to anyone about this.

15        **Q.   Did you do any sort of calculations to come to**

16   **this conclusion?**

17        A.   No.  Again, I kind of treat this as, like,

18   kind of a conventional wisdom, common-knowledge

19   expectation of what technology can do for efficiency.

20        **Q.   Is there any particular source you relied on**

21   **in coming to this conclusion other than your common**

22   **sense and Mr. Ingram's deposition answers?**

23        A.   I don't think so -- I will -- sorry.  Let me

24   amend that.  You know, I think that as someone deeply

25   knowledgeable about voter registration systems what is

Case 5:16-cv-00857-OLG Document 154-13 Filed 01/28/20 Page 153 of 181
Case 5:10-cv-00025-OLG Document 154-13 Filed 11/23/07 Page 153 of 181
Eitan Hersh - 5/23/2017

115

1  really evident is that when you have people filling out

2  voter registration applications by hand; then you have

3  election officers keying in information one at a time,

4  you generate errors, lots of errors.  There's tons of

5  small typo kind of errors on voter registration

6  applications that cause problems down the line.  They

7  cause problems with people not being authenticated

8  properly at the polls; and those problems are, in large

9  part, the result of hand-keying work.  And so I think

10 one area of expertise that I have that brings to bear on

11 this question is:  How much of a problem is it when

12 election officials are doing a lot of stuff by hand and

13 how much better is it when they don't?  And I think we

14 see that here in this situation.

15      Q.   You testified earlier Texas is not the only

16 state that has some form of driver's license renewal/

17 change-of-address process online, correct?

18      A.   That's right.

19      Q.   There's 38 other states that have some form

20 of online driver's license transactions, either

21 currently -- currently implemented or are being

22 implemented?

23      A.   That wasn't referring to driver's license

24 transactions.  That was referring to online voter

25 registration.

Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/207 Page 154 of 181
Case 5:16-cv-00257-OLG Document 154-13 Filed 11/22/207 Page 154 of 181
Eitan Hersh - 5/23/2017

121

1    Q.    So going to Paragraph 27, I want to talk about

2    the portion -- I think it's in sentence three -- where

3    you emphasize a previous-obtained digital signature; but

4    am I correct when I say that that previously-obtained

5    digital signature is not a physical signature given by

6    the voter with the voter application?

7        A.    It's given by the voter under previous

8    interaction that they've had with DPS.

9        Q.    Is it a physical signature?

10       A.    I think the way that you're describing

11   physical signature, it is.  It's a digitally-captured

12   physical signature.

13              And just to reiterate, this is the

14   paragraph I made that revision about, the renewal versus

15   change of address.

16       Q.    Fair enough.

17              So going to 29, in the first sentence you

18   reference a policy decision.  I think I've already asked

19   you about policy decisions.  What do you mean by a

20   policy decision is this context?

21       A.    In this context, I mean the policy -- hold on.

22   Hold, please.

23              In this case, I mean the policy decision

24   to not accept -- to not automate this process between

25   online DPS transactions and voter registration updates.

Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/20 Page 155 of 181
Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/20 Page 155 of 181
Eitan Hersh - 5/23/2017

122

1   And I reference it relation to other policy decisions,

2   for example, the policy decision about how Texas deals

3   with these mail change-of-address forms, you know, when

4   asked why the State does this; why does the State take

5   the previously-recorded digital signature in case of the

6   mail change-of-address forms.  That was a policy

7   decision.  That was a decision that was made in

8   conjunction with lawyers about how they were going to do

9   that particular thing.  And that's how Texas was

10  interpreting what to do in that situation and in this

11  other situation an online update Texas is interpreting

12  what their doing as something else; and, you know, as

13  I'm pointing out in this paragraph, different in this

14  context than in other similar context.

15       **Q.   So this will go back to your opening paragraph**

16  **where you talk about policy decisions:  Who specifically**

17  **are you alleging is making that policy decision in**

18  **relation to the allegations in this case?**

19       A.   I would say the Department of Public Safety.

20  In there depositions they say these are conversations

21  that happened in conjunction with the Secretary of

22  State, actually in conjunction with Texas NIC; but,

23  primarily, it's the decision, it seems to me, of DPS as

24  they've made other similar decisions about what to do in

25  this context.  For example, you know, when asked why

Case 5:16-cv-00257-OLG   Document 154-13   Filed 01/28/20   Page 156 of 181
Case 5:16-cv-00257-OLG   Document 154-13   Filed 01/28/20   Page 156 of 181
Eitan Hersh - 5/23/2017

125

1   Motion to Dismiss.

2       Q.   So let me see if I have this straight.  You

3   are relying on Judge Garcia's order to reach an -- are

4   you relying on that language in any of your opinion?

5       A.   I wouldn't say I'm relying on it, no.  Let me

6   just re-read what I wrote here.

7            Yes, I think that the quote from

8   Judge Garcia is merely there to reinforce the view that

9   I have come to independently about what the signature is

10  for and what it's not for.

11      Q.   Your last sentence reads, "Indeed, the Texas

12  Secretary of State does not make use of an additional

13  signature in the case of mail forms or in-county online

14  forms."

15           Did I read that correctly?

16      A.   Correct.

17      Q.   And you don't provide a cite to this specific

18  sentence.  Can you tell me what the basis for this

19  contention is?

20      A.   Sure.  In the mail forms, I believe it was --

21  well, the question about these mail forms was asked in

22  multiple depositions; but I think it was in

23  Mr. Crawford's deposition where it was confirmed not

24  only that old signatures, previously-recorded signatures

25  are being transferred to the Secretary of State for

Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/20 Page 157 of 181
Case 5:16-cv-00257-OLG Document 154-13 Filed 11/22/19 Page 157 of 181
Eitan Hersh - 5/23/2017

126

1    these mail forms.  Not only that, but the Secretary of

2    State's Office would not really be able to tell the

3    difference between a digitally-recorded previous

4    signature and one that was new.

5        Q.    And what is that contention based on?

6        A.    Again, Mr. Crawford's deposition.

7        Q.    Any other deposition or any other source?

8        A.    I think that's where it was most clearly

9    articulated and asked and answered, but I do recall that

10   this question about "what's going on with these mail

11   forms" has come up in multiple depositions.

12       Q.    Any reason why you didn't provide a cite for

13   that contention?

14       A.    I think only because I'd already provided a

15   cite to it earlier in the report.

16       Q.    To that specific contention?

17       A.    I believe so, yeah.

18       Q.    Okay.  Can you tell me where exactly it is?

19       A.    Sure.

20             So I would point you to the Paragraph 27,

21   again, the end of page 12, "This process is described in

22   depositions by DPS's John Crawford and Sheri Gipson,

23   also acknowledged by Betsy Schonoff, the Voter

24   Registration Manager, and the Secretary of State."

25       Q.    I'm sorry.  What paragraph again?

Case 5:16-cv-00257-OLG Document 154-13 Filed 01/28/20 Page 158 of 181
Case 5:16-cv-00257-OLG Document 54-13 Filed 11/22/17 Page 18 of 18
Eitan Hersh - 5/23/2017

138

```
 1   STATE OF TEXAS)

 2                 REPORTER'S CERTIFICATION

 3            I, DEBBIE D. CUNNINGHAM, CSR, hereby

 4   certify that the witness was duly sworn and that this

 5   transcript is a true record of the testimony given by

 6   the witness.

 7            I further certify that I am neither

 8   counsel for, related to, nor employed by any of the

 9   parties or attorneys in the action in which this

10   proceeding was taken.  Further, I am not a relative or

11   employee of any attorney of record in this cause, nor am

12   I financially or otherwise interested in the outcome of

13   the action.

14            Subscribed and sworn to by me this day,

15   June 7, 2017.

16

17

18

19            _____
              Debbie D. Cunningham, CSR
20            Texas CSR 2065
              Expiration:  12/31/2018
21            INTEGRITY LEGAL SUPPORT SOLUTIONS
              3100 West Slaughter Lane, Suite 101
22            Austin, Texas 78748
              www.integrity-texas.com
23            512-320-8690; FIRM # 528

24

25
```

Page 132

1 allows them to keep the original registration

2 applications on an optical disc or other computer

3 storage medium approved by the Secretary of State, so

4 they can definitely keep them electronically.

5     Q.   For the -- the forms that the Secretary of

6 State's Office gets directly, do you just funnel those

7 out to the proper voter registration agency, or do you

8 send them to them via TEAM?

9     A.   No, no.  We handle the paper applications.  We

10 open them up, we sort them by county, and we mail them

11 out to the counties.

12     Q.   I want to get a little bit of a better

13 understanding of TEAM.  Is TEAM -- is TEAM also an

14 application that's used for the elections themselves?

15     A.   For the -- for the counties that use it as an

16 online voter registration tool, they also use the

17 election management component, yes.

18     Q.   Okay.  And that's the distinction between

19 online counties and offline counties.  Is that right?

20     A.   That's right.

21     Q.   Okay.  Besides for the election itself and DPS

22 applications coming through TEAM, what else does TEAM --

23 what else is it used for?

24     A.   What was the question again?

25     Q.   Besides the election itself that -- so for the

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:16-cv-00257-OLG |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § | |

## SUPPLEMENTAL DECLARATION OF GRACE CHIMENE

My name is Grace Chimene. I am over the age of 18 and capable of making this declaration. The

facts stated herein are true and within my personal knowledge.

1. I am the President of the League of Women Voters of Texas.

2. Attached hereto as Exhibit 1 is a true and correct copy of slides from a public slideshow presentation given by the League of Women Voters of Texas Hays County titled "Ready To Vote."

3. I have personally verified that Emily Eby is a current member of the League of Women Voters of Texas.

4. Emily Eby moved from Travis County to Harris County in November of 2019.

5. Emily Eby used the DPS online system in December of 2019 to change the address on her driver's license.

1

6. Emily Eby's online driver's license change of address did not serve to register her to vote in Harris County.

7. Emily Eby remains unregistered to vote in Harris County as of today's date.

8. The League's voter registration, voter education, and get-out-the-vote activities increase significantly in weeks leading up to registration deadlines and voting periods in local, state, and federal elections. This includes the May 2020 Primary Runoff Election, where we expect there will be runoffs for federal races.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 28, 2020.

Grace Chimene

# Ready To Vote

## Hays County Election 2019



# Troubleshooting

1. Poll worker can't find your registration

2. System shows you already voted

3. <u>In Texas there is no online voting!</u>

4. <u>There is no connection between DPS and voter registration!</u>

5. What if you don't have the specified IDs

6. Your identification is in question

7. You don't remember how you wanted to vote

8. Go to Vote411.org for complete information
   - at the time of early voting, put your address in
   - make your candidate or issue choice
   - print out your ballot and take it with you

9. Other issues???



**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:16-cv-00257-OLG |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § | |

## DECLARATION OF JOAQUIN GONZALEZ

My name is Joaquin Gonzalez. I am over the age of 18 and capable of making this declaration.

The facts stated herein are true and within my personal knowledge.

1. I am a voting rights attorney at the Texas Civil Rights Project.

2. Attached hereto as Exhibit 1 is a true and correct copy of a Texas Public Information Act Request filed by the Texas Civil Rights project on December 13, 2019 with the Harris County Election Administrator's office, seeking, *inter alia*, "documents listing those individuals who cast provisional ballots in the 2018 general election including the name, address, precinct, the reason for the provisional vote, the method of voting, and whether the provisional vote was accepted or rejected.

3. Attached hereto as Exhibit 2 is a usb drive containing a true and correct copy of images of provisional ballot affidavits from provisional ballots cast in Harris County during

1

the 2018 General Election sent by the Harris County Election Administrator's Office in response to the Texas Public Information Act request described in ¶ 2 *supra*.

4.  Attached hereto as Exhibit 3 is a usb drive containing a true and correct copy of a spreadsheet created by myself and other Texas Civil Rights Project employees that catalogs whether each provisional ballot cast in Harris County was accepted or rejected and the reason(s) why. The source of information for this spreadsheet was the provisional ballot records referred to in ¶ 3 *supra* and attached hereto as Exhibit 2. The spreadsheet reflects that there are 106 total unique provisional ballots containing annotations by County election workers indicating that the individual voting provisionally believed they had registered through DPS online.

5.  Attached hereto as Exhibit 4 is a true and correct copy of the Texas Secretary of State's website showing total voter turnout in Harris County for the 2018 General Election. The site, whose url is https://elections.sos.state.tx.us/elchist331_race832.htm, was accessed by me on January 26, 2020. It reflects that 1,207,754 individuals in Harris County voted in the race for United States Senator in the 2018 General Election.

6.  Attached hereto as Exhibit 5 is a true and correct copy of the Texas Secretary of State's website showing total voter turnout across the state of Texas for the 2018 General Election. The site, whose url is https://elections.sos.state.tx.us/elchist331_state.htm, was accessed by me on January 26, 2020. It reflects that 8,371,655 individuals statewide voted in the race for United States Senator in the 2018 General Election.

7.  Attached hereto as Exhibit 6 is a true and correct copy of a spreadsheet created by me projecting the number of provisional ballots cast statewide as a result of individuals who mistakenly believed they registered to vote or updated their voter registrations

2

through DPS's online driver's license system. It projects that number at 735. This projection was produced by taking the total number of provisional ballots cast due to DPS-online confusion in Harris County (see ¶ 4 *supra*), dividing that number by the total number of voters in Harris County in the 2018 race for United States Senate, then multiplying the resulting number by the total number of statewide voters in the 2018 for United States Senate.

8. Attached hereto as Exhibit 7 is a true and correct copy of the voter registration status of Plaintiff John Harms as ascertained on the Secretary of State's website on January 25, 2020.

9. Attached hereto as Exhibit 8 is a true and correct copy of the voter registration status of Plaintiff Nayeli Gomez as ascertained on the Secretary of State's website on January 27, 2020.

10. Attached hereto as Exhibit 9 is a true and correct copy of the voter registration status of Plaintiff Jarrod Stringer as ascertained on the Secretary of State's website on January 27, 2020.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 27, 2020.

Joaquin Gonzalez

1



1412 Main St., #608
Dallas, TX 75202
972-333-9200
texascivilrightsproject.org

December 13, 2018

Stan Stanart
Elections Administrator
Harris County
1001 Preston, 4th Flr, Rm. 439
Houston, TX 77002
Ph: (713) 755-5792
county.clerk@cco.hctx.net                    *via email:* county.clerk@cco.hctx.net

Re: Public Information Request regarding provisional ballots

To the Officer for Public Information:

Pursuant to Section 552.221 of the Texas Government Code, I respectfully ask for the items below. If these items are available in electronic form, I request to receive responsive documents electronically in order to eliminate paper waste and costs of copying.

1. Any and all documents listing those individuals who cast provisional ballots in the 2018 general election including the name, address, precinct, the reason for the provisional vote, the method of voting, and whether the provisional vote was accepted or rejected.
2. Any and all documents reflecting the total number of provisional ballots issued and counted in the 2018 general election. If you have documents that directly compare the provisional ballots issued for each of the last two and/or three elections, please provide those as well.

If you have information in an Excel spreadsheet or similar format, we would like to receive the information in that form.

The terms "records" and "documents" each includes any item whether printed or recorded or reproduced by any other electronic or mechanical process or written or produced by hand: agreements, communications, reports, charges, complaints, correspondence, telegrams, memoranda, electronic mail, applications, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, schedules, charts, videos, audio or audio recordings, graphs, worksheets, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports or records of investigations or negotiations, opinions or reports of consultants, bills, statements, invoices, and all other writings of whatever nature, photographs, motion picture film, brochures, pamphlets, advertisements, circulars, press releases, drafts, letters, tape recordings, disks, data sheets or data processing cards, any marginal comments appearing on any document or thing, or any other written, recorded, transcribed, filed or graphic master, however produced or reproduced, to which the County, its agents, and representatives have in its possession or to which it has access.

The terms "and," "or," "any," and "all" shall be construed conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope.

1



1412 Main St., #608
Dallas, TX 75202
972-333-9200
texascivilrightsproject.org

I write this request on behalf of the Texas Civil Rights Project. We are a 501(c)(3) nonprofit, and we are requesting this information for the public good. We will use the requested information without charge to anyone.   Accordingly, I respectfully ask, pursuant to Section 552.267 of the Texas Government Code, that you waive any fees associated with this records request.  If you elect not to waive the fees and the cost of copying exceeds $25, please advise me of the actual costs before copying the requested records.

Please send all correspondence and/or responsive documents to me by email at chris@texascivilrightsproject.org.

Thank you for responding to this request within ten (10) business days.

Sincerely,

Chris Rainbolt

2



3



4

# Office of the Secretary of State

# 2018 General Election

### 11/6/2018

U. S. Senator -

| ... | Ted Cruz | Beto O'Rourke | Neal M. Dikeman | ... | ... | ... |
|-----|----------|---------------|-----------------|-----|-----|-----|
| ... | | | | Total | Total | ... |
| County | REP | DEM | LIB | Votes | Voters | TurnOut |
| ALL COUNTIES | 4,260,553 | 4,045,632 | 65,470 | 8,371,655 | 15,793,257 | 53.01% |
| ANDERSON | 11,335 | 3,307 | 94 | 14,736 | 28,487 | 51.73% |
| ANDREWS | 3,338 | 776 | 17 | 4,131 | 9,574 | 43.15% |
| ANGELINA | 19,166 | 7,130 | 153 | 26,449 | 51,751 | 51.11% |
| ARANSAS | 6,677 | 2,247 | 56 | 8,980 | 17,308 | 51.88% |
| ARCHER | 3,208 | 376 | 18 | 3,602 | 6,317 | 57.02% |
| ARMSTRONG | 819 | 74 | 6 | 899 | 1,428 | 62.96% |
| ATASCOSA | 7,753 | 4,332 | 119 | 12,204 | 27,338 | 44.64% |
| AUSTIN | 8,722 | 2,241 | 84 | 11,047 | 19,406 | 56.93% |
| BAILEY | 1,204 | 405 | 7 | 1,616 | 3,727 | 43.36% |
| BANDERA | 7,643 | 1,865 | 76 | 9,584 | 15,869 | 60.39% |
| BASTROP | 15,067 | 12,082 | 312 | 27,461 | 47,438 | 57.89% |
| BAYLOR | 1,070 | 156 | 9 | 1,235 | 2,365 | 52.22% |
| BEE | 4,342 | 2,811 | 64 | 7,217 | 15,883 | 45.44% |
| BELL | 47,437 | 38,417 | 723 | 86,577 | 195,760 | 44.23% |
| BEXAR | 217,600 | 326,946 | 5,024 | 549,570 | 1,098,257 | 50.04% |
| BLANCO | 4,181 | 1,570 | 57 | 5,808 | 8,504 | 68.30% |
| BORDEN | 320 | 22 | 1 | 343 | 488 | 70.29% |
| BOSQUE | 5,718 | 1,374 | 63 | 7,155 | 12,209 | 58.60% |
| BOWIE | 20,157 | 7,982 | 182 | 28,321 | 59,618 | 47.50% |
| BRAZORIA | 65,693 | 45,228 | 832 | 111,753 | 207,446 | 53.87% |
| BRAZOS | 35,971 | 27,876 | 640 | 64,487 | 114,377 | 56.38% |
| BREWSTER | 1,879 | 2,147 | 60 | 4,086 | 7,292 | 56.03% |
| BRISCOE | 553 | 69 | 2 | 624 | 1,084 | 57.56% |
| BROOKS | 543 | 1,376 | 4 | 1,923 | 5,843 | 32.91% |
| BROWN | 10,391 | 1,670 | 71 | 12,132 | 23,368 | 51.92% |
| BURLESON | 5,079 | 1,427 | 45 | 6,551 | 11,782 | 55.60% |
| BURNET | 13,859 | 4,444 | 187 | 18,490 | 31,072 | 59.51% |

| | | | | | | |
|---|---|---|---|---|---|---|
| CALDWELL | 6,147 | 5,227 | 107 | 11,481 | 23,777 | 48.29% |
| CALHOUN | 4,198 | 1,874 | 47 | 6,119 | 12,835 | 47.67% |
| CALLAHAN | 4,373 | 610 | 40 | 5,023 | 9,337 | 53.80% |
| CAMERON | 28,574 | 48,770 | 568 | 77,912 | 206,966 | 37.64% |
| CAMP | 2,749 | 1,119 | 24 | 3,892 | 7,648 | 50.89% |
| CARSON | 2,192 | 245 | 22 | 2,459 | 4,263 | 57.68% |
| CASS | 8,148 | 2,024 | 45 | 10,217 | 20,119 | 50.78% |
| CASTRO | 1,219 | 394 | 10 | 1,623 | 3,842 | 42.24% |
| CHAMBERS | 12,146 | 2,926 | 109 | 15,181 | 28,063 | 54.10% |
| CHEROKEE | 11,631 | 3,207 | 103 | 14,941 | 27,949 | 53.46% |
| CHILDRESS | 1,526 | 236 | 8 | 1,770 | 3,559 | 49.73% |
| CLAY | 3,710 | 547 | 31 | 4,288 | 7,655 | 56.02% |
| COCHRAN | 541 | 140 | 5 | 686 | 1,729 | 39.68% |
| COKE | 1,150 | 137 | 10 | 1,297 | 2,285 | 56.76% |
| COLEMAN | 2,759 | 351 | 16 | 3,126 | 5,912 | 52.88% |
| COLLIN | 187,425 | 165,614 | 2,927 | 355,966 | 579,893 | 61.38% |
| COLLINGSWORTH | 810 | 113 | 5 | 928 | 1,906 | 48.69% |
| COLORADO | 5,779 | 1,825 | 33 | 7,637 | 13,938 | 54.79% |
| COMAL | 44,079 | 16,830 | 586 | 61,495 | 100,867 | 60.97% |
| COMANCHE | 3,799 | 781 | 30 | 4,610 | 9,197 | 50.13% |
| CONCHO | 803 | 163 | 14 | 980 | 1,677 | 58.44% |
| COOKE | 11,879 | 2,550 | 111 | 14,540 | 25,747 | 56.47% |
| CORYELL | 10,626 | 5,067 | 170 | 15,863 | 38,635 | 41.06% |
| COTTLE | 458 | 97 | 2 | 557 | 1,063 | 52.40% |
| CRANE | 836 | 213 | 6 | 1,055 | 2,666 | 39.57% |
| CROCKETT | 928 | 340 | 8 | 1,276 | 2,497 | 51.10% |
| CROSBY | 978 | 437 | 7 | 1,422 | 3,540 | 40.17% |
| CULBERSON | 297 | 521 | 9 | 827 | 1,722 | 48.03% |
| DALLAM | 970 | 139 | 6 | 1,115 | 3,039 | 36.69% |
| DALLAS | 241,126 | 481,395 | 5,368 | 727,889 | 1,335,313 | 54.51% |
| DAWSON | 2,192 | 811 | 12 | 3,015 | 7,202 | 41.86% |
| DEAF SMITH | 2,680 | 1,067 | 28 | 3,775 | 8,855 | 42.63% |
| DELTA | 1,562 | 354 | 16 | 1,932 | 3,896 | 49.59% |
| DENTON | 158,744 | 134,649 | 2,409 | 295,802 | 497,490 | 59.46% |
| DEWITT | 4,974 | 1,128 | 29 | 6,131 | 11,744 | 52.21% |
| DICKENS | 635 | 113 | 6 | 754 | 1,288 | 58.54% |
| DIMMIT | 840 | 2,042 | 12 | 2,894 | 7,378 | 39.22% |
| DONLEY | 1,110 | 161 | 8 | 1,279 | 2,237 | 57.17% |
| DUVAL | 1,330 | 2,765 | 18 | 4,113 | 8,377 | 49.10% |
| EASTLAND | 5,377 | 800 | 28 | 6,205 | 11,775 | 52.70% |
| ECTOR | 20,996 | 9,230 | 248 | 30,474 | 76,536 | 39.82% |

| | | | | | |
|---|---|---|---|---|---|
| EDWARDS | 604 | 145 | 8 | 757 | 1,449 | 52.24% |
| ELLIS | 41,022 | 19,106 | 461 | 60,589 | 108,349 | 55.92% |
| EL PASO | 50,943 | 151,482 | 1,189 | 203,614 | 455,992 | 44.65% |
| ERATH | 10,055 | 2,486 | 84 | 12,625 | 22,492 | 56.13% |
| FALLS | 3,215 | 1,445 | 20 | 4,680 | 10,399 | 45.00% |
| FANNIN | 8,569 | 2,107 | 74 | 10,750 | 20,756 | 51.79% |
| FAYETTE | 8,228 | 2,198 | 53 | 10,479 | 16,626 | 63.03% |
| FISHER | 1,139 | 340 | 15 | 1,494 | 2,682 | 55.70% |
| FLOYD | 1,394 | 476 | 9 | 1,879 | 3,965 | 47.39% |
| FOARD | 321 | 113 | 1 | 435 | 913 | 47.65% |
| FORT BEND | 111,423 | 142,399 | 1,616 | 255,438 | 431,832 | 59.15% |
| FRANKLIN | 3,300 | 639 | 35 | 3,974 | 6,807 | 58.38% |
| FREESTONE | 5,243 | 1,279 | 40 | 6,562 | 11,978 | 54.78% |
| FRIO | 1,636 | 2,016 | 28 | 3,680 | 8,606 | 42.76% |
| GAINES | 3,317 | 513 | 19 | 3,849 | 8,921 | 43.15% |
| GALVESTON | 67,641 | 45,065 | 916 | 113,622 | 212,630 | 53.44% |
| GARZA | 1,068 | 203 | 16 | 1,287 | 2,712 | 47.46% |
| GILLESPIE | 9,890 | 2,572 | 81 | 12,543 | 19,294 | 65.01% |
| GLASSCOCK | 513 | 37 | 4 | 554 | 782 | 70.84% |
| GOLIAD | 2,326 | 717 | 29 | 3,072 | 5,597 | 54.89% |
| GONZALES | 4,173 | 1,421 | 31 | 5,625 | 12,210 | 46.07% |
| GRAY | 5,246 | 615 | 40 | 5,901 | 12,493 | 47.23% |
| GRAYSON | 31,655 | 11,157 | 332 | 43,144 | 80,863 | 53.35% |
| GREGG | 24,569 | 11,133 | 234 | 35,936 | 69,893 | 51.42% |
| GRIMES | 6,499 | 2,037 | 71 | 8,607 | 16,176 | 53.21% |
| GUADALUPE | 33,938 | 20,079 | 554 | 54,571 | 100,552 | 54.27% |
| HALE | 5,360 | 1,970 | 62 | 7,392 | 19,170 | 38.56% |
| HALL | 807 | 161 | 3 | 971 | 1,987 | 48.87% |
| HAMILTON | 2,795 | 507 | 28 | 3,330 | 5,611 | 59.35% |
| HANSFORD | 1,552 | 138 | 20 | 1,710 | 3,034 | 56.36% |
| HARDEMAN | 973 | 185 | 4 | 1,162 | 2,459 | 47.25% |
| HARDIN | 17,391 | 2,636 | 71 | 20,098 | 38,259 | 52.53% |
| HARRIS | 498,902 | 700,200 | 8,652 | 1,207,754 | 2,338,460 | 51.65% |
| HARRISON | 16,226 | 6,245 | 122 | 22,593 | 44,462 | 50.81% |
| HARTLEY | 1,467 | 153 | 4 | 1,624 | 2,875 | 56.49% |
| HASKELL | 1,362 | 302 | 10 | 1,674 | 3,331 | 50.26% |
| HAYS | 33,308 | 45,584 | 854 | 79,746 | 134,403 | 59.33% |
| HEMPHILL | 1,209 | 157 | 9 | 1,375 | 2,289 | 60.07% |
| HENDERSON | 20,891 | 5,415 | 205 | 26,511 | 51,770 | 51.21% |
| HIDALGO | 46,505 | 104,416 | 834 | 151,755 | 361,562 | 41.97% |

| | | | | | |
|---|---|---|---|---|---|
| HILL | 8,927 | 2,443 | 63 | 11,433 | 22,743 | 50.27% |
| HOCKLEY | 4,844 | 1,211 | 39 | 6,094 | 13,582 | 44.87% |
| HOOD | 20,090 | 4,720 | 195 | 25,005 | 40,835 | 61.23% |
| HOPKINS | 9,306 | 2,545 | 69 | 11,920 | 22,706 | 52.50% |
| HOUSTON | 5,552 | 1,772 | 36 | 7,360 | 13,090 | 56.23% |
| HOWARD | 5,651 | 1,693 | 60 | 7,404 | 16,968 | 43.64% |
| HUDSPETH | 509 | 407 | 17 | 933 | 1,922 | 48.54% |
| HUNT | 21,115 | 7,151 | 222 | 28,488 | 55,193 | 51.62% |
| HUTCHINSON | 5,854 | 753 | 35 | 6,642 | 13,547 | 49.03% |
| IRION | 636 | 96 | 6 | 738 | 1,314 | 56.16% |
| JACK | 2,498 | 296 | 19 | 2,813 | 5,082 | 55.35% |
| JACKSON | 3,991 | 832 | 17 | 4,840 | 9,195 | 52.64% |
| JASPER | 9,504 | 2,282 | 47 | 11,833 | 22,848 | 51.79% |
| JEFF DAVIS | 683 | 466 | 28 | 1,177 | 1,719 | 68.47% |
| JEFFERSON | 36,731 | 37,128 | 380 | 74,239 | 148,344 | 50.05% |
| JIM HOGG | 410 | 1,060 | 8 | 1,478 | 3,833 | 38.56% |
| JIM WELLS | 4,520 | 5,331 | 49 | 9,900 | 26,438 | 37.45% |
| JOHNSON | 39,571 | 12,411 | 454 | 52,436 | 97,157 | 53.97% |
| JONES | 4,115 | 832 | 37 | 4,984 | 10,024 | 49.72% |
| KARNES | 2,900 | 1,203 | 33 | 4,136 | 8,071 | 51.25% |
| KAUFMAN | 26,118 | 12,002 | 252 | 38,372 | 72,579 | 52.87% |
| KENDALL | 15,292 | 4,340 | 164 | 19,796 | 30,774 | 64.33% |
| KENEDY | 100 | 77 | 3 | 180 | 309 | 58.25% |
| KENT | 288 | 44 | 5 | 337 | 588 | 57.31% |
| KERR | 16,822 | 5,198 | 185 | 22,205 | 35,854 | 61.93% |
| KIMBLE | 1,495 | 195 | 14 | 1,704 | 2,908 | 58.60% |
| KING | 124 | 6 | 1 | 131 | 184 | 71.20% |
| KINNEY | 827 | 358 | 14 | 1,199 | 2,255 | 53.17% |
| KLEBERG | 4,081 | 4,456 | 59 | 8,596 | 18,186 | 47.27% |
| KNOX | 855 | 229 | 9 | 1,093 | 2,434 | 44.91% |
| LAMAR | 12,711 | 3,731 | 126 | 16,568 | 31,591 | 52.45% |
| LAMB | 2,741 | 699 | 17 | 3,457 | 8,096 | 42.70% |
| LAMPASAS | 5,836 | 1,569 | 65 | 7,470 | 14,099 | 52.98% |
| LASALLE | 673 | 813 | 3 | 1,489 | 4,300 | 34.63% |
| LAVACA | 6,688 | 1,019 | 30 | 7,737 | 13,234 | 58.46% |
| LEE | 4,487 | 1,322 | 38 | 5,847 | 10,453 | 55.94% |
| LEON | 5,711 | 855 | 23 | 6,589 | 11,163 | 59.03% |
| LIBERTY | 16,041 | 4,421 | 114 | 20,576 | 43,981 | 46.78% |
| LIMESTONE | 5,211 | 1,672 | 33 | 6,916 | 13,621 | 50.77% |
| LIPSCOMB | 942 | 116 | 9 | 1,067 | 1,988 | 53.67% |
| LIVE OAK | 3,029 | 601 | 21 | 3,651 | 7,240 | 50.43% |

| | | | | | |
|---|---|---|---|---|---|
| LLANO | 7,954 | 2,124 | 76 | 10,154 | 15,758 | 64.44% |
| LOVING | 47 | 6 | 1 | 54 | 121 | 44.63% |
| LUBBOCK | 58,780 | 32,068 | 731 | 91,579 | 175,881 | 52.07% |
| LYNN | 1,369 | 323 | 5 | 1,697 | 3,945 | 43.02% |
| MADISON | 3,033 | 780 | 18 | 3,831 | 7,428 | 51.58% |
| MARION | 2,448 | 1,018 | 31 | 3,497 | 7,368 | 47.46% |
| MARTIN | 1,297 | 243 | 14 | 1,554 | 3,252 | 47.79% |
| MASON | 1,560 | 402 | 5 | 1,967 | 2,956 | 66.54% |
| MATAGORDA | 7,330 | 3,049 | 78 | 10,457 | 21,654 | 48.29% |
| MAVERICK | 2,951 | 7,727 | 98 | 10,776 | 31,453 | 34.26% |
| MCCULLOCH | 2,245 | 400 | 26 | 2,671 | 5,243 | 50.94% |
| MCLENNAN | 45,855 | 28,452 | 568 | 74,875 | 139,699 | 53.60% |
| MCMULLEN | 387 | 41 | 2 | 430 | 704 | 61.08% |
| MEDINA | 11,444 | 4,621 | 114 | 16,179 | 31,354 | 51.60% |
| MENARD | 632 | 145 | 6 | 783 | 1,443 | 54.26% |
| MIDLAND | 32,867 | 9,723 | 365 | 42,955 | 84,393 | 50.90% |
| MILAM | 5,922 | 1,997 | 68 | 7,987 | 15,038 | 53.11% |
| MILLS | 1,764 | 229 | 11 | 2,004 | 3,426 | 58.49% |
| MITCHELL | 1,585 | 323 | 5 | 1,913 | 4,562 | 41.93% |
| MONTAGUE | 6,424 | 941 | 56 | 7,421 | 13,588 | 54.61% |
| MONTGOMERY | 137,395 | 51,268 | 1,433 | 190,096 | 333,488 | 57.00% |
| MOORE | 3,248 | 787 | 25 | 4,060 | 9,764 | 41.58% |
| MORRIS | 2,953 | 1,260 | 21 | 4,234 | 8,302 | 51.00% |
| MOTLEY | 483 | 40 | 4 | 527 | 847 | 62.22% |
| NACOGDOCHES | 13,775 | 7,732 | 126 | 21,633 | 36,993 | 58.48% |
| NAVARRO | 10,391 | 3,918 | 107 | 14,416 | 28,641 | 50.33% |
| NEWTON | 3,660 | 993 | 23 | 4,676 | 9,293 | 50.32% |
| NOLAN | 3,120 | 928 | 26 | 4,074 | 8,778 | 46.41% |
| NUECES | 45,956 | 47,392 | 719 | 94,067 | 205,176 | 45.85% |
| OCHILTREE | 2,160 | 230 | 25 | 2,415 | 5,216 | 46.30% |
| OLDHAM | 732 | 82 | 2 | 816 | 1,417 | 57.59% |
| ORANGE | 21,164 | 5,050 | 118 | 26,332 | 53,392 | 49.32% |
| PALO PINTO | 7,547 | 1,837 | 46 | 9,430 | 17,984 | 52.44% |
| PANOLA | 7,120 | 1,598 | 31 | 8,749 | 16,392 | 53.37% |
| PARKER | 44,071 | 9,956 | 468 | 54,495 | 91,858 | 59.33% |
| PARMER | 1,675 | 372 | 10 | 2,057 | 4,428 | 46.45% |
| PECOS | 2,161 | 1,339 | 20 | 3,520 | 8,223 | 42.81% |
| POLK | 12,794 | 3,850 | 106 | 16,750 | 38,018 | 44.06% |
| POTTER | 16,689 | 7,521 | 214 | 24,424 | 55,580 | 43.94% |
| PRESIDIO | 436 | 1,221 | 10 | 1,667 | 4,884 | 34.13% |

| | | | | | |
|---|---:|---:|---:|---:|---:|---:|
| RAINS | 3,702 | 681 | 23 | 4,406 | 7,668 | 57.46% |
| RANDALL | 38,479 | 9,613 | 363 | 48,455 | 87,827 | 55.17% |
| REAGAN | 692 | 136 | 6 | 834 | 1,845 | 45.20% |
| REAL | 1,311 | 245 | 8 | 1,564 | 2,590 | 60.39% |
| RED RIVER | 3,427 | 973 | 18 | 4,418 | 8,268 | 53.43% |
| REEVES | 1,128 | 1,255 | 15 | 2,398 | 7,089 | 33.83% |
| REFUGIO | 1,636 | 847 | 9 | 2,492 | 4,949 | 50.35% |
| ROBERTS | 441 | 19 | 0 | 460 | 707 | 65.06% |
| ROBERTSON | 4,295 | 1,942 | 31 | 6,268 | 11,654 | 53.78% |
| ROCKWALL | 26,615 | 11,754 | 330 | 38,699 | 62,933 | 61.49% |
| RUNNELS | 2,842 | 385 | 7 | 3,234 | 6,692 | 48.33% |
| RUSK | 12,597 | 3,609 | 76 | 16,282 | 31,242 | 52.12% |
| SABINE | 3,456 | 496 | 15 | 3,967 | 7,802 | 50.85% |
| SAN AUGUSTINE | 2,266 | 734 | 16 | 3,016 | 5,989 | 50.36% |
| SAN JACINTO | 7,499 | 1,785 | 55 | 9,339 | 17,976 | 51.95% |
| SAN PATRICIO | 11,335 | 6,777 | 107 | 18,219 | 41,762 | 43.63% |
| SAN SABA | 1,811 | 247 | 11 | 2,069 | 3,737 | 55.37% |
| SCHLEICHER | 735 | 209 | 8 | 952 | 1,789 | 53.21% |
| SCURRY | 3,705 | 642 | 16 | 4,363 | 9,393 | 46.45% |
| SHACKELFORD | 1,174 | 103 | 4 | 1,281 | 2,320 | 55.22% |
| SHELBY | 6,008 | 1,521 | 32 | 7,561 | 15,294 | 49.44% |
| SHERMAN | 692 | 87 | 43 | 822 | 1,535 | 53.55% |
| SMITH | 53,760 | 23,182 | 458 | 77,400 | 134,712 | 57.46% |
| SOMERVELL | 3,033 | 633 | 25 | 3,691 | 6,287 | 58.71% |
| STARR | 2,443 | 8,273 | 68 | 10,784 | 33,110 | 32.57% |
| STEPHENS | 2,631 | 324 | 13 | 2,968 | 5,573 | 53.26% |
| STERLING | 442 | 44 | 0 | 486 | 880 | 55.23% |
| STONEWALL | 497 | 112 | 5 | 614 | 957 | 64.16% |
| SUTTON | 934 | 265 | 7 | 1,206 | 2,478 | 48.67% |
| SWISHER | 1,461 | 420 | 14 | 1,895 | 3,968 | 47.76% |
| TARRANT | 309,189 | 313,497 | 5,208 | 627,894 | 1,122,597 | 55.93% |
| TAYLOR | 29,811 | 10,489 | 357 | 40,657 | 80,168 | 50.71% |
| TERRELL | 323 | 139 | 5 | 467 | 694 | 67.29% |
| TERRY | 2,169 | 629 | 15 | 2,813 | 6,633 | 42.41% |
| THROCKMORTON | 617 | 77 | 9 | 703 | 1,219 | 57.67% |
| TITUS | 5,685 | 2,265 | 55 | 8,005 | 17,020 | 47.03% |
| TOM GREEN | 24,648 | 9,690 | 292 | 34,630 | 66,826 | 51.82% |
| TRAVIS | 119,278 | 359,772 | 5,154 | 484,204 | 775,950 | 62.40% |
| TRINITY | 4,146 | 998 | 31 | 5,175 | 11,455 | 45.18% |
| TYLER | 5,919 | 1,185 | 35 | 7,139 | 13,725 | 52.01% |
| UPSHUR | 11,529 | 2,364 | 91 | 13,984 | 27,708 | 50.47% |

| | | | | | |
|---|---|---|---|---|---|
| UPTON | 854 | 169 | 8 | 1,031 | 2,116 | 48.72% |
| UVALDE | 4,348 | 3,528 | 59 | 7,935 | 17,118 | 46.35% |
| VAL VERDE | 5,345 | 5,955 | 105 | 11,405 | 27,972 | 40.77% |
| VAN ZANDT | 15,182 | 2,634 | 116 | 17,932 | 36,982 | 48.49% |
| VICTORIA | 19,005 | 8,046 | 157 | 27,208 | 55,473 | 49.05% |
| WALKER | 11,535 | 6,186 | 132 | 17,853 | 33,422 | 53.42% |
| WALLER | 10,167 | 6,335 | 101 | 16,603 | 32,584 | 50.95% |
| WARD | 2,096 | 800 | 24 | 2,920 | 6,522 | 44.77% |
| WASHINGTON | 10,134 | 3,263 | 95 | 13,492 | 23,253 | 58.02% |
| WEBB | 13,814 | 35,159 | 408 | 49,381 | 130,784 | 37.76% |
| WHARTON | 9,094 | 3,793 | 55 | 12,942 | 25,132 | 51.50% |
| WHEELER | 1,679 | 125 | 6 | 1,810 | 3,415 | 53.00% |
| WICHITA | 23,648 | 9,971 | 299 | 33,918 | 81,419 | 41.66% |
| WILBARGER | 2,639 | 776 | 24 | 3,439 | 8,134 | 42.28% |
| WILLACY | 1,527 | 2,773 | 25 | 4,325 | 12,405 | 34.86% |
| WILLIAMSON | 99,857 | 105,850 | 2,514 | 208,221 | 331,985 | 62.72% |
| WILSON | 13,025 | 4,567 | 127 | 17,719 | 32,537 | 54.46% |
| WINKLER | 1,123 | 321 | 11 | 1,455 | 3,870 | 37.60% |
| WISE | 19,023 | 3,915 | 179 | 23,117 | 41,749 | 55.37% |
| WOOD | 13,987 | 2,635 | 118 | 16,740 | 30,065 | 55.68% |
| YOAKUM | 1,558 | 335 | 10 | 1,903 | 4,264 | 44.63% |
| YOUNG | 5,543 | 821 | 41 | 6,405 | 11,854 | 54.03% |
| ZAPATA | 821 | 1,392 | 10 | 2,223 | 7,587 | 29.30% |
| ZAVALA | 589 | 2,313 | 15 | 2,917 | 8,157 | 35.76% |

**[SOS Home Page](#) [Election History Page](#) [Election Home Page](#)**

For comments or suggestions, please e-mail [webmaster@sos.state.tx.us](#)

5

# Office of the Secretary of State

**Race Summary Report**

# 2018 General Election

**11/6/2018**

| RACE NAME | PARTY | CANVASS VOTES | PERCENT |
|---|---|---:|---:|
| U. S. Senator - | | | |
| Ted Cruz(I) | REP | 4,260,553 | 50.89% |
| Beto O'Rourke | DEM | 4,045,632 | 48.33% |
| Neal M. Dikeman | LIB | 65,470 | 0.78% |
| | | ----------- | |
| | Race Total | 8,371,655 | |
| | | | |
| U. S. Representative District 1 - | | | |
| Louie Gohmert(I) | REP | 168,165 | 72.26% |
| Shirley J. McKellar | DEM | 61,263 | 26.32% |
| Jeff Callaway | LIB | 3,292 | 1.41% |
| | | ----------- | |
| | Race Total | 232,720 | |
| | | | |
| U. S. Representative District 2 - | | | |
| Dan Crenshaw | REP | 139,188 | 52.84% |
| Todd Litton | DEM | 119,992 | 45.56% |
| Patrick Gunnels | LIB | 2,373 | 0.90% |
| Scott Cubbler | IND | 1,839 | 0.70% |
| | | ----------- | |
| | Race Total | 263,392 | |
| | | | |
| U. S. Representative District 3 - | | | |
| Van Taylor | REP | 169,520 | 54.24% |
| Lorie Burch | DEM | 138,234 | 44.23% |
| Christopher J. Claytor | LIB | 4,604 | 1.47% |
| Jeff Simmons | W-I | 153 | 0.05% |
| | | ----------- | |
| | Race Total | 312,511 | |
| | | | |
| U. S. Representative District 4 - | | | |

6

| Harris Provisional Ballots | Total Harris Votes -- 2018 US Senate | Total Statewide Votes -- 2018 US Senate |
|---|---|---|
| 106 | 1,207,754 | 8,371,655 |
|  |  |  |
| Ratio of Harris DPS-online Provisional Ballots to Total Harris Votes -- 2018 US Senate |  |  |
| 0.0000877662 |  |  |
|  |  |  |
| Projected Total DPS-online Provisional Ballots Statewide |  |  |
| 734.7484918 |  |  |

7



TEXAS SECRETARY OF STATE       AM I REGISTERED?
TEXAS ELECTIONET ADMINISTRATION SYSTEM

## Voter Information

Name: JARROD JEOFRY STRINGER
Address: 623 DONALDSON AVENUE 8
SAN ANTONIO TX 78201
Gender: MALE
Valid From: 01/01/2020
Effective Date of Registration: 05/23/2015
Voter Status: SUSPENSE
County: BEXAR
Precinct: 2083
VUID: 1070187813

**Change your Address**

## Upcoming Elections (Select Election for available polling information)

11/03/2020--2020 NOVEMBER 3RD GENERAL ELECTION

03/03/2020--2020 MARCH 3RD DEMOCRATIC PRIMARY

03/03/2020--2020 MARCH 3RD REPUBLICAN PRIMARY

A Voter Status of "Suspense" means that the registrar is not certain of your residential address. A request to confirm or update your information was mailed to you. A voter whose status is on suspense is eligible to vote in an election provided that the voter completes a Statement of Residence either when voting by mail or at the polls prior to voting (within the same county as the voter's current registration) or (if the voter has moved to a new county) completes a Limited Ballot application during Early Voting at the main early voting polling place.

***Eligibility is determined by Effective Date of Registration (Must be on or before Election Day)

**Please Note:** Polling places are subject to change. Always check your designated polling place location via this website or by contacting your county prior to going to vote.

ADDITIONAL QUESTIONS and FAQ

**Note:** Any questions now that you see your voter registration status? On Suspense? Don't live at that address anymore? Not sure what to do next? Check out our FAQ.

Back

8



# TEXAS SECRETARY OF STATE

# AM I REGISTERED?
### TEXAS ELECTIONET ADMINISTRATION SYSTEM

---

### Voter Information

Name: NAYELI MARICELA GOMEZ
Address: 6423 PELICAN CORAL
SAN ANTONIO TX 78244
Gender: FEMALE
Valid From: 01/01/2020
Effective Date of Registration: 07/10/2011
Voter Status: ACTIVE
County: BEXAR
Precinct: 4161
VUID: 1178241589

**Change your Address**

### Upcoming Elections (Select Election for available polling information)

11/03/2020--2020 NOVEMBER 3RD GENERAL ELECTION

03/03/2020--2020 MARCH 3RD DEMOCRATIC PRIMARY

03/03/2020--2020 MARCH 3RD REPUBLICAN PRIMARY

***Eligibility is determined by Effective Date of
Registration (Must be on or before Election Day)

---

**Please Note:** Polling places are subject to change. Always check your designated polling place location via this website or by contacting your county prior to going to vote.

---

ADDITIONAL QUESTIONS and FAQ

**Note:** Any questions now that you see your voter registration status? On Suspense? Don't live at that address anymore? Not sure what to do next? Check out our FAQ.

**Back**

9



# Texas Secretary of State

## AM I REGISTERED?
### TEXAS ELECTIONET ADMINISTRATION SYSTEM

### Voter Information

Name: JOHN THOMAS HARMS
Address: 507 ASH STREET
SMITHVILLE TX 78957
Gender: MALE
Valid From: 01/01/2020
Effective Date of Registration: 11/08/2016
Voter Status: SUSPENSE
County: BASTROP
Precinct: 2008
VUID: 1139231143

Change your Address

### Upcoming Elections (Select Election for available polling information)

11/03/2020--2020 NOVEMBER 3RD GENERAL ELECTION

03/03/2020--2020 MARCH 3RD DEMOCRATIC PRIMARY

03/03/2020--2020 MARCH 3RD REPUBLICAN PRIMARY

A Voter Status of "Suspense" means that the registrar is not certain of your residential address. A request to confirm or update your information was mailed to you. A voter whose status is on suspense is eligible to vote in an election provided that the voter completes a Statement of Residence either when voting by mail or at the polls prior to voting (within the same county as the voter's current registration) or (if the voter has moved to a new county) completes a Limited Ballot application during Early Voting at the main early voting polling place.

***Eligibility is determined by Effective Date of Registration (Must be on or before Election Day)

**Please Note:** Polling places are subject to change. Always check your designated polling place location via this website or by contacting your county prior to going to vote.

ADDITIONAL QUESTIONS and FAQ

**Note:** Any questions now that you see your voter registration status? On Suspense? Don't live at that address anymore? Not sure what to do next? Check out our FAQ.

Back