FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JAN 3 0 2020

CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

JARROD STRINGER, et. al.                    )
                                            )
                                            )
                                            )
v.                                          )     CIVIL NO. SA-16-CV-257-OG ✓
                                            )
ROLANDO PABLOS, in his official             )
capacity as Texas Secretary of State        )
and STEVEN C. McCRAW, in his official       )
capacity as Director of the Texas Department)
of Public Safety                            )
_____

JARROD STRINGER, et. al.                    )
                                            )
v.                                          )
                                            )
                                            )
RUTH HUGHS, in her official capacity        )     CIVIL NO. SA-20-CV-46-OG
as Texas Secretary of State and STEVEN C.   )
McCRAW, in his official capacity as         )
Director of the Texas Department of         )
Public Safety                               )

PRELIMINARY INJUNCTION ORDER

On January 17, 2020, Plaintiffs filed an Emergency Application for Preliminary Injunction and

Request for Hearing. Docket no. 5.[1] On January 27, 2020, Defendants Hughs and McCraw filed a

response. Docket no. 146.[2] On January 28, 2020, Plaintiff-Intervenors filed a motion to join in the

motion for preliminary injunction, and their motion to join was granted. Docket no. 150. The same day,

Plaintiffs filed their reply and supplemented their evidence. Docket no. 154. The Court held a hearing

on January 28, 2020. Both sides had the opportunity to present live witnesses but declined. Plaintiffs,

Plaintiff-Intervenors, and Defendants all presented oral argument on the applicable law and the current

facts set forth in the evidence attached to their motion, response, and reply. The facts are uncontested

and neither side challenges the admissibility of the preliminary injunction evidence. After considering

---

[1]Docketed in 20-CV-46.

[2]Docketed in 16-CV-257. Unless stated otherwise, all docket references are to the docket in 16-CV-257.

the parties' arguments and reviewing the facts and applicable law, the Court finds that the Emergency

Application for Preliminary Injunction should be GRANTED in part, and the rest of the relief sought

therein will be held in abeyance.

I.

Standard and process of review

To obtain a preliminary injunction, movants must establish each of the following four factors:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury if the injunction is not issued;

(3) the threatened injury if the injunction is denied outweighs any harm that will result if the

injunction is granted; and

(4) granting an injunction will not disserve the public interest.

*Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015). In many cases, a preliminary injunction serves

to preserve the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v.*

*Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctions that would change, rather than maintain,

the status quo are generally disfavored and should not issue unless the facts and law clearly favor the

moving party. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). On the other hand, "[a]

fundamental principle of preliminary injunctions [is that] [a]n injunction is of no help if one must wait

to suffer injury before the court grants it." *Texas v. U.S.*, 809 F.3d at 173 n. 137 (citing *United States v.*

*Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)). In this case, maintaining the status quo would mean the

individual plaintiffs would remain unregistered and ineligible to vote in the county and precinct where

they reside. The Court need not wait for the individual plaintiffs to suffer disenfranchisement before

considering preliminary injunctive relief. *Id.* Given the limited purpose of a preliminary injunction, and

given the haste that is often necessary in considering the relief being sought, "a preliminary injunction

is customarily granted on the basis of procedures that are less formal and evidence that is less complete

than in a trial on the merits." *Camenisch*, 451 U.S. at 395.[3] Ultimately, the decision to grant preliminary injunctive relief rests in the sound discretion of the district court, and is "often dependent as much on the equities of [the] case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, ___ U.S. ___, ___, 137 S.Ct. 2080, 2087 (2017).

## II.

## Background of the case

In May 2018, this Court granted declaratory and injunctive relief in favor of Plaintiff Jarrod Stringer and former plaintiffs Benjamin Hernandez and John Woods. The Court found, based on largely uncontested facts, that Defendants violated the National Voter Registration Act, 52 U.S.C. §§ 20503(a)(1), 20504(a), (c), (d), and (e), and 20507(a)(1)(A), and the Equal Protection Clause, U.S. Const. amend. XIV, § 1, by failing to permit simultaneous voter registration with online driver's license renewal and change-of-address transactions. The Court permanently enjoined Defendants from continuing to violate the NVRA and Equal Protection Clause and ordered them to establish procedures that treat each online driver's license renewal or change-of-address application as a simultaneous application for voter registration which must then be submitted to the Secretary of State. *Stringer v. Pablos*, 320 F.Supp. 3d 862 (W.D. Tex. 2018), rev'd and remanded, *Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ("Stringer I"). Defendants appealed to the Fifth Circuit, which held that Plaintiffs did not have standing to seek prospective injunctive relief because they had not shown a *continuing or threatened future injury* to their

---

[3]In fact, the Court may rely upon otherwise inadmissible evidence when considering a preliminary injunction. *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993); *Tex. Commerce Bank Nat'l Ass'n v. State of Florida*, 1997 WL 181532, at *4 (N.D. Tex. Apr. 9, 1997) (in a preliminary injunction proceeding, "the court may rely on hearsay evidence and may even give inadmissible evidence some weight"), *aff'd*, 138 F.3d 179 (5th Cir. 1998).

constitutional right to vote. Chief Judge Owen wrote:

> Plaintiffs contend that they have demonstrated a substantial risk that they will suffer a future injury as a result of the DPS System's noncompliance with the NVRA and Equal Protection Clause. As Plaintiffs concede, to do so, they must demonstrate "a sufficient probability that each Plaintiff will use the noncompliant driver's license services again." All three Plaintiffs declared that they "plan to continue transacting online with [DPS] in the future whenever [they are] required to renew or change the address on [their] driver's license and [are] eligible to do so." However, each Plaintiff will have the occasion to use the DPS System to update his voter registration only if (1) he moves within Texas, in which case he might wish use the DPS System to change his address on file with DPS and his county voter registrar, or (2) he becomes both unregistered to vote and eligible to renew his driver's license using the DPS System, in which case he might wish to use the DPS System to renew his driver's license and register to vote.
>
> Plaintiffs rely on two types of evidence that they contend demonstrate a substantial risk that they will move again. The first is evidence of their prior moves—Hernandez and Woods have each moved once in the past five years, and Stringer has moved several times. However, evidence that a plaintiff has taken an action in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future; there must be some evidence that the plaintiff intends to take the action again. Accordingly, evidence that Plaintiffs moved in the past does not establish a substantial risk that they will do so in the future. *Notably, no Plaintiff has expressed any intention to move in the future.*
>
> The second type of evidence cited by Plaintiffs is data from the United States Census Bureau showing that Americans can expect to move 11.7 times in their lifetimes. This general data also does not establish a substantial risk that Plaintiffs themselves will move again; Plaintiff-specific evidence is needed before Plaintiffs' claims can be properly characterized as an attempt to remedy an imminent injury to Plaintiffs instead of a generalized grievance available to all Texans.
>
> Plaintiffs also have not demonstrated a substantial risk that they will attempt to use the DPS System to renew their driver's licenses and simultaneously update their voter registrations. Plaintiffs contend that Texas's requirement that driver's licenses must be renewed every six years and the existence of Texas laws providing multiple avenues for the cancellation of a voter's registration create a "sufficient probability" that, at some point in the future, Plaintiffs will be both unregistered to vote and eligible to renew their driver's licenses using the DPS System. However, Plaintiffs do not point to any Plaintiff-specific evidence suggesting that they will become unregistered and eligible to renew their driver's licenses using the DPS System.
>
> In light of the absence of any Plaintiff-specific evidence, the evidence in the record does not demonstrate a substantial risk that Plaintiffs will become unregistered and eligible to renew their driver's licenses online. Plaintiffs cite Texas laws that provide for the cancellation of voter registration in four relatively uncommon situations: (1) when a voter's registration card is returned as undeliverable, the voter does not return a confirmation notice, and the voter does not vote in two consecutive general elections; (2) when a registrar finds a voter to be ineligible after an investigation; (3) when another voter from the same county successfully challenges a voter's registration; and (4) when a voter cancels his or her voter registration.

There is no evidence in the record that suggests that any Plaintiff is likely to fall within the ambit of these provisions. Furthermore, Texans are only required to renew their driver's licenses every eight years, and every other renewal must be accomplished in person. Chances are slim that Plaintiffs will become unregistered around the time that they need to renew their driver's licenses and are eligible to do so using the DPS System.

In sum, Plaintiffs have not established a substantial risk that they will attempt to update their voter registrations using the DPS System and be injured by their inability to do so. As a result, Plaintiffs have not established an injury in fact sufficient to confer standing to pursue the declaratory and injunctive relief that they seek.

*Stringer v. Whitley*, 942 F.3d at 721–23 (emphasis added).


Judge Ho, concurring, stated:

I agree with my colleagues that we are not at liberty to decide the merits in this case, because none of these Plaintiffs have standing to seek injunctive relief here. They all secured their right to vote by the 2016 election cycle. And they claim no future injury that we can redress today. . . . But although we have no occasion to decide the merits of Plaintiffs' claim due to their lack of a future injury, that does not prevent us from acknowledging that Plaintiffs have indeed endured an injury in the past. They were unable to exercise their right to vote in past election cycles. And it is a right they will *never* be able to recover. As citizens, we can hope it is a deprivation they will not experience again – even if the law does not afford them a remedy from this court at this time.

*Stringer v. Whitley*, 942 F.3d at 726 (emphasis in original).

III.

Facts giving rise to the current claims

Although the Fifth Circuit found, based on the facts in the record at that time, that Mr. Stringer had not proven he would likely sustain another injury in the future, *it has happened again.* Before November 23, 2019, Mr. Stringer moved from a residence in Bexar County to a new residence in Harris County. On November 23, 2019, Mr. Stringer had his wife visit the DPS website to change the address on his driver's license. He would have also had his wife update his voter registration online when updating his driver's license, but was not given the option. Thus, he remains registered at his old address in Bexar County. If his registration is not updated before February 3, 2020, he will not be able to vote in the March 2020 primary election in the county and precinct where he resides. Mr. Stringer also states, in his uncontested sworn declaration, that he

5

plans to move residences again in 2020. Specifically, he and his wife plan to move out of their current rental apartment and into a new residence by August 25, 2020 at the latest. Docket no. 5-1, Appx. 178-180.

Co-plaintiff John Harms, who was not a plaintiff in Stringer I, was a resident of Bastrop County prior to July 2019. At that time, he was registered to vote and did vote in Bastrop County. In mid-July 2019, Mr. Harms moved from Bastrop County to Travis County, where he signed a one-year lease on a house. On or about October 8, 2019, he visited the DPS online system and completed the process to change the address on his driver's license to his new residence in Travis County. If he had been provided the option to simultaneously update his voter registration, he would have done so. He was not provided that option, and he remains unregistered at this time to vote in Travis County. If Mr. Harms' voter registration is not updated before February 3, 2020, he will not be able to vote in the March 2020 primary election. Mr. Harms' sworn declaration is also uncontested. Docket no. 5-1, Appx. 182-183.

Co-plaintiff Nayeli Gomez, who was not a plaintiff in Stringer I, moved from one residence in Bexar County to a new residence in Bexar County in the Summer of 2019. On December 9, 2019, she visited the DPS online system to change the address on her driver's license to her new address but she was unable to simultaneously update her voter registration. She would have simultaneously updated her voter registration if she had been given the option, but she was not given that option. She remains registered at her old address and will not be able to vote in her home precinct in the March 2020 primary election if her registration is not updated before February 3, 2020. Docket no. 5-1, Appx. 185-186.

Current and former plaintiff Jarrod Stringer, along with current plaintiffs Nayeli Gomez, John Harms, MOVE Texas Civil Fund, and League of Women Voters of Texas and Intervenor-plaintiffs Texas Democratic Party, DCCC, and DSCC, now assert the same causes of action at issue

6

in Stringer I because Defendants have not changed their practices and new violations have occurred, resulting in a continuing injury and/or threatened future injury. Docket no. 1[4]; Docket no. 137.

IV.

### The scope of relief currently being considered

Plaintiffs' Emergency Application for Preliminary Injunction was filed three days after the filing of Plaintiffs' original complaint. After filing their motion, Plaintiffs significantly narrowed the temporary injunctive relief they are seeking. Within that scope of relief, the continuing injury and/or threatened future injury suffered by the individual plaintiffs is the most urgent, given the February 3 deadline for Texans to register to vote and/or update their voter registration. The temporary injunctive relief sought by these individuals should also be easily redressable before the February 3 deadline. Thus, due to strict time restraints, the Court is currently considering only the very narrow temporary relief sought by the three individuals plaintiffs. The remaining relief sought in the Emergency Application for Preliminary Injunction has been taken under advisement, but is held in abeyance at this time.

V.

### Standing to seek temporary injunctive relief
### and substantial likelihood of success on the merits

A.      What Plaintiffs must show to have standing

In Stringer I, the Fifth Circuit set forth the applicable standard for determining whether the individual plaintiffs have Article III standing:

> To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability. The party seeking to invoke federal jurisdiction, in this case the Plaintiffs, bears the burden of establishing all three elements.

---

[4]Docketed in 20-CV-46.

Requests for injunctive [ ] relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive [ ] relief "cannot conceivably remedy any past wrong," plaintiffs seeking injunctive [ ] relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.'" The purpose of the requirement that the injury be "imminent" is "to ensure that the alleged injury is not too speculative for Article III purposes." For a threatened future injury to satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur.

*Stringer v. Whitley*, 942 F.3d at 720–21 (internal citations omitted).

B. The challenged action

The challenged action in question is Defendants' violation of the National Voter Registration Act (NVRA), 52 U.S.C. § 20501, *et. seq.* and the Equal Protection Clause, U.S. Const. amend. XIV, § 1. For purposes of seeking temporary injunctive relief, Plaintiffs Jarrod Stringer and Nayeli Gomez seek relief under both the NVRA and the Fourteenth Amendment. Mr. Harms asserts his right to temporary injunctive relief under an Equal Protection claim only.

It is undisputed that on the dates in question, Stringer and Gomez were denied the right to simultaneously update their voter registration when they updated the address on their drivers license through DPS' online procedure. This is a violation of the NVRA, 52 U.S.C. § 20503(a)(1) ("notwithstanding any other Federal or State law, in addition to any other method of voter registration provided for under State law, each State shall establish procedures to register to vote in elections for Federal office – (1) by application made *simultaneously* with an application for a motor vehicle driver's license"). It is undisputed that on the dates in question the applications completed by Stringer and Gomez for updating their driver's license did not serve as applications for voter registration. This is a violation of the NVRA, 52 U.S.C. § 20504(a)(1),(2) ("*Each* State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State

motor vehicle authority under State law *shall serve as an application for voter registration.*"). It is undisputed that the DPS form completed by Stringer and Gomez does not include voter registration as part thereof, and registering to vote elsewhere would require information that duplicates information provided in the DPS driver's license form. This is a violation of the NVRA, 52 U.S.C. § 20504(c)(1),(2), and (d) ("Each State shall include a voter registration application form for elections for Federal office *as part of* an application for a State motor vehicle driver's license – The voter registration application *portion* of an application for a State motor vehicle driver's license – *may not require any information that duplicates information required in the driver's license portion of the form. . . .* Any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license *shall serve as notification of change of address for voter registration* with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.").

Both Stringer and Gomez have provided written notice of the NVRA violations to the Secretary of State, the chief election official for the State of Texas, and the violations have not been corrected within the time set forth in the statute.[5] Not only have Defendants expressly refused to

---

[5]Section 20510 provides a private right of action for any person "who is aggrieved by a violation of this chapter," 52 U.S.C. § 20510(a)-(b), and the "rights and remedies . . . are in addition to all other rights and remedies provided by law," 52 U.S.C. § 20510(d).

The notice provision in § 20510(b) further states:

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election officials of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

correct the violations, but they have failed to offer any assistance in updating and confirming

Stringer and Gomez's voter registration. At the hearing, Defendants suggested that Plaintiffs can just

go somewhere else to update their registration by February 3. The mandates of the NVRA dictate

exactly the opposite of what Defendants now suggest Plaintiffs should do to avoid being

disenfranchised on March 3: engage in a second transaction with another agency, which requires a

separate application with duplicate information and the burden of mail, postage, and/or personal

delivery. Congress lifted these burdens to make voter registration easier, not more confusing and

difficult.[6]

Defendants essentially claim that when it comes to online services they cannot comply with

the NVRA because it conflicts with state law. The Court previously addressed this asserted

justification in Stringer I, which the Fifth Circuit did not reach. Thus, the Court has re-visited the

issue and reaches the same conclusion.[7] First, the provisions of the NVRA neither incorporate Texas

election law nor make it subject thereto.[8] Second, Texas election law cannot be used as an excuse for

---

52 U.S.C. § 20510(b)(2)-(3).

[6]The Court also notes that Mr. Stringer is reportedly chronically ill. Docket no. 10 (docketed in 20-CV-46). Again, the NVRA was intended to remove barriers that make voter registration more restrictive or inconvenient for all voters, but this is especially important for voters like Mr. Stringer. 52 U.S.C § 20506(a)(5)(C) states that agencies designated to provide voter registration services shall not . . . "take any action the purpose or effect of which is to discourage the applicant from registering to vote." DPS and SOS cannot simply tell Texans to go somewhere else to register to vote.

[7]Because time is of the essence, the Court's written analysis to determine "likelihood of success" at this juncture is necessarily less extensive than the merits analysis in 2018. However, the parties have agreed that neither the law nor Defendants' practices have changed since the Court's merits analysis in 2018.

[8]Just briefly, in 52 U.S.C. § 20504(a)(1) and (d), for example, the reference to state law means the driver's license laws (i.e. the Texas Transportation Code). The NVRA was enacted under the Elections clause, U.S. Const. Art. I § 4, cl. 1, which gives Congress the broad power to preempt, alter, and supplant state law when it comes to federal voter registration practices. *Arizona v. InterTribal County of Arizona, Inc.*, 570 U.S. 1, 133 S. Ct. 2247, 2253-57 (2013). ("The Clause's substantive scope is broad" and "Elections Clause legislation, so far as it extends and conflicts with the regulations of the State, necessarily supersedes them"). To the extent state voter registration procedures are inconsistent with the NVRA, they are superseded. *Id.* at 2253-54 ("the state

failing to comply with the NVRA. To the extent it is inconsistent with the NVRA, Texas election

law must yield to the NVRA.[9] And third, there in nothing in either the NVRA or state law that

precludes the use of electronic signatures in online driver's license-voter registration transactions. It

is undisputed that the State of Texas already has preexisting electronically stored signatures for every

person that uses the online service, and could use them for both driver's license and voter

registration. Defendants already use electronically stored signatures for every in-person and mail

driver's license-voter registration transaction, which makes their refusal to accept them in online

transactions unexplainable.[10]

To be clear, the NVRA does not require DPS to offer online driver's license transactions,

but DPS has made the choice to utilize and promote such a process. Having made this choice, and

because the NVRA covers *all* driver's license applications, renewals, and change of address

---

law, so far as the conflict extends, ceases to be operative"). On the other hand, the NVRA does not supplant
state driver's license laws. Thus, interpreting the provisions in 52 U.S.C. § 20504(a)(1) and (d) to mean that
driver's license applications submitted in accordance with the Texas Transportation Code shall also serve as
applications for voter registration purposes is consistent with the purpose of the Act and the entire statutory
scheme.

[9]*See* n. 8.

[10]It is worth noting that with twenty-first century technology and legislation such as the Global and
National Commerce Act (E-Sign Act) and Uniform Electronic Transactions Act (UETA), electronic signatures
are legally recognized and widely used. 15 U.S.C. § 7001 et. seq.; Unif. Electronic Transactions Act, U.L.A. (1999).
Under the Uniform Electronic Transactions Act, which has been adopted by Texas and 46 other states, the
medium in which a signature is created, presented or retained does not affect its legal significance. *See* UETA §
7; Tex. Bus. & Com. Code Ann. § 322.007(a),(c),(d) (Vernon 2015) (TUETA). As these provisions explain: a
record or signature may not be denied legal effect or enforceability solely because it is in electronic form; if a law
requires a record to be in writing, an electronic record satisfies the law; if a law requires a signature, an electronic
signature satisfies the law. Texas law permits SOS and DPS to accept electronic records and electronic signatures.
*See* Tex. Bus. & Com. Code § 322.017 (each state agency has the option to accept electronic records and
electronic signatures); Tex. Bus. & Com. Code § 322.007 ("If a law requires a signature, an electronic signature
satisfies the law."); *see also* Tex. Bus. & Com. Code § 322.008(a) ("If parties have agreed to conduct a transaction
by electronic means and a law requires a person to provide, send, or deliver information in writing to another
person, the requirement is satisfied if the information is provided, sent, or delivered, as the case may be, in an
electronic record . . ."); Tex. Bus. & Com. Code § 322.012 ("if a law requires that a record be retained, the
requirement is satisfied by retaining an electronic record"); Tex. Govt Code § 2054.060 ("digital signature may
be used to authenticate a written electronic communication sent to a state agency"); 1 Tex. Admin. Code § 203.24
(describing technology that may be acceptable for use by state agencies).

transactions, the online change of address transactions must be treated no differently than the in-person and mail transactions. *See* 52 U.S.C. § 20504(a)(1) ("*Each* State motor vehicle driver's application . . ."). Defendants have offered no viable defense to the statutory violations in question or their continued refusal to comply with the NVRA. Based on the facts currently before the Court, there is a substantial likelihood that Plaintiffs Stringer and Gomez will succeed on the merits of their NVRA claims.

Plaintiffs Stringer, Gomez, and Harms also assert that Defendants' refusal to provide voter registration applications simultaneously with online driver's license transactions constitutes a violation of their Equal Protection rights under the Fourteenth Amendment.[11] The right to vote is a fundamental right protected under the Equal Protection Clause of the Fourteenth Amendment. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966). "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam). The Equal Protection Clause applies when state procedures restrict voters' rights. *Bush v. Gore*, 531 U.S. at 103 (Supreme Court found that Florida's failure to institute reliable recount procedures violated the Equal Protection Clause); *Obama for Am. v. Husted*, 697 F.3d 423, 436-37 (6th Cir. 2012) (Circuit court found that Ohio law that prevented casting of early ballots by non-military voters violated the Equal Protection Clause). The *Anderson-Burdick* standard will apply herein. *Burdick v. Tukushi*, 504 U.S. 428 (1992).[12] Under this

---

[11]"The rights and remedies established by [the NVRA] are in addition to all other rights and remedies provided by law." 52 U.S.C. § 20510(d)(1).

[12]*See Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) (Fifth Circuit applied *Anderson-Burdick* analysis in challenge to state law regulating volunteer deputy registrars); *Tex. Democratic Party v. Williams*, 285 Fed. Appx. 194, 195 (5th Cir. 2008) (per curiam) (noting that district court properly applied *Anderson-Burdick* balancing test to the constitutional claims challenging use of eSlate voting machines), *cert. denied*, 555 U.S. 1100 (2009); *Faas v. Cascos*, 225 F. Supp. 3d 604, 610 (S.D. Tex. 2016) (State election laws "could hardly serve their legitimate purposes if they were routinely subject to strict scrutiny . . . [thus], [t]he United States Supreme Court recognized the need for a more flexible analytical

standard, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the [Constitution] that the plaintiff seeks to vindicate against the precise interests put forward by the State as justification for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (internal quotes omitted). "However slight the burden [to the voters] may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 191 (2008).

"[V]oting is of the most fundamental significance under our constitutional structure," *Burdick*, 504 U.S. at 433, and unfair registration procedures can have a direct and damaging effect on voter participation. *See* 52 U.S.C. § 20501(a)(3) (Congressional findings). While the State can impose reasonable restrictions, those restrictions must be justified by specific interests that outweigh the burden on voters. It is undisputed that Defendants permit simultaneous voter applications for persons who renew or change their driver's license in person or by mail, but refuse simultaneous voter applications for persons who renew or change their driver's license online. Persons who renew or change their driver's license in person or by mail need only check a single box indicating that he/she would like to register or update his/her voter information. After checking the box on the driver's license form, no further steps are necessary. DPS sends the updated information to SOS in nightly batches, so the voter registration is updated timely and efficiently. However, persons who renew or change their driver's license online are denied the same process. They first go through the steps to renew or change the address on their license online, then must end their DPS driver's license transaction before going to SOS to obtain, print, and complete a separate voter registration application which requires duplicate information. Once the

---

framework in two landmark cases: *Anderson* and *Burdick*").

additional application is complete, it must be mailed or hand delivered. DPS, a voter registration agency, maintains a procedure that accepts simultaneous voter registration applications for some, while rejecting them for others. This type of restriction on voter registration imposes a burden on the fundamental right to vote that warrants the demonstration of a corresponding interest sufficiently weighty to justify the limitation.

Again, Defendants' only justification for the voter registration burden imposed these voters is the "signature" requirement under Texas election law. However, neither federal nor state law limits the signature requirement to physical hand written signatures on paper (or "wet" signatures). Electronic signatures and electronic records are legally recognized and widely used, and Defendants offer no reason for refusing to accept them for online transactions. DPS already uses electronic records and previously imaged electronic signatures for every Texan that uses the online system for driver's license renewal or change of address. And the Secretary of State already uses electronic records and previously imaged electronic signatures for voter registration purposes. There is no reason why Defendants cannot use them in an online driver's license-voter registration transaction when it already uses them in mail and in-person transactions.

Neither the law nor the facts support Defendants' alleged justification for limiting simultaneous voter applications to in-person and mail transactions and refusing simultaneous voter applications for persons that renew or change their driver's license online. Because the alleged justification is not legitimate, there is no state interest that outweighs the burden imposed on voters. Defendants fail to demonstrate a corresponding interest sufficiently weighty to justify the limitation on voters' rights.

Based on the facts currently before the Court, there is a substantial likelihood that Plaintiffs Stringer, Gomez, and Harms will succeed on the merits of their Equal Protection claims.

VI.

Injury in fact, causation, redressability, and irreparable harm

It is undisputed that Plaintiffs Stringer, Gomez, and Harms were not simultaneously registered to vote (i.e., their voter registration was not updated) at the time of their online

transactions with DPS, a designated voter registration agency. It is undisputed that they are still unregistered to vote and will be disenfranchised on March 3 if they are not registered to vote by the deadline – February 3. This continuing injury (lack of voter registration as a result of Defendants' unlawful procedure) and threatened future injury (disenfranchisement) more than satisfies the standing necessary for injunctive relief. *See Stringer v. Whitley*, 942 F.3d at 720 ("plaintiffs seeking injunctive [ ] relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury."). The Plaintiffs' continuing and threatened future injury will be (1) potentially suffered by these plaintiffs, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* at 720-21. With the deadline for voter registration in just a few days, and the primary election thirty days thereafter, there is a "substantial risk" that the individual plaintiffs will be disenfranchised if they are not registered to vote; thus, threatened future injury is indisputably "imminent." Moreover, Plaintiffs' continuing and future threatened injury is "fairly traceable" to the challenged action of Defendants. But for Defendants failure to comply with the NVRA, and the unjustified burden on Plaintiffs' constitutional rights, Plaintiffs would already be registered to vote in the county and precinct where they reside.

The future injury – disenfranchisement – is irreparable. The right to vote is a fundamental right, and the deprivation of such right is something Plaintiffs "will *never* be able to recover." *Stringer v. Whitley*, 942 F.3d at 726. (Ho, J., concurring). But the injury that will occur between now and March 3 is still redressable with immediate, temporary injunctive relief. These individual plaintiffs should not be forced to wait and suffer a constitutional deprivation when it can be avoided by granting temporary injunctive relief. *Texas v. U.S.*, 809 F.3d at 173 n. 137 (citing *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)).

## VII.

### Balance of harm and public interest

The harm to the individual plaintiffs – being disenfranchised – clearly outweighs the minimal burden, if any, that will be placed on Defendants by simply being ordered to perform their duties and take the necessary steps to ensure that these three individuals are registered to vote. The public clearly has a paramount interest in removing voter registration barriers and having procedures that encourage rather than discourage voter registration. Defendants have offered no factual or legal argument that would justify denying the simultaneous voter registration to which these individual plaintiffs are entitled.

## VIII.

### Temporary relief being ordered

The temporary relief being ordered herein is narrowly tailored, and the Court orders no more than what the law clearly and unequivocally requires of Defendants. There is an expectation, under the notice provisions of the NVRA, that if a designated voter registration agency such as DPS violates the NVRA, the chief election official of the State – upon notification – will correct the violation.[13] That is all the Court is ordering herein. Compliance with this order will ensure that the individual plaintiffs herein will not be forced to suffer a continuing or threatened future injury.

For the reasons stated herein, which are based on a preliminary review, **the Court ORDERS that pursuant to 52 U.S.C. § 20504(d), the last change of address forms submitted by the individual plaintiffs for purposes of updating the address on their driver's license "shall serve as notification of change of address for voter registration with respect to**

---

[13]To be clear, Defendants could have avoided this type of emergency relief by simply agreeing to assist plaintiffs in getting their voter registration updated – a duty and obligation they already have under the law.

elections for Federal office for the registrant involved." Defendant DPS must immediately submit the information contained in the previously completed forms, along with the individual plaintiffs stored electronic signatures, as necessary, to the Texas Secretary of State.[14] The Secretary of State will then immediately submit the same information to the correct county voter registrars, along with a copy of this injunction order and written instructions to immediately register these individual plaintiffs to vote. The Secretary of State must confirm that all three individual plaintiffs are registered to vote before the deadline to register to vote so they may participate in the upcoming primary elections. When that confirmation is received, Defendants must file a written advisory with the Court no later than 2:00 p.m. on February 3 confirming that all three individual plaintiffs are timely registered to vote in the county and precinct in which they reside. If Defendants must designate one or more employees, agents, or representatives to carry out this order, they are expected to do so.

The Emergency Application for Preliminary Injunction is GRANTED in part, and the rest of the preliminary injunctive relief being sought is held in abeyance.

SIGNED and ENTERED this ___30___ day of January, 2020 at ___2:02___ o'clock _p_. m..

ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE

---

[14]In other words, DPS and SOS will treat it the same way they would treat an in-person or mail-in change of address form and follow generally the same submission process set forth in 52 U.S.C. § 20504(e)(2), but on an expedited basis so that completion of voter registration occurs before the deadline.